No. 22-2606

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

IN RE: AEARO TECHNOLOGIES, LLC, et al.

―――――――――

AEARO TECHNOLOGIES, LLC, ET AL.,

*Debtors-Appellants,*

v.

THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT AND
JOHN & JANE DOES, 1-1000,

*Appellees.*

―――――――――

On Direct Appeal from the United States Bankruptcy Court
for the Southern District of Indiana, Indianapolis Division
No. 22-2890, Adv. No. 22-50059

―――――――――

## DEBTORS-APPELLANTS' APPENDIX

―――――――――

GEORGE W. HICKS, JR.
AARON L. NIELSON
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000

PAUL D. CLEMENT
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22134
(202) 742-8900
paul.clement@clementmurphy.com

CHAD J. HUSNICK
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

*Counsel for Debtors-Appellants*

December 12, 2022

# TABLE OF CONTENTS

**Page**

Bankruptcy Court Docket Sheet, Bankr.
    S.D. Inc. No. 22-50059.......................................................... A.1

Bankruptcy Court Docket Sheet, Bankr.
    S.D. Ind. No. 22-02890-JJG-11 ........................................ A.22

Stipulated Facts Regarding the MDL and
    Minnesota Litigation (Aug. 16, 2022)
    [Bankr.Ct. Dkt.#122]........................................................ A.88

MDL Order re Injunction (Aug. 16, 2022)
    [D.Ct. Dkt.#3389] ............................................................ A.176

Transcript of Hearing on Debtors' Motion
    for Declaratory and Injunctive Relief
    (Aug. 15, 2022) (transcript filed Aug.
    17, 2022) [Bankr.Ct. Dkt.#128,
    *excerpted*] ...................................................................... A.184

Transcript of Hearing on Debtors' Motion
    for Declaratory and Injunctive Relief
    (Aug. 16, 2022) (transcript filed Aug.
    18, 2022) [Bankr.Ct. Dkt.#136,
    *excerpted*] ...................................................................... A.245

Transcript of Hearing on Debtors' Motion
    for Declaratory and Injunctive Relief
    (Aug. 17, 2022) (transcript filed Aug.
    19, 2022) [Bankr.Ct. Dkt.#137,
    *excerpted*] ...................................................................... A.268

Ex. 2 to Hearing on Debtors' Motion for
    Declaratory and Injunctive
    Relief - Funding and Indemnification
    Agreement ........................................................................ A.275

Ex. 20 to Hearing on Debtors' Motion for
    Declaratory and Injunctive Relief - 3M
    Occupational Safety LLC Limited
    Liability Company Agreement.......................................... A.303

Ex. 24 to Hearing on Debtors' Motion for
    Declaratory and Injunctive
    Relief - Aearo Holding LLC Limited
    Liability Company Agreement.......................................... A.322

Ex. 28 to Hearing on Debtors' Motion for
    Declaratory and Injunctive
    Relief - Aearo Intermediate LLC
    Limited Liability Company Agreement ........................... A.341

Ex. 32 to Hearing on Debtors' Motion for
    Declaratory and Injunctive
    Relief - Aearo LLC Limited Liability
    Company Agreement......................................................... A.360

Ex. 37 to Hearing on Debtors' Motion for
    Declaratory and Injunctive
    Relief - Aearo Technologies LLC
    Limited Liability Company Agreement ........................... A.380

Ex. 41 to Hearing on Debtors' Motion for
    Declaratory and Injunctive
    Relief - Cabot Safety Intermediate
    LLC Limited Liability Company
    Agreement......................................................................... A.400

Ex. 66 to Hearing on Debtors' Motion for
    Declaratory and Injunctive
    Relief - Aearo CAE Yearly Sales..................................... A.420

Ex. 67 to Hearing on Debtors' Motion for
    Declaratory and Injunctive
    Relief - Spreadsheet re Combat Arms
    Litigation Expense 2018-2022 ........................................ A.422

Demonstrative Marked Castellano Dem-1
from Hearing on Debtors' Motion for
Declaratory and Injunctive
Relief - Simplified Organizational
Structure Specific to Aearo .................................................A.423

Transcript of Hearing on Debtors' Motion
for Entry of and Order (I) Appointing
the Honorable James M. Carr and
Randi S. Ellis as Co-Mediators, (II)
Authorizing the Debtors to Participate
in the Mediation, and (III) Granting
Related Relief (Sept. 8, 2022)
(transcript filed Sept. 9, 2022)
[Bankr.Ct. Dkt.#483, *excerpted*] ...................................... A.424

Certification for Direct Appeal (Sept. 13,
2022) [Bankr.Ct. Dkt.#181] .............................................. A.431

Transcript of Hearing on Debtors' (I) Motion
to Lift the Automatic Stay, (II) Certain
First Day Motions, and (III) Certain
Motions Regarding Retention and
Compensation Matters (Sept. 14,
2022) (transcript filed Sept. 16, 2022)
[Bankr.Ct. Dkt.#565, *excerpted*] ...................................... A.433

MDL Case Management Order No. 52 (Sept.
19, 2022) [D.Ct. Dkt.#3467] ............................................. A.438

Order re George Trial Date (Oct. 3, 2022)
[D.Ct. Dkt.#65] ................................................................ A.439

Order Authorizing Petition for Direct
Appeal (Oct. 12, 2022) [App.Ct.
Dkt.#14] ........................................................................ A.441

Order re Minn. Trial Date (Oct. 19, 2022)
[D.Ct.].............................................................................. A.443

MDL Order Staying Wave Process (Oct. 27,
2022) [D.Ct. Dkt.#3568] ..................................................... A.444

**U.S. Bankruptcy Court**
**Southern District of Indiana (Indianapolis)**
**Adversary Proceeding #: 22-50059**

*Associated Cases*  ⌄

**APPEAL**

*Assigned to:* Jeffrey J. Graham                          *Date Filed:* 07/26/22
*Lead BK Case:* 22-02890-JJG-11
*Lead BK Title:* Aearo Technologies LLC and 3M Occupational Safety LLC
*Lead BK Chapter:* 11
Show Associated Cases

*Demand:*

A.1

*Plaintiff*
-----------------------

**Aearo Technologies LLC**                    represented by    **David Agay**
7911 Zionsville Road                                           McDonal Hopkins LLC
Indianapolis, IN 46268                                         300 N. LaSalle Street
Tax ID / EIN: 13-3840356                                       Suite 1400
                                                               Chicago, IL 60654
                                                               312-642-2217
                                                               Fax : 312-280-8232
                                                               Email: dagay@mcdonaldhopkins.com

                                                               **Adam Arceneaux**
                                                               Ice Miller LLP
                                                               One American Square
                                                               Suite 2900
                                                               Indianapolis, IN 46282-0200
                                                               317-236-2137
                                                               Fax : 317-592-4604
                                                               Email: adam.arceneaux@icemiller.com

                                                               **Joshua A. Gadharf**
                                                               McDonald Hopkins LLC
                                                               300 N. LaSalle
                                                               Suite 1400
                                                               Chicago, IL 60654
                                                               312-280-0111
                                                               Fax : 248-646-5075
                                                               Email: jgadharf@mcdonaldhopkins.com

                                                               **Jeffrey A Hokanson**
                                                               Ice Miller LLP
                                                               One American Square
                                                               Suite 2900
                                                               Indianapolis, IN 46282-0200
                                                               317-236-2236
                                                               Fax : 317-592-4809
                                                               Email: jeff.hokanson@icemiller.com

                                                               **Ashley J. Jericho**
                                                               McDonal Hopkins LLC
                                                               39533 Woodward Ave.
                                                               Suite 318
                                                               Bloomfield Hills, MI 48304
                                                               248-593-2945
                                                               Fax : 248-646-5075
                                                               Email: ajericho@mcdonaldhopkins.com

                                                               **Micah E. Marcus**
                                                               McDonal Hopkins LLC
                                                               300 N. LaSalle Street
                                                               Ste 1400
                                                               Chicago, IL 60654
                                                               312-280-0111
                                                               Email: mmarcus@mcdonaldhopkins.com

                                                               **Eric John McKeown**
                                                               Ice Miller LLP
                                                               1 American Square
                                                               #2900
                                                               Indianapolis, IN 46282
                                                               317-236-2124

A.2

*Plaintiff*
-----------------------

**3M Occupational Safety LLC**                          represented by    **David Agay**
3M Center, Bldg. 224-5N-40                                                (See above for address)
St. Paul, MN 55144
Tax ID / EIN: 11-3838764                                                 **Adam Arceneaux**
                                                                         (See above for address)

                                                                         **Joshua A. Gadharf**
                                                                         (See above for address)

                                                                         **Jeffrey A Hokanson**
                                                                         (See above for address)

                                                                         **Ashley J. Jericho**
                                                                         (See above for address)

                                                                         **Micah E. Marcus**
                                                                         (See above for address)

                                                                         **Eric John McKeown**
                                                                         (See above for address)


*Plaintiff*
-----------------------

**Aearo Holding LLC**                                  represented by    **David Agay**
7911 Zionsville Road                                                     (See above for address)
Indianapolis, IN 46268
Tax ID / EIN: 65-1267302                                                 **Adam Arceneaux**
                                                                         (See above for address)

                                                                         **Joshua A. Gadharf**
                                                                         (See above for address)

                                                                         **Jeffrey A Hokanson**
                                                                         (See above for address)

                                                                         **Ashley J. Jericho**
                                                                         (See above for address)

                                                                         **Micah E. Marcus**
                                                                         (See above for address)

                                                                         **Eric John McKeown**
                                                                         (See above for address)

*Plaintiff*

------------------------

**Aearo Intermediate LLC**
7911 Zionsville Road
Indianapolis, IN 46268
Tax ID / EIN: 56-2443760

represented by    **David Agay**
(See above for address)

**Adam Arceneaux**
(See above for address)

**Joshua A. Gadharf**
(See above for address)

**Jeffrey A Hokanson**
(See above for address)

**Ashley J. Jericho**
(See above for address)

**Micah E. Marcus**
(See above for address)

**Eric John McKeown**
(See above for address)

*Plaintiff*

------------------------

**Aearo LLC**
7911 Zionsville Road
Indianapolis, IN 46268
Tax ID / EIN: 13-3840450

represented by    **David Agay**
(See above for address)

**Adam Arceneaux**
(See above for address)

**Joshua A. Gadharf**
(See above for address)

**Jeffrey A Hokanson**
(See above for address)

**Ashley J. Jericho**
(See above for address)

**Micah E. Marcus**
(See above for address)

**Eric John McKeown**
(See above for address)

V.

A.4

*Defendant*
------------------------

**Parties Listed on Appendix A to the Complaint,** *Those*
*Parties Listed on Appendix A to the Complaint and John*
*and Jane Does 1-1000*
See Appendix A
See Appendix A, IN 46268

represented by **Ashley Keller**
Keller Postman LLC
150 N. Riverside Plaza
Suite 4100
Chicago, IL 60606
312-741-5220
Email: ack@kellerpostman.com

*Defendant*
------------------------
**Tort Claimants - CAE Committee**                represented by    **John Bougiamas**
                                                                    Otterbourg P.C.
                                                                    230 Park Avenue
                                                                    New York, NY 10169
                                                                    212-905-3608
                                                                    Email: jbougiamas@otterbourg.com

                                                                    **Deborah Caruso**
                                                                    Rubin & Levin, P.C.
                                                                    135 N. Pennsylvania St, Suite 1400
                                                                    Indianapolis, IN 46204
                                                                    317-860-2867
                                                                    Email: dcaruso@rubin-levin.net

                                                                    **Melanie Louise Cyganowski**
                                                                    Otterbourg P.C.
                                                                    230 Park Avenue
                                                                    New York, NY 10169
                                                                    212-905-3677
                                                                    Fax : 212-682-6104
                                                                    Email: mcyganowski@otterbourg.com

                                                                    **Kevin M Davis**
                                                                    Caplin and Drysdale
                                                                    1 Thomas Circle, NW
                                                                    Ste 1100
                                                                    Washington, DC 20005-5812
                                                                    202-862-7846
                                                                    Email: kdavis@capdale.com

                                                                    **Jennifer S. Feeney**
                                                                    Otterbourg P.C.
                                                                    230 Park Avenue
                                                                    NY, NY 10169
                                                                    212-661-9100
                                                                    Email: jfenney@otterbourg.com

                                                                    **Sasha M. Gurvitz**
                                                                    KTBS Law LLP
                                                                    1801 Century Park East
                                                                    Ste 26th Floor
                                                                    Los Angeles, CA 90067
                                                                    310-407-4032
                                                                    Fax : 310-407-9090
                                                                    Email: sgurvitz@ktbslaw.com

                                                                    **Jeffrey L. Jonas**
                                                                    Brown Rudnick LLP
                                                                    One Financial Center
                                                                    Boston, MA 02111
                                                                    617-856-8200
                                                                    Fax : 617-856-8201
                                                                    Email: jjonas@brownrudnick.com

                                                                    **Kevin C Maclay**
                                                                    Caplin and Drysdale
                                                                    1 Thomas Circle, NW
                                                                    Ste 1100
                                                                    Washington, DC 20005

202-862-7843
Email: kmaclay@capdale.com

**Nir Maoz**
KTBS Law LLP
1801 Century Park East
26th Floor
Los Angeles, CA 90067
310-407-4000
Fax : 310-407-9090
Email: nmaoz@ktbslaw.com

**Pauline McTernan**
230 Park Avenue
New York, NY 10169
212-905-3637
Email: pmcternan@otterbourg.com

**David Molton**
Brown Rudnick LLP
7 Times Square
New York, NY 10036
212-209-4800
Email: dmolton@brownrudnick.com

**Robert J Pfister**
KTBS Law LLP
1801 Century Park East
26th Floor
Los Angeles, CA 90067
310-407-4065
Fax : 310-407-9090
Email: rpfister@ktbslaw.com

**Todd E. Phillips**
Caplin and Drysdale
One Thomas Circle, NW
Suite 1100
Washington, DC 20005
202-862-7850
Email: tphillips@capdale.com

**Adam C. Silverstein**
Otterbourg P.C.
230 Park Avenue
New York, NY 11050
212-905-3628
Email: asilverstein@otterbourg.com

**Ariella Thal Simonds**
KTBS Law LLP
1801 Century Park East
26th Floor
Los Angeles, CA 90067
310-407-4039
Fax : 310-407-9090
Email: asimonds@ktbslaw.com

**Meredith R. Theisen**
Rubin & Levin, P.C.
135 N. Pennsylvania St., Suite 1400
Indianapolis, IN 46204
(317) 860-2877

A.7

Fax : 310-453-4502
Email: mtheisen@rubin-levin.net

**Michael L. Tuchin**
KTBS Law LLP
1801 Century Park East
Ste 26th Floor
Los Angeles, CA 90067
310-407-4040
Fax : 310-407-9090
Email: mtuchin@ktbslaw.com

**Michael S. Winograd**
Brown Rudnick LLP
7 Times Square
New York, NY 10036
212-209-4917
Email: mwinograd@brownrudnick.com

*U.S. Trustee*
-----------------------
**U.S. Trustee**
Office of U.S. Trustee
46 E Ohio Street, Room 520
Indianapolis, IN 46204
317-226-6101
Email: ustpregion10.in.ecf@usdoj.gov

represented by   **Laura A DuVall**
DOJ-Ust
Office of The United States Trustee
Birch Bayh Federal Building and U.S.
Courthouse
46 E. Ohio Street, Ste 520
Indianapolis, IN 46204
317-226-6101
Fax : 317-226-6356
Email: Laura.Duvall@usdoj.gov

**Harrison Edward Strauss**
DOJ-Ust
Birch Bayh Federal Building
United States Courthouse
46 E. Ohio St, Room 520
Indianapolis, IN 46204
317-226-5707
Email: harrison.strauss@usdoj.gov

| # | Docket Text | Date Filed |
|---|---|---|
| 1 | Adversary case 22-50059. Complaint filed by Plaintiff(s) Aearo Technologies LLC, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC against Defendant(s) Those Parties Listed on Appendix A to the Complain [91 (Declaratory judgment)], [72 (Injunctive relief - other)]. (Attachments: (1) Appendix A (2) Appendix B) (Hokanson, Jeffrey) (Entered: 07/26/2022) | 07/26/2022 |
| | Receipt of Complaint( 22-50059) [cmp,cmp] (350.00) Filing Fee. Receipt number A33241048. Fee amount 350.00 (re: Doc # 1). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 2 | CORRECTED ENTRY: Debtors' Motion for Declaratory and Injunctive Relief (I) Confirming that the Automatic Stay Applies to Certain Actions Against a Non-Debtor; (II) Preliminarily Enjoining Certain Actions Against a Non-Debtor; and (III) Granting a Temporary Restraining Order Pending an Order on the Preliminary Injunction filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (Hokanson, Jeffrey). ORIGINAL ENTRY: Motion for Preliminary Injunction with Memorandum in Support, filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC. (Hokanson, Jeffrey) Modified on 7/26/2022. (cmm) Modified on 8/4/2022. (cmm) (Entered: 07/26/2022) [Denied by # 143 CMECF.widget.DocLink('documentKcaseidV741804Kde_seq_numV562Kdm_idV43789343Kdoc_numV143Kpdf_headerV1');] | 07/26/2022 |
| 3 | Declaration re: Motion for Preliminary Injunction filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 2). (Hokanson, Jeffrey) (Entered: 07/26/2022) | 07/26/2022 |

Case: 22-2606      Document: 32      Filed: 12/12/2022      Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 4 | Declaration re: Motion for Preliminary Injunction filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 2). (Attachments: (1) Exhibit 1 (2) Exhibit 2 (3) Exhibit 3 (4) Exhibit 4 (5) Exhibit 5 (6) Exhibit 6 (7) Exhibit 7 (8) Exhibit 8 (9) Exhibit 9 (10) Exhibit 10 (11) Exhibit 11 (12) Exhibit 12 (13) Exhibit 13 (14) Exhibit 14 (15) Exhibit 15 (16) Exhibit 16 (17) Exhibit 17 (18) Exhibit 18 (19) Exhibit 19 (20) Exhibit 20 (21) Exhibit 21 (22) Exhibit 22 (23) Exhibit 23 (24) Exhibit 24 (25) Exhibit 25 (26) Exhibit 26 (27) Exhibit 27 (28) Exhibit 28 (29) Exhibit 29 (30) Exhibit 30 (31) Exhibit 31 (32) Exhibit 32 (33) Exhibit 33 (34) Exhibit 34 (35) Exhibit 35 (36) Exhibit 36 (37) Exhibit 37 (38) Exhibit 38 (39) Exhibit 39 (40) Exhibit 40 (41) Exhibit 41 (42) Exhibit 42 (43) Exhibit 43 (44) Exhibit 44 (45) Exhibit 45 (46) Exhibit 46 (47) Exhibit 47 (48) Exhibit 48 (49) Exhibit 49 (50) Exhibit 50 (51) Exhibit 51 (52) Exhibit 52 (53) Exhibit 53 (54) Exhibit 54 (55) Exhibit 55 (56) Exhibit 56 (57) Exhibit 57 (58) Exhibit 58 (59) Exhibit 59 (60) Exhibit 60 (61) Exhibit 61 (62) Exhibit 62 (63) Exhibit 63 (64) Exhibit 64 (65) Exhibit 65 (66) Exhibit 66 (67) Exhibit 67 (68) Exhibit 68 (69) Exhibit 69 (70) Exhibit 70 (71) Exhibit 71 (72) Exhibit 72 (73) Exhibit 73 (74) Exhibit 74 (75) Exhibit 75 (76) Exhibit 76 (77) Exhibit 77 (78) Exhibit 78 (79) Exhibit 79 (80) Exhibit 80 (81) Exhibit 81 (82) Exhibit 82 (83) Exhibit 83 (84) Exhibit 84 (85) Exhibit 85 (86) Exhibit 86 (87) Exhibit 87 (88) Exhibit 88) (Hokanson, Jeffrey) (Entered: 07/26/2022) | 07/26/2022 |
| 5 | Exhibit / Exhibits A and B (Proposed Orders) filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 2). (Hokanson, Jeffrey) (Entered: 07/26/2022) | 07/26/2022 |
| 6 | CORRECTED ENTRY: Debtors' Ex Parte Motion for Approval of Service Procedures for Summons, Complaint, and Other Pleadings filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey). ORIGINAL ENTRY: Motion for Ex Parte Relief filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC. (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey) Modified on 7/26/2022. (cmm) Modified on 8/4/2022. (cmm) (Entered: 07/26/2022) [Granted by # 10 CMECF.widget.DocLink('documentKcaseidV741804Kde_seq_numV42Kdm_idV43683026Kdoc_numV10Kpdf_headerV1');] | 07/26/2022 |
| 7 | CORRECTED ENTRY: Debtors' Ex Parte Motion for Entry of an Order Shortening Notice and Setting an Expedited Hearing on the Debtors' Request for a Temporary Restraining Order filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey). ORIGINAL ENTRY: Motion for Ex Parte Relief filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC. (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey) Modified on 7/26/2022. (cmm) Modified on 8/4/2022. (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 8 | Corporate Ownership Statement Pursuant to FRBP 7007.1 filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 07/26/2022) | 07/26/2022 |
| 9 | Order Granting Ex Parte Motion To Shorten Notice And Setting Expedited Hearing on Debtors'/Plaintiffs' Request For A Temporary Restraining Order (re: Doc # 7). Hearing to be held on 7/27/2022 at 09:30 AM Eastern in Rm 344 U.S. Courthouse, Indianapolis. Video participation information is included in this order. Objections are due immediately before the Hearing Attorney for the Debtors'/Plaintiffs must distribute this order. (lat) (Entered: 07/26/2022) | 07/26/2022 |
| 10 | Order Granting Debtors'/Plaintiff's Ex Parte Motion for Approval of Service Procedures for Summons, Complaint, and Other Pleadings (re: Doc # 6). Attorney for the plaintiffs must distribute this order. (lat) (Entered: 07/26/2022) | 07/26/2022 |
| 11 | Summons Issued. Attorney for Plaintiff must serve the summons and a copy of the complaint on parties pursuant to Fed.R.Bankr.P. 7004. Service to be completed by 08/02/2022. A certificate of service must be filed with the Court by 08/09/2022. Adversary Answer due by 8/25/2022. (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 12 | Witness List AND EXHIBIT LIST filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 9). (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 7/27/2022. (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 13 | Appearance filed by Robert J Pfister on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Pfister, Robert) (Entered: 07/26/2022) | 07/26/2022 |
| 14 | Certificate of Service re: Complaint, Motion for Preliminary Injunction, Declaration, Declaration, Exhibit, Debtors' Ex Parte Motion for Approval of Service Procedures for Summons, Complaint, and Other Pleadings, Debtors' Ex Parte Motion for Entry of an Order Shortening Notice and Setting an Expedited Hearing on the Debtors' Request for a Temporary Restraining Order, Corporate Ownership Statement, Scheduling Order, Order on Motion for Authority, filed by Noticing Agent on behalf of Plaintiff Aearo Technologies LLC (re: Doc # 1, 2, 3, 4, 5, 6, 7, 8, 9, 10). (Baer, Herbert) (Entered: 07/26/2022) | 07/26/2022 |
| 15 | Witness List AND EXHIBIT LIST filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 9). (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 7/27/2022. (cmm) (Entered: 07/27/2022) | 07/27/2022 |
| 16 | Objection to Motion for Preliminary Injunction filed by Robert J Pfister on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 2). (Pfister, Robert) (Entered: 07/27/2022) | 07/27/2022 |
| 17 | Appearance filed by Deborah Caruso on behalf of Interested Party Seeger Weiss LLP. (Caruso, Deborah) (Entered: 07/27/2022) | 07/27/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 18 | Appearance filed by Meredith R. Theisen on behalf of Interested Party Seeger Weiss LLP. (Theisen, Meredith) (Entered: 07/27/2022) | 07/27/2022 |
| 19 | Response in Support of Objection filed by Deborah Caruso on behalf of Interested Party Seeger Weiss LLP (re: Doc # 16). (Caruso, Deborah) (Entered: 07/27/2022) | 07/27/2022 |
| 20 | Appearance filed by Michael Andolina on behalf of Interested Party 3M Company. (Andolina, Michael) (Entered: 07/27/2022) | 07/27/2022 |
| 21 | Appearance filed by Laura Elizabeth Baccash on behalf of Interested Party 3M Company. (Baccash, Laura) (Entered: 07/27/2022) | 07/27/2022 |
| 22 | Appearance filed by Jessica Lauria on behalf of Interested Party 3M Company. (Lauria, Jessica) (Entered: 07/27/2022) | 07/27/2022 |
| 23 | Appearance filed by Matthew Evan Linder on behalf of Interested Party 3M Company. (Linder, Matthew) (Entered: 07/27/2022) | 07/27/2022 |
| 24 | Appearance filed by Kayla D. Britton on behalf of Interested Party 3M Company. (Britton, Kayla) (Entered: 07/27/2022) | 07/27/2022 |
| 25 | Appearance filed by Jay Jaffe on behalf of Interested Party 3M Company. (Jaffe, Jay) (Entered: 07/27/2022) | 07/27/2022 |
| 26 | Appearance filed by Elizabeth Marie Little on behalf of Interested Party 3M Company. (Little, Elizabeth) (Entered: 07/27/2022) | 07/27/2022 |
| 27 | Appearance filed by Harmony A Mappes on behalf of Interested Party 3M Company. (Mappes, Harmony) (Entered: 07/27/2022) | 07/27/2022 |
| 28 | Appearance filed by Thomas E Patterson on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Patterson, Thomas) (Entered: 07/27/2022) | 07/27/2022 |
| 29 | Appearance filed by Sasha M. Gurvitz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Gurvitz, Sasha) (Entered: 07/27/2022) | 07/27/2022 |
| 30 | Appearance filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Maoz, Nir) (Entered: 07/27/2022) | 07/27/2022 |
| 31 | Certificate of Service re: Complaint, Motion for Preliminary Injunction, Declaration, Declaration, Exhibit, Debtors' Ex Parte Motion for Approval of Service Procedures for Summons, Complaint, and Other Pleadings, Debtors' Ex Parte Motion for Entry of an Order Shortening Notice and Setting an Expedited Hearing on the Debtors' Request for a Temporary Restraining Order, Corporate Ownership Statement, Scheduling Order, Order on Motion for Authority, filed by Noticing Agent on behalf of Plaintiff Aearo Technologies LLC (re: Doc # 1, 2, 3, 4, 5, 6, 7, 8, 9, 10). (Baer, Herbert) (Entered: 07/27/2022) | 07/27/2022 |
| 32 | Hearing on Debtors'/Plaintiffs' Motion for Declaratory and Injunctive Relief (I) Confirming that the Automatic Stay Applies to Certain Actions Against a Non-Debtor; (II) Preliminarily Enjoining Certain Actions Against a Non-Debtor; and (III) Granting a Temporary Restraining Order Pending an Order on the Preliminary Injunction Motion and Objection thereto by Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC and Response in Support of Objection by Interested Party Seeger Weiss LLP (re: Doc # 2,16,19). Disposition: Hearing held. Parties to file Agreed Entry as to Debtors'/Plaintiffs' request for Temporary Restraining Order within three days. Court sets Preliminary Injunction Hearing on 08/15/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Debtors/Plaintiffs to submit Order Setting Hearing within three days. (hhd) (Entered: 07/28/2022) | 07/27/2022 |
| 33 | Request for Transcript filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 32). (Maoz, Nir) (Entered: 07/28/2022) | 07/28/2022 |
| 34 | Request for Transcript filed by Meredith R. Theisen on behalf of Interested Party Seeger Weiss LLP (re: Doc # 32). (Theisen, Meredith) (Entered: 07/28/2022) | 07/28/2022 |
| 35 | Appearance filed by Patricia B. Tomasco on behalf of Interested Party Bellwether Plaintiffs Adkins, Wilkerson, & Vaughn. (Tomasco, Patricia) (Entered: 07/28/2022) | 07/28/2022 |
| 36 | Appearance filed by Michael L. Tuchin on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Tuchin, Michael) (Entered: 07/28/2022) | 07/28/2022 |
| 37 | Request for Transcript filed by Elizabeth Marie Little on behalf of Interested Party 3M Company (re: Doc # 32). (Little, Elizabeth) (Entered: 07/28/2022) | 07/28/2022 |
| 38 | Appearance filed by Adam Arceneaux on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC. (Arceneaux, Adam) CORRECTION: Document filed in error. See doc. #45 for corrected filing. Modified on 8/1/2022. (cmm) (Entered: 07/29/2022) | 07/29/2022 |
| 39 | Appearance filed by Brent Barriere on behalf of Interested Party Clark, Love & Hutson, PLLC. (Barriere, Brent) (Entered: 07/29/2022) | 07/29/2022 |
| 40 | Appearance filed by Tristan Manthey on behalf of Interested Party Clark, Love & Hutson, PLLC. (Manthey, Tristan) (Entered: 07/29/2022) | 07/29/2022 |
| 41 | Appearance filed by Cherie Nobles on behalf of Interested Party Clark, Love & Hutson, PLLC. (Nobles, Cherie) (Entered: 07/29/2022) | 07/29/2022 |

| # | Docket Text | Date Filed |
|---|---|---|
| 42 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 7/27/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 33, 34, 37). Remote electronic access to the transcript is restricted until 10/31/2022. (Bowen, James) (Entered: 08/01/2022) [Transcript] | 08/01/2022 |
| 43 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 7/27/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 33, 34, 37). Remote electronic access to the transcript is restricted until 10/31/2022. (Bowen, James) (Entered: 08/01/2022) [Transcript] | 08/01/2022 |
| 44 | Appearance filed by Laura A DuVall on behalf of U.S. Trustee. (DuVall, Laura) (Entered: 08/01/2022) | 08/01/2022 |
| 45 | Appearance filed by Adam Arceneaux on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC. (Arceneaux, Adam) (Entered: 08/01/2022) | 08/01/2022 |
| 46 | Appearance filed by Harrison Edward Strauss on behalf of U.S. Trustee. (Strauss, Harrison) (Entered: 08/01/2022) | 08/01/2022 |
| 47 | Appearance filed by Melanie Louise Cyganowski on behalf of Interested Party Seeger Weiss LLP. (Cyganowski, Melanie) (Entered: 08/01/2022) | 08/01/2022 |
| 48 | Appearance filed by Adam C. Silverstein on behalf of Interested Party Seeger Weiss LLP. (Silverstein, Adam) (Entered: 08/01/2022) | 08/01/2022 |
| 49 | Appearance filed by John Bougiamas on behalf of Interested Party Seeger Weiss LLP. (Bougiamas, John) (Entered: 08/01/2022) | 08/01/2022 |
| 50 | Appearance filed by Robert C Yan on behalf of Interested Party Seeger Weiss LLP. (Yan, Robert) (Entered: 08/01/2022) | 08/01/2022 |
| 51 | Appearance filed by Jason Walker Burge on behalf of Interested Party Clark, Love & Hutson, PLLC. (Burge, Jason) (Entered: 08/01/2022) | 08/01/2022 |
| 52 | Notice of Submission // Notice of (I) Service of Certain Discovery Requests; and (II) Intent to Serve Subpoena to Testify at a Deposition filed by Robert J Pfister on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Attachments: (1) Written Discovery Requests (2) Castellano Deposition Notice (3) Stein Deposition Notice (4) 3M Subpoena) (Pfister, Robert) (Entered: 08/01/2022) | 08/01/2022 |
| 53 | Agreed Entry Resolving Debtors' Request for a Temporary Restraining Order filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 2). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/01/2022) | 08/01/2022 |
| 54 | CORRECTED ENTRY: Notice of Hearing re: Motion for Preliminary Injunction filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc 2). Objections due by 4:00 PM Eastern on 8/11/2022. Hearing to be held on 8/15/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis. Video participation information is included in this notice. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7669, Meeting ID 160 2312 6397 (Hokanson, Jeffrey) ORIGINAL ENTRY: Notice of Hearing re: Agreed Entry, filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc 53). Objections due by 4:00 PM Eastern on 8/11/2022. Hearing to be held on 8/15/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis. (Hokanson, Jeffrey) Modified on 8/2/2022. (cmm) Modified on 8/4/2022. (cmm) (Entered: 08/01/2022) | 08/01/2022 |
| 55 | Appearance filed by Ashley Keller on behalf of Defendant Parties Listed on Appendix A to the Complaint. (Keller, Ashley) (Entered: 08/02/2022) | 08/02/2022 |
| 56 | Appearance filed by Jennifer S. Feeney on behalf of Interested Party Seeger Weiss LLP. (Feeney, Jennifer) (Entered: 08/02/2022) | 08/02/2022 |
| 57 | Appearance filed by Kiah T Ford IV on behalf of Interested Party Parafinczuk Wolf, P.A. (Ford, Kiah) (Entered: 08/02/2022) | 08/02/2022 |
| 58 | Appearance filed by Phillip Fajgenbaum on behalf of Interested Party Parafinczuk Wolf, P.A. (Fajgenbaum, Phillip) (Entered: 08/02/2022) | 08/02/2022 |
| 59 | Appearance filed by Maggie B. Burrus on behalf of Interested Party Bailey Glasser Plaintiffs. (Burrus, Maggie) (Entered: 08/02/2022) | 08/02/2022 |
| 60 | Appearance filed by Kevin W Barrett on behalf of Interested Party Bailey Glasser Plaintiffs. (Barrett, Kevin) (Entered: 08/02/2022) | 08/02/2022 |
| 61 | Appearance filed by Samuel P Hershey on behalf of Interested Party 3M Company. (Hershey, Samuel) (Entered: 08/02/2022) | 08/02/2022 |
| 62 | Amended Agreed Entry Resolving Debtor's Request for a Temporary Restraining Order filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 2). (Attachments: (1) Exhibit) (Hokanson, Jeffrey) (Entered: 08/02/2022) [Approved by # 78 CMECF.widget.DocLink('documentKcaseidV741804Kde_seq_numV300Kdm_idV43721184Kdoc_numV78Kpdf_headerV1');] | 08/02/2022 |

A.11

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 63 | CORRECTED ENTRY: Amended Notice of Hearing re: Motion for Preliminary Injunction, filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 54). Objections due by 4:00 PM Eastern on 8/11/2022. Hearing to be held on 8/15/2022 at 09:00 AM Eastern in Rm 307 U.S. Courthouse, Indianapolis. Video participation information is included in this notice. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7669, Meeting ID 160 2312 6397 (Hokanson, Jeffrey) ORIGINAL ENTRY: Amended Notice of Hearing re: Agreed Entry, filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 54). Objections due by 4:00 PM Eastern on 8/11/2022. Hearing to be held on 8/15/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis. (Hokanson, Jeffrey) Modified on 8/4/2022. (cmm) (Entered: 08/02/2022) | 08/02/2022 |
| 64 | Notice of Submission //Notice of Service of Requests for Production and Intent to Serve Notices of Deposition and Subpoena filed by Kevin C Maclay on behalf of Interested Parties Heninger Garrison Davis, LLC, Cory Watson, P.C. (Maclay, Kevin) (Entered: 08/02/2022) | 08/02/2022 |
| 65 | Appearance filed by Brian A Glasser on behalf of Interested Party Bailey Glasser Plaintiffs. (Glasser, Brian) (Entered: 08/03/2022) | 08/03/2022 |
| 66 | Appearance filed by Kevin C Maclay on behalf of Interested Party Cory Watson, P.C. (Maclay, Kevin) (Entered: 08/03/2022) | 08/03/2022 |
| 67 | Appearance filed by Kevin C Maclay on behalf of Interested Party Heninger Garrison Davis, LLC. (Maclay, Kevin) (Entered: 08/03/2022) | 08/03/2022 |
| 68 | Appearance filed by Kevin M Davis on behalf of Interested Party Cory Watson, P.C. (Davis, Kevin) (Entered: 08/03/2022) | 08/03/2022 |
| 69 | Appearance filed by Kevin M Davis on behalf of Interested Party Heninger Garrison Davis, LLC. (Davis, Kevin) (Entered: 08/03/2022) | 08/03/2022 |
| 70 | Appearance filed by Todd E. Phillips on behalf of Interested Party Cory Watson, P.C. (Phillips, Todd) (Entered: 08/03/2022) | 08/03/2022 |
| 71 | Appearance filed by Todd E. Phillips on behalf of Interested Party Heninger Garrison Davis, LLC. (Phillips, Todd) (Entered: 08/03/2022) | 08/03/2022 |
| 72 | Notice of Submission \\ Notice of Joinder of the Bailey Glasser Plaintiffs to Certain Claimants' Discovery Requests, Depositions and Deposition Subpoena filed by Kevin W Barrett on behalf of Interested Party Bailey Glasser Plaintiffs (re: Doc # 52). (Barrett, Kevin) (Entered: 08/03/2022) | 08/03/2022 |
| 73 | Appearance filed by Shelley Van Natter Hutson on behalf of Interested Party Clark, Love & Hutson, PLLC. (Hutson, Shelley) (Entered: 08/04/2022) | 08/04/2022 |
| 74 | Appearance filed by William Michael Moreland on behalf of Interested Party Clark, Love & Hutson, PLLC. (Moreland, William) (Entered: 08/04/2022) | 08/04/2022 |
| 75 | Appearance filed by Clayton A Clark on behalf of Interested Party Clark, Love & Hutson, PLLC. (Clark, Clayton) (Entered: 08/04/2022) | 08/04/2022 |
| 76 | JOINT Request for Status Conference filed by Kevin W Barrett, Jeffrey A Hokanson, Jay Jaffe, Kevin C Maclay, Robert J Pfister, Meredith R. Theisen on behalf of Interested Parties 3M Company, Aylstock, Witkin, Kreis & Overholtz, PLLC, Bailey Glasser Plaintiffs, Cory Watson, P.C., Heninger Garrison Davis, LLC, Seeger Weiss LLP, Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC. (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 8/5/2022. (cmm) (Entered: 08/05/2022) | 08/05/2022 |
| 77 | Notice of Status Conference on Joint Request for Status Conference (re: Doc # 76). Status conference to be held on 8/8/2022 at 02:00 PM Eastern via Zoom video conference with Judge Graham. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 (lat) CORRECTION: Second phone number to listen to the hearing changed from 646-828-7669 to 646-828-7666. Modified on 8/8/2022. (cmm) (Entered: 08/05/2022) | 08/05/2022 |
| 78 | Order Approving Agreed Entry (re: Doc # 62). The Clerk's Office will distribute this order. (cmm) (Entered: 08/05/2022) | 08/05/2022 |
| 79 | Appearance filed by Kevin C Maclay on behalf of Interested Party The Gori Law Firm, P.C. (Maclay, Kevin) (Entered: 08/05/2022) | 08/05/2022 |
| 80 | Appearance filed by Todd E. Phillips on behalf of Interested Party The Gori Law Firm, P.C. (Phillips, Todd) (Entered: 08/05/2022) | 08/05/2022 |
| 81 | Appearance filed by Kevin M Davis on behalf of Interested Party The Gori Law Firm, P.C. (Davis, Kevin) (Entered: 08/05/2022) | 08/05/2022 |
| 82 | Notice of Submission // Notice of Service of Deposition Notices filed by Robert J Pfister on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Pfister, Robert) (Entered: 08/05/2022) | 08/05/2022 |
| 83 | Appearance filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 08/08/2022) | 08/08/2022 |

| # | Docket Text | Date Filed |
|---|---|---|
| 84 | Notice of Submission of Joint Notice of Disputed Issues for Status Conference Regarding Certain Discovery Matters filed by Kevin W Barrett, Jeffrey A Hokanson, Jay Jaffe, Kevin C Maclay, Robert J Pfister, Meredith R. Theisen on behalf of Interested Parties 3M Company, Aylstock, Witkin, Kreis & Overholtz, PLLC, Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins, Wilkerson, & Vaughn, Clark, Love & Hutson, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Seeger Weiss LLP, Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 76). (Theisen, Meredith) (Entered: 08/08/2022) | 08/08/2022 |
| 85 | Minute Entry/Order: re: Video Status Conference on Joint Request for Status Conference re: Certain Discovery Matters (re: Doc # 76). Disposition: Video Status Conference held. (hhd) (Entered: 08/08/2022) | 08/08/2022 |
| 86 | Appearance filed by Martha R. Lehman on behalf of Interested Parties Johnson Law Group, Tracey Fox King & Walters. (Lehman, Martha) (Entered: 08/08/2022) | 08/08/2022 |
| 87 | Request for Transcript filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 85). (Maoz, Nir) (Entered: 08/08/2022) | 08/08/2022 |
| 88 | SECOND AMENDED Notice of Hearing with Certificate of Service re: Motion for Preliminary Injunction, filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc 63). Objections due by 4:00 PM Eastern on 8/11/2022. Hearing to be held on 8/15/2022 at 09:00 AM Eastern in Rm 307 U.S. Courthouse, Indianapolis. VIDEO PARTICIPATION INFORMATION IS INCLUDED IN THIS NOTICE. PARTIES THAT WISH TO LISTEN BUT NOT ACTIVELY PARTICIPATE MAY DO SO BY PHONE AT 551-285-1373 OR 646-828-7666, MEETING ID 160 2312 6397. (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Courtroom number changed from 310 to 307. Related document number changed from 2 to 63. Modified on 8/9/2022. (cmm) (Entered: 08/09/2022) | 08/09/2022 |
| 89 | Appearance filed by David R. Buchanan on behalf of Interested Party Seeger Weiss LLP. (Buchanan, David) (Entered: 08/09/2022) | 08/09/2022 |
| 90 | Appearance filed by Christopher A. Seeger on behalf of Interested Party Seeger Weiss LLP. (Seeger, Christopher) (Entered: 08/09/2022) | 08/09/2022 |
| 91 | Appearance filed by Gregory Starner on behalf of Interested Party 3M Company. (Starner, Gregory) (Entered: 08/09/2022) | 08/09/2022 |
| 92 | Appearance filed by Bryan F. Aylstock on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Aylstock, Bryan) (Entered: 08/09/2022) | 08/09/2022 |
| 93 | Appearance filed by Jennifer M. Hoekstra on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Hoekstra, Jennifer) (Entered: 08/09/2022) | 08/09/2022 |
| 94 | Appearance filed by Bobby Jene Bradford, Jr. on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Bradford, Jr., Bobby) (Entered: 08/09/2022) | 08/09/2022 |
| 95 | Appearance filed by Justin G. Witkin on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Witkin, Justin) (Entered: 08/10/2022) | 08/10/2022 |
| 96 | Appearance filed by David L. Selby II on behalf of Interested Party Bailey Glasser Plaintiffs. (Selby, David) (Entered: 08/10/2022) | 08/10/2022 |
| 97 | Appearance filed by D. Todd Mathews on behalf of Interested Party Bailey Glasser Plaintiffs. (Mathews, D.) (Entered: 08/10/2022) | 08/10/2022 |
| 98 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 8/8/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 87). Remote electronic access to the transcript is restricted until 11/08/2022. (Bowen, James) (Entered: 08/10/2022) [Transcript] | 08/10/2022 |
| 99 | Certificate of Service re: Complaint, Order on Motion for Authority, Summons Issued, Agreed Entry, Hearing Notice, Agreed Entry, Hearing Notice, filed by Noticing Agent on behalf of Plaintiff Aearo Technologies LLC (re: Doc # 1, 10, 11, 53, 54, 62, 63). (Baer, Herbert) (Entered: 08/11/2022) | 08/11/2022 |
| 100 | Objection to Motion for Preliminary Injunction filed by Kevin W Barrett on behalf of Interested Party Bailey Glasser Plaintiffs (re: Doc # 2). (Barrett, Kevin) (Entered: 08/11/2022) | 08/11/2022 |
| 101 | Objection to Motion for Preliminary Injunction filed by Harrison Edward Strauss on behalf of U.S. Trustee (re: Doc # 2). (Strauss, Harrison) (Entered: 08/11/2022) | 08/11/2022 |
| 102 | Objection to Motion for Preliminary Injunction filed by Syed Ali Saeed on behalf of Interested Party Paul LLP (re: Doc # 2). (Saeed, Syed) (Entered: 08/11/2022) | 08/11/2022 |
| 103 | Objection to Motion for Preliminary Injunction, OR IN THE ALTERNATIVE, REQUEST FOR CONDITION TO IMPOSE INJUNCTION filed by Ashley Keller on behalf of Interested Parties Charles Rataj, Keller Postman LLC (re: Doc # 2). (Attachments: (1) Exhibit 1 (2) Exhibit 2 (3) Exhibit 3 (4) Exhibit 4 (5) Exhibit 5 (6) Exhibit 6) (Keller, Ashley) CORRECTION: Missing docket text added in all capitals. Modified on 8/12/2022. (cmm) (Entered: 08/11/2022) | 08/11/2022 |
| 104 | Witness List AND EXHIBIT LIST filed by Ashley Keller on behalf of Interested Parties Keller Postman LLC, Charles Rataj (re: Doc # 2). (Keller, Ashley) CORRECTION: Missing docket text added in all capitals. Modified on 8/12/2022. (cmm) (Entered: 08/11/2022) | 08/11/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 105 | Supplemental Brief in Support re: Motion for Preliminary Injunction, filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 2). (Attachments: (1) Exhibit 1 (2) Exhibit 2 (3) Exhibit 3 (4) Exhibit 4 (5) Exhibit 5 (6) Exhibit 6 (7) Exhibit 7 (8) Exhibit 8 (9) Exhibit 9 (10) Exhibit 10 (11) Exhibit 11 (12) Exhibit 12 (13) Exhibit 13 (14) Exhibit 14 (15) Exhibit 15 (16) Exhibit 16 (17) Exhibit 17 (18) Exhibit 18 (19) Exhibit 19) (Hokanson, Jeffrey) CORRECTION: Document filed in error. See doc. #110 for corrected filing. Modified on 8/12/2022. (cmm) (Entered: 08/11/2022) | 08/11/2022 |
| 106 | WITNESS LIST AND Exhibit List filed by Brian A Glasser, Martha R. Lehman, Kevin C Maclay, Tristan Manthey, Adam C. Silverstein, Patricia B. Tomasco, Robert J Pfister on behalf of Interested Parties Aylstock, Witkin, Kreis & Overholtz, PLLC, Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins, Wilkerson, & Vaughn, Clark, Love & Hutson, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Johnson Law Group, Seeger Weiss LLP, The Gori Law Firm, P.C., Tracey Fox King & Walters (re: Doc # 32). (Pfister, Robert) CORRECTION: Missing docket text added in all capitals. Modified on 8/12/2022. (cmm) (Entered: 08/11/2022) | 08/11/2022 |
| 107 | Witness List AND EXHIBIT LIST filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 2). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 8/12/2022. (cmm) (Entered: 08/11/2022) | 08/11/2022 |
| 108 | Objection to Motion for Preliminary Injunction filed by Sasha M. Gurvitz, Martha R. Lehman, Kevin C Maclay, Tristan Manthey, Adam C. Silverstein, Patricia B. Tomasco, Robert J Pfister on behalf of Interested Parties Aylstock, Witkin, Kreis & Overholtz, PLLC, Bellwether Plaintiffs Adkins, Wilkerson, & Vaughn, Clark, Love & Hutson, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Johnson Law Group, Seeger Weiss LLP, The Gori Law Firm, P.C., Tracey Fox King & Walters (re: Doc # 2). (Pfister, Robert) (Entered: 08/11/2022) | 08/11/2022 |
| 109 | Notice of Submission / Debtors' Request for Judicial Notice in Support of their Motion for a Preliminary Injunction filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 4). (Attachments: (1) Exhibit 1 (2) Exhibit 2 (3) Exhibit 3 (4) Exhibit 4 (5) Exhibit 5 (6) Exhibit 6 (7) Exhibit 7 (8) Exhibit 8 (9) Exhibit 9 (10) Exhibit 10 (11) Exhibit 11 (12) Exhibit 12 (13) Exhibit 13 (14) Exhibit 14 (15) Exhibit 15 (16) Exhibit 16 (17) Exhibit 17 (18) Exhibit 18 (19) Exhibit 19 (20) Exhibit 20 (21) Exhibit 21 (22) Exhibit 22 (23) Exhibit 23 (24) Exhibit 24 (25) Exhibit 25 (26) Exhibit 26 (27) Exhibit 27 (28) Certificate of Service 28 (29) Exhibit 29 (30) Exhibit 30 (31) Exhibit 31 (32) Exhibit 32 (33) Exhibit 33 (34) Exhibit 34 (35) Exhibit 35 (36) Exhibit 36 (37) Exhibit 37 (38) Exhibit 38 (39) Exhibit 39 (40) Exhibit 40 (41) Exhibit 41 (42) Exhibit 42 (43) Exhibit 43 (44) Exhibit 44 (45) Exhibit 45 (46) Exhibit 46 (47) Exhibit 47 (48) Exhibit 48 (49) Exhibit 49 (50) Exhibit 50 (51) Exhibit 51 (52) Exhibit 52 (53) Exhibit 53 (54) Exhibit 54 (55) Exhibit 55 (56) Exhibit 56 (57) Exhibit 57 (58) Exhibit 58 (59) Affidavit 59 (60) Exhibit 60 (61) Exhibit 61 (62) Exhibit 62 (63) Exhibit 63 (64) Exhibit 63 (65) Exhibit 65 (66) Exhibit 66 (67) Exhibit 67 (68) Exhibit 68a (69) Exhibit 68b (70) Exhibit 68c (71) Exhibit 68d (72) Exhibit 68e (73) Exhibit 68f (74) Certificate of Service 68g (75) Exhibit 68h (76) Exhibit 68i (77) Exhibit 68j (78) Exhibit 68k (79) Exhibit 68l (80) Exhibit 68m (81) Exhibit 68n (82) Exhibit 68o (83) Exhibit 68p (84) Exhibit 68r (85) Exhibit 69 (86) Exhibit 70 (87) Exhibit 71 (88) Certificate of Service 72 (89) Exhibit 73 (90) Exhibit 74 (91) Exhibit 75 (92) Exhibit 76 (93) Exhibit 77 (94) Exhibit 78 (95) Exhibit 79 (96) Exhibit 80 (97) Exhibit 81 (98) Exhibit 82 (99) Exhibit 83 (100) Exhibit 84 (101) Exhibit 85 (102) Exhibit 86 (103) Exhibit 87 (104) Exhibit 88 (105) Exhibit 89 (106) Exhibit 90) (Hokanson, Jeffrey) (Entered: 08/11/2022) | 08/11/2022 |
| 110 | Supplemental Brief in Support re: Motion for Preliminary Injunction, filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 2). (Attachments: (1) Exhibit 1 (2) Exhibit 2 (3) Exhibit 3 (4) Exhibit 4 (5) Exhibit 5 (6) Exhibit 6 (7) Exhibit 7 (8) Exhibit 8 (9) Exhibit 9 (10) Exhibit 10 (11) Exhibit 11 (12) Exhibit 12 (13) Exhibit 13 (14) Exhibit 14 (15) Exhibit 15 (16) Exhibit 16 (17) Exhibit 17 (18) Exhibit 18 (19) Exhibit 19) (Hokanson, Jeffrey) (Entered: 08/11/2022) | 08/11/2022 |
| 111 | WITNESS LIST AND Exhibit List filed by Brian A Glasser, Martha R. Lehman, Kevin C Maclay, Tristan Manthey, Adam C. Silverstein, Robert J Pfister on behalf of Interested Parties Aylstock, Witkin, Kreis & Overholtz, PLLC, Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins, Wilkerson, & Vaughn, Clark, Love & Hutson, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Johnson Law Group, Seeger Weiss LLP, The Gori Law Firm, P.C., Tracey Fox King & Walters (re: Doc # 106). (Pfister, Robert) CORRECTION: Missing docket text added in all capitals. Modified on 8/12/2022. (cmm) (Entered: 08/12/2022) | 08/12/2022 |
| 112 | Notice of Submission / Notice of Replacement Exhibits to Debtors' Supplemental Submission in Advance of the August 15, 2022 Hearing on Their Motion for Declaratory and Injunctive Relief (I) Confirming that the Automatic Stay Applies to Certain Actions Against a Non-Debtor; and (II) Preliminarily Enjoining Certain Actions Against a Non-Debtor filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 110). (Attachments: (1) Exhibit 1 (2) Exhibit 2 (3) Exhibit 3 (4) Exhibit 4 (5) Exhibit 5 (6) Exhibit 6 (7) Exhibit 7 (8) Exhibit 8 (9) Exhibit 9 (10) Exhibit 10 (11) Exhibit 11 (12) Exhibit 12 (13) Exhibit 13 (14) Exhibit 14 (15) Exhibit 15 (16) Exhibit 16 (17) Exhibit 17 (18) Exhibit 18 (19) Exhibit 19) (Hokanson, Jeffrey) (Entered: 08/12/2022) | 08/12/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 113 | Notice of Submission Claimants' Request for Judicial Notice in Support of their Objection to the Debtors' Motion for Declaratory and Injunctive Relief filed by Kevin W Barrett, Brent Barriere, Jason Walker Burge, Maggie B. Burrus, Deborah Caruso, Melanie Louise Cyganowski, Kevin M Davis, Jennifer S. Feeney, Sasha M. Gurvitz, Kevin C Maclay, Tristan Manthey, Nir Maoz, D. Todd Mathews, Cherie Nobles, Thomas E Patterson, Robert J Pfister, Todd E. Phillips, David L. Selby II, Adam C. Silverstein, Meredith R. Theisen, Patricia B. Tomasco, Michael L. Tuchin, Brian A Glasser on behalf of Interested Parties Aylstock, Witkin, Kreis & Overholtz, PLLC, Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins, Wilkerson, & Vaughn, Clark, Love & Hutson, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Johnson Law Group, Seeger Weiss LLP, The Gori Law Firm, P.C. (Attachments: (1) Exhibit Exhibit 1 (2) Exhibit Exhibit 2 (3) Exhibit Exhibit 3 (4) Exhibit Exhibit 4 (5) Exhibit Exhibit 5 (6) Exhibit Exhibit 6 (7) Exhibit Exhibit 7 (8) Exhibit Exhibit 8 (9) Exhibit Exhibit 9 (10) Exhibit Exhibit 10 (11) Exhibit Exhibit 11 (12) Exhibit Exhibit 12 (13) Exhibit Exhibit 13 (14) Exhibit Exhibit 14 (15) Exhibit Exhibit 15 (16) Exhibit Exhibit 16 (17) Exhibit Exhibit 17 (18) Exhibit Exhibit 18 (19) Exhibit Exhibit 19 (20) Exhibit Exhibit 20 (21) Exhibit Exhibit 20 (22) Exhibit Exhibit 22 (23) Exhibit Exhibit 23 (24) Exhibit Exhibit 24 (25) Exhibit Exhibit 25 (26) Exhibit Exhibit 26 (27) Exhibit Exhibit 27 (28) Exhibit Exhibit 28 (29) Exhibit Exhibit 29 (30) Exhibit Exhibit 30 (31) Exhibit Exhibit 31 (32) Exhibit Exhibit 32 (33) Exhibit Exhibit 33 (34) Exhibit Exhibit 34 (35) Exhibit Exhibit 35 (36) Exhibit Exhibit 36 (37) Exhibit Exhibit 37 (38) Exhibit Exhibit 38 (39) Exhibit Exhibit 39 (40) Exhibit Exhibit 40 (41) Exhibit Exhibit 41 (42) Exhibit Exhibit 42 (43) Exhibit Exhibit 43 (44) Exhibit Exhibit 44 (45) Exhibit Exhibit 45 (46) Exhibit Exhibit 46 (47) Exhibit Exhibit 47 (48) Exhibit Exhibit 48 (49) Exhibit Exhibit 49 (50) Exhibit Exhibit 50 (51) Exhibit Exhibit 51 (52) Exhibit Exhibit 52 (53) Exhibit Exhibit 53 (54) Exhibit Exhibit 54 (55) Exhibit Exhibit 55 (56) Exhibit Exhibit 56 (57) Exhibit Exhibit 57 (58) Exhibit Exhibit 58 (59) Exhibit Exhibit 59 (60) Exhibit Exhibit 60 (61) Exhibit Exhibit 61 (62) Exhibit Exhibit 62 (63) Exhibit Exhibit 63 (64) Exhibit Exhibit 64 (65) Exhibit Exhibit 65 (66) Exhibit Exhibit 66 (67) Exhibit Exhibit 67 (68) Exhibit Exhibit 68 (69) Exhibit Exhibit 69 (70) Exhibit Exhibit 70 (71) Exhibit Exhibit 71 (72) Exhibit Exhibit 72 (73) Exhibit Exhibit 74 (74) Exhibit Exhibit 73 (75) Exhibit Exhibit 75 (76) Exhibit Exhibit 76 (77) Exhibit Exhibit 77 (78) Exhibit Exhibit 78 (79) Exhibit Exhibit 79 (80) Exhibit Exhibit 80 (81) Exhibit Exhibit 81 (82) Certificate of Service Exhibit 82 (83) Exhibit Exhibit 83 (84) Exhibit Exhibit 84 (85) Exhibit Exhibit 85 (86) Exhibit Exhibit 86 (87) Exhibit Exhibit 87 (88) Exhibit Exhibit 88 (89) Exhibit Exhibit 89 (90) Exhibit Exhibit 90 (91) Exhibit Exhibit 91 (92) Exhibit Exhibit 92 (93) Exhibit Exhibit 93 (94) Exhibit Exhibit 94 (95) Exhibit Exhibit 95 (96) Exhibit Exhibit 96 (97) Exhibit Exhibit 97 (98) Exhibit Exhibit 98 (99) Exhibit Exhibit 99 (100) Exhibit Exhibit 100 (101) Exhibit Exhibit 101 (102) Exhibit Exhibit 102 (103) Exhibit Exhibit 103 (104) Exhibit Exhibit 104 (105) Exhibit Exhibit 105 (106) Exhibit Exhibit 106 (107) Exhibit Exhibit 107 (108) Exhibit Exhibit 108 (109) Exhibit Exhibit 109 (110) Exhibit Exhibit 110 (111) Certificate of Service Exhibit 111 (112) Exhibit Exhibit 112 (113) Exhibit Exhibit 113 (114) Exhibit Exhibit 114 (115) Exhibit Exhibit 115 (116) Exhibit Exhibit 116 (117) Exhibit Exhibit 117 (118) Exhibit Exhibit 118 (119) Exhibit Exhibit 119 (120) Exhibit Exhibit 120 (121) Exhibit Exhibit 121 (122) Exhibit Exhibit 122 (123) Exhibit Exhibit 123 (124) Exhibit Exhibit 124 (125) Exhibit Exhibit 126 (126) Exhibit Exhibit 125 (127) Exhibit Exhibit 127 (128) Exhibit Exhibit 128 (129) Exhibit Exhibit 129 (130) Exhibit Exhibit 130 (131) Exhibit Exhibit 131 (132) Exhibit Exhibit 132 (133) Exhibit Exhibit 133 (134) Exhibit Exhibit 134 (135) Exhibit Exhibit 134 (136) Exhibit Exhibit 136 (137) Exhibit Exhibit 137 (138) Exhibit Exhibit 138 (139) Exhibit Exhibit 139 (140) Exhibit Exhibit 140 (141) Exhibit Exhibit 141 (142) Exhibit Exhibit 142 (143) Exhibit Exhibit 143 (144) Exhibit Exhibit 144 (145) Exhibit Exhibit 145 (146) Exhibit Exhibit 146 (147) Exhibit Exhibit 147 (148) Exhibit Exhibit 148 (149) Exhibit Exhibit 149 (150) Exhibit Exhibit 150 (151) Exhibit Exhibit 151 (152) Exhibit Exhibit 152 (153) Exhibit Exhibit 153 (154) Exhibit Exhibit 154 (155) Exhibit Exhibit 155 (156) Exhibit Exhibit 156 (157) Exhibit Exhibit 57 (158) Exhibit Exhibit 158 (159) Exhibit Exhibit 159 (160) Exhibit Exhibit 160 (161) Exhibit Exhibit 161 (162) Exhibit Exhibit 162 (163) Exhibit Exhibit 163 (164) Exhibit Exhibit 164 (165) Exhibit Exhibit 165 (166) Exhibit Exhibit 166 (167) Exhibit Exhibit 167 (168) Exhibit Exhibit 168 (169) Exhibit Exhibit 169 (170) Exhibit Exhibit 170 (171) Exhibit Exhibit 171 (172) Exhibit Exhibit 172) (Glasser, Brian) (Entered: 08/14/2022) | 08/13/2022 |
| 114 | WITNESS LIST AND AMENDED Exhibit List filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 2). (Attachments: (1) Exhibit A)(Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 8/15/2022. (cmm) (Entered: 08/14/2022) | 08/14/2022 |
| 115 | Notice of Submission / Agenda for Hearing on the Debtors' Motion for Declaratory and Injunctive Relief on August 15, 2022, at 9:00 a.m (Prevailing Eastern Time) filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 2). (Hokanson, Jeffrey) (Entered: 08/14/2022) | 08/14/2022 |
| 116 | Notice of Submission // Notice of Order in In re 3M Combat Arms Liability Litigation filed by Kevin M Davis, Brian A Glasser, Martha R. Lehman, Tristan Manthey, Adam C. Silverstein, Patricia B. Tomasco, Robert J Pfister on behalf of Interested Parties Aylstock, Witkin, Kreis & Overholtz, PLLC, Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins, Wilkerson, & Vaughn, Clark, Love & Hutson, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Johnson Law Group, Seeger Weiss LLP, The Gori Law Firm, P.C., Tracey Fox King & Walters. (Pfister, Robert) (Entered: 08/14/2022) | 08/14/2022 |
| 117 | AMENDED Witness List AND SECOND AMENDED EXHIBIT LIST filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc 2, 114). (Attachments: (1) Exhibit A)(Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Related document #114 added. Modified on 8/15/2022. (cmm) (Entered: 08/14/2022) | 08/14/2022 |
| 118 | WITNESS LIST AND AMENDED Exhibit List filed by Brian A Glasser, Kevin C Maclay, Tristan Manthey, Adam C. Silverstein, Patricia B. Tomasco, Robert J Pfister on behalf of Interested Parties Aylstock, Witkin, Kreis & Overholtz, PLLC, Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins, Wilkerson, & Vaughn, Clark, Love & Hutson, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Johnson Law Group, Seeger Weiss LLP, The Gori Law Firm, P.C., Tracey Fox King & Walters (re: Doc # 106). (Pfister, Robert) CORRECTION: Missing docket text added in all capitals. Modified on 8/16/2022. (cmm) (Entered: 08/15/2022) | 08/15/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 120 | Minute Entry/Order: re: Hearing on Debtors'/Plaintiffs' Motion for Declaratory and Injunctive Relief (I) Confirming that the Automatic Stay Applies to Certain Actions Against a Non-Debtor; (II) Preliminarily Enjoining Certain Actions Against a Non-Debtor; and (III) Granting a Temporary Restraining Order Pending an Order on the Preliminary Injunction and Objections (re: Doc # 2). Disposition: Hearing held. Matter continued. Hearing to be held on 08/16/2022 at 08:00 AM Eastern in Rm 307 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 and 646-828-7666, Meeting ID 160 2312 6397 Notice given in court and no further notice will be issued. (hhd) (Entered: 08/16/2022) | 08/15/2022 |
| 119 | AMENDED WITNESS LIST AND THIRD AMENDED Exhibit List filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc 2, 117). (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Related document #117 added. Modified on 8/16/2022. (cmm) (Entered: 08/16/2022) | 08/16/2022 |
| 121 | Request for Transcript filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 120). (Maoz, Nir) (Entered: 08/16/2022) | 08/16/2022 |
| 122 | Stipulation of Facts/Documents filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC. (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) (Entered: 08/16/2022) | 08/16/2022 |
| 123 | Appearance filed by Sean Patrick Tracey on behalf of Interested Party Tracey Fox King & Walters. (Tracey, Sean) (Entered: 08/16/2022) | 08/16/2022 |
| 124 | Notice of Submission NOTICE OF ORDER IN IN RE 3M COMBAT ARMS LIABILITY LITIGATION filed by Brian A Glasser, Martha R. Lehman, Kevin C Maclay, Tristan Manthey, Adam C. Silverstein, Robert J Pfister on behalf of Interested Parties Aylstock, Witkin, Kreis & Overholtz, PLLC, Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins, Wilkerson, & Vaughn, Clark, Love & Hutson, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Johnson Law Group, Keller Postman LLC, Seeger Weiss LLP, The Gori Law Firm, P.C., Tracey Fox King & Walters. (Pfister, Robert) (Entered: 08/16/2022) | 08/16/2022 |
| 125 | Minute Entry/Order: re:Continued Hearing on Debtors'/Plaintiffs' Motion for Declaratory and Injunctive Relief (I) Confirming that the Automatic Stay Applies to Certain Actions Against a Non-Debtor; (II) Preliminarily Enjoining Certain Actions Against a Non-Debtor; and (III) Granting a Temporary Restraining Order Pending an Order on the Preliminary Injunction and Objections (Day 2) (re: Doc # 2). Disposition: Hearing held. Matter continued. Hearing to be held on 08/17/2022 at 08:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via ZOOM. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 and 646-828-7666, Meeting ID 160 2312 6397. Notice given in court and no further notice will be issued. (hhd) (Entered: 08/16/2022) | 08/16/2022 |
| 126 | Request for Transcript filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 125). (Maoz, Nir) (Entered: 08/16/2022) | 08/16/2022 |
| 127 | Notice of Submission // Claimants' Supplemental Request for Judicial Notice filed by Robert J Pfister on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 113). (Pfister, Robert) (Entered: 08/17/2022) | 08/17/2022 |
| 128 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 8/15/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 121). Remote electronic access to the transcript is restricted until 11/15/2022. (Bowen, James) (Entered: 08/17/2022) [Transcript] | 08/17/2022 |
| 129 | Notice of Submission // Supplement to Stipulated Facts filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 122). (Maoz, Nir) (Entered: 08/17/2022) | 08/17/2022 |
| 130 | Appearance filed by David Agay on behalf of Plaintiff Aearo Technologies LLC, PLAINTIFF 3M OCCUPATIONAL SAFETY LLC, PLAINTIFF AEARO HOLDING LLC, PLAINTIFF AEARO INTERMEDIATE LLC, AND PLAINTIFF AEARO LLC. (Agay, David) CORRECTION: Missing docket text added in all capitals. Modified on 8/18/2022. (cmm) (Entered: 08/17/2022) | 08/17/2022 |
| 131 | Appearance filed by Micah E. Marcus on behalf of Plaintiff Aearo Technologies LLC, PLAINTIFF 3M OCCUPATIONAL SAFETY LLC, PLAINTIFF AEARO HOLDING LLC, PLAINTIFF AEARO INTERMEDIATE LLC, AND PLAINTIFF AEARO LLC. (Marcus, Micah) CORRECTION: Missing docket text added in all capitals. Modified on 8/18/2022. (cmm) (Entered: 08/17/2022) | 08/17/2022 |
| 132 | Appearance filed by Joshua A. Gadharf on behalf of Plaintiff Aearo Technologies LLC, PLAINTIFF 3M OCCUPATIONAL SAFETY LLC, PLAINTIFF AEARO HOLDING LLC, PLAINTIFF AEARO INTERMEDIATE LLC, AND PLAINTIFF AEARO LLC. (Gadharf, Joshua) CORRECTION: Missing docket text added in all capitals. Modified on 8/18/2022. (cmm) (Entered: 08/17/2022) | 08/17/2022 |
| 133 | Appearance filed by Ashley J. Jericho on behalf of Plaintiff Aearo Technologies LLC, PLAINTIFF 3M OCCUPATIONAL SAFETY LLC, PLAINTIFF AEARO HOLDING LLC, PLAINTIFF AEARO INTERMEDIATE LLC, AND PLAINTIFF AEARO LLC. (Jericho, Ashley) CORRECTION: Missing docket text added in all capitals. Modified on 8/18/2022. (cmm) (Entered: 08/17/2022) | 08/17/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 134 | Minute Entry/Order: re: Continued Hearing on Debtors'/Plaintiffs' Motion for Declaratory and Injunctive Relief (I) Confirming that the Automatic Stay Applies to Certain Actions Against a Non-Debtor; (II) Preliminarily Enjoining Certain Actions Against a Non-Debtor; and (III) Granting a Temporary Restraining Order Pending an Objection on the Preliminary Injunction and Objections by the United States Trustee; Interested Parties, The Bailey Glasser and Pulaski Kherkher Plaintiffs; Interested Party, Paul LLP; Interested Parties, Aylstock, Witkin, Kreis & Overholtz, PLLC, Bellwether Plaintiffs Adkins, Wilkerson, & Vaughn, Clark, Love & Hutson, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Johnson Law Group, Seeger Weiss LLP, The Gori Law Firm, P.C., Tracey Fox King & Walters; and on the Objection or In The Alternative, Request For Condition To Impose Injunction by Keller Postman LLC (Day 3) (re: Doc # 2). Disposition: Hearing held. Court swears in and hears evidence from: John R. Castellano, Chris Sullivan, James Heaton, Brian Myers, Michael Dai and Jeffrey Stein. Plaintiffs exhibits: 43, 144, 37, 32, 28, 24, 20, 41, 141, 146, 2, 67, 1, 248, 176, 200, 70, 69, 247, 77, 76, 119, 71, 148, 66, Claimants exhibit A, 304, 148, 554, 142 and 138 are admitted into evidence. Interested parties exhibits: AG, GL, GM, K, FE, B, EY, EU, GF, and GD are entered into evidence. Parties withdraw their respective requests for judicial notice, docket entries 109, 113, and 127, on the record. Parties invited to submit Proposed Findings of Fact and Conclusions of Law by 8/22/22 at 5:00 pm Eastern. Court takes ruling on matter under advisement. (hhd) (Entered: 08/18/2022) | 08/17/2022 |
| 135 | Request for Transcript filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 134). (Maoz, Nir) (Entered: 08/18/2022) | 08/18/2022 |
| 136 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 8/16/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 126). Remote electronic access to the transcript is restricted until 11/16/2022. (Bowen, James) (Entered: 08/18/2022) [Transcript] | 08/18/2022 |
| 137 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 8/17/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 135). Remote electronic access to the transcript is restricted until 11/17/2022. (Bowen, James) (Entered: 08/19/2022) | 08/19/2022 |
| 138 | Notice of Submission / Letter from Chad Husnick re MDL Order filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 08/19/2022) | 08/19/2022 |
| 139 | Notice of Submission of Letter from Ashley Keller in Response to Letter from Chad Husnick filed by Ashley Keller on behalf of Interested Party Keller Postman LLC (re: Doc # 138). (Attachments: (1) Exhibit 1 (2) Exhibit 2) (Keller, Ashley) (Entered: 08/21/2022) | 08/21/2022 |
| 140 | Motion to Extend Time to File Response to Debtors' Complaint filed by Brian A Glasser, Ashley Keller, Martha R. Lehman, Kevin C Maclay, Tristan Manthey, Robert J Pfister, Syed Ali Saeed, Patricia B. Tomasco, Meredith R. Theisen on behalf of Interested Parties Robinson Calcagnie, Inc., Nabers Law Firm PLLC, Junell & Associates PLLC, The Monsour Law Firm, Pulaski Kherkher, PLLC, Weitz & Luxenberg P.C., Aylstock, Witkin, Kreis & Overholtz, PLLC, Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins, Wilkerson, & Vaughn, Clark, Love & Hutson, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Johnson Law Group, Keller Postman LLC, Paul LLP, Seeger Weiss LLP, The Gori Law Firm, P.C., Tracey Fox King & Walters. (Attachments: (1) Exhibit A - Proposed Order) (Theisen, Meredith) (Entered: 08/24/2022) [Granted by # 141 CMECF.widget.DocLink('documentKcaseidV741804Kde_seq_numV557Kdm_idV43788425Kdoc_numV141Kpdf_headerV1');] | 08/24/2022 |
| 141 | Order Granting Motion to Extend Time to File Response to Debtors' Complaint (re: Doc # 140). Time to file extended to 10/10/2022. Attorney for the interested parties must distribute this order. (cmm) (Entered: 08/26/2022) | 08/26/2022 |
| 142 | Certificate of Service re: Order on Motion to Extend Time to File Adversary Documents, filed by Meredith R. Theisen on behalf of Interested Party Seeger Weiss LLP (re: Doc # 141). (Theisen, Meredith) (Entered: 08/26/2022) | 08/26/2022 |
| 143 | Order Denying Plaintiffs' Motion for Preliminary Injunction (re: Doc # 2). The Clerk's Office will distribute this order. (cmm) (Entered: 08/26/2022) [Opinion] | 08/26/2022 |
| 144 | BNC Certificate of Service - ORDER (re: Doc # 143). No. of Notices: 2 Notice Date 08/28/2022. (Admin) (Entered: 08/29/2022) | 08/28/2022 |
| 145 | Notice of Appeal filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 143). Appellant Designation due by 09/12/2022. (Attachments: (1) Exhibit A - Order)(Hokanson, Jeffrey) (Entered: 08/29/2022) | 08/29/2022 |
| | Receipt of Notice of Appeal( 22-50059) [appeal,ntcapl] (298.00) Filing Fee. Receipt number A33326987. Fee amount 298.00 (re: Doc # 145). (U.S. Treasury) (Entered: 08/29/2022) | 08/29/2022 |
| 146 | Request for Certification for Direct Appeal to Court of Appeals filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 145). Response to Request for Certification for Direct Appeal due by 09/12/2022. (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C (4) Exhibit D) (Hokanson, Jeffrey) (Entered: 08/29/2022) [Granted by # 181 CMECF.widget.DocLink('documentKcaseidV741804Kde_seq_numV680Kdm_idV43843605Kdoc_numV181Kpdf_headerV1');] | 08/29/2022 |
| 147 | Appearance filed by Richard Paul III on behalf of Interested Party Paul LLP. (Paul, Richard) (Entered: 08/30/2022) | 08/30/2022 |
| 148 | Appearance filed by Ashlea Schwarz on behalf of Interested Party Paul LLP. (Schwarz, Ashlea) (Entered: 08/30/2022) | 08/30/2022 |

A.17

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 149 | Appearance filed by Andrew T Kight on behalf of Interested Party Weitz & Luxenberg P.C. (Kight, Andrew) (Entered: 09/02/2022) | 09/02/2022 |
| 150 | Appearance filed by Michael W. Hile on behalf of Interested Party Weitz & Luxenberg P.C. (Hile, Michael) (Entered: 09/02/2022) | 09/02/2022 |
| 151 | Appearance filed by Justine Delaney on behalf of Interested Party Weitz & Luxenberg P.C. (Delaney, Justine) (Entered: 09/02/2022) | 09/02/2022 |
| 152 | Appearance filed by Perry Weitz on behalf of Interested Party Weitz & Luxenberg P.C. (Weitz, Perry) (Entered: 09/02/2022) | 09/02/2022 |
| 153 | Appearance filed by Lisa Nathanson Busch on behalf of Interested Party Weitz & Luxenberg P.C. (Busch, Lisa) (Entered: 09/06/2022) | 09/06/2022 |
| 154 | Appearance filed by Eric John McKeown on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC. (McKeown, Eric) (Entered: 09/08/2022) | 09/08/2022 |
| 155 | Certificate of Service re: Notice of Appeal, Request for Certification for Direct Appeal to Court of Appeals, filed by Noticing Agent on behalf of Plaintiff Aearo Technologies LLC (re: Doc # 145, 146). (Baer, Herbert) (Entered: 09/08/2022) | 09/08/2022 |
| 156 | Notice of Withdrawal as Attorney filed by Deborah Caruso on behalf of Interested Party Seeger Weiss LLP. (Caruso, Deborah) (Entered: 09/12/2022) | 09/12/2022 |
| 157 | Notice of Withdrawal as Attorney filed by Meredith R. Theisen on behalf of Interested Party Seeger Weiss LLP. (Theisen, Meredith) (Entered: 09/12/2022) | 09/12/2022 |
| 158 | Appearance filed by Deborah Caruso on behalf of Intervenor Tort Claimants - CAE Committee. (Caruso, Deborah) (Entered: 09/12/2022) | 09/12/2022 |
| 159 | Appearance filed by Meredith R. Theisen on behalf of Intervenor Tort Claimants - CAE Committee. (Theisen, Meredith) (Entered: 09/12/2022) | 09/12/2022 |
| 160 | Agreed Motion to Intervene filed by Jeffrey A Hokanson, Meredith R. Theisen on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC, Intervenor Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order) (Theisen, Meredith) (Entered: 09/12/2022) [Granted by # 180 CMECF.widget.DocLink('documentKcaseidV741804Kde_seq_numV675Kdm_idV43842592Kdoc_numV180Kpdf_headerV1');] | 09/12/2022 |
| 161 | Notice of Withdrawal as Attorney filed by Thomas E Patterson on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Patterson, Thomas) (Entered: 09/12/2022) | 09/12/2022 |
| 162 | Notice of Withdrawal as Attorney filed by Melanie Louise Cyganowski on behalf of Interested Party Seeger Weiss LLP. (Cyganowski, Melanie) (Entered: 09/12/2022) | 09/12/2022 |
| 163 | Notice of Withdrawal as Attorney filed by Adam C. Silverstein on behalf of Interested Party Seeger Weiss LLP. (Silverstein, Adam) (Entered: 09/12/2022) | 09/12/2022 |
| 164 | Notice of Withdrawal as Attorney filed by John Bougiamas on behalf of Interested Party Seeger Weiss LLP. (Bougiamas, John) (Entered: 09/12/2022) | 09/12/2022 |
| 165 | Notice of Withdrawal as Attorney filed by Robert C Yan on behalf of Interested Party Seeger Weiss LLP. (Yan, Robert) (Entered: 09/12/2022) | 09/12/2022 |
| 166 | Notice of Withdrawal as Attorney filed by Jennifer S. Feeney on behalf of Interested Party Seeger Weiss LLP. (Feeney, Jennifer) (Entered: 09/12/2022) | 09/12/2022 |
| 167 | Objection to Request for Certification for Direct Appeal to Court of Appeals filed by Meredith R. Theisen on behalf of Intervenor Tort Claimants - CAE Committee (re: Doc # 146). (Theisen, Meredith) (Entered: 09/12/2022) | 09/12/2022 |
| 168 | Reply to Request for Certification for Direct Appeal to Court of Appeals filed by Patricia B. Tomasco on behalf of Interested Party Bellwether Plaintiffs Adkins and Vaugh (re: Doc # 146). (Tomasco, Patricia) CORRECTION: See doc. #179 for corrected filing. Modified on 9/13/2022. (cmm) (Entered: 09/12/2022) | 09/12/2022 |
| 169 | Notice of Withdrawal as Attorney filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Maoz, Nir) (Entered: 09/12/2022) | 09/12/2022 |
| 170 | Appearance filed by Nir Maoz on behalf of Intervenor Tort Claimants - CAE Committee. (Maoz, Nir) (Entered: 09/12/2022) | 09/12/2022 |
| 171 | Notice of Withdrawal as Attorney filed by Michael L. Tuchin on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Tuchin, Michael) (Entered: 09/12/2022) | 09/12/2022 |
| 172 | Appearance filed by Michael L. Tuchin on behalf of Intervenor Tort Claimants - CAE Committee. (Tuchin, Michael) (Entered: 09/12/2022) | 09/12/2022 |
| 173 | Notice of Withdrawal as Attorney filed by Robert J Pfister on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Pfister, Robert) (Entered: 09/12/2022) | 09/12/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 174 | Appearance filed by Robert J Pfister on behalf of Intervenor Tort Claimants - CAE Committee. (Pfister, Robert) (Entered: 09/12/2022) | 09/12/2022 |
| 175 | Notice of Withdrawal as Attorney filed by Sasha M. Gurvitz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Gurvitz, Sasha) (Entered: 09/12/2022) | 09/12/2022 |
| 176 | Appearance filed by Sasha M. Gurvitz on behalf of Intervenor Tort Claimants - CAE Committee. (Gurvitz, Sasha) (Entered: 09/12/2022) | 09/12/2022 |
| 177 | Appearance filed by Ariella Thal Simonds on behalf of Intervenor Tort Claimants - CAE Committee. (Thal Simonds, Ariella) (Entered: 09/12/2022) | 09/12/2022 |
| 178 | Appellant Designation of Items for Inclusion in Record on Appeal and Statement of Issues, filed by Jeffrey A Hokanson on behalf of Plaintiffs 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC (re: Doc # 145). Appellee designation due by 09/26/2022. (Hokanson, Jeffrey) (Entered: 09/12/2022) | 09/12/2022 |
| 179 | Amended Objection to Request for Certification for Direct Appeal to Court of Appeals filed by Patricia B. Tomasco on behalf of Interested Party Bellwether Plaintiffs Adkins and Vaugh (re: Doc # 146). (Tomasco, Patricia) (Entered: 09/12/2022) | 09/12/2022 |
| 180 | Order Granting Motion to Intervene (re: Doc # 160). Attorney for Intervenor Tort Claimants - CAE Committee must distribute this order. (cmm) (Entered: 09/13/2022) | 09/13/2022 |
| 181 | Certification for Direct Appeal to Court of Appeals (re: Doc #146). The Clerk's Office will distribute this order. (nar) (Entered: 09/13/2022) | 09/13/2022 |
| 182 | Certificate of Service re: Order on Motion to Intervene, filed by Meredith R. Theisen on behalf of Defendant Tort Claimants - CAE Committee (re: Doc # 180). (Theisen, Meredith) (Entered: 09/13/2022) | 09/13/2022 |
| 183 | Certificate of Service re: Order on Motion to Intervene, filed by Adam C. Silverstein on behalf of Interested Party Counsel for the Official Committee of Unsecured Cr (re: Doc # 180). (Silverstein, Adam) (Entered: 09/13/2022) | 09/13/2022 |
| 184 | Motion to Withdraw as Attorney filed by Kevin C Maclay on behalf of Interested Parties Cory Watson, P.C., Heninger Garrison Davis, LLC, The Gori Law Firm, P.C. (Maclay, Kevin) (Entered: 09/13/2022) [Granted by # 190 CMECF.widget.DocLink('documentKcaseidV741804Kde_seq_numV711Kdm_idV43848672Kdoc_numV190Kpdf_headerV1');] | 09/13/2022 |
| 185 | Appearance filed by Kevin C Maclay on behalf of Defendant Tort Claimants - CAE Committee. (Maclay, Kevin) (Entered: 09/13/2022) | 09/13/2022 |
| 186 | Motion to Withdraw as Attorney filed by Todd E. Phillips on behalf of Interested Parties Cory Watson, P.C., Heninger Garrison Davis, LLC, The Gori Law Firm, P.C. (Phillips, Todd) (Entered: 09/13/2022) [Granted by # 191 CMECF.widget.DocLink('documentKcaseidV741804Kde_seq_numV713Kdm_idV43850330Kdoc_numV191Kpdf_headerV1');] | 09/13/2022 |
| 187 | Appearance filed by Todd E. Phillips on behalf of Defendant Tort Claimants - CAE Committee. (Phillips, Todd) (Entered: 09/13/2022) | 09/13/2022 |
| 188 | Motion to Withdraw as Attorney filed by Kevin M Davis on behalf of Interested Parties Cory Watson, P.C., Heninger Garrison Davis, LLC, The Gori Law Firm, P.C. (Davis, Kevin) (Entered: 09/13/2022) [Granted by # 192 CMECF.widget.DocLink('documentKcaseidV741804Kde_seq_numV715Kdm_idV43850351Kdoc_numV192Kpdf_headerV1');] | 09/13/2022 |
| 189 | Appearance filed by Kevin M Davis on behalf of Defendant Tort Claimants - CAE Committee. (Davis, Kevin) (Entered: 09/13/2022) | 09/13/2022 |
| 190 | Order Granting Kevin C. Maclay's Motion to Withdraw as Attorney on behalf of Interested Parties Cory Watson, P.C., Heninger Garrison Davis, LLC, The Gori Law Firm, P.C (re: Doc # 184). Attorney for the interested parties must distribute this order. (lat) (Entered: 09/14/2022) | 09/14/2022 |
| 193 | Circuit Court of Appeals Case Number 22-2606 (re: Doc # 145). (nar) (Entered: 09/15/2022) | 09/13/2022 |
| 190 | Order Granting Kevin C. Maclay's Motion to Withdraw as Attorney on behalf of Interested Parties Cory Watson, P.C., Heninger Garrison Davis, LLC, The Gori Law Firm, P.C (re: Doc # 184). Attorney for the interested parties must distribute this order. (lat) (Entered: 09/14/2022) | 09/14/2022 |
| 191 | Order Granting Todd E. Phillips Motion to Withdraw as Attorney on behalf of Interested Parties Cory Watson, P.C., Heninger Garrison Davis, LLC, The Gori Law Firm, P.C(re: Doc # 186). Attorney for the interested parties must distribute this order. (lat) (Entered: 09/15/2022) | 09/15/2022 |
| 192 | Order Granting Kevin M Davis' Motion to Withdraw as Attorney on behalf of certain claimants represented by The Gori Law Firm, P.C.; Cory Watson, P.C.; and Heninger Garrison Davis, LLC((re: Doc # 188). Attorney for the interested parties must distribute this order. (lat) (Entered: 09/15/2022) | 09/15/2022 |
| 194 | Appearance filed by Melanie Louise Cyganowski on behalf of Interested Party Counsel for the Official Committee of Unsecured Cr. (Cyganowski, Melanie) (Entered: 09/15/2022) | 09/15/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 195 | Appearance filed by Adam C. Silverstein on behalf of Interested Party Counsel for the Official Committee of Unsecured Cr. (Silverstein, Adam) (Entered: 09/15/2022) | 09/15/2022 |
| 196 | Appearance filed by John Bougiamas on behalf of Interested Party Counsel for the Official Committee of Unsecured Cr. (Bougiamas, John) (Entered: 09/15/2022) | 09/15/2022 |
| 197 | Appearance filed by Jennifer S. Feeney on behalf of Interested Party Counsel for the Official Committee of Unsecured Cr. (Feeney, Jennifer) (Entered: 09/15/2022) | 09/15/2022 |
| 198 | Appearance filed by Pauline McTernan on behalf of Interested Party Counsel for the Official Committee of Unsecured Cr. (McTernan, Pauline) (Entered: 09/15/2022) | 09/15/2022 |
| 199 | BNC Certificate of Service - ORDER (re: Doc # 181). No. of Notices: 2 Notice Date 09/15/2022. (Admin) (Entered: 09/16/2022) | 09/15/2022 |
| 200 | Appearance filed by Michael S. Winograd on behalf of Defendant Tort Claimants - CAE Committee. (Winograd, Michael) (Entered: 09/16/2022) | 09/16/2022 |
| 201 | Appearance filed by David Molton on behalf of Defendant Tort Claimants - CAE Committee. (Molton, David) (Entered: 09/16/2022) | 09/16/2022 |
| 202 | Appearance filed by Jeffrey L. Jonas on behalf of Defendant Tort Claimants - CAE Committee. (Jonas, Jeffrey) (Entered: 09/16/2022) | 09/16/2022 |
| 203 | Deficiency Notice Issued re: Appearance (re: Doc # 194). Deficiency to be cured by 9/30/2022. (cmm) (Entered: 09/16/2022) | 09/16/2022 |
| 204 | Deficiency Notice Issued re: Appearance (re: Doc # 195). Deficiency to be cured by 9/30/2022. (cmm) (Entered: 09/16/2022) | 09/16/2022 |
| 205 | Deficiency Notice Issued re: Appearance (re: Doc # 196). Deficiency to be cured by 9/30/2022. (cmm) (Entered: 09/16/2022) | 09/16/2022 |
| 206 | Deficiency Notice Issued re: Appearance (re: Doc # 197). Deficiency to be cured by 9/30/2022. (cmm) (Entered: 09/16/2022) | 09/16/2022 |
| 207 | Deficiency Notice Issued re: Appearance (re: Doc # 198). Deficiency to be cured by 9/30/2022. (cmm) (Entered: 09/16/2022) | 09/16/2022 |
| 208 | Appearance filed by Melanie Louise Cyganowski on behalf of Defendant Tort Claimants - CAE Committee. (Cyganowski, Melanie) (Entered: 09/16/2022) | 09/16/2022 |
| 209 | Appearance filed by Adam C. Silverstein on behalf of Defendant Tort Claimants - CAE Committee. (Silverstein, Adam) (Entered: 09/16/2022) | 09/16/2022 |
| 210 | Appearance filed by John Bougiamas on behalf of Defendant Tort Claimants - CAE Committee. (Bougiamas, John) (Entered: 09/16/2022) | 09/16/2022 |
| 211 | Appearance filed by Jennifer S. Feeney on behalf of Defendant Tort Claimants - CAE Committee. (Feeney, Jennifer) (Entered: 09/16/2022) | 09/16/2022 |
| 212 | Appearance filed by Pauline McTernan on behalf of Defendant Tort Claimants - CAE Committee. (McTernan, Pauline) (Entered: 09/16/2022) | 09/16/2022 |
| 213 | Certificate of Service re: Complaint, Motion for Preliminary Injunction, Declaration, Declaration, Exhibit, Debtors' Ex Parte Motion for Approval of Service Procedures for Summons, Complaint, and Other Pleadings, Debtors' Ex Parte Motion for Entry of an Order Shortening Notice and Setting an Expedited Hearing on the Debtors' Request for a Temporary Restraining Order, Corporate Ownership Statement, Scheduling Order, Order on Motion for Authority, filed by Noticing Agent on behalf of Plaintiff Aearo Technologies LLC (re: Doc # 1, 2, 3, 4, 5, 6, 7, 8, 9, 10). (Baer, Herbert) (Entered: 09/23/2022) | 09/23/2022 |
| 214 | Appellee Designation of Additional Items for Inclusion in Record on Appeal filed by Meredith R. Theisen on behalf of Defendant Tort Claimants - CAE Committee (re: Doc # 145). (Theisen, Meredith) (Entered: 09/26/2022) | 09/26/2022 |
| 215 | Appellee Designation of Additional Items for Inclusion in Record on Appeal filed by Patricia B. Tomasco on behalf of Interested Party Bellwether Plaintiffs Adkins and Vaughn (re: Doc # 145). (Tomasco, Patricia) (Entered: 09/26/2022) | 09/26/2022 |
| 216 | Notice of Withdrawal as Attorney filed by Andrew T Kight on behalf of Interested Party Weitz & Luxenberg P.C. (Kight, Andrew) (Entered: 09/27/2022) | 09/27/2022 |
| 217 | Notice of Withdrawal as Attorney filed by Michael W. Hile on behalf of Interested Party Weitz & Luxenberg P.C. (Hile, Michael) (Entered: 09/27/2022) | 09/27/2022 |
| 218 | AMENDED Appellee Designation of Additional Items for Inclusion in Record on Appeal filed by Meredith R. Theisen on behalf of Defendant Tort Claimants - CAE Committee (re: Doc # 145). (Theisen, Meredith) CORRECTION: Missing docket text in all capitals. Modified on 9/29/2022. (nar) (Entered: 09/29/2022) | 09/29/2022 |
| 219 | AMENDED Appellee Designation of Additional Items for Inclusion in Record on Appeal filed by Patricia B. Tomasco on behalf of Interested Party Bellwether Plaintiffs Adkins and Vaughn (re: Doc # 145). (Tomasco, Patricia) CORRECTION: Missing docket text in all capitals. Modified on 9/29/2022. (nar) (Entered: 09/29/2022) | 09/29/2022 |

A.20

| # | Docket Text | Date Filed |
|---|---|---|
| 220 | Agreed Motion to Extend Time to File Answer or Otherwise Respond to Complaint filed by Meredith R. Theisen, Martha R. Lehman on behalf of Interested Party Tracey Fox King & Walters. (Attachments: (1) Main Document (2) Exhibit A) (Lehman, Martha) (Entered: 10/10/2022) [Amended by # 221 CMECF.widget.DocLink('documentKcaseidV741804Kde_seq_numV844Kdm_idV43933162Kdoc_numV221Kpdf_headerV1');] | 10/10/2022 |
| 221 | Amended Motion to Extend Time to File Answer or Otherwise Respond to Complaint filed by Meredith R. Theisen, Martha R. Lehman on behalf of Interested Party Tracey Fox King & Walters (re: Doc # 220). (Attachments: (1) Exhibit A) (Lehman, Martha) (Entered: 10/10/2022) | 10/10/2022 |
| 222 | Motion to Extend Time to File Answer or Otherwise Respond to Complaint for All Named Defendants (Unopposed) filed by Martha R. Lehman, Meredith R. Theisen on behalf of Interested Parties Johnson Law Group, Tracey Fox King & Walters, Defendant Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order) (Theisen, Meredith) (Entered: 10/11/2022) [Granted by # 223 CMECF.widget.DocLink('documentKcaseidV741804Kde_seq_numV853Kdm_idV43939410Kdoc_numV223Kpdf_headerV1');] | 10/11/2022 |
| 223 | Order Granting Motion to Extend Time to File Answer or Otherwise Respond to Complaint for All Named Defendants (Unopposed). All Appendix A Defendants shall not have to answer or otherwise respond to the Complaint pending a ruling on the Debtors appeal of the PI Order and have thirty (30) days from that ruling to answer or otherwise respond to the Complaint (re: Doc # 222). Attorney for the interested parties must distribute this order. (lat) (Entered: 10/12/2022) | 10/12/2022 |
| 224 | Certificate of Service re: Order on Motion to Extend Time to File Adversary Documents, filed by Martha R. Lehman on behalf of Interested Party Tracey Fox King & Walters (re: Doc # 223). (Lehman, Martha) (Entered: 10/12/2022) | 10/12/2022 |
| 225 | ORDER re: 1) Petition for Authorization of Direct Appeal under 28 U.S.C. §158(d)(2). 5 2) Answer of CAE Committee in Opposition to Petition for Direct Appeal under 28 U.S.C. §158(d)(2). 3) Objection to Petition for Authorization of Direct Appeal under 28 U.S.C. §158(d)(2). 4) Reply In Support of Petition for Authorization of Direct Appeal under 28 U.S.C. §158(d)(2). The petition is GRANTED. The appellants shall pay the required appellate fees to the clerk of the bankruptcy court within 14 days from the entry of this order pursuant to Federal Rule of Appellate Procedure 5(d)(1) (re: Doc # 181). The Clerk's Office will distribute this order. (nar) (Entered: 10/13/2022) | 10/12/2022 |
| 226 | BNC Certificate of Service - ORDER (re: Doc # 225). No. of Notices: 2 Notice Date 10/15/2022. (Admin) (Entered: 10/16/2022) | 10/15/2022 |
|  | Fee due and payable by Jeffrey A Hokanson on behalf of Plaintiff 3M Occupational Safety LLC for Request for Certification for Direct Appeal to Court of Appeals in the amount of $207.00 (re: Doc # 146). (kao) (Entered: 10/24/2022) | 10/24/2022 |
|  | Receipt of Request for Certification for Direct Appeal to Court of Appeals( 22-50059) [motion,reqdirap] (207.00) Filing Fee. Receipt number A33469121. Fee amount 207.00 (re: Doc # 146). (U.S. Treasury) (Entered: 10/24/2022) | 10/24/2022 |

A.21

**U.S. Bankruptcy Court**
**Southern District of Indiana (Indianapolis)**
**Bankruptcy Petition #: 22-02890-JJG-11**

ClaimsAgent, NtcAgent, OmniHearing, PlnDue, DsclsDue, JNTADMN, LEAD, CaptionLead, MEDIATION

[*Associated Cases*          ▼]

*Assigned to:* Jeffrey J. Graham
Chapter 11
Voluntary
Asset
*Creditors:* 201
Show Associated Cases
Claims Register

|  |  |
|---|---|
| *Date filed:* | 07/26/2022 |
| *341 meeting:* | 09/06/2022 10:00 AM |
| *Deadline for filing claims (govt.):* | 01/23/2023 |

A.22

**Debtor**
**Aearo Technologies LLC**
7911 Zionsville Road
Indianapolis, IN 46268
MARION-IN
Tax ID / EIN: 13-3840356
*fka* E-A-R Specialty Composites
*fka* Aearo Company
*fka* Aearo Technologies

represented by **David Agay**
McDonal Hopkins LLC
300 N. LaSalle Street
Suite 1400
Chicago, IL 60654
312-642-2217
Fax : 312-280-8232
Email: dagay@mcdonaldhopkins.com

**David Bernick**
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
202-389-3201
Fax : 202-389-5200
Email: david.bernick@kirkland.com

**Tabitha De Paulo**
Kirkland & Ellis LLP
609 Main Street
Houston, TX 77002
713-836-3361
Email: tabitha.depaulo@kirkland.com

**Joshua A. Gadharf**
McDonald Hopkins LLC
300 N. LaSalle
Suite 1400
Chicago, IL 60654
312-280-0111
Fax : 248-646-5075
Email: jgadharf@mcdonaldhopkins.com

**Emily Geier**
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
212-446-4800
Email: emily.geier@kirkland.com

**Jeffrey A Hokanson**
Ice Miller LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0200
317-236-2236
Fax : 317-592-4809
Email: jeff.hokanson@icemiller.com

**David Horowitz**
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 94104
213-680-8400
Email: dhorowitz@kirkland.com

**Derek Hunter**
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
212-909-3371
Email: derek.hunter@kirkland.com

**Chad Husnick**
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000
Email: chusnick@kirkland.com

**Ashley J. Jericho**
McDonal Hopkins LLC
39533 Woodward Ave.
Suite 318
Bloomfield Hills, MI 48304
248-593-2945
Fax : 248-646-5075
Email: ajericho@mcdonaldhopkins.com

**Micah E. Marcus**
McDonal Hopkins LLC
300 N. LaSalle Street
Ste 1400
Chicago, IL 60654
312-280-0111
Email: mmarcus@mcdonaldhopkins.com

**Mark McKane**
Kirkland & Ellis
555 California Street
Suite 2700
San Francisco, CA 94104
415-439-1473
Email: mark.mckane@kirkland.com

**Brenton Rogers**
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
312-862-7119
Email: brogers@kirkland.com

**Edward Sassower**
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
212-446-4800
Email: esassower@kirkland.com

**Connor Skelly**
824 W. 146th Street
Carmel, IN 46032
317-260-0014
Email: connor.skelly@icemiller.com

**Michael Slade**
Kirkland & Ellis LLP
300 N Lasalle
Chicago, IL 60654
312-862-3348
Email: michael.slade@kirkland.com

**Renee D. Smith**
Kirkland & Ellis LLP
300 N. LaSalle

A.24

Chicago, IL 60654
312-862-2310
Email: rdsmith@kirkland.com

**Claire Stephens**
300 N LaSalle
Chicago, IL 60614
773-397-1603
Email: claire.stephens@kirkland.com

**Joshua Sussberg**
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
212-446-4800
Email: joshua.sussberg@kirkland.com

**McClain Thompson**
1301 Pennsylvania Avenue
Washington, DC 20004
202-389-5292
Email: mcclain.thompson@kirkland.com

**Anne Gilbert Wallice**
Kirkland & Ellis LLP
601 Lexington
New York, NY 10022
212-390-4511
Email: anne.wallice@kirkland.com

**Nick Wasdin**
Kirkland & Ellis LLP
300 N LaSalle
Chicago, IL 60654
312-862-2000
Email: nick.wasdin@kirkland.com

**Spencer Winters**
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
312-862-2000
Email: spencer.winters@kirkland.com

***Member Debtor***
**Aearo LLC**
7911 Zionsville Road
Indianapolis, IN 46268
Tax ID / EIN: 13-3840450

represented by    **Jeffrey A Hokanson**
(See above for address)

**Connor Skelly**
(See above for address)

***Member Debtor***
**Aearo Intermediate LLC**
7911 Zionsville Road
Indianapolis, IN 46268
Tax ID / EIN: 56-2443760

represented by    **Jeffrey A Hokanson**
(See above for address)

**Connor Skelly**
(See above for address)

*Member Debtor*
**Aearo Holding LLC**
7911 Zionsville Road
Indianapolis, IN 46268
Tax ID / EIN: 65-1267302

represented by **Jeffrey A Hokanson**
(See above for address)

**Connor Skelly**
(See above for address)

*Member Debtor*
**Aearo Mexico Holding Corp.**
7911 Zionsville Road
Indianapolis, IN 46268
Tax ID / EIN: 26-0727044

represented by **Jeffrey A Hokanson**
(See above for address)

*Member Debtor*
**Cabot Safety Intermediate LLC**
7911 Zionsville Road
Indianapolis, IN 46268
Tax ID / EIN: 13-3840449

represented by **Jeffrey A Hokanson**
(See above for address)

*Member Debtor*
**3M Occupational Safety LLC**
3M Center, Bldg. 224-5N-40
St. Paul, MN 55144
Tax ID / EIN: 11-3838764

represented by **Jeffrey A Hokanson**
(See above for address)

**Connor Skelly**
(See above for address)

*Claims Agent*
**Kroll Restructuring Administration LLC**
55 East 52nd Street
17th Floor
New York, NY 10055
855-639-3375
Website: https://restructuring.ra.kroll.com/aearotechnologies

represented by **Kroll Restructuring Administration LLC**
PRO SE

**Creditor Committee**
**Tort Claimants - CAE Committee**

represented by **Eden Mirelle Bernstein**
Kellogg, Hansen, Todd, Figel &
Frederick, P.L.L.C.
1615 M Street, N.W.
Suite 400
Washington, DC 20036
202-326-7956
Email: ebernstein@kellogghansen.com

**John Bougiamas**
Otterbourg P.C.
230 Park Avenue
New York, NY 10169
212-905-3608
Email: jbougiamas@otterbourg.com

**Deborah Caruso**
Rubin & Levin, P.C.
135 N. Pennsylvania St, Suite 1400
Indianapolis, IN 46204
317-860-2867
Email: dcaruso@rubin-levin.net

**Cathrine M Castaldi**
Brown Rudnick LLP
2211 Michelson Drive
Ste 700
Irvine, CA 92612
949-752-7100
Fax : 949-252-1514
Email: ccastaldi@brownrudnick.com

**Melanie Louise Cyganowski**
Otterbourg P.C.
230 Park Avenue
New York, NY 10169
212-905-3677
Fax : 212-682-6104
Email: mcyganowski@otterbourg.com

**Kevin M Davis**
Caplin and Drysdale
1 Thomas Circle, NW
Ste 1100
Washington, DC 20005-5812
202-862-7846
Email: kdavis@capdale.com

**Jennifer S. Feeney**
Otterbourg P.C.
230 Park Avenue
NY, NY 10169
212-661-9100
Email: jfenney@otterbourg.com

**Eric Goodman**
Brown Rudnick LLP
601 Thirteenth Street NW
Ste 600
Washington DC, DC 20005
202-536-1740
Fax : 202-536-1701

Email: egodman@brownrudnick.com

**Sasha M. Gurvitz**
KTBS Law LLP
1801 Century Park East
Ste 26th Floor
Los Angeles, CA 90067
310-407-4032
Fax : 310-407-9090
Email: sgurvitz@ktbslaw.com

**Jeffrey L. Jonas**
Brown Rudnick LLP
One Financial Center
Boston, MA 02111
617-856-8200
Fax : 617-856-8201
Email: jjonas@brownrudnick.com

**Kevin C Maclay**
Caplin and Drysdale
1 Thomas Circle, NW
Ste 1100
Washington, DC 20005
202-862-7841
Email: kmaclay@capdale.com

**Nir Maoz**
KTBS Law LLP
1801 Century Park East
26th Floor
Los Angeles, CA 90067
310-407-4000
Fax : 310-407-9090
Email: nmaoz@ktbslaw.com

**David Molton**
Brown Rudnick LLP
7 Times Square
New York, NY 10036
212-209-4800
Email: dmolton@brownrudnick.com

**Robert J Pfister**
KTBS Law LLP
1801 Century Park East
26th Floor
Los Angeles, CA 90067
310-407-4065
Fax : 310-407-9090
Email: rpfister@ktbslaw.com

**Todd E. Phillips**
Caplin and Drysdale
One Thomas Circle, NW
Suite 1100
Washington, DC 20005
202-862-7850
Email: tphillips@capdale.com

**Derek Reinbold**
Kellogg, Hansen, Todd, Figel &
Frederick, P.L.L.C.

1615 M Street NW
Suite 400
Washington, DC 20036
202-326-7900
Email: dreinbold@kellogghansen.com

**Adam C. Silverstein**
Otterbourg P.C.
230 Park Avenue
New York, NY 11050
212-905-3628
Email: asilverstein@otterbourg.com

**Ariella Thal Simonds**
KTBS Law LLP
1801 Century Park East
26th Floor
Los Angeles, CA 90067
310-407-4039
Fax : 310-407-9090
Email: asimonds@ktbslaw.com

**Meredith R. Theisen**
Rubin & Levin, P.C.
135 N. Pennsylvania St., Suite 1400
Indianapolis, IN 46204
(317) 860-2877
Fax : (317) 453-8602
Email: mtheisen@rubin-levin.net

**Michael L. Tuchin**
KTBS Law LLP
1801 Century Park East
Ste 26th Floor
Los Angeles, CA 90067
310-407-4040
Fax : 310-407-9090
Email: mtuchin@ktbslaw.com

**James Wehner**
Caplin and Drysdale
One Thomas Circle NW
Suite 1100
Washington, DC 20005
202-862-5075
Email: jwehner@capdale.com

**Michael S. Winograd**
Brown Rudnick LLP
7 Times Square
New York, NY 10036
212-209-4917
Email: mwinograd@brownrudnick.com

**Robert C Yan**
Otterbourg P.C.
230 Park Avenue
New York, NY 10169
212-661-9100
Email: ryan@otterbourg.com

Case: 22-2606      Document: 32      Filed: 12/12/2022      Pages: 457

*Creditor Committee*
**Tort Claimants - Respirator Committee**

represented by **Kevin Dale McCullough**
Rochelle McCullough, LLP
325 N. St. Paul Street
Suite 4500
Dallas, TX 75201-6630
214-953-0182
Email: kdm@romclaw.com

*U.S. Trustee*
**U.S. Trustee**
Office of U.S. Trustee
46 E Ohio Street, Room 520
Indianapolis, IN 46204
317-226-6101
Email: ustpregion10.in.ecf@usdoj.gov

represented by **Laura A DuVall**
DOJ-Ust
Office of The United States Trustee
Birch Bayh Federal Building and U.S.
Courthouse
46 E. Ohio Street, Ste 520
Indianapolis, IN 46204
317-226-6101
Fax : 317-226-6356
Email: Laura.Duvall@usdoj.gov

**Ronald J. Moore**
DOJ-Ust
Birch Bayh Federal Building and
U.S. Courthouse
46 E. Ohio St., Ste 520
Indianapolis, IN 46204
317-226-6101
Fax : 317-226-6356
Email: Ronald.Moore@usdoj.gov

**Harrison Edward Strauss**
DOJ-Ust
Birch Bayh Federal Building
United States Courthouse
46 E. Ohio St, Room 520
Indianapolis, IN 46204
317-226-5707
Email: harrison.strauss@usdoj.gov

| # | Docket Text | Date Filed |
|---|---|---|
| 1 | Chapter 11 Voluntary Petition (Non-Individual) with Corporate Ownership Statement, List of 20 Largest Unsecured Creditors and List of Equity Security Holders filed by Jeffrey A Hokanson on behalf of Aearo Technologies LLC. List of Secured Creditors due by 08/02/2022. Income & Expense Schedule due by 08/09/2022. Statement of Current Monthly Income (Form 122B) due by 08/09/2022. Debtor`s Pay Advices or Statement in Lieu due by 08/09/2022. Joint Debtor`s Pay Advices or Statement in Lieu due by 08/09/2022. Attorney Disclosure of Compensation due by 08/09/2022. Statement of Financial Affairs with Declaration due by 08/09/2022. Summary of Assets and Liabilities with Declaration due by 08/09/2022. Schedules A/B through J with Declaration due by 08/09/2022. Schedule A/B with Declaration due by 08/09/2022. Schedule C with Declaration due by 08/09/2022. Schedule D with Declaration due by 08/09/2022. Schedule E/F with Declaration due by 08/09/2022. Schedule G with Declaration due by 08/09/2022. Schedule H with Declaration due by 08/09/2022. Schedule I with Declaration due by 08/09/2022. Schedule J with Declaration due by 08/09/2022. Verification of Creditor List due by 08/09/2022. (Hokanson, Jeffrey) (Entered: 07/26/2022) | 07/26/2022 |
| 2 | Appearance filed by Jay Jaffe on behalf of Creditor 3M Company. (Jaffe, Jay) (Entered: 07/26/2022) | 07/26/2022 |
| 3 | Appearance filed by Kayla D. Britton on behalf of Creditor 3M Company. (Britton, Kayla) (Entered: 07/26/2022) | 07/26/2022 |
| 4 | Appearance filed by Harmony A Mappes on behalf of Creditor 3M Company. (Mappes, Harmony) (Entered: 07/26/2022) | 07/26/2022 |
| 5 | Appearance filed by Elizabeth Marie Little on behalf of Creditor 3M Company. (Little, Elizabeth) (Entered: 07/26/2022) | 07/26/2022 |
|  | Receipt of Chapter 11 Voluntary Petition( 22-02890-11) [misc,volp11] (1738.00) Filing Fee. Receipt number A33240981. Fee amount 1738.00 (re: Doc # 1). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 6 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Michael Andolina on behalf of Creditor 3M Company. (Attachments: (1) Affidavit) (Andolina, Michael) (Entered: 07/26/2022) [Granted by # 34 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV134Kdm_idV43682659Kdoc_numV34Kpdf_headerV1');] | 07/26/2022 |

A.30

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 7 | First Day Motion for Joint Administration of Cases 22-02890, 22-02893, 22-02892, 22-02891, 22-02894, 22-02895 and 22-02896 filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Terminated on 07/26/2022] | 07/26/2022 |
| 8 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Matthew Evan Linder on behalf of Creditor 3M Company. (Attachments: (1) Affidavit) (Linder, Matthew) (Entered: 07/26/2022) [Granted by # 36 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV138Kdm_idV43682692Kdoc_numV36Kpdf_headerV1');] | 07/26/2022 |
| 9 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Laura Elizabeth Baccash on behalf of Creditor 3M Company. (Attachments: (1) Affidavit) (Baccash, Laura) (Entered: 07/26/2022) [Granted by # 35 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV136Kdm_idV43682683Kdoc_numV35Kpdf_headerV1');] | 07/26/2022 |
|  | Judge Jeffrey J. Graham assigned. (Kleis, Eric) (Entered: 07/26/2022) | 07/26/2022 |
| 10 | Adversary case 22-50059. Complaint filed by Plaintiff(s) Aearo Technologies LLC, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC against Defendant(s) Those Parties Listed on Appendix A to the Complaint [91 (Declaratory judgment)], [72 (Injunctive relief - other)]. (Attachments: (1) Appendix A (2) Appendix B) (Hokanson, Jeffrey) (Entered: 07/26/2022) | 07/26/2022 |
| 11 | Declaration re: Chapter 11 Voluntary Petition, Motion for Joint Administration filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 1, 7). (Attachments: (1) Exhibit Evidentiary Support for First Day Motions (2) Exhibit Funding Agreement (3) Exhibit Exhibit C) (Hokanson, Jeffrey) (Entered: 07/26/2022) | 07/26/2022 |
| 12 | Brief in Support re: Declaration, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 11). (Hokanson, Jeffrey) (Entered: 07/26/2022) | 07/26/2022 |
| 13 | Motion to Retain Noticing, Balloting, or Claims Agents Pursuant to Local Rule S.D.Ind. B-1007-2, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 133 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV626Kdm_idV43693770Kdoc_numV133Kpdf_headerV1');] | 07/26/2022 |
| 14 | Appearance filed by Harrison Edward Strauss on behalf of U.S. Trustee. (Strauss, Harrison) (Entered: 07/26/2022) | 07/26/2022 |
| 15 | Notice of Incomplete Filing issued to Jeffrey A Hokanson. Failure to file required item(s) by the due date may result in the striking of the incomplete filing, the dismissal of the Bankruptcy case without further notice, or other action as the Court deems appropriate. Required item(s): A text file including names and addresses listed on Schedules D, E, F, G and H must be uploaded through the Creditor Maintenance menu. (re: Doc # 1). Incomplete Filing due by 8/2/2022. (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 16 | Motion to Extend Time to File Schedules filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 151 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV696Kdm_idV43698325Kdoc_numV151Kpdf_headerV1');] | 07/26/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33241830. Fee amount 100.00 (re: Doc # 6). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33241845. Fee amount 100.00 (re: Doc # 8). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 17 | Motion for Authority / Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File One List of the Top Law Firms Representing the Largest Numbers of Tort Plaintiffs Asserting Claims Against the Debtors, (II) Authorizing The Debtors to File One Consolidated Creditor Matrix, (III) Authorizing the Listing of Addresses of Counsel For Tort Claimants in the Creditor Matrix in Lieu of Claimants' Addresses, (IV) Authorizing the Debtors to Redact Personally Identifiable Information, (V) Approving Certain Notice Procedures for Tort Claimants, (VI) Approving the Form and Manner of Notice of the Commencement of these Chapter 11 Cases, and (VII) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 134 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV632Kdm_idV43693812Kdoc_numV134Kpdf_headerV1');] | 07/26/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33241876. Fee amount 100.00 (re: Doc # 9). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 18 | Motion for Case Management Order filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit 1) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 152 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV704Kdm_idV43698466Kdoc_numV152Kpdf_headerV1');] | 07/26/2022 |
| 19 | Motion for Case Management Order filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B) (Hokanson, Jeffrey) CORRECTION: Document filed in error. See doc. #23 for corrected filing. Modified on 7/26/2022. (cmm) (Entered: 07/26/2022) [Amended by # 23 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV98Kdm_idV43681620Kdoc_numV23Kpdf_headerV1');] | 07/26/2022 |

A.31

Case: 22-2606      Document: 32      Filed: 12/12/2022      Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 20 | Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Compensation, and Benefit Obligations and (B) Continue Employee Compensation and Benefits Programs, and (II) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 07/26/2022] [Granted by # 547 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2399Kdm_idV43850697Kdoc_numV547Kpdf_headerV1');] | 07/26/2022 |
| 21 | First Day Motion to Pay Pre-Petition Trust Fund Taxes filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 540 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2372Kdm_idV43848252Kdoc_numV540Kpdf_headerV1');] | 07/26/2022 |
| 22 | Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Their Prepetition Insurance Coverage and Satisfy Prepetition Obligations Related Thereto, (B) Continue to Pay Certain Brokerage Fees, and (C) Renew, Supplement, Modify, or Purchase Insurance and Reinsurance Coverage, (II) Approving Continuation of Their Surety Bond Program, and (III) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 542 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2376Kdm_idV43848426Kdoc_numV542Kpdf_headerV1');] | 07/26/2022 |
| 23 | Amended First Day Motion for Approval of Cash Management System (Bank Accounts/Business Forms) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 19). (Attachments: (1) Exhibit A (2) Exhibit B) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 543 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2378Kdm_idV43848474Kdoc_numV543Kpdf_headerV1');] | 07/26/2022 |
| 24 | First Day Motion to Provide Adequate Assurance to Utilities filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 539 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2370Kdm_idV43848231Kdoc_numV539Kpdf_headerV1');] | 07/26/2022 |
| 25 | Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Specified Trade Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 537 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2362Kdm_idV43848207Kdoc_numV537Kpdf_headerV1');] | 07/26/2022 |
| 26 | Appearance filed by Ronald J. Moore on behalf of U.S. Trustee. (Moore, Ronald) (Entered: 07/26/2022) | 07/26/2022 |
| 27 | Appearance filed by Laura A DuVall on behalf of U.S. Trustee. (DuVall, Laura) (Entered: 07/26/2022) | 07/26/2022 |
| 28 | Motion for Expedited Hearing and/or Shortened Notice Time on Motion for Case Management Order, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 18). (Hokanson, Jeffrey) (Entered: 07/26/2022) [Amended by # 32 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV123Kdm_idV43682234Kdoc_numV32Kpdf_headerV1');] | 07/26/2022 |
| 29 | Motion for Expedited Hearing and/or Shortened Notice Time on Motion for Authority / Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File One List of the Top Law Firms Representing the Largest Numbers of Tort Plaintiffs Asserting Claims Against the Debtors, (II) Authorizing The Debtors to File One Consolidated Creditor Matrix, (III) Authorizing the Listing of Addresses of Counsel For Tort Claimants in the Creditor Matrix in Lieu of Claimants' Addresses, (IV) Authorizing the Debtors to Redact Personally Identifiable Information, (V) Approving Certain Notice Procedures for Tort Claimants, (VI) Approving the Form and Manner of Notice of the Commencement of these Chapter 11 Cases, and (VII) Granting Related Relief, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 17). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 45 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV193Kdm_idV43683172Kdoc_numV45Kpdf_headerV1');] | 07/26/2022 |
| 30 | Motion for Expedited Hearing and/or Shortened Notice Time on Motion to Retain Noticing, Balloting, or Claims Agent, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 13). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 47 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV204Kdm_idV43683259Kdoc_numV47Kpdf_headerV1');] | 07/26/2022 |
| 31 | Motion for Expedited Hearing and/or Shortened Notice Time on Motion to Extend Time to File Initial Documents, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 16). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 49 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV214Kdm_idV43683298Kdoc_numV49Kpdf_headerV1');] | 07/26/2022 |
| 32 | Amended Motion for Expedited Hearing and/or Shortened Notice Time on Motion for Case Management Order, Motion for Expedited Hearing and/or Shortened Notice Time, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 18, 28). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 07/26/2022) [Granted by # 50 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV217Kdm_idV43683328Kdoc_numV50Kpdf_headerV1');] | 07/26/2022 |
| 33 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Jessica Lauria on behalf of Creditor 3M Company. (Attachments: (1) Affidavit Affidavit in Support of Motion to Appear Pro Hac Vice) (Lauria, Jessica) (Entered: 07/26/2022) [Granted by # 85 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV449Kdm_idV43685235Kdoc_numV85Kpdf_headerV1');] | 07/26/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33243142. Fee amount 100.00 (re: Doc # 33). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|-------------|------------|
| 34 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 6). Attorney for Creditor 3M Company must distribute this order. (hhd) (Entered: 07/26/2022) | 07/26/2022 |
| 35 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 9). Attorney for Creditor 3M Company must distribute this order. (hhd) (Entered: 07/26/2022) | 07/26/2022 |
| 36 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 8). Attorney for Creditor 3M Company must distribute this order. (hhd) (Entered: 07/26/2022) | 07/26/2022 |
| 37 | Order Granting Motion to Jointly Administer Member Case 22-02891 under Lead Case 22-02890. (order distributed to e-filers only) (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 38 | Order Granting Motion to Jointly Administer Member Case 22-02892 under Lead Case 22-02890. (order distributed to e-filers only) (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 39 | Order Granting Motion to Jointly Administer Member Case 22-02893 under Lead Case 22-02890. (order distributed to e-filers only) (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 40 | Order Granting Motion to Jointly Administer Member Case 22-02894 under Lead Case 22-02890. (order distributed to e-filers only) (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 41 | Order Granting Motion to Jointly Administer Member Case 22-02895 under Lead Case 22-02890. (order distributed to e-filers only) (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 42 | Order Granting Motion to Jointly Administer Member Case 22-02896 under Lead Case 22-02890. (order distributed to e-filers only) (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 43 | Appearance filed by Robert J Pfister on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Pfister, Robert) (Entered: 07/26/2022) | 07/26/2022 |
| 44 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Maoz, Nir) (Entered: 07/26/2022) [Granted by # 86 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV451Kdm_idV43685274Kdoc_numV86Kpdf_headerV1');] | 07/26/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33243724. Fee amount 100.00 (re: Doc # 44). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 45 | Order Granting Motion for Expedited Hearing on Debtor's Motion on Motion for Entry of an Order (I) Authorizing the Debtors to File One List of the Top Law Firms Representing the Largest Numbers of Tort Plaintiffs Asserting Claims Against the Debtors, (II) Authorizing The Debtors to File One Consolidated Creditor Matrix, (III) Authorizing the Listing of Addresses of Counsel For Tort Claimants in the Creditor Matrix in Lieu of Claimants' Addresses, (IV) Authorizing the Debtors to Redact Personally Identifiable Information, (V) Approving Certain Notice Procedures for Tort Claimants, (VI) Approving the Form and Manner of Notice of the Commencement of these Chapter 11 Cases (re: Doc #29). Hearing to be held on 7/27/2022 at 09:30 AM Eastern in Rm 344 U.S. Courthouse, Indianapolis. Video Participation Information Included in Hearing Notice Attorney for the debtor must distribute this order. (hhd) (Entered: 07/26/2022) | 07/26/2022 |
| 46 | Notice of Jointly Administered Cases (re: Doc # 37, 38, 39, 40, 41, 42, 7 on 22-02893-JJG-11, 7 on 22-02896-JJG-11, 7 on 22-02894-JJG-11, 7 on 22-02892-JJG-11, 7 on 22-02891-JJG-11, 7 on 22-02895-JJG-11). ATTORNEY FOR THE DEBTOR MUST DISTRIBUTE THIS ORDER. (cmm) CORRECTION: Missing docket text added in all capitals. Modified on 7/27/2022. (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 47 | Order Granting Motion for Expedited Hearing on Debtor's Motion to Retain Noticing, Balloting, or Claims Agents Pursuant to Local Rule S.D.Ind. B-1007-2 (re: Doc #30). Hearing to be held on 7/27/2022 at 09:30 AM Eastern in Rm 344 U.S. Courthouse, Indianapolis. Video Participation Information to be Included in Hearing Notice Attorney for the debtor must distribute this order. (hhd) (Entered: 07/26/2022) | 07/26/2022 |
| 48 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Sasha M. Gurvitz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Gurvitz, Sasha) (Entered: 07/26/2022) [Granted by # 90 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV464Kdm_idV43685723Kdoc_numV90Kpdf_headerV1');] | 07/26/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33243845. Fee amount 100.00 (re: Doc # 48). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 49 | Order Granting Motion for Expedited Hearing on Debtor's Motion to Extend Time to File Schedules (re: Doc#31). Hearing to be held on 7/27/2022 at 09:30 AM Eastern in Rm 344 U.S. Courthouse, Indianapolis.Video Participation Information to be Included in Hearing Notice Attorney for the debtor must distribute this order. (hhd) (Entered: 07/26/2022) | 07/26/2022 |
| 50 | Order Granting Motion for Expedited Hearing on Debtor's Motion for Case Management Order (re: Doc#32). Hearing to be held on 7/27/2022 at 09:30 AM Eastern in Rm 344 U.S. Courthouse, Indianapolis. Video Participation Information to be Included in Hearing Notice. Attorney for the debtor must distribute this order. (hhd) (Entered: 07/26/2022) | 07/26/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 51 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Thomas E Patterson on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Patterson, Thomas) (Entered: 07/26/2022) [Granted by # 91 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV466Kdm_idV43685770Kdoc_numV91Kpdf_headerV1');] | 07/26/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33243903. Fee amount 100.00 (re: Doc # 51). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 52 | Notice of Submission / Agenda for First Day Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 7, 11, 12, 13, 16, 17, 18, 20, 22, 23, 24, 25, 29, 30). (Hokanson, Jeffrey) (Entered: 07/26/2022) | 07/26/2022 |
| 53 | CORRECTED ENTRY: Notice of Hearing on (I) First Day Motions and (II) Related Pleadings Filed in Adversary Proceeding filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 52). Hearing to be held on 7/27/2022 at 09:30 AM Eastern in Rm 344 U.S. Courthouse, Indianapolis. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7669, Meeting ID 160 2312 6397 (Hokanson, Jeffrey) ORIGINAL ENTRY: Notice of Hearing re: Notice of Submission / Agenda for First Day Hearing, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 52). Hearing to be held on 7/27/2022 at 09:30 AM Eastern in Rm 344 U.S. Courthouse, Indianapolis. (Hokanson, Jeffrey) Modified on 7/26/2022. (cmm) Modified on 7/27/2022. (cmm) Modified on 8/4/2022. (cmm) (Entered: 07/26/2022) | 07/26/2022 |
| 54 | Objection to Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Specified Trade Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief filed by Harrison Edward Strauss on behalf of U.S. Trustee (re: Doc # 25). (Strauss, Harrison) (Entered: 07/26/2022) | 07/26/2022 |
| 55 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Chad Husnick on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Husnick, Chad) (Entered: 07/26/2022) [Granted by # 111 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV544Kdm_idV43690991Kdoc_numV111Kpdf_headerV1');] | 07/26/2022 |
| 56 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Emily Geier on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Geier, Emily) (Entered: 07/26/2022) [Granted by # 112 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV546Kdm_idV43691414Kdoc_numV112Kpdf_headerV1');] | 07/26/2022 |
| 57 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Ashley Keller on behalf of Creditor Richard Valle. (Attachments: (1) Affidavit (2) Proposed Order) (Keller, Ashley) (Entered: 07/26/2022) [Granted by # 113 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV548Kdm_idV43691565Kdoc_numV113Kpdf_headerV1');] | 07/26/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244394. Fee amount 100.00 (re: Doc # 57). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 58 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Spencer Winters on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Winters, Spencer) (Entered: 07/26/2022) [Granted by # 114 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV550Kdm_idV43691778Kdoc_numV114Kpdf_headerV1');] | 07/26/2022 |
| 59 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Derek Hunter on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Hunter, Derek) (Entered: 07/26/2022) [Granted by # 115 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV552Kdm_idV43691791Kdoc_numV115Kpdf_headerV1');] | 07/26/2022 |
| 60 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Edward Sassower on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Sassower, Edward) (Entered: 07/26/2022) [Granted by # 116 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV554Kdm_idV43691797Kdoc_numV116Kpdf_headerV1');] | 07/26/2022 |
| 61 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by McClain Thompson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Thompson, McClain) (Entered: 07/26/2022) [Granted by # 117 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV556Kdm_idV43691807Kdoc_numV117Kpdf_headerV1');] | 07/26/2022 |
| 62 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by David Horowitz on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Horowitz, David) (Entered: 07/26/2022) [Granted by # 118 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV558Kdm_idV43691823Kdoc_numV118Kpdf_headerV1');] | 07/26/2022 |
| 63 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Micah E. Marcus on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A - Affidavit) (Marcus, Micah) (Entered: 07/26/2022) [Granted by # 125 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV604Kdm_idV43692491Kdoc_numV125Kpdf_headerV1');] | 07/26/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244566. Fee amount 100.00 (re: Doc # 63). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 64 | Objection to Motion for Approval of Cash Management System (Bank Accounts/Business Forms) filed by Harrison Edward Strauss on behalf of U.S. Trustee (re: Doc # 23). (Strauss, Harrison) (Entered: 07/26/2022) | 07/26/2022 |
| 65 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by David Agay on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A - Affidavit) (Agay, David) (Entered: 07/26/2022) [Granted by # 127 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV609Kdm_idV43693015Kdoc_numV127Kpdf_headerV1');] | 07/26/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 66 | Objection to Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Compensation, and Benefit Obligations and (B) Continue Employee Compensation and Benefits Programs, and (II) Granting Related Relief filed by Harrison Edward Strauss on behalf of U.S. Trustee (re: Doc # 20). (Strauss, Harrison) (Entered: 07/26/2022) | 07/26/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244578. Fee amount 100.00 (re: Doc # 65). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 67 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Joshua A. Gadharf on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A - Affidavit) (Gadharf, Joshua) (Entered: 07/26/2022) [Granted by # 128 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV611Kdm_idV43693035Kdoc_numV128Kpdf_headerV1');] | 07/26/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244586. Fee amount 100.00 (re: Doc # 67). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 68 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Ashley Jennifer Jericho on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A - Affidavit) (Jericho, Ashley) (Entered: 07/26/2022) [Granted by # 129 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV613Kdm_idV43693048Kdoc_numV129Kpdf_headerV1');] | 07/26/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244591. Fee amount 100.00 (re: Doc # 68). (U.S. Treasury) (Entered: 07/26/2022) | 07/26/2022 |
| 69 | Objection to Motion for Authority / Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File One List of the Top Law Firms Representing the Largest Numbers of Tort Plaintiffs Asserting Claims Against the Debtors, (II) Authorizing The Debtors to File One Consolidated Creditor Matrix, (III) Authorizing the Listing of Addresses of Counsel For Tort Claimants in the Creditor Matrix in Lieu of Claimants' Addresses, (IV) Authorizing the Debtors to Redact Personally Identifiable Information, (V) Approving Certain Notice Procedures for Tort Claimants, (VI) Approving the Form and Manner of Notice of the Commencement of these Chapter 11 Cases, and (VII) Granting Related Relief filed by Harrison Edward Strauss on behalf of U.S. Trustee (re: Doc # 17). (Strauss, Harrison) (Entered: 07/26/2022) | 07/26/2022 |
| 70 | Certificate of Service re: Motion for Joint Administration, Declaration, Brief, Motion to Retain Noticing, Balloting, or Claims Agent, Motion to Extend Time to File Initial Documents, Motion for Authority / Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File One List of the Top Law Firms Representing the Largest Numbers of Tort Plaintiffs Asserting Claims Against the Debtors, (II) Authorizing The Debtors to File One Consolidated Creditor Matrix, (III) Authorizing the Listing of Addresses of Counsel For Tort Claimants in the Creditor Matrix in Lieu of Claimants' Addresses, (IV) Authorizing the Debtors to Redact Personally Identifiable Information, (V) Approving Certain Notice Procedures for Tort Claimants, (VI) Approving the Form and Manner of Notice of the Commencement of these Chapter 11 Cases, and (VII) Granting Related Relief, Motion for Case Management Order, Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Compensation, and Benefit Obligations and (B) Continue Employee Compensation and Benefits Programs, and (II) Granting Related Relief, Motion to Pay Pre-Petition Trust Fund Taxes, Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Their Prepetition Insurance Coverage and Satisfy Prepetition Obligations Related Thereto, (B) Continue to Pay Certain Brokerage Fees, and (C) Renew, Supplement, Modify, or Purchase Insurance and Reinsurance Coverage, (II) Approving Continuation of Their Surety Bond Program, and (III) Granting Related Relief, Motion for Approval of Cash Management System (Bank Accounts/Business Forms), Motion to Provide Adequate Assurance to Utilities, Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Specified Trade Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief, Motion for Expedited Hearing and/or Shortened Notice Time on Motion for Authority / Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File One List of the Top Law Firms Representing the Largest Numbers of Tort Plaintiffs Asserting Claims Against the Debtors, (II) Authorizing The Debtors to File One Consolidated Creditor Matrix, (III) Authorizing the Listing of Addresses of Counsel For Tort Claimants in the Creditor Matrix in Lieu of Claimants' Addresses, (IV) Authorizing the Debtors to Redact Personally Identifiable Information, (V) Approving Certain Notice Procedures for Tort Claimants, (VI) Approving the Form and Manner of Notice of the Commencement of these Chapter 11 Cases, and (VII) Granting Related Relief, Motion for Expedited Hearing and/or Shortened Notice Time, Motion for Expedited Hearing and/or Shortened Notice Time, Motion for Expedited Hearing and/or Shortened Notice Time, Order on Motion for Expedited Hearing and/or Shortened Notice Time, Joint Administration Notice, Order on Motion for Expedited Hearing and/or Shortened Notice Time, Order on Motion for Expedited Hearing and/or Shortened Notice Time, Order on Motion for Expedited Hearing and/or Shortened Notice Time, Notice of Submission / Agenda for First Day Hearing, Notice of Hearing on (I) First Day Motions and (II) Related Pleadings Filed in Adversary Proceeding, filed by Noticing Agent on behalf of Member Debtor Aearo Intermediate LLC (re: Doc # 7, 11, 12, 13, 16, 17, 18, 20, 21, 22, 23, 24, 25, 29, 30, 31, 32, 45, 46, 47, 49, 50, 52, 53). (Baer, Herbert) (Entered: 07/26/2022) | 07/26/2022 |
| 71 | Notice of Incomplete Filing issued to Edward Sassower. Failure to file required item(s) by the due date may result in the striking of the incomplete filing, the dismissal of the Bankruptcy case without further notice, or other action as the Court deems appropriate. Required item(s): A $100.00 filing fee is due for the Motion to Appear Pro Hac Vice filed on 07/26/2022. (re: Doc # 60). Incomplete Filing due by 08/03/2022. (Admin) (Entered: 07/27/2022) | 07/27/2022 |
| 72 | Notice of Incomplete Filing issued to Spencer Winters. Failure to file required item(s) by the due date may result in the striking of the incomplete filing, the dismissal of the Bankruptcy case without further notice, or other action as the Court deems appropriate. Required item(s): A $100.00 filing fee is due for the Motion to Appear Pro Hac Vice filed on 07/26/2022. (re: Doc # 58). Incomplete Filing due by 08/03/2022. (Admin) (Entered: 07/27/2022) | 07/27/2022 |

| # | Docket Text | Date Filed |
|---|---|---|
| 73 | Notice of Incomplete Filing issued to Chad Husnick. Failure to file required item(s) by the due date may result in the striking of the incomplete filing, the dismissal of the Bankruptcy case without further notice, or other action as the Court deems appropriate. Required item(s): A $100.00 filing fee is due for the Motion to Appear Pro Hac Vice filed on 07/26/2022. (re: Doc # 55). Incomplete Filing due by 08/03/2022. (Admin) (Entered: 07/27/2022) | 07/27/2022 |
| 74 | Notice of Incomplete Filing issued to McClain Thompson. Failure to file required item(s) by the due date may result in the striking of the incomplete filing, the dismissal of the Bankruptcy case without further notice, or other action as the Court deems appropriate. Required item(s): A $100.00 filing fee is due for the Motion to Appear Pro Hac Vice filed on 07/26/2022. (re: Doc # 61). Incomplete Filing due by 08/03/2022. (Admin) (Entered: 07/27/2022) | 07/27/2022 |
| 75 | Notice of Incomplete Filing issued to David Horowitz. Failure to file required item(s) by the due date may result in the striking of the incomplete filing, the dismissal of the Bankruptcy case without further notice, or other action as the Court deems appropriate. Required item(s): A $100.00 filing fee is due for the Motion to Appear Pro Hac Vice filed on 07/26/2022. (re: Doc # 62). Incomplete Filing due by 08/03/2022. (Admin) (Entered: 07/27/2022) | 07/27/2022 |
| 76 | Notice of Incomplete Filing issued to Emily Geier. Failure to file required item(s) by the due date may result in the striking of the incomplete filing, the dismissal of the Bankruptcy case without further notice, or other action as the Court deems appropriate. Required item(s): A $100.00 filing fee is due for the Motion to Appear Pro Hac Vice filed on 07/26/2022. (re: Doc # 56). Incomplete Filing due by 08/03/2022. (Admin) (Entered: 07/27/2022) | 07/27/2022 |
| 77 | Notice of Incomplete Filing issued to Derek Hunter. Failure to file required item(s) by the due date may result in the striking of the incomplete filing, the dismissal of the Bankruptcy case without further notice, or other action as the Court deems appropriate. Required item(s): A $100.00 filing fee is due for the Motion to Appear Pro Hac Vice filed on 07/26/2022. (re: Doc # 59). Incomplete Filing due by 08/03/2022. (Admin) (Entered: 07/27/2022) | 07/27/2022 |
| 78 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Hokanson, Jeffrey) (Entered: 07/27/2022) [Amended by # 171 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV789Kdm_idV43703014Kdoc_numV171Kpdf_headerV1');] | 07/27/2022 |
| 79 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Hokanson, Jeffrey) (Entered: 07/27/2022) [Amended by # 170 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV783Kdm_idV43702988Kdoc_numV170Kpdf_headerV1');] | 07/27/2022 |
| 80 | Notice of Submission / Amended Agenda for Hearing on First Day Motions filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 7, 10, 11, 12, 13, 16, 17, 18, 20, 21, 22, 23, 24, 25, 31, 32, 45, 47, 49, 50, 54, 64, 66, 69, 6 on 22-02896-JJG-11, 2 on 22-02896-JJG-11, 5 on 22-02896-JJG-11, 1 on 22-02896-JJG-11). (Hokanson, Jeffrey) (Entered: 07/27/2022) | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244820. Fee amount 100.00 (re: Doc # 55). Deadline terminated: Notice of Incomplete Filing (73). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244822. Fee amount 100.00 (re: Doc # 78). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244822. Fee amount 100.00 (re: Doc # 79). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244831. Fee amount 100.00 (re: Doc # 62). Deadline terminated: Notice of Incomplete Filing (75). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244838. Fee amount 100.00 (re: Doc # 56). Deadline terminated: Notice of Incomplete Filing (76). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244844. Fee amount 100.00 (re: Doc # 60). Deadline terminated: Notice of Incomplete Filing (71). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244846. Fee amount 100.00 (re: Doc # 61). Deadline terminated: Notice of Incomplete Filing (74). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244853. Fee amount 100.00 (re: Doc # 59). Deadline terminated: Notice of Incomplete Filing (77). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244860. Fee amount 100.00 (re: Doc # 58). Deadline terminated: Notice of Incomplete Filing (72). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
| 81 | Appearance filed by Deborah Caruso on behalf of Creditor Seeger Weiss LLP. (Caruso, Deborah) (Entered: 07/27/2022) | 07/27/2022 |
| 82 | Appearance filed by Meredith R. Theisen on behalf of Creditor Seeger Weiss LLP. (Theisen, Meredith) (Entered: 07/27/2022) | 07/27/2022 |
| 83 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Karen Hope Beyea-Schroeder on behalf of Creditor Junell & Associates, PLLC. (Attachments: (1) Affidavit (2) Exhibit Proposed Form of Order) (Beyea-Schroeder, Karen) (Entered: 07/27/2022) [Amended by # 87 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV453Kdm_idV43685335Kdoc_numV87Kpdf_headerV1');] | 07/27/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33244974. Fee amount 100.00 (re: Doc # 83). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
| 84 | Notice of Submission / Second Amended Agenda for First Day Motions filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 80). (Hokanson, Jeffrey) (Entered: 07/27/2022) | 07/27/2022 |
| 85 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 33). Attorney for Creditor 3M Company must distribute this order. (hhd) (Entered: 07/27/2022) | 07/27/2022 |
| 86 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 44). Attorney for Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC must distribute this order. (hhd) (Entered: 07/27/2022) | 07/27/2022 |
| 87 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Karen Hope Beyea-Schroeder on behalf of Creditor Junell & Associates, PLLC (re: Doc # 83). (Attachments: (1) Affidavit of Pro Hac Counsel (2) Exhibit Proposed Order) (Beyea-Schroeder, Karen) (Entered: 07/27/2022) [Granted by # 172 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV795Kdm_idV43703298Kdoc_numV172Kpdf_headerV1');] | 07/27/2022 |
| 88 | Deficiency Notice Issued re: Motion to Appear Pro Hac Vice (re: Doc # 78). Deficiency to be cured by 8/10/2022. (cmm) (Entered: 07/27/2022) | 07/27/2022 |
| 89 | Deficiency Notice Issued re: Motion to Appear Pro Hac Vice (re: Doc # 79). Deficiency to be cured by 8/10/2022. (cmm) (Entered: 07/27/2022) | 07/27/2022 |
| 90 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 48). Attorney for Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC must distribute this order. (hhd) (Entered: 07/27/2022) | 07/27/2022 |
| 91 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 51). Attorney for Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC must distribute this order. (hhd) (Entered: 07/27/2022) | 07/27/2022 |
| 92 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Patricia B. Tomasco on behalf of Creditor Bellwether Plaintiffs Adkins, Wilkerson, and Vaugh. (Tomasco, Patricia) (Entered: 07/27/2022) [Granted by # 98 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV496Kdm_idV43687942Kdoc_numV98Kpdf_headerV1');] | 07/27/2022 |
| 93 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Michael L. Tuchin on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Tuchin, Michael) (Entered: 07/27/2022) [Granted by # 120 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV562Kdm_idV43691970Kdoc_numV120Kpdf_headerV1');] | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33246584. Fee amount 100.00 (re: Doc # 92). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33246610. Fee amount 100.00 (re: Doc # 93). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
| 94 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Deborah K. Levy on behalf of Creditor Junell & Associates, PLLC. (Attachments: (1) Affidavit of Pro Hac Counsel (2) Exhibit Proposed Order) (Levy, Deborah) (Entered: 07/27/2022) [Granted by # 121 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV564Kdm_idV43691977Kdoc_numV121Kpdf_headerV1');] | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33246933. Fee amount 100.00 (re: Doc # 94). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |
| 95 | Appearance filed by Thomas E Patterson on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Patterson, Thomas) (Entered: 07/27/2022) | 07/27/2022 |
| 96 | Appearance filed by Sasha M. Gurvitz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Gurvitz, Sasha) (Entered: 07/27/2022) | 07/27/2022 |
| 97 | Appearance filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Maoz, Nir) (Entered: 07/27/2022) | 07/27/2022 |
| 98 | Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Patricia B. Tomasco on behalf of Creditor Bellwether Plaintiffs Adkins, Wilkerson, and Vaugh (re: Doc # 92). (Tomasco, Patricia) (Entered: 07/27/2022) [Granted by # 175 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV802Kdm_idV43704206Kdoc_numV175Kpdf_headerV1');] | 07/27/2022 |
| 99 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Mark McKane on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (McKane, Mark) (Entered: 07/27/2022) [Granted by # 131 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV619Kdm_idV43693109Kdoc_numV131Kpdf_headerV1');] | 07/27/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33247672. Fee amount 100.00 (re: Doc # 99). (U.S. Treasury) (Entered: 07/27/2022) | 07/27/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|-------------|------------|
| 101 | Minute Entry/Order: re: Expedited Hearing on Debtors' Motion on Motion for Entry of an Order (I) Authorizing the Debtors to File One List of the Top Law Firms Representing the Largest Numbers of Tort Plaintiffs Asserting Claims Against the Debtors, (II) Authorizing The Debtors to File One Consolidated Creditor Matrix, (III) Authorizing the Listing of Addresses of Counsel For Tort Claimants in the Creditor Matrix in Lieu of Claimants' Addresses, (IV) Authorizing the Debtors to Redact Personally Identifiable Information, (V) Approving Certain Notice Procedures for Tort Claimants, (VI) Approving the Form and Manner of Notice of the Commencement of these Chapter 11 Cases and US Trustee's Objection thereto (re: Doc # 17,69). Disposition: Hearing held. Court grants Motion as modified in open Court. Counsel for Debtors to submit order within 5 days. (hhd) (Entered: 07/28/2022) | 07/27/2022 |
| 102 | Minute Entry/Order: re: Expedited Hearing on Debtors' Motion to Retain Noticing, Balloting, or Claims Agents Pursuant to Local Rule S.D.Ind. B-1007-2 (re: Doc # 13). Disposition: Hearing held. Court grants Motion. Counsel for Debtors to submit order within 5 days. (hhd) (Entered: 07/28/2022) | 07/27/2022 |
| 103 | Minute Entry/Order: re: Expedited Hearing on Debtors' Motion to Extend Time to File Schedules (re: Doc # 16). Disposition: Hearing held. Court grants Motion. Order to be entered. (hhd) (Entered: 07/28/2022) | 07/27/2022 |
| 104 | Minute Entry/Order: re: Hearing on Debtors' Motion for Case Management Order (re: Doc # 18). Disposition: Hearing held. Court grants Motion as modified in open court. Counsel for Debtors to submit order within 5 days. (hhd) (Entered: 07/28/2022) | 07/27/2022 |
| 105 | Minute Entry/Order: re: Hearing on Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Compensation, and Benefit Obligations and (B) Continue Employee Compensation and Benefits Programs, and (II) Granting Related Relief and US Trustee's Objection thereto (re: Doc # 20,66). Disposition: Hearing held. Court accepts proffered testimony of John Castellano. Court grants Motion as modified in open Court on an interim basis and sets final hearing for 08/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via ZOOM. Counsel for Debtors to submit order within 5 days. (hhd) (Entered: 07/28/2022) | 07/27/2022 |
| 106 | Minute Entry/Order: re: Hearing on Debtors' First Day Motion to Pay Pre-Petition Trust Fund Taxes (re: Doc # 21, 53). Disposition: Hearing held. Court accepts proffered testimony of John Castellano. Court grants Motion on an interim basis and sets final hearing for 08/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via ZOOM. Counsel for Debtors to submit order within 5 days. (hhd) (Entered: 07/28/2022) | 07/27/2022 |
| 107 | Minute Entry/Order: re: Hearing on Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Their Prepetition Insurance Coverage and Satisfy Prepetition Obligations Related Thereto, (B) Continue to Pay Certain Brokerage Fees, and (C) Renew, Supplement, Modify, or Purchase Insurance and Reinsurance Coverage, (II) Approving Continuation of Their Surety Bond Program, and (III) Granting Related Relief (re: Doc # 22,53). Disposition: Hearing held. Court accepts proffered testimony of John Castellano. Court grants Motion on an interim basis and sets final hearing for 08/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via ZOOM. Counsel for Debtors to submit order within 5 days. (hhd) (Entered: 07/28/2022) | 07/27/2022 |
| 108 | Minute Entry/Order: re: Motion to Hearing on Debtors' First Day Motion to Provide Adequate Assurance to Utilities (re: Doc # 24,53). Disposition: Hearing held. Court accepts proffered testimony of John Castellano. Court grants Motion on an interim basis and sets final hearing for 08/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via ZOOM. Counsel for Debtors to submit order within 5 days. (hhd) (Entered: 07/28/2022) | 07/27/2022 |
| 109 | Minute Entry/Order: re: Hearing on Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Specified Trade Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief and US Trustee's Objection thereto (re: Doc # 25,53,54). Disposition: Hearing held. Court accepts proffered testimony of John Castellano. Court grants Motion as modified in open court on an interim basis and sets final hearing for 08/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via ZOOM. Counsel for Debtors to submit order within 5 days. (hhd) (Entered: 07/28/2022) | 07/27/2022 |
| 110 | Minute Entry/Order: re: Hearing on Debtors' Amended First Day Motion for Approval of Cash Management System (Bank Accounts/Business Forms) and US Trustee's Objection thereto (re: Doc # 23,64). Disposition: Hearing held. Court accepts proffered testimony of John Castellano. Court grants Motion as modified in open on an interim basis and sets final hearing for 08/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via ZOOM. Counsel for Debtors to submit order within 5 days. (hhd) (Entered: 07/28/2022) | 07/27/2022 |
| 100 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by John Bougiamas on behalf of Creditor Seeger Weiss LLP. (Attachments: (1) Exhibit A.) (Bougiamas, John) (Entered: 07/28/2022) [Granted by # 153 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV706Kdm_idV43698783Kdoc_numV153Kpdf_headerV1');] | 07/28/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33249314. Fee amount 100.00 (re: Doc # 100). (U.S. Treasury) (Entered: 07/28/2022) | 07/28/2022 |
| 111 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 55). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 112 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 56). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 113 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 57). Attorney for Creditor Richard Valle must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 114 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 58). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 115 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 59). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 116 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 60). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 117 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 61). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 118 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 62). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 119 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 79). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) [Vacated by # 159 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV734Kdm_idV43701892Kdoc_numV159Kpdf_headerV1');] | 07/28/2022 |
| 120 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 93). Attorney for Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 121 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 94). Attorney for Creditor Junell & Associates, PLLC must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 122 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Anne Gilbert Wallice on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Wallice, Anne) (Entered: 07/28/2022) [Granted by # 160 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV740Kdm_idV43701931Kdoc_numV160Kpdf_headerV1');] | 07/28/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33250242. Fee amount 100.00 (re: Doc # 122). (U.S. Treasury) (Entered: 07/28/2022) | 07/28/2022 |
| 123 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Claire Stephens on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Stephens, Claire) (Entered: 07/28/2022) [Granted by # 161 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV742Kdm_idV43701984Kdoc_numV161Kpdf_headerV1');] | 07/28/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33250257. Fee amount 100.00 (re: Doc # 123). (U.S. Treasury) (Entered: 07/28/2022) | 07/28/2022 |
| 124 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Jennifer S. Feeney on behalf of Creditor Seeger Weiss LLP. (Attachments: (1) Exhibit A.) (Feeney, Jennifer) (Entered: 07/28/2022) [Granted by # 200 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV902Kdm_idV43708402Kdoc_numV200Kpdf_headerV1');] | 07/28/2022 |
| 125 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 63). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 126 | Request for Transcript filed by Meredith R. Theisen on behalf of Creditor Seeger Weiss LLP (re: Doc # 110). (Theisen, Meredith) (Entered: 07/28/2022) | 07/28/2022 |
| 127 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 65). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 128 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 67). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 129 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 68). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
| 130 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Melanie Louise Cyganowski on behalf of Creditor Seeger Weiss LLP. (Attachments: (1) Exhibit A.) (Cyganowski, Melanie) (Entered: 07/28/2022) [Granted by # 162 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV744Kdm_idV43702012Kdoc_numV162Kpdf_headerV1');] | 07/28/2022 |
| 131 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 99). Attorney for the debtor must distribute this order. (hhd) (Entered: 07/28/2022) | 07/28/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33251020. Fee amount 100.00 (re: Doc # 130). (U.S. Treasury) (Entered: 07/28/2022) | 07/28/2022 |
| 132 | Appearance filed by Patricia B. Tomasco on behalf of Creditor Bellwether Plaintiffs Adkins, Wilkerson, and Vaugh. (Tomasco, Patricia) (Entered: 07/28/2022) | 07/28/2022 |
| 133 | Order Granting Motion to Retain Noticing, Balloting, or Claims Agents Pursuant to Local Rule S.D.Ind. B-1007-2 (re: Doc # 13). Attorney for the debtor must distribute this order. (cmm) (Entered: 07/28/2022) | 07/28/2022 |

A.39

Case: 22-2606      Document: 32      Filed: 12/12/2022      Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 134 | Order (I) Authorizing the Debtors to File One List of the Top Law Firms Representing the Largest Numbers of Tort Plaintiffs Asserting Claims Against the Debtors, (II) Authorizing The Debtors to File One Consolidated Creditor Matrix, (III) Authorizing the Listing of Addresses of Counsel For Tort Claimants in the Creditor Matrix in Lieu of Claimants' Addresses, (IV) Authorizing the Debtors to Redact Personally Identifiable Information, (V) Approving Certain Notice Procedures for Tort Claimants, (VI) Approving the Form and Manner of Notice of the Commencement of these Chapter 11 Cases, and (VII) Granting Related Relief (re: Doc # 17). Attorney for the debtor must distribute this order. (cmm) (Entered: 07/28/2022) | 07/28/2022 |
| 135 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Eric Winston on behalf of Creditor Bellwether Plaintiffs Adkins, Wilkerson, and Vaugh. (Winston, Eric) (Entered: 07/28/2022) [Granted by # 163 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV746Kdm_idV43702022Kdoc_numV163Kpdf_headerV1');] | 07/28/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33251671. Fee amount 100.00 (re: Doc # 135). (U.S. Treasury) (Entered: 07/28/2022) | 07/28/2022 |
| 136 | Appearance filed by Michael L. Tuchin on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Tuchin, Michael) (Entered: 07/28/2022) | 07/28/2022 |
| 137 | Request for Transcript filed by Elizabeth Marie Little on behalf of Creditor 3M Company (re: Doc # 110). (Little, Elizabeth) (Entered: 07/28/2022) | 07/28/2022 |
| 138 | BNC Certificate of Service - NOTICE (re: Doc # 1). No. of Notices: 1 Notice Date 07/28/2022. (Admin) (Entered: 07/29/2022) | 07/28/2022 |
| 139 | BNC Certificate of Service - NOTICE (re: Doc # 46). No. of Notices: 8 Notice Date 07/28/2022. (Admin) (Entered: 07/29/2022) | 07/28/2022 |
| 140 | Notice of Incomplete Filing issued to Jennifer Feeney. Failure to file required item(s) by the due date may result in the striking of the incomplete filing, the dismissal of the Bankruptcy case without further notice, or other action as the Court deems appropriate. Required item(s): A $100.00 filing fee is due for the Motion to Appear Pro Hac Vice filed on 07/28/2022. (re: Doc # 124). Incomplete Filing due by 08/05/2022. (Admin) (Entered: 07/29/2022) | 07/29/2022 |
| 141 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Adam C. Silverstein on behalf of Creditor Seeger Weiss LLP. (Attachments: (1) Exhibit A.) (Silverstein, Adam) (Entered: 07/29/2022) [Granted by # 167 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV762Kdm_idV43702555Kdoc_numV167Kpdf_headerV1');] | 07/29/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33252951. Fee amount 100.00 (re: Doc # 141). (U.S. Treasury) (Entered: 07/29/2022) | 07/29/2022 |
| 142 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Robert C Yan on behalf of Creditor Seeger Weiss LLP. (Attachments: (1) Exhibit A.) (Yan, Robert) (Entered: 07/29/2022) [Granted by # 168 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV764Kdm_idV43702560Kdoc_numV168Kpdf_headerV1');] | 07/29/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33253175. Fee amount 100.00 (re: Doc # 142). (U.S. Treasury) (Entered: 07/29/2022) | 07/29/2022 |
| 143 | Interim Order on Motion for Approval of Cash Management System (re: Doc # 23). Hearing to be held on 8/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 4:00 PM Eastern on 8/15/2022. Attorney for the debtor must distribute this order. (cmm) (Entered: 07/29/2022) | 07/29/2022 |
| 144 | Interim Order (I) Authorizing the Debtors to (A) Maintain Their Prepetition Insurance Coverage and Satisfy Prepetition Obligations Related Thereto, (B) Continue to Pay Certain Brokerage Fees, and (C) Renew, Supplement, Modify, or Purchase Insurance and Reinsurance Coverage, (II) Approving Continuation of Their Surety Bond Program, and (III) Granting Related Relief (re: Doc # 22). Hearing to be held on 8/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 4:00 PM Eastern on 8/15/2022. Attorney for the debtor must distribute this order. (cmm) (Entered: 07/29/2022) | 07/29/2022 |
| 145 | Appearance filed by Andrea Kochert Townsend on behalf of Creditor Capital Machinery Systems, Inc. (Townsend, Andrea) (Entered: 07/29/2022) | 07/29/2022 |
| 146 | Interim Order on Motion to Pay Pre-Petition Trust Fund Taxes (re: Doc # 21). Hearing to be held on 8/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 4:00 PM Eastern on 8/15/2022. Attorney for the debtor must distribute this order. (cmm) (Entered: 07/29/2022) | 07/29/2022 |
| 147 | Interim Order on Motion to Provide Adequate Assurance to Utilities (re: Doc # 24). Hearing to be held on 8/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 4:00 PM Eastern on 8/15/2022. Attorney for the debtor must distribute this order. (cmm) (Entered: 07/29/2022) | 07/29/2022 |
| 148 | Appearance filed by Deborah K. Levy on behalf of Creditor Junell & Associates, PLLC. (Levy, Deborah) (Entered: 07/29/2022) | 07/29/2022 |

Case: 22-2606          Document: 32          Filed: 12/12/2022          Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 149 | Interim Order (I) Authorizing the Debtors to Pay Prepetition Claims of 503(B)(9) Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief (re: Doc # 25). Hearing to be held on 8/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 4:00 PM Eastern on 8/15/2022. Attorney for the debtor must distribute this order. (cmm) (Entered: 07/29/2022) | 07/29/2022 |
| 150 | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Compensation, and Benefit Obligations and (B) Continue Employee Compensation and Benefits Programs, and (II) Granting Related Relief (re: Doc # 20). Hearing to be held on 8/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 4:00 PM Eastern on 8/15/2022. Attorney for the debtor must distribute this order. (cmm) (Entered: 07/29/2022) | 07/29/2022 |
| 151 | Order (I) Extending Time to File (A) Schedules of Assets and Liabilities, (B) Schedules of Current Income and Expenditures, (C) Schedules of Executory Contracts and Unexpired Leases, (D) Statements of Financial Affairs, and (II) Granting Related Relief (re: Doc # 16). Incomplete Filings due by 8/29/2022. Attorney for the debtor must distribute this order. (cmm) (Entered: 07/29/2022) | 07/29/2022 |
| 152 | Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief (re: Doc # 18). Attorney for the debtor must distribute this order. (cmm) (Entered: 07/29/2022) | 07/29/2022 |
| 153 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 100). Attorney for Creditor Seeger Weiss LLP must distribute this order. (hhd) (Entered: 07/29/2022) | 07/29/2022 |
| 154 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Tristan Manthey on behalf of Creditor Clark, Love & Hutson, PLLC. (Manthey, Tristan) (Entered: 07/29/2022) [Granted by # 176 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV804Kdm_idV43704224Kdoc_numV176Kpdf_headerV1');] | 07/29/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33255538. Fee amount 100.00 (re: Doc # 154). (U.S. Treasury) (Entered: 07/29/2022) | 07/29/2022 |
| 155 | Appearance filed by Tristan Manthey on behalf of Creditor Clark, Love & Hutson, PLLC. (Manthey, Tristan) (Entered: 07/29/2022) | 07/29/2022 |
| 156 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Brent Barriere on behalf of Creditor Clark, Love & Hutson, PLLC. (Barriere, Brent) (Entered: 07/29/2022) [Granted by # 178 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV814Kdm_idV43704253Kdoc_numV178Kpdf_headerV1');] | 07/29/2022 |
| 157 | Appearance filed by Brent Barriere on behalf of Creditor Clark, Love & Hutson, PLLC. (Barriere, Brent) (Entered: 07/29/2022) | 07/29/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33255604. Fee amount 100.00 (re: Doc # 156). (U.S. Treasury) (Entered: 07/29/2022) | 07/29/2022 |
| 158 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Cherie Nobles on behalf of Creditor Clark, Love & Hutson, PLLC. (Nobles, Cherie) (Entered: 07/29/2022) [Granted by # 179 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV816Kdm_idV43704266Kdoc_numV179Kpdf_headerV1');] | 07/29/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33255611. Fee amount 100.00 (re: Doc # 158). (U.S. Treasury) (Entered: 07/29/2022) | 07/29/2022 |
| 159 | Order Vacating Order on Motion to Appear Pro Hac Vice (re: Doc # 119). The Clerk's Office will distribute this order. (hhd) (Entered: 08/01/2022) | 08/01/2022 |
| 160 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 122). Attorney for the debtor must distribute this order. (hhd) (Entered: 08/01/2022) | 08/01/2022 |
| 161 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 123). Attorney for the debtor must distribute this order. (hhd) (Entered: 08/01/2022) | 08/01/2022 |
| 162 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 130). Attorney for Creditor Seeger Weiss LLP must distribute this order. (hhd) (Entered: 08/01/2022) | 08/01/2022 |
| 163 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 135). Attorney for Creditor Bellwether Plaintiffs Adkins, Wilkerson, and Vaugh must distribute this order. (hhd) (Entered: 08/01/2022) | 08/01/2022 |
| 164 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 7/27/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 126, 137). Remote electronic access to the transcript is restricted until 10/31/2022. (Bowen, James) (Entered: 08/01/2022) [Transcript] | 08/01/2022 |
| 165 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 7/27/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 126, 137). Remote electronic access to the transcript is restricted until 10/31/2022. (Bowen, James) (Entered: 08/01/2022) [Transcript] | 08/01/2022 |
| 166 | Appearance filed by Cherie Nobles on behalf of Creditor Clark, Love & Hutson, PLLC. (Nobles, Cherie) (Entered: 08/01/2022) | 08/01/2022 |

A.41

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 167 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 141). Attorney for Creditor Seeger Weiss LLP must distribute this order. (hhd) (Entered: 08/01/2022) | 08/01/2022 |
| 168 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 142). Attorney for Creditor Seeger Weiss LLP must distribute this order. (hhd) (Entered: 08/01/2022) | 08/01/2022 |
| | Fee due and payable by Jennifer S. Feeney on behalf of Creditor Seeger Weiss LLP for Motion to Appear Pro Hac Vice in the amount of $100.00 (re: Doc # 124). (gel) (Entered: 08/01/2022) | 08/01/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number 76273804148. Fee amount 100.00 (re: Doc # 124). Deadline terminated: Notice of Incomplete Filing (140). (gel) (Entered: 08/01/2022) | 08/01/2022 |
| 169 | Notice of Submission OF NOTICE OF POTENTIAL TAG-ALONG ACTION filed by Ashley Keller. (lad) CORRECTION: Missing docket text added in all capitals. Modified on 8/5/2022. (lad) (Entered: 08/01/2022) | 08/01/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33258089. Fee amount 100.00 (re: Doc # 124). (U.S. Treasury) (Entered: 08/01/2022) | 08/01/2022 |
| 170 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Renee D. Smith on behalf of Debtor Aearo Technologies LLC (re: Doc # 79). (Attachments: (1) Affidavit) (Smith, Renee) (Entered: 08/01/2022) [Granted by # 191 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV873Kdm_idV43706466Kdoc_numV191Kpdf_headerV1');] | 08/01/2022 |
| 171 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by David Bernick on behalf of Debtor Aearo Technologies LLC (re: Doc # 78). (Attachments: (1) Affidavit) (Bernick, David) (Entered: 08/01/2022) [Granted by # 192 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV875Kdm_idV43706478Kdoc_numV192Kpdf_headerV1');] | 08/01/2022 |
| 172 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 87). Attorney for Creditor Junell & Associates, PLLC must distribute this order. (hhd) (Entered: 08/01/2022) | 08/01/2022 |
| 173 | Motion to Enforce Automatic Stay filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C (4) Exhibit D (5) Exhibit E) (Hokanson, Jeffrey) (Entered: 08/01/2022) | 08/01/2022 |
| 174 | Notice of Hearing re: Motion to Enforce Automatic Stay, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 173). Objections due by 4:00 PM Eastern on 8/15/2022. Hearing to be held on 8/18/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis AND VIA ZOOM. PARTIES THAT WISH TO LISTEN BUT NOT ACTIVELY PARTICIPATE MAY DO SO BY PHONE AT 551-285-1373 OR 646-828-7669, MEETING ID 160 2312 6397. (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 8/2/2022. (cmm) (Entered: 08/01/2022) | 08/01/2022 |
| 175 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 98). Attorney for Creditor Bellwether Plaintiffs Adkins, Wilkerson, and Vaugh must distribute this order. (cmm) (Entered: 08/01/2022) | 08/01/2022 |
| 176 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 154). Attorney for Creditor Clark, Love & Hutson, PLLC must distribute this order. (cmm) (Entered: 08/01/2022) | 08/01/2022 |
| 177 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Michael B. Martin on behalf of Interested Party Michael Martin. (Attachments: (1) Affidavit of Michael Martin) (Martin, Michael) (Entered: 08/01/2022) [Granted by # 193 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV877Kdm_idV43706525Kdoc_numV193Kpdf_headerV1');] | 08/01/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33259450. Fee amount 100.00 (re: Doc # 177). (U.S. Treasury) (Entered: 08/01/2022) | 08/01/2022 |
| 178 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 156). Attorney for Creditor Clark, Love & Hutson, PLLC must distribute this order. (cmm) (Entered: 08/01/2022) | 08/01/2022 |
| 179 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 158). Attorney for Creditor Clark, Love & Hutson, PLLC must distribute this order. (cmm) (Entered: 08/01/2022) | 08/01/2022 |
| 180 | Appearance filed by Karen Hope Beyea-Schroeder on behalf of Creditor Junell & Associates, PLLC. (Beyea-Schroeder, Karen) (Entered: 08/01/2022) | 08/01/2022 |
| 181 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, Order on Corrected Motion to Appear Pro Hac Vice, filed by Patricia B. Tomasco on behalf of Creditor Bellwether Plaintiffs Adkins, Wilkerson, and Vaugh (re: Doc # 163, 175). (Tomasco, Patricia) (Entered: 08/01/2022) | 08/01/2022 |
| 182 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Jason Walker Burge on behalf of Creditor Clark, Love & Hutson, PLLC. (Burge, Jason) (Entered: 08/01/2022) [Granted by # 194 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV879Kdm_idV43706528Kdoc_numV194Kpdf_headerV1');] | 08/01/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33260026. Fee amount 100.00 (re: Doc # 182). (U.S. Treasury) (Entered: 08/01/2022) | 08/01/2022 |
| 183 | Appearance filed by Jason Walker Burge on behalf of Creditor Clark, Love & Hutson, PLLC. (Burge, Jason) (Entered: 08/01/2022) | 08/01/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 184 | Notice of Submission // Notice of Filing with respect to Motion to Enforce filed by Robert J Pfister on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 173). (Pfister, Robert) (Entered: 08/01/2022) | 08/01/2022 |
| 185 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Kevin C Maclay on behalf of Interested Party Cory Watson, P.C. (Maclay, Kevin) (Entered: 08/01/2022) [Granted by # 195 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV881Kdm_idV43706531Kdoc_numV195Kpdf_headerV1');] | 08/01/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33260087. Fee amount 100.00 (re: Doc # 185). (U.S. Treasury) (Entered: 08/01/2022) | 08/01/2022 |
| 186 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Todd E. Phillips on behalf of Interested Party Cory Watson, P.C. (Phillips, Todd) (Entered: 08/01/2022) [Granted by # 196 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV883Kdm_idV43706540Kdoc_numV196Kpdf_headerV1');] | 08/01/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33260107. Fee amount 100.00 (re: Doc # 186). (U.S. Treasury) (Entered: 08/01/2022) | 08/01/2022 |
| 187 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Kevin M Davis on behalf of Interested Party Cory Watson, P.C. (Davis, Kevin) (Entered: 08/01/2022) [Granted by # 197 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV885Kdm_idV43706548Kdoc_numV197Kpdf_headerV1');] | 08/01/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33260123. Fee amount 100.00 (re: Doc # 187). (U.S. Treasury) (Entered: 08/01/2022) | 08/01/2022 |
| 188 | Appearance filed by Kevin C Maclay on behalf of Interested Party Cory Watson, P.C. (Maclay, Kevin) (Entered: 08/01/2022) | 08/01/2022 |
| 189 | Appearance filed by Andrew T Kight on behalf of Interested Party Weitz & Luxenberg, PC. (Kight, Andrew) (Entered: 08/02/2022) | 08/02/2022 |
| 190 | Appearance filed by Michael W. Hile on behalf of Interested Party Weitz & Luxenberg, PC. (Hile, Michael) (Entered: 08/02/2022) | 08/02/2022 |
| 191 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 170). Attorney for the debtor must distribute this order. (hhd) (Entered: 08/02/2022) | 08/02/2022 |
| 192 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 171). Attorney for the debtor must distribute this order. (hhd) (Entered: 08/02/2022) | 08/02/2022 |
| 193 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 177). Attorney for Interested Party Michael Martin must distribute this order. (hhd) (Entered: 08/02/2022) | 08/02/2022 |
| 194 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 182). Attorney for Creditor Clark, Love & Hutson, PLLC must distribute this order. (hhd) (Entered: 08/02/2022) | 08/02/2022 |
| 195 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 185). Attorney for Interested Party Cory Watson, P.C. must distribute this order. (hhd) (Entered: 08/02/2022) | 08/02/2022 |
| 196 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 186). Attorney for Interested Party Cory Watson, P.C. must distribute this order. (hhd) (Entered: 08/02/2022) | 08/02/2022 |
| 197 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 187). Attorney for Interested Party Cory Watson, P.C. must distribute this order. (hhd) (Entered: 08/02/2022) | 08/02/2022 |
| 198 | Appearance filed by Ashley Keller on behalf of Creditor Keller Postman LLC. (Keller, Ashley) (Entered: 08/02/2022) | 08/02/2022 |
| 199 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, filed by Cherie Nobles on behalf of Creditor Clark, Love & Hutson, PLLC (re: Doc # 176, 178, 179, 194). (Nobles, Cherie) (Entered: 08/02/2022) | 08/02/2022 |
| 200 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 124). Attorney for Creditor Seeger Weiss LLP must distribute this order. (hhd) (Entered: 08/02/2022) | 08/02/2022 |
| 201 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Samuel P Hershey on behalf of Creditor 3M Company. (Attachments: (1) Affidavit) (Hershey, Samuel) (Entered: 08/02/2022) [Granted by # 217 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV988Kdm_idV43711089Kdoc_numV217Kpdf_headerV1');] | 08/02/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33262935. Fee amount 100.00 (re: Doc # 201). (U.S. Treasury) (Entered: 08/02/2022) | 08/02/2022 |
| 202 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Kiah T Ford IV on behalf of Creditor Parafinczuk Wolf, P.A. (Ford, Kiah) (Entered: 08/02/2022) [Granted by # 218 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV990Kdm_idV43711102Kdoc_numV218Kpdf_headerV1');] | 08/02/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 203 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Phillip Fajgenbaum on behalf of Creditor Parafinczuk Wolf, P.A. (Fajgenbaum, Phillip) (Entered: 08/02/2022) [Granted by # 219 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV992Kdm_idV43711118Kdoc_numV219Kpdf_headerV1');] | 08/02/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33262997. Fee amount 100.00 (re: Doc # 203). (U.S. Treasury) (Entered: 08/02/2022) | 08/02/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33263007. Fee amount 100.00 (re: Doc # 202). (U.S. Treasury) (Entered: 08/02/2022) | 08/02/2022 |
| 204 | Appearance filed by Kiah T Ford IV on behalf of Creditor Parafinczuk Wolf, P.A. (Ford, Kiah) (Entered: 08/02/2022) | 08/02/2022 |
| 205 | Appearance filed by Phillip Fajgenbaum on behalf of Creditor Parafinczuk Wolf, P.A. (Fajgenbaum, Phillip) (Entered: 08/02/2022) | 08/02/2022 |
| 206 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Nicole Berg on behalf of Creditor Keller Postman LLC. (Attachments: (1) Affidavit (2) Exhibit COG - Nicole C. Berg (3) Exhibit Proposed Order) (Berg, Nicole) (Entered: 08/02/2022) [Granted by # 220 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV994Kdm_idV43711123Kdoc_numV220Kpdf_headerV1');] | 08/02/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33263375. Fee amount 100.00 (re: Doc # 206). (U.S. Treasury) (Entered: 08/02/2022) | 08/02/2022 |
| 207 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Kevin W Barrett on behalf of Creditor Bailey Glasser Plaintiffs. (Attachments: (1) Affidavit) (Barrett, Kevin) (Entered: 08/02/2022) [Granted by # 221 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV996Kdm_idV43711134Kdoc_numV221Kpdf_headerV1');] | 08/02/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33263390. Fee amount 100.00 (re: Doc # 207). (U.S. Treasury) (Entered: 08/02/2022) | 08/02/2022 |
| 208 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Maggie B. Burrus on behalf of Creditor Bailey Glasser Plaintiffs. (Attachments: (1) Affidavit) (Burrus, Maggie) (Entered: 08/02/2022) [Granted by # 222 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV998Kdm_idV43711145Kdoc_numV222Kpdf_headerV1');] | 08/02/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33263401. Fee amount 100.00 (re: Doc # 208). (U.S. Treasury) (Entered: 08/02/2022) | 08/02/2022 |
| 209 | Appearance filed by Maggie B. Burrus on behalf of Creditor Bailey Glasser Plaintiffs. (Burrus, Maggie) (Entered: 08/02/2022) | 08/02/2022 |
| 210 | Appearance filed by Kevin W Barrett on behalf of Creditor Bailey Glasser Plaintiffs. (Barrett, Kevin) (Entered: 08/02/2022) | 08/02/2022 |
| 211 | Appearance filed by Kevin C Maclay on behalf of Interested Party Heninger Garrison Davis, LLC. (Maclay, Kevin) (Entered: 08/02/2022) | 08/02/2022 |
| 212 | Verification of Creditor List filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) CORRECTION: Document filed in error. See doc. #213 for corrected filing. Modified on 8/3/2022. (cmm) (Entered: 08/02/2022) | 08/02/2022 |
| 213 | List of Secured Creditors filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 08/02/2022) | 08/02/2022 |
| 214 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Ariella Thal Simonds on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Thal Simonds, Ariella) (Entered: 08/03/2022) [Granted by # 234 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1071Kdm_idV43714771Kdoc_numV234Kpdf_headerV1');] | 08/03/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33264662. Fee amount 100.00 (re: Doc # 214). (U.S. Treasury) (Entered: 08/03/2022) | 08/03/2022 |
| 215 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Brian A Glasser on behalf of Creditor Bailey Glasser Plaintiffs. (Attachments: (1) Affidavit) (Glasser, Brian) (Entered: 08/03/2022) [Granted by # 235 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1073Kdm_idV43714774Kdoc_numV235Kpdf_headerV1');] | 08/03/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33264914. Fee amount 100.00 (re: Doc # 215). (U.S. Treasury) (Entered: 08/03/2022) | 08/03/2022 |
| 216 | Appearance filed by Brian A Glasser on behalf of Creditor Bailey Glasser Plaintiffs. (Glasser, Brian) (Entered: 08/03/2022) | 08/03/2022 |
| 217 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 201). Attorney for Creditor 3M Company must distribute this order. (hhd) (Entered: 08/03/2022) | 08/03/2022 |
| 218 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 202). Attorney for Creditor Parafinczuk Wolf, P.A. must distribute this order. (hhd) (Entered: 08/03/2022) | 08/03/2022 |
| 219 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 203). Attorney for Creditor Parafinczuk Wolf, P.A. must distribute this order. (hhd) (Entered: 08/03/2022) | 08/03/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 220 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 206). Attorney for Creditor Keller Postman LLC must distribute this order. (hhd) (Entered: 08/03/2022) | 08/03/2022 |
| 221 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 207). Attorney for Creditor Bailey Glasser Plaintiffs must distribute this order. (hhd) (Entered: 08/03/2022) | 08/03/2022 |
| 222 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 208). Attorney for Creditor Bailey Glasser Plaintiffs must distribute this order. (hhd) (Entered: 08/03/2022) | 08/03/2022 |
| 223 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Ashley Barriere on behalf of Creditor Keller Postman LLC. (Attachments: (1) Affidavit) (Barriere, Ashley) (Entered: 08/03/2022) [Granted by # 238 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1089Kdm_idV43715228Kdoc_numV238Kpdf_headerV1');] | 08/03/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33265181. Fee amount 100.00 (re: Doc # 223). (U.S. Treasury) (Entered: 08/03/2022) | 08/03/2022 |
| 224 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Frank Dylewski on behalf of Creditor Keller Postman LLC. (Attachments: (1) Affidavit) (Dylewski, Frank) (Entered: 08/03/2022) [Granted by # 239 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1091Kdm_idV43715233Kdoc_numV239Kpdf_headerV1');] | 08/03/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33265220. Fee amount 100.00 (re: Doc # 224). (U.S. Treasury) (Entered: 08/03/2022) | 08/03/2022 |
| 225 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Matthew Steven Hosen on behalf of Creditor Bellwether Plaintiffs Adkins and Vaughn. (Hosen, Matthew) (Entered: 08/03/2022) [Granted by # 240 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1093Kdm_idV43715241Kdoc_numV240Kpdf_headerV1');] | 08/03/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33265700. Fee amount 100.00 (re: Doc # 225). (U.S. Treasury) (Entered: 08/03/2022) | 08/03/2022 |
| 226 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Lisa Nathanson Busch on behalf of Interested Party Weitz & Luxenberg, PC. (Attachments: (1) Affidavit Pro Hac Vice motion and affidavit) (Busch, Lisa) (Entered: 08/03/2022) [Granted by # 241 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1095Kdm_idV43715246Kdoc_numV241Kpdf_headerV1');] | 08/03/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33265742. Fee amount 100.00 (re: Doc # 226). (U.S. Treasury) (Entered: 08/03/2022) | 08/03/2022 |
| 227 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Shelley Van Natter Hutson on behalf of Creditor Clark, Love & Hutson, PLLC. (Hutson, Shelley) (Entered: 08/03/2022) [Granted by # 244 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1114Kdm_idV43715470Kdoc_numV244Kpdf_headerV1');] | 08/03/2022 |
| 228 | Notice of Submission of Applicability of Large Case U.S. Trustee Fee Guidelines filed by Harrison Edward Strauss on behalf of U.S. Trustee. (Attachments: (1) Appendix B) (Strauss, Harrison) (Entered: 08/03/2022) | 08/03/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33266182. Fee amount 100.00 (re: Doc # 227). (U.S. Treasury) (Entered: 08/03/2022) | 08/03/2022 |
| 229 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by William Michael Moreland on behalf of Creditor Clark, Love & Hutson, PLLC. (Moreland, William) (Entered: 08/03/2022) [Granted by # 245 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1116Kdm_idV43715483Kdoc_numV245Kpdf_headerV1');] | 08/03/2022 |
| 230 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Clayton A Clark on behalf of Creditor Clark, Love & Hutson, PLLC. (Clark, Clayton) (Entered: 08/03/2022) [Granted by # 246 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1118Kdm_idV43715498Kdoc_numV246Kpdf_headerV1');] | 08/03/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33266360. Fee amount 100.00 (re: Doc # 229). (U.S. Treasury) (Entered: 08/03/2022) | 08/03/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33266371. Fee amount 100.00 (re: Doc # 230). (U.S. Treasury) (Entered: 08/03/2022) | 08/03/2022 |
| 231 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by David R. Buchanan on behalf of Creditor Seeger Weiss LLP. (Buchanan, David) (Entered: 08/03/2022) [Granted by # 242 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1097Kdm_idV43715252Kdoc_numV242Kpdf_headerV1');] | 08/03/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33266421. Fee amount 100.00 (re: Doc # 231). (U.S. Treasury) (Entered: 08/03/2022) | 08/03/2022 |
| 232 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Max Kelly on behalf of Interested Party Seeger Weiss, LLP. (Kelly, Max) (Entered: 08/03/2022) [Granted by # 243 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1099Kdm_idV43715263Kdoc_numV243Kpdf_headerV1');] | 08/03/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33266433. Fee amount 100.00 (re: Doc # 232). (U.S. Treasury) (Entered: 08/03/2022) | 08/03/2022 |
| 233 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Caleb Seeley on behalf of Interested Party Seeger Weiss, LLP. (Seeley, Caleb) (Entered: 08/04/2022) [Granted by # 252 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1138Kdm_idV43716389Kdoc_numV252Kpdf_headerV1');] | 08/04/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33267377. Fee amount 100.00 (re: Doc # 233). (U.S. Treasury) (Entered: 08/04/2022) | 08/04/2022 |
| 234 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 214). Attorney for Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC must distribute this order. (hhd) (Entered: 08/04/2022) | 08/04/2022 |
| 235 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 215). Attorney for Creditor Bailey Glasser Plaintiffs must distribute this order. (hhd) (Entered: 08/04/2022) | 08/04/2022 |
| 236 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Christopher A. Seeger on behalf of Interested Party Seeger Weiss, LLP. (Seeger, Christopher) (Entered: 08/04/2022) [Granted by # 253 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1140Kdm_idV43716400Kdoc_numV253Kpdf_headerV1');] | 08/04/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33267768. Fee amount 100.00 (re: Doc # 236). (U.S. Treasury) (Entered: 08/04/2022) | 08/04/2022 |
| 237 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Justine Delaney on behalf of Interested Party Weitz & Luxenberg, PC. (Delaney, Justine) (Entered: 08/04/2022) [Granted by # 264 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1190Kdm_idV43719133Kdoc_numV264Kpdf_headerV1');] | 08/04/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33267965. Fee amount 100.00 (re: Doc # 237). (U.S. Treasury) (Entered: 08/04/2022) | 08/04/2022 |
| 238 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 223). Attorney for Creditor Keller Postman LLC must distribute this order. (hhd) (Entered: 08/04/2022) | 08/04/2022 |
| 239 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 224). Attorney for Creditor Keller Postman LLC must distribute this order. (hhd) (Entered: 08/04/2022) | 08/04/2022 |
| 240 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 225). Attorney for Creditor Bellwether Plaintiffs Adkins and Vaughn must distribute this order. (hhd) (Entered: 08/04/2022) | 08/04/2022 |
| 241 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 226). Attorney for Interested Party Weitz & Luxenberg, PC must distribute this order. (hhd) (Entered: 08/04/2022) | 08/04/2022 |
| 242 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 231). Attorney for Creditor Seeger Weiss LLP must distribute this order. (hhd) (Entered: 08/04/2022) | 08/04/2022 |
| 243 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 232). Attorney for Interested Party Seeger Weiss, LLP must distribute this order. (hhd) (Entered: 08/04/2022) | 08/04/2022 |
| 244 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 227). Attorney for Creditor Clark, Love & Hutson, PLLC must distribute this order. (cmm) (Entered: 08/04/2022) | 08/04/2022 |
| 245 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 229). Attorney for Creditor Clark, Love & Hutson, PLLC must distribute this order. (cmm) (Entered: 08/04/2022) | 08/04/2022 |
| 246 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 230). Attorney for Creditor Clark, Love & Hutson, PLLC must distribute this order. (cmm) (Entered: 08/04/2022) | 08/04/2022 |
| 247 | Appearance filed by Shelley Van Natter Hutson on behalf of Creditor Clark, Love & Hutson, PLLC. (Hutson, Shelley) (Entered: 08/04/2022) | 08/04/2022 |
| 248 | Appearance filed by William Michael Moreland on behalf of Creditor Clark, Love & Hutson, PLLC. (Moreland, William) (Entered: 08/04/2022) | 08/04/2022 |
| 249 | Appearance filed by Clayton A Clark on behalf of Creditor Clark, Love & Hutson, PLLC. (Clark, Clayton) (Entered: 08/04/2022) | 08/04/2022 |
| 250 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, filed by Shelley Van Natter Hutson on behalf of Creditor Clark, Love & Hutson, PLLC (re: Doc # 244, 245, 246). (Hutson, Shelley) (Entered: 08/04/2022) | 08/04/2022 |
| 251 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 86, 90, 91, 120, 234). (Maoz, Nir) (Entered: 08/04/2022) | 08/04/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 252 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 233). Attorney for Interested Party Seeger Weiss, LLP must distribute this order. (hhd) (Entered: 08/04/2022) | 08/04/2022 |
| 253 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 236). Attorney for Interested Party Seeger Weiss, LLP must distribute this order. (hhd) (Entered: 08/04/2022) | 08/04/2022 |
| 254 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Amanda Hunt on behalf of Creditor Keller Postman LLC. (Attachments: (1) Affidavit) (Hunt, Amanda) (Entered: 08/04/2022) [Granted by # 265 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1192Kdm_idV43719136Kdoc_numV265Kpdf_headerV1');] | 08/04/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33269134. Fee amount 100.00 (re: Doc # 254). (U.S. Treasury) (Entered: 08/04/2022) | 08/04/2022 |
| 255 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, filed by Kevin W Barrett on behalf of Creditor Bailey Glasser Plaintiffs (re: Doc # 221, 222, 235). (Barrett, Kevin) (Entered: 08/04/2022) | 08/04/2022 |
| 256 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Justin G. Witkin on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Attachments: (1) Affidavit) (Witkin, Justin) (Entered: 08/04/2022) [Amended by # 274 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1259Kdm_idV43720572Kdoc_numV274Kpdf_headerV1');] | 08/04/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33269792. Fee amount 100.00 (re: Doc # 256). (U.S. Treasury) (Entered: 08/04/2022) | 08/04/2022 |
| 257 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Bobby Jene Bradford, Jr. on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Attachments: (1) Affidavit) (Bradford, Jr., Bobby) (Entered: 08/04/2022) [Granted by # 268 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1239Kdm_idV43719984Kdoc_numV268Kpdf_headerV1');] | 08/04/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33269810. Fee amount 100.00 (re: Doc # 257). (U.S. Treasury) (Entered: 08/04/2022) | 08/04/2022 |
| 258 | Notice of Submission of United States Trustee's Notice Regarding Status of Formation of Unsecured Creditors Committee(s) filed by Harrison Edward Strauss on behalf of U.S. Trustee. (Strauss, Harrison) (Entered: 08/04/2022) | 08/04/2022 |
| 259 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Bryan F. Aylstock on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Attachments: (1) Affidavit) (Aylstock, Bryan) (Entered: 08/04/2022) [Granted by # 272 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1253Kdm_idV43720449Kdoc_numV272Kpdf_headerV1');] | 08/04/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33270109. Fee amount 100.00 (re: Doc # 259). (U.S. Treasury) (Entered: 08/04/2022) | 08/04/2022 |
| 260 | Notice of Submission / Amended Consolidated List of Law Firms Representing the Respirator Claimants filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 08/04/2022) | 08/04/2022 |
| 261 | Notice of Submission / Amended Consolidated List of Law Firms Representing the Combat Arms Claimants filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 08/04/2022) | 08/04/2022 |
| 262 | Notice of Submission / Amended Consolidated List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 08/04/2022) | 08/04/2022 |
| 263 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Adam Wolfson on behalf of Creditor Bellwether Plaintiffs Adkins and Vaughn. (Wolfson, Adam) (Entered: 08/05/2022) [Granted by # 273 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1255Kdm_idV43720455Kdoc_numV273Kpdf_headerV1');] | 08/05/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33270625. Fee amount 100.00 (re: Doc # 263). (U.S. Treasury) (Entered: 08/05/2022) | 08/05/2022 |
| 264 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 237). Attorney for Interested Party Weitz & Luxenberg, PC must distribute this order. (hhd) (Entered: 08/05/2022) | 08/05/2022 |
| 265 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 254). Attorney for Creditor Keller Postman LLC must distribute this order. (hhd) (Entered: 08/05/2022) | 08/05/2022 |

A.47

Case: 22-2606      Document: 32      Filed: 12/12/2022      Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 266 | Certificate of Service re: Motion for Joint Administration, Declaration, Brief, Motion to Retain Noticing, Balloting, or Claims Agent, Motion to Extend Time to File Initial Documents, Motion for Authority / Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File One List of the Top Law Firms Representing the Largest Numbers of Tort Plaintiffs Asserting Claims Against the Debtors, (II) Authorizing The Debtors to File One Consolidated Creditor Matrix, (III) Authorizing the Listing of Addresses of Counsel For Tort Claimants in the Creditor Matrix in Lieu of Claimants' Addresses, (IV) Authorizing the Debtors to Redact Personally Identifiable Information, (V) Approving Certain Notice Procedures for Tort Claimants, (VI) Approving the Form and Manner of Notice of the Commencement of these Chapter 11 Cases, and (VII) Granting Related Relief, Motion for Case Management Order, Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Compensation, and Benefit Obligations and (B) Continue Employee Compensation and Benefits Programs, and (II) Granting Related Relief, Motion to Pay Pre-Petition Trust Fund Taxes, Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Their Prepetition Insurance Coverage and Satisfy Prepetition Obligations Related Thereto, (B) Continue to Pay Certain Brokerage Fees, and (C) Renew, Supplement, Modify, or Purchase Insurance and Reinsurance Coverage, (II) Approving Continuation of Their Surety Bond Program, and (III) Granting Related Relief, Motion for Approval of Cash Management System (Bank Accounts/Business Forms), Motion to Provide Adequate Assurance to Utilities, Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Specified Trade Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief, Motion for Expedited Hearing and/or Shortened Notice Time on Motion for Authority / Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File One List of the Top Law Firms Representing the Largest Numbers of Tort Plaintiffs Asserting Claims Against the Debtors, (II) Authorizing The Debtors to File One Consolidated Creditor Matrix, (III) Authorizing the Listing of Addresses of Counsel For Tort Claimants in the Creditor Matrix in Lieu of Claimants' Addresses, (IV) Authorizing the Debtors to Redact Personally Identifiable Information, (V) Approving Certain Notice Procedures for Tort Claimants, (VI) Approving the Form and Manner of Notice of the Commencement of these Chapter 11 Cases, and (VII) Granting Related Relief, Motion for Expedited Hearing and/or Shortened Notice Time, Motion for Expedited Hearing and/or Shortened Notice Time, Motion for Expedited Hearing and/or Shortened Notice Time, Order on Motion for Expedited Hearing and/or Shortened Notice Time, Joint Administration Notice, Order on Motion for Expedited Hearing and/or Shortened Notice Time, Order on Motion for Expedited Hearing and/or Shortened Notice Time, Order on Motion for Expedited Hearing and/or Shortened Notice Time, Order on Motion to Retain Noticing, Balloting, or Claims Agents Pursuant to Local Rule S.D.Ind. B-1007-2, Order on Motion for Authority, Interim Order, Interim Order, Interim Order, Interim Order, Interim Order, Interim Order, Order on Motion to Extend Time to File Initial Documents, Order on Motion for Case Management Order, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 7, 11, 12, 13, 16, 17, 18, 20, 21, 22, 23, 24, 25, 29, 30, 31, 32, 45, 46, 47, 49, 50, 133, 134, 143, 144, 146, 147, 149, 150, 151, 152). (Baer, Herbert) (Entered: 08/05/2022) | 08/05/2022 |
| 267 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Joseph Scott Nabers on behalf of Creditor Nabers Law Firm PLLC. (Attachments: (1) Affidavit) (Nabers, Joseph) (Entered: 08/05/2022) [Granted by # 276 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1268Kdm_idV43721143Kdoc_numV276Kpdf_headerV1');] | 08/05/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33271247. Fee amount 100.00 (re: Doc # 267). (U.S. Treasury) (Entered: 08/05/2022) | 08/05/2022 |
| 268 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 257). Attorney for Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC must distribute this order. (hhd) (Entered: 08/05/2022) | 08/05/2022 |
| 269 | Appearance filed by Martha R. Lehman on behalf of Interested Parties The Johnson Law Group, Tracey Fox King & Walters. (Lehman, Martha) (Entered: 08/05/2022) | 08/05/2022 |
| 270 | Appearance filed by Mark R. Wenzel on behalf of Interested Parties The Johnson Law Group, Tracey Fox King & Walters. (Wenzel, Mark) (Entered: 08/05/2022) | 08/05/2022 |
| 271 | Notice of Submission of United States Trustee's Second Notice Regarding the Status of Formation of Unsecured Creditors Committee(s) filed by Harrison Edward Strauss on behalf of U.S. Trustee. (Strauss, Harrison) (Entered: 08/05/2022) | 08/05/2022 |
| 272 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 259). Attorney for Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC must distribute this order. (hhd) (Entered: 08/05/2022) | 08/05/2022 |
| 273 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 263). Attorney for Creditor Bellwether Plaintiffs Adkins and Vaughn must distribute this order. (hhd) (Entered: 08/05/2022) | 08/05/2022 |
| 274 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Justin G. Witkin on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 256). (Attachments: (1) Affidavit) (Witkin, Justin) (Entered: 08/05/2022) [Granted by # 313 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1429Kdm_idV43733703Kdoc_numV313Kpdf_headerV1');] | 08/05/2022 |
| 275 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, Order on Corrected Motion to Appear Pro Hac Vice, filed by Karen Hope Beyea-Schroeder on behalf of Creditor Junell & Associates, PLLC (re: Doc # 121, 172). (Beyea-Schroeder, Karen) (Entered: 08/05/2022) | 08/05/2022 |
| 276 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 267). Attorney for Creditor Nabers Law Firm PLLC must distribute this order. (hhd) (Entered: 08/05/2022) | 08/05/2022 |
| 277 | Appearance filed by Kevin C Maclay on behalf of Interested Party The Gori Law Firm, P.C. (Maclay, Kevin) (Entered: 08/05/2022) | 08/05/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 278 | Verification of Creditor List filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Main Document (cont.) (2) Main Document (cont.)) (Hokanson, Jeffrey) (Entered: 08/05/2022) | 08/05/2022 |
| 279 | Appearance filed by Joseph Scott Nabers on behalf of Creditor Nabers Law Firm PLLC. (Nabers, Joseph) (Entered: 08/08/2022) | 08/08/2022 |
| 280 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, filed by Joseph Scott Nabers on behalf of Creditor Nabers Law Firm PLLC (re: Doc # 276). (Nabers, Joseph) (Entered: 08/08/2022) | 08/08/2022 |
| 281 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Perry Weitz on behalf of Interested Party Weitz & Luxenberg, PC. (Weitz, Perry) (Entered: 08/08/2022) [Granted by # 286 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1325Kdm_idV43728968Kdoc_numV286Pdf_headerV1');] | 08/08/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33275912. Fee amount 100.00 (re: Doc # 281). (U.S. Treasury) (Entered: 08/08/2022) | 08/08/2022 |
| 282 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by James Wehner on behalf of Interested Parties Cory Watson, P.C., Heninger Garrison Davis, LLC, The Gori Law Firm, P.C. (Wehner, James) (Entered: 08/08/2022) [Granted by # 288 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1334Kdm_idV43729352Kdoc_numV288Pdf_headerV1');] | 08/08/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33276621. Fee amount 100.00 (re: Doc # 282). (U.S. Treasury) (Entered: 08/08/2022) | 08/08/2022 |
| 283 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Jennifer M. Hoekstra on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Attachments: (1) Affidavit) (Hoekstra, Jennifer) (Entered: 08/08/2022) [Granted by # 289 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1336Kdm_idV43729367Kdoc_numV289Pdf_headerV1');] | 08/08/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number B33276884. Fee amount 100.00 (re: Doc # 283). (U.S. Treasury) (Entered: 08/08/2022) | 08/08/2022 |
| 284 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Brenton Rogers on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Rogers, Brenton) (Entered: 08/08/2022) [Granted by # 291 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1351Kdm_idV43729867Kdoc_numV291Pdf_headerV1');] | 08/08/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33277226. Fee amount 100.00 (re: Doc # 284). (U.S. Treasury) (Entered: 08/08/2022) | 08/08/2022 |
| 285 | Certificate of Service re: Motion to Enforce Automatic Stay, Hearing Notice, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 173, 174). (Baer, Herbert) (Entered: 08/08/2022) | 08/08/2022 |
| 286 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 281). Attorney for Interested Party Weitz & Luxenberg, PC must distribute this order. (hhd) (Entered: 08/09/2022) | 08/09/2022 |
| 287 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Nick Wasdin on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Affidavit) (Wasdin, Nick) (Entered: 08/09/2022) [Granted by # 309 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1412Kdm_idV43732333Kdoc_numV309Pdf_headerV1');] | 08/09/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33278300. Fee amount 100.00 (re: Doc # 287). (U.S. Treasury) (Entered: 08/09/2022) | 08/09/2022 |
| 288 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 282). Attorney for the interested parties must distribute this order. (hhd) (Entered: 08/09/2022) | 08/09/2022 |
| 289 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 283). Attorney for Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC must distribute this order. (hhd) (Entered: 08/09/2022) | 08/09/2022 |
| 290 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Gregory Starner on behalf of Creditor 3M Company. (Attachments: (1) Affidavit) (Starner, Gregory) (Entered: 08/09/2022) [Granted by # 310 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1414Kdm_idV43732340Kdoc_numV310Pdf_headerV1');] | 08/09/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33278696. Fee amount 100.00 (re: Doc # 290). (U.S. Treasury) (Entered: 08/09/2022) | 08/09/2022 |
| 291 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 284). Attorney for the debtor must distribute this order. (hhd) (Entered: 08/09/2022) | 08/09/2022 |
| 292 | Notice of 341 Meeting of Creditors. 341 Meeting to be held on 9/6/2022 at 10:00 AM Eastern via a teleconference at 888-947-8927; passcode 4467430. Attorney for Debtor to do Distribution (kao) Additional attachment(s) added. Modified on 8/9/2022. (kao) CORRECTION: Distribution language added to docket text. Modified on 8/10/2022. (cmm) (Entered: 08/09/2022) | 08/09/2022 |
| 293 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Connor Skelly on behalf of Member Debtors 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Debtor Aearo Technologies LLC. (Skelly, Connor) (Entered: 08/09/2022) [Granted by # 312 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1427Kdm_idV43733352Kdoc_numV312Pdf_headerV1');] | 08/09/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 294 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, filed by Jennifer M. Hoekstra, Bryan F. Aylstock on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 268, 272, 289). (Aylstock, Bryan) (Entered: 08/09/2022) | 08/09/2022 |
| 295 | Appearance filed by Bryan F. Aylstock on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Aylstock, Bryan) (Entered: 08/09/2022) | 08/09/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33280140. Fee amount 100.00 (re: Doc # 293). (U.S. Treasury) (Entered: 08/09/2022) | 08/09/2022 |
| 296 | Appearance filed by Jennifer M. Hoekstra on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Hoekstra, Jennifer) (Entered: 08/09/2022) | 08/09/2022 |
| 297 | Appearance filed by Bobby Jene Bradford, Jr. on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Bradford, Jr., Bobby) (Entered: 08/09/2022) | 08/09/2022 |
| 298 | Supplemental Brief in Support re: Motion to Enforce Automatic Stay, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 173). (Attachments: (1) Exhibit Exhibit A) (Hokanson, Jeffrey) (Entered: 08/09/2022) | 08/09/2022 |
| 299 | Supplemental Brief in Support re: Motion to Enforce Automatic Stay, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 173). (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C (4) Exhibit D (5) Exhibit E (6) Exhibit F (7) Exhibit G (8) Exhibit H (9) Exhibit I (10) Exhibit K1 (11) Exhibit K2 (12) Exhibit L (13) Exhibit M (14) Exhibit N (15) Exhibit O) (Hokanson, Jeffrey) (Entered: 08/09/2022) | 08/09/2022 |
| 300 | Application to Employ Kirkland & Ellis LLP as Debtor's Attorney (Verified Statement attached), filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C) (Hokanson, Jeffrey) (Entered: 08/09/2022) [Granted by # 804 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3361Kdm_idV44056686Kdoc_numV804Kpdf_headerV1');] | 08/09/2022 |
| 301 | Application to Employ McDonald Hopkins LLC as Special Counsel (Verified Statement attached), filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C) (Hokanson, Jeffrey) (Entered: 08/09/2022) [Granted by # 680 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2934Kdm_idV43954385Kdoc_numV680Kpdf_headerV1');] | 08/09/2022 |
| 302 | Application to Employ Ice Miller LLP as Debtor's Attorney (Verified Statement attached), filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C) (Hokanson, Jeffrey) (Entered: 08/09/2022) [Granted by # 672 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2908Kdm_idV43944702Kdoc_numV672Kpdf_headerV1');] | 08/09/2022 |
| 303 | Application to Employ Bates White, LLC as Other Professional (Verified Statement attached), filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C) (Hokanson, Jeffrey) (Entered: 08/09/2022) [Amended by # 304 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1394Kdm_idV43732024Kdoc_numV304Kpdf_headerV1');] | 08/09/2022 |
| 304 | Amended Application to Employ Bates White, LLC as Other Professional (Verified Statement attached), filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 303). (Attachments: (1) Exhibit A (2) Exhibit B) (Hokanson, Jeffrey) (Entered: 08/09/2022) [Granted by # 880 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3654Kdm_idV44108619Kdoc_numV880Kpdf_headerV1');] | 08/09/2022 |
| 305 | Application to Employ AP Services, LLC as Other Professional (Verified Statement attached), filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C) (Hokanson, Jeffrey) (Entered: 08/09/2022) [Granted by # 678 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2928Kdm_idV43946036Kdoc_numV678Kpdf_headerV1');] | 08/09/2022 |
| 306 | Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses re: Retained Professionals, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/09/2022) [Granted by # 541 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2374Kdm_idV43848298Kdoc_numV541Kpdf_headerV1');] | 08/09/2022 |
| 307 | Motion for Authority / Debtors' Motion for Entry of an Order Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/09/2022) [Granted by # 546 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2397Kdm_idV43850631Kdoc_numV546Kpdf_headerV1');] | 08/09/2022 |

| # | Docket Text | Date Filed |
|---|---|---|
| 308 | Notice of Hearing re: Application to Employ, Application to Employ, Application to Employ, Application to Employ, Application to Employ, Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses, Motion for Authority / Debtors' Motion for Entry of an Order Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 300, 301, 302, 304, 305, 306, 307). Hearing to be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis AND VIA ZOOM. PARTIES THAT WISH TO LISTEN BUT NOT ACTIVELY PARTICIPATE MAY DO SO BY PHONE AT 551-285-1373 OR 646-828-7666, MEETING ID 160 2312 6397. Objections due by 4:00 PM Eastern on 09/07/2022. (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Language regarding only holding hearing if objections are filed removed. Modified on 8/10/2022. (cmm) (Entered: 08/10/2022) | 08/10/2022 |
| 309 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 287). Attorney for the debtor must distribute this order. (hhd) (Entered: 08/10/2022) | 08/10/2022 |
| 310 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 290). Attorney for Creditor 3M Company must distribute this order. (hhd) (Entered: 08/10/2022) | 08/10/2022 |
| 311 | Appearance filed by John Joseph Allman on behalf of Creditors John Hunt Morgan, PSC, Kenealy & Jacobi, PLLC, Plotkin, Vincent & Jaffe, LLC. (Allman, John) (Entered: 08/10/2022) | 08/10/2022 |
| 312 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 293). Attorney for the debtor must distribute this order. (hhd) (Entered: 08/10/2022) | 08/10/2022 |
| 313 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 274). Attorney for Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC must distribute this order. (hhd) (Entered: 08/10/2022) | 08/10/2022 |
| 314 | Certificate of Service re: Order on Corrected Motion to Appear Pro Hac Vice, filed by Justin G. Witkin on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC (re: Doc # 313). (Witkin, Justin) (Entered: 08/10/2022) | 08/10/2022 |
| 315 | Appearance filed by Justin G. Witkin on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Witkin, Justin) (Entered: 08/10/2022) | 08/10/2022 |
| 316 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by David L. Selby II on behalf of Creditor Bailey Glasser Plaintiffs. (Attachments: (1) Affidavit) (Selby, David) (Entered: 08/10/2022) [Granted by # 327 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1493Kdm_idV43741898Kdoc_numV327Kpdf_headerV1');] | 08/10/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33282659. Fee amount 100.00 (re: Doc # 316). (U.S. Treasury) (Entered: 08/10/2022) | 08/10/2022 |
| 317 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by D. Todd Mathews on behalf of Creditor Bailey Glasser Plaintiffs. (Attachments: (1) Affidavit) (Mathews, D.) (Entered: 08/10/2022) [Corrected by # 386 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1788Kdm_idV43789884Kdoc_numV386Kpdf_headerV1');', 387 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1808Kdm_idV43795740Kdoc_numV387Kpdf_headerV1');] | 08/10/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33282719. Fee amount 100.00 (re: Doc # 317). (U.S. Treasury) (Entered: 08/10/2022) | 08/10/2022 |
| 318 | Appearance filed by David L. Selby II on behalf of Creditor Bailey Glasser Plaintiffs. (Selby, David) (Entered: 08/10/2022) | 08/10/2022 |
| 319 | Appearance filed by D. Todd Mathews on behalf of Creditor Bailey Glasser Plaintiffs. (Mathews, D.) (Entered: 08/10/2022) | 08/10/2022 |
| 320 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Rachel C. Strickland on behalf of Interested Party The Monsour Law Firm. (Attachments: (1) Affidavit) (Strickland, Rachel) (Entered: 08/11/2022) [Granted by # 328 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1495Kdm_idV43741903Kdoc_numV328Kpdf_headerV1');] | 08/11/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33284904. Fee amount 100.00 (re: Doc # 320). (U.S. Treasury) (Entered: 08/11/2022) | 08/11/2022 |
| 321 | Appearance filed by Kevin W Barrett on behalf of Creditor Bailey Glasser Plaintiffs. (Barrett, Kevin) (Entered: 08/11/2022) | 08/11/2022 |
| 322 | Appearance filed by Brian A Glasser on behalf of Creditor Bailey Glasser Plaintiffs. (Glasser, Brian) (Entered: 08/11/2022) | 08/11/2022 |
| 323 | Appearance filed by Maggie B. Burrus on behalf of Creditor Bailey Glasser Plaintiffs. (Burrus, Maggie) (Entered: 08/11/2022) | 08/11/2022 |
| 324 | Appearance filed by David L. Selby II on behalf of Creditor Bailey Glasser Plaintiffs. (Selby, David) (Entered: 08/11/2022) | 08/11/2022 |
| 325 | Appearance filed by D. Todd Mathews on behalf of Creditor Bailey Glasser Plaintiffs. (Mathews, D.) (Entered: 08/11/2022) | 08/11/2022 |
| 326 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Joanna Diane Caytas on behalf of Creditor Bellwether Plaintiffs Adkins and Vaughn. (Caytas, Joanna) (Entered: 08/11/2022) [Granted by # 333 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1517Kdm_idV43744700Kdoc_numV333Kpdf_headerV1');] | 08/11/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33287137. Fee amount 100.00 (re: Doc # 326). (U.S. Treasury) (Entered: 08/11/2022) | 08/11/2022 |

A.51

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 327 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 316). Attorney for Creditor Bailey Glasser Plaintiffs must distribute this order. (hhd) (Entered: 08/12/2022) | 08/12/2022 |
| 328 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 320). Attorney for Interested Party The Monsour Law Firm must distribute this order. (hhd) (Entered: 08/12/2022) | 08/12/2022 |
| 329 | Appearance filed by Michael B. Martin on behalf of Interested Party Martin Walton Law Firm. (Martin, Michael) (Entered: 08/12/2022) | 08/12/2022 |
| 330 | Adversary case 22-50068. Complaint filed by Plaintiff(s) Nicholas thank Maciel against Defendant(s) 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Aearo Technologies LLC [14 (Recovery of money/property - other)]. (Keller, Ashley) (Entered: 08/12/2022) | 08/12/2022 |
| 331 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, filed by Kevin W Barrett on behalf of Creditor Bailey Glasser Plaintiffs (re: Doc # 327). (Barrett, Kevin) (Entered: 08/12/2022) | 08/12/2022 |
| 332 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Sean Patrick Tracey on behalf of Interested Party Tracey Fox King & Walters. (Tracey, Sean) (Entered: 08/12/2022) [Granted by # 339 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1545Kdm_idV43748961Kdoc_numV339Kpdf_headerV1');] | 08/12/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33289858. Fee amount 100.00 (re: Doc # 332). (U.S. Treasury) (Entered: 08/12/2022) |  |
| 333 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 326). Attorney for Creditor Bellwether Plaintiffs Adkins and Vaughn must distribute this order. (cmm) (Entered: 08/12/2022) | 08/12/2022 |
| 334 | Notice of Submission / Notice of Filing 503(B)(9) Report filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 149). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/12/2022) | 08/12/2022 |
| 335 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Mark P. Robinson Jr on behalf of Interested Party Robinson Calcagnie, Inc. (Attachments: (1) Exhibit 1 Mark Robinson CV (2) Affidavit in Support of Motion to Appear Pro Hac Vice) (Robinson, Mark) (Entered: 08/12/2022) [Granted by # 340 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1547Kdm_idV43748999Kdoc_numV340Kpdf_headerV1');] | 08/12/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33290441. Fee amount 100.00 (re: Doc # 335). (U.S. Treasury) (Entered: 08/12/2022) |  |
| 336 | Notice of Submission of Claimants' Response to Debtors' Informational Brief filed by Brian A Glasser, Michael W. Hile, Martha R. Lehman, Kevin C Maclay, Tristan Manthey, Robert J Pfister, Adam C. Silverstein, Eric Winston, Meredith R. Theisen on behalf of Interested Parties Aylstock, Witkin, Kreis & Overholtz, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Seeger Weiss, LLP, The Gori Law Firm, P.C., The Johnson Law Group, Tracey Fox King & Walters, Weitz & Luxenberg, PC, Creditors Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins and Vaughn, Clark, Love & Hutson, PLLC (re: Doc # 12). (Theisen, Meredith) (Entered: 08/14/2022) | 08/14/2022 |
| 337 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Syed Ali Saeed on behalf of Interested Party Paul LLP. (Attachments: (1) Affidavit in Support) (Saeed, Syed) (Entered: 08/15/2022) [Amended by # 341 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1552Kdm_idV43750023Kdoc_numV341Kpdf_headerV1');] | 08/15/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33292044. Fee amount 100.00 (re: Doc # 337). (U.S. Treasury) (Entered: 08/15/2022) |  |
| 338 | Appearance filed by Richard Paul III on behalf of Creditor Paul LLP. (Paul, Richard) (Entered: 08/15/2022) | 08/15/2022 |
| 339 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 332). Attorney for Interested Party Tracey Fox King & Walters must distribute this order. (hhd) (Entered: 08/15/2022) | 08/15/2022 |
| 340 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 335). Attorney for Interested Party Robinson Calcagnie, Inc. must distribute this order. (hhd) (Entered: 08/15/2022) | 08/15/2022 |
| 341 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Richard Paul III on behalf of Creditor Paul LLP (re: Doc # 337). (Attachments: (1) Affidavit) (Paul, Richard) (Entered: 08/15/2022) | 08/15/2022 |
| 342 | Objection to Motion to Enforce Automatic Stay filed by Ashley Keller on behalf of Creditor Richard Valle (re: Doc # 173). (Attachments: (1) Exhibit 1 (2) Exhibit 2 (3) Exhibit 3 (4) Exhibit 4) (Keller, Ashley) (Entered: 08/15/2022) | 08/15/2022 |

A.52

Case: 22-2606      Document: 32      Filed: 12/12/2022      Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 343 | CORRECTED ENTRY: Claimants' Limited Omnibus Objection to Entry of Final Orders for Certain First Day Motions filed by Brian A Glasser, Michael W. Hile, Martha R. Lehman, Kevin C Maclay, Tristan Manthey, Robert J Pfister, Eric Winston, Meredith R. Theisen on behalf of Interested Parties Aylstock, Witkin, Kreis & Overholtz, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Seeger Weiss, LLP, The Gori Law Firm, P.C., The Johnson Law Group, Tracey Fox King & Walters, Weitz & Luxenberg, PC, Creditors Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins and Vaughn, Clark, Love & Hutson, PLLC (re: Doc 20, 21, 22, 24, 25) (Theisen, Meredith) ORIGINAL ENTRY: Limited Objection to Motion for Authority / Debtors' First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Compensation, and Benefit Obligations and (B) Continue Employee Compensation and Benefits Programs, and (II) Granting Related Relief filed by Brian A Glasser, Michael W. Hile, Martha R. Lehman, Kevin C Maclay, Tristan Manthey, Robert J Pfister, Eric Winston, Meredith R. Theisen on behalf of Interested Parties Aylstock, Witkin, Kreis & Overholtz, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Seeger Weiss, LLP, The Gori Law Firm, P.C., The Johnson Law Group, Tracey Fox King & Walters, Weitz & Luxenberg, PC, Creditors Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins and Vaughn, Clark, Love & Hutson, PLLC (re: Doc 20). (Theisen, Meredith) Modified on 8/16/2022. (cmm) (Entered: 08/15/2022) | 08/15/2022 |
| 344 | Supplemental Brief in Support re: Motion to Enforce Automatic Stay, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 173). (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C) (Hokanson, Jeffrey) (Entered: 08/15/2022) | 08/15/2022 |
| 345 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, filed by Sean Patrick Tracey on behalf of Interested Party Tracey Fox King & Walters (re: Doc # 339). (Tracey, Sean) (Entered: 08/16/2022) | 08/16/2022 |
| 346 | Appearance filed by Sean Patrick Tracey on behalf of Interested Party Tracey Fox King & Walters. (Tracey, Sean) (Entered: 08/16/2022) | 08/16/2022 |
| 347 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Johnny Givens on behalf of Creditor Givens Law Firm Plaintiffs. (Attachments: (1) Affidavit Affidavit of Johnny Givens) (Givens, Johnny) (Entered: 08/16/2022) [Granted by # 356 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1655Kdm_idV43756434Kdoc_numV356Kpdf_headerV1');] | 08/16/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33296225. Fee amount 100.00 (re: Doc # 347). (U.S. Treasury) (Entered: 08/16/2022) | 08/16/2022 |
| 348 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 149). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/16/2022) [Granted by # 360 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1666Kdm_idV43758560Kdoc_numV360Kpdf_headerV1');] | 08/16/2022 |
| 349 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 147). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/16/2022) [Granted by # 363 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1675Kdm_idV43758858Kdoc_numV363Kpdf_headerV1');] | 08/16/2022 |
| 350 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 144). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/16/2022) [Granted by # 361 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1669Kdm_idV43758710Kdoc_numV361Kpdf_headerV1');] | 08/16/2022 |
| 351 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 143). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/16/2022) [Granted by # 364 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1678Kdm_idV43758864Kdoc_numV364Kpdf_headerV1');] | 08/16/2022 |
| 352 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 146). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/16/2022) [Granted by # 359 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1663Kdm_idV43758459Kdoc_numV359Kpdf_headerV1');] | 08/16/2022 |
| 353 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, filed by Mark P. Robinson Jr on behalf of Interested Party Robinson Calcagnie, Inc (re: Doc # 340). (Robinson, Mark) (Entered: 08/16/2022) | 08/16/2022 |
| 354 | Certificate of Service re: Brief, Brief, Application to Employ, Application to Employ, Application to Employ, Application to Employ, Application to Employ, Application to Employ, Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses, Motion for Authority / Debtors' Motion for Entry of an Order Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business, Notice of Hearing re: Application to Employ, Application to Employ, Application to Employ, Application to Employ, Application to Employ, Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses, Motion for Authority / Debtors' Motion for Entry of an Order Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business, Order on Motion to Appear Pro Hac Vice, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 312). (Baer, Herbert) (Entered: 08/16/2022) | 08/16/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 355 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Corrected Motion to Appear Pro Hac Vice, Order on Corrected Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 111, 112, 114, 115, 116, 117, 118, 119, 125, 127, 128, 129, 131, 160, 161, 191, 192, 291, 309). (Baer, Herbert) (Entered: 08/16/2022) | 08/16/2022 |
| 356 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 347). Attorney for Creditor Givens Law Firm Plaintiffs must distribute this order. (hhd) (Entered: 08/17/2022) | 08/17/2022 |
| 357 | Supplemental Declaration re: Application to Employ filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 305). (Hokanson, Jeffrey) (Entered: 08/17/2022) | 08/17/2022 |
| 358 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 150). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/17/2022) [Granted by # 362 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1672Kdm_idV43758752Kdoc_numV362Kpdf_headerV1');] | 08/17/2022 |
| 359 | Order Granting Motion to Continue Hearing (re: Doc # 352). Continued Final Hearing on Motion to Pay Pre-Petition Trust Fund Taxes be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 Objections due by 9/7/2022 by 4:00 PM Eastern. Attorney for the debtor must distribute this order. (hhd) (Entered: 08/17/2022) | 08/17/2022 |
| 360 | Order Granting Motion to Continue Hearing (re: Doc # 348). Continued Final Hearing on Debtors' Vendor Motion to be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 9/7/2022 by 4:00 PM Eastern. Attorney for the debtor must distribute this order. (hhd) (Entered: 08/17/2022) | 08/17/2022 |
| 361 | Order Granting Motion to Continue Hearing (re: Doc # 350). Continued Final Hearing Debtor's Insurance Motion to be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 Objections due by 9/7/2022 by 4:00 PM Eastern. Attorney for the debtor must distribute this order. (hhd) (Entered: 08/17/2022) | 08/17/2022 |
| 362 | Order Granting Motion to Continue Hearing (re: Doc # 358). Final Continued Hearing on Debtors' Wage Motion to be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 9/7/2022 by 4:00 PM Eastern. Attorney for the debtor must distribute this order. (hhd) (Entered: 08/17/2022) | 08/17/2022 |
| 363 | Order Granting Motion to Continue Hearing (re: Doc # 349). Continued Final Hearing on Debtors' Utilities Motion to be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 9/7/2022 by 4:00 PM Eastern. Attorney for the debtor must distribute this order. (hhd) (Entered: 08/17/2022) | 08/17/2022 |
| 364 | Order Granting Motion to Continue Hearing (re: Doc # 351). Final Continued Hearing on Debtors' Cash Management Motion to be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 9/7/2022 by 4:00 PM Eastern. Attorney for the debtor must distribute this order. (hhd) (Entered: 08/17/2022) | 08/17/2022 |
| 365 | CORRECTED ENTRY: Publisher's Affidavit filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 1) (Hokanson, Jeffrey) ORIGINAL ENTRY: Certificate of Service re: Chapter 11 Voluntary Petition, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 1). (Hokanson, Jeffrey) Modified on 8/19/2022. (cmm) (Entered: 08/17/2022) | 08/17/2022 |
| 366 | CORRECTED ENTRY: Proof of Publication filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 1) (Hokanson, Jeffrey) ORIGINAL ENTRY: Certificate of Service re: Chapter 11 Voluntary Petition, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 1). (Hokanson, Jeffrey) Modified on 8/19/2022. (cmm) (Entered: 08/17/2022) | 08/17/2022 |
| 367 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 174). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/17/2022) [Granted by # 368 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1690Kdm_idV43760630Kdoc_numV368Kpdf_headerV1');] | 08/17/2022 |
| 368 | Order Granting Motion to Continue Hearing (re: Doc # 367). Continued Hearing on Debtors' Motion to Enforce Automatic Stay to be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Attorney for the debtor must distribute this order. (hhd) (Entered: 08/18/2022) | 08/18/2022 |
| 369 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, filed by Justine Delaney on behalf of Interested Party Weitz & Luxenberg, PC (re: Doc # 264). (Delaney, Justine) (Entered: 08/18/2022) | 08/18/2022 |
| 370 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, filed by Lisa Nathanson Busch on behalf of Interested Party Weitz & Luxenberg, PC (re: Doc # 241). (Busch, Lisa) (Entered: 08/18/2022) | 08/18/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 371 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, filed by Perry Weitz on behalf of Interested Party Weitz & Luxenberg, PC (re: Doc # 286). (Weitz, Perry) (Entered: 08/18/2022) | 08/18/2022 |
| 372 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Ashlea Schwarz on behalf of Creditor Paul LLP. (Attachments: (1) Affidavit) (Schwarz, Ashlea) (Entered: 08/18/2022) [Granted by # 374 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1715Kdm_idV43765874Kdoc_numV374Kpdf_headerV1');] | 08/18/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33304677. Fee amount 100.00 (re: Doc # 372). (U.S. Treasury) (Entered: 08/18/2022) | 08/18/2022 |
| 373 | Appearance filed by Ashlea Schwarz on behalf of Creditor Paul LLP. (Schwarz, Ashlea) (Entered: 08/18/2022) | 08/18/2022 |
| 374 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 372). Attorney for Creditor Paul LLP must distribute this order. (hhd) (Entered: 08/19/2022) | 08/19/2022 |
| 375 | Certificate of Service re: Notice of 341 Meeting of Creditors re: Chapter 11, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 292). (Attachments: (1) Exhibit B Pt. 1 (2) Exhibit B Pt. 2 (3) Exhibit B Pt. 3) (Baer, Herbert) (Entered: 08/19/2022) | 08/19/2022 |
| 376 | Chapter 11 Report of Operations for July 2022 filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit Global Notes) (Hokanson, Jeffrey) (Entered: 08/22/2022) | 08/22/2022 |
| 377 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, filed by Matthew Steven Hosen on behalf of Creditor Bellwether Plaintiffs Adkins and Vaughn (re: Doc # 240, 273, 333). (Hosen, Matthew) (Entered: 08/23/2022) | 08/23/2022 |
| 378 | Certificate of Service re: Motion to Continue Hearing, Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, Order on Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, Order on Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, Order on Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, Order on Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, Order on Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, AND SUPPLEMENTAL DECLARATION RE: APPLICATION TO EMPLOY filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc 348, 349, 350, 351, 352, 357, 358, 359, 360, 361, 362, 363, 364, 367). (Baer, Herbert) CORRECTION: Related doc #357 added. Missing docket text added in all capitals. Modified on 8/26/2022. (cmm) (Entered: 08/25/2022) | 08/25/2022 |
| 379 | Certificate of Service re: Order on Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 368). (Baer, Herbert) (Entered: 08/25/2022) | 08/25/2022 |
| 380 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Derek Wayne Edwards on behalf of Creditors Yabor Indstria Aeronautica S.A., Embraer Executive Aircraft, LLC, Embraer S.A. (Attachments: (1) Exhibit A - Declaration) (Edwards, Derek) (Entered: 08/25/2022) [Amended by # 383 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1770Kdm_idV43788016Kdoc_numV383Kpdf_headerV1');, 384 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1778Kdm_idV43788998Kdoc_numV384Kpdf_headerV1');] | 08/25/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33322030. Fee amount 100.00 (re: Doc # 380). (U.S. Treasury) (Entered: 08/25/2022) | 08/25/2022 |
| 381 | Notice of Submission of Exhibit B to Wages Motion filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 20). (Hokanson, Jeffrey) (Entered: 08/25/2022) | 08/25/2022 |
| 382 | Appearance filed by Weston Erick Overturf on behalf of Creditor Solimide Foams division of Boyd Corporation. (Overturf, Weston) (Entered: 08/26/2022) | 08/26/2022 |
| 383 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Derek Wayne Edwards on behalf of Creditors Embraer Executive Aircraft, LLC, Embraer S.A, Yabor Indstria Aeronautica S.A (re: Doc # 380). (Attachments: (1) Exhibit A: Declaration) (Edwards, Derek) (Entered: 08/26/2022) [Amended by # 384 CMECF.widget.DocLink('document1KcaseidV741797Kde_seq_numV1778Kdm_idV43788998Kdoc_numV384Kpdf_headerV1');] | 08/26/2022 |
| 384 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Derek Wayne Edwards on behalf of Creditors Yabora Industria Aeronautica S.A., Embraer Executive Aircraft, LLC, Embraer S.A (re: Doc 380, 383). (Attachments: (1) Exhibit A - Declaration) (Edwards, Derek) CORRECTION: Related doc #383 added. Modified on 8/26/2022. (cmm) (Entered: 08/26/2022) | 08/26/2022 |
| 385 | Motion to Continue Hearing filed by Brian A Glasser, Andrew T Kight, Kevin C Maclay, Tristan Manthey, Robert J Pfister, Patricia B. Tomasco, Meredith R. Theisen on behalf of Interested Parties Aylstock, Witkin, Kreis & Overholtz, PLLC, Cory Watson, P.C., Heninger Garrison Davis, LLC, Seeger Weiss, LLP, The Gori Law Firm, P.C., Weitz & Luxenberg, PC, Creditors Bailey Glasser Plaintiffs, Bellwether Plaintiffs Adkins, Wilkerson, and Vaugh, Clark, Love & Hutson, PLLC (re: Doc # 308). (Attachments: (1) Exhibit A - Proposed Order) (Theisen, Meredith) (Entered: 08/26/2022) [Granted by # 390 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1829Kdm_idV43797972Kdoc_numV390Kpdf_headerV1');] | 08/26/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 386 | Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by D. Todd Mathews on behalf of Creditor Bailey Glasser Plaintiffs (re: Doc 317). (Attachments: (1) Affidavit) (Mathews, D.) (Entered: 08/26/2022) [Corrected by # 387 CMECF.widget.DocLink('document1KcaseidV741797Kde_seq_numV1808Kdm_idV43795740Kdoc_numV387Kpdf_headerV1');] | 08/26/2022 |
| 387 | Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by D. Todd Mathews on behalf of Creditor Bailey Glasser Plaintiffs (re: Doc 317, 386). (Attachments: (1) Affidavit) (Mathews, D.) CORRECTION: Related doc #386 added. Modified on 8/29/2022. (cmm) (Entered: 08/29/2022) [Granted by # 457 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2101Kdm_idV43823117Kdoc_numV457Kpdf_headerV1');] | 08/29/2022 |
| 388 | Schedule(s) A/B, D, E/F, G, H and Summary of Assets and Liabilities (creditors added) (parties added) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Main Document (cont.) Attachment 1 (2) Main Document (cont.) Attachment 2 (3) Main Document (cont.) Attachment 3 (4) Main Document (cont.) Attachment 4 (5) Main Document (cont.) Attachment 5 (6) Main Document (cont.) Attachment 6) (Hokanson, Jeffrey) (Entered: 08/29/2022) | 08/29/2022 |
| 389 | Statement of Financial Affairs filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 08/29/2022) | 08/29/2022 |
|  | Receipt of Schedule(s)( 22-02890-JJG-11) [misc,schall] (32.00) Filing Fee. Receipt number A33330206. Fee amount 32.00 (re: Doc # 388). (U.S. Treasury) (Entered: 08/29/2022) | 08/29/2022 |
| 390 | Order Granting Motion to Continue Hearings on Debtors' Applications to Employ (re: Doc # 385). Continued Hearing to be held in Rm 311 U.S. Courthouse, Indianapolis at 09:00 AM Eastern on 10/12/2022. Attorney for the interested parties must distribute this order. (hhd) (Entered: 08/30/2022) | 08/30/2022 |
| 391 | Motion for Refund of Court Fee from receipt 76237804148 in the amount of $100.00 filed by Jennifer S. Feeney on behalf of Other Professional Jennifer Feeney (re: Doc # 124). (Feeney, Jennifer) (Entered: 08/30/2022) [Granted by # 397 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1852Kdm_idV43801011Kdoc_numV397Kpdf_headerV1');] | 08/30/2022 |
| 392 | Certificate of Service re: Order on Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, filed by Meredith R. Theisen on behalf of Interested Party Seeger Weiss, LLP (re: Doc # 390). (Theisen, Meredith) (Entered: 08/30/2022) | 08/30/2022 |
| 393 | U.S. Trustee's Notice of Appointment of Creditors' Committee. (Strauss, Harrison) (Entered: 08/30/2022) | 08/30/2022 |
| 394 | U.S. Trustee's Notice of Appointment of Beal, James and Freeman, LaShanda Parker as Chairman of Creditors' Committee. (Strauss, Harrison) (Entered: 08/30/2022) | 08/30/2022 |
| 395 | U.S. Trustee's Notice of Appointment of Creditors' Committee. (Strauss, Harrison) (Entered: 08/30/2022) | 08/30/2022 |
| 396 | U.S. Trustee's Notice of Appointment of Morgan, Josh as Chairman of Creditors' Committee. (Strauss, Harrison) (Entered: 08/30/2022) | 08/30/2022 |
| 397 | Order Granting Motion for Refund of Court Fee from receipt 76237804148 in the amount of $100.00 (re: Doc # 391). Attorney for Other Professional Jennifer Feeney must distribute this order. (cmm) (Entered: 08/30/2022) | 08/30/2022 |
| 398 | Appearance filed by David L. Selby II on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Selby, David) (Entered: 08/30/2022) | 08/30/2022 |
| 399 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Kevin Dale McCullough on behalf of Creditor Unsecured Creditor Committee - Respirators. (Attachments: (1) Affidavit in Support of Motion to Appear Pro Hac Vice) (McCullough, Kevin) (Entered: 08/30/2022) [Amended by # 401 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1868Kdm_idV43801436Kdoc_numV401Kpdf_headerV1');] | 08/30/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33335809. Fee amount 100.00 (re: Doc # 399). (U.S. Treasury) (Entered: 08/30/2022) | 08/30/2022 |
| 400 | Appearance filed by Kevin Dale McCullough on behalf of Creditor Unsecured Creditor Committee - Respirators. (McCullough, Kevin) (Entered: 08/30/2022) | 08/30/2022 |
| 401 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Kevin Dale McCullough on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 399). (Attachments: (1) Affidavit in Support of Motion to Appear Pro Hac Vice) (McCullough, Kevin) (Entered: 08/30/2022) [Granted by # 417 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1954Kdm_idV43814460Kdoc_numV417Kpdf_headerV1');] | 08/30/2022 |
| 402 | Periodic Report Pursuant to Fed.R.Bankr.P. 2015.3 Regarding Value, Operations and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 08/30/2022) | 08/30/2022 |
| 403 | Notice of Submission \\ Informational Brief of the Ad Hoc Committee of CAEv2 Earplug Claimants filed by David L. Selby II on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants (re: Doc # 398). (Selby, David) (Entered: 08/31/2022) | 08/31/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 404 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Shannon Thomas on behalf of Creditor Unsecured Creditor Committee - Respirators. (Attachments: (1) Affidavit in Support of Motion to Appear Pro Hac Vice) (Thomas, Shannon) (Entered: 08/31/2022) [Amended by # 411 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1923Kdm_idV43807890Kdoc_numV411Kpdf_headerV1');] | 08/31/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33341446. Fee amount 100.00 (re: Doc # 404). (U.S. Treasury) (Entered: 08/31/2022) | 08/31/2022 |
| 405 | Appearance filed by Shannon Thomas on behalf of Creditor Unsecured Creditor Committee - Respirators. (Thomas, Shannon) (Entered: 08/31/2022) | 08/31/2022 |
| 406 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Michael Richard Rochelle on behalf of Creditor Unsecured Creditor Committee - Respirators. (Attachments: (1) Affidavit in Support of Motion to Appear Pro Hac Vice) (Rochelle, Michael) (Entered: 08/31/2022) [Granted by # 412 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1928Kdm_idV43807990Kdoc_numV412Kpdf_headerV1');] | 08/31/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33341543. Fee amount 100.00 (re: Doc # 406). (U.S. Treasury) (Entered: 08/31/2022) | 08/31/2022 |
| 407 | Appearance filed by Michael Richard Rochelle on behalf of Creditor Unsecured Creditor Committee - Respirators. (Rochelle, Michael) (Entered: 08/31/2022) | 08/31/2022 |
| 408 | Motion for Authority / Debtors' Motion to Lift the Automatic Stay to Permit Certain Appeals to Proceed filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 08/31/2022) [Amended by # 413 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1930Kdm_idV43808206Kdoc_numV413Kpdf_headerV1');] | 08/31/2022 |
| 409 | Notice of Hearing re: Motion for Authority / Debtors' Motion to Lift the Automatic Stay to Permit Certain Appeals to Proceed, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 408). Objections due by 4:00 PM Eastern on 9/11/2022. Hearing to be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Hokanson, Jeffrey) (Entered: 08/31/2022) | 08/31/2022 |
| 410 | Deficiency Notice Issued re: Motion for Authority / Debtors' Motion to Lift the Automatic Stay to Permit Certain Appeals to Proceed. Incorrect event used (re: Doc # 408). Deficiency to be cured by 9/15/2022. (cmm) (Entered: 09/01/2022) | 09/01/2022 |
| 411 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Shannon Thomas on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 404). (Attachments: (1) Affidavit in Support of Motion to Appear Pro Hac Vice) (Thomas, Shannon) (Entered: 09/01/2022) [Granted by # 418 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1956Kdm_idV43814466Kdoc_numV418Kpdf_headerV1');] | 09/01/2022 |
| 412 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 406). Attorney for Creditor Unsecured Creditor Committee - Respirators must distribute this order. (hhd) (Entered: 09/01/2022) | 09/01/2022 |
| 413 | Amended Motion for Relief from Stay and Refusal to Waive Hearing Time filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 408). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 09/01/2022) [Granted by # 548 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2401Kdm_idV43850746Kdoc_numV548Kpdf_headerV1');] | 09/01/2022 |
| | Receipt of Motion for Relief from Stay( 22-02890-JJG-11) [motion,mrlfsty] (188.00) Filing Fee. Receipt number A33343508. Fee amount 188.00 (re: Doc # 413). (U.S. Treasury) (Entered: 09/01/2022) | 09/01/2022 |
| 414 | Amended Notice of Hearing with Certificate of Service re: Motion for Authority / Debtors' Motion to Lift the Automatic Stay to Permit Certain Appeals to Proceed, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc 409, 413). Objections due by 4:00 PM Eastern on 9/11/2022. Hearing to be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Hokanson, Jeffrey) CORRECTION: Related doc #413 added. Modified on 9/2/2022. (cmm) (Entered: 09/01/2022) | 09/01/2022 |
| 415 | Notice of Submission / Exhibit 1 to Statement of Financial Affairs (re: Docket No. 389) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 389). (Hokanson, Jeffrey) (Entered: 09/01/2022) | 09/01/2022 |
| 416 | Appearance filed by D. Todd Mathews on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Mathews, D.) (Entered: 09/02/2022) | 09/02/2022 |
| 417 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 401). Attorney for Creditor Unsecured Creditor Committee - Respirators must distribute this order. (hhd) (Entered: 09/02/2022) | 09/02/2022 |
| 418 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 411). Attorney for Creditor Unsecured Creditor Committee - Respirators must distribute this order. (hhd) (Entered: 09/02/2022) | 09/02/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 419 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, Order on Corrected Motion to Appear Pro Hac Vice, Order on Corrected Motion to Appear Pro Hac Vice, filed by Shannon Thomas on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 412, 417, 418). (Thomas, Shannon) (Entered: 09/02/2022) | 09/02/2022 |
| 420 | Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - MDL Mediation Order) (Hokanson, Jeffrey) (Entered: 09/02/2022) [Granted by # 477 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2165Kdm_idV43831051Kdoc_numV477Kpdf_headerV1');] | 09/02/2022 |
| 421 | Motion for Expedited Hearing and/or Shortened Notice Time on Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 420). (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey) (Entered: 09/02/2022) [Granted by # 422 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV1968Kdm_idV43815104Kdoc_numV422Kpdf_headerV1');] | 09/02/2022 |
| 422 | Order Granting Motion for Expedited Hearing and Shortened Notice Time (re: Doc #421). Hearing to be held on 9/7/2022 at 01:30 PM Eastern via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 4:00 PM Eastern on 9/6/2022. Attorney for the debtor must distribute this order. (hhd) (Entered: 09/02/2022) | 09/02/2022 |
| 423 | Notice of Hearing with Certificate of Service re: Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 420). Objections due by 4:00 PM Eastern on 9/6/2022. Hearing to be held on 9/7/2022 at 01:30 PM Eastern via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Hokanson, Jeffrey) (Entered: 09/02/2022) | 09/02/2022 |
| 424 | Certificate of Service re: Notice of 341 Meeting of Creditors re: Chapter 11, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 292). (Baer, Herbert) (Entered: 09/02/2022) | 09/02/2022 |
| 425 | Appearance filed by Brian A Glasser on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Glasser, Brian) (Entered: 09/04/2022) | 09/04/2022 |
| 426 | Appearance filed by Kevin W Barrett on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Barrett, Kevin) (Entered: 09/04/2022) | 09/04/2022 |
| 427 | Appearance filed by Maggie B. Burrus on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Burrus, Maggie) (Entered: 09/04/2022) | 09/04/2022 |
| 428 | Appearance filed by Michael L. Tuchin on behalf of Creditor Committee Tort Claimants - CAE Committee. (Tuchin, Michael) (Entered: 09/04/2022) | 09/04/2022 |
| 429 | Appearance filed by Melanie Louise Cyganowski on behalf of Creditor Committee Tort Claimants - CAE Committee. (Cyganowski, Melanie) (Entered: 09/04/2022) | 09/04/2022 |
| 430 | Appearance filed by Robert J Pfister on behalf of Creditor Committee Tort Claimants - CAE Committee. (Pfister, Robert) (Entered: 09/04/2022) | 09/04/2022 |
| 431 | Appearance filed by Sasha M. Gurvitz on behalf of Creditor Committee Tort Claimants - CAE Committee. (Gurvitz, Sasha) (Entered: 09/04/2022) | 09/04/2022 |
| 432 | Appearance filed by Ariella Thal Simonds on behalf of Creditor Committee Tort Claimants - CAE Committee. (Thal Simonds, Ariella) (Entered: 09/04/2022) | 09/04/2022 |
| 433 | Appearance filed by Adam C. Silverstein on behalf of Creditor Committee Tort Claimants - CAE Committee. (Silverstein, Adam) (Entered: 09/04/2022) | 09/04/2022 |
| 434 | Appearance filed by Jennifer S. Feeney on behalf of Creditor Committee Tort Claimants - CAE Committee. (Feeney, Jennifer) (Entered: 09/04/2022) | 09/04/2022 |
| 435 | Appearance filed by Nir Maoz on behalf of Creditor Committee Tort Claimants - CAE Committee. (Maoz, Nir) (Entered: 09/04/2022) | 09/04/2022 |
| 436 | Appearance filed by John Bougiamas on behalf of Creditor Committee Tort Claimants - CAE Committee. (Bougiamas, John) (Entered: 09/04/2022) | 09/04/2022 |
| 437 | Appearance filed by Robert C Yan on behalf of Creditor Committee Tort Claimants - CAE Committee. (Yan, Robert) (Entered: 09/04/2022) | 09/04/2022 |
| 438 | Appearance filed by Kevin C Maclay on behalf of Creditor Committee Tort Claimants - CAE Committee. (Maclay, Kevin) (Entered: 09/04/2022) | 09/04/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 439 | Appearance filed by Todd E. Phillips on behalf of Creditor Committee Tort Claimants - CAE Committee. (Phillips, Todd) (Entered: 09/04/2022) | 09/04/2022 |
| 440 | Appearance filed by Kevin M Davis on behalf of Creditor Committee Tort Claimants - CAE Committee. (Davis, Kevin) (Entered: 09/04/2022) | 09/04/2022 |
| 441 | Appearance filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Theisen, Meredith) (Entered: 09/05/2022) | 09/05/2022 |
| 442 | Limited Objection to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 420). (Attachments: (1) Exhibit A) (Theisen, Meredith) (Entered: 09/05/2022) | 09/05/2022 |
| 443 | Appearance filed by Deborah Caruso on behalf of Creditor Committee Tort Claimants - CAE Committee. (Caruso, Deborah) (Entered: 09/05/2022) | 09/05/2022 |
| 444 | Certificate of Service re: Limited Objection to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 442). (Theisen, Meredith) (Entered: 09/05/2022) | 09/05/2022 |
| 445 | CORRECTED ENTRY: Response to Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief filed by Joanna Diane Caytas on behalf of Creditor Bellwether Plaintiffs Adkins and Vaughn (re: Doc # 420) (Attachments: (1) Exhibit 1) (Caytas, Joanna) ORIGINAL ENTRY: Reply to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief filed by Joanna Diane Caytas on behalf of Creditor Bellwether Plaintiffs Adkins and Vaughn (re: Doc # 420). (Attachments: (1) Exhibit 1) (Caytas, Joanna) Modified on 9/7/2022. (cmm) (Entered: 09/06/2022) | 09/06/2022 |
| 446 | Limited Objection to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief filed by Kevin W Barrett on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants (re: Doc # 420). (Attachments: (1) Exhibit A) (Barrett, Kevin) (Entered: 09/06/2022) | 09/06/2022 |
| 447 | CORRECTED ENTRY: Joinder of Official Respirator Committee to the Limited Objection of the Official CAE Committee to the Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief filed by Kevin Dale McCullough on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc 420, 442) (McCullough, Kevin) ORIGINAL ENTRY: Limited Objection to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief filed by Kevin Dale McCullough on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc 420). (McCullough, Kevin) Modified on 9/7/2022. (cmm) (Entered: 09/06/2022) | 09/06/2022 |
| 448 | Certificate of Service re: Limited Objection to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief, filed by Kevin W Barrett on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants (re: Doc # 442). (Barrett, Kevin) CORRECTION: Document filed in error. See doc. #454 for corrected filing. Modified on 9/7/2022. (cmm) (Entered: 09/06/2022) | 09/06/2022 |
| 449 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by David Molton on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Affidavit) (Molton, David) (Entered: 09/06/2022) [Granted by # 459 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2112Kdm_idV43825521Kdoc_numV459Kpdf_headerV1');] | 09/06/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33352638. Fee amount 100.00 (re: Doc # 449). (U.S. Treasury) (Entered: 09/06/2022) | 09/06/2022 |
| 450 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Cathrine M Castaldi on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Affidavit) (Castaldi, Cathrine) (Entered: 09/06/2022) [Granted by # 460 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2114Kdm_idV43825526Kdoc_numV460Kpdf_headerV1');] | 09/06/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33352683. Fee amount 100.00 (re: Doc # 450). (U.S. Treasury) (Entered: 09/06/2022) | 09/06/2022 |
| 451 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Jeffrey L. Jonas on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Affidavit) (Jonas, Jeffrey) (Entered: 09/06/2022) [Granted by # 461 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2116Kdm_idV43825532Kdoc_numV461Kpdf_headerV1');] | 09/06/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33352731. Fee amount 100.00 (re: Doc # 451). (U.S. Treasury) (Entered: 09/06/2022) | 09/06/2022 |

| # | Docket Text | Date Filed |
|---|---|---|
| 452 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Eric Goodman on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Affidavit) (Goodman, Eric) (Entered: 09/06/2022) [Granted by # 462 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2118Kdm_idV43825602Kdoc_numV462Kpdf_headerV1');] | 09/06/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33352746. Fee amount 100.00 (re: Doc # 452). (U.S. Treasury) (Entered: 09/06/2022) | 09/06/2022 |
| 453 | Certificate of Service re: Reply to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief, filed by Adam Wolfson on behalf of Creditor Bellwether Plaintiffs Adkins and Vaughn (re: Doc # 445). (Wolfson, Adam) (Entered: 09/06/2022) | 09/06/2022 |
| 454 | Amended Certificate of Service re: Limited Objection to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief, filed by Kevin W Barrett on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants (re: Doc 446, 448). (Barrett, Kevin) CORRECTION: Related doc #448 added. Modified on 9/7/2022. (cmm) (Entered: 09/06/2022) | 09/06/2022 |
| 455 | Certificate of Service re: Limited Objection to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief, filed by Kevin Dale McCullough on behalf of Creditor Committee Tort Claimants - Respirator Committee (re: Doc # 447). (McCullough, Kevin) (Entered: 09/06/2022) | 09/06/2022 |
| 456 | Notice of Submission / Supplement to Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 420). (Hokanson, Jeffrey) (Entered: 09/06/2022) | 09/06/2022 |
| 457 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 387). Attorney for Creditor Bailey Glasser Plaintiffs must distribute this order. (hhd) (Entered: 09/07/2022) | 09/07/2022 |
| 458 | Minute Entry/Order: re: Video Hearing on Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief and Supplement thereto with limited Objections filed by: Committee Tort Claimants - CAE Committee, Ad Hoc Committee of CAEv2 Earplug Claimants, Unsecured Creditor Committee - Respirators and Response of Bellwether Plaintiffs Adkins and Vaughn (re: Doc #420, 456, 442,445, 446, 447). Disposition: Video Hearing held. Matter continued. Hearing to be held on 09/08/2022 at 10:30 AM Eastern in Video Conference with Judge Graham. Notice given in court and no further notice will be issued. (hhd) (Entered: 09/07/2022) | 09/07/2022 |
| 459 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 449). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (hhd) (Entered: 09/07/2022) | 09/07/2022 |
| 460 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 450). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (hhd) (Entered: 09/07/2022) | 09/07/2022 |
| 461 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 451). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (hhd) (Entered: 09/07/2022) | 09/07/2022 |
| 462 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 452). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (hhd) (Entered: 09/07/2022) | 09/07/2022 |
| 463 | Limited Objection to Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses filed by Kevin W Barrett on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants (re: Doc # 306). (Attachments: (1) Exhibit A) (Barrett, Kevin) (Entered: 09/07/2022) | 09/07/2022 |
| 464 | Certificate of Service re: Limited Objection to Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses, filed by Kevin W Barrett on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants (re: Doc # 463). (Barrett, Kevin) (Entered: 09/07/2022) | 09/07/2022 |
| 465 | Request for Transcript filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 458). (Theisen, Meredith) (Entered: 09/07/2022) | 09/07/2022 |
| 466 | Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 09/08/2022) | 09/08/2022 |
| 467 | Motion for Expedited Hearing and/or Shortened Notice Time on Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 466). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 09/08/2022) [Granted by # 469 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2141Kdm_idV43826926Kdoc_numV469Kpdf_headerV1');, 478 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2167Kdm_idV43831317Kdoc_numV478Kpdf_headerV1');] | 09/08/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 468 | Acknowledgement of Transcript Request (re: Doc # 465). The transcript request was received 9/8/2022. The transcript is expected by 9/9/2022. (Bowen, James) (Entered: 09/08/2022) | 09/08/2022 |
| 469 | Order Granting Motion for Expedited Hearing and Shortened Notice Time (re: Doc #467). Hearing to be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 4:00 PM Eastern on 9/13/2022. Attorney for the debtor must distribute this order. (cmm) (Entered: 09/08/2022) | 09/08/2022 |
| 470 | Motion for Relief from Judgment/Order Pursuant to Fed.R.Bankr.P. 9024 filed by Creditor Committee Tort Claimants - CAE Committee (re: Doc # 469). (Theisen, Meredith) (Entered: 09/08/2022) [Granted by # 474 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2156Kdm_idV43829005Kdoc_numV474Kpdf_headerV1');] | 09/08/2022 |
| 471 | Notice of Hearing with Certificate of Service re: Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 466). Objections due by 4:00 PM Eastern on 9/13/2022. Hearing to be held on 9/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Hokanson, Jeffrey) (Entered: 09/08/2022) | 09/08/2022 |
| 472 | Minute Entry/Order: re: Continued Video Hearing on Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief and Supplement thereto with limited Objections filed by: Committee Tort Claimants - CAE Committee, Ad Hoc Committee of CAEv2 Earplug Claimants, Unsecured Creditor Committee - Respirators and Response of Bellwether Plaintiffs Adkins and Vaughn (re: Doc # 420,456,442,445,446,447). Disposition: Video Hearing held. Objections are denied as moot and Debtors' Motion is granted as modified in open Court. Counsel for Debtor to submit order within 3 days. Court addresses Motion for Relief from Judgment/Order Pursuant to Fed.R.Bankr.P. 9024 filed by Creditor Committee Tort Claimants - CAE Committee 470 re: Order Granting Motion for Expedited Hearing and Shortened Notice Time entered on 9/8/22. Court grants Motion and vacates order setting the matter on the 9/14/22 omnibus hearing date. Court grants Debtors' Motion to Expedite and will hear matter on 9/20/22 at 1:00 pm via Zoom. Counsel for Debtor to submit Amended Order and Notice. (hhd) (Entered: 09/08/2022) | 09/08/2022 |
| 473 | Request for Transcript filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 472). (Theisen, Meredith) (Entered: 09/08/2022) | 09/08/2022 |
| 474 | Order Granting Motion for Relief from Judgment/Order Pursuant to Fed.R.Bankr.P. 9024 (re: Doc # 470). The Clerk's Office will distribute this order. (hhd) (Entered: 09/08/2022) | 09/08/2022 |
| 475 | Acknowledgement of Transcript Request (re: Doc # 473). The transcript request was received 9/8/2022. The transcript is expected by 9/9/2022. (Bowen, James) (Entered: 09/08/2022) | 09/08/2022 |
| 476 | Notice of Hearing re: Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 466). Objections due by 4:00 PM Eastern on 9/16/2022. Hearing to be held on 9/20/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Hokanson, Jeffrey) (Entered: 09/08/2022) | 09/08/2022 |
| 477 | Order Granting Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief (re: Doc # 420). Attorney for the debtor must distribute this order. (cmm) (Entered: 09/09/2022) | 09/09/2022 |
| 478 | Order Granting Motion for Expedited Hearing and Shortened Notice Time (re: Doc #467). Hearing to be held on 9/20/2022 at 09:00 AM Eastern via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 4:00 PM Eastern on 9/16/2022. Attorney for the debtor must distribute this order. (cmm) (Entered: 09/09/2022) | 09/09/2022 |
| 479 | Notice of Submission / Notice of Filing 503(B)(9) Report filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 149, 334). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 09/09/2022) | 09/09/2022 |
| 480 | Certificate of Service re: Order on Corrected Motion to Appear Pro Hac Vice, filed by D. Todd Mathews on behalf of Creditor Bailey Glasser Plaintiffs (re: Doc # 457). (Mathews, D.) (Entered: 09/09/2022) | 09/09/2022 |
| 481 | Amended Notice of Hearing with Certificate of Service re: Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 476). Objections due by 4:00 PM Eastern on 9/16/2022. Hearing to be held on 9/20/2022 at 09:00 AM Eastern via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Hokanson, Jeffrey) (Entered: 09/09/2022) | 09/09/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 482 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 9/7/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 465). Remote electronic access to the transcript is restricted until 12/08/2022. (Bowen, James) (Entered: 09/09/2022) | 09/09/2022 |
| 483 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 9/8/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 473). Remote electronic access to the transcript is restricted until 12/08/2022. (Bowen, James) (Entered: 09/09/2022) | 09/09/2022 |
| 484 | BNC Certificate of Service - ORDER (re: Doc # 474). No. of Notices: 10 Notice Date 09/10/2022. (Admin) (Entered: 09/11/2022) | 09/10/2022 |
| 485 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 174, 368). (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey) (Entered: 09/11/2022) [Granted by # 500 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2234Kdm_idV43838621Kdoc_numV500Kpdf_headerV1');] | 09/11/2022 |
| 486 | Notice of Withdrawal as Attorney filed by Meredith R. Theisen on behalf of Interested Party Seeger Weiss, LLP. (Theisen, Meredith) (Entered: 09/12/2022) | 09/12/2022 |
| 487 | Notice of Withdrawal as Attorney filed by Deborah Caruso on behalf of Interested Party Seeger Weiss, LLP. (Caruso, Deborah) (Entered: 09/12/2022) | 09/12/2022 |
| 488 | Notice of Withdrawal as Attorney filed by Melanie Louise Cyganowski on behalf of Interested Party Seeger Weiss, LLP. (Cyganowski, Melanie) (Entered: 09/12/2022) | 09/12/2022 |
| 489 | Notice of Withdrawal as Attorney filed by John Bougiamas on behalf of Interested Party Seeger Weiss, LLP. (Bougiamas, John) (Entered: 09/12/2022) | 09/12/2022 |
| 490 | Notice of Withdrawal as Attorney filed by Robert C Yan on behalf of Interested Party Seeger Weiss, LLP. (Yan, Robert) (Entered: 09/12/2022) | 09/12/2022 |
| 491 | Notice of Withdrawal as Attorney filed by Nir Maoz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Maoz, Nir) (Entered: 09/12/2022) | 09/12/2022 |
| 492 | Declaration of the Honorable James M. Carr (re: Doc # 477). (nar) (Entered: 09/12/2022) | 09/12/2022 |
| 493 | Notice of Withdrawal as Attorney filed by Adam C. Silverstein on behalf of Interested Party Seeger Weiss, LLP. (Silverstein, Adam) (Entered: 09/12/2022) | 09/12/2022 |
| 494 | Notice of Withdrawal as Attorney filed by Michael L. Tuchin on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Tuchin, Michael) (Entered: 09/12/2022) | 09/12/2022 |
| 495 | Notice of Withdrawal as Attorney filed by Jennifer S. Feeney on behalf of Interested Party Seeger Weiss, LLP. (Feeney, Jennifer) (Entered: 09/12/2022) | 09/12/2022 |
| 496 | Notice of Withdrawal as Attorney filed by Robert J Pfister of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Pfister, Robert) (Entered: 09/12/2022) | 09/12/2022 |
| 497 | Notice of Withdrawal as Attorney filed by Thomas E Patterson on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Patterson, Thomas) (Entered: 09/12/2022) | 09/12/2022 |
| 498 | Notice of Withdrawal as Attorney filed by Sasha M. Gurvitz on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Gurvitz, Sasha) (Entered: 09/12/2022) | 09/12/2022 |
| 499 | Notice of Withdrawal as Attorney filed by Ariella Thal Simonds on behalf of Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC. (Thal Simonds, Ariella) (Entered: 09/12/2022) | 09/12/2022 |
| 500 | Order Granting Motion to Continue Hearing (re: Doc # 485). Hearing to be held on 10/12/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Attorney for the debtor must distribute this order. (cmm) (Entered: 09/12/2022) | 09/12/2022 |
| 501 | Certificate of Service re: Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief, Motion for Expedited Hearing and/or Shortened Notice Time on Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief, Order on Motion for Expedited Hearing and/or Shortened Notice Time, Notice of Hearing with Certificate of Service re: Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators, (II) Authorizing the Debtors to Participate in the Mediation, and (III) Granting Related Relief, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 420, 421, 422, 423). (Baer, Herbert) (Entered: 09/12/2022) | 09/12/2022 |
| 502 | Disclosure of Compensation of Attorney for Debtor filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 09/13/2022) | 09/13/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 503 | Disclosure of Compensation of Attorney for Debtor filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 09/13/2022) | 09/13/2022 |
| 504 | Disclosure of Compensation of Attorney for Debtor filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 09/13/2022) | 09/13/2022 |
| 505 | Income & Expense Statement filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 09/13/2022) | 09/13/2022 |
| 506 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Pauline McTernan on behalf of Creditor Official Committee of Unsecured Creditors for Tort. (Attachments: (1) Exhibit A.) (McTernan, Pauline) (Entered: 09/13/2022) [Granted by # 513 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2299Kdm_idV43844664Kdoc_numV513Kpdf_headerV1');] | 09/13/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33369610. Fee amount 100.00 (re: Doc # 506). (U.S. Treasury) (Entered: 09/13/2022) |  |
| 507 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Tabitha De Paulo on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A) (De Paulo, Tabitha) (Entered: 09/13/2022) [Granted by # 527 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2333Kdm_idV43847433Kdoc_numV527Kpdf_headerV1');] | 09/13/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33369991. Fee amount 100.00 (re: Doc # 507). (U.S. Treasury) (Entered: 09/13/2022) |  |
| 508 | Verification of Creditor List filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Main Document (cont.) Part 2 (2) Main Document (cont.) Part 3) (Hokanson, Jeffrey) (Entered: 09/13/2022) | 09/13/2022 |
| 509 | Notice of Submission / Agenda for Hearing on Debtors' (I) Motion to Lift the Automatic Stay, (II) Certain First Day Motions, and (III) Certain Motions Regarding Retention and Compensation Matters on September 14, 2022, at 9:00 A.M (Prevailing Eastern Time) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 20, 22, 23, 25, 54, 64, 66, 306, 307, 343, 363, 408). (Hokanson, Jeffrey) (Entered: 09/13/2022) | 09/13/2022 |
| 510 | CORRECTED ENTRY: Comment of Official Respirator Committee to the Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief filed by Michael Richard Rochelle on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 466) (Rochelle, Michael) ORIGINAL ENTRY: Reply to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief filed by Michael Richard Rochelle on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 466). (Rochelle, Michael) Modified on 9/14/2022. (cmm) (Entered: 09/13/2022) | 09/13/2022 |
| 511 | Certificate of Service re: Reply to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief, filed by Michael Richard Rochelle on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 510). (Rochelle, Michael) (Entered: 09/13/2022) | 09/13/2022 |
| 512 | Adversary Proceeding 22-50068 Closed. (cmm) (Entered: 09/13/2022) | 09/13/2022 |
| 513 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 506). Attorney for Creditor Official Committee of Unsecured Creditors for Tort must distribute this order. (hhd) (Entered: 09/13/2022) | 09/13/2022 |
| 514 | Notice of Withdrawal as Attorney filed by Kevin C Maclay on behalf of Interested Party Cory Watson, P.C. (Maclay, Kevin) (Entered: 09/13/2022) | 09/13/2022 |
| 515 | Notice of Withdrawal as Attorney filed by Kevin C Maclay on behalf of Interested Party Heninger Garrison Davis, LLC. (Maclay, Kevin) (Entered: 09/13/2022) | 09/13/2022 |
| 516 | Notice of Withdrawal as Attorney filed by Kevin C Maclay on behalf of Interested Party The Gori Law Firm, P.C. (Maclay, Kevin) (Entered: 09/13/2022) | 09/13/2022 |
| 517 | Notice of Withdrawal as Attorney filed by Todd E. Phillips on behalf of Interested Party Cory Watson, P.C. (Phillips, Todd) (Entered: 09/13/2022) | 09/13/2022 |
| 518 | Notice of Withdrawal as Attorney filed by Kevin M Davis on behalf of Interested Party Cory Watson, P.C. (Davis, Kevin) (Entered: 09/13/2022) | 09/13/2022 |
| 519 | Notice of Withdrawal as Attorney filed by James Wehner on behalf of Interested Party Cory Watson, P.C. (Wehner, James) (Entered: 09/13/2022) | 09/13/2022 |
| 520 | Notice of Withdrawal as Attorney filed by James Wehner on behalf of Interested Party Heninger Garrison Davis, LLC. (Wehner, James) (Entered: 09/13/2022) | 09/13/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 521 | Notice of Withdrawal as Attorney filed by James Wehner on behalf of Interested Party The Gori Law Firm, P.C. (Wehner, James) (Entered: 09/13/2022) | 09/13/2022 |
| 522 | Notice of Withdrawal as Attorney filed by Todd E. Phillips on behalf of Interested Party Heninger Garrison Davis, LLC. (Phillips, Todd) (Entered: 09/13/2022) | 09/13/2022 |
| 523 | Notice of Withdrawal as Attorney filed by Todd E. Phillips on behalf of Interested Party The Gori Law Firm, P.C. (Phillips, Todd) (Entered: 09/13/2022) | 09/13/2022 |
| 524 | Notice of Withdrawal as Attorney filed by Kevin M Davis on behalf of Interested Party Heninger Garrison Davis, LLC. (Davis, Kevin) (Entered: 09/13/2022) | 09/13/2022 |
| 525 | Notice of Withdrawal as Attorney filed by Kevin M Davis on behalf of Interested Party The Gori Law Firm, P.C. (Davis, Kevin) (Entered: 09/13/2022) | 09/13/2022 |
| 526 | Declaration re: Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 466). (Hokanson, Jeffrey) (Entered: 09/13/2022) | 09/13/2022 |
| 527 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 507). Attorney for the debtor must distribute this order. (hhd) (Entered: 09/14/2022) | 09/14/2022 |
| 528 | Minute Entry/Order: re: Hearing on Debtors' Motion for Relief from Stay and Refusal to Waive Hearing Time to Permit Certain Appeals to Proceed (re: Doc # 413). Disposition: Hearing held. Court grants Motion. Counsel for Debtors' to submit order within 7 days. (hhd) (Entered: 09/14/2022) | 09/14/2022 |
| 529 | Minute Entry/Order: re: Continued Final Hearing on Debtor's First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Compensation, and Benefit Obligations and (B) Continue Employee Compensation and Benefits Programs, and (II) Granting Related Relief and US Trustee's Objection thereto (re: Doc # 360). Disposition: Hearing held. Court accepts proffered testimony of John Castellano. US Trustee's Objection is overruled as moot and Motion is granted as modified in open court. Counsel for Debtors' to submit order within 7 days. (hhd) (Entered: 09/14/2022) | 09/14/2022 |
| 530 | Minute Entry/Order: re: Continued Final Hearing on Debtor's First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Specified Trade Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief and US Trustee's Objection thereto (re: Doc # 25,53,54). Disposition: Hearing held. Court accepts proffered testimony of John Castellano. US Trustee's Objection is overruled as moot and Motion is granted as modified in open court. Counsel for Debtors' to submit order within 7 days. (hhd) (Entered: 09/14/2022) | 09/14/2022 |
| 531 | Minute Entry/Order: re: Continued Final Hearing on Debtor's Amended First Day Motion for Approval of Cash Management System (Bank Accounts/Business Forms) and US Trustee's Objection thereto (re: Doc # 23,64). Disposition: Hearing held. Motion is granted on a final basis as modified in open court. Counsel for Debtors' to submit order within 7 days. (hhd) (Entered: 09/14/2022) | 09/14/2022 |
| 532 | Minute Entry/Order: re: Continued Final Hearing on Debtor's First Day Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Their Prepetition Insurance Coverage and Satisfy Prepetition Obligations Related Thereto, (B) Continue to Pay Certain Brokerage Fees, and (C) Renew, Supplement, Modify, or Purchase Insurance and Reinsurance Coverage, (II) Approving Continuation of Their Surety Bond Program, and (III) Granting Related Relief (re: Doc # 22,53). Disposition: Hearing held. Motion is granted on a final basis as modified in open court. Counsel for Debtors' to submit order within 7 days.(hhd) (Entered: 09/14/2022) | 09/14/2022 |
| 533 | Minute Entry/Order: re:Continued Final Hearing on Debtor's First Day Motion to Pay Pre-Petition Trust Fund Taxes (re: Doc # 21,53). Disposition: Hearing held. Motion is granted on a final basis as modified in open court. Counsel for Debtors' to submit order within 7 days. (hhd) (Entered: 09/14/2022) | 09/14/2022 |
| 534 | Minute Entry/Order: re: Order on Continued Final Hearing on Debtor's First Day Motion to Provide Adequate Assurance to Utilities (re: Doc # 24,53). Disposition: Hearing held. Motion is granted on a final basis as modified in open court. Counsel for Debtors' to submit order within 7 days. (hhd) (Entered: 09/14/2022) | 09/14/2022 |
| 535 | Minute Entry/Order: re:Hearing on Debtor's Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses re: Retained Professionals and Limited Objection thereto filed by Ad Hoc Committee of CAEv2 Earplug Claimants (re: Doc # 306, 463). Disposition: Hearing held. Objection is overruled as moot and Motion is granted as modified in open court. Counsel for Debtors' to submit order within 7 days. (hhd) (Entered: 09/14/2022) | 09/14/2022 |
| 536 | Minute Entry/Order: re: Hearing on Debtors' Motion for Entry of an Order Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business (re: Doc # 307). Disposition: Hearing held. Motion is granted as modified in open court. Counsel for Debtors' to submit order within 7 days. (hhd) (Entered: 09/14/2022) | 09/14/2022 |
| 537 | Final Order (I) Authorizing the Debtors to Pay Prepetition Claims of 503(B)(9) Claimants and Critical Vendors, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief (re: Doc # 25). Attorney for the debtor must distribute this order. (cmm) (Entered: 09/14/2022) | 09/14/2022 |

| # | Docket Text | Date Filed |
|---|---|---|
| 538 | Request for Transcript filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 528). (Theisen, Meredith) (Entered: 09/14/2022) | 09/14/2022 |
| 539 | Order Granting Motion to Provide Adequate Assurance to Utilities (re: Doc # 24). Attorney for the debtor must distribute this order. (cmm) (Entered: 09/14/2022) | 09/14/2022 |
| 540 | Order Granting Motion to Pay Pre-Petition Trust Fund Taxes (re: Doc # 21). Attorney for the debtor must distribute this order. (cmm) (Entered: 09/14/2022) | 09/14/2022 |
| 541 | Order Granting Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses re: Retained Professionals (re: Doc # 306). Attorney for the debtor must distribute this order. (cmm) (Entered: 09/14/2022) | 09/14/2022 |
| 542 | Final Order (I) Authorizing the Debtors to (A) Maintain Their Prepetition Insurance Coverage and Satisfy Prepetition Obligations Related Thereto, (B) Continue to Pay Certain Brokerage Fees, and (C) Renew, Supplement, Modify, or Purchase Insurance and Reinsurance Coverage, (II) Approving Continuation of Their Surety Bond Program, and (III) Granting Related Relief (re: Doc # 22). Attorney for the debtor must distribute this order. (cmm) (Entered: 09/14/2022) | 09/14/2022 |
| 543 | Order Granting Motion for Approval of Cash Management System (Bank Accounts/Business Forms) (re: Doc # 23). Attorney for the debtor must distribute this order. (cmm) (Entered: 09/14/2022) | 09/14/2022 |
| 544 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Dania Slim on behalf of Interested Party American Optical Corporation. (Slim, Dania) (Entered: 09/14/2022) [Granted by # 549 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2406Kdm_idV43851949Kdoc_numV549Kpdf_headerV1');] | 09/14/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33374694. Fee amount 100.00 (re: Doc # 544). (U.S. Treasury) (Entered: 09/14/2022) |  |
| 545 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Leo T. Crowley on behalf of Interested Party American Optical Corporation. (Crowley, Leo) (Entered: 09/14/2022) [Granted by # 550 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2408Kdm_idV43851978Kdoc_numV550Kpdf_headerV1');] | 09/14/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33375044. Fee amount 100.00 (re: Doc # 545). (U.S. Treasury) (Entered: 09/14/2022) |  |
| 546 | Order Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business (re: Doc # 307). Attorney for the debtor must distribute this order. (cmm) (Entered: 09/15/2022) | 09/15/2022 |
| 547 | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Compensation, and Benefit Obligations and (B) Continue Employee Compensation and Benefits Programs, and (II) Granting Related Relief (re: Doc # 20). Attorney for the debtor must distribute this order. (cmm) (Entered: 09/15/2022) | 09/15/2022 |
| 548 | Order Granting Motion of the Debtors to Lift the Automatic Stay to Permit Certain Appeals to Proceed (re: Doc # 413). Attorney for the debtor must distribute this order. (cmm) (Entered: 09/15/2022) | 09/15/2022 |
| 549 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 544). Attorney for Interested Party American Optical Corporation must distribute this order. (hhd) (Entered: 09/15/2022) | 09/15/2022 |
| 550 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 545). Attorney for Interested Party American Optical Corporation must distribute this order. (hhd) (Entered: 09/15/2022) | 09/15/2022 |
| 551 | Notice of Withdrawal as Attorney filed by Rachel C. Strickland on behalf of Interested Party The Monsour Law Firm. (Strickland, Rachel) (Entered: 09/15/2022) | 09/15/2022 |
| 552 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Michael R Maizel on behalf of Creditor Official Committee of Unsecured Creditors for Tort. (Maizel, Michael) (Entered: 09/15/2022) [Granted by # 554 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2423Kdm_idV43855730Kdoc_numV554Kpdf_headerV1');] | 09/15/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33377477. Fee amount 100.00 (re: Doc # 552). (U.S. Treasury) (Entered: 09/15/2022) |  |
| 553 | Appearance filed by John R. Humphrey on behalf of Creditor Cabot CSC LLC. (Humphrey, John) (Entered: 09/15/2022) | 09/15/2022 |
| 554 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 552). Attorney for Creditor Official Committee of Unsecured Creditors for Tort must distribute this order. (hhd) (Entered: 09/16/2022) | 09/16/2022 |

| # | Docket Text | Date Filed |
|---|---|---|
| 555 | Certificate of Service re: Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief, Motion for Expedited Hearing and/or Shortened Notice Time on Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief, Order on Motion to Refer to Mediation, Order on Motion for Expedited Hearing and/or Shortened Notice Time, Amended Notice of Hearing with Certificate of Service re: Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 466, 467, 477, 478, 481). (Baer, Herbert) (Entered: 09/16/2022) | 09/16/2022 |
| 556 | Supplemental Certificate of Service re: Notice of 341 Meeting of Creditors re: Chapter 11, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 292). (Baer, Herbert) (Entered: 09/16/2022) | 09/16/2022 |
| 557 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Michael S. Winograd on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Affidavit) (Winograd, Michael) (Entered: 09/16/2022) [Granted by # 585 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2536Kdm_idV43864813Kdoc_numV585Kpdf_headerV1');] | 09/16/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33380522. Fee amount 100.00 (re: Doc # 557). (U.S. Treasury) (Entered: 09/16/2022) |  |
| 558 | Appearance filed by Leo T. Crowley on behalf of Interested Party American Optical Corporation. (Crowley, Leo) (Entered: 09/16/2022) | 09/16/2022 |
| 559 | Appearance filed by Dania Slim on behalf of Interested Party American Optical Corporation. (Slim, Dania) (Entered: 09/16/2022) | 09/16/2022 |
| 560 | Response in Support of Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief filed by John R. Humphrey on behalf of Creditor Cabot CSC LLC (re: Doc # 466). (Humphrey, John) (Entered: 09/16/2022) | 09/16/2022 |
| 561 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Paul M. Green on behalf of Creditor Cabot CSC LLC. (Green, Paul) (Entered: 09/16/2022) [Granted by # 586 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2538Kdm_idV43865086Kdoc_numV586Kpdf_headerV1');] | 09/16/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33381150. Fee amount 100.00 (re: Doc # 561). (U.S. Treasury) (Entered: 09/16/2022) |  |
| 562 | Response in Support of Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief filed by Dania Slim on behalf of Interested Party American Optical Corporation (re: Doc # 466). (Attachments: (1) Declaration of Dania Slim with Exhibits A and B (2) Certificate of Service) (Slim, Dania) (Entered: 09/16/2022) | 09/16/2022 |
| 563 | Certificate of Service re: Order on Motion to Appear Pro Hac Vice, Order on Motion to Appear Pro Hac Vice, filed by Dania Slim on behalf of Interested Party American Optical Corporation (re: Doc # 549, 550). (Slim, Dania) (Entered: 09/16/2022) | 09/16/2022 |
| 564 | Limited Objection to Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 466). (Attachments: (1) Exhibit A - Alternative Proposed Order) (Theisen, Meredith) (Entered: 09/16/2022) | 09/16/2022 |
| 565 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 9/14/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 538). Remote electronic access to the transcript is restricted until 12/15/2022. (Bowen, James) (Entered: 09/16/2022) | 09/16/2022 |
| 566 | Application to Employ Otterbourg P.C. as Creditor Comm. Aty (Verified Statement attached), filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Cyganowski Declaration (3) Exhibit C - Freeman Declaration) (Theisen, Meredith) (Entered: 09/16/2022) [Granted by # 667 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2898Kdm_idV43944248Kdoc_numV667Kpdf_headerV1');] | 09/16/2022 |
| 567 | Application to Employ KTBS Law LLP as Creditor Comm. Aty (Verified Statement attached), filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Pfister Declaration (3) Exhibit C - Freeman Declaration) (Theisen, Meredith) (Entered: 09/16/2022) [Granted by # 668 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2900Kdm_idV43944276Kdoc_numV668Kpdf_headerV1');] | 09/16/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 568 | Application to Employ Rubin & Levin, P.C. as Creditor Comm. Aty (Verified Statement attached), filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Theisen Declaration (3) Exhibit C - Parker Freeman Declaration) (Theisen, Meredith) (Entered: 09/16/2022) [Granted by # 669 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2902Kdm_idV43944307Kdoc_numV669Kpdf_headerV1');] | 09/16/2022 |
| 569 | Certificate of Service re: Application to Employ, Application to Employ, Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 566, 567, 568). (Theisen, Meredith) (Entered: 09/16/2022) | 09/16/2022 |
| 570 | Notice of Hearing with Certificate of Service re: Application to Employ, Application to Employ, Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 566, 567, 568). Objections due by 4:00 PM Eastern on 10/5/2022. Hearing to be held on 10/12/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Theisen, Meredith) (Entered: 09/16/2022) | 09/16/2022 |
| 571 | Application to Employ Caplin & Drysdale, Chartered as Creditor Comm. Aty (Verified Statement attached), filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Maclay Declaration (3) Exhibit C - Freeman Declaration) (Theisen, Meredith) (Entered: 09/16/2022) [Granted by # 670 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2904Kdm_idV43944330Kdoc_numV670Kpdf_headerV1');] | 09/16/2022 |
| 572 | Certificate of Service re: Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 571). (Theisen, Meredith) (Entered: 09/16/2022) | 09/16/2022 |
| 573 | Notice of Hearing with Certificate of Service re: Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 571). Objections due by 4:00 PM Eastern on 10/5/2022. Hearing to be held on 10/12/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Theisen, Meredith) (Entered: 09/16/2022) | 09/16/2022 |
| 574 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 476, 481). (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey) (Entered: 09/19/2022) [Granted by # 580 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2519Kdm_idV43863007Kdoc_numV580Kpdf_headerV1');] | 09/19/2022 |
| 575 | Appearance filed by Maggie B. Burrus on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Burrus, Maggie) (Entered: 09/19/2022) | 09/19/2022 |
| 576 | Appearance filed by Brian A Glasser on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Glasser, Brian) (Entered: 09/19/2022) | 09/19/2022 |
| 577 | Appearance filed by D. Todd Mathews on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Mathews, D.) (Entered: 09/19/2022) | 09/19/2022 |
| 578 | Appearance filed by David L. Selby II on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Selby, David) (Entered: 09/19/2022) | 09/19/2022 |
| 579 | Appearance filed by Kevin W Barrett on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Barrett, Kevin) (Entered: 09/19/2022) | 09/19/2022 |
| 580 | Order Granting Motion to Continue Hearing (re: Doc # 574). Hearing to be held on 10/12/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Attorney for the debtor must distribute this order. (cmm) (Entered: 09/19/2022) | 09/19/2022 |
| 581 | Amended Schedule(s) A/B, D, E/F, G and H (no added creditors) (no added parties) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Attachment 1 (2) Attachment 2 (3) Attachment 3 (4) Attachment 4 (5) Attachment 5) (Hokanson, Jeffrey) (Entered: 09/19/2022) | 09/19/2022 |
|  | Receipt of Amended Schedule(s)( 22-02890-JJG-11) [misc,amdsch] (32.00) Filing Fee. Receipt number A33385941. Fee amount 32.00 (re: Doc # 581). (U.S. Treasury) (Entered: 09/19/2022) | 09/19/2022 |
| 582 | Motion to Extend Time to File / Debtors' Motion for Entry of an Order (I) Enlarging the Period within which the Debtors May Remove Civil Actions and (II) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey) (Entered: 09/19/2022) [Granted by # 674 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2913Kdm_idV43945032Kdoc_numV674Kpdf_headerV1');] | 09/19/2022 |
| 583 | Certificate of Service re: Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, Order on Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 485, 500). (Baer, Herbert) (Entered: 09/19/2022) | 09/19/2022 |
| 584 | Certificate of Service re: Notice of Submission / Agenda for Hearing on Debtors' (I) Motion to Lift the Automatic Stay, (II) Certain First Day Motions, and (III) Certain Submissions Regarding Retention and Compensation Matters on September 14, 2022, at 9:00 A.M (Prevailing Eastern Time), filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 509). (Baer, Herbert) (Entered: 09/19/2022) | 09/19/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 585 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 557). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (hhd) (Entered: 09/20/2022) | 09/20/2022 |
| 586 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 561). Attorney for Creditor Cabot CSC LLC must distribute this order. (hhd) (Entered: 09/20/2022) | 09/20/2022 |
| 587 | Notice of Hearing with Certificate of Service re: Motion to Extend Time to File Miscellaneous Documents/Installment Payment, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 582). Objections due by 4:00 PM Eastern on 10/5/2022. Hearing to be held on 10/12/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Hokanson, Jeffrey) (Entered: 09/20/2022) | 09/20/2022 |
| 588 | Application to Employ Brown Rudnick LLP as Special Counsel (Verified Statement attached), filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Castaldi Declaration (3) Exhibit C - Freeman Declaration) (Theisen, Meredith) (Entered: 09/21/2022) [Granted by # 671 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2906Kdm_idV43944357Kdoc_numV671Kpdf_headerV1');] | 09/21/2022 |
| 589 | Notice of Hearing with Certificate of Service re: Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 588). Objections due by 4:00 PM Eastern on 10/5/2022. Hearing to be held on 10/12/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Theisen, Meredith) (Entered: 09/21/2022) | 09/21/2022 |
| 590 | Chapter 11 Report of Operations for August 2022 filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit Global Notes) (Hokanson, Jeffrey) (Entered: 09/21/2022) | 09/21/2022 |
| 591 | Certificate of Service re: Order on Motion for Authority, Order on Motion to Provide Adequate Assurance to Utilities, Order on Motion to Pay Pre-Petition Trust Fund Taxes, Order on Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses, Order on Motion for Authority, Order on Motion for Approval of Cash Management System (Bank Accounts/Business Forms), filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 537, 539, 540, 541, 542, 543). (Baer, Herbert) (Entered: 09/23/2022) | 09/23/2022 |
| 592 | Certificate of Service re: Order on Motion for Authority, Order on Motion to Provide Adequate Assurance to Utilities, Order on Motion to Pay Pre-Petition Trust Fund Taxes, Order on Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses, Order on Motion for Authority, Order on Motion for Approval of Cash Management System (Bank Accounts/Business Forms), Order on Motion for Authority, Order on Motion for Relief from Stay, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 537, 539, 540, 541, 542, 543, 546, 547, 548). (Baer, Herbert) (Entered: 09/23/2022) | 09/23/2022 |
| 593 | Supplemental Certificate of Service re: Notice of 341 Meeting of Creditors re: Chapter 11, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 292). (Baer, Herbert) (Entered: 09/23/2022) | 09/23/2022 |
| 594 | Appearance filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators. (Hochbein, Curt) (Entered: 09/23/2022) | 09/23/2022 |
| 595 | Agreed Motion for Relief from Stay and Refusal to Waive Hearing Time filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Stipulation) (Hokanson, Jeffrey) (Entered: 09/23/2022) [Amended by # 597 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2596Kdm_idV43884958Kdoc_numV597Kpdf_headerV1');] | 09/23/2022 |
| 596 | Notice of Incomplete Filing issued to Jeffrey Hokanson. Failure to file required item(s) by the due date may result in the striking of the incomplete filing, the dismissal of the Bankruptcy case without further notice, or other action as the Court deems appropriate. Required item(s): A $188.00 filing fee is due for the Motion for Relief from Stay filed on 09/23/2022. (re: Doc # 595). Incomplete Filing due by 10/03/2022. (Admin) (Entered: 09/26/2022) | 09/26/2022 |
| | Receipt of Motion for Relief from Stay( 22-02890-JJG-11) [motion,mrlfsty] (188.00) Filing Fee. Receipt number A33400998. Fee amount 188.00 (re: Doc # 595). Deadline terminated: Notice of Incomplete Filing (596). (U.S. Treasury) (Entered: 09/26/2022) | 09/26/2022 |
| 597 | Amended Motion for Approval of Agreement to Modify or Terminate Stay Pursuant to Fed.R.Bankr.P. 4001(d) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 595). (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Stipulation) (Hokanson, Jeffrey) (Entered: 09/26/2022) [Granted by # 673 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2911Kdm_idV43944931Kdoc_numV673Kpdf_headerV1');] | 09/26/2022 |
| 598 | Declaration re: Order on Motion for Authority filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 546). (Hokanson, Jeffrey) (Entered: 09/26/2022) | 09/26/2022 |
| 599 | Notice of Withdrawal as Attorney filed by Andrew T Kight on behalf of Interested Party Weitz & Luxenberg, PC. (Kight, Andrew) (Entered: 09/27/2022) | 09/27/2022 |
| 600 | Notice of Withdrawal as Attorney filed by Michael W. Hile on behalf of Interested Party Weitz & Luxenberg, PC. (Hile, Michael) (Entered: 09/27/2022) | 09/27/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 601 | Supplemental Certificate of Service re: Notice of 341 Meeting of Creditors re: Chapter 11, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 292). (Baer, Herbert) (Entered: 09/27/2022) | 09/27/2022 |
| 602 | Certificate of Service re: Motion to Continue Hearing, Order on Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, Motion to Extend Time to File Miscellaneous Documents/Installment Payment, Hearing Notice, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 574, 580, 582, 587). (Baer, Herbert) (Entered: 09/27/2022) | 09/27/2022 |
| 603 | Notice of Hearing with Certificate of Service re: Motion for Approval of Agreement Pursuant to FRBP 4001(d), filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 597). Hearing to be held on 10/12/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 if an objection is timely filed. Objections due by 4:00 PM Eastern on 10/9/2022. (Hokanson, Jeffrey) CORRECTION: Objection deadline changed from 10/11/22 to 10/9/22. Modified on 9/28/2022. (cmm) (Entered: 09/28/2022) | 09/28/2022 |
| 604 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Gregory Mark Gordon on behalf of Creditor Cabot CSC LLC. (Gordon, Gregory) (Entered: 09/28/2022) [Granted by # 605 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2628Kdm_idV43898320Kdoc_numV605Kpdf_headerV1');] | 09/28/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33408766. Fee amount 100.00 (re: Doc # 604). (U.S. Treasury) (Entered: 09/28/2022) | 09/28/2022 |
| 605 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 604). Attorney for Creditor Cabot CSC LLC must distribute this order. (hhd) (Entered: 09/29/2022) | 09/29/2022 |
| 606 | Joint Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 308). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 09/29/2022) [Granted by # 608 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2636Kdm_idV43904411Kdoc_numV608Kpdf_headerV1');] | 09/29/2022 |
| 607 | Amended Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief (re: Doc # 152). (Attachments: (1) Exhibit 1 (2) Exhibit 3) Attorney for the debtor must distribute this order. (btw) (Entered: 09/30/2022) | 09/30/2022 |
| 608 | Order Granting Motion to Continue Hearing on Certain Debtors' Employment Applications (re: Doc # 606). Hearing on the Kirkland Employment Application and the Bates White Employment Application will held in Rm 311 U.S. Courthouse, Indianapolis at 09:00 AM Eastern on 10/26/2022 and via Zoom (https://www.zoomgov.com/j/16023126397). Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 Objections due by 4:00pm on 10/5/2022. Committee and US Trustee objections due by 4:00pm on 10/19/2022. Replies to Objections due by 4:00pm on 10/24/2022. Attorney for the debtor must distribute this order. (btw) (Entered: 09/30/2022) | 09/30/2022 |
| 609 | Supplemental Declaration re: Application to Employ filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 566). (Theisen, Meredith) (Entered: 09/30/2022) | 09/30/2022 |
| 610 | Application to Employ Houlihan Lokey Capital, Inc., as Investment Banker as Other Professional (Verified Statement attached), filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Burian Declaration) (Theisen, Meredith) (Entered: 10/03/2022) [Granted by # 786 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3307Kdm_idV44036553Kdoc_numV786Kpdf_headerV1');] | 10/03/2022 |
| 611 | Application to Employ Province, LLC as Financial Advisor (Verified Statement attached), filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Atkinson Declaration) (Theisen, Meredith) (Entered: 10/03/2022) [Granted by # 787 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3309Kdm_idV44036591Kdoc_numV787Kpdf_headerV1');] | 10/03/2022 |
| 612 | Certificate of Service re: Application to Employ, Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 610, 611). (Theisen, Meredith) (Entered: 10/03/2022) | 10/03/2022 |
| 613 | Notice of Hearing with Certificate of Service re: Application to Employ, Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 610, 611). Objections due by 4:00 PM Eastern on 11/2/2022. Hearing to be held on 11/9/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Theisen, Meredith) (Entered: 10/03/2022) | 10/03/2022 |
| 614 | Notice of Submission / Notice of Filing 503(B)(9) Report filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 334, 479, 537). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 10/03/2022) | 10/03/2022 |
| 615 | Certificate of Service re: Motion for Relief from Stay, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 595). (Baer, Herbert) (Entered: 10/03/2022) | 10/03/2022 |
| 616 | Certificate of Service re: Motion for Approval of Agreement Pursuant to FRBP 4001(d), Declaration re: Order on Motion for Authority, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 597, 598). (Baer, Herbert) (Entered: 10/03/2022) | 10/03/2022 |

| # | Docket Text | Date Filed |
|---|---|---|
| 617 | Supplemental Certificate of Service re: Notice of 341 Meeting of Creditors re: Chapter 11, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 292). (Baer, Herbert) (Entered: 10/03/2022) | 10/03/2022 |
| 618 | Certificate of Service re: Amended/Corrected Order, Order on Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 607, 608). (Baer, Herbert) (Entered: 10/04/2022) | 10/04/2022 |
| 619 | Notice of Submission of Response of the Official Committee of Unsecured Creditors for Tort Claimants - Related to Use of Combat Arms Version 2 Earplugs Reserving Rights with Respect to Debtors' Motion for Entry of an Order (i) Enlarging the Period Within Which the Debtors May Remove Civil Actions and (ii) Granting Related Relief filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 582). (Theisen, Meredith) (Entered: 10/04/2022) | 10/04/2022 |
| 620 | Notice of Submission of Reservation of Rights of the CAE Committee in Response to the Debtors' Motion to Approve a Stipulation Lifting the Automatic Stay as to the Gibsons filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 597). (Theisen, Meredith) (Entered: 10/04/2022) | 10/04/2022 |
| 621 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Raymond C Silverman on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Silverman, Raymond) (Entered: 10/04/2022) [Amended by # 634 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2762Kdm_idV43923854Kdoc_numV634Kpdf_headerV1');] [Corrected by # 629 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2728Kdm_idV43917344Kdoc_numV629Kpdf_headerV1');] | 10/04/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33425211. Fee amount 100.00 (re: Doc # 621). (U.S. Treasury) (Entered: 10/04/2022) | 10/04/2022 |
| 622 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Harvey Brown II on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Brown, Harvey) (Entered: 10/04/2022) [Amended by # 637 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2787Kdm_idV43927219Kdoc_numV637Kpdf_headerV1');] [Corrected by # 630 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2733Kdm_idV43917384Kdoc_numV630Kpdf_headerV1');] | 10/04/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33425220. Fee amount 100.00 (re: Doc # 622). (U.S. Treasury) (Entered: 10/04/2022) | 10/04/2022 |
| 623 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by H. Victor Thomas on behalf of Interested Party Ad Hoc Committee of CAEv2 Earplug Claimants. (Thomas, H.) (Entered: 10/04/2022) [Amended by # 638 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2794Kdm_idV43927315Kdoc_numV638Kpdf_headerV1');] [Corrected by # 631 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2738Kdm_idV43917402Kdoc_numV631Kpdf_headerV1');] | 10/04/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33425228. Fee amount 100.00 (re: Doc # 623). (U.S. Treasury) (Entered: 10/04/2022) | 10/04/2022 |
| 624 | Supplemental Declaration re: Application to Employ filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 588). (Theisen, Meredith) (Entered: 10/05/2022) | 10/05/2022 |
| 625 | Supplemental Declaration re: Application to Employ filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 567). (Theisen, Meredith) (Entered: 10/05/2022) | 10/05/2022 |
| 626 | Supplemental Declaration re: Application to Employ, Declaration filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 566, 609). (Theisen, Meredith) (Entered: 10/05/2022) | 10/05/2022 |
| 627 | Supplemental Declaration re: Application to Employ filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 568). (Theisen, Meredith) (Entered: 10/05/2022) | 10/05/2022 |
| 628 | Supplemental Declaration re: Application to Employ filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 571). (Theisen, Meredith) (Entered: 10/05/2022) | 10/05/2022 |
| 629 | Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Raymond C Silverman on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 621). (Silverman, Raymond) (Entered: 10/05/2022) [Amended by # 634 CMECF.widget.DocLink('document1KcaseidV741797Kde_seq_numV2762Kdm_idV43923854Kdoc_numV634Kpdf_headerV1');] | 10/05/2022 |
| 630 | Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Harvey Brown II on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 622). (Brown, Harvey) (Entered: 10/05/2022) [Amended by # 637 CMECF.widget.DocLink('document1KcaseidV741797Kde_seq_numV2787Kdm_idV43927219Kdoc_numV637Kpdf_headerV1');] | 10/05/2022 |
| 631 | Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by H. Victor Thomas on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 623). (Thomas, H.) (Entered: 10/05/2022) [Amended by # 638 CMECF.widget.DocLink('document1KcaseidV741797Kde_seq_numV2794Kdm_idV43927315Kdoc_numV638Kpdf_headerV1');] | 10/05/2022 |
| 632 | Supplemental Declaration re: Application to Employ filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 301). (Hokanson, Jeffrey) (Entered: 10/06/2022) | 10/06/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 633 | Certificate of Service re: Hearing Notice, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 603). (Baer, Herbert) (Entered: 10/06/2022) | 10/06/2022 |
| 634 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Raymond C Silverman on behalf of Creditor Parker Waichman LLP Plaintiffs (re: Doc 621, 629). (Silverman, Raymond) CORRECTION: Related doc #629 added. Modified on 10/7/2022. (cmm) (Entered: 10/06/2022) [Granted by # 798 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3347Kdm_idV44049421Kdoc_numV798Kpdf_headerV1');] | 10/06/2022 |
| 635 | Certificate of Service re: Joint Motion to Continue Hearing, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 606). (Baer, Herbert) (Entered: 10/07/2022) | 10/07/2022 |
| 636 | Certificate of Service re: Notice of Submission / Notice of Filing 503(B)(9) Report, Notice of Submission / Notice of Filing 503(B)(9) Report, Notice of Submission / Notice of Filing 503(B)(9) Report, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 334, 479, 614). (Baer, Herbert) (Entered: 10/07/2022) | 10/07/2022 |
| 637 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Harvey Brown II on behalf of Creditor The Lanier Law Firm Plaintiffs (re: Doc 622, 630). (Brown, Harvey) CORRECTION: Related doc #630 added. Modified on 10/7/2022. (cmm) (Entered: 10/07/2022) [Granted by # 799 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3349Kdm_idV44049431Kdoc_numV799Kpdf_headerV1');] | 10/07/2022 |
| 638 | Amended Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by H. Victor Thomas on behalf of Creditor The Lanier Law Firm Plaintiffs (re: Doc 623, 631). (Thomas, H.) CORRECTION: Related doc #631 added. Modified on 10/7/2022. (cmm) (Entered: 10/07/2022) [Granted by # 800 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3351Kdm_idV44049436Kdoc_numV800Kpdf_headerV1');] | 10/07/2022 |
| 639 | Motion for Examination Under Fed.R.Bankr.P. 2004 filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - CAE Committee's Document Requests) (Theisen, Meredith) (Entered: 10/07/2022) | 10/07/2022 |
| 640 | Application to Employ Mattingly Burke Cohen & Biederman LLP as Creditor Comm. Aty (Verified Statement attached), filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators. (Attachments: (1) Exhibit A - Hochbein Affidavit (2) Exhibit B - Morgan Declaration (3) Exhibit C - Proposed Order) (Hochbein, Curt) (Entered: 10/07/2022) [Granted by # 789 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3313Kdm_idV44036932Kdoc_numV789Kpdf_headerV1');] | 10/07/2022 |
| 641 | Notice of Hearing with Certificate of Service re: Motion for Examination Under Fed.R.Bankr.P. 2004, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 639). Objections due by 4:00 PM Eastern on 11/2/2022. Hearing to be held on 11/9/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom IF AN OBJECTION IS TIMELY FILED. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 10/11/2022. (cmm) (Entered: 10/07/2022) | 10/07/2022 |
| 642 | Application to Employ Rochelle McCullough, LLP as Creditor Comm. Aty (Verified Statement attached), filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators. (Attachments: (1) Exhibit A - McCullough Affidavit (2) Exhibit B - Morgan Declaration (3) Exhibit C - Proposed Order) (Hochbein, Curt) (Entered: 10/07/2022) [Granted by # 790 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3315Kdm_idV44036948Kdoc_numV790Kpdf_headerV1');] | 10/07/2022 |
| 643 | Notice of Hearing with Certificate of Service re: Application to Employ, Application to Employ, filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 640, 642). Objections due by 4:00 PM Eastern on 11/2/2022. Hearing to be held on 11/9/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Hochbein, Curt) (Entered: 10/07/2022) | 10/07/2022 |
| 644 | Supplemental Declaration re: Application to Employ, Declaration filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 305, 357). (Hokanson, Jeffrey) (Entered: 10/07/2022) | 10/07/2022 |
| 645 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc 471, 580). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) CORRECTION: Related doc #580 added. Modified on 10/11/2022. (cmm) (Entered: 10/10/2022) [Granted by # 649 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2844Kdm_idV43935041Kdoc_numV649Kpdf_headerV1');] | 10/10/2022 |
| 646 | Reply to Motion to Extend Time to File Miscellaneous Documents/Installment Payment filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 582). (Hokanson, Jeffrey) (Entered: 10/10/2022) | 10/10/2022 |
| 647 | Supplemental Declaration re: Application to Employ filed by Jeffrey A Hokanson on behalf of Member Debtors 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, Debtor Aearo Technologies LLC (re: Doc # 302). (Attachments: (1) Supplemental Schedule 2) (Hokanson, Jeffrey) (Entered: 10/10/2022) | 10/10/2022 |
| 648 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc 500). (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey) CORRECTION: Related doc # changed from 580 to 500. Modified on 10/11/2022. (cmm) (Entered: 10/11/2022) [Granted by # 650 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2847Kdm_idV43935073Kdoc_numV650Kpdf_headerV1');] | 10/11/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 649 | Order Granting Motion to Continue Hearing (re: Doc # 645). Hearing to be held on 11/9/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Attorney for the debtor must distribute this order. (cmm) (Entered: 10/11/2022) | 10/11/2022 |
| 650 | Order Granting Motion to Continue Hearing (re: Doc # 648). Hearing is continued to a date yet to be determined. Attorney for the debtor must distribute this order. (cmm) (Entered: 10/11/2022) | 10/11/2022 |
| 651 | Reply to Motion for Approval of Agreement Pursuant to FRBP 4001(d) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 597). (Hokanson, Jeffrey) CORRECTION: Document filed in error. See doc. #653 for corrected filing. Modified on 10/11/2022. (cmm) (Entered: 10/11/2022) | 10/11/2022 |
| 652 | Notice of Submission / Agenda for Hearing on (I) Debtors Removal Period Enlargement Motion, (II) Lift-Stay Motion, (III) Certain of Debtors' Retention Applications, and (IV) CAE Committee's Retention Applications, on October 12, 2022, at 9:00 A.M. (Prevailing Eastern Time) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 10/11/2022) | 10/11/2022 |
| 653 | Reply to Motion for Approval of Agreement Pursuant to FRBP 4001(d) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 597). (Hokanson, Jeffrey) (Entered: 10/11/2022) | 10/11/2022 |
| 654 | Notice of Submission / Amended Agenda for Hearing on (I) Debtors' Removal Period Enlargement Motion, (II) Lift Stay Motion, (III) Certain of Debtors' Retention Applications, and (IV) CAE Committee's Retention Applications, on October 12, 2022, at 9:00 A.M. (Prevailing Eastern Time) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 10/11/2022) | 10/11/2022 |
| 655 | Notice of Submission / Second Amended Agenda for Hearing on (I) Debtors' Removal Period Enlargement Motion, (II) Lift Stay Motion, (III) Certain of Debtors' Retention Applications, and (IV) CAE Committee's Retention Applications, on October 12, 2022, at 9:00 A.M. (Prevailing Eastern Time) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 10/12/2022) | 10/12/2022 |
| 656 | Minute Entry/Order: re: Continued Hearing on Debtor's Application to Employ AP Services, LLC as Other Professional (Verified Statement attached) (re: Doc # 305). Disposition: Hearing held. Application to Employ AP Services, LLC is granted. Counsel for Debtor to submit order within 3 days. (hhd) (Entered: 10/12/2022) | 10/12/2022 |
| 657 | Minute Entry/Order: re: Continued Hearing on Debtor's Application to Employ Ice Miller LLP as Debtor's Attorney (re: Doc # 302). Disposition: Hearing held. Application to Employ Ice Miller LLP is granted as modified. Counsel for Debtor to submit order within 3 days. (hhd) (Entered: 10/12/2022) | 10/12/2022 |
| 658 | Minute Entry/Order: re: Continued Hearing on Debtor's Application to Employ McDonald Hopkins LLC as Special Counsel (re: Doc # 301). Disposition: Hearing held. Application to Employ McDonald Hopkins LLC is granted. Counsel for Debtor to submit order within 3 days. (hhd) (Entered: 10/12/2022) | 10/12/2022 |
| 659 | Minute Entry/Order: re: Hearing on Application to Employ Rubin & Levin, P.C. as Creditor Comm. Aty filed by Committee Tort Claimants - CAE Committee (re: Doc # 568). Disposition: Hearing held. Application to Employ Rubin and Levin PC is granted. Counsel for movant to submit order within 3 days. (hhd) (Entered: 10/12/2022) | 10/12/2022 |
| 660 | Minute Entry/Order: re: Hearing on Application to Employ Otterbourg P.C. as Creditor Comm. Aty filed by Committee Tort Claimants - CAE Committee (re: Doc # 566). Disposition: Hearing held. Application to Employ Otterbourg PC is granted. Counsel for movant to submit order within 3 days. (hhd) (Entered: 10/12/2022) | 10/12/2022 |
| 661 | Minute Entry/Order: re: Hearing on Application to Employ KTBS Law LLP as Creditor Comm. Aty filed by Committee Tort Claimants - CAE Committee (re: Doc # 567). Disposition: Hearing held. Application to Employ KTBS Law LLP is granted. Counsel for movant to submit order within 3 days. (hhd) (Entered: 10/12/2022) | 10/12/2022 |
| 662 | Minute Entry/Order: re: Hearing on Application to Employ Caplin & Drysdale, Chartered as Creditor Comm. Aty filed by Committee Tort Claimants - CAE Committee (re: Doc # 571). Disposition: Hearing held. Application to Employ Caplin & Drysdale, Chartered is granted. Counsel for movant to submit order within 3 days. (hhd) (Entered: 10/12/2022) | 10/12/2022 |
| 663 | Minute Entry/Order: re: Debtors' Motion for Entry of an Order (I) Enlarging the Period within which the Debtors May Remove Civil Actions and (II) Granting Related Relief and Response of the Official Committee of Unsecured Creditors for Tort Claimants - Related to Use of Combat Arms Version 2 Earplugs and Debtors' Reply thereto (re: Doc # 582,619,646). Disposition: Hearing held. Debtors' Motion is granted. Counsel for Debtor to submit order within 3 days. (hhd) (Entered: 10/12/2022) | 10/12/2022 |
| 664 | Minute Entry/Order: re: Hearing on Application to Employ Brown Rudnick LLP as Special Counsel filed by Creditor Committee Tort Claimants - CAE Committee (re: Doc # 588). Disposition: Hearing held. Application to Employ Brown Rudnick LLP is granted. Counsel for movant to submit order within 3 days. (hhd) (Entered: 10/12/2022) | 10/12/2022 |
| 665 | Minute Entry/Order: re: Hearing on Debtors' Amended Motion for Approval of Agreement to Modify or Terminate Stay Pursuant to Fed.R.Bankr.P. 4001(d) and Debtors' Reply thereto (re: Doc # 597,653). Disposition: Hearing held. Debtors' Amended Motion is granted. Counsel for Debtor to submit order within 3 days. (hhd) (Entered: 10/12/2022) | 10/12/2022 |
| 666 | Certificate of Service re: Declaration, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 632). (Baer, Herbert) (Entered: 10/12/2022) | 10/12/2022 |

A.72

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 667 | Order Granting Application to Employ Otterbourg P.C. as Creditor Comm. Aty (re: Doc #566). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (cmm) (Entered: 10/13/2022) | 10/13/2022 |
| 668 | Order Granting Application to Employ KTBS Law LLP as Creditor Comm. Aty (re: Doc #567). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (cmm) (Entered: 10/13/2022) | 10/13/2022 |
| 669 | Order Granting Application to Employ Rubin & Levin, P.C. as Creditor Comm. Aty (re: Doc #568). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (cmm) (Entered: 10/13/2022) | 10/13/2022 |
| 670 | Order Granting Application to Employ Caplin & Drysdale, Chartered as Creditor Comm. Aty (re: Doc #571). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (cmm) (Entered: 10/13/2022) | 10/13/2022 |
| 671 | Order Granting Application to Employ Brown Rudnick LLP as Special Counsel (re: Doc #588). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (cmm) (Entered: 10/13/2022) | 10/13/2022 |
| 672 | Order Granting Application to Employ Ice Miller LLP as Debtor's Attorney (re: Doc #302). Attorney for the debtor must distribute this order. (cmm) (Entered: 10/13/2022) | 10/13/2022 |
| 673 | Order Granting Amended Motion for Approval of Agreement to Modify or Terminate Stay Pursuant to Fed.R.Bankr.P. 4001(d) (re: Doc #597). Attorney for the debtor must distribute this order. (cmm) (Entered: 10/13/2022) | 10/13/2022 |
| 674 | Order (I) Enlarging the Period within which the Debtors May Remove Civil Actions and (II) Granting Related Relief (re: Doc # 582). Deadline is extended through the later of (a) 4/21/2023, or (b) 30 days after entry of an order terminating the automatic stay with respect to any particular Civil Action sought to be removed. Attorney for the debtor must distribute this order. (cmm) (Entered: 10/13/2022) | 10/13/2022 |
| 675 | Certificate of Service re: Order on Application to Employ, Order on Application to Employ, Order on Application to Employ, Order on Application to Employ, Order on Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 667, 668, 669, 670, 671). (Theisen, Meredith) (Entered: 10/13/2022) | 10/13/2022 |
| 676 | Certificate of Service re: Declaration, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 644). (Baer, Herbert) (Entered: 10/13/2022) | 10/13/2022 |
| 677 | Notice of Submission / Notice of Filing 503(b)(9) Report filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 537). (Hokanson, Jeffrey) (Entered: 10/13/2022) | 10/13/2022 |
| 678 | Order Granting Application to Employ AP Services, LLC as Other Professional (re: Doc #305). Attorney for the debtor must distribute this order. (cmm) (Entered: 10/13/2022) | 10/13/2022 |
| 679 | Declaration re: Order on Motion for Authority filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 546). (Hokanson, Jeffrey) (Entered: 10/13/2022) | 10/13/2022 |
| 680 | Order Granting Application to Employ McDonald Hopkins LLC as Special Counsel (re: Doc #301). Attorney for the debtor must distribute this order. (cmm) (Entered: 10/17/2022) | 10/17/2022 |
| 681 | Certificate of Service re: Reply, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 646). (Baer, Herbert) (Entered: 10/17/2022) | 10/17/2022 |
| 682 | Certificate of Service re: Notice of 341 Meeting of Creditors re: Chapter 11, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 292). (Baer, Herbert) (Entered: 10/17/2022) | 10/17/2022 |
| 683 | Joint Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 608). (Hokanson, Jeffrey) (Entered: 10/17/2022) [Amended to # 684 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2946Kdm_idV43955890Kdoc_numV684Kpdf_headerV1');] | 10/17/2022 |
| 684 | Amended Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 608, 683). (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey) (Entered: 10/17/2022) [Granted by # 687 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV2957Kdm_idV43957969Kdoc_numV687Kpdf_headerV1');] | 10/17/2022 |
| 685 | Supplemental Declaration re: Application to Employ filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 300). (Hokanson, Jeffrey) (Entered: 10/17/2022) | 10/17/2022 |
| 686 | Supplemental Declaration re: Application to Employ, Declaration filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 301, 632). (Hokanson, Jeffrey) (Entered: 10/17/2022) | 10/17/2022 |
| 687 | Order Granting Motion to Continue Hearing on Certain Debtors' Employment Applications (re: Doc # 684). Hearing to be held in Rm 311 U.S. Courthouse, Indianapolis at 09:00 AM Eastern on 11/9/2022 and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Replies to objections or responses due by 11/7/2022 at 04:00 PM Eastern. Objections due by 11/2/2022 at 04:00 PM Eastern. Attorney for the debtor must distribute this order. (cmm) (Entered: 10/18/2022) | 10/18/2022 |

A.73

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 688 | Application to Employ Stretto, Inc., Information Agent as Other Professional (Verified Statement attached), filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Betance Declaration) (Theisen, Meredith) (Entered: 10/19/2022) [Granted by # 788 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3311Kdm_idV44036635Kdoc_numV788Kpdf_headerV1');] | 10/19/2022 |
| 689 | Certificate of Service re: Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 688). (Theisen, Meredith) (Entered: 10/19/2022) | 10/19/2022 |
| 690 | Notice of Hearing with Certificate of Service re: Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 688). Objections due by 4:00 PM Eastern on 11/2/2022. Hearing to be held on 11/9/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom IF AN OBJECTION IS TIMELY FILED. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 10/20/2022. (cmm) (Entered: 10/19/2022) | 10/19/2022 |
| 691 | Motion to Extend Exclusivity Period/Deadlines under Section 1121, 1129, 1189 or 1221 filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 10/19/2022) | 10/19/2022 |
| 692 | Supplemental Declaration re: Application to Employ filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 304). (Hokanson, Jeffrey) (Entered: 10/19/2022) | 10/19/2022 |
| 693 | Certificate of Service re: Order on Application to Employ, Order on Motion for Approval of Agreement Pursuant to FRBP 4001(d), Order on Motion to Extend Time to File, Order on Application to Employ, Declaration re: Order on Motion for Authority, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 672, 673, 674, 678, 679). (Baer, Herbert) (Entered: 10/19/2022) | 10/19/2022 |
| 694 | Certificate of Service re: Notice of Submission / Notice of Filing 503(b)(9) Report, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 677). (Baer, Herbert) (Entered: 10/20/2022) | 10/20/2022 |
| 695 | Objection to Application to Employ filed by Harrison Edward Strauss on behalf of U.S. Trustee (re: Doc # 300). (Strauss, Harrison) (Entered: 10/20/2022) | 10/20/2022 |
| 696 | Certificate of Service re: Amended Motion to Continue Hearing, DECLARATION, Declaration, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc 684, 685, 686). (Baer, Herbert) CORRECTION: Related doc #685 added. Missing docket text added in all capitals. Modified on 10/20/2022. (cmm) (Entered: 10/20/2022) | 10/20/2022 |
| 697 | Supplemental Declaration re: Application to Employ, Declaration, Declaration filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 305, 357, 644). (Hokanson, Jeffrey) (Entered: 10/21/2022) | 10/21/2022 |
| 698 | Notice of Hearing with Certificate of Service re: Motion to Extend Exclusivity Period/Deadlines under Section 1121, 1129, 1189 or 1221, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 691). Hearing to be held on 11/9/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 if an objection is timely filed. Objections due by 4:00 PM Eastern on 11/02/2022. (Hokanson, Jeffrey) (Entered: 10/21/2022) | 10/21/2022 |
| 699 | Chapter 11 Report of Operations for September 2022 filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit Global Notes) (Hokanson, Jeffrey) (Entered: 10/21/2022) | 10/21/2022 |
| 700 | Exhibit Supplemental Exhibit to the CAE Committees Application for Entry of an Order Approving Retention and Employment of Stretto, Inc. as Information Agent for CAE Committee filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 688). (Attachments: (1) Exhibit A - Stretto Fee Structure) (Theisen, Meredith) (Entered: 10/21/2022) | 10/21/2022 |
| 701 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: ICE MILLER LLP, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. OBJECTIONS DUE BY 4:00 PM EASTERN ON 11/04/2022 (re: Doc # 672). (Attachments: (1) Exhibit A - Invoices 7/26/22 - 8/31/22) (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 10/24/2022. (cmm) (Entered: 10/21/2022) | 10/21/2022 |
| 702 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: OTTERBOURG P.C., filed by Melanie Louise Cyganowski, Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. OBJECTIONS DUE BY 4:00 PM EASTERN ON 11/04/2022 (re: Doc 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Related doc changed from #667 to #541. Modified on 10/24/2022. (cmm) (Entered: 10/21/2022) | 10/21/2022 |
| 703 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: ICE MILLER LLP, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. OBJECTIONS DUE BY 4:00 PM EASTERN ON 11/04/2022 (re: Doc # 672). (Attachments: (1) Exhibit A - Invoices 9/1/22 - 9/30/22) (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 10/24/2022. (cmm) (Entered: 10/21/2022) | 10/21/2022 |
| 704 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: KTBS LAW LLP, filed by Robert J Pfister, Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. OBJECTIONS DUE BY 4:00 PM EASTERN ON 11/04/2022 (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 10/24/2022. (cmm) (Entered: 10/21/2022) | 10/21/2022 |

A.74

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 705 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: CAPLIN & DRYSDALE, CHARTERED, filed by Kevin C Maclay, Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. OBJECTIONS DUE BY 4:00 PM EASTERN ON 11/04/2022 (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 10/24/2022. (cmm) (Entered: 10/21/2022) | 10/21/2022 |
| 706 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: BROWN RUDNICK LLP, filed by Cathrine M Castaldi, Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. OBJECTIONS DUE BY 4:00 PM EASTERN ON 11/04/2022 (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 10/24/2022. (cmm) (Entered: 10/21/2022) | 10/21/2022 |
| 707 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: RUBIN & LEVIN, P.C., filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. OBJECTIONS DUE BY 4:00 PM EASTERN ON 11/04/2022 (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 10/24/2022. (cmm) (Entered: 10/21/2022) | 10/21/2022 |
| 708 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: MCDONALD HOPKINS LLC, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 680). (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C) (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 10/25/2022. (cmm) (Entered: 10/21/2022) | 10/21/2022 |
| 709 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: MCDONALD HOPKINS LLC, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 680). (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C) (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 10/25/2022. (cmm) (Entered: 10/21/2022) | 10/21/2022 |
| 710 | Certificate of Service re: Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 702, 704, 705, 706, 707). (Theisen, Meredith) (Entered: 10/21/2022) | 10/21/2022 |
| 711 | Certificate of Service re: Order on Motion to Continue Hearing, Trial, Pretrial Conference or Status Conference, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 687). (Baer, Herbert) (Entered: 10/21/2022) | 10/21/2022 |
| 712 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: MCDONALD HOPKINS LLC, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. OBJECTIONS DUE BY 4:00 PM EASTERN ON 11/08/2022 (re: Doc # 680). (Attachments: (1) Exhibit A - Monthly Invoices) (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 10/25/2022. (cmm) (Entered: 10/25/2022) | 10/25/2022 |
| 713 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: MCDONALD HOPKINS LLC, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. OBJECTIONS DUE BY 4:00 PM EASTERN ON 11/08/2022 (re: Doc # 680). (Attachments: (1) Exhibit A - Monthly Invoices) (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 10/25/2022. (cmm) (Entered: 10/25/2022) | 10/25/2022 |
| 714 | Certificate of Service re: Motion to Extend Exclusivity Period/Deadlines under Section 1121, 1129, 1189 or 1221, Declaration, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 691, 692). (Baer, Herbert) (Entered: 10/25/2022) | 10/25/2022 |
| 715 | Notice of Submission / Notice of Filing 503(B)(9) Report filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 149, 479, 537, 614, 677). (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) (Entered: 10/26/2022) | 10/26/2022 |
| 716 | Motion for Protective Order filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) (Entered: 10/26/2022) [Granted by # 792 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3322Kdm_idV44037187Kdoc_numV792Kpdf_headerV1');] | 10/26/2022 |
| 717 | Motion for Approval of Agreement to Modify or Terminate Stay Pursuant to Fed.R.Bankr.P. 4001(d) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B) (Hokanson, Jeffrey) (Entered: 10/26/2022) [Granted by # 751 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3189Kdm_idV44023183Kdoc_numV751Kpdf_headerV1');] | 10/26/2022 |
| 718 | Notice of Hearing with Certificate of Service re: Motion for Approval of Agreement Pursuant to FRBP 4001(d), filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 717). Hearing to be held on 11/9/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 if an objection is timely filed. Objections due by 4:00 PM Eastern on 11/04/2022. (Hokanson, Jeffrey) (Entered: 10/27/2022) | 10/27/2022 |
| 719 | Notice of Hearing with Certificate of Service re: Motion for Protective Order, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 716). Hearing to be held on 11/9/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 if an objection is timely filed. Objections due by 4:00 PM Eastern on 11/04/2022. (Hokanson, Jeffrey) (Entered: 10/27/2022) | 10/27/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 720 | Notice of Submission Notice of Filing 503(B)(9) Report filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 537). (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) (Entered: 10/28/2022) | 10/28/2022 |
| 721 | Notice of Submission / Notice of Amendment to the List of Ordinary Course Professionals filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 307, 546). (Attachments: (1) Exhibit A (2) Exhibit B) (Hokanson, Jeffrey) (Entered: 10/31/2022) | 10/31/2022 |
| 722 | Declaration re: Order on Motion for Authority filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 546). (Hokanson, Jeffrey) (Entered: 10/31/2022) | 10/31/2022 |
| 723 | Certificate of Service re: Declaration, Hearing Notice, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 697, 698). (Baer, Herbert) (Entered: 11/01/2022) | 11/01/2022 |
| 724 | Certificate of Service re: Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 712, 713). (Baer, Herbert) (Entered: 11/01/2022) | 11/01/2022 |
| 725 | Notice of Submission of Revised Proposed Order to Application of the Official Committee of Unsecured Creditors for Tort Claimants - Related to Use of Combat Arms Version 2 Earplugs for Entry of an Order Pursuant to 11 U.S.C. 328(a) and 1103, Fed. R. Bankr. P. 2014 and 5002, and Local Rule 2014-1 Authorizing Retention and Employment of Houlihan Lokey Capital, Inc. as Investment Banker to the CAE Committee Effective as of September 9, 2022 filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 610). (Attachments: (1) Exhibit A - Revised Proposed Order (2) Exhibit B - Blackline Version of Revised Proposed Order) (Theisen, Meredith) (Entered: 11/02/2022) | 11/02/2022 |
| 726 | Notice of Submission of Revised Proposed Order to Application of the Official Committee of Unsecured Creditors for Tort Claimants - Related to Combat Arms Version 2 Earplugs to Retain and Employ Province, LLC, as Financial Advisor, Effective as of September 13, 2022 filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 611). (Attachments: (1) Exhibit A - Revised Proposed Order (2) Exhibit B - Blackline Version of Revised Proposed Order) (Theisen, Meredith) (Entered: 11/02/2022) | 11/02/2022 |
| 727 | Notice of Submission of Revised Proposed Order to CAE Committee's Application for Entry of an Order Approving Retention and Employment of Stretto, Inc. as Information Agent for CAE Committee filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 688). (Attachments: (1) Exhibit A - Revised Proposed Order (2) Exhibit B - Blackline Version of Revised Proposed Order) (Theisen, Meredith) (Entered: 11/02/2022) | 11/02/2022 |
| 728 | Objection to Motion for Examination Under Fed.R.Bankr.P. 2004 filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 639). (Hokanson, Jeffrey) (Entered: 11/02/2022) | 11/02/2022 |
| 729 | Response in Support of Motion to Extend Exclusivity Period/Deadlines under Section 1121, 1129, 1189 or 1221 filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 691). (Hochbein, Curt) (Entered: 11/02/2022) | 11/02/2022 |
| 730 | Objection to Application to Employ filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 300). (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C (4) Exhibit D (5) Exhibit E) (Theisen, Meredith) (Entered: 11/02/2022) | 11/02/2022 |
| 731 | Objection to Motion to Extend Exclusivity Period/Deadlines under Section 1121, 1129, 1189 or 1221 filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 691). (Theisen, Meredith) (Entered: 11/02/2022) | 11/02/2022 |
| 732 | Objection to Motion to Extend Exclusivity Period/Deadlines under Section 1121, 1129, 1189 or 1221 filed by Martha R. Lehman on behalf of Interested Party Tracey Fox King & Walters (re: Doc # 691). (Lehman, Martha) (Entered: 11/02/2022) | 11/02/2022 |
| 733 | Certificate of Service re: Objection, Objection, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 730, 731). (Theisen, Meredith) (Entered: 11/02/2022) | 11/02/2022 |
| 734 | Limited Objection to Application to Employ filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 300). (Hochbein, Curt) (Entered: 11/02/2022) | 11/02/2022 |
| 735 | Objection to Motion to Extend Exclusivity Period/Deadlines under Section 1121, 1129, 1189 or 1221 filed by Patricia B. Tomasco on behalf of Creditor Bellwether Plaintiffs Adkins and Vaughn (re: Doc # 691). (Tomasco, Patricia) (Entered: 11/02/2022) | 11/02/2022 |
| 736 | Objection to Motion for Examination Under Fed.R.Bankr.P. 2004 filed by Jay Jaffe on behalf of Creditor 3M Company (re: Doc # 639). (Jaffe, Jay) (Entered: 11/02/2022) | 11/02/2022 |
| 737 | Motion for Approval of Agreement to Modify or Terminate Stay Pursuant to Fed.R.Bankr.P. 4001(d) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Stipulation) (Hokanson, Jeffrey) (Entered: 11/02/2022) | 11/02/2022 |
| 738 | Notice of Submission of Notice of Service of Deposition Notices filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Notice of Deposition of Chad Husnick (2) Exhibit B - Notice of Deposition of Jeffrey S. Stein (3) Exhibit C - Notice of Deposition of John R. Castellano) (Theisen, Meredith) (Entered: 11/02/2022) | 11/02/2022 |

| # | Docket Text | Date Filed |
|---|---|---|
| 739 | Notice of Hearing with Certificate of Service re: Motion for Approval of Agreement Pursuant to FRBP 4001(d), filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 737). Objections due by 4:00 PM Eastern on 12/7/2022. Hearing to be held on 12/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 IF AN OBJECTION IS TIMELY FILED. (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 11/3/2022. (cmm) (Entered: 11/02/2022) | 11/02/2022 |
| 740 | Certificate of Service re: Hearing Notice, Hearing Notice, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 718, 719). (Baer, Herbert) (Entered: 11/03/2022) | 11/03/2022 |
| 741 | Certificate of Service re: Notice of Submission Notice of Filing 503(B)(9) Report, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 720). (Baer, Herbert) (Entered: 11/04/2022) | 11/04/2022 |
| 742 | Certificate of Service re: Notice of Submission / Notice of Amendment to the List of Ordinary Course Professionals, Declaration re: Order on Motion for Authority, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 721, 722). (Baer, Herbert) (Entered: 11/04/2022) | 11/04/2022 |
| 743 | Joint Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 687). (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) (Entered: 11/04/2022) [Granted by # 749 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3183Kdm_idV44022792Kdoc_numV749Kpdf_headerV1');] | 11/04/2022 |
| 744 | Limited Objection to Motion for Protective Order filed by Meredith R. Theisen on behalf of Creditor Committee - CAE Committee (re: Doc # 716). (Attachments: (1) Exhibit A - Alternative Proposed Order) (Theisen, Meredith) (Entered: 11/04/2022) | 11/04/2022 |
| 745 | Notice of Submission / Certificate of No Objection filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 717). (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) (Entered: 11/04/2022) | 11/04/2022 |
| 746 | Limited Objection to Motion for Protective Order filed by Harrison Edward Strauss on behalf of U.S. Trustee (re: Doc # 716). (Strauss, Harrison) (Entered: 11/05/2022) | 11/05/2022 |
| 747 | Notice of Submission /Certificate of No Objection filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 640). (Hochbein, Curt) (Entered: 11/07/2022) | 11/07/2022 |
| 748 | Notice of Submission /Certificate of No Objection filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 642). (Hochbein, Curt) (Entered: 11/07/2022) | 11/07/2022 |
| 749 | Order Granting Motion to Continue Hearing on Debtors' Application for Retention and Employment of Bates White, LLC as Claims Valuation Consultants as of the Petition Date (re: Doc # 743). Hearing to be held on 12/5/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Replies to objections or responses due by 12/2/2022 at 04:00 PM Eastern. Objections due by 11/28/2022 at 04:00 pm Eastern. Attorney for the debtor must distribute this order. (cmm) (Entered: 11/07/2022) | 11/07/2022 |
| 750 | Reply to Application to Employ filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 300). (Hokanson, Jeffrey) (Entered: 11/07/2022) | 11/07/2022 |
| 751 | Order Granting Motion for Approval of Agreement to Modify or Terminate Stay Pursuant to Fed.R.Bankr.P. 4001(d) (re: Doc #717). Attorney for the debtor must distribute this order. (cmm) (Entered: 11/07/2022) | 11/07/2022 |
| 752 | Reply to Motion to Extend Time to File Chapter 11/12 Plan, Obtain Confirmation, and/or Extend Exclusivity filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 691). (Hokanson, Jeffrey) (Entered: 11/07/2022) | 11/07/2022 |
| 753 | Joint Statement of Honorable James M. Carr and Randi S. Ellis Regarding the Debtor's Participation in the Mediation filed by Co-Mediator Randi S. Ellis and Co-Mediator Honorable James M. Carr (re: Doc # 477). (cew) (Entered: 11/07/2022) | 11/07/2022 |
| 754 | CORRECTED ENTRY: Disinterested Directors' Statement in Support of Debtors' Retention of Kirkland & Ellis filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 300) (Hokanson, Jeffrey) ORIGINAL ENTRY: Reply to Application to Employ filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 300). (Hokanson, Jeffrey) Modified on 11/8/2022. (cmm) (Entered: 11/07/2022) | 11/07/2022 |
| 755 | Motion to Continue Hearing filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 649). (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey) (Entered: 11/07/2022) [Granted by # 762 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3234Kdm_idV44027042Kdoc_numV762Kpdf_headerV1');] | 11/07/2022 |
| 756 | Certificate of Service re: Motion for Approval of Agreement Pursuant to FRBP 4001(d), filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 737). (Baer, Herbert) (Entered: 11/07/2022) | 11/07/2022 |
| 757 | Witness List AND EXHIBIT LIST filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 719). (Attachments: (1) Exhibit A)(Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 11/8/2022. (cmm) (Entered: 11/07/2022) | 11/07/2022 |

A.77

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 758 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) (Entered: 11/08/2022) [Corrected by # 760 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3223Kdm_idV44026166Kdoc_numV760Kpdf_headerV1');] | 11/08/2022 |
| 779 | Minute Entry/Order: re: Hearing on Debtors' Motion for Approval of Agreement to Modify or Terminate Stay Pursuant to Fed.R.Bankr.P. 4001(d) (re: Doc # 717). Hearing vacated. No Objection(s) filed, Court vacates hearing. Order to be entered. (hhd) (Entered: 11/10/2022) | 11/07/2022 |
| 758 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) (Entered: 11/08/2022) [Corrected by # 760 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3223Kdm_idV44026166Kdoc_numV760Kpdf_headerV1');] | 11/08/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33507204. Fee amount 100.00 (re: Doc # 758). (U.S. Treasury) (Entered: 11/08/2022) | 11/08/2022 |
| 759 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Joshua Sussberg on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit 1) (Sussberg, Joshua) (Entered: 11/08/2022) [Granted by # 766 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3246Kdm_idV44028234Kdoc_numV766Kpdf_headerV1');] | 11/08/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33507204. Fee amount 100.00 (re: Doc # 758). (U.S. Treasury) (Entered: 11/08/2022) | 11/08/2022 |
| 759 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Joshua Sussberg on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit 1) (Sussberg, Joshua) (Entered: 11/08/2022) [Granted by # 766 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3246Kdm_idV44028234Kdoc_numV766Kpdf_headerV1');] | 11/08/2022 |
| 760 | Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Michael Slade on behalf of Debtor Aearo Technologies LLC (re: Doc # 758). (Attachments: (1) Exhibit 1) (Slade, Michael) (Entered: 11/08/2022) | 11/08/2022 |
| 760 | Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Michael Slade on behalf of Debtor Aearo Technologies LLC (re: Doc # 758). (Attachments: (1) Exhibit 1) (Slade, Michael) (Entered: 11/08/2022) [Granted by # 803 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3359Kdm_idV44053857Kdoc_numV803Kpdf_headerV1');] | 11/08/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33507379. Fee amount 100.00 (re: Doc # 759). (U.S. Treasury) (Entered: 11/08/2022) | 11/08/2022 |
| 761 | Witness List AND EXHIBIT LIST filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 719). (Attachments: (1) Exhibit A - CAE Committee Exhibit List)(Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 11/8/2022. (cmm) (Entered: 11/08/2022) | 11/08/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33507379. Fee amount 100.00 (re: Doc # 759). (U.S. Treasury) (Entered: 11/08/2022) | 11/08/2022 |
| 761 | Witness List AND EXHIBIT LIST filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 719). (Attachments: (1) Exhibit A - CAE Committee Exhibit List)(Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 11/8/2022. (cmm) (Entered: 11/08/2022) | 11/08/2022 |
| 762 | Order Granting Motion to Continue Hearing on Debtor's Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief (re: Doc # 755). Hearing to be held on 12/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Attorney for the debtor must distribute this order. (cmm) (Entered: 11/08/2022) | 11/08/2022 |
| 762 | Order Granting Motion to Continue Hearing on Debtor's Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief (re: Doc # 755). Hearing to be held on 12/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Attorney for the debtor must distribute this order. (cmm) (Entered: 11/08/2022) | 11/08/2022 |
| 763 | Notice of Submission / Notice of Filing 503(B)(9) Report filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 537). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 11/08/2022) | 11/08/2022 |
| 763 | Notice of Submission / Notice of Filing 503(B)(9) Report filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 537). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 11/08/2022) | 11/08/2022 |
| 764 | Reply to Motion for Protective Order filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 716). (Hokanson, Jeffrey) (Entered: 11/08/2022) | 11/08/2022 |
| 764 | Reply to Motion for Protective Order filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 716). (Hokanson, Jeffrey) (Entered: 11/08/2022) | 11/08/2022 |

A.78

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 765 | Exhibit List filed by Harrison Edward Strauss on behalf of U.S. Trustee (re: Doc # 687). (Strauss, Harrison) (Entered: 11/08/2022) | 11/08/2022 |
| 765 | Exhibit List filed by Harrison Edward Strauss on behalf of U.S. Trustee (re: Doc # 687). (Strauss, Harrison) (Entered: 11/08/2022) | 11/08/2022 |
| 766 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 759). Attorney for the debtor must distribute this order. (hhd) (Entered: 11/08/2022) | 11/08/2022 |
| 766 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 759). Attorney for the debtor must distribute this order. (hhd) (Entered: 11/08/2022) | 11/08/2022 |
| 767 | Notice of Submission / Agenda For Hearing on (I) Respirator Committee's Certain Retention Applications, (II) CAE Committee's Certain Retention Applications, (III) Debtors' Certain Retention Application, and (IV) Certain Debtors' Motions on November 9, 2022, at 9:00 a.m. (Prevailing Eastern Time) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 11/08/2022) | 11/08/2022 |
| 767 | Notice of Submission / Agenda For Hearing on (I) Respirator Committee's Certain Retention Applications, (II) CAE Committee's Certain Retention Applications, (III) Debtors' Certain Retention Application, and (IV) Certain Debtors' Motions on November 9, 2022, at 9:00 a.m. (Prevailing Eastern Time) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 11/08/2022) | 11/08/2022 |
| 768 | Witness List AND AMENDED EXHIBIT LIST filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 719). (Attachments: (1) Exhibit 1)(Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 11/9/2022. (cmm) (Entered: 11/08/2022) | 11/08/2022 |
| 768 | Witness List AND AMENDED EXHIBIT LIST filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 719). (Attachments: (1) Exhibit 1)(Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 11/9/2022. (cmm) (Entered: 11/08/2022) | 11/08/2022 |
| 769 | Exhibit List filed by Patricia B. Tomasco on behalf of Creditor Bellwether Plaintiffs Adkins and Vaughn (re: Doc # 691). (Tomasco, Patricia) (Entered: 11/08/2022) | 11/08/2022 |
| 769 | Exhibit List filed by Patricia B. Tomasco on behalf of Creditor Bellwether Plaintiffs Adkins and Vaughn (re: Doc # 691). (Tomasco, Patricia) (Entered: 11/08/2022) | 11/08/2022 |
| 770 | Notice of Submission / Amended Proposed Agenda For Hearing on (I) Respirator Committee's Certain Retention Applications, (II) CAE Committee's Certain Retention Applications, (III) Debtors' Certain Retention Application, and (IV) Certain Debtors' Motions on November 9, 2022, at 9:00 a.m. (Prevailing Eastern Time) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 11/09/2022) | 11/09/2022 |
| 770 | Notice of Submission / Amended Proposed Agenda For Hearing on (I) Respirator Committee's Certain Retention Applications, (II) CAE Committee's Certain Retention Applications, (III) Debtors' Certain Retention Application, and (IV) Certain Debtors' Motions on November 9, 2022, at 9:00 a.m. (Prevailing Eastern Time) filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffrey) (Entered: 11/09/2022) | 11/09/2022 |
| 771 | Certificate of Service re: Joint Motion to Continue Hearing, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 743). (Baer, Herbert) (Entered: 11/09/2022) | 11/09/2022 |
| 772 | Minute Entry/Order: re: Continued Hearing on Debtor's Application to Employ Kirkland & Ellis LLP as Debtor's Attorney (Verified Statement attached) Objections thereto filed by the US Trustee,Creditor Committee Tort Claimants - CAE Committee and Limited Objection filed by Unsecured Creditor Committee - Respirators and Debtors' Reply thereto (re: Doc # 300,695,730,734,750). Disposition: Hearing held. Matter continued. Court swears in and hears testimony of Chad Husnick and Jeffrey S. Stein. Debtors' exhibits 26,15,6,7-12,14,2,3,16,42,13,1, and 17 are admitted into evidence. Tort Claimants -CAE Committee's H,I,J,L,U and AW are admitted into evidence. US Trustee's exhibits 1 and 2 are admitted into evidence. Court continues matter to 11/10/2022 at 09:30 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Notice given in court and no further notice will be issued. (hhd) (Entered: 11/10/2022) | 11/09/2022 |
| 773 | Minute Entry/Order: re: Hearing on Application to Employ Rochelle McCullough, LLP as Creditor Comm. Aty filed by Unsecured Creditor Committee - Respirators (re: Doc # 642). Disposition: Hearing held. Court grants Application. Counsel to submit order within 7 days. (hhd) (Entered: 11/10/2022) | 11/09/2022 |
| 774 | Minute Entry/Order: re: Hearing on Application to Employ Mattingly Burke Cohen & Biederman LLP as Creditor Comm. Aty filed by Unsecured Creditor Committee - Respirators (re: Doc # 640). Disposition: Hearing held. Court grants Application. Counsel to submit order within 7 days. (hhd) (Entered: 11/10/2022) | 11/09/2022 |
| 775 | Minute Entry/Order: re: Hearing on Application of Creditor Committee Tort Claimants - CAE Committee to Employ Houlihan Lokey Capital, Inc., as Investment Banker as Other Professional (re: Doc # 610). Disposition: Hearing held. Hearing held. Court grants Application. Court to review order. (hhd) (Entered: 11/10/2022) | 11/09/2022 |
| 776 | Minute Entry/Order: re: Hearing on Application of Creditor Committee Tort Claimants - CAE Committee to Employ Province, LLC as Financial Advisor (re: Doc # 611). Disposition: Hearing held. Disposition: Hearing held. Hearing held. Court grants Application. Court to review order. (hhd) (Entered: 11/10/2022) | 11/09/2022 |

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 777 | Minute Entry/Order: re: Hearing on Motion for Examination Under Fed.R.Bankr.P. 2004 filed by Creditor Committee Tort Claimants - CAE Committee and Objections thereto filed by Debtors' and 3M Company (re: Doc # 639,728,736). Disposition: Hearing held. Parties request matter be continued to December Omnibus hearing. Matter continued. Hearing to be held on 12/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Notice given in court and no further notice will be issued. (hhd) (Entered: 11/10/2022) | 11/09/2022 |
| 778 | Minute Entry/Order: re: Hearing on Debtors' Motion to Extend Exclusivity Period/Deadlines under Section 1121, 1129, 1189 or 1221 with Response in Support thereto filed by Unsecured Creditor Committee - Respirators and Objections filed by Creditor Committee Tort Claimants - CAE Committee, Tracey Fox King & Walters and Bellwether Plaintiffs Adkins and Vaughn and Debtors' Reply thereto (re: Doc # 691,729,731,732,735,752). Disposition: Hearing held. Agreed Entry to be filed within 7 days. (hhd) (Entered: 11/10/2022) | 11/09/2022 |
| 780 | Minute Entry/Order: re: Hearing on Application to Employ Stretto, Inc., Information Agent as Other Professional filed by the Creditor Committee Tort Claimants - CAE Committee (re: Doc # 688). Disposition: Hearing held. Court grants Application. Court to review order. (hhd) (Entered: 11/10/2022) | 11/09/2022 |
| 781 | Minute Entry/Order: re: Hearing on Debtor's Motion for Protective Order and Limited Objections thereto filed by Creditor Committee Tort Claimants - CAE Committee and the US Trustee with Reply filed by Debtor (re: Doc # 716,744,746,764). Disposition: Hearing held. Motion is granted as modified in open court. Parties to submit order within 7 days. (hhd) (Entered: 11/10/2022) | 11/09/2022 |
| 782 | Certificate of Service re: Notice of Submission / Certificate of No Objection, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 745). (Baer, Herbert) (Entered: 11/10/2022) | 11/10/2022 |
| 783 | Minute Entry/Order: re: Continued Hearing on Debtor's Application to Employ Kirkland & Ellis LLP as Debtor's Attorney (Verified Statement attached) Objections thereto filed by the US Trustee,Creditor Committee Tort Claimants - CAE Committee and Limited Objection filed by Unsecured Creditor Committee - Respirators and Debtors' Reply thereto (re: Doc # 300,695,730,734,750). Disposition: Hearing held. Court overrules Objections and grants Debtors' Application to Employ. Counsel for Debtor to submit order within 14 days. (hhd) (Entered: 11/10/2022) | 11/10/2022 |
| 784 | Request for Transcript filed by Patricia B. Tomasco on behalf of Creditor Bellwether Plaintiffs Adkins and Vaughn (re: Doc # 778). (Tomasco, Patricia) (Entered: 11/10/2022) | 11/10/2022 |
| 785 | Request for Transcript filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 772). (Theisen, Meredith) (Entered: 11/10/2022) | 11/10/2022 |
| 786 | Order Granting Application to Employ Houlihan Lokey Capital, Inc. as Other Professional (Investment Banker) (re: Doc #610). (Attachments: (1) Exhibit 1 - Engagement Agreement) Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (cmm) (Entered: 11/10/2022) | 11/10/2022 |
| 787 | Order Granting Application to Employ Province, LLC as Financial Advisor (re: Doc #611). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (cmm) (Entered: 11/10/2022) | 11/10/2022 |
| 788 | Order Granting Application to Employ Stretto, Inc. as Other Professional (Information Agent) (re: Doc #688). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (cmm) (Entered: 11/10/2022) | 11/10/2022 |
| 789 | Order Granting Application to Employ Mattingly Burke Cohen & Biederman LLP as Creditor Comm. Aty (re: Doc #640). Attorney for Creditor Unsecured Creditor Committee - Respirators must distribute this order. (cmm) (Entered: 11/10/2022) | 11/10/2022 |
| 790 | Order Granting Application to Employ Rochelle McCullough, LLP as Creditor Comm. Aty (re: Doc #642). Attorney for Creditor Unsecured Creditor Committee - Respirators must distribute this order. (cmm) (Entered: 11/10/2022) | 11/10/2022 |
| 791 | Certificate of Service re: Order on Application to Employ, Order on Application to Employ, Order on Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 786, 787, 788). (Theisen, Meredith) (Entered: 11/10/2022) | 11/10/2022 |
| 792 | Order Granting Motion for Protective Order (re: Doc # 716). (Attachments: (1) Exhibit 1 - Declaration of Acknowledgment) Attorney for the debtor must distribute this order. (cmm) (Entered: 11/10/2022) | 11/10/2022 |
| 793 | Agreed Entry Resolving Debtors' Motion to Extend Their Exclusive Periods to File and Solicit Acceptances of a Chapter 11 Plan filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 691). (Attachments: (1) Exhibit A - Proposed Order) (Hokanson, Jeffrey) (Entered: 11/13/2022) [Approved by # 802 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3356Kdm_idV44051451Kdoc_numV802Kpdf_headerV1');] | 11/13/2022 |
| 794 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 11/9/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 784, 785). Remote electronic access to the transcript is restricted until 02/13/2023. (Bowen, James) (Entered: 11/14/2022) | 11/14/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 795 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 11/10/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 784, 785). Remote electronic access to the transcript is restricted until 02/13/2023. (Bowen, James) (Entered: 11/14/2022) | 11/14/2022 |
| 796 | Certificate of Service re: Notice of Submission / Notice of Filing 503(B)(9) Report, Reply, Notice of Submission / Agenda For Hearing on (I) Respirator Committee's Certain Retention Application, (II) CAE Committee's Certain Retention Applications, (III) Debtors' Certain Retention Application, and (IV) Certain Debtors' Motions on November 9, 2022, at 9:00 a.m (Prevailing Eastern Time), filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 763, 764, 767). (Baer, Herbert) (Entered: 11/15/2022) | 11/15/2022 |
| 797 | Certificate of Service re: Order on Application to Employ, Order on Application to Employ, filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 789, 790). (Hochbein, Curt) (Entered: 11/15/2022) | 11/15/2022 |
| 798 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 634). Attorney for Creditor Parker Waichman LLP Plaintiffs must distribute this order. (hhd) (Entered: 11/15/2022) | 11/15/2022 |
| 799 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 637). Attorney for Creditor The Lanier Law Firm Plaintiffs must distribute this order. (hhd) (Entered: 11/15/2022) | 11/15/2022 |
| 800 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 638). Attorney for Creditor The Lanier Law Firm Plaintiffs must distribute this order. (hhd) (Entered: 11/15/2022) | 11/15/2022 |
| 801 | Notice of Submission / Notice of Filing 503(B)(9) Report filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 537). (Attachments: (1) Exhibit A - 503(b)(9) Report) (Hokanson, Jeffrey) (Entered: 11/15/2022) | 11/15/2022 |
| 802 | Order Approving Agreed Entry (re: Doc # 793). The Clerk's Office will distribute this order. (cmm) (Entered: 11/16/2022) | 11/16/2022 |
| 803 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 760). Attorney for the debtor must distribute this order. (hhd) (Entered: 11/16/2022) | 11/16/2022 |
| 804 | Order Granting Application to Employ Kirkland & Ellis LLP as Debtor's Attorney (re: Doc#300). (Attachments: (1) Exhibit 1 - Engagement Letter) Attorney for the debtor must distribute this order. (cmm) (Entered: 11/17/2022) | 11/17/2022 |
| 805 | Notice of Submission of Notice of Service of Deposition Notice filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Notice of Deposition of Charles Mullin, Ph.D.) (Theisen, Meredith) (Entered: 11/17/2022) | 11/17/2022 |
| 806 | Appearance filed by James Wehner on behalf of Creditor Committee Tort Claimants - CAE Committee. (Wehner, James) (Entered: 11/17/2022) | 11/17/2022 |
| 807 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: PROVINCE LLC, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. OBJECTIONS DUE BY 4:00 PM EASTERN ON 12/01/2022 (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 11/17/2022. (cmm) (Entered: 11/17/2022) | 11/17/2022 |
| 808 | CORRECTED ENTRY: Notice of Omnibus Hearing Schedule filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. Omnibus hearings to be held on 2/8/2023 at 09:00 AM Eastern, 3/8/2023 at 09:00 AM Eastern, 4/12/2023 at 09:00 AM Eastern, and 5/10/2023 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Hokanson, Jeffrey) ORIGINAL ENTRY: Notice of Omnibus Hearing Schedule filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. Omnibus hearing to be held on 2/28/2023 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis. (Hokanson, Jeffrey) Modified on 11/18/2022. (cmm) (Entered: 11/17/2022) | 11/17/2022 |
| 809 | Motion to Extend Time to Assume or Reject filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) (Entered: 11/18/2022) [Granted by # 817 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3406Kdm_idV44068718Kdoc_numV817Kpdf_headerV1');] | 11/18/2022 |
| 810 | CORRECTED ENTRY: Motion to Assume Unexpired Lease with Colfin 2017-8 Industrial Owner, LLC filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit `) (Hokanson, Jeffrey) ORIGINAL ENTRY: Motion to Assume Unexpired Lease with Newark Lease filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit `) (Hokanson, Jeffrey) Modified on 11/21/2022. (cmm) (Entered: 11/18/2022) | 11/18/2022 |
| 811 | Notice of Hearing with Certificate of Service re: Motion to Assume/Reject, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 810). Objections due by 4:00 PM Eastern on 12/7/2022. Hearing to be held on 12/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis, and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 IF AN OBJECTION IS TIMELY FILED. (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 11/18/2022. (cmm) (Entered: 11/18/2022) | 11/18/2022 |
| 812 | Application to Employ Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. as Other Professional (Verified Statement attached), filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Frederick Declaration (3) Exhibit C - Freeman Declaration) (Theisen, Meredith) (Entered: 11/18/2022) | 11/18/2022 |

| # | Docket Text | Date Filed |
|---|---|---|
| 813 | Certificate of Service re: Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 812). (Theisen, Meredith) (Entered: 11/18/2022) | 11/18/2022 |
| 814 | Notice of Hearing with Certificate of Service re: Application to Employ, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 812). Objections due by 4:00 PM Eastern on 12/7/2022. (Hokanson, Jeffry) Hearing to be held on 12/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 IF AN OBJECTION IS TIMELY FILED. (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 11/21/2022. (cmm) (Entered: 11/18/2022) | 11/18/2022 |
| 815 | BNC Certificate of Service - ORDER (re: Doc # 802). No. of Notices: 11 Notice Date 11/18/2022. (Admin) (Entered: 11/19/2022) | 11/18/2022 |
| 816 | CORRECTED ENTRY: Monthly Staffing and Compensation Report of AP Services, LLC filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. Objections due by 4:00 PM Eastern on 12/05/2022. (Hokanson, Jeffry) ORIGINAL ENTRY: Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Aearo Technologies LLC as Other Professional (Fee: $1,973,883.70, Expense: $26,720.12) filed by Attorney Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Hokanson, Jeffry) Modified on 11/21/2022. (cmm) (Entered: 11/21/2022) | 11/21/2022 |
| 817 | Order Granting Motion to Extend Time to Assume or Reject (re: Doc # 809). Time to assume or reject extended to 5/22/2023. Attorney for the debtor must distribute this order. (cmm) (Entered: 11/21/2022) | 11/21/2022 |
| 818 | Chapter 11 Report of Operations for October 2022 filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit Global Notes) (Hokanson, Jeffry) (Entered: 11/21/2022) | 11/21/2022 |
| 819 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: OTTERBOURG P.C., filed by Melanie Louise Cyganowski, Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 11/22/2022. (cmm) (Entered: 11/21/2022) | 11/21/2022 |
| 820 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: CAPLIN & DRYSDALE, CHARTERED, filed by Kevin C Maclay, Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 11/22/2022. (cmm) (Entered: 11/21/2022) | 11/21/2022 |
| 821 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: BROWN RUDNICK LLP, filed by David Molton, Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 11/22/2022. (cmm) (Entered: 11/21/2022) | 11/21/2022 |
| 822 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: RUBIN & LEVIN, P.C., filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 11/22/2022. (cmm) (Entered: 11/21/2022) | 11/21/2022 |
| 823 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: KTBS LAW LLP, filed by Robert J Pfister, Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 11/22/2022. (cmm) (Entered: 11/21/2022) | 11/21/2022 |
| 824 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: PROVINCE LLC, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 11/22/2022. (cmm) (Entered: 11/21/2022) | 11/21/2022 |
| 825 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: HOULIHAN LOKEY CAPITAL, INC., filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Theisen, Meredith) CORRECTION: Missing docket text added in all capitals. Modified on 11/22/2022. (cmm) (Entered: 11/21/2022) | 11/21/2022 |
| 826 | Certificate of Service re: Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 819, 820, 821, 822, 823, 824, 825). (Theisen, Meredith) (Entered: 11/21/2022) | 11/21/2022 |
| 827 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: ICE MILLER LLP, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 672). (Attachments: (1) Exhibit A - Ice Miller Monthly Invoice - October 1-31, 2022) (Hokanson, Jeffry) CORRECTION: Missing docket text added in all capitals. Modified on 11/22/2022. (cmm) (Entered: 11/22/2022) | 11/22/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 828 | Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for KTBS Law LLP as Creditor Comm. Aty (Fee: $980,896.50, Expense: $7,578.91) filed by Attorneys Robert J Pfister on behalf of Meredith R. Theisen on behalf of, Other Professional KTBS Law LLP. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Summary of Itemized Time Records (3) Exhibit C - Project Category Itemization (4) Exhibit D - Proposed Staffing Plan (5) Exhibit E - Itemized Time Records) (Theisen, Meredith) (Entered: 11/22/2022) | 11/22/2022 |
| 829 | Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Otterbourg P.C. as Creditor Comm. Aty (Fee: $1,156,348.00, Expense: $5,668.38) filed by Attorneys Melanie Louise Cyganowski on behalf of Meredith R. Theisen on behalf of, Other Professional Otterbourg P.C. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Summary of Itemized Time Records (3) Exhibit C - Project Category Itemization (4) Exhibit D - Budget vs. Actual (5) Exhibit E - Itemized Time Records) (Theisen, Meredith) (Entered: 11/22/2022) | 11/22/2022 |
| 830 | Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Caplin & Drysdale, Chartered as Creditor Comm. Aty (Fee: $615,690.50, Expense: $4,802.74) filed by Attorneys Kevin C Maclay on behalf of Meredith R. Theisen on behalf of, Other Professional Caplin & Drysdale, Chartered. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Summary of Itemized Time Records (3) Exhibit C - Project Category Itemization (4) Exhibit D - Itemized Time Records) (Theisen, Meredith) (Entered: 11/22/2022) [Amended by # 841 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3494Kdm_idV44074686Kdoc_numV841Kpdf_headerV1');] | 11/22/2022 |
| 831 | Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Brown Rudnick LLP as Creditor Comm. Aty (Fee: $1,268,346.00, Expense: $21,543.73) filed by Attorneys David Molton on behalf of Meredith R. Theisen on behalf of, Other Professional Brown Rudnick LLP. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Summary of Itemized Time Records (3) Exhibit C - Project Category Itemization (4) Exhibit D - Budget vs. Actual (5) Exhibit E - Itemized Time Records) (Theisen, Meredith) (Entered: 11/22/2022) [Amended by # 856 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3554Kdm_idV44078154Kdoc_numV856Kpdf_headerV1');] | 11/22/2022 |
| 832 | Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Rubin & Levin, P.C. as Creditor Comm. Aty (Fee: $102,427.50, Expense: $2,170.02) filed by Attorney Meredith R. Theisen on behalf of Other Professional Rubin & Levin, P.C. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Summary of Itemized Time Records (3) Exhibit C - Project Category Itemization (4) Exhibit D - Itemized Time Records) (Theisen, Meredith) (Entered: 11/22/2022) | 11/22/2022 |
| 833 | Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Province, LLC as Financial Advisor (Fee: $437,242.50, Expense: $523.33) filed by Attorney Meredith R. Theisen on behalf of Other Professional Province, LLC. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Summary of Itemized Time Records (3) Exhibit C - Project Category Itemization (4) Exhibit D - Itemized Time Records) (Theisen, Meredith) (Entered: 11/22/2022) | 11/22/2022 |
| 834 | Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Houlihan Lokey Capital, Inc. as Other Professional (Fee: $400,000.00, Expense: $2,008.90) filed by Attorney Meredith R. Theisen on behalf of Other Professional Houlihan Lokey Capital, Inc. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Summary of Itemized Time Records (3) Exhibit C - Itemized Time Records) (Theisen, Meredith) (Entered: 11/22/2022) | 11/22/2022 |
| 835 | Notice of Hearing with Certificate of Service re: Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 828, 829, 830, 831, 832, 833, 834). Hearing to be held on 12/20/2022 at 09:00 AM Eastern via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 if an objection is timely filed. Objections due by 4:00 PM Eastern on 12/13/2022. (Theisen, Meredith) (Entered: 11/22/2022) | 11/22/2022 |
| 836 | Certificate of Service re: Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 828, 829, 830, 831, 832, 833, 834). (Theisen, Meredith) (Entered: 11/22/2022) | 11/22/2022 |
| 837 | Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Ice Miller LLP as Debtor's Attorney (Fee: $453,132.50, Expense: $11,682.96) filed by Attorney Jeffrey A Hokanson on behalf of Other Professional Ice Miller LLP. (Attachments: (1) Exhibit A - Hokanson Declaration (2) Exhibit B - Customary and Comparable Billing Disclosures (3) Exhibit C - Summary of Timekeepers Fees Hours (4) Exhibit D - Summary of Expenses (5) Exhibit E - Compensation by Project Category (6) Exhibit F - Ice Miller Invoices) (Hokanson, Jeffrey) (Entered: 11/22/2022) | 11/22/2022 |
| 838 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: ROCHELLE MCCULLOUGH, LLP, filed by Shannon Thomas, Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Hochbein, Curt) CORRECTION: Missing docket text added in all capitals. Modified on 11/23/2022. (cmm) (Entered: 11/22/2022) | 11/22/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 839 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: ROCHELLE MCCULLOUGH, LLP, filed by Shannon Thomas, Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Hochbein, Curt) CORRECTION: Missing docket text added in all capitals. Modified on 11/23/2022. (cmm) (Entered: 11/22/2022) | 11/22/2022 |
| 840 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: MATTINGLY BURKE COHEN & BIEDERMAN LLP, filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 541). (Attachments: (1) Exhibit A - Monthly Invoice) (Hochbein, Curt) CORRECTION: Missing docket text added in all capitals. Modified on 11/23/2022. (cmm) (Entered: 11/22/2022) | 11/22/2022 |
| 841 | Amended Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Caplin & Drysdale, Chartered as Creditor Comm. Aty (Fee: $615,690.50, Expense: $4,802.74) filed by Attorneys Kevin C Maclay on behalf of Meredith R. Theisen on behalf of, Other Professional Caplin & Drysdale, Chartered (re: Doc # 830). (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Summary of Itemized Time Records (3) Exhibit C - Project Category Itemization (4) Exhibit D - Itemized Time Records) (Theisen, Meredith) (Entered: 11/22/2022) | 11/22/2022 |
| 842 | Certificate of Service re: Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 838, 839, 840). (Hochbein, Curt) (Entered: 11/23/2022) | 11/23/2022 |
| 843 | Notice of Hearing with Certificate of Service re: Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 837). Hearing to be held on 12/20/2022 at 09:00 AM Eastern via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 if an objection is timely filed. Objections due by 4:00 PM Eastern on 12/14/2022. (Hokanson, Jeffrey) (Entered: 11/23/2022) | 11/23/2022 |
| 844 | Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Mattingly Burke Cohen & Biederman LLP as Creditor Comm. Aty (Fee: $11,137.50, Expense: $27.04) filed by Attorney Curt Derek Hochbein on behalf of Other Professional Mattingly Burke Cohen & Biederman LLP, Creditor Unsecured Creditor Committee - Respirators. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Summary of Itemized Time Records (3) Exhibit C - Project Category Itemization (4) Exhibit D - Itemized Time Records) (Hochbein, Curt) (Entered: 11/23/2022) | 11/23/2022 |
| 845 | Deficiency Notice Issued re: Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 (re: Doc # 831). Deficiency to be cured by 12/7/2022. (cmm) (Entered: 11/23/2022) | 11/23/2022 |
| 846 | Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Rochelle McCullough, LLP as Creditor Comm. Aty (Fee: $299,859.50, Expense: $1,401.18) filed by Attorney Curt Derek Hochbein on behalf of Other Professional Rochelle McCullough, LLP. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Summary of Itemized Time Records (3) Exhibit C - Project Category Itemization (4) Exhibit D - Itemized Time Records) (Hochbein, Curt) (Entered: 11/23/2022) | 11/23/2022 |
| 847 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by David C. Frederick on behalf of Creditor Official Committee of Unsecured Creditors for Tort. (Frederick, David) (Entered: 11/23/2022) [Granted by # 860 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3572Kdm_idV44084303Kdoc_numV860Kpdf_headerV1');] | 11/23/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33545685. Fee amount 100.00 (re: Doc # 847). (U.S. Treasury) (Entered: 11/23/2022) |  |
| 848 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Joshua D Branson on behalf of Creditor Official Committee of Unsecured Creditors for Tort. (Branson, Joshua) (Entered: 11/23/2022) [Granted by # 861 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3574Kdm_idV44084320Kdoc_numV861Kpdf_headerV1');] | 11/23/2022 |
|  | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33545721. Fee amount 100.00 (re: Doc # 848). (U.S. Treasury) (Entered: 11/23/2022) |  |
| 849 | Certificate of Service re: Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 844, 846). (Hochbein, Curt) (Entered: 11/23/2022) | 11/23/2022 |
| 850 | Notice of Hearing with Certificate of Service re: Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, filed by Curt Derek Hochbein on behalf of Creditor Unsecured Creditor Committee - Respirators (re: Doc # 844, 846). Hearing to be held on 12/20/2022 at 09:00 AM Eastern via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 if an objection is timely filed. Objections due by 4:00 PM Eastern on 12/14/2022. (Hochbein, Curt) (Entered: 11/23/2022) | 11/23/2022 |
| 851 | Certificate of Service re: Notice of Submission / Notice of Filing 503(B)(9) Report, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 801). (Baer, Herbert) (Entered: 11/23/2022) | 11/23/2022 |
| 852 | Certificate of Service re: Motion to Extend Time to Assume or Reject, Motion to Assume/Reject, Hearing Notice, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 809, 810, 811). (Baer, Herbert) (Entered: 11/23/2022) | 11/23/2022 |

A.84

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 853 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: MCDONALD HOPKINS LLC, filed by Jeffrey A Hokanson on behalf of Other Professional McDonald Hopkins LLC (re: Doc # 680). (Attachments: (1) Exhibit A - McDonald Hopkins' October 2022 Invoice) (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 11/28/2022. (cmm) (Entered: 11/23/2022) | 11/23/2022 |
| 854 | Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for McDonald Hopkins LLC as Special Counsel (Fee: $363,751.50, Expense: $6,396.79) filed by Attorney Jeffrey A Hokanson on behalf of Other Professional McDonald Hopkins LLC. (Attachments: (1) Exhibit A - Agay Declaration (2) Exhibit B - Retention Order (3) Exhibit C - Engagement Letter (4) Exhibit D - Budget and Staffing Plan (5) Exhibit E - Voluntary Rate Disclosure (6) Exhibit F - Summary of Fees and Hours (7) Exhibit G - Summary of Expenses (8) Exhibit H - Fees and Expenses by Matter (9) Exhibit I - Invoices) (Hokanson, Jeffrey) (Entered: 11/23/2022) | 11/23/2022 |
| 855 | Notice of Hearing with Certificate of Service re: Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 854). Hearing to be held on 12/20/2022 at 09:00 AM Eastern via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 if an objection is timely filed. Objections due by 4:00 PM Eastern on 12/14/2022. (Hokanson, Jeffrey) (Entered: 11/23/2022) | 11/23/2022 |
| 856 | Amended Application for Interim Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330 for Brown Rudnick LLP as Special Counsel (Fee: $1,268,346.00, Expense: $21,543.73) filed by Attorneys David Molton on behalf of Meredith R. Theisen on behalf of, Other Professional Brown Rudnick LLP (re: Doc # 831). (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Summary of Itemized Time Records (3) Exhibit C - Project Category Itemization (4) Exhibit D - Budget vs. Actual (5) Exhibit E - Itemized Time Records) (Theisen, Meredith) (Entered: 11/23/2022) | 11/23/2022 |
| 857 | Notice of Hearing with Certificate of Service re: Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, Application for Compensation and/or Reimbursement of Expenses Pursuant to Sec. 330, filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 841, 856). Hearing to be held on 12/20/2022 at 09:00 AM Eastern via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 if an objection is timely filed. Objections due by 4:00 PM Eastern on 12/14/2022. (Theisen, Meredith) (Entered: 11/23/2022) | 11/23/2022 |
| 858 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 RE: KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 804). (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) CORRECTION: Missing docket text added in all capitals. Modified on 11/28/2022. (cmm) (Entered: 11/25/2022) | 11/25/2022 |
| 859 | Appearance filed by Wendy D Brewer on behalf of Interested Party Wagstaff & Cartmell, LLP. (Brewer, Wendy) (Entered: 11/28/2022) | 11/28/2022 |
| 860 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 847). Attorney for Creditor Official Committee of Unsecured Creditors for Tort must distribute this order. (hhd) (Entered: 11/28/2022) | 11/28/2022 |
| 861 | Order Granting Motion to Appear Pro Hac Vice (re: Doc # 848). Attorney for Creditor Official Committee of Unsecured Creditors for Tort must distribute this order. (hhd) (Entered: 11/28/2022) | 11/28/2022 |
| 862 | Notice of Submission of Reservation of Rights of the Official CAE Committee in Response to the Debtors' Application for an Order Authorizing Retention and Employment of Bates White, LLC as Claims Valuation Consultants filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 304). (Theisen, Meredith) (Entered: 11/28/2022) | 11/28/2022 |
| 863 | Supplemental Declaration re: Application to Employ filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 568). (Theisen, Meredith) (Entered: 11/28/2022) | 11/28/2022 |
| 864 | Application to Employ Clement & Murphy PLLC as Special Counsel (Verified Statement attached), filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A - Proposed Order (2) Exhibit B - Clement Declaration (3) Exhibit C - Castellano Declaration) (Hokanson, Jeffrey) (Entered: 11/28/2022) | 11/28/2022 |
| 865 | Notice of Hearing with Certificate of Service re: Application to Employ, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 864). Hearing to be held on 1/11/2023 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397 if an objection is timely filed. Objections due by 4:00 PM Eastern on 01/04/2023. (Hokanson, Jeffrey) (Entered: 11/29/2022) | 11/29/2022 |
| 866 | Amended Order Granting Motion to Continue Hearing on Debtors' Application for Retention and Employment of Bates White, LLC as Claims Valuation Consultants as of the Petition Date (re: Doc # 749). Hearing converted from live in person hearing to ZOOM ONLY. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. The Clerk's Office will distribute this order. (hhd) (Entered: 11/29/2022) | 11/29/2022 |
| 867 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 for AP Services, LLC filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 678). (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C (4) Exhibit D) (Hokanson, Jeffrey) (Entered: 11/30/2022) | 11/30/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 868 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Derek Reinbold on behalf of Creditor Official Committee of Unsecured Creditors for Tort. (Reinbold, Derek) (Entered: 12/01/2022) [Corrected by # 870 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3620Kdm_idV44099717Kdoc_numV870Kpdf_headerV1');] | 12/01/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33561547. Fee amount 100.00 (re: Doc # 868). (U.S. Treasury) (Entered: 12/01/2022) | 12/01/2022 |
| 869 | Motion to Appear Pro Hac Vice with Affidavit in Support filed by Eden Mirelle Bernstein on behalf of Creditor Official Committee of Unsecured Creditors for Tort. (Bernstein, Eden) (Entered: 12/01/2022) [Corrected by # 871 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3625Kdm_idV44099729Kdoc_numV871Kpdf_headerV1');] | 12/01/2022 |
| | Receipt of Motion to Appear Pro Hac Vice( 22-02890-JJG-11) [motion,mprohac] (100.00) Filing Fee. Receipt number A33561563. Fee amount 100.00 (re: Doc # 869). (U.S. Treasury) (Entered: 12/01/2022) | 12/01/2022 |
| 870 | Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Derek Reinbold on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 868). (Reinbold, Derek) (Entered: 12/01/2022) [Granted by # 888 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3677Kdm_idV44115050Kdoc_numV888Kpdf_headerV1');] | 12/01/2022 |
| 871 | Corrected Motion to Appear Pro Hac Vice with Affidavit in Support filed by Eden Mirelle Bernstein on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 869). (Bernstein, Eden) (Entered: 12/01/2022) [Granted by # 889 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3679Kdm_idV44115053Kdoc_numV889Kpdf_headerV1');] | 12/01/2022 |
| 872 | BNC Certificate of Service - ORDER (re: Doc # 866). No. of Notices: 14 Notice Date 12/01/2022. (Admin) (Entered: 12/02/2022) | 12/01/2022 |
| 873 | Certificate of Service re: Hearing Notice, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 865). (Baer, Herbert) (Entered: 12/02/2022) | 12/02/2022 |
| 874 | Notice of Submission / Notice of Filing 503(B)(9) Report filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) (Entered: 12/02/2022) | 12/02/2022 |
| 875 | Certificate of Service re: Order on Motion to Extend Time to Assume or Reject, Chapter 11 Report of Operations, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 817, 818). (Baer, Herbert) (Entered: 12/02/2022) | 12/02/2022 |
| 876 | Certificate of Service re: Application to Employ, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 864). (Baer, Herbert) (Entered: 12/02/2022) | 12/02/2022 |
| 877 | Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to Local Rule S.D.Ind. B-2014-1 for Kirkland & Ellis LLP filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 804). (Attachments: (1) Exhibit 1) (Hokanson, Jeffrey) (Entered: 12/02/2022) | 12/02/2022 |
| 878 | Minute Entry/Order: re: Continued VIDEO Hearing on Debtor's Amended Application to Employ Bates White, LLC as Other Professional (Verified Statement attached) (re: Doc # 304). Disposition: Video Hearing held. Court approves Application as modified by proposed order. Order to be entered. (hhd) (Entered: 12/05/2022) | 12/05/2022 |
| 879 | Request for Transcript filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 657). (Hokanson, Jeffrey) (Entered: 12/05/2022) | 12/05/2022 |
| 880 | Order Granting Application to Employ Bates White, LLC as Other Professional (Claims Valuation Consultants) (re: Doc #304). (Attachments: (1) Exhibit 1 - Engagement Letter) Attorney for the debtor must distribute this order. (cmm) (Entered: 12/05/2022) | 12/05/2022 |
| 881 | Certificate of Service re: Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to B-2014-1, filed by Noticing Agent on behalf of Debtor Aearo Technologies LLC (re: Doc # 867). (Baer, Herbert) (Entered: 12/06/2022) | 12/06/2022 |
| 882 | Notice of Submission / Notice of Second Amendment to the List of Ordinary Course Professionals filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 307, 546). (Attachments: (1) Exhibit A (2) Exhibit B) (Hokanson, Jeffrey) (Entered: 12/06/2022) | 12/06/2022 |
| 883 | Declaration re: Order on Motion for Authority filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 546). (Hokanson, Jeffrey) (Entered: 12/06/2022) | 12/06/2022 |
| 884 | CORRECTED ENTRY: Debtors' Motion for Entry of an Order (I) Amending the Order Authorizing Participation in the MDL Mediation, (II) Appointing the Honorable Christopher S. Sontchi, Ret. as Replacement Co-Mediator in the MDL Mediation, (III) Authorizing Payment of Mediation Fees and Costs, and (IV) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 477) (Attachments: (1) Exhibit A (2) Exhibit B) (Hokanson, Jeffrey) ORIGINAL ENTRY: Motion for Relief from Judgment/Order Pursuant to Fed.R.Bankr.P. 9024 filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 477). (Attachments: (1) Exhibit A (2) Exhibit B) (Hokanson, Jeffrey) Modified on 12/7/2022. (cmm) (Entered: 12/06/2022) | 12/06/2022 |

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

| # | Docket Text | Date Filed |
|---|---|---|
| 885 | CORRECTED ENTRY: Debtors' Motion for (I) An Expedited Hearing on the Replacement Co-Mediator Motion and (II) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 884) (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) ORIGINAL ENTRY: Motion for Expedited Hearing and/or Shortened Notice Time on Motion for Relief from Judgment/Order Pursuant to Fed.R.Bankr.P. 9024, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 884). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 12/06/2022) Modified on 12/7/2022. (cmm) (Entered: 12/06/2022) [Granted by # 891 CMECF.widget.DocLink('documentKcaseidV741797Kde_seq_numV3687Kdm_idV44116737Kdoc_numV891Kpdf_headerV1');] | 12/06/2022 |
| 886 | Supplemental Motion for Authority / Supplement to the Debtors Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis As Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B) (Hokanson, Jeffrey) (Entered: 12/06/2022) | 12/06/2022 |
| 887 | Motion for Authority / Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Filing Proofs of Claim, (II) Approving (A) Claim Forms and Procedures for Filing Proofs of Claim, (B) Form and Manner of Notice of Bar Dates, and (C) Confidentiality Procedures; and (III) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC. (Attachments: (1) Exhibit A (2) Exhibit B (3) Exhibit C (4) Exhibit D (5) Exhibit E (6) Exhibit F) (Hokanson, Jeffrey) (Entered: 12/06/2022) | 12/06/2022 |
| 888 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 870). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (hhd) (Entered: 12/07/2022) | 12/07/2022 |
| 889 | Order Granting Corrected Motion to Appear Pro Hac Vice (re: Doc # 871). Attorney for Creditor Committee Tort Claimants - CAE Committee must distribute this order. (hhd) (Entered: 12/07/2022) | 12/07/2022 |
| 890 | Resignation of James M. Carr as Co-Mediator (re: Doc # 477). (nar) (Entered: 12/07/2022) | 12/07/2022 |
| 891 | Order Granting Motion for Expedited Hearing and Shortened Notice Time (re: Doc #885). Hearing to be held on 12/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. Objections due by 4:00 PM Eastern on 12/12/2022. Replies to objections due by 4:00 PM Eastern on 12/13/2022. Attorney for the debtor must distribute this order. (cmm) (Entered: 12/07/2022) | 12/07/2022 |
| 892 | Official Court Notice Setting Status Conference on Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Filing Proofs of Claim, (II) Approving (A) Claim Forms and Procedures for Filing Proofs of Claim, (B) Form and Manner of Notice of Bar Dates, and (C) Confidentiality Procedures; and (III) Granting Related Relief (re: Doc # 887). Status Conference to be held on 12/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (hhd) (Entered: 12/07/2022) | 12/07/2022 |
| 893 | Notice of Submission of Reservation of Rights of the CAE Committee in Response to the Debtors' Motion to Approve a Stipulation Lifting the Automatic Stay as to Three Minnesota State Court Plaintiffs filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 737). (Theisen, Meredith) (Entered: 12/07/2022) | 12/07/2022 |
| 894 | Notice of Hearing with Certificate of Service re: Motion for Authority / Debtors' Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis as Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief, Supplemental Motion for Authority / Supplement to the Debtors Motion for Entry of an Order (I) Appointing the Honorable James M. Carr and Randi S. Ellis As Co-Mediators to Mediate the Chapter 11 Plan and Confirmation Related Matters, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief, filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 466, 886). Objections due by 4:00 PM Eastern on 12/7/2022. Hearing to be held on 12/14/2022 at 09:00 AM Eastern in Rm 311 U.S. Courthouse, Indianapolis and via Zoom. Parties that wish to listen but not actively participate may do so by phone at 551-285-1373 or 646-828-7666, Meeting ID 160 2312 6397. (Hokanson, Jeffrey) (Entered: 12/07/2022) | 12/07/2022 |
| 895 | Notice of Submission / Certificate of No Objection with Respect to Debtors' Motion for Entry of an Order (A) Authorizing the Debtors to Assume a Certain Unexpired Lease of Nonresidential Real Property and (B) Granting Related Relief filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 810). (Attachments: (1) Exhibit A) (Hokanson, Jeffrey) (Entered: 12/07/2022) | 12/07/2022 |
| 896 | Notice of Submission / Certificate of No Objection with Respect to Debtors Motion to Approve a Stipulation Lifting the Automatic Stay to Permit Three Minnesota State Court Plaintiffs to Dismiss Their Cases Against the Debtors with Prejudice filed by Jeffrey A Hokanson on behalf of Debtor Aearo Technologies LLC (re: Doc # 737, 739). (Hokanson, Jeffrey) (Entered: 12/07/2022) | 12/07/2022 |
| 897 | Notice of Submission of Certificate of No Objection with Respect to Application of the Official Committee of Unsecured Creditors for Tort Claimants - Related to Use of Combat Arms Version 2 Earplugs to Retain and Employ Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. as Special Appellate Counsel Effective as of October 25, 2022 filed by Meredith R. Theisen on behalf of Creditor Committee Tort Claimants - CAE Committee (re: Doc # 812). (Theisen, Meredith) (Entered: 12/08/2022) | 12/08/2022 |
| 898 | Transcript filed by J & J Court Transcribers, Inc. regarding trial/hearing held 10/12/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office or purchased from the transcriber: J & J Court Transcribers, Inc., 609-586-2311. Notice issued re: deadlines (re: Doc # 879). Remote electronic access to the transcript is restricted until 03/08/2023. (Bowen, James) (Entered: 12/08/2022) | 12/08/2022 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AEARO TECHNOLOGIES LLC, *et al.*,[1] | ) | Case No. 22-02890-JJG-11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| 3M OCCUPATIONAL SAFETY LLC, AEARO HOLDING LLC, AEARO INTERMEDIATE LLC, AEARO LLC, AND AEARO TECHNOLOGIES LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | Adv. Pro. No. 22-50059 |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT and JOHN AND JANE DOES 1-1000, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief*, entered by the Court for each consolidated Debtor [Docket Nos. 37–42]. The location of the Debtors' service address for the purposes of these chapter 11 cases is 7911 Zionsville Road, Indianapolis, Indiana 46268.

## STIPULATED FACTS REGARDING THE MDL
## AND MINNESOTA LITIGATION

Debtors 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC, (collectively, the "Debtors" or the "Plaintiffs") and objectors (a) Bailey Glasser and Pulaski Khernkher Plaintiffs, (b) claimants represented by Paul LLP, (c) claimants represented by Keller Postman LLC, and (d) claimants represented by Aylstock, Witkin, Kreis & Overholtz, PLLC; Seeger Weiss LLP; Quinn Emanuel Urquhart & Sullivan, LLP; Clark, Love & Hutson, PLLC; Cory Watson, P.C.; Heninger Garrison Davis, LLC; The Gori Law Firm, P.C.; Tracey Fox King & Walters and The Johnson Law Group; and Weitz & Luxenberg, PC (the "Objectors," and together with the Debtors, the "Parties") submit the below stipulated facts regarding the Combat Arms MDL and related litigation in Minnesota. These facts are stipulated only for purposes of the August 15, 2022 hearing on the *Debtors' Motion for Declaratory and Injunctive Relief (I) Confirming that the Automatic Stay Applies to Certain Actions Against a Non-Debtor and (II) Preliminarily Enjoining Certain Actions Against a Non-Debtor* (Dkt. No. 110).[2] Quotes from orders, transcripts, pleadings, correspondence, and other submissions below are not being offered for the truth. Further, the parties reserve all rights to propose additional stipulations of fact

---

[2]   This Proposed Stipulation of Facts is being submitted without underlying exhibits. The parties will submit underlying exhibits to the Court upon request.

and/or seek to admit additional facts and evidence from the Combat Arms MDL proceedings and related litigation in Minnesota.

1.      3M Company ("3M") and Debtors Aearo Technologies LLC, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC and Aearo LLC (together with 3M, the "Defendants") are co-defendants in a consolidated multi-district litigation proceeding (the "MDL") in the United States District Court for the Northern District of Florida (the "MDL court") in Case No. 3:19-MD-2885. The cases were consolidated pursuant to an April 3, 2019 order of the United States Judicial Panel on Multidistrict Litigation.

2.      On May 20, 2019, the MDL Court hosted a *Touhy* Presentation by AUSA Leah Butler, AUSA Kathryn Drey, and Maj. Collin Evans. At that presentation, Major Evans stated the following: "But what I want you to understand is the approval doesn't mean you're going to get it very quickly." (Tr. at 23:24-24:1.)

3.      On August 26, 2019, the Defendants signed a tolling agreement for Combat Arms Earplug claims.  The tolling agreement expired on December 20, 2021. Several hundred individual firms signed onto the tolling agreement before the October 4, 2019 initial date.

4.      On August 26, 2019, the MDL Court held its Fourth Case Management Conference. The MDL Court announced that "the parties have entered into a tolling agreement" and that "Plaintiffs are continuing to submit their *Touhy* requests to the

DoD. . . hopefully are on track for identifying and getting our hands around the census of this litigation as quickly as possible, but that is going to take some time." (Tr. at 6:7-12.)

5.      On September 20, 2019, MDL plaintiffs filed the Master Long Form Complaint and Jury Trial Demand ("Master Complaint"). The MDL plaintiffs allege in the Master Complaint that "Defendants are jointly and severally liable to Plaintiffs for their individual and collective tortious acts." (¶ 206.)

6.      On October 25, 2019, the MDL Court held its Sixth Case Management Conference. The Court stated that it was appointing retired Judge David Herndon as a "special master helping us all wade through the military DoD document production issues that we have and also helping us facilitate the ultimate resolution of the affirmative defenses of 3M." (Tr. at 3:15-18.)

7.      On November 25, 2019, the MDL court issued Case Management Order No. 6.  Case Management Order No. 6 states the following:

> The initial census deadlines in Pretrial Order No. 18, ECF No. 775—including the deadlines for submission of Initial Census Questionnaire and for production of Initial Census Documents, as well as the related deficiency process deadlines—are hereby suspended, until further order. (P. at 1.)

8.      On February 13, 2020, the MDL court issued Pretrial Order No. 27 (Suspension of Initial Census Deadlines). The Order states that "all initial census deadlines are **SUSPENDED**, until further order. This includes initial census

deadlines for cases on the 3M MDL docket, as well as cases on the 3M Administrative Docket." (P. at 1.)

9.     On July 28, 2021, the MDL court issued Pretrial Order No. 81. The Order states that "the Court hereby reinstates the Initial Census Question requirement set forth in Pretrial Order No. 18 for all claimants who have not yet completed census forms.[3]" (P. at 1.).

10.    On July 28, 2022, the MDL court issued an order regarding DD214 and census form deadlines (Pretrial Order No. 81). The Order states that "[a]ny plaintiff currently subject to a DD214 or census form deadline whose time for compliance has not already expired is relieved of the obligation to submit the applicable materials at this time." (P. at 1.).

11.    On July 16, 2019, the MDL Court entered an order, Privacy Act Order No. 1. Plaintiffs requested "an order authorizing complete disclosure of certain confidential information in the custody, control, or possession of the Department of Defense, Defense Logistics Agency, and the United States Army, Navy, Marine Corps, Air Force, and/or Coast Guard (the "United States' Agencies") for use in the above-captioned litigation." This request was submitted on behalf of approximately 350 MDL claimants. The Court stated that disclosure of this information is governed

---

[3]    As of July 14, 2021, there were approximately 154,538 claimants in the MDL who have not completed census forms.

by Privacy Act, 5 U.S.C. § 552a, which, *inter alia*, allows federal government agencies to release records maintained on individuals "pursuant to the order of a court of competent jurisdiction." *See* 5 U.S.C. § 552a(b)(11.) The MDL Court ordered the United States' Agencies to "produce all records maintained on the" MDL claimants that were the subject of Plaintiffs' request "that are responsive to Plaintiffs' accompanying *Touhy* request . . . ."

12.   The MDL Court entered a series of similar Privacy Act Orders. These requests were submitted on behalf of the following approximate number of MDL claimants per Privacy Act Order:

- 33,000 (Privacy Act Order No. 2)
- 12,000 (Privacy Act Order No. 3)
- 13,000 (Privacy Act Order No. 4)
- 38,000 (Privacy Act Order No. 5)
- 6,000 (Privacy Act Order No. 6)
- 6,000 (Privacy Act Order No. 7)
- 6,000 (Privacy Act Order No. 8)
- 100,000 (Privacy Act Order No. 9)
- 10,000 (Privacy Act Order No. 10)
- 18 (Privacy Act Order No. 11)
- 7,500 (Privacy Act Order No. 12)
- 3,700 (Privacy Act Order No. 13)
- 25 (Privacy Act Order No. 14)
- 4,000 (Privacy Act Order No. 15)
- 7,000 (Privacy Act Order No. 16)
- 6,000 (Privacy Act Order No. 17)
- 4,000 (Privacy Act Order No. 18)
- 7,800 (Privacy Act Order No. 19)
- 6,800 (Privacy Act Order No. 20)
- 8,000 (Privacy Act Order No. 21)

- 10,000 (Privacy Act Order No. 22)
- 5,000 (Privacy Act Order No. 23)
- 2,500 (Privacy Act Order No. 24)
- 6,000 (Privacy Act Order No. 25)
- 3,500 (Privacy Act Order No. 26)
- 3,500 (Privacy Act Order No. 27)
- 6,000 (Privacy Act Order No. 28)
- 2,500 (Privacy Act Order No. 29)
- 4,500 (Privacy Act Order No. 30)
- 3,500 (Privacy Act Order No. 31)
- 3,000 (Privacy Act Order No. 32)
- 3,500 (Privacy Act Order No. 33)
- 4,000 (Privacy Act Order No. 34)
- 3,000 (Privacy Act Order No. 35)
- 5,000 (Privacy Act Order No. 36)
- 4,000 (Privacy Act Order No. 37)
- 158 (Privacy Act Order No. 38)
- 3,500 (Privacy Act Order No. 39)
- 3,500 (Privacy Act Order No. 40)
- 3,500 (Privacy Act Order No. 41)
- 8,500 (Privacy Act Order No. 42)
- 3,500 (Privacy Act Order No. 43)
- 1,000 (Privacy Act Order No. 44)

13.    On December 3, 2019, plaintiff Christopher Graves filed a complaint against Debtors and 3M in Minnesota state court. The complaint contains the following allegations:

> This is a failure to warn product liability action related to an earplug manufactured and sold by Defendants. Plaintiff used Defendants' dual-ended Combat Arms Earplugs - Version 2 and, as a result of Defendants' failure to warn, now suffers from hearing loss and tinnitus. Defendants knew the earplugs needed to be inserted in a particular manner in order to have any effectiveness. But the Defendants failed to warn potential purchasers of the danger of failing to do so. (¶ 1.)

14.    The parties to the MDL proceeding drafted a tolling agreement addendum, which was executed by Defendants on October 15, 2019 and Plaintiffs' Leadership on October 22, 2019.  This addendum allowed several deadlines in the tolling agreement to be changed only with Court approval.

15.    On October 22, 2019, the MDL court issued Pretrial Order No. 18 (Initial Census Requirements for Filed Cases).  The MDL court's order states that "Plaintiff's answers to the Initial Census Questions will be made under penalty of perjury." (P. at 2.)  The MDL Court ordered "[f]or all cases filed in or transferred into MDL 2885 on or before [October 22, 2019], the 'First document Deadline' is November 6, 2019. For all cases filed in or transferred into MDL 2885 after the date of this Order, the 'First Document Deadline' will be forty-five (45) days from the date the case was filed in or transferred into MDL 2885. For all cases filed in or transferred into MDL 2885 on or before the date of this Order, the 'Final Document Deadline' is January 13, 2020. For all cases filed in or transferred into MDL 2885 after the date of this Order, the 'Final Document Deadline' will be one hundred and twenty (120) days from the date the case was filed in or transferred into MDL 2885."

16.    As of November 7, 2019, 113,478 individual cases had been listed on executed Tolling Agreement Exhibit A's from over 190 law firms.

17.    On December 6, 2019, the MDL court issued Pretrial Order No. 20 (Inactive Administrative Docket).

18.    On December 8, 2019, the MDL court issued Pretrial Order No. 21 (Amendments to Pretrial Order No. 21 – Administrative Docket.) The MDL court ordered amendments and clarifications to Pretrial Order 20 including: requiring "the first phase of Short Form Complaint submissions be comprised of currently unfiled claims from Lead Counsel, Co-Lead Counsel and the Executive Committee;" clarifying that "all Short Form Complaint submissions must be completed through the MDL Centrality system in accordance with any submission procedures established by BrownGreer PLC;" preserving "the parties' rights under *Lexecon Inc. v. Milberg Weiss*, 523 U.S. 26 (1998);" requiring "that an inactive plaintiff must transition his or her case from the inactive administrative docket to the active 3M MDL docket, 3:19md2885, within 60 days (as opposed to 30 days) after fulfilling his or her initial census obligations;" and, requiring "that once an inactive case is transitioned to the active 3M MDL docket, the plaintiff must file a Notice of Designated Forum on his or her individual docket within 10 days, identifying the federal district in which he or she would have filed his or her case in the absence of direct filing on the inactive administrative docket."  On January 7, 2020, the MDL court issued Administrative Docket Order No. 1, which replaced and superseded the MDL court's two prior administrative docket orders.  *See In re 3M Administrative Docket* (No. 3:19-mc-00087), ECF No. 3.

19.    On December 22, 2020, Plaintiffs in the MDL filed a Reply Memorandum in Support of Their Motion for Consolidation of Bellwether Group A for Trial. The Court may take judicial notice that Plaintiffs stated the following the Reply:

> As to injury, 3M's Appendix A demonstrates that the Group A Bellwethers have more in common than not: All five allege their use of the CAEv2 caused their tinnitus, and four of the five plaintiffs allege it also caused noise-induced hearing loss. ECF 1566 App. A. All received the CAEv2 in the course of military service, will use the same evidence to prove that 3M concealed information regarding the risks of the CAEv2, and allege injuries suffered during military training. ECF 1551 at 5. The individual issues regarding specific causation are secondary to the common issues regarding the design, testing, manufacture, marketing, and sale of the CAEv2 that will be proved through common documents, witnesses, and experts—i.e. whether, due to its design and/or warnings, the CAEv2 provided users with inadequate protection from loud noise. (Pp. 6-7.)

20.    On December 30, 2020, the MDL Court issued an Order ruling on Plaintiffs' Motion for Consolidation of Bellwether Group A for Trial.  The MDL Court stated the following:

> The Court has carefully considered the above standard in light of the parties' arguments and finds that the efficiencies to be gained by consolidation of Estes, Keefer, and Hacker's cases for trial far outweigh any potential prejudice to Defendants or potential risk of jury confusion, given the substantial overlap in the issues, facts, witnesses, and other evidence, as well as the potential similarities in the state laws applicable to their claims. (P. 2.)

21.    On July 2, 2021, the MDL Court issued an Order ruling on Plaintiffs'

Motion for Consolidation of Bellwether Group B for trial. The MDL Court stated

the following:

> The Court has carefully considered the above standard in
> light of the parties' arguments and finds that the
> efficiencies to be gained by consolidation of Hensley,
> Sloan, and Wayman's cases for trial outweigh any
> potential prejudice to Defendants or potential risk of jury
> confusion, given the substantial overlap in the issues,
> facts, witnesses, and other evidence. Based on its
> experience with the consolidated trial for Luke Estes,
> Stephen Hacker, and Lewis Keefer (collectively, "EHK")
> and after presiding over two individual trials (Dustin
> McCombs and Lloyd Baker), the Court readily concludes
> that the vast majority of the parties' trial presentations
> overwhelmingly feature liability evidence common to all
> plaintiffs in the litigation. (Pp. 2-3.)

22.    On January 14, 2020, the MDL Court held its Eighth Case Management

Conference. The MDL Court stated that:

> The Veterans Administration has agreed to proceed on a
> priority basis with the Privacy Act request for records for
> the 25 bellwether cases. Beyond that, we were very
> hopeful of a coordinated sort of organized and priority
> process for our remaining cases in this litigation.
>
> We actually visited with the VA and the DOJ in D.C. a
> few weeks ago in an effort to, again, try to encourage the
> agency to develop a process that would work for us and
> would work for them. I mean, obviously with the volume
> of plaintiffs that we have in this litigation, it is a
> considerable effort on their part to respond in the
> traditional manner to those requests. And obviously for us,
> if they respond in the traditional manner, that is going to
> be a significant amount of time for us here in this litigation.

A.98

Our efforts were not entirely successful, and those discussions continue. We just actually received word this morning that what we were hoping was going to be put into place as far as an efficient process doesn't appear like that's going to happen, although Judge Herndon is going to give it another try and maybe he'll be able to convince them of handling in a fashion we have hoped for.

Otherwise, what we've discussed is proceeding with the VA in request of smaller numbers, batches of requests, and to do it on an incremental basis with the remaining cases. And what I propose to the parties and where we are now is to start with the 1397, which was the one percent that we've been working from, the representative sample of the one percent. And as of now, that's how we're going to proceed.

Judge Herndon has a meeting with the parties and with our DOJ representative who is actually the liaison for us with the VA this afternoon and they are going to discuss this further. (Tr. at 4:18-5:25.)

23.    On September 29, 2020, the MDL Court issued Case Management Order No. 16. The MDL Court ordered that "Pursuant to a request from the Department of Justice earlier in this litigation, Plaintiffs outside of the 1% of cases for whom records are already currently being collected through the Touhy process, as well as their lawyers, should not be attempting to obtain records on their own for use in this litigation through Freedom of Information Act requests, National Archives requests, or other ways outside of Touhy. There will be an opportunity in the near future for additional cases to be assigned to the Touhy process." (P. 2.)

24.    On October 28, 2020, the MDL Court issued Case Management Order No. 17. The MDL Court noted that "The Parties have been working with a new

Department of Justice attorney assigned to the 3M MDL, Gary Feldon, on a process by which the parties will receive updated records production for those plaintiffs who are continuing to receive treatments from the VA." (P. 2.)

25. On April 24, 2020, the MDL Court issued a Pretrial Order No. 33 ("Court-Appointed Expert Witness".) The MDL Court summarized the 3M Combat Arms Products Liability Litigation as of April 24, 2020:

> The 3M Combat Arms Products Liability Litigation was transferred to this Court for "coordinated or consolidated pretrial proceedings" on April 3, 2019. See Transfer Order, ECF No. 1 at 2. Since then, the plaintiff universe has expanded to 8,000 cases on the MDL docket and more than 67,050 cases on the administrative docket. Another 74,000 cases are in the process of being filed on the administrative docket, for a total plaintiff population of nearly 150,000. Between June 2019 and April 2020, extensive corporate and government discovery took place. In that time, Defendants produced more than 11 million documents pursuant to a Technology Assisted Review ("TAR") Protocol, and also produced documents and responded to 83 Requests for Production, 30 Interrogatories, and three Requests for Inspection. Additionally, at least 21 individuals have been deposed to date, including three 3M Rule 30(b)(6) witnesses and three individuals from the United States Government. Suffice it to say, ensuring the "just and efficient conduct" of the litigation has been a massive undertaking for the parties, counsel, third-party neutrals, and the Court. See 28 U.S.C. § 1407 (2020.)
>
> A majority of the cases in this MDL allege personal injury claims for damages related to the plaintiffs' use of the Combat Arms Earplug (CAEv2) while serving in the United States military. Most of the medical and other relevant records related to these current and former

13

A.100

servicemembers' claims are in the possession or control of the federal government—specifically, the Department of Defense, Department of Veterans Affairs, and the United States Army, Navy, Marine Corps, Air Force, and Coast Guard. The parties' ability to obtain the necessary records depends on these federal agencies' capacity to locate, collect, and produce them. Thus far, the Court, with the agencies' agreement, has pursued an incremental approach to record collection from the government. Even so, the process has proven extraordinarily time-consuming and complex. Given the magnitude of this litigation, it is unrealistic to expect that the agencies can produce full records for the entire plaintiff population.

In order for the MDL to continue moving forward against this backdrop, it will be essential to assemble an inventory of individual servicemembers' records that is broadly informative with respect to the litigation-relevant characteristics of the plaintiff population as a whole. The cases selected for targeted records requests to date—the 25 bellwether cases, followed by 1,509 cases approximating one-percent of the total plaintiff population— will provide insights into the characteristics of the most representative plaintiffs. But there are many more variants of litigation-relevant characteristics that must be considered to develop a more complete and accurate picture of the full universe of cases in the MDL. Understanding what those characteristics are, and how much information is necessary to provide a fair and reliable basis for extrapolation, will require impartial expert assistance.

The MDL Court then required, pursuant to FRE 706, the parties to show cause why an independent expert, such as a biostatistician, should not be appointed to assist the Court in a manner consistent with this Order. The Parties were required to respond by May 8, 2020.

26.     On May 8, 2020, Plaintiffs' Leadership filed a Response to Pretrial Order No. 33 Regarding Court Appointed Witness.  The response states that

14

A.101

"Counsel for Plaintiffs file this statement, in response to the Court's Pretrial Order No. 33. In PTO 33, the Court stated the intention of appointing an independent expert to assist the Court in developing a complete and accurate picture of the full universe of cases in the MDL and understanding the characteristics of the *most* representative plaintiffs so that the Court can continue moving this litigation forward. Plaintiffs have no objection to this appointment."

27.    On December 7, 2020, MDL Plaintiffs filed a Motion for Consolidation of Bellwether Group A Plaintiffs For Trial.  The Motion states:

> Consolidation is justified because the Group A Bellwethers involve overlapping, and frequently coextensive, issues and facts. As with a traditional design defect litigation, the need to prove general liability for the product at issue outweighs individual variations as to causation and damages. Each Plaintiff alleges that the CAEv2 was unreasonably dangerous by design, that 3M failed to adequately warn of the CAEv2's risks, and that 3M misrepresented the safety and efficacy of the product. Across all Group A Bellwethers, the same "web" of conduct—the creation of the CAEv2, its inherently unsafe nature, its manufacture, and its promotion and sale through ongoing misrepresentations and omissions to the Defense Logistics Agency and military bases, including the bases where each Plaintiff was stationed—will be at issue. See ECF 1540 at 6. Such general liability is overwhelmingly, if not exclusively, common, and will be demonstrated through common expert witnesses, documents, and deposition testimony.

28.    On April 24, 2020, the MDL Court held its Eleventh Case Management Conference in Pensacola, FL.  During this hearing the MDL Court stated "[w]e have the 25 bellwether cases, we have the 1509 what we call the 1 percent, and then we have the 148,000 other cases in a bucket."  The MDL court also discussed

15

A.102

"appointing a Court expert under Rule 706 of the Federal Rules of Evidence to assist me in getting a better handle on the universe of cases in the MDL. This may be a biostatistician." (Pp. 51-52.) The MDL court further explained a proposal to "enter an order that directs both sides to show cause why I shouldn't do that. This is for litigation purposes, though, just so everybody knows. I want this person to assist me in coming up with an inventory of servicemember records that can be informative with respect to litigation relevant characteristics of the entire plaintiff population so that I can best manage the third bucket of 148,000 plaintiffs."

29. On January 21, 2020, the MDL court issued Pretrial Order No. 23 (Bellwether Selection Protocol). The MDL court stated as follows:

> To further the effective and efficient management of this litigation, the following procedures have been established for identifying and selecting the initial bellwether discovery pool cases.
>
> 1. On December 16, 2019, there were 139,693 claimants registered in MDL Centrality in connection with the 3M litigation. The Court, with the assistance of BrownGreer PLC, randomly selected 1% of that population—1,397 claimants—for consideration as potential bellwether candidates. Next, a series of prevalence analyses were conducted on the entire population of claimants with completed census forms, to identify the individual plaintiff characteristics that were most representative of the whole, in terms of branch of service, age, and injury. The analyses revealed that the most representative claimant is between the ages of 30 and 49, serves or served in the Army, and alleges a combination of tinnitus and hearingloss. Of the

randomly selected 1%, 175 cases met the three criteria.[4] Those 175 cases, which are identified on Exhibit A, comprise the first potential bellwether candidate pool for this litigation.

2. The 175 cases in the first potential bellwether candidate pool have already filed Short Form Complaints on either the administrative docket or the 3M MDL docket. From this pool, the Court randomly selected six cases to proceed with case-specific discovery, along with one alternate.[5] Plaintiff Leadership and Defendants will each select nine cases from the remaining potential bellwether candidates—seven cases to proceed with discovery, two cases as alternates—using the process outlined below, resulting in an initial discovery pool of 20 cases and 5 alternates.[6]

(P. 1-2.)

30.     On February 27, 2020, the MDL court ordered twenty cases and five alternate cases to be the initial bellwether pool. This pool was compromised of 9 plaintiff picks, 9 defense picks, and 7 cases were selected by the Court. On July 28, 2020, the MDL court added two additional alternate cases.

---

[4]   Initially, there were 177 cases that appeared to meet the criteria; however, two cases have since been removed from the list.

[5]   The six cases randomly selected by the Court for the initial discovery pool are: Kevin Lopez (PID 160400), Lewis Keefer (PID 11295), Luke Vilsmeyer (PID 91380), Jared King (PID 30281), Jonathan Vaughn (PID 31013), and William Wayman (PID 83748). A seventh case, Lonnie Burgus (PID 60806), was randomly selected as an alternate. The Court's randomly selected cases are highlighted in yellow on Exhibit A.

[6]   The alternates must be included in *Touhy* requests for cases in the initial bellwether discovery pool. The Court will discuss with the parties whether the alternates will be fully worked up as part of the discovery process.

17

31.     On January 25, 2020, the MDL Court issued Pretrial Order No. 24 (Amendment to Pretrial Order No. 23; Bellwether Selection Protocol). The order states: "Defendants' request, with no objection from Plaintiffs" to change the deadline for the parties to jointly advise the Court of their selections for the initial discovery pool to February 25, 2020.

32.     On February 27, 2020, the MDL Court issued Pretrial Order No. 29 (Initial Bellwether Cases). The 20 bellwether cases and five alternate cases identified in the order were selected for initial bellwether discovery and on page 2 of the order, had been ordered to be transferred to the MDL docket and pay their filing fee because twenty-four of the twenty-five cases were on the Administrative docket when selected.  *See* Order at note 1 (discussing Mr. Palanki's case on the MDL docket and duplicate action on the Administrative docket).

33.     On July 24, 2020, the MDL Court entered an order (MDL Dkt. No. 1280) resolving the Parties' briefing on the MDL defendants' invocation of the government contractor defense. The MDL Court ordered the following:

> Plaintiffs are entitled to judgment as a matter of law on the government contract defense as to all of their claims. Accordingly:
>
> 1. Defendants' Motion for Summary Judgment on the Government Contractor Defense, ECF No. 1071-68, is **DENIED**.
>
> 2. Plaintiffs' Motion for Summary Judgment on the Government Contractor Defense, ECF No. 1072, is **GRANTED**.

These rulings are currently on appeal before the Court of Appeals for the Eleventh Circuit.

34.     Eight of the 27 bellwethers Plaintiffs' cases were dismissed.

35.     As of February 15, 2022, there were 282,532 claimants registered with MDL Centrality, including 42,337 filed cases.

36.     To date, the parties have participated in sixteen bellwether trials in the MDL.

37.     Ten of the bellwether trials resulted in verdicts for thirteen Plaintiffs, and the remaining six trials resulted in Defense verdicts.  3M and Debtors were held jointly and severally liable in the cases with Plaintiff verdicts.

38.     Five bellwether cases are currently on appeal to the United States Court of Appeals for the Eleventh Circuit.  These appeals include four Plaintiff verdicts and one Defense verdict.

39.     Each of the cases that resulted in Plaintiff verdicts are in post-trial briefing or on appeal.

40.     On March 30, 2021, trial was held in the *EHK* trial. The following statements were made to the jury by Plaintiffs' attorney Brian Aylstock:

> This board is about 3M, and this case is about 3M. 3M, as the Court instructed you at the beginning of the case, is made up of many different corporations, and I wanted you to see this, because you're going to be seeing some documents that have Aearo on it, Aearo Technologies, E-

> A-R division of Cabot Corporation. You're going to need
> to know Cabot is all part of 3M. Peltor AOsafety.
>
> All of those entities are going to be in this case. But for
> purposes of this case, they're all one and the same. So if
> you see one of these just know Aearo is 3M; and, in fact,
> 3M bought Aearo, and the evidence is going to show in
> part because of how much money they were making on
> these products, on this Combat Arms Earplug. (Tr. at 59:3-
> 15.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

41.     On May 17, 2021, trial was held in the *McCombs* trial. The following

statements were made to the jury during opening statements by Plaintiffs' attorney

Doug Monsour:

> 3M, if you will look, Aearo and 3M and EAR and Peltor,
> they are all the same family of companies. So when you
> see any documents showing them, they're all the same
> people. (Tr. at 49:5-7.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

42.     On June 7, 2021, trial was held in the *Baker* trial. The following

statements were made to the jury during opening statements by Plaintiffs' attorney

Sean Tracy:

> Now, you're going to see a lot of documents. You're going
> to hear these companies' names on the screen: 3M, Aearo
> Technology, E-A-R, Peltor, Cabot. They're all the same
> company, they're all 3M. Every time you see those
> companies think 3M. (Tr. at 37:12-16.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

43. On October 18, 2021, trial was held in the *Blum* trial. The following statements were made to the jury during opening statements by Plaintiffs' attorney Doug Monsour:

> These are the companies that are involved: 3M, Aearo, Cabot, AOSafety, Peltor, and E-A-R. For all intents and purposes, they are the same entity. It started off as, I think, Cabot and then went to Aearo, and then Peltor bought them or they bought Peltor. Ultimately, they have all been purchased by 3M and they all fall under the 3M umbrella, so when I show you any of these companies, as the judge said, they're all the same for this lawsuit. (Tr. at 57:16-24.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

44. On October 19, 2021, trial was held in the *Blum* trial. Ron Kieper was introduced as "the acoustic technician and the fitter in the 3M/Aearo lab from 1998 to 2015." (Tr. at 76:12-15.)

45. On November 30, 2021, trial was held in the *Finley* trial. The following statements were made to the jury during opening statements by Plaintiffs' attorney Doug Monsour:

> So where does our story begin? Our story begins a long time ago in December of 1997. 3M/Aearo is meeting with the United States Government and scientists from the government and scientists from Europe, and they are at the Aberdeen Proving Ground in Maryland. A man by the name of Elliott Berger is there on behalf of 3M. (Tr. at 69:16-21.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

46.    On January 10, 2022, trial was held in the *Sloan-Wayman* trial. The following statements were made to the jury during opening statements by Plaintiffs' attorney Brian Aylstock:

> 3M made a combat earplug -- this is it -- that didn't work in combat. It's that simple. 3M, E-A-R, Aearo are all the same entity. (Tr. at 65:22-24.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

47.    On March 14, 2022, trial was held in the *Vilsmeyer* trial. The following statements were made to the jury during opening statements by Plaintiffs' attorney Bobby Bradford:

> What that means is there's some -- Aearo, there's a company called E-A-R, E-A-R, and there's a company called Cabot, and they all ended up in the 3M. So when you hear Aearo, E-A-R, Cabot or 3 a.m. -- sorry -- 3M, it's all the same. (Tr. at 231:16-20.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

48.    On March 28, 2022, trial was held in the *Kelley* trial. The following statements were made to the jury during opening statements by Plaintiffs' attorney Dan Blouin:

> When I talk about 3M folks -- this is just real quick stuff. We're talking about 3M Aearo, Cabot, Peltor. They're all these companies. For your intents and purposes, and the judge already told you this, it's just "3M" in this case. (Tr. at 199:2-6.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

49.     On April 18, 2022, trial was held in the *Vaughn* trial. The following

statements were made to the jury during opening statements by Plaintiffs' attorney

Doug Monsour:

> Now, I've mentioned 3M and Aearo. These are all of the
> companies that are involved. They're all the same
> company for the intents and purposes of this lawsuit.
> Whether the company goes by EAR, Peltor, AOSafety,
> Aearo, Cabot, or 3M, they are all the same company for
> this lawsuit. One was acquired by the other; one was a
> division of the other. But anytime you see any of those
> names, it's the same people. (Tr. at 144:17-23.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

50.     On May 9, 2022, trial was held in the *Beal* trial. The following

statements were made to the jury during opening statements by Plaintiffs' attorney

Bobby Bradford:

> There are several Defendants, Cabot, 3M, Aearo, between
> mergers and purchases, so you hear one, you hear them all,
> they are all the same company. (Tr. at 163:24-164:1.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

51.     On April 29, 2021, trial was held in the *EHK* trial. The following

statements were made to the jury by the MDL court during jury instructions:

> Mr. Estes, Mr. Keefer, and Mr. Hacker have sued several
> defendants that designed and sold the CAEv2; namely, 3M
> Company, 3M Occupational Safety LLC, Aearo Holding
> LLC, Aearo Intermediate LLC; Aearo LLC, and Aearo
> Technologies LLC. I will collectively refer to the
> defendants as "3M." (Tr. at 42:3-7.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

23

A.110

52.     On May 28, 2021, trial was held in the *McCombs* trial. The following

statements were made to the jury by the MDL court during jury instructions:

> The defendants, 3M Company, 3M Occupational Safety
> LLC, Aearo Holding LLC, Aearo Intermediate LLC,
> Aearo LLC, and Aearo Technologies LLC, which I will
> refer to collectively as 3M, deny the claims made by Mr.
> McCombs, assert a number of affirmative defenses, and
> claim that their conduct did not cause Mr. McCombs's
> injury. (Tr. at 19:8-13.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

53.     On June 18, 2021, trial was held in the *Baker* trial. The following

statements were made to the jury by the MDL court during jury instructions:

> The defendants—3M Company, 3M Occupational Safety,
> LLC, Aearo Holding, LLC, Aearo Intermediate, LLC,
> Aearo LLC, and Aearo Technologies, LLC, which I will
> refer to collectively as 3M—deny the claims made by Mr.
> Baker and contend that their conduct did not cause Mr.
> Baker's hearing injuries. (Tr. at 23:23-24:2.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

54.     On September 30, 2021, trial was held in the *Adkins* trial. The following

statements were made to the jury by the MDL court during jury instructions:

> The defendants, 3M Company, 3M Occupational Safety
> LLC, Aearo Holding LLC, Aearo Intermediate LLC,
> Aearo LLC, and Aearo Technologies LLC, referred to
> collectively as "3M," deny the claims made by Mr. Adkins
> and contend that their conduct did not cause Mr. Adkins
> hearing injuries. (Tr. at 282:8-12.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

55.     On October 28, 2021, trial was held in the *Blum* trial. The following statements were made to the jury by the MDL court during jury instructions:

> The defendants, 3M Company; 3M Occupational Safety, LLC; Aearo Holding, LLC; Aearo Intermediate, LLC; Aearo, LLC; and Aearo Technologies, LLC, which I refer to collectively as 3M, deny the claims made by Ms. Blum and contend that their conduct did not cause Ms. Blum's hearing injuries. (Tr. at 18:21-19:1.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

56.     On November 12, 2021, trial was held in the *Palanki* trial. The following statements were made to the jury by the MDL court during jury instructions:

> The defendants, 3M company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies, LLC, which I refer to collectively as 3M, deny the claims made by Mr. Palanki and contend that their conduct did not cause Mr. Palanki's alleged hearing injuries. (Tr. at 2647:3-7.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

57.     On November 12, 2021, trial was held in the *Camarillo* trial. The following statements were made to the jury by the MDL court during jury instructions:

> The defendants -- 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC, which I refer to collectively as "3M"—deny the claims made by Sergeant Camarillo and contend that their conduct did not cause Sergeant Camarillo's injuries. (Tr at 2696:4-8.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

58.    On December 10, 2021, trial was held in the *Finley* trial. The following statements were made to the jury by the MDL court during jury instructions:

> The defendants -- 3M Company; 3M Occupational Safety, LLC; Aearo Holding, LLC; Aearo Intermediate, LLC; Aearo, LLC; and Aearo Technologies, LLC, which I refer to collectively as 3M -- deny the claims made by Mr. Finley and contend that their conduct did not cause Mr. Finley's injuries. (Tr. at 2434:4-8.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

59.    On December 15, 2021, trial was held in the *Montero* trial. The following statements were made to the jury by the MDL court during jury instructions:

> Defendants -- 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC, which I refer to collectively as 3M deny the claims made by Mr. Montero and contend that their conduct did not cause Mr. Montero's hearing-related injuries. (Tr. at 62:19-23.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

60.    On December 17, 2021, trial was held in the *Stelling* trial. The following statements were made to the jury by the MDL court during jury instructions:

> As you are aware, this trial involves plaintiff Carter Stelling's claims about the Combat Arms Earplug Version 2 which 3M designed and sold to the Department of Defense. (Tr. at 25:15-17.)

A.113

61.    On January 27, 2022, trial was held in the *Sloan-Wayman* trial. The following statements were made to the jury by the MDL court during jury instructions:

> Mr. Sloan and Mr. Wayman have sued several defendants that designed and sold the CAEv2, namely 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC. I'll collectively refer to them, the defendants, as 3M. (Tr. at 33:12-17.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

62.    On March 24, 2022, trial was held in the *Vilsmeyer* trial. The following statements were made to the jury by the MDL court during jury instructions:

> The defendants, 3M Company; 3M Occupational Safety, LLC; Aearo Holding, LLC; Aearo Intermediate, LLC; Aearo, LLC; and Aearo Technologies, LLC, which I refer to collectively as defendants, or 3M, deny the claims made by Mr. Vilsmeyer and contend that their conduct did not cause Mr. Vilsmeyer's hearing injuries. (Tr. at 120:7-12.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

63.    On April 7, 2022, trial was held in the *Kelley* trial. The following statements were made to the jury by the MDL court during jury instructions:

> The defendants, 3M Company, 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC, which I refer to collectively as "3M," deny the claims made by Ms. Kelley and contend that their conduct did not cause Ms. Kelley's injuries. (Tr. at 2781:25-2782:4.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

64. On April 28, 2022, trial was held in the *Vaughn* trial. The following

statements were made to the jury by the MDL court during jury instructions:

> As you are aware, this trial involves a civil action brought
> by plaintiff Jonathon Vaughn, a United States Army
> veteran, who alleges that he suffered permanent hearing
> injuries, including hearing loss and tinnitus, and that these
> injuries were caused by the Combat Arms Earplug Version
> 2, also known as CAEv2, which was produced and sold by
> 3M to the United States military and commercially. (Tr. at
> 20:23-21:4.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

65. On May 19, 2022, trial was held in the *Beal* trial. The following

statements were made to the jury by the MDL court during jury instructions:

> The Defendants, 3M Company, 3M Occupational Safety,
> LLC, Aearo Holding, LLC, Aearo Intermediate, LLC,
> Aearo, LLC, and Aearo Technologies, LLC, which I refer
> to collectively as 3M, deny the claims mad[e] by Mr. Beal
> and content that their conduct did not cause Mr. Beal's
> hearing injuries. (Tr. at 211:11-15.)

The transcript does not reflect an objection by 3M or the Debtors to this statement.

66. On May 24, 2022, the MDL court issued a post-trial order relating to

the *Wayman* case. The MDL court stated the following:

> Wayman also argues that the noneconomic damages cap
> should be multiplied by the number of Defendants, relying
> on *General Electric Company v. Niemet*. *See* ECF No. 190
> at 2 (citing *Gen. Elec. Corp. v. Niemet*, 866 P.2d 1361
> (Colo. 1994)). In *Niemet*, the Colorado Supreme Court
> explained that the cap on noneconomic damages "does not
> act as a cap on the total amount a plaintiff may recover
> from several defendants." 866 P.2d at 1368. Instead, "a

trial court should apportion pro rata liability among the defendants and plaintiff before it applies the" statutory cap for noneconomic damages. *Id.* Thus, when a jury apportions fault to more than one party, the trial court should apportion liability based on the jury's verdict and then apply the statutory cap to the total amount a particular defendant is liable for. *See id.*

Wayman's reliance on *Niemet* is misplaced because the jury in his case only found fault by one party, the Defendants, who were treated collectively as "3M" by the Court and the parties throughout the trial. *See* ECF No. 185. Under *Niemet*, the noneconomic damages cap applies after apportioning liability consistent with the jury's verdict. 866 P.2d at 1368. Here, the Defendants - collectively as "3M" - were found to be 100% at fault for $10,000,000 in noneconomic damages., ECF No. 185. Accordingly, no defendant multiplier applies. (Tr. at 5-6.)

67.    What is referred to as the "Flange Report," is a report from Aearo titled "How Folding the Flanges Back Affects REAT Results of the UltraFit Earplug End of the Combat Arms Plug," dated July 10, 2000, and was marked as exhibit P-Gen-0001 in the MDL trials.

68.    On March 30, 2021, trial was held in the *EHK* trial. The following statements were made to the jury during opening statements by Plaintiffs' attorney Bryan Aylstock:

> They then finalize the test. They get the 22 they want, and they write a memo in July. A formal memo, "Here is what we did." They stick it in their files, and there it sits.
>
> You know what's not in this memo? We told the military. That's not in there. (Tr. at 72:11-15.)

A.116

69.    On April 29, 2021, trial was held in the *EHK* trial. The following

statements were made to the jury during closing arguments by Plaintiffs' counsel

Bryan Aylstock:

> Look at the flange report itself. Why did they stop the test?
> They wrote it down for you. They said the results were
> quite low, variable, meaning unreliable, and quite low. (Tr.
> at 115:5-7.)

70.    On May 17, 2021, trial was held in the *McCombs* trial. The following

statements were made to the jury during opening statements by Plaintiffs' counsel

Doug Monsour:

> Now, what happens after the second test is Mr. Berger and
> Mr. Kieper write a memorandum, and they detail
> everything that I just described for you. And this
> memorandum is called "the flange report." And the flange
> report tells us a few little secrets about these plugs. It tells
> us that the plug is too short for proper insertion. It tells us
> that the plugs imperceptibly loosen. (Tr. at 46:24-47:5.)

71.    On May 28, 2021, trial was held in the *McCombs* trial. The following

statements were made to the jury during closing arguments by Plaintiffs' counsel

Doug Monsour:

> And then here's the flange report. I suspect, if I quizzed
> y'all, y'all could report it back to me verbatim. I think
> every one of you knows exactly what it says. (Tr. at 47:20-
> 22.)

72.    On June 7, 2021, trial was held in the *Baker* trial. The following

statements were made to the jury during opening statements by Plaintiffs' counsel

Sean Tracey:

And here is where they detail the defects, Ron Kieper, Elliott Berger. They say, the introduction, "The Combat Arms was shortened at the request of the Army so it would fit into a carrying case. Because of this the plug is shorter than any other UltraFit plug design." Shortest UltraFit they had ever made.

"The purpose of this report" -- the purpose of this report -- "is to document that the current length of the UltraFit earplug end of the Combat Arms plug is too short for proper insertion." (Tr. at 50:2-11.)

73.   On June 18, 2021, trial was held in the *Baker* trial. The following statements were made to the jury during closing arguments by Plaintiffs' counsel David Buchanan:

I mentioned to you Admiral Leslie's opinions. If 3M had disclosed the information in the flange report and the quality problems, the contract would have never been awarded. She gave stronger statements and you heard her on the stand. Had she been the officer, she would have taken very strong measures with regard to 3M and Aearo. (Tr. at 71:12-17.)

74.   On September 20, 2021, trial was held in the *Adkins* trial. The following statements were made to the jury during opening statements by Plaintiffs' counsel Adam Wolfson:

P-GEN-1, please, Mr. Marbut.

Ladies and gentlemen, this is a document that you're going to see a couple of times in this case. It's come to be known as the flange report. One way you can think about it is it's the report that summarizes all the defects in this plug. You notice that it was written by Mr. Berger and a man named Mr. Kieper, Ron Kieper. (Tr. at 52:3-9.)

31

A.118

75.     On September 30, 2021, trial was held in the *Adkins* trial. The following statements were made to the jury during closing arguments by Plaintiffs' counsel Adam Wolfson:

> P-GEN-1, Mr. Marbut.
>
> We saw the flange report. Now, I know you could probably all recite this in your sleep at this point. But what did we see? We saw plain English in this flange report, and we saw 3M witnesses time and again try to run away from what it means. We saw them claim that they didn't know what it means. We tried to say -- we heard them try to say, oh, no, no, no, no, it obviously means this, but no, what it really means is this. Now, ladies and gentlemen, again, consistency. Is this consistent. (Tr. at 310:4-13.)

76.     On October 18, 2021, trial was held in the *Blum* trial. The following statements were made to the jury during opening statements by Plaintiffs' counsel Doug Monsour:

> And what they do in that smoking gun document is they detail everything I just told you. I'm going to show you the document. We call it the flange report, and that flange report is not shared with the United States military. In fact, that flange report goes into a drawer and is hidden for 15 years. The only reason the flange report is discovered is because about 15 years later in another litigation, a young lawyer finds it in the box and pulls it out. (Tr. at 54:6-14.)

77.     On October 28, 2021, trial was held in the *Blum* trial. The following statements were made to the jury during closing arguments by Plaintiffs' counsel Doug Monsour:

> This is the flange report. It's called "How folding the flanges back affects REAT results of the UltraFit earplug

32

A.119

end of the Combat Arms plug." It's P-GEN-00001. It's document 1. Of the millions of documents that we looked through, it's No. 1. It's the smoking gun. It's the "gotcha." And they hoped it never saw the light of day. (Tr. at 53:14-20.)

78.    On November 1, 2021, trial was held in the *Palanki* trial. The following statements were made to the jury during opening statements by Plaintiffs' counsel Mike Papantonio:

> Ladies and gentlemen, I want to show you something. This is -- you are going to hear a lot about this in this trial. I am going to give you a term that's called the Flange Report. You are going to hear it again and again. When they found out that they could not do any better than an 11 NRR, when they found out you can't do any better than an NRR of 11 if you're doing this properly, they went in, and you're going to see -- best way I can describe it, evidence is going to show they phonied up the test. Manipulated the test. That's what the evidence is going to show you. Don't take my word for it. It's right in the documents. They phonied it up. (Tr. at 45:14-24.)

79.    On November 12, 2021, trial was held in the *Palanki* trial. The following statements were made to the jury during closing arguments by Plaintiffs' counsel Mike Papantonio:

> And then comes in -- I almost don't even want to talk about it. It's called the flange report. Y'all have it memorized by now.
>
> The flange report is Number 1, and what's important about that is their own scientists -- if you look at it, what happened in the flange report on Number 1, their own scientist said we got problems here. It won't fit most ears. It won't fit medium and large. It comes it imperceptibly. We don't know it's coming out. It's too stiff that our

33

A.120

experimenter had to jam it in people's ears. This is a guy who's been doing it his entire life. (Tr. at 2533:25-2534:10.)

80.   On November 1, 2021, trial was held in the *Camarillo* trial. The

following statements were made to the jury during opening statements by Plaintiffs'

counsel Tom Pirtle:

> Show P-GEN-1. After all this went on, Elliott Berger, the guy you've been seeing, and Ron Kieper write this secret memo. And it stays in the files of 3M for 15 years. Until 2015. (Tr. at 79:13-16.)

81.   On November 12, 2021, trial was held in the *Camarillo* trial. The

following statements were made to the jury during closing arguments by Plaintiffs'

counsel Tom Pirtle:

> First off, this document. You've seen it. Plaintiff's P-GEN-1 is the flange report. And I'll go to the text of it.

> In the flange report, Ron Kieper, who wrote principally, and then Elliott Berger, who y'all saw -- you can judge his credibility however which way you want to -- write that, one: Because of this, the plug is shorter than any other UltraFit design. The purpose of this report is to document the current length of the UltraFit plug end of the Combat Arms is too short for proper insertion. Too short for proper insertion. Product defect. Too short for proper insertion.

> You don't often see a memo like this in the world of products liability. It's kind of like finding a dog's tooth in your chili. You look at it and you go, hmm, I don't know what's going on back in the kitchen, but I think there's something bad going on. (Tr. at 2733:9-24.)

82.    On November 30, 2021, trial was held in the *Finley* trial. The following

statements were made to the jury during opening statements by Plaintiffs' counsel

Doug Monsour:

> What they did was they wrote internal memos, and they wrote a real long one -- not real long; a few pages. There were some shorter memos, but there was a long one called the flange report. And in the flange report they detail everything I just told you. We started to test. We got to eight people. The results of the testing was very low. There was a problem with the earplug coming out of the ears. It was imperceptibly loosened, so we retested. We brought in new people and, miraculously, we got a better result. They wrote it up in a report. I'm going to show it to you.
>
> That report was from 2000 and remained hidden until 2015, and it didn't come out until 2015, until 3M was suing a competitor earplug product for a patent violation, and this product -- this memo came out. A bright, young lawyer found it and said, What is this? And that's how the problem surfaced. That's how the truth came out, in another litigation. (Tr. at 75:14-76:4.)

83.    On December 10, 2021, trial was held in the *Finley* trial. The following

statements were made to the jury during closing arguments by Plaintiffs' counsel

Doug Monsour:

> Remember the flange report? Flange report's a really interesting document. They literally detail for us what the problems are of the plug. It doesn't have all the problems of the plug, but it has some of them. But this is a 3M document. When 3M comes up here and they say we -- the plaintiff's lawyers are coming up with something, that's their document. I didn't write it; they wrote it. (Tr. at 2465:15-21.)

84. On December 6, 2021, trial was held in the *Montero* trial. The following statements were made to the jury during opening statements by Plaintiffs' counsel Alex Walsh:

> Right now what I want to do is show you one of the most important documents, and it's called the Flange Report. And you can see a page of it right here. I actually don't have the full thing, but this is one of the pages and you will see it. And this document called the Flange Report, was written back in July 10, 2000. And you're going to see this is actually the year before Mr. Montero ever wore the Combat Arms earplugs.

> And what 3M did in this document is they wrote down defects that they had identified in the Combat Arms earplugs. Here's some of those defects. Here's what they said: The Combat Arms plug is too short for proper insertion. It was difficult for the experimenter doing this test to insert the plug deeply into some subjects' ear canals. (Tr. at 49:7-19.)

85. On December 15, 2021, trial was held in the *Montero* trial. The following statements were made to the jury during closing arguments by Plaintiffs' counsel Alex Walsh:

> For 15 years, this company hid and failed to tell soldiers and the military and the Army about serious safety problems with the hearing protection device that was relied on by hundreds of thousands of soldiers. Those defects, those safety problems, they are documented in the Flange Report, and I warned you at the beginning that you were going to see a lot of the Flange Report, and you did. You did. And that Flange Report, it deserves to be seen. And that's why we showed it to you in this courtroom. It deserves to be seen because it shows you the truth. It sets forth what 3M discovered, what its scientists discovered,

A.123

what its expert fitters discovered about the flaws in this earplug. (Tr. at 11:22-12:8.)

86. On December 6, 2021, trial was held in the *Stelling* trial. The following statements were made to the jury during opening statements by Plaintiffs' counsel Dave Buchanan:

> It goes on further. "The purpose of this report is to document that the current length of the Ultrafit earplug end of the Combat Arms is too short for proper insertion." Too short for proper insertion.
>
> Mr. Berger and Mr. Kieper wrote this memo. This plug is too short for proper insertion. This fact, this particular piece of information, unknown for the next 16 years, only revealed, coincidentally, in litigation. (Tr. at 65:11-18.)

87. On December 17, 2021, trial was held in the *Stelling* trial. The following statements were made to the jury during closing arguments by Plaintiffs' counsel Dave Buchanan:

> And the findings you have seen documented by the scientists and the researchers within Aearo, Mr. Kieper and Mr. Berger, are people who know earplugs. Problems, problems. And not just the emails, a research report put in the file. But no redesign, no change. (Tr. at 45:21-25.)

88. On January 10, 2022, trial was held in the *Sloan-Wayman* trial. The following statements were made to the jury during opening statements by Plaintiffs' counsel Brian Aylstock:

> They not only rig the test, they write a memo about it. It's called the flange report. You're going to hear it referred to over and over, it's P-GEN-1 -- Plaintiff's Exhibit 1, and you'll have it back there -- how folding the flanges back

37

A.124

affects the real-ear attenuation at threshold. That's simply the EPA-required test. It's the report of the defects. And they again -- Mr. Berger and Mr. Kieper authored this document, and they again formally memorialize what they find. (Tr. at 77:3-11.)

89.     On January 27, 2022, trial was held in the *Sloan-Wayman* trial. The following statements were made to the jury during closing arguments by Plaintiffs' counsel Brian Aylstock:

> There are emails that lead up to this. You've seen them. They're in evidence. I'm not going to show them to you, but they went the back-and-forth and then Mr. Berger and Mr. Kieper put this in a formal technical report documenting that this plug, this earplug, this one-of-a-kind never-before, never-since earplug was defective. It was too short, it didn't fit the geometry of most ear canals, and it imperceptibly loosened because of that issue with the ear and the tragus; our anatomy can loosen it out, and it does it in a way that the soldier doesn't even know.
>
> Those are their words. That's their expert report. (Tr. at 91:21-92:8.)

90.     On March 14, 2022, trial was held in the *Vilsmeyer* trial. The following statements were made to the jury during opening statements by Plaintiffs' counsel Bobby Bradford:

> Okay. This is a very important document in this case. It's called a [flange] report. You're going to see it so many times. This is the smoking gun where 3M writes what happened. It's authored by Ron Kieper and Elliott Berger. It's dated July -- it's right here on the time line, July of 2020. (Tr. at 232:9-14.)

91.     On March 24, 2022, trial was held in the *Vilsmeyer* trial. The following

statements were made to the jury during closing arguments by Plaintiffs' counsel

Bobby Bradford:

> They stacked the deck on the 017 test, they folded back the
> flanges, they tricked the test. And they still got problems.
> I'm not going to go through it all. Don't have time. You've
> seen it. Plugs falling out of the ears. Loosening. I'm not
> even going to show you the flange report this afternoon
> because I think you've seen it enough. (Tr. at 154:2-8.)

92.     On March 14, 2022, trial was held in the *Wilkerson* trial. The following

statements were made to the jury during opening statements by Plaintiffs' counsel

Adam Wolfson:

> Let's put up P-GEN-1, please.
>
> And, ladies and gentlemen, this is the first smoking gun.
> This document -- you're going to see this a lot in the case.
> This is a document that has been come to be known as the
> flange report.
>
> As we can see, it's entitled: How Folding the Flanges Back
> Affects REAT results of the UltraFit Earplug End of the
> Combat Arms Plug. It's written by R. W. Kieper, a man
> named Ron Kieper, and E.H. Berger, Elliott Berger. (Tr.
> at 80:21-81:4.)

93.     On March 25, 2022, trial was held in the *Wilkerson* trial. The following

statements were made to the jury during closing arguments by Plaintiffs' counsel

Tom Pirtle:

> Mr. Brock, will you put up P-GEN-1?

> All right. This is what we have become familiar with as
> the flange report. The flange report is a document that you
> don't often find in litigation. I mean, this document's kind
> of like finding a dog's tooth in your chili. You don't want
> to eat the rest of the chili, and you really wonder what's
> going on back in the kitchen. Because this document
> admits that there's a design defect. Now, they can dispute
> it, and they can say it doesn't mean what they wrote back
> at the time, but the two authors didn't come down here and
> talk to you, did they? (Tr. at 2835:23-2836:7.)

94.   On March 28, 2022, trial was held in the *Kelley* trial. The following

statements were made to the jury during opening statements by Plaintiffs' counsel

Dan Blouin:

> So here is P-GEN-1 it's called. This is the general exhibit
> against 3M Number 1. The first thing that you'll probably
> see, and by probably Wednesday of this week, you'll be
> sick of it. It's the secret document. It's the Flange Report,
> they call it. It was written in 2000. I'll blow it up for you
> so you can see it a little better. "How Folding the Flanges
> Back After Affects REAT Results of the UltraFit Earplug
> End of the Combat Arms Plug." It's written by Kieper and
> Berger, the lab guys. (Tr. at 206:25-207:8.)

95.   On April 7, 2022, trial was held in the *Kelley* trial. The following

statements were made to the jury during closing arguments by Plaintiffs' counsel

Dan Blouin:

> The product was too short, it was too wide, and it
> imperceptibly loosened. I'm trying not to show you much
> of the Flange Report today, folks. You've seen plenty of
> it. (Tr. at 2846:10-12.)

96.     On April 18, 2022, trial was held in the *Vaughn* trial. The following

statements were made to the jury during opening statements by Plaintiffs' counsel

Doug Monsour:

> This Flange Report is the name of the memo. It's buried
> by the company. It is never disclosed to the U.S. military.
> The fact that they got an 11 on their testing is never
> disclosed. The fact that their plug loosens imperceptibly is
> never disclosed. (Tr. at 141:19-23.)
>
> Now, I've mentioned 3M and Aearo. These are all of the
> companies that are involved. They're all the same
> company for the intents and purposes of this lawsuit.
> Whether the company goes by EAR, Peltor, AOSafety,
> Aearo, Cabot, or 3M, they are all the same company for
> this lawsuit. One was acquired by the other; one was a
> division of the other. But anytime you see any of those
> names, it's the same people. (Tr. at 144:17-23.)

97.     On April 28, 2022, trial was held in the *Vaughn* trial. The following

statements were made to the jury during closing statements by Plaintiffs' attorney

Doug Monsour:

> And the imperceptible loosening, that comes straight from
> 3M documents.
>
> Folks, I didn't write these documents. I hope everybody
> understands this. We get documents from them and we
> read them, and their own documents slit their throat. It's
> their documents. They wrote the flange report. It's their
> scientists. (Tr. at 49:6-12.)

98.     On May 9, 2022, trial was held in the *Beal* trial. The following

statements were made to the jury during opening statements by Plaintiffs' counsel

Bobby Bradford:

And they wrote a memo after documenting the whole thing. The second test is 213017, and go to the next -- this is -- go back, I am sorry, you can see here, this is a memo written by Mr. Berger and Mr. Kieper, the title is how -- retest of the Combat Arms earplugs. So they do the second test, but they stack the deck. They cut out some of the bad scoring people in the first test and replace them with people they know score better. (Tr. at 164:12-19.)

99.   On May 19, 2022, trial was held in the *Beal* trial. The following statements were made to the jury during closing arguments by Plaintiffs' counsel Bobby Bradford:

You have ever seen this, not data, need to test. Go on. Flange Report, you have seen it a million times, you know what it says, took many times probably. But you know what it says, imperceptibly loosens, too short, doesn't seat well in the ear. We stopped the test, it was 11. You heard Mr. McKinley explain it, too stiff, too short, too wide, imperceptible loosening, the worst kind. They killed the test from there, and then we fast forward. (Tr. at 254:23-255:5.)

100.   On April 5, 2021, Plaintiff Estes testified in the *EHK* trial. Mr. Estes provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. Now moving forward, did you receive the Combat Arms Earplugs sometime in 2009?

A. Yes.

Q. Do you remember the exact circumstances in which you acquired them?

A.129

A. No. I believe that I received them right before or during the training in 2009 for the summer, but I don't remember the people responsible for that.

(Tr. at 25:17-24.)

…

Q. Okay. And for how long did you wear the Combat Arms Version 2 earplugs during your military service?

A. I had been using them from 2009 to 2015, approximately.

(Tr. at 75:19-21.)

101. On April 6, 2021, Plaintiff Keefer testified in the *EHK* trial. Mr. Keefer provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. So from 2007 until 2015, that's when you used the Combat Arms Version 2 as your primary hearing protective device?

A. As my primary measure; yes, sir.

(Tr. at 188:2-4.)

102. On April 14, 2021, Plaintiff Hacker testified in the *EHK* trial. Mr. Hacker provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. Okay. And then you also used the Combat Arms Earplugs; is that right?

A. Yes.

Q. When did you use those?

A.130

A. From late 2002 to -- before deployment to mid 2010 deployment.

(Tr. at 85:7-12.)

103.    On May 20, 2021, Plaintiff McCombs testified in the *McCombs* trial.

Mr. McCombs provided the following testimony in response to questions related to

the timing of his use of the Combat Arms:

> Q. So if I'm doing the math right, your IED blast occurred April 23rd 2009, and you left the military some two years --                                    or you left active duty some two years and two months or so later?
>
> A. Yes, sir.
>
> Q. In June or July 2011, is that about right?
>
> A. Yes, sir.
>
> (Tr. at 205:8-13)
>
> …
>
> Q. So if I heard you correctly, you joined the military in March of 2008?
>
> A. That's correct.
>
> Q. And that was at Fort Benning, correct?
>
> A. Well, yeah, that's where I was sent first, yes, ma'am.
>
> Q. And it's your testimony that at Fort Benning, in a duffle bag along with your other protective equipment, you received                                    a pair of the Combat Arms Version 2, what we've been speaking about over the last several days, correct?

44

A.131

A. Yes, ma'am, that's correct.

(Tr. at 227:1-10)

…

Q. And after the IED blast, starting on April 26th and thereafter until you got out of the military in 2011, for the next two years, is it correct that you certainly were not wearing the plug with the plug moving around in your ear in                                                                any way, correct?

A. Not that I noticed, correct.

(Tr. at 278:10-15)

104.    On June 11, 2021, Plaintiff Baker testified in the *Baker* trial. Mr. Baker provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. Okay. Well, let me ask it this way, then: As far as Fort Benning is concerned, did you -- were you sent to Fort Benning in 2005?

A. Yes.

(Tr. at 66:16-18)

…

Q. Were you given your very first pair of Combat Arms while
you were at Fort Benning?

A. Yes.

(Tr. at 67:23-25)

…

45

A.132

Q. Did you continue to use the Combat Arms after you left active duty in 2009?

A. Infrequently, but yes.

(Tr. at 110:8-10)

…

Q. When was the last time you used the Combat Arms Earplug
for -- when you were firing weapons?

A. I'd say either very late 2011, like December-ish, to very early 2012. I think it was more on the 2012 side.

(Tr. at 111:2-5.)

105.   On September 23, 2021, Plaintiff Adkins testified in the *Adkins* trial. Mr. Adkins provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. It's your testimony that you started using the Combat Arms Earplugs in 2005, roughly, and then you stopped using them at the end of October of 2007, correct?

A. Yes, ma'am.

(Tr. at 171:12-15)

106.   On October 21, 2021, Plaintiff Blum testified in the *Blum* trial. Ms. Blum provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. Do you remember when you received your first set of Combat Arms?

A. Sometime in '03 because it was the new earplugs that they had issued us.

46

A.133

(Tr. at 221:16-19)

Q. Did you wear it around any deployment-related combat noise or when you were doing combat training?

A. We wore -- I wore the plugs from 2003 until I got out of the military in 2009.

(Tr. at 224:25–225:7)

107.    On November 5, 2021, Plaintiff Camarillo testified in the *Camarillo* trial. Mr. Camarillo provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. You started wearing the Combat Arms Earplugs in 2003?

A. Yes.

(Tr. at 1207:17-18)

Q. How many years did you use just, so we can reground, the Combat Arms Earplugs, from the beginning to when you stopped?

A. I started using them in 2003 until 2019.

(Tr. at 12-14)

108.    On November 8, 2021, Plaintiff Palanki testified in the *Palanki* trial. Mr. Palanki provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q Mr. Palanki, you mentioned during that time frame -- I want to make sure that we're being clear with the jury. You said the first time you ordered them was in 2005 or thereabouts?

A Yes, ma'am.

Q Was that the first time that you actually then used the Combat Arms?

A Yes.

(Tr. at 1495:15-22)

…

Q You've been asked this question before. I am going to ask it again. To the best of your memory, when did you stop using this earplug?

A Well, like I said, we depleted the stock, so well into '16, maybe, early '17. And, you know, I know through 2016, for sure.

(Tr. at 1504:6-11)

109.    On December 3, 2021, Plaintiff Finley testified in the *Finley* trial. Mr. Finley provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. When did you first join the military?

A. I believe it was October 2006.

(Tr. at 884:1-2)

…

Q. And did you receive hearing protection while at Fort Benning?

A. Yes.

Q. What type of hearing protection did you receive?

A. The CAEv2s.

(Tr. at 885:24-886:3)

48

A.135

110.   On December 10, 2021, Plaintiff Montero testified in the *Montero* trial. Mr. Montero provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

> Q. All right. Now, you -- you -- I think you testified that you believe you got your first pair of the Combat Arms Version 2 earplug sometime right after 9/11; is that right?
>
> A. That is correct.
>
> Q. And you had that as your hearing protection you said through 2016, right?
>
> (Tr. at 122:20–123:1)

111.   On December 10, 2021, Plaintiff Stelling testified in the *Stelling* trial. Mr. Stelling provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

> Q. So from approximately 2007 through 2010, you would have used the Combat Arms?
>
> A. Yes.
>
> (Tr. at 31:13-16)

112.   On January 13, 2022, Plaintiff Sloan testified in the *Sloan-Wayman* trial. Mr. Sloan provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

> Q. Does this middle of 2004 represent the first pair of Combat Arms that you got?
>
> A. That is when I received -- that is when I received my first pair of Combat Arms Earplugs.

(Tr. at 125:24–126:2)

…

Q. You stopped using the Combat Arms plug when you retired from the military in 2015, right?

A. Yeah, I never -- I never used it after I got out of the Army.

(Tr. at 306:5-8)

113.    On January 19, 2022, Plaintiff Wayman testified in the *Sloan-Wayman* trial. Mr. Wayman provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. Do you recall when you first got your Combat Arms, sir?

A. I do. It was part of my initial issue when I started flight school at Fort Rucker. It was about the end of Apri[l]/early May 2004.

(Tr. at 51:7-11)

…

Q. You got the Combat Arms initially in 2004 and then did you continue to use those through your career for a period of years?

A. I did. I used them through until 2016.

(Tr. at 79:22-25)

114.    On March 17, 2022, Plaintiff Vilsmeyer testified in the *Vilsmeyer* trial. Mr. Vilsmeyer provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. The jury has heard about the Combat Arms earplug,
the CAE Version 2. Did you use that earplug, sir?

A. I did, sir.

Q. For how long?

A. 2006 to early 2017 -- roughly 11 years, sir.

(Tr. at 20:20-25)

115.   On March 18, 2022, Plaintiff Wilkerson testified in the *Wilkerson* trial.

Mr. Wilkerson provided the following testimony in response to questions related to

the timing of his use of the Combat Arms

Q. Now, you first got your Combat Arms Earplug Version
2 at Fort McCoy; is that correct?

A. Yes, ma'am.

Q. In March 2010?

A. Yes, ma'am.

(Tr. at 1300:3-7)

Q. All right. Did you have to train the following year?

A. Yes, sir, the summer of 2012.

Q. And you did your two weeks?

A. Yes, sir.

Q. Were you still wearing Combat Arms Earplugs?

A. Yes, sir.

(Tr. at 1273:18-23)

Q. Okay. And tell the jury what type of weapons you
trained on with these CAEv2s in in 2012?

A. We had three different days of range training. One day was from probably six o'clock in the morning to just after dark we were at the range qualifying with our individual weapon, which would be M16. The following day or sometime during that week, we had a crew-served weapons range, which is the squad automatic weapon, 50 caliber machine gun, the Mark 19 grenade launcher, and the M240 Bravo, which is a larger caliber of automatic weapon.

(Tr. at 1274:14-23)

116.    On March 31, 2022, Plaintiff Kelley testified in the *Sloan* trial. Ms.

Kelley provided the following testimony in response to questions related to the

timing of his use of the Combat Arms:

Q. Okay. So just so we're on the same page, I understand you were in the military from 2004 through 2012?

A. That's correct.

Q. Okay. And you wore the Combat Arms Earplugs in between 2004 until here. Right? Your time in Kuwait?

A. Correct.

Q. Okay.

A. Well, after -- so right after Kuwait, until I cleared, I had them in my possession, yes, ma'am.

Q. And you didn't wear the Combat Arms Earplugs after February 10th of 2010 -- 2011? I'm sorry.

A. I don't know if that's true, but I definitely did not wear them after February, was that 21st, 2012. The reason why I say that is because my office was in the motor pool, and you have to wear the yellow ones in the motor pool. I actually have a picture -- but that's beside the point. So I definitely was in the motor pool. Once I came back from

52

A.139

deployment, I'm pregnant in this photo, that's how I know that it was after that date.

(Tr. at 1230:14–1231:3)

117.   On April 22, 2022, Plaintiff Vaughn testified in the *Vaughn* trial. Mr. Vaughn provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. Tell us when you first joined the Army.

A. I first joined the Army in April of 2006, ma'am.

(Tr. at 11:12-13)

…

Q. And did you receive hearing protection at basic training at Fort Leonard Wood?

A. Yes, ma'am, I did. I actually received them the same day I got my hair cut and shots and uniform issued all that other stuff. They just run you through the line to get your stuff.

Q. Do you remember what type of hearing protection they gave you on that day?

A. The CA -- the CAE Version 2. Sorry.

(Tr. at 13:18-25)

…

Q. And you told the jury that you wore a Combat Arms every time, right?

A. I wore my hearing protection every time. Yes, sir.

Q. And you wore that after you came back in 2008 all the way through 2010. That's what you told the jury.

A. Correct, sir. Those were part of our uniform, sir.

(Tr. at 76:1-6)

118. On May 12, 2022, Plaintiff Beal testified in the *Beal* trial. Mr. Beal provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. How long did you use the Combat Arms, version 2, during your service with the Army?

A. The whole time that I was in the service, from '05 to 2011.

(Tr. at 16:13-15)

119. On March 7, 2022, Plaintiff Maciel was deposed in connection with his claims in the MDL court. Mr. Maciel provided the following testimony in response to questions related to the timing of his use of the Combat Arms:

Q. Okay. So you first used the Combat Arms earplugs in Iraq in 2008; is that right?

A. Yes, ma'am.

Q. And then you continued to use the Combat Arms earplugs from 2008 through your deployment in Afghanistan in 2010; is that right?

A. Yes, ma'am.

(Tr. at 28:25–29:2.)

…

Q. Okay. So in or around 2010 or 2011 is when you stopped wearing the Combat Arms earplugs; is that right?

A. Yes, ma'am.

Q. Okay. And you did not wear the Combat Arms Earplugs Version 2 prior to your deployment to Iraq in 2008; is that right?

A. Yes.

(Tr. at 29:16-22.)

…

Q. So you deployed to Iraq in May 2008; is that right?

A. Yes.

(Tr. at 30:18-20.)

120. On May 23, 2022, the MDL court entered an order, Wave Order #3 (MDL Dkt. No. 3126), stating that: (1) "[Wave 3] Plaintiffs must produce to Defendants, through MDL Centrality, copies of Plaintiffs' relevant records accessible via the public online sources, MyHealtheVet portal, the TRICARE Online Patient Portal, and MilConnect." (¶ 2); (2) "Plaintiffs must request copies of their current DoD medical records by submitting a Form DD2870 Authorization for Disclosure to their servicing military treatment facility's records department" (¶ 3); and "Plaintiffs must also provide Defendants signed versions of (i) Standard Form 180 for the release of DoD medical and personnel files (see Exhibit C) and (ii) VA Form 3288 for the release of VA disability claims files (see Exhibit D). Defendants' records vendor may use these authorizations to seek relevant records from the VA and DoD…." (¶ 5).

121.   On May 3, 2020, Major Nicole M. Kim of the Department of the Army,

Legal Services Agency sent a letter to MDL Lead Counsel, Bryan F. Aylstock, and

MDL defense counsel Mark J. Nomellini.  The letter stated:

> The Army is processing the request for the other
> Bellwether plaintiffs; however, the Army does not have
> the ability to retrieve medical records for those Soldiers
> who are continuing to serve within the military. Those
> Soldiers who are currently affiliated with the Army will
> need to fill out Department of Defense (DD) Form 2870
> and bring the form to their servicing military treatment
> facility's records department. Their military treatment
> facility's records department will fulfill the request and
> provide the Soldier's complete medical record.

122.   On October 19, 2021, Josh Kolsky, Trial Attorney for the U.S.

Department of Justice's Federal Programs Branch, sent a letter to MDL Lead

Counsel Bryan F. Aylstock, Shelley Hutson, and Christopher Seeger.  In the letter

Mr. Kolsky stated:

> Many of the records sought by Plaintiffs are already
> available to them through the websites described herein.
> Utilizing these resources will allow Plaintiffs convenient
> access to their records while lessening the burden on the
> non-party federal agencies.

> Accordingly, DoD will defer further action on the August
> 8, 2019 Touhy request (and the related requests associated
> with the Court's Privacy Act Orders) until Plaintiffs'
> counsel have (1) identified the Plaintiffs, if any, who are
> unable to access records through the sources described
> herein and (2) specified the records they could not access.
> Also, in any future requests to the Government for medical
> or personnel records, Plaintiffs should state in the request

whether they have attempted to access the requested records through sources already available to them and whether they were able to obtain the records from those sources.

123. On December 17, 2020 the U.S. Department of Veterans Affairs ("VA"), MDL Plaintiffs, and the MDL Defendants filed a stipulation on the MDL docket, Amended Joint Stipulation Regarding Supplemental Production of VA Records for Bellwether Trial Group A Through D Plaintiffs. In the stipulation, MDL Plaintiffs agreed that following a supplemental production from the VA, "Bellwether Group A through D Plaintiffs are responsible for obtaining and producing their own VA records whether from the MyHealthVet portal or, if unavailable on such portal, directly from the provider."

124. On March 23, 2022, the MDL Court entered Case Management Order No. 40, stating:

> In lieu of a DD214, plaintiffs may submit a DoD Military Service Information Report produced by the VA Blue Button (colloquially the "Blue Button Report"), which is available through MyHealtheVet. The DoD Military Service Information Report, like a DD214 form, is an official DoD record which identifies basic service information including a veteran's branch of service and period of service. This document is easily accessible to a veteran and/or a representative with the veteran's credentials through a direct electronic download. No request for the information is required.

125. There were 16 bellwether trials (involving 19 individual plaintiffs) tried to verdict between April 2021 and May 2022: *EHK* (involving Plaintiffs Estes,

57

Hacker, and Keefer), *McCombs*, *Baker*, *Adkins*, *Blum*, *Palanki*, *Camarillo*, *Finley*, *Montero*, *Stelling*, *Sloan-Wayman* (involving Plaintiffs Sloan and Wayman), *Vilsmeyer*, *Wilkerson*, *Kelley*, *Vaughn*, and *Beal*. The verdict forms for *Estes, Hacker, Keefe, McCombs, Baker, Adkins, Blum, Palanki, Camarillo, Finley, Montero, Stelling, Wayman, Wilkerson, Kelley, Vaughn, and Beal* described all Defendants collectively as "3M."

126.   To date, the parties have filed Joint Pretrial Submissions for sixteen bellwether trials. The EHK plaintiffs submitted a combined pretrial stipulation and Sloan and Wayman each submitted separate pretrial stipulations for their joint trial. The Parties filed seventeen Joint Pretrial Submissions in sixteen bellwether trials.

127.   On March 26, 2021, the MDL Court issued an Order in the *EHK* Trial. The      MDL      Court's      order      regarding      Defendants'      website, http://www.3mearplugfacts.com.  The MDL Court stated that:

> This matter is before the Court on Plaintiffs' Motion for
> Hearing, ECF No. 1709, regarding Defendants' website,
> https://www.3mearplugsfacts.com.     In     the     briefing,
> questions were raised on both sides about the other's
> internet activity and the potential resulting improper
> influence on the jury pool. Consequently, the Court
> ordered Defendants' lead trial lawyers and a corporate
> representative,   and   Plaintiffs'   lead   counsel   Bryan
> Aylstock and Chris Seeger, and all Plaintiffs' counsel of
> record in the Estes', Hacker's, and Keefer's cases, to
> submit affidavits or sworn declarations regarding specific
> aspects of their websites, including visitor information
> tracking  and  advertisement  targeting,  in  an  effort  to
> pinpoint any attempts to tamper with the jury pool.

> After fully considering the affidavits and declarations
> submitted, the Court is satisfied that neither side has made
> any effort to influence or attempt to influence the jury
> pool. Accordingly, Plaintiffs' Motion for Hearing is
> DENIED. However, to mitigate any lingering concerns,
> the Court will address the issue of internet advertisements
> and research regarding the 3M litigation during voir dire.
> Additionally, both sides are free to alert the Court should
> other information come to light regarding any attempt to
> improperly influence the jury pool.

(Pp. 1-2.)

128. On September 20, 2021, the MDL Court provided preliminary

instructions to the jury during Brandon Adkins Bellwether trial. The MDL Court

instructed the jury:

> Please do not read, listen to, or watch any news reports of
> this trial or anything else that might bear upon this trial in
> any way. If you inadvertently hear or see a news report
> about the trial, you must turn the page if it's the
> newspaper, turn off the television if it's TV, change the
> radio station, the television station, whatever, whatever
> you have to do to avoid coming into contact with some
> information about the trial. And I don't know whether
> there will be or there won't be. Again, this is a standard
> instruction. But you must avoid it should there be anything
> like that, and then advise the Court if it has happened.
>
> Also, another very important instruction: You should not
> and must not conduct any research on your own or make
> any independent inquiry on your own about the matters
> that are discussed here during the trial, no matter how
> tempting it may be. We used to only have to be concerned
> about dictionaries and encyclopedias. Of course, in this
> day and age with the Internet, the concern is much, much
> greater. It is critical that you decide this case based only
> on what the lawyers give you here in this courtroom as
> evidence. If you're sick of hearing me say that, you're

A.146

going to be even more sick at the end of two weeks of hearing me say that, but it is critical. And so for you to go out on your own and to research matters outside of this courtroom, first, it would be a violation of your oath, but it would be entirely improper. It's nothing the attorneys have given to you, it's nothing that they can anticipate, and it would be wrong. So please do not do that.

(Tr. at 40:2-41-4.)

129.    On March 14, 2022, the MDL court provided preliminary instructions to the jury during Luke Vilsmeyer's Bellwether trial.  Judge Dalton instructed the jury:

> You're not to use internet maps or Google Earth or any other program or device to search for any view of any location that might be discussed in the testimony. I encourage you not to read, watch, or listen to any accounts or discussions that are related to the case that might be reported by the newspapers, television, radio, the internet, or any other news media. And let me give you a couple practical pointers.
>
> I would encourage you to avoid the news, to avoid the newspaper, certainly to avoid any sort of internet browsing or internet search about the news. If you have news alerts turned on your phone, when you go home, you might take the extra precaution of turning those off.

(Tr. at 206:10-22.)

130.    On May 9, 2022, the MDL Court provided preliminary instructions to the jury during James Beal's Bellwether trial.  At the outset of the Bellwether trial of James Beal, Judge Rosenberg instructed the jury:

> Also, you must avoid during the trial any news reports during the trial. I do not know whether there will be any.

60

A.147

So if you inadvertently hear something or see something on television, it does not matter, you must avoid it. If you turn on the radio at home, driving home, and hear something you must turn it off, change the station. If something is reported about the case or the trial, you must change the channel, or do not read newspapers.

(Tr. at 145:13-20.)

It is a really big deal. I say that to emphasize that to be on high alert. It is not, you know, normal everyday life and I ask for you to be on guard about it necessarily. You can slip up easily.

(Tr. at 146:17-20.)

131. As of July 29, 2022, the MDL docket included claims brought by over 221,000 Plaintiffs, certain of which reside on an "active" docket and others of which reside on an "administrative docket."   On March 1, 2022, 1,611 Active or Administrative docket cases were dismissed.  On April 26, 2022, 1,613 Active or Administrative docket claimants were dismissed.  On May 2, 2022, 1,457 Active or Administrative docket claimants were dismissed.  On May 4, 2022, 786 Active or Administrative docket claimants were dismissed. On May 6, 2022, 19,478 Active or Administrative docket claimants were dismissed.[7]  On May 18, 2022, 1,448 Active or Administrative docket claimants were dismissed.  On May 23, 2022, 3,919 Active

---

[7]   This count does not include the 1,895 cases that were dismissed on May 6, 2022 but then undismissed on May 23, 2022.

or Administrative docket claimants were dismissed.  On July 28, 2022, 14,490 Active or Administrative docket claimants were dismissed.

132.  As of July 29, 2022, the "active docket" was comprised of claims brought by 122,176 Plaintiffs, including bellwether plaintiffs in post-trial briefing, Wave cases, and the non-Wave cases.

133.  As of July 29, 2022, the Administrative docket included claims brought by over 97,000 Plaintiffs.

134.  As of the Petition Date, the Minnesota state court action included over 2,000 lawsuits asserted against 3M, Aearo Technologies, LLC, and other debtors. In addition, there are cases filed in Minnesota state court that have been removed to the United States District Court for the District of Minnesota and are pending a decision on remand or transfer to the MDL.

135.  On November 22, 2021, the MDL court issued Case Management Order No. 31 (Wave Order #1). The MDL court stated that it would be requiring "several hundred cases" "to [be] work[ed] up" "simultaneously in waves" of "approximately 500 cases per wave." (P. 1.)  The MDL court identified 500 cases to take part in "Wave 1."

136.  On February 22, 2022, the MDL court issued Case Management Order No. 34 (Wave Order #2). The MDL court ordered a second wave of 500 cases to be worked up for trial.  The MDL court identified 500 cases to take part in "Wave 2."

137.    On May 6, 2022, the MDL court issued Case Management Order No. 45 (Amended Wave Order #1 and #2).

138.    On May 23, 2022, the MDL court issued Case Management Order No. 47 (Wave Order #3). The MDL court ordered a third wave of 500 cases to be worked up for trial.  The MDL court identified 500 cases to take part in "Wave 3."

139.    On July 29, 2022, the MDL court issued Case Management Order No. 49 (Amended Discovery & Wave Schedule) that continued MDL Wave discovery for three weeks and set a revised Wave discovery schedule. The current Wave discovery schedule is as follows:

| Prior Date | Deadline | Agreed Upon Amended Date |
|---|---|---|
| Ongoing | Wave 2 - Expert deposition confidentiality designations due within 30 days of deposition; errata due within 45 days of deposition | 21 days later than otherwise due |
| 8/8/2022 | Wave 3 - Responses to discovery due w/in 30 days of receipt (8/8 latest if served on 7/7) [CMO 47] | 8/29/2022 |
| 8/15/2022 | Wave 2 - Defense Expert Disclosure Deadline [CMO 34; Amended per CMO 45] | 9/5/2022 |
| 8/21/2022 | Wave 2 - M&C Deadline re venue recommendations [CMO 34] | 9/11/2022 |
| 8/25/2022 | Wave 2 - Plaintiff Rebuttal Expert Disclosure Deadline [CMO 34; Amended per CMO 45] | 9/15/2022 |
| 9/6/2022 | Wave 3 - Plaintiff Deposition Deadline [CMO 47] | 9/27/2022 |
| 9/10/2022 | Wave 2- Joint Venue Recommendations Due to Court [CMO 34] | 10/1/2022 |
| 9/26/2022 | Wave 2 - Expert Deposition Deadline [CMO 34] | 10/17/2022 |

63

A.150

| 9/27/2022 | Wave 3 - DME Reports due to Plaintiff (14 days prior to P Expert Disclosure Deadline or w/in 7 days of Defendants receiving results, whichever is earlier) [CMO 47] | 10/18/2022 |
| Prior Date | Deadline | Agreed Upon Amended Date |
| 9/29/2022 | Wave 2 - Deadline to notify opposing counsel of exhibits previously produced as Confidential to be filed under seal as attachments to COL, Daubert or dispositive | 10/20/2022 |
| 9/30/2022 | Wave 3 - Fact Deposition Deadline [CMO 47] | 10/21/2022 |
| 9/30/2022 | Wave 3 - Fact Discovery Deadline [CMO 47] | 10/21/2022 |
| 10/3/2022 | Wave 2 - Deadline to notify opposing counsel of agreement with exhibits to be filed under seal as attachments to COL, Daubert or dispositive motions (3 days b/f filing deadline) | 10/24/2022 |
| 10/6/2022 | Wave 2 - Daubert motions and dispositive motions Deadline [CMO 34] | 10/27/2022 |
| 10/6/2022 | Wave 2 - Choice of Law Motions Deadline [CMO 34] | 10/27/2022 |
| 10/7/2022 | Wave 2 - BrownGreer will provide unsealed versions of briefs/exhibits to COL, Daubert or dispositive motions to the court (24 hours after filing deadline) — Wave 2 [Order re Sealing] | 10/28/2022 |
| 10/10/2022 | Wave 2 - Deadline to file motion to seal with respect to exhibits re COL, Daubert or Dispositive Motions (4 days after filing deadline); | 10/31/2022 |

A.151

| 10/11/2022 | | 11/1/2022 |
|---|---|---|
| | Wave 3 - Plaintiff Expert Disclosure Deadline [CMO 47] | |

140.   On July 22, 2022, the MDL court issued an order setting the trial date for "Wave 1" plaintiff David Elliott George to begin on October 24, 2022, in the U.S. District Court for the Northern District of Florida.

141.   On July 15, 2022, the United States Judicial Panel on Multidistrict Litigation published a document online titled MDL Statistics Report – Distribution of Pending MDL Dockets by Actions Pending. A true and correct copy of the document, which is available at https://www.jpml.uscourts.gov/sites/jpml/files/ Pending_MDL_Dockets_By_Actions_Pending-Jul-15-2022.pdf.   The document contains the following statistics:

- "Actions Now Pending" in the MDL: 290,409

- "Total Actions (Historical)" in the MDL: 308,953

- "Actions Now Pending" in all active MDLs combined: 426,495

- "Total Actions (Historical)" in all active MDLs combined: 770,823

142.   Attached hereto as Exhibit 1 is a true and correct printout of the MDL docket since the filing of the Debtors' bankruptcy petition in this Court.

143.   On July 26, 2022, Debtors filed a suggestion of bankruptcy in the MDL court.

65

144.   On July 26, 2022, the MDL court issued an order scheduling a show cause hearing relating to the bankruptcy case filed in this Court. The MDL court set a hearing on the order to show cause for 8:30 a.m. CT on July 27, 2022.

145.   On July 26, 2022, the MDL court issued an order amending its previous order scheduling a show cause hearing relating to the bankruptcy case filed in this Court. The MDL court moved the MDL's show-cause order to 7:30 a.m. CT on July 27, 2022.

146.   On July 26, 2022, Plaintiffs' counsel Ashley C. Keller (of Keller Postman LLC) filed a Notice of Potential Tag-Along Action with the United States Judicial Panel on Multidistrict Litigation.

147.   On July 27, 2022, the MDL court held a show cause hearing relating to the bankruptcy case filed in this Court. The Court held this hearing.

148.   On July 27, 2022, Plaintiff Richard Valle (represented by Keller Postman LLC) filed in the MDL court an *Ex Parte* Motion and Incorporated Memorandum to Issue a Temporary Restraining Order to Enjoin 3M from Taking Any Action Outside the MDL to Enjoin Parties from Pursuing CAEv2 Litigation Against 3M. The motion asked the MDL court to issue a temporary restraining order that would "enjoin 3M from taking any action outside of this MDL to enjoin other parties from pursuing their CAEv2 claims against 3M." (P. 1.)

149.   On July 27, 2022, the MDL court issued a Referral and Order setting an expedited briefing schedule for 3M to respond to plaintiff Valle's *ex parte* motion.

150.   On July 27, 2022, 3M filed in the MDL court its Opposition to Plaintiff Valle's Motion for Temporary Restraining Order.

151.   On July 28, 2022, the MDL court issued an order denying plaintiff Valle's *ex parte* order.

152.   On July 28, 2022, the MDL court issued an order denying Defendants' motion to require production of medical records.

153.   On July 29, 2022, the MDL court issued Case Management Order No. 49—Amended Discovery & Wave Schedule, which pushed most Wave discovery deadlines back three weeks.

154.   On July 29, 2022, the Keller Postman firm filed a notice of potential tag-along action before the JPML under 28 U.S.C. § 1407, suggesting that these entire chapter 11 cases should be potentially transferred to the MDL court.

155.   On August 2, 2022, the MDL court issued an order in relation to Debtors' suggestion of bankruptcy filed in the MDL. The order stated: "There presently is no stay as to 3M Company."

156.   On August 2, 2022, the Keller Postman firm a tag-along notice with the JPML, seeking to potentially transfer the bankruptcy cases and listing parties more specifically.

157.   On August 3, 2022, the Keller Postman firm emailed 3M's counsel to inform 3M that it would be renewing its request for a TRO on behalf of Plaintiff Richard Valle before the MDL court.

158.   On August 3, 2022, Plaintiff Richard Valle (represented by Keller Postman LLC) filed in the MDL a Memorandum in Support of Richard Valle's Emergency Motion on Behalf of All Plaintiffs for Preliminary Injunction Against Defendant 3M Company. The motion asked the MDL court to issue a preliminary injunction that would "enjoin 3M and any party acting on 3M's behalf, from filing any motion, action, proceeding, brief, or other judicial filing that seeks to enjoin parties from pursuing CAEv2-related claims against 3M in this MDL or in district courts where MDL cases have been remanded" and asked "for an expedited briefing schedule such that any opposition be due within 7 days and a hearing to follow within 2 days." (P. 1.)

159.   On August 3, 2022, the MDL court ordered expedited briefing regarding plaintiff Valle's motion for a temporary restraining order. The MDL court stated the following:

160.   Plaintiff Richard Valle has filed an Emergency Motion for Preliminary Injunction Against 3M Company. *See* ECF No. 3358. Given the urgency of the above motion, Defendant 3M Company is directed to file its response, if any, by August 9, 2022 at 5 p.m. Central. Plaintiff's reply, if any, is due by August 10, 2022

at 5 p.m. Central. Oral argument on the matter will be held on August 11, 2022 at 10 a.m. Central at the United States District Court, One North Palafox Street, Courtroom 5, Pensacola, Florida. Each side must advise the Court of who will argue on its behalf by August 10, 2022 at 5 p.m. Central. Counsel who will present argument must appear in person. (P. 1.)

161.    On September 30, 2021, Dr. Crawford testified in the *Adkins* trial. Dr. Crawford provided the following testimony in response to questions related to Mr. Adkins use of the Combat Arms:

> Q. Okay. And now if we go over to the type of hearing protection used, what does that tell us?
>
> A. At this point it reports "Other." And then if you -- that outcome -- when they mark the "Other" category, they put in the remarks what type of hearing protective device. So it was HPD quad-flange.
>
> Q. What's the quad-flange?
>
> A. Three -- instead of three flanges, it's got four.
>
> Q. Single-ended?
>
> A. Yes.
>
> Q. Not the Combat Arms Version?
>
> A. Not the Combat Arms.
>
> (Tr. at 33:16-34:2)

162.   On May 20, 2021, Mr. McCombs testified in the *McCombs* trial. Mr. McCombs provided the following testimony in response to questions related to his use of the Combat Arms:

> Q. And if we can go a little farther down, please. On this audiogram, there is a reference at least personal hearing protection, and it says that the type issued is "Other." Do you see that?
>
> A. Yes, ma'am.
>
> Q. And then it says your hearing protection device previously fit, and under "Others," sorry, before that, "Hearing protection device: Quad-flange." Do you see that?
>
> A. Yes, ma'am.
>
> Q. But you have no recollection of ever getting quad-flange even though that's what the audiogram says; is that right?
>
> A. That's correct, ma'am. I've never seen a quad-flange. I also have never been an E1 in the Army, as this states also.
>
> Q. Okay. So let's go further up to the top. What you just pointed out is that this has an E1 as your pay grade, but just above that it has a social security number, date of birth, and we've for your privacy purposes cleared out some of that. But is that -- are those the correct four digits of your social security number there?
>
> A. Yes, sir, my last four, that's correct.
>
> Q. And is that the correct year for your date of birth?
>
> A. Yes, ma'am, it is.
>
> (Tr. at 236:7-237:3)

A.157

163.   On August 4, 2022, plaintiff Guy Cupit (represented by Quinn Emanuel Urquhart & Sullivan, LLP) filed in the MDL court a Motion for Ruling on 3M Company's Waiver and/or Judicial Estoppel of Any Defense Regarding Its Full Liability, and Request for Expedited Briefing and to Join August 11, 2022 Hearing. Plaintiffs' attorney Jennifer Hoekstra (of Aylstock Witkin Kreis Overholtz' PLLC) submitted a declaration in support of the motion.  Cupit stated the following:

> Mr. Cupit therefore asks this Court for a ruling that 3M has waived and/or is judicially estopped from defending, arguing, or otherwise attempting to avoid any portion of its liability based on the argument that 3M is the "wrong party" because it does not bear full liability for all CAEv2-related injuries. (P. 2.)

> Mr. Cupit therefore respectfully requests that the Court rule 3M has waived and/or is judicially estopped from arguing it bears anything but full liability for CAEv2-related injuries. (P. 13.)

164.   On August 5, 2022, the MDL court ordered expedited briefing regarding plaintiff Cupit's motion. The MDL court stated the following:

> Plaintiff Guy Cupit has filed a Motion for Ruling on 3M Company's Waiver and/or Judicial Estoppel of Any Defense Regarding Its Full Liability, and Request for Expedited Briefing and to Join August 11, 2022 Hearing. See ECF No. 3361. The Court DEFERS RULING on the substantive motion but GRANTS the request for expedited briefing and to join the August 11, 2022 hearing. Defendant 3M Company must file a response by August 9, 2022 at 5 p.m. Central. The response must address the successor liability issue raised in Cupit's motion, as well as the extent to which the recent indemnification agreement bears on 3M's successor liability. More

A.158

specifically, 3M's response must outline the terms of its purchase of Aearo in 2008, including assumption of liabilities, if any, and also the reported 2010 transfer to 3M of "the component of [Aearo's] business responsible for the significant majority of its earplug sales." See In re Aearo Tech. LLC, No. 1:22bk2890, ECF No. 11 at 11. No reply will be permitted. Both sides should be prepared to discuss these issues at the August 11th hearing. Each side must advise the Court of who will argue on its behalf by August 10, 2022 at 5 p.m. Central. Counsel who will present argument must appear in person. (Pp. 1-2.)

165.   On August 9, 2022, 3M filed Defendant 3M Company's Opposition to Plaintiff Guy Cupit's Motion for Ruling on 3M Company's Waiver and/or Judicial Estoppel of Any Defense Regarding Its Full Liability (MDL Dkt. No. 3372).

166.   On August 9, 2022, 3M filed Defendant 3M Company's Opposition to Plaintiff Richard Valle's Memorandum in Support of Richard Valle's Emergency Motion on Behalf of All Plaintiffs for Preliminary Injunction Against Defendant 3M Company (MDL Dkt. No. 3370).

167.   On August 10, 2022, the Keller Postman firm filed a reply in support of Plaintiff Richard Valle's Emergency Motion on Behalf of All Plaintiffs for Preliminary Injunction Against Defendant 3M Company.

168.   On June 10, 2022, the MDL court issued an order directing the parties to attend a mediation to begin by July 15. The Order states as follows:

The coming months will involve a massive shift in focus. Waves of individual cases—500 at a time—are proceeding with plaintiff-specific discovery and complete work up for trial. This Court will adjudicate all case-specific *Daubert*

and summary judgment motions in each Wave, and thereafter, the cases that remain will be remanded to their transfer courts for trial. An enormous amount of time and resources will be required to accomplish this endeavor, not just from this Court but from the entire federal judiciary. As of June 10, 2022, there were 233,883 plaintiffs in the MDL, down from 282,902 at its height in September 2021. That averages to approximately 2,500 cases being remanded for trial to each of the 94 districts nationwide, though in all likelihood, some districts will receive many fewer cases and other districts many more, depending on the appropriate venue for individual plaintiffs, although likely no district will be spared the burden. In any event, the amount of judicial resources required to handle this number of cases is staggering.

169.  On August 11, 2022, the MDL Court held a hearing for oral argument on individual plaintiffs' motions for an Emergency Preliminary Injunction (MDL Dkt. No. 3358) and Motion for a Ruling on 3M Company's Waiver and/or Judicial Estoppel of any Defense Regarding its Full Liability (MDL Dkt. No. 3361.) The following statements were made by and to the MDL Court:

Lauria: If you dissect what he's saying on the record, I describe what Mr. Keller is doing as basically a disguised *Klay* motion.  And by *Klay*, I'm sure the Court knows I'm referring to the Eleventh Circuit decision on All Writs Act. His disguised *Klay* relief falls into three categories: One is he's seeking this Court's determination of the 362 issue; the second is, he's seeking a stay of any party's ability to re-litigate the issue; and third is he's basically seeking this Court's determination of what I'm going to call wrongful bankruptcy.

And that's what I really refer to when I talk about the *Klay* issue or his disguised *Klay* motion.  Because, if you read *Klay*, what Mr. Keller is seeking falls squarely within what

73

A.160

he actually said when he took the podium. Now, in his papers he tried to narrowly tailor his relief to enjoin us from seeking an injunction or to enjoin 3M from supporting an injunction. But everything we just heard from Mr. Keller today demonstrates that what Mr. Keller is in fact seeking is a determination that the bankruptcy was wrong and that the bankruptcy should be dismissed.

THE COURT: Well, if I believe that the bankruptcy was fraudulent and was concocted as a way to escape this Court's jurisdiction, then that may be a perfect use of the All Writs Act.

(Tr. at 18:11-19:9.)

THE COURT: My next point was: Whether Aearo was any financial distress?

MS. LAURIA: Well, I would argue they were. They had 230,000 claims being asserted against Aearo. Based on its balance sheet, it could not begin to satisfy 230,000 claims.

THE COURT: Well, the way I read the agreement is that they only had the liability after the agreement was signed. And surely someone will get to the bottom of this. Because if there was no liability and if 3M had all of the liability --and I can assure you that is how 3M proceeded in this court for three-and-a-half years -- it appears to me that they gave Aearo and Aearo agreed voluntarily to take 100 percent of the liability for the claims in this MDL and thus voluntarily agreed to go into financial distress based on that indemnity agreement. So what I understand through the documents is that Aearo assumes all the liability through the indemnification agreement, has to indemnify 3M if 3M pays claims outside of the bankruptcy context, but not in the bankruptcy context because there's a no repayment clause as part of the agreement. But in return, 3M pays Aearo $1.24 billion to reorganize. But the only reason Aearo needs to reorganize is because of this newly-created indemnity agreement. Outside of that, there's no reason, in my view, for 3M to have paid Aearo

74

A.161

the $1.24 billion. The only value that I see to the agreement is that 3M gets to use Aearo's bankruptcy to resolve claims against 3M in bankruptcy court rather than this Court. That's how I view it. Is my -- again, I don't -- and tell me if I'm wrong, but what reason was there for Aearo to reorganize before that indemnity agreement?

(*Id.* at 25:9-26:14)

MR. BEALL: First it's obvious it's a one-off motion, it's just Mr. Cupit, he's by himself in this. Even though Ms. Hoekstra presented an affidavit or declaration in support of it, leadership did not join this, it is not an all-cases filing.

(*Id.* at 50:18-22)

THE COURT: I don't think we need to get into this. Again, are you telling me you're going to be filing a motion to assert the defense or are you -- because otherwise I don't have that in front of me. I do not have a request by 3M to assert the defense.

MR. BEALL: We don't think it's a defense so we don't think we need to amend the answer. Now, if the Court tells us in an order that you have concluded that the Seventh Circuit and the Second Circuit are wrong and you agree with the cases they cite and it is a defense, then at that point we probably would need to move to amend our answer for that purpose. But we don't think we need to because the case law is pretty clear, even though there is a split, that the better rule -- the majority rule seems to be the successor liability is in fact their burden, which makes sense because they've got the burden to prove –

THE COURT: But why -- you say this is important now. Why is it important now but it wasn't before?

MR. BEALL: Well, I mean, the most obvious answer is right now we have a bankruptcy proceeding going on.

THE COURT: Exactly.

A.162

MR. BEALL: And I'm not suggesting that -- but the other point of this is that, you know, when we were trying this cases before, again, we used the bellwether process and I understand –

THE COURT: Well, a bankruptcy proceeding in which it needs to appear that Aearo is legitimately bankrupt or financially distressed and in need of reorganization, and you've done that through an indemnification agreement, and then I suppose you might also try to boost that with the now newly-raised defense.

MR. BEALL: I guess my point, Your Honor, is, respectfully we think we can do any of those things at this point because we can change our litigation –

THE COURT: You can't use this Court to perpetrate a fraud on the bankruptcy court.

(*Id.* at 59:17-61: 2)

MR. AYLSTOCK: With regard to Mr. Wolfson's authority, I have my co-leads here, we absolutely endorse the motion of Mr. Keller and Mr. Wolfson. We join in that.

(*Id.* at 73:22-25)

170. On August 11, 2022, the Quinn Emanuel firm filed a submission related to the hearing that took place in the MDL on August 11, 2022.

171. On August 12, 2022, 3M Company filed a submission related to the hearing that took place in the MDL on August 11, 2022.

172. On September 15, 2021, Plaintiff Nicholas Maciel filed the Master Short Form Complaint and Jury Trial Demand against Defendants 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC. The Complaint names the following entities as

Defendants: 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC." (P. 2.).

173. On August 12, 2022, Plaintiff Nicholas Maciel filed an Adversary Complaint in the United States Bankruptcy Court for the Southern District of Indiana. The Complaint states that it "seek[s] judgment against Defendants 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC (collectively "Defendants")." (P. 1.) The Maciel Complaint further alleges the following:

> Defendants are jointly and severally liable to Plaintiff for their individual and collective tortious acts. (¶ 204.)

> At all times relevant to this action, Defendants had a duty to design, manufacture, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, distribute, and sell the Dual-Ended Combat Arms Earplug with reasonable and due care for the safety and well-being of users, including Plaintiff and other civilians and military personnel who used the device. (¶ 264.)

174. On August 12, 2022, Plaintiff Nicholas Maciel filed a Motion by Nicholas Maciel to Withdraw the Reference and Demand for Jury Trial (Relief Sought From United States District Judge) in the United States Bankruptcy Court for the Southern District of Indiana. The Motion states in pertinent part that, "Plaintiff's personal injury claims in this Adversary Proceeding mirror those pending before the MDL Court." (P. 2.)

175.  On August 12, 2022, Plaintiff Nicholas Maciel (through the Keller Postman firm) filed a tag-along notice with the JPML.

Indianapolis, Indiana
Dated:  August 16, 2022

*/s/ Jeffrey A. Hokanson*
Jeffrey A. Hokanson (Ind. Atty. No. 14579-49)
John C. Cannizzaro (Ohio Atty. No. 85161)
Connor Skelly (Ind. Atty. No. 35365-06) (*pro hac vice*)
**ICE MILLER LLP**
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone:      (317) 236-2100
Facsimile:      (317) 236-2219
Email:        jeff.hokanson@icemiller.com
            john.cannizzaro@icemiller.com
            connor.skelly@icemiller.com

Edward O. Sassower, P.C. (*pro hac vice*)
Emily Geier (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:        edward.sassower@kirkland.com
            emily.geier@kirkland.com

Mark McKane, P.C. (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California  94104
Telephone:      (415) 439-1473
Facsimile:
Email:        mark.mckane@kirkland.com

Chad J. Husnick, P.C. (*pro hac vice*)
David M. Bernick (*pro hac vice*)
Brenton A. Rogers, P.C. (*pro hac vice*)
Renee D. Smith (*pro hac vice*)
Spencer Winters (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:        chad.husnick@kirkland.com
            david.bernick@kirkland.com
            brogers@kirkland.com
            renee.smith@kirkland.com
            spencer.winters@kirkland.com

David I. Horowitz, P.C. (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 South Flower Street, 37th Floor,
 Los Angeles, California 900714
Telephone:      (213) 680-8374
Facsimile:      (213) 808-8074
Email:        david.horowitz@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

78

A.165

**KTBS LAW LLP**

/s/ Robert J. Pfister

Michael L. Tuchin (*pro hac vice*)
Thomas E. Patterson  (*pro hac vice*)
Robert J. Pfister (IN Bar No. 23250-02)
Sasha M. Gurvitz  (*pro hac vice*)
Nir Maoz  (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email: mtuchin@ktbslaw.com
            tpatterson@ktbslaw.com
            rpfister@ktbslaw.com
            sgurvitz@ktbslaw.com
            nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis &*
*Overholtz, PLLC*

**RUBIN & LEVIN, P.C.**

Deborah J. Caruso (IN Bar No. 4273-49)
Meredith R. Theisen (IN Bar No. 28804-49)
135 N. Pennsylvania Street, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 860-2867
Facsimile: (317) 453-8616
Email: dcaruso@rubin-levin.net
        mtheisen@rubin-levin.net

-and-

**OTTERBOURG P.C.**

/s/ Adam C. Silverstein
Melanie L. Cyganowski (*pro hac vice*)
Adam C. Silverstein (*pro hac vice*)
Jennifer S. Feeney (*pro hac vice*)
230 Park Avenue
New York, New York 10169
Telephone: (213) 661-9100
Email: mcyganowski@otterbourg.com
        asilverstein@otterbourg.com
        jfeeney@otterbourg.com

*Counsel for Seeger Weiss LLP*

80

A.167

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

/s/ Eric D. Winston

Adam Wolfson (*pro hac vice)*
Eric D. Winston (*pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: adamwolfson@quinnemanuel.com
       ericwinston@quinnemanuel.com

-and-

Patricia B. Tomasco (*pro hac vice*)
711 Louisiana, Suite 500
Houston, Texas 77002
Telephone: (713) 221-7000
Facsimile: (713) 221-7100
Email: pattytomasco@quinnemanuel.com
       patrickking@quinnemanuel.com
       joannacaytas@quinnemanuel.com

-and-

Matthew S. Hosen (*pro hac vice*)
1109 1st Avenue, Suite 210
Seattle, Washington 98101
Telephone: (206) 905-7000
Email: matthosen@quinnemanuel.com

*Counsel to the Bellwether Plaintiffs*

**FISHMAN HAYGOOD, L.L.P.**

/s/ Tristan Manthey
Brent B. Barriere (*pro hac vice*)
Tristan Manthey (*pro hac vice*)
Cherie D. Nobles (*pro hac vice*)
Jason W. Burge (pending *pro hac vice*)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Fax: (504) 586-5250
Email:  bbarriere@fishmanhaygood.com
           tmanthey@fishmanhaygood.com
           cnobles@fishmanhaygood.com
           jburge@fishmanhaygood.com

*Counsel for Clark, Love & Hutson, PLLC*

**BAILEY & GLASSER, LLP**

/s/ Brian Glasser

Brian Glasser
Kevin W. Barrett
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Telephone: (304) 345-6555
Fax: (202) 463-2103
Email: BGlasser@baileyglasser.com
KBarrett@baileyglasser.com

*Counsel for the Bailey & Glasser Plaintiffs*

**PULASKI KHERKHER, PLLC**

/s/ Adam Pulaski

Adam Pulaski (pro hac vice forthcoming)
2925 Richmond Avenue Suite 1725
Houston, TX 77098
Telephone: (703) 664-4555
Facsimile: (703) 664-7543
Email: adam@pulaskilawfirm.com

*Counsel for the Pulaski Herkher Plaintiffs*

A.171

**CAPLIN & DRYSDALE, CHARTERED**

/s/ Kevin C. Maclay

Kevin C. Maclay (*pro hac vice*)
Todd E. Phillips (*pro hac vice*)
Kevin M. Davis (*pro hac vice*)
One Thomas Circle, NW, Suite 1100
Washington, District of Columbia 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
Email: kmaclay@capdale.com
        tphillips@capdale.com
        kdavis@capdale.com

*Counsel for Certain Claimants Represented by Cory Watson, P.C.; Certain Claimants Represented by Heninger Garrison Davis, LLC; and Certain Claimants Represented by The Gori Law Firm, P.C.*

85

A.172

**SMITHAMUNDSEN, LLC**

/s/ Martha R. Lehman

Martha R. Lehman (IN Bar No. 14287-49)
Mark R. Wenzel (IN Bar No. 1797-49)
201 North Illinois Street, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 464-4100
Facsimile: (317) 464-4101
Email: mlehman@smithamundsen.com
        mwenzel@smithamundsen.com

*Counsel for Tracey Fox King & Walters and
The Johnson Law Group*

86

A.173

**JACOBSON HILE KIGHT LLC**

/s/ Michael W. Hile

Michael W. Hile
Andrew T. Kight
The Elliott House
108 E. 9th Street
Indianapolis, Indiana 46202
Telephone: (317) 608-1131
Email: mhile@jhklegal.com
        akight@jhklegal.com

*Counsel for Weitz & Luxenberg, PC*

87

A.174

*/s/ Ashley C. Keller*

Ashley C. Keller (Bar #1029118)
ack@kellerpostman.com
Nicole C. Berg (Pro Hac Vice)
ncb@kellerpostman.com
Ashley Barriere (Pro Hac Vice)
ashleybarriere@kellerpostman.com
**KELLER POSTMAN LLC**
150 North Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 741-5220
Facsimile: (312) 971-3502

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**<u>ORDER</u>**

This matter is before the Court on an Emergency Motion for Preliminary Injunction Against 3M Company filed by Plaintiff Richard Valle, *see* ECF No. 3358, which 3M opposes, *see* ECF No. 3370.  The motion follows on the heels of a petition for Chapter 11 bankruptcy filed in the Southern District of Indiana by five of the six defendants in this MDL—Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and 3M Occupational Safety LLC (collectively, "Aearo").  In the bankruptcy court, Aearo has, among other things, requested that the automatic stay of actions or proceedings against it be extended to 3M Company, Aearo's non-debtor parent, and has made clear that its motive for doing so is to upend this statutorily authorized MDL.  *See In re Aearo Techs. LLC*, Case No. 1:22bk2890, Informational Brief, ECF No. 12 at 56-61.  Valle now asks this Court to enjoin 3M Company from (1) supporting an extension of the automatic stay that would preclude individual plaintiffs from litigating CAEv2 matters against 3M in

Case 3:19-md-02885-MCR-GRJ   Document 3389   Filed 08/16/22   Page 2 of 8
Case: 22-2606   Document: 32   Filed: 12/12/2022   Pages: 457

Page 2 of 8

the MDL or following remand for trial; and (2) relitigating matters in bankruptcy court that this Court has already adjudicated.  Oral argument was heard on August 11, 2022.  After careful consideration, Valle's motion is granted in part and denied in part.

Valle's motion is grounded in the All Writs Act, which empowers federal courts to "issue all writs necessary or appropriate" to safeguard the integrity of "ongoing proceedings" and "potential future proceedings" before them, and to "protect or effectuate" their prior orders and judgments.  *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099-1100 (11th Cir. 2004); *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993); *see also* 28 U.S.C. § 1651.  A court's authority to enjoin certain activities in other forums is broad and "extends, under appropriate circumstances, to [any] persons who . . . are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice."  *United States v. New York Tel*. Co., 434 U.S. 159, 174 (1977).  Nevertheless, an All Writs Act injunction is an extraordinary remedy which, although derived from statute, is "essentially equitable" and, as such, generally is not available where there are adequate remedies at law.  *See Klay*, 376 F.3d at 1100.

All Writs Act injunctions must be "predicated on the existence of some underlying proceeding over which the issuing court [already] has jurisdiction[.]"  *See*

Case 3:19-md-02885-MCR-GRJ   Document 3389   Filed 08/16/22   Page 3 of 8
Case: 22-2606   Document: 32   Filed: 12/12/2022   Pages: 457

Page 3 of 8

*Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1264 (11th Cir. 2021).[1] Accordingly, to obtain an injunction under the Act, the requesting party must "point to some ongoing proceedings, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *See id.* For threats to ongoing proceedings, "a court may enjoin almost any conduct which, left unchecked, would have the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." *See Klay*, 376 F.3d at 1102. For threats to prior orders, a court "has the power to enjoin a party before it from attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in another federal court." *See New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998) (citing *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 637 (5th Cir. 1971)).

The Court begins with Valle's request that 3M be enjoined from supporting a bankruptcy injunction that would preclude individual plaintiffs from continuing to litigate CAEv2 matters against 3M in the MDL and other forums. There can be no doubt that if Aearo's automatic bankruptcy stay is extended to 3M, this Court will be prevented from guiding this litigation to "its natural conclusion." *See Klay*, 376

---

[1] *See also Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) ("The Act does not create any substantive federal jurisdiction" and is instead a "codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source.").

Case 3:19-md-02885-MCR-GRJ   Document 3389   Filed 08/16/22   Page 4 of 8
Case: 22-2606   Document: 32   Filed: 12/12/2022   Pages: 457

Page 4 of 8

F.3d at 1102.  Except for matters related to the recent bankruptcy filing, the MDL is now at a complete standstill.  Nearly 1,200 cases at various stages of Wave discovery are sitting idle.  Countless scheduled and pending depositions and defense medical exams have been, or will be, indefinitely cancelled.  Roughly 1,500 ripe *Daubert* and summary judgment motions are languishing.  Multiple appeals pending in the Eleventh Circuit Court of Appeals are halted.  Concurrent litigation in Minnesota state court likewise is halted.  And this is only the beginning.  *See*, the "ultimate objective" of this entire scheme is a permanent channeling injunction (and a third-party release of 3M) in the bankruptcy court requiring that all CAEv2 hearing-related claims be resolved through a bankruptcy claims trust rather than adjudicated in an Article III court.  *See In re Aearo*, 1:22bk2890, Informational Brief, ECF No. 12 at 61.  If successful, hundreds of thousands of individual plaintiffs will be deprived of their constitutional right to a jury trial while 3M—a fully solvent and highly profitable Fortune 500 Company that will never actually file a bankruptcy petition itself—will reap all of the benefits of the bankruptcy system without the attendant burdens.[2]  The unabashed justification for dismantling this MDL is 3M/Aearo's

---

[2] The Aearo debtors apparently were solvent wholly owned subsidiaries of 3M until the bankruptcy-eve execution of a funding and indemnity agreement, which left the companies in severe financial distress due to their newly created *exclusive* liability for the CAEv2 claims in this litigation.  As the Court reads it, albeit without the benefit of an evidentiary hearing, the funding and indemnity agreement creates no value other than to mount 3M's escape from this MDL.  In the agreement, Aearo agrees to take on potentially billions in liability for the CAEv2 claims in exchange for 3M funding a claims trust that automatically depletes if and only if 3M faces judgments in the MDL (or state court), artificially tying Aearo's ability to reorganize with

Case 3:19-md-02885-MCR-GRJ   Document 3389   Filed 08/16/22   Page 5 of 8
Case: 22-2606   Document: 32   Filed: 12/12/2022   Pages: 457

Page 5 of 8

dissatisfaction with the MDL system, this Court's legal rulings, and the multiple jury verdicts against it in this litigation.  *See id.*

Under these circumstances, the Court readily concludes that it has jurisdiction to determine whether Aearo's automatic stay applies to the claims against 3M in this MDL, *see, e.g., Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986), and the authority under the All Writs Act to enjoin actions by 3M in other forums which threaten the Court's jurisdiction, *see* 28 U.S.C. § 1651.  Nevertheless—and despite the Court's serious concerns over the prospect of a solvent defendant being able to evade the jurisdiction of an Article III court, leaving over 230,000 plaintiffs in its wake, based solely on its policy disagreement with a system created by Congress and its dissatisfaction with the lawfully entered rulings of an Article III court—the Court declines to exercise that jurisdiction to prohibit 3M from supporting a bankruptcy court injunction precluding plaintiffs from litigating CAEv2 matters against 3M.

"[T]he All Writs Act is a residual source of authority to issue writs which are not otherwise covered by statute."  *Klay*, 376 F.3d at 1100.  Here, the Court's jurisdiction to interpret the automatic stay statute, 11 U.S.C. § 362, is concurrent

---

continued litigation against 3M in the MDL (or state court).  While the argument can be made (and has been) that this is a fairly transparent attempt at manipulation and abuse of the bankruptcy code, it may be a perfectly legitimate use.  This Court trusts that the bankruptcy court judge is well-equipped to decide the matter based on his knowledge of bankruptcy law and the fact that he will have a complete evidentiary record.

Case 3:19-md-02885-MCR-GRJ   Document 3389   Filed 08/16/22   Page 6 of 8
Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457

Page 6 of 8

with that of the bankruptcy court.[3]   However, the bankruptcy court also has even

broader equitable powers to further extend the stay under 11 U.S.C. § 105(a), and

the bankruptcy court judge is presiding over an evidentiary hearing on that matter at

this very moment.   Thus, while this Court respects and appreciates the solemn

responsibility of Article III courts to enforce, protect and preserve their jurisdiction,

there are times when those ends are best served by yielding to a court with concurrent

jurisdiction, specialized expertise, and a full evidentiary record.   This is one of those

times.   The bankruptcy court is well-qualified and aptly suited to determine whether

3M is lawfully using the Bankruptcy Code for a proper restructuring purpose or,

instead, using its subsidiaries' bankruptcy petition as bad faith subterfuge to defeat

this Court's jurisdiction and relitigate this Court's rulings.   *See, e.g., In re Moog*,

159 B.R. 357, 361 (Bankr. S.D. Fla. 1993) (explaining that "if the timing of the filing

[of the bankruptcy petition] is such that the court concludes that the primary, if not

sole purpose, of the filing was *litigation tactic*, the petition may be dismissed" and

that "frustrating the legitimate processes of a non-bankruptcy forum" is inconsistent

with the congressional intent of the bankruptcy code) (emphasis added).[4]

---

[3] *See In re Baldwin-United Corp. Litig.*, 765 F.2d 343 (2d Cir. 1985) (MDL courts have concurrent jurisdiction to interpret whether a bankruptcy stay applies and to issue injunction in aid of the MDL court's jurisdiction but may appropriately decline to exercise that jurisdiction when it unduly interferes with the bankruptcy court's ability to carry out its duties).

[4] *See also In re Karum Grp., Inc.,* 66 B.R. 436 (Bankr. W.D. Wash.1986) (case dismissed where debtor filed bankruptcy as a litigation tactic to avoid posting supersedeas bond); *In re Golden Ocala P'ship,* 50 B.R. 552 (Bankr. M.D. Fla. 1985) (Chapter 11 not designed to resolve internal fights between feuding shareholders); *In re Ofty Corp.,* 44 B.R. 479 (Bankr. D. Del.

Case 3:19-md-02885-MCR-GRJ   Document 3389   Filed 08/16/22   Page 7 of 8
Case: 22-2606   Document: 32   Filed: 12/12/2022   Pages: 457

Page 7 of 8

Valle's second request implicates a more specific threat to this Court's jurisdiction. Aearo's written submissions and oral representations to the bankruptcy court are replete with substantive challenges to this Court's many legal and evidentiary rulings in the MDL, and culminate in an outright rejection of traditional appellate review of those decisions by the Eleventh Circuit Court of Appeals. According to Aearo, *both* companies—specifically, "Aearo and 3M"—prefer to resolve CAEv2 claims on the basis of the "fair and complete evidentiary record" they plan to create in bankruptcy court. *See In re Aearo*, 1:22bk2890, Informational Brief, ECF No. 12 at 61. From this, the threat to this Court's previously exercised jurisdiction is undeniable. It cannot and will not be countenanced, and compels immediate action from this Court by means of an All Writs Act injunction prohibiting 3M from attacking this Court's prior orders.

For the avoidance of doubt, the scope of today's injunction prevents 3M from "attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in" bankruptcy court. *See New York Life*, 142 F.3d at 879. This includes the relitigation of identical issues that the defendants

---

1984) (bankruptcy case filed to circumvent liquidation orders in state court dismissed as a bad faith filing); *In re Wally Findlay Galleries (N.Y.) Inc.,* 36 B.R. 849 (Bankr. S.D.N.Y. 1984) (bankruptcy case dismissed where intent was to relitigate not reorganize); *but see In re LTL Mgmt., LLC*, 637 B.R. 396 (Bankr. D.N.J. 2022)("Texas Two-Step" corporate restructuring and transfer of liability to a reorganized debtor considered a valid bankruptcy purpose, not merely aimed at gaining a tactical litigation advantage), *appeal docketed*, No. 22-2003 (3d Cir. Mar. 10, 2022).

Case 3:19-md-02885-MCR-GRJ   Document 3389   Filed 08/16/22   Page 8 of 8
Case: 22-2606   Document: 32   Filed: 12/12/2022   Pages: 457

Page 8 of 8

litigated and lost against a particular plaintiff in this Court.  *See, e.g., Jack Faucett Assocs., Inc. v. AT&T*, 744 F.2d 118, 124 (D.C. Cir. 1984) (citing *S. Pac. Commc'ns Co. v. AT&T*, 740 F.2d 1011, 1014 n.2 (1984)).  3M also is enjoined from supporting, directly or indirectly, financially or otherwise, any collateral attack on this Court's orders by any other parties in any other forum, including Aearo.  After nearly three and a half years of litigation, 3M has had a "full and fair opportunity to litigate" a myriad of issues that were "critical and necessary" to the Court's orders and judgments.  *See Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) (articulating standard for collateral estoppel.  Today's injunction enforces the preclusive effect of all of those orders and judgments.  If 3M defies this injunction by attempting to relitigate (or supporting relitigation of) these matters in the bankruptcy court, this Court retains jurisdiction to convene contempt proceedings to enforce compliance.  *See United States v. Coulton*, 594 Fed. App'x 563, 565-66 (11th Cir. 2014).

Based on the foregoing, Valle's Motion for Preliminary Injunction, ECF No. 3358, is **GRANTED IN PART and DENIED IN PART**, consistent with this Order.

**DONE AND ORDERED** this 16th day of August 2022.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| IN RE: | . | Case No.  22-02890-JJG |
| | . | (Jointly Administered) |
| AEARO TECHNOLOGIES LLC, | . | |
| ET AL., | . | 116 U.S.  Courthouse |
| | . | 46 E.  Ohio Street, Room 116 |
| Debtors. | . | Indianapolis, IN  46204 |
| . . . . . . . . . . . . | . | |
| AEARO TECHNOLOGIES LLC, | . | |
| ET AL., | . | |
| | . | |
| Plaintiffs, | . | |
| V. | . | Adversary No. 22-50059-JJG |
| | . | |
| THOSE PARTIES LISTED ON | . | |
| APPENDIX A, | . | |
| | . | |
| Defendants. | . | |
| | . | Monday, August 15, 2022 |
| . . . . . . . . . . . . | . | 9:00 a.m. |

TRANSCRIPT OF HEARING ON DEBTORS' MOTION FOR
DECLARATORY AND INJUNCTIVE RELIEF
BEFORE THE HONORABLE JEFFREY J. GRAHAM
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          Kirkland & Ellis LLP
                          BY:  CHAD HUSNICK, ESQ.
                          300 North LaSalle Street
                          Chicago, IL  60654

                          Kirkland & Ellis
                          BY:  MARK McKANE, ESQ.
                          555 California Street, 27th Floor
                          San Francisco, CA  94104

Audio Operator:           Heather Heiser-Davis

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjCourt@jjCourt.com**

**(609) 586-2311    Fax No.  (609) 587-3599**

**I N D E X**

**WITNESS FOR THE DEBTORS**                                    **PAGE**

JOHN R. CASTELLANO

  Direct Examination by Mr. McKane                             54
  Cross-Examination by Mr. Pfister                            122
  Redirect Examination by Mr. McKane                          207
  Recross Examination by Mr. Pfister                          209
  Recross Examination by Mr. Glasser                          213


CHRISTOPHER SULLIVAN

  Direct Examination by Mr. Rogers                            217
  Cross-Examination by Mr. Manthey                            251

**I N D E X**

| **DEBTORS' EXHIBITS** | **ID.** | **EVD.** |
|---|---|---|
| 1 Two Harbors Insurance Company Policy | | 222 |
| 2 Castellano Decl.,Exhibit B - Funding and Indemnification Agreement | | 113 |
| 20 3M Occupational Safety LLC Limited Liability Company Agreement (LLCA)(2013) | | 87 |
| 24 Aearo Holding LLC Limited Liability Company Agreement (LLCA)(2013) | | 86 |
| 28 Aearo Intermediate LLC Limited Liability Company Agreement (LLCA)(2013) | | 85 |
| 32 Aearo LLC Limited Liability Company Agreement (LLCA)(Effective 2008) | | 85 |
| 37 Aearo Technologies LLC Limited Liability Company Agreement (LLCA)(Effective 2008) | | 82 |
| 41 Cabot Safety Intermediate LLC Change of Registered Agent (2017) | | 88 |
| 43 Support Services Agreement between 3M and Aearo Technologies (effective April 1, 2008) | | 66 |
| 67 Spreadsheet re Combat Arms Litigation Expense 2018-2022 | | 118 |
| 69 Email from S. Stevenson to Tower Insurers re notice of Combat Arms claims | | 238 |
| 70 Letter from S. Stevenson to Insurers re Claim Notification for 3/1/2018 to 3/1/2019 excess liability policies | | 232 |
| 76 Email from S. Stevenson to primary Aearo Legacy insurers re notice of Combat Arms Claims | | 245 |
| 77 Letter from S. Stevenson to Aearo Legacy Insurers re Notice of Combat Arms claims | | 244 |
| 119 Letter from Liberty to S. Broin re payment for Combat Arms claim | | 247 |

# I N D E X

**DEBTORS' EXHIBITS**                                          <u>ID</u>.   <u>EVD</u>.

141  3M and Aearo Omnibus Meeting Minutes for              90
     July 12, 2022

144  3M and Aearo Omnibus Meeting Minutes for              76
     July 19, 2022

146  3M and Aearo Omnibus Meeting Minutes for              99
     July 25, 2022

176  Tower Insurance Policy (2018-2019) - Hamilton        232
     Re $12.5M po $25M xs $250M (Layer 1), $17.5M
     po $60M xs $750M (Layer 2)

200  Tower Insurance Policy (2018-2019) - Axis $20M       234
     xs $950M

247  Aearo Legacy Insurance Policies Rule 1006           241
     Summary Chart

248  Insurance Tower Rule 1006 summary chart             229


**DEFENDANTS' EXHIBITS**                                       <u>ID</u>.   <u>EVD</u>.

AG   Email From Connor Casas to McDonald Hopkins         151
     Group Dated June 24, 2022 re Draft Funding
     and Indemnification Agreement for June 24,
     2022, re Draft Funding and Indemnification
     Agreement for Project Crane

**[Pages 59-61 of 8/15/2022
Hearing Transcript]**

1  human resources, procurement, IT, evaluating the shared

2  services agreement itself to really understand the operations

3  of Aearo and what potential impact a Chapter 11 filing could

4  have on it.

5  Q    As part of that effort, did you evaluate Aearo's assets

6  and liabilities?

7  A    Yeah.  A typical step in any contingency planning process

8  is to take effectively a trial balance and understand what is

9  included in the balance sheet, what's included in the income

10 statement, and understand the history of those financial

11 statements.

12 Q    And, sir, to be clear, did you lead that effort for

13 AlixPartners?

14 A    I led that with my team, correct.

15 Q    And in your experience as a restructuring advisor, is it

16 typical to have a multi-month contingency planning process?

17 A    Yes.  It's not unusual at all to commence contingency

18 planning and then, what we call in our sector, put it on the

19 shelf.  No decisions have been made to file or you're working

20 through other transaction structures and you prepare and you

21 pause.  That's happened numerous times in my career.

22 Q    So to be clear, does the fact that you start prepping a

23 case mean you eventually file that case?

24 A    No.  No, it doesn't.  I mean, commencing contingency

25 planning is not akin to making a decision to file.

1  Q   So let's transition to discuss some basics of the Aearo

2 business if that's okay.

3      What products does Aearo make?

4  A   So Aearo designs solutions to control unwanted energy,

5 unwanted energies like noise, shock, excessive change in

6 thermal conditions or vibration.  Products that they

7 manufacture to control that energy would include damping and

8 isolation materials, acoustic absorbers, barriers, and thermal

9 control products.

10  Q   And, sir, to whom do they sell these products?

11  A   So their primary divisions would be the commercial vehicle

12 space, aerospace companies, various electronic manufacturers,

13 power generators, and then specialty equipment like

14 construction or agricultural equipment.  Again, things that

15 need to be protected from unwanted energy.

16  Q   And where does Aearo make these products?

17  A   So Aearo's headquarters are here in Indianapolis.  They

18 have a plant here in Indianapolis.  They also have a facility,

19 a manufacturing facility, Newark, Delaware.  They have another

20 manufacturing facility that is in Maquiladora in Mexico.  And

21 then they have a contract manufacturing sales organization in

22 Shenzhen, China.

23  Q   And does Aearo have direct employees?

24  A   Yes, it does.

25  Q   Approximately how many?

1  A    The Aearo debtors have approximately 330 direct employees.

2  Aearo's non-debtor affiliates have approximately 400 direct

3  employees.

4  Q    And when you refer to non-debtor affiliates, are those

5  affiliates of the debtor below the top debtor filer that are

6  not filers in these cases?

7  A    That's correct.  That would be specifically referencing

8  Mexico as well as China.

9  Q    And can you give the Court a sense that the size of the

10  Aearo business in terms of revenue?

11  A    So in terms of third-party revenue, Aearo generates a

12  little over $100 million a year.  Aearo also produces product

13  on behalf of 3M and sells that to 3M and that's around $25

14  million a year.

15  Q    All right.  So the $100 million that you referenced,

16  that's third-party sales?

17  A    That's correct.

18  Q    And, sir, to the extent that you could strip or set aside

19  tort liability, how would you characterize the health of the

20  Aearo business?

21  A    Yeah.  So Aearo's products are in quite demand, especially

22  in the commercial vehicle space, as well as in the aerospace

23  sector.  And they have healthy growth margins ranging anywhere

24  from 15 to 20 percent a year.  The last two years have been

25  challenging as a result of the pandemic and inflation.  But it

[Pages 82-84 of 8/15/2022
Hearing Transcript]

1          MR. McKANE:  Thank you, Your Honor.

2          (Debtors' Exhibit 37 admitted into evidence)

3  BY MR. McKANE:

4  Q    Aearo Technology, LLC, is a member of what entity?

5  A    Well, it's a member of the direct legal entity that sits

6  above it which would be Aearo, LLC.

7  Q    Right.

8          MR. McKANE:  And if we could put up the

9  organizational demonstrative that we used earlier.  Just using

10 the org chart that -- thank you, sir.

11 BY MR. McKANE:

12 Q    Where is Aearo Technologies, LLC?

13 A    So that would be the bottom legal entity in the group of

14 five legal entities you see on this chart.

15 Q    The lowest of the entities with a green start.  Correct?

16 A    That's correct.

17 Q    As part of your pre-petition work, did you familiarize

18 yourself with any indemnification obligations of Aearo to 3M?

19 A    Yes.

20      We did -- we did review this particular document in that

21 regard.

22 Q    And what is your understanding of any potential Aearo

23 indemnification obligations to 3M as reflected in this

24 document?

25 A    So as reflected here, Aearo provides an indemnification as

1  defined in this particular document for its member and any

2  affiliates of its member.

3  Q    All right.  If we could go to Section 20 of the agreement

4  which I believe spans Pages 7 and 8.

5  A    Yes, I see that.

6  Q    What is your understanding of the covered -- the scope of

7  covered persons that's described in Section 20A of the Aearo

8  Technologies, LLC agreement?

9  A    So the scope of covered person is a broad definition

10 whereby the company is -- in this particular document, the

11 company would be Aearo Technologies, LLC -- providing to the

12 fullest extent possible an indemnification to a member and any

13 affiliate of the member as identified here and resulting in the

14 defined term "covered person."

15 Q    And is the indemnity that you referenced in Section 20B of

16 the agreement?

17 A    Yes.

18     It's expanded further in that -- in that statement.

19 Q    All right.  And, sir, in your experience is an

20 indemnification obligation like this unusual in an LLC

21 agreement?

22 A    No, I don't think this is unusual based on my experience.

23 Q    And have you reviewed the LLC agreements for --

24     MR. McKANE:  -- if we could go back to the

25 organizational chart for a minute, I'll re-ask my question.

1  BY MR. McKANE:

2  Q    And, sir, have you reviewed the LLC agreements for the

3  debtor entities above Aearo Technology?

4  A    I did.

5  Q    And that's specifically Aearo, LLC above to 3M

6  Occupational Safety, LLC?

7  A    That's correct.

8         MR. McKANE:  And, Your Honor, I apologize.  I will

9  get my steps in today.

10  BY MR. McKANE:

11  Q    I'm handing you what has been previously marked as Exhibit

12  32.

13     Mr. Castellano, Exhibit 32 -- what has been previously

14  marked as Exhibit 32 is the LLC company agreement of Aearo,

15  LLC.  Do you see that on the top of the page, sir?

16  A    I do.

17  Q    Do you recognize this document?

18  A    Yes, I do.

19  Q    Is this the LLC agreement for Aearo, LLC?

20  A    It is.

21         MR. McKANE:  Your Honor, we move Exhibit 32 into

22  evidence.

23         THE COURT:  Any objection to the admission of what's

24  been designated Exhibit 32?

25         MR. PFISTER:  No objection, Your Honor.

[Pages 100-111 of 8/15/2022
Hearing Transcript]

1      Do you see that, sir?

2  A    I do.

3  Q    At that point, were you still an advisor to Aearo?

4  A    At the beginning of the meeting, I was an advisor, yes.

5  Q    All right.  And as an advisor to Aearo, did you recommend

6  that the Aearo debtors file for bankruptcy?

7  A    Yes, I did.

8  Q    Why?

9  A    Aearo's facing significant amount of contingent

10 liabilities for which it is named as a defendant, five of its

11 legal entities named as a defendant in those -- in those cases.

12 It was facing over $300 million of judgments for the cases that

13 had already been decided.

14      And in order to reorganize its business and bring all the

15 claims into one forum with the objective of reaching a

16 comprehensive global solution in an equitable and efficient

17 manner, the board did make the decision to file.  I supported

18 that decision.  And it also at this point in time had an

19 ability to fund these cases pursuant to the funding agreement.

20 Q    And, sir, in your answer, you referenced a global

21 resolution for Aearo.  What is the value of a global resolution

22 for Aearo?

23 A    So Aearo is facing not only claims coming out of the MDL,

24 they also have claims coming out of the State of Minnesota, and

25 there's likely future claims.

1      So commencing these proceedings and with the intent of a

2  global resolution to bring finality to this litigation so that

3  the Aearo business can reorganize and continue to grow would be

4  a benefit to the claimants as well as the debtors themselves.

5  Q    Mr. Castellano, you referenced future claims.  Do you just

6  means claims not filed?

7  A    Claims not filed, correct.

8  Q    As a restructuring professional, do you believe Aearo has

9  a viable path forward in this bankruptcy?

10 A    Yes, I do.

11 Q    Why is that?

12 A    Bankruptcy is a forum to bring all of the constituents

13 together, utilize the tools of Chapter 11 to reach a global

14 solution in a much more efficient and equitable way to be able

15 to do that.  And I believe that as -- you know, where we're at

16 now, there's no reason to believe that we can't achieve that

17 resolution.

18 Q    Now, sir, I want to talk about why we're specifically here

19 today, okay?

20 A    Yes.

21 Q    All right.  You're the chief restructuring officer of

22 these debtors.  Why are the debtors asking Judge Graham for the

23 preliminary injunction?

24 A    So the need for this preliminary injunction is to allow

25 for effectively a number of factors so that we can prosecute --

1  the debtors can prosecute these Chapter 11 cases.

2      There's -- if the preliminary injunction isn't granted, I

3  believe there will be issues with process, there will be issues

4  with people, issues with resources, and issues with property

5  that would impact the overall objective of trying to reach a

6  global solution here.

7  Q    Let's go through each of those.

8      You mentioned people.

9  A    Correct.

10 Q    If the Combat Arms litigation continues against 3M, how

11 will that impact Aearo with regards to its access to people?

12 A    So as I mentioned in my testimony previously, Aearo relies

13 on a significant amount of infrastructure support, back-office

14 support coming from 3M.

15     And if Aearo is in Chapter 11 wanting to pursue a global

16 resolution with the claimants but the cases still continue to

17 pursue against 3M, there's a number of resources that 3M has

18 that Aearo would need access to.  And it's likely that they

19 would be significant distracted if they were continuing to

20 assist 3M in its own litigation.

21 Q    All right.  Sir, let's get specific.

22     You mentioned back-office functions.  Previously, you

23 mentioned that legal is one of those back-office functions.

24 What lawyers would be impacted by a continuation of the Combat

25 Arms litigation against 3M?

1  A    So Eric Rucker who is an associate general counsel, has a

2  significant amount of familiarity with the MDL cases.  Courtney

3  Enloe who's head of litigation is very familiar with these

4  cases, as well as Kate Warner, another associate general

5  counsel.

6        There's likely other lawyers within 3M, but those three

7  would be instrumental to assisting the debtors prosecute these

8  Chapter 11 cases.

9  Q    Now, sir, you mentioned insurance was a back-office

10 function.  Do you recall that?

11 A    Correct.

12 Q    Are there certain insurance professionals at 3M that would

13 be directly impacted by the continuation of the Combat Arms

14 litigation against 3M?

15 A    Yeah.

16       So insurance is an important asset of the estate, and the

17 debtors share an insurance policies with 3M.  Two individuals

18 that have a significant amount of familiarity with those

19 insurance policies would be Chris Sullivan and Joanne Sum-Ping,

20 both of which the debtors would need access to over the course

21 of a Chapter 11 case.

22       And, again, if these cases continue against 3M, there

23 would be a significant amount of distraction.

24 Q    If you needed information about the insurance policies

25 that the Aearo debtors board share with 3M, who do you call?

1  A    Chris Sullivan is very familiar with these -- with those
2  policies.
3  Q    And if you need legal assistance with the insurance
4  policies with regard they're jointly shared between 3M and
5  Aearo, who do you call?
6  A    Chris Sullivan and Eric Rucker.
7  Q    All right.  You mentioned finance and accounting as back-
8  office functions before.  Do you recall that?
9  A    Correct.
10 Q    Who in the finance or accounting function would be
11 involved in the Combat Arms litigation if it continued against
12 3M?
13 A    Yeah.
14      So that's --
15          MR. PFISTER:  Objection.  Foundation, Your Honor.
16          THE COURT:  Response?
17          MR. McKANE:  Your Honor, I'm happy to lay more
18 foundation to the extent I haven't.  I think the witness has
19 testified at length about the need of the back-office
20 functions, his preparation as an advisor.  And I can make clear
21 with regards to those efforts if necessary how that tied to the
22 pre-petition and post-petition period with regards to
23 additional litigation regarding 3M.
24          MR. PFISTER:  That's not the foundation.  Objection,
25 Your Honor.  Pardon me.  That's not the foundation objection,

1  Your Honor.  It's the portion of the question where he asks the

2  witness about these people being involved in the MDL

3  proceedings and that's where there's no foundation.

4          THE COURT:  Okay.  Response to that?

5          MR. McKANE:  I can rephrase.

6          THE COURT:  That would be good because I think I do

7  need a little bit more as to that particular objection.

8          MR. McKANE:  Understood.

9          THE COURT:  So I'll sustain it.  Go ahead and --

10         MR. McKANE:  All right.

11 BY MR. McKANE:

12 Q    We were talking about back-office functions, finance, and

13 accounting.  Do you recall that, sir?

14 A    Correct.

15 Q    As part of your efforts working with the Aearo debtors

16 pre-petition, are there particular people with the accounting

17 function that you interacted with?

18 A    Yes, there were.

19 Q    All right.  And as part of your interaction with those

20 individuals, both -- let's talk about accounting, right.  Did

21 you interact with them specifically regarding the contingent

22 liabilities of the debtors?

23 A    Yes.

24     We -- we asked them a number of questions as it relates to

25 that impact, yes.

1  Q    Based on your interactions with those personnel and those

2  contingent liabilities, and to be clear, are those contingent

3  liabilities the Combat Arms litigation for which Aearo and the

4  3M are co-defendants?

5  A    They are, yes.

6  Q    Who are those people based on your direct interactions

7  with them that you believe would be directly impacted if the

8  Combat Arms litigation continued against 3M and would be less

9  available to you?

10         MR. PFISTER:  Objection, Your Honor.  Foundation.  He

11 still has not laid it as to those individuals' role in the

12 Combat Arms MDL litigation.

13         THE COURT:  We do need to know what -- I mean he's

14 speaking about functions as far as his discussions with regard

15 to contingent liability, but I have no idea how it affects the

16 MDL or has anything to do with the MDL at this point.

17         MR. McKANE:  Sure.  I'll tie it up to the extent I

18 can.

19 BY MR. McKANE:

20 Q    Can you identify some of the -- one of the accounting

21 personnel you were interacting with?

22 A    Certainly.

23        Teri Reinseth is the chief accounting officer.  And,

24 again, just to go back to my previous testimony, Aearo has no

25 accountants on staff, so the entire accounting function is

 1 provided by 3M.

 2 Q    All right.  And what is your understanding of how the

 3 chief accounting officer, Teri Reinseth, is involved in

 4 supporting the Combat Arms teams in the ongoing litigation?

 5           MR. PFISTER:  Objection, Your Honor.  Foundation.

 6 This is foundation for a question that lacks foundation.  I

 7 don't understand how this witness could possibly know how an

 8 accountant at 3M is involved in prosecuting the -- or

 9 defending, rather, the MDL case.

10           THE COURT:  Well, I mean I'll let him lay the

11 foundation.  I do need to know the answer because I don't know

12 what foundation -- I mean I don't know what familiarity he has

13 yet, so.

14           MR. McKANE:  All right.

15           THE COURT:  I think you can count it as a continuing

16 objection and let's find out if there is foundation or not.

17 BY MR. McKANE:

18 Q    Did you speak with Ms. Reinseth about what efforts 3M is

19 undertaking in accounting with regards to the Combat Arms

20 litigation?

21 A    Yes.

22      I mean there's support --

23           MR. PFISTER:  Well, pardon me, Your Honor, I didn't

24 object to the "did you speak" part, but if he's now purporting

25 to give hearsay, I'm going to have to object on hearsay

 1  grounds.

 2          THE COURT:  If he's stating what he said, that is

 3  hearsay.

 4          MR. McKANE:  Sure.

 5  BY MR. McKANE:

 6  Q   What is your understanding based on your overall

 7  interactions with all the accountants and your review of the

 8  materials about whether the 3M accounting team is involved in

 9  supporting the Combat Arms litigation effort for 3M?

10          MR. PFISTER:  Once again, he's asking -- objection.

11          THE COURT:  Let him answer and I'll rule on the

12  objection.  Thank you.

13          MR. PFISTER:  Thank you.

14          THE WITNESS:  Yeah.  Given how extensive the Combat

15  Arms litigation is and the expense associated with that and the

16  fact that there are no Aearo accountants, in order to support

17  that process for how long that may potentially take, there will

18  need to be finance and accounting support which is provided by

19  3M to Aearo.  In the event these cases continue against 3M,

20  Aearo will not -- Aearo will be impacted by having access to

21  those individuals.

22          MR. PFISTER:  Your Honor, both objection and I'll

23  move to strike the entire answer.  He answered the wrong

24  question.  He answered the question that counsel was trying to

25  get him to answer without foundation which is his statement

1 that he's --

2          THE COURT:  Well, again, I mean this isn't a jury

3 trial, so I mean I'm going to allow it.  I don't really know

4 how relevant his opinion of what happens is.  I think I can

5 make a decision on that myself, whereas, you know, if there's a

6 jury here, you have to worry about -- I mean this is what I do.

7 Right or wrong, it's what I do.  So I'll give it whatever

8 relevance and weight it merits.

9          MR. PFISTER:  Understood, Your Honor.  Thank you.

10          THE COURT:  Thank you.

11          MR. McKANE:  And for what it's worth, Your Honor, the

12 Seventh Circuit has repeatedly allowed preliminary injunction

13 evidence to be (indiscernible).

14          THE COURT:  I kind of already made my answer, so I

15 mean that's great you think I'm right.  But I've already ruled,

16 so.

17 BY MR. McKANE:

18 Q    At a high level with regards to legal, insurance, and

19 accounting, what are you concerned as the chief restructuring

20 officer about the availability of these people to aid in the

21 debtors' reorganization efforts?

22 A    Again, given the complexity of these Chapter 11 cases and

23 in order to achieve a global solution, having the distraction

24 of continuing litigation in other jurisdictions and the fact

25 that Aearo relies upon 3M for substantial amount of the support

1  services, more importantly, that 3M has the background in these

2  cases, I think that would be a significant impact and

3  potentially jeopardize these Chapter 11 proceedings.

4  Q    All right.  You mentioned people in one of your earlier

5  answers.  You also mentioned property.  Let's discuss property.

6       What type of property of the debtors would be affected by

7  continuing the Combat Arms litigation against 3M?

8  A    So as I think I had mentioned previously, the debtors

9  share an insurance policies with 3M, and those insurance

10  policies are assets of the estate.

11      In the event the litigation continues against 3M, to the

12  extent that defense costs are incurred or judgments are

13  accrued, that will ultimately go against those policies which

14  potentially will deplete an asset of this estate.

15           MR. PFISTER:  Pardon me, Your Honor, I'll move to

16  strike the answer.  I think it's without foundation.  The

17  question wasn't necessarily without foundation; the answer was.

18  And we have a separate witness testifying on insurance.

19           THE COURT:  Well, I think it's -- I mean I guess I'll

20  give you my same answer.  I understand you're objecting, but

21  I'll weigh the relevancy.  Obviously, someone who's designated

22  as the insurance expert may have more relevant testimony as to

23  that than the CRO, but we'll give it the weight it deserves as

24  we consider it.

25           MR. PFISTER:  Thank you, Your Honor.

1 BY MR. McKANE:

2 Q   And, sir, you mentioned claims against the policies.  When

3 you verify claims accruing against the policies, what do you

4 mean?

5 A   So I don't think necessarily the claim actually has to be

6 physically paid out to potentially deplete an asset of the

7 estate.

8     I think to the extent that a claim is awarded, that to me

9 is accruing, and I do view that as differently than actually

10 being paid out.  And I do think that an accrual of a claim can

11 impact the value of that policy.

12 Q   All right.  So we talked about people, we talked about

13 property.  You also mentioned resources.  Do you recall that,

14 sir?

15 A   Yes.

16 Q   What type of resources would be affected by a continuation

17 of the Combat Arms litigation against 3M?

18 A   So pursuant to the funding agreement, the Aearo debtors

19 have provided indemnification to 3M.  And contained in the

20 funding agreement, there's a payment priority of how the Aearo

21 debtors can access the funding agreement, effectively utilizing

22 first its own cash and the cash flow from its operations.

23 Q   Mr. Castellano, I've handed you what's been marked as

24 Exhibit 2, which is a cover page.  And if you turn to the

25 second page, 2 of 28 on the top, it says "Funding and

**[Pages 113-120 of 8/15/2022 Hearing Transcript]**

1 objection, you know, with regards to every exhibit in a case I

2 think could get a little overbroad.  What I would --

3          THE COURT:  Well, again, he's not objecting to the

4 exhibit.  He's objecting to what he thinks the testimony might

5 be.

6          MR. McKANE:  Exactly.  It's untimely.

7          THE COURT:  Which I can't really know right now

8 because he hasn't testified as to this.  Now if we get into the

9 same situation you might get the same answers as we went, but

10 let's take it as we go because I don't think we can just have a

11 standing objection as to foundation as to every witness because

12 I don't know how I make a record at that point.

13          So let's just take it as it comes.

14          MR. PFISTER:  Okay.  Thank you, Your Honor.

15          THE COURT:  All right.  But any objection -- you said

16 no specific objection to the admission of Exhibit 2.

17          Any other objection as to the exhibit?

18                    (No audible response)

19          THE COURT:  Seeing none, Exhibit 2 is admitted.

20          MR. McKANE:  Thank you, Your Honor.

21          (Debtors' Exhibit 2 admitted into evidence)

22 BY MR. McKANE:

23 Q   You mentioned in an earlier answer prior to your payment,

24 let me direct your attention to Page 7 of the funding

25 agreement.  And that's Page 8 of 28 in the top, 7 on the

1  bottom.

2      Are you there, sir?

3  A    Yes.

4  Q    And let me direct your attention to the bottom of the page

5  that starts "provided however."

6  A    Yes, I see that.

7  Q    And, sir, does this proviso of the "provided however"

8  paragraph, is this the portion of the agreement to your

9  understanding that addresses the priority of payment that you

10 referenced in your earlier testimony?

11 A    Yes, it does.

12 Q    All right.  Can you walk the Court through your

13 understanding of the priority of payment scheme that is

14 embedded in the funding agreement?

15 A    This proviso is attached to the permitted funding uses

16 definition contained in the funding agreement.  So it begins by

17 saying, you know, "Clauses A through E shall be permitted to

18 the extent" and when you walk through "to the extent" or the

19 clauses after "to the extent," effectively it represents --

20 Q    Let me pause you right there.

21     You said "A through E shall be permitted funding uses

22 solely to the extent."  So just to make similar level setting,

23 if you go one page earlier, do you see the definition of

24 "permitted funding uses?"

25 A    I do, yes.

1  Q    And do you see then Sections A through E immediately above
2  the "provided however?"

3  A    Yes, I do.

4  Q    Okay.  With that understanding, please continue in
5  explaining the priority of payment that's embedded with regards
6  to permitted funding uses under the funding agreement?

7          MR. PFISTER:  Objection, Your Honor.  This question
8  he didn't limit it to your understanding.  He said explain the
9  priority of --

10         MR. McKANE:  I'll rephrase.

11         THE COURT:  All right.  Go ahead, please.

12 BY MR. McKANE:

13 Q    Sir, what is your understanding of the priority of payment
14 scheme embedded in the "permitted funding use" section of the
15 funding agreement?

16 A    Yeah.

17     So Aearo will have access to the funding agreement
18 provided that it utilizes effectively its own cash as well as
19 the cash flows generated by its operations and its assets.
20 That's what's embedded effectively in (i) and (ii).

21 Q    Okay.  In (i), here's a reference to the initial payment.

22     Was there an initial payment by 3M already?

23 A    Yes, there was.

24 Q    And how much?

25 A    It was $5 million.

1 Q    And then with regards to cash received or to be received

2 by Aearo entities on account of operations, do you have a sense

3 as to what the current cash on hand situation is?

4 A    I do.

5      The current cash situation is approximately $40 million,

6 but that takes into consideration (ii)(x) which references

7 effectively going back to my previous testimony, there was

8 prior to July 15th the Aearo companies swept their cash up to

9 3M Financial Management Company.  So there was cash there which

10 effectively was transferred back down to Aearo pursuant to our

11 first day hearing.

12     So effectively, romanette (x) represents cash flows from

13 Aearo's operations must be utilized in that order of priority.

14 Q    Okay.  And so after the initial payment after cash from

15 business and related activities, what's the next step in the

16 priority of payments as you understand them?

17 A    It comes from Aearo's assets as well as potentially any

18 recoveries from insurance.

19 Q    And under what circumstances can Aearo then turn to 3M for

20 a permitted funding use?

21           MR. PFISTER:  Objection, Your Honor.  No --

22           MR. McKANE:  What is your understanding?  I

23 apologize.

24           MR. PFISTER:  Thank you.

25           THE WITNESS:  So my understanding once Aearo exhausts

1 these options for effectively liquidity or cash flows, it can

2 then turn to the funding agreement and request a transfer from

3 3M pursuant to the funding agreement.

4 BY MR. McKANE:

5 Q    And, Mr. Castellano, as part of your efforts as a

6 restructuring advisor and then as the chief restructuring

7 officer, do you have an understanding of the Combat Arms

8 defense spend that has occurred historically and is projected?

9 A    I do, yes.

10 Q    And as part of those diligence efforts, how did you get an

11 understanding of that historical and projected spend?

12 A    Yeah.

13     So as part of our pre-filing diligence, I felt it was

14 important to understand the magnitude of the costs incurred to

15 date.  So I had requested counsel to pull together an analysis

16 of what had been incurred to date plus a projection.

17 Q    Mr. Castellano, do you recognize what has been previously

18 marked as Exhibit 67?

19 A    I do.

20 Q    What is it?

21 A    This is a summary by quarter of the defense costs incurred

22 by 3M going back to 2019 actuals through the second quarter of

23 2022 and a projection for the balance of 2022.

24     MR. McKANE:  Your Honor, the debtors move Exhibit 67

25 into evidence.

 1                THE COURT:  Any objection?

 2                MR. PFISTER:  No objection.

 3                THE COURT:  I'm sorry.

 4                MR. PFISTER:  Pardon me, Your Honor.  I didn't mean

 5   to speak over you.  No objection.

 6                THE COURT:  Okay.  Any other objection to the

 7   proposed Exhibit 67?

 8                        (No audible response)

 9                THE COURT:  Seeing none, it is admitted.

10                (Debtors' Exhibit 67 admitted into evidence)

11   BY MR. McKANE:

12   Q    And, sir, what has been the defense spend to date through

13   the close of the second quarter of 2022 for the Combat Arms

14   litigation?

15   A    As represented on the schedule, it would be $347 million.

16   Q    And, sir, are these amounts that the Aearo debtors have

17   paid?

18   A    No, they are not.

19   Q    All right.  Who paid these amounts?

20   A    3M did.

21   Q    And what is the projected spend in the second half of 2022

22   on the Combat Arms litigation?

23   A    If it continues in its current form, it's approximately

24   $100 million.

25   Q    And what does that translate into dollars per week?

1  A    It's about $3.8 million a week.

2  Q    All right.  Now, sir, I think we addressed people,

3  property, resources.  I believe in that testimony you gave

4  earlier you mentioned process.

5       Do you recall that?

6  A    Correct.

7  Q    When you used the term "process," what were you referring

8  to?

9  A    What I was referencing is utilizing the Chapter 11 process

10 to bring all of the claimants together and reach a negotiated

11 solution.  And having access to those people, resources, and

12 property or not having access, I should say, I do believe will

13 jeopardize the ability of these debtors to effectuate what our

14 intent is to an efficient and equitable Chapter 11 process.

15 Q    And, sir, why is it important that -- why is it your

16 belief that an injunction that stops the Combat Arms litigation

17 against 3M aids in the debtors' restructuring process?

18 A    So as CRO, I'm concerned about the overall estate, the

19 overall enterprise which includes all of the constituents --

20 claimants, vendors, employees, this particular business.

21      And I think having everyone focused on this process in

22 what forum not -- without any distractions of any other

23 litigation in any other jurisdictions, I do believe we can

24 achieve the objectives we want to achieve.  And I think without

25 that, there would be distractions which I do think would impede

1 progress in these particular cases.

2 Q    And, sir, can these debtors, the Aearo debtors reorganize

3 without addressing the Combat Arms liabilities?

4 A    No, I can't see how -- I don't think they can do that.

5         MR. McKANE:  Your Honor, if I could just have one

6 moment to confer with counsel?

7         THE COURT:  You may, yes.

8                         (Pause)

9         MR. McKANE:  Your Honor, the debtors have no further

10 witnesses [sic] for Mr. Castellano at this time.

11        THE COURT:  No further questions?

12        MR. McKANE:  What did I say?

13        THE COURT:  Witnesses?

14        MR. McKANE:  Oh, yeah.  I apologize.  It's getting

15 close to lunch.  I think I'm --

16        THE COURT:  See, that's why we have to break a line

17 so people don't -- there we go.

18        All right.  Well, let's do that.  A couple of things.

19 First, we're reaching out now to the presiding judge's CRD to

20 find if they're going to lock behind us or what they're going

21 to do.  So -- are they going to lock it?

22        THE CLERK:  Yes, they will.

23

24        THE COURT:  Okay.  So they will lock it, so

25 everything will be secure other than don't wander on in, expect

**[Pages 223-226 of 8/15/2022 Hearing Transcript]**

1 Q    Let's look at the first page of the Two Harbors policy,

2 Exhibit Number 1, Mr. Sullivan, who is the named insured on the

3 policy?

4 A    3M Company.

5 Q    Now, is 3M Company the only named insured on this policy?

6 A    3M Company would encompass a broad definition for a named

7 insured, including entities, subsidiaries, affiliates, et

8 cetera.

9 Q    Let's turn to Page 38 of the policy.  And we're looking

10 here at Endorsement 22, do you see that, sir?

11 A    Yes, I have that here, yeah.

12 Q    What is an endorsement to an insurance policy?

13 A    An endorsement amends an insurance policy in some way.

14 Q    How does Endorsement Number 22 amend the Two Harbors

15 policy?

16 A    This policy adds Aearo Technologies, Inc. as an additional

17 named insured.

18 Q    So, are both 3M and Aearo Technologies, Inc. named

19 insureds on the Two Harbors policy?

20 A    Yes.

21 Q    Let's go back to the first page of the Tow Harbors policy.

22 There's a section there, Item 2.  What does Item 2 tell us

23 about the policy?

24 A    Item 2 lists the per occurrence limit that I referred to

25 earlier of $1.05 billion.

1  Q    Okay.  And it says there defense costs inclusive.  What

2  does that mean?

3  A    That means defense costs erode the limit available.

4  Q    If you look a little bit farther down in Item 2, it says

5  per occurrence retention.  And below that it says per

6  occurrence self-insured retention.  And both of those are 25

7  million.  Do you see those?

8  A    That's correct.

9  Q    What's the per occurrence retention in self-insured

10 retention?

11 A    The per occurrence retention we can refer to it, well,

12 it's referred to as -- in the second line as a per occurrence

13 self-insured retention.  That is the amount that needs to be

14 satisfied in order to access the limits of the 3M tower.

15 Q    And how is the per occurrence self-insured retention

16 satisfied under the Two Harbors policy?

17 A    Through paid judgments and settlements only.

18 Q    What about defense costs?  Does that satisfy the self-

19 insured retention?

20 A    They do not.

21 Q    So, if I'm understanding correctly, does 3M or Aearo need

22 to pay at least $25 million in settlements or judgments before

23 the self-insured retention is satisfied?

24 A    Yes, they do.

25 Q    And once the self-insured retention is satisfied, what

1  kinds of costs and expenses are covered by Two Harbors policy?

2  A    Well, defense costs would be -- defense costs, legal

3  expenses would be one.  Settlement and other judgments, paid

4  judgments, verdicts, would be another main category.

5  Q    Let's turn to Page 56 of the Two Harbors policy, please.

6  And call out the coverage section.

7  A    Okay.

8  Q    Looking at the coverage section of the Two Harbors policy,

9  can you tell us what type of coverage this policy generally

10 provides?

11 A    Under damages it provides coverages for personal injury

12 which include bodily injury, property damage or advertising

13 liability.

14 Q    Is it your understanding that the Combat Arms litigation

15 involved personal injury claims?

16 A    Yes.

17         MR. ROGERS:  Okay.  I want to look at another

18 provision of the Two Harbors policy.  I believe it's the page

19 right before this, Mr. Young.

20 Q    And there's a notice there.  Do you see that?

21 A    Yes, I do.

22 Q    And I want to direct your attention, Mr. Sullivan, to the

23 second paragraph of the notice that begins coverage applies?

24 A    Yes.

25 Q    Can you explain to the Court what this provision of the

1 notice and the Two Harbors policy means?

2 A    This is a provision that states that only if notice of

3 occurrence, which I had described previously, is given to the

4 reinsured during the policy period does it apply.  And then the

5 first date in which that notice is given will govern the

6 applicable limits available, retentions, terms, conditions and

7 exclusions of the policy.

8 Q    What about for litigation like the Combat Arms litigation

9 where claims started being filed in one year and they continue

10 even today.  How is that handled under the Two Harbors policy?

11 A    All attributable claims in the future would relate back to

12 this policy -- in this policy of 2018 to 2019.

13 Q    And I think you said this but what is the policy period

14 for the Two Harbors policy?

15 A    March 1, 2018 to March 1, 2019.

16 Q    So, are claims that for which 3M and Aearo have given

17 notice within that policy period, those are the claims that

18 would be addressed by the Two Harbors policy?

19 A    Yes.

20 Q    If you turn to Page 4 of the Two Harbors policy, do you

21 see, Mr. Sullivan, there's a chart there titled schedule of

22 reinsurance participants?

23 A    Yes.

24 Q    What does that schedule represent?

25 A    This is a listing of all carriers that compose the 3M

[Pages 230-232 of 8/15/2022
Hearing Transcript]

1  Q    It looks a little bit like a layer cake going from top to

2  bottom is that right?

3  A    Yes.

4  Q    And at the very bottom there's sort of an orange-ish

5  looking layer, what is that?

6  A    That's the $25 million self-insured retention I described

7  earlier.

8  Q    Okay.  And if we look at the next layer above that, do you

9  see there's, it looks like three carriers there -- AIG Europe,

10  Ironshore and Star, is that right?

11  A    That's correct.

12  Q    Can you describe this layer in general terms for us?

13  A    Yes, this layer provides $75 million total above that $25

14  million self-insured retention.  And you could see AIG Europe

15  provided 65 million of that, Iron Shore 7.5 million and Star

16  7.5 million for that total.

17  Q    Now, we talked a little bit earlier about the self-insured

18  retention, the $25 million, right?

19  A    Yes.

20  Q    And I think you said that self-insured retention has not

21  been satisfied yet, correct?

22  A    That's correct.

23  Q    And why hasn't it been satisfied yet?

24  A    There haven't been any paid judgments or settlements.

25  Q    Are there outstanding verdicts against 3M and Aearo in the

1  Combat Arms litigation?

2  A    Yes.

3  Q    And do you have a general understanding of the magnitude

4  of those verdicts?

5  A    I believe the range is zero to approximately $77 million.

6  Q    And what about the total?  Do you have an understanding of

7  what the total magnitude of the verdicts might be?

8  A    Maybe around 300 million.

9  Q    What would happen if 3M were to pay more than $25 million

10 on those verdicts tomorrow?

11 A    We would satisfy the self-insured retention and seek

12 recovery from the tower.

13 Q    Now, we saw Aearo is a named insured on the Two Harbors

14 policy, right?

15 A    Correct.

16 Q    Is Aearo also a named insured on all of the excess

17 policies in the insurance tower?

18 A    Yes.

19 Q    Let's take a look at an example of one of those excess

20 policies.  Let me hand you what's been previously marked as

21 Exhibit 176.

22         MR. ROGERS:  This time I will remember one for the

23 Court.

24         THE COURT:  Thank you.

25 Q    Do you recognize Exhibit 176?

 1  A    Yes.

 2  Q    What is it?

 3  A    This is a policy issued by Hamilton Rege (phonetic).

 4  Q    Is it one of the policies in the 2018/2019 3M tower?

 5  A    Yes, it is.

 6          MR. ROGERS:  Your Honor, we move Exhibit 176 into

 7  evidence.

 8          THE COURT:  Any objection to the admission of 176?

 9          UNIDENTIFIED ATTORNEY:  No objection, Your Honor.

10          THE COURT:  All right.  Hearing that and seeing no

11  other objections, 176 is admitted.

12          (Debtor's Exhibit 176 admitted into evidence)

13          MR. ROGERS:  And may I display it please, Your Honor?

14          THE COURT:  You may.

15  Q    Let's look at Item 1 on the first page there, Mr.

16  Sullivan.  Who's the named insured on the Hamilton Rege tower

17  policy?

18  A    3M Company.

19  Q    Is Aearo Technologies also a named insured on the Hamilton

20  Rege policy?

21  A    Yes.

22  Q    Let's turn to Page 53 of the policy.  And Page 53 we see

23  another endorsement.  How does this endorsement modify the

24  Hamilton Rege policy?

25  A    This endorsement adds Aearo Technologies, Inc. as an

**[Pages 238-240 of 8/15/2022 Hearing Transcript]**

1  A    Yes.

2  Q    Or the 3M tower?

3  A    Yes.

4         MR. ROGERS:  Your Honor, move to admit Exhibit 69

5  into evidence.

6         THE COURT:  Any objection to admission of Exhibit 69?

7         UNIDENTIFIED ATTORNEY:  No objection, Your Honor.

8         THE COURT:  Hearing that and seeing no other

9  objection, Exhibit 69 is admitted.

10        (Debtor's Exhibit 69 admitted into evidence)

11 Q    Let's look at the two end cc lines of the Exhibit 69 of

12 the e-mail.  Who was this e-mail sent to?

13 A    This was sent to the participants listed in the various

14 exhibits in the 3M tower and includes claim e-mail, in-boxes,

15 as well as individual claim handlers, carriers and underwriters

16 as well in some cases.

17 Q    And so then, if we look at the substance of the e-mail, is

18 this the transmittal e-mail for the letter that we just looked

19 at?

20 A    Yes, it is.

21 Q    Now, once notice was given under the 3M tower, had there

22 been subsequent discussions with the insurers in that tower

23 about the Combat Arms litigation?

24 A    Yes, absolutely.

25 Q    I think you mentioned that earlier.  Can you describe at a

1 high level what those discussions had been?

2 A    Yeah, the discussions had primarily been relating to the

3 underlying litigation status, keeping insurers and carriers

4 apprised of updates and key developments.

5 Q    In the course of those discussions, have any of the

6 insurers in the 3M tower every denied coverage for the Combat

7 Arms claims?

8 A    No, they haven't.

9 Q    Have they ever denied coverage to 3M in particular?

10 A    No.

11 Q    Have they ever denied coverage to Aearo?

12 A    No.

13 Q    Now, we're sitting here more than three years after the

14 notice was given in February of 2019, right?  Is it surprising

15 to you that no carriers have actually made an payments out of

16 the 3M tower to either 3M or Aearo?

17 A    No.

18 Q    Why not?

19 A    Well, first the $25 million self-insured retention has not

20 been satisfied.

21 Q    Is there any other reason why it's not surprising to you?

22 A    The litigation is complex -- involves multiple claimants

23 and some 230,000 and others in state court.  So, it's quite a

24 volume of activity and data for insurers to understand their

25 exposure and the ultimate claim outcome.

1  Q    Has 3M or any of its subsidiaries, to your knowledge,

2  given notice of any other claims besides the Combat Arms

3  litigation against the 3M tower?

4  A    No.

5  Q    Okay.  I want to turn now to the Aearo legacy policies,

6  the second bucket of policies that you talked about at the

7  start of your testimony today.  Can you describe the Aearo

8  legacy policies at a high level?

9  A    Yeah, absolutely.  The Aearo legacy policies span from

10 1997 to 2008.  They are occurrence based policies, so the

11 policies are triggered when an alleged occurrence took place in

12 the policy years.  So, multiple policy years could apply.

13 Q    Is that different from the 3M tower?

14 A    Yes.  Yes, it is.

15 Q    Now, have you also helped us prepare a chart to summarize

16 the policies in the Aearo legacy program?

17 A    Yes.

18 Q    I'm going to hand you what's been previously marked as

19 Exhibit 247.  Do you recognize Exhibit 247, Mr. Sullivan?

20 A    Yes, I do.

21 Q    What is it?

22 A    This is the listing of carriers on the Aearo legacy

23 program.

24 Q    And is this the chart that you helped us prepare?

25 A    Yes, I did.

[Pages 245-250 of 8/15/2022
Hearing Transcript]

1  coverage for the Combat Arms litigation?

2  A    3M and Aearo.

3  Q    And how was this letter sent to the insurers?

4  A    This was sent via e-mail.

5  Q    I'm going to hand you what's been previously marked as

6  Exhibit 76.

7  A    Thank you.

8  Q    Do you recognize Exhibit 76?

9  A    I do.

10  Q    What is it?

11  A    This is the what I would describe as the cover e-mail to

12  the letter we just reviewed.

13  Q    And let's look at the two line in the e-mail again.  Who

14  was the e-mail sent to?

15  A    The insurers in the Aearo Legacy program.

16          MR. ROGERS:  Your Honor, move to admit Exhibit 76

17  into evidence.

18          THE COURT:  Any objection to the admission of Exhibit

19  76?

20          UNIDENTIFIED ATTORNEY:  No objection, Your Honor.

21          THE COURT:  All right.  Hearing that and seeing no

22  other objections, Exhibit 76 is admitted.

23          (Debtor's Exhibit 76 admitted into evidence)

24  Q    If we look at the first paragraph of the e-mail that was

25  sent on June 28, 2019, on whose behalf did -- on whose behalf

1  was notice provided under these policies?

2  A    On behalf of Aearo and 3M.

3  Q    And since the notice was sent out in June of 2019 under

4  the Aearo Legacy program policies, have there been discussions

5  with the Aearo Legacy insurers about the Combat Arms

6  litigation?

7  A    Yes.

8  Q    And can you generally describe what those discussions have

9  been?

10 A    Similar to the 3M Tower discussions around status updates,

11 key developments, defense costs, et cetera.

12 Q    In the course of those discussions with the Aearo Legacy

13 insurers, has any carrier denied coverage for the Combat Arms

14 litigation?

15 A    No, not currently.  One carrier initially had denied

16 coverage but has since retracted that position.

17 Q    Has any carrier acknowledged coverage under the Aearo

18 Legacy policies?

19 A    Yes.

20 Q    Who's that?

21 A    Liberty Mutual.

22 Q    I'm going to hand you what's been previously marked as

23 Exhibit 119.

24 A    Thank you.

25 Q    Do you recognize Exhibit 119?

1  A    I do.

2  Q    What is it?

3  A    This is claim correspondence from Liberty Surplus

4  Insurance Company.

5  Q    When was the correspondence received?

6  A    February 17, 2022.

7  Q    So this year?

8  A    This year.

9         MR. ROGERS:  Okay.  Your Honor, move to admit Exhibit

10 119 into evidence.

11        THE COURT:  Any objection to the admission of Exhibit

12 119?

13        UNIDENTIFIED ATTORNEY:  No objection, Your Honor.

14        THE COURT:  All right, hearing that and seeing no

15 other, the Court will admit Exhibit 119.

16        (Debtor's Exhibit 119 admitted into evidence)

17 Q    Looking at the -- who this is addressed to, Mr. Sullivan,

18 who did Liberty Mutual send this letter to?

19 A    This was sent to Susan Broin, claims manager for 3M.

20 Q    And is she one of the people that works in your

21 department?

22 A    Yes.

23 Q    Does she report to you?

24 A    She does.

25 Q    Let's turn to the second page of the document and there's

1  a large paragraph about half way down in the letter.  The first

2  sentence there says, Liberty therefore encloses with this

3  letter four checks to 3M Company in the amount of one million

4  dollars each, paren, four million dollars total, end paren, as

5  per the occurrence limit owed under the nine thirty two

6  thousand three, nine thirty two thousand four, and then it goes

7  on to name a couple of policies.  Did I read that correctly?

8  A    You did.

9  Q    And what was Liberty doing in this letter?

10  A    Paying for -- paying their policy limits related to the

11  Combat Arms litigation.

12  Q    Did they actually cut a check?

13  A    They cut four checks, one million each for a total of four

14  million.

15  Q    Who did the cut those checks to?

16  A    Those were sent to 3M Company.

17  Q    Has any insurer in the Aearo Legacy program every taken

18  the position that 3M doesn't have access to the Aearo Legacy

19  Insurance policies?

20  A    No.

21  Q    I want to wrap up, Mr. Sullivan, and ask you a couple

22  questions about the Combat Arms litigation and the impact of

23  continued litigation against 3M.  If litigation against 3M in

24  the MDL, what is 3M's position with respect to coverage for

25  that litigation under the 3M Tower policies?

1 A    3M's position is that we would be entitled to the limits

2 in the 3M Tower.

3 Q    And if -- if litigation against 3M continues in the MDL,

4 will 3M pursue coverage and payment under the 3M Tower

5 policies?

6 A    Yes.

7 Q    If litigation against 3M in the MDL continues, what is

8 3M's position with respect to coverage available in the Aearo

9 Legacy policies?

10 A    3M's position would be we were entitled to coverage under

11 that policy.

12 Q    And if the litigation continues in the MDL against 3M,

13 will 3M pursue coverage under those policies?

14 A    Yes.

15           MR. ROGERS:  Can I have a moment, Your Honor?

16           THE COURT:  You may.

17           MR. ROGERS:  Your Honor, no further questions for the

18 witness at this time.

19           THE COURT:  All right.  Who gets the honor of being

20 the initial lawyer to do cross with regard to insurance?

21           MR. MANTHEY:  That would be me, Your Honor.

22           THE COURT:  All right.

23           MR. MANTHEY:  Tristan Manthey with the Fishman

24 Haygood firm.  Could you just give me one second --

25           THE COURT:  Yes.

1          MR. MANTHEY:  -- to get my bearings.  I'm trying to

2   get used to readers and it's not been a good transition.

3          THE COURT:  It gets worse.  Just to let you know.

4          MR. MANTHEY:  I'm figuring that out real quick.

5          THE COURT:  Sometimes they put three lenses in the

6   same thing and just have to keep bobbing your head.

7          MR. MANTHEY:  I am there and --

8          THE COURT:  But go ahead.

9          MR. MANTHEY:  -- I am figuring that out real quick,

10  so to the extent I get disoriented, I'm going to blame that.

11  First, Your Honor, I didn't get a chance to introduce myself

12  officially when we started.  I know we were doing appearances

13  based upon those who would have speaking parts on the openings,

14  et cetera.  First, I'm here -- again, Tristan Manthey with

15  Fishman Haygood Firm.  I'm here with my partner Brent Barriere.

16  We represent the firm of Clark, Love, Hutson, LLC.  Clark, Love

17  Hutson is a law firm that represents approximately 15,000

18  claimants.  Ms. Shelley Hutson is co-lead counsel.  She's here

19  today.  Mr. Clark Clayton is a member of the settlement

20  committee.  Unfortunately he couldn't make it today.  And we

21  also have Michael Moreland who is a member of the steering

22  committee and the pending MDL in the courtroom.

23          I wanted to also introduce two of our claimants who

24  are here in the courtroom.  First, Mr. Ron Sloan.  Mr. Sloan is

25  an army veteran of 21 years.  He served two tours in Iraq and

# [Pages 266-271 of 8/15/2022 Hearing Transcript]

1  A    That's right.

2  Q    Okay.  And 3M didn't pay the premiums related to the

3  insurance policies under the Aearo Legacy program, correct?

4  A    That's correct.

5  Q    And let's go to -- and I may have to go back to where I

6  was standing to find this other exhibit.  One second.

7           THE COURT:  Not to put any pressure on you, but you

8  got about ten minutes before I'm going to start giving my close

9  on what's going to --

10          MR. MANTHEY:  Okay.

11          THE COURT:  -- happen in the future, so.

12          MR. MANTHEY:  I will try to wrap up in ten minutes.

13          THE COURT:  And you can roll over.  I'm just letting

14  you know I --

15          MR. MANTHEY:  Okay.

16          THE COURT:  That's coming.

17          MR. MANTHEY:  I understand, Your Honor, and I

18  appreciate it.  I'm just keeping track of some of these

19  exhibits has not been the easiest.

20  Q    This exhibit -- just exit the exhibit.  I'd like you to --

21  it was Debtor's, I believe, Exhibit 77.  That's it.

22  A    Yes, I have that here.

23  Q    Okay.  Sorry, Your Honor.  This was the notice that 3M

24  provided to the insurers in the Aearo Legacy program related to

25  the Combat Arms' claims, correct?

Sullivan - Cross/Manthey                           267

1  A    That's right.

2  Q    And that notice was provided June 28, 2019, correct?

3  A    That's right.

4  Q    And that's more than three years ago, correct?

5  A    Correct.

6  Q    And I believe you testified that of the available $550

7  million in which you believe is available, you think that all

8  but $4 million is still available, correct?

9  A    That's correct.

10  Q    And let's go to that -- that document, which was -- what

11  was the lettering for the number I gave you Debtor's Exhibit

12  Liberty Mutual?  Yeah, the Liberty Mutual --

13            THE COURT:  119.

14            UNIDENTIFIED SPEAKER:  119.

15            MR. MANTHEY:  Thank you, Your Honor.

16            THE COURT:  That's why I get the medium box.

17  Q    You have that in front of you?

18  A    I do.

19  Q    Okay.  And this is the letter from Liberty Mutual where

20  they provided $4 million in individual checks each of $1

21  million, correct?

22  A    That's correct.

23  Q    And each of these payments was payable to 3M, correct?

24  A    Yes, 3M Company.  Yes.

25  Q    Were any of these checks -- did any of these checks

1 include Aearo as an additional payee?

2 A    Not to my knowledge.

3 Q    Why were the checks on the Aearo Legacy Insurance Program

4 paid to 3M instead of Aearo?

5 A    I may be speculating here, but Liberty and other insurers

6 in the Aearo Legacy program, sorry, excuse me, have not made

7 the distinction between the two, so that may be why.

8 Q    Okay.  Well, let's look at the letter for a second.

9 A    Okay.

10 Q    I'm going to turn to the second page.  I think you focused

11 on the fourth paragraph where it says, Liberty therefore

12 encloses with this letter four checks to 3M Company in the

13 amount of $1 million each.  I want to focus on the paragraphs

14 before that.  Do you see, first, the heading of this letter?

15 The heading above the second paragraph of the letter?

16 A    Yes, I do.

17 Q    Okay.  And what does that say?

18 A    It says partial payment of Sloan verdict under the 2003

19 through 2007 Liberty primary policies.

20 Q    Okay.  And then in the first paragraph underneath that,

21 why don't you read the first sentence for us?

22 A    It says, on January 27th the jury returned a verdict in

23 the Sloan case for $15 million in compensatory damages.

24 Q    Continue on for me please?

25 A    Mr. Sloan served in the army from June 1994 to March 2015.

1 He alleges he used the Combat Arms Earplugs between mid 2004

2 and 2015.  Mr. Sloan claims to have noticed tinnitus and

3 hearing loss beginning in February 2005 before, quote, before

4 his first deployment.

5 Q    Okay.  And then the next paragraph, why don't you read

6 that also?

7 A    Based on the recent verdict in the Sloan case referenced

8 above of $15 million, Liberty believes that if coverage for

9 Aearo is determined to exist under the two thousand -- nine

10 thirty two thousand three through nine thirty two thousand

11 seven Liberty primary policies that Liberty's indemnity

12 obligation, if any, is exhausted by payment of the $1 million

13 per occurrence limit under each of the 2003, and it lists four

14 policies, total $4 million.  It is Liberty's position that

15 Aearo's manufacturer of your product is a single occurrence,

16 and at most one per occurrence limit per policy year is owed in

17 indemnity.

18 Q    So, Liberty paid this $4 million, again, separately four

19 different checks of $1 million each, as partial payment of the

20 Sloan verdict, that appears what they're stating, correct?

21 A    That's what they're stating.

22 Q    Okay.  What did 3M do with the $4 million?

23 A    The -- those checks are currently locked in a vault.

24 Q    They have not been deposited?

25 A    They have not.

Sullivan - Cross/Manthey                                    270

1  Q    Okay.  And why are they locked in a vault?

2  A    Because discussions had been ongoing with Liberty about

3  their attempt to exhaust their policy limits and kind of

4  related discussions around defense funding.  They're paying for

5  defense of the litigation.

6  Q    So, it would appear that 3M hasn't even recovered the $4

7  million, wouldn't that be correct?

8  A    3M has not deposited those checks.

9  Q    So, 3M has not recovered one dollar under the Aearo Legacy

10 program, correct?

11 A    That's correct.

12 Q    Okay.  So, why didn't you disclose that on your direct

13 testimony by your attorney?

14 A    I believe I said 3M had received checks, four checks,

15 totaling $4 million.

16 Q    Okay.  And I think there was also a question about the

17 exhausting of the policy and how much had been exhausted and I

18 think there was reference that the $4 million went against the

19 $550 million, isn't that correct?

20         UNIDENTIFIED ATTORNEY:  Objection, Your Honor.  I

21 think it misstates the record.

22         THE COURT:  Well, I think I know what I heard, but if

23 you -- so I think we're --

24         MR. MANTHEY:  Your Honor, I think you did hear what

25 -- you know what you heard.  I'll withdraw the question.

1  Q    Are you aware of any imminent payments by any of the

2  insurers under the Aearo Legacy program to 3M for the Combat

3  Arms' claims?

4  A    I am not aware of any.

5  Q    Okay.  What has been your participation in the MDL

6  litigation?

7  A    Can you clarify what you mean by participation?

8  Q    Other than providing --

9         THE COURT:  Do you have two minutes or less?

10        MR. MANTHEY:  I don't.

11        THE COURT:  Okay.  Let's stop there.

12        MR. MANTHEY:  Okay.

13        THE COURT:  Put a marker on there.  We can recall the

14  witness.  Are you available for testifying tomorrow?

15        THE WITNESS:  Yes.

16        THE COURT:  Okay.  All right, so we'll recall -- hold

17  it because I have to tell you -- I know that those

18  participating in the discovery conference are aware of this,

19  but I cleared tomorrow as an additional trial day.  I'm also

20  working to clear Wednesday as an additional trial date given

21  our very fast paced of 1.4 witnesses per day.  We only have six

22  witnesses but we're going pretty slow, so we're going to work

23  on that.  We will be in this courtroom tomorrow.  We can start

24  as early as eight.  I am still required to have you all leave

25  by five.  What are peoples' thoughts about starting by -- per

```
                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF INDIANA

IN RE:                       .     Case No.  22-02890-JJG
                             .     (Jointly Administered)
AEARO TECHNOLOGIES LLC,      .
ET AL.,                      .     116 U.S.  Courthouse
                             .     46 E.  Ohio Street, Room 116
           Debtors.          .     Indianapolis, IN  46204
 . . . . . . . . . . . . .   .
AEARO TECHNOLOGIES LLC,      .
ET AL.,                      .
           Plaintiffs,       .
      V.                     .     Adversary No. 22-50059
                             .
THOSE PARTIES LISTED ON      .
APPENDIX A,                  .
           Defendants.       .
                             .     Tuesday, August 16, 2022
 . . . . . . . . . . . . .   .     8:00 a.m.

           TRANSCRIPT OF HEARING ON DEBTORS' MOTION FOR
            DECLARATORY AND INJUNCTIVE RELIEF (DAY 2)
            BEFORE THE HONORABLE JEFFREY J. GRAHAM
             UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          Kirkland & Ellis LLP
                          BY:  CHAD HUSNICK, ESQ.
                               NICHOLAS WASDIN, ESQ.
                               BRENTON ROGERS, P.C.
                          300 North LaSalle Street
                          Chicago, IL  60654

                          Kirkland & Ellis LLP
                          BY:  MARK McKANE, ESQ.
                          555 California Street, 27th Floor
                          San Francisco, CA  94104

Audio Operator:           Heather Heiser-Davis

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjCourt@jjCourt.com**

**(609) 586-2311    Fax No.  (609) 587-3599**

# I N D E X

**WITNESS FOR THE DEBTORS**                                **PAGE**

CHRISTOPHER SULLIVAN
  Cross-Examination Resumed by Mr. Manthey                8
  Redirect Examination by Mr. Rogers                      12
  Recross Examination by Mr. Manthey                      21

BRIAN MYERS
  Direct Examination by Mr. Wasdin                        107
  Cross-Examination by Mr. Buchanan                       119

MICHAEL DAI
  Direct Examination by Mr. Silverstein                   166

JEFFREY STEIN
  Direct Examination by Mr. McKane                        201
  Cross-Examination by Mr. Winston                        268


**WITNESS FOR CLAIMANTS**                                 **PAGE**

JAMES B. HEATON
  Direct Examination by Ms. Barriere                      32
  Voir Dire Examination by Mr. Rogers                     40
  Direct Examination Resumed by Ms. Barriere              50
  Cross-Examination by Mr. Rogers                         68
  Redirect Examination by Ms. Barriere                    101
  Recross Examination by Mr. Rogers                       102

## I N D E X

**DEBTORS' EXHIBITS**                                                **ID**.    **EVD**.

  66  Aearo CAE Yearly Sales                                          113

  71  Kennedy v. 3M Company, and DOES, ONE Through            15
      FIFTY, inclusive Complaint and Demand for
      Jury Trial

 142  3M and Aearo Omnibus Meeting Minutes for                235
      July 14, 2022

 148  Photo re Combat Arms Earplugs packaging;                111
      D-Gen-0509, Copyright 2007

 304  In Re 3M Combat Arms - [704] Master Long                 19
      Form Complaint and Jury Trial Demand; Adv.
      Dkt. [004-02]

 554  Omnibus Meeting Minutes for July 23, 2022 -             222
      Disinterested Director Session


**CLAIMANTS' EXHIBITS**                                              **ID**.    **EVD**.

  A   Roll-up of Sales by Year (Exhibit A)                       115


**DEFENDANTS' KELLER POSTMAN LLC'S EXHIBITS**           **ID**.    **EVD**.

 GL  3M Company 2021 10-K                                        60

 GM  3M Company June 30, 2022 10-Q                               62

**I N D E X**

| DEFENDANT/CLAIMANT SEEGER WEISS EXHIBITS | ID. | EVD. |
|---|---|---|
| B  3M Email Thread with attachment "Losing your hearing is not a requirement for serving your country" | | 142 |
| K  Management Team Org Chart | | 136 |
| EU  CAEv2 Blister Pack Insert | | 147 |
| EY  3M Hearing Solutions Catalog | | 144 |
| FE  3M CAEv2 Brochure (Colored) | | 141 |
| GF  May 9-10, 2022 3M Board Minutes | | 183 |

# [Pages 109-111 of 8/16/2022 Hearing Transcript]

1   middle of 2015.  When I came back, I had a set of businesses

2   including hearing protecting that I managed, and I did that

3   until August the 1st of this month.  And now I'm in the

4   regulatory strategy area.

5   Q    Going back to your time at Aearo, while you were at Aearo,

6   did you have involvement and responsibility for the Combat Arms

7   Version 3 earphone?

8   A    I did.

9   Q    What was your role with respect to the CAEv2?

10  A    So I was in marketing.

11       So what I did is listen to the proposal.  Part of my -- in

12  -- this would have been in 1997 is when it started, trying to

13  determine did this seem like a product we could make, was there

14  a market for it, you know, those kinds of business questions.

15       So we decided ultimately that it seemed like it was a --

16  it was a product we should pursue, and we resourced it and

17  prioritized it and developed it and then ultimately

18  manufactured and marketed it.

19       And I was kind of as the marketing manager with sort of

20  the I'll call it the project manager as we moved through key

21  milestones keeping other functions on -- you know, on the due

22  dates and things like that so that it moved along.

23  Q    What group at Aearo had responsibility for product design?

24  A    That would be the technical group.

25  Q    Did you interact with the technical group in your role as

1  -- in your marketing function and in your role as the sort of

2  informal project manager?

3  A    I did.

4       So they were one group that we, you know, kept dates on

5  and tried to make sure that we were progressing appropriately.

6  Q    And did you attend meetings with the technical group to

7  understand the progress of the design?

8  A    I did.

9  Q    When was the Combat Arms Version 2 designed?

10  A    So the idea of the two-ended plug which is the Version 2

11  came in early 1998.  That design was -- we worked on that

12  design through early '99 to mid -- to mid-1999.

13  Q    And when were the first sales of the Combat Arms Version 2

14  earplug?

15  A    At the end of 1999.

16  Q    Was the design of the Combat Arms Version 2 earplug

17  changed after the 3M acquisition of Aearo in 2008?

18  A    Not to my knowledge.

19            MR. WASDIN:  Your Honor, may I approach?

20            THE COURT:  You can always approach.  You can also

21  move freely about.

22            MR. WASDIN:  Thank you.

23  BY MR. WASDIN:

24  Q    Mr. Myers, I've handed you a document that was pre-marked

25  as Exhibit 148.  Do you recognize this?

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457

1  A    Yes, I do.

2  Q    What is it?

3  A    So this is what we would call a blister card.

4       A piece of packaging that we would actually put the

5  product -- you see kind of the big empty space in the rectangle

6  on the left at the bottom.  We would put the product there and

7  put a clear blister card over that to seal the product against

8  this card.  So this would have been a part of the product sold.

9            MR. WASDIN:  Your Honor, we would move Exhibit 148

10 into evidence.

11           THE COURT:  Any objection to the admission of what

12 has been designated Exhibit 148?

13           MR. BUCHANAN:  No objection, Your Honor.

14           THE COURT:  All right.  Hearing that and seeing no

15 other objection, the Court will admit it.

16           (Debtors' Exhibit 148 admitted into evidence)

17           MR. WASDIN:  Can we please publish Exhibit 148?

18           And if we can turn to the backside and call at the

19 right side of the document with the lighter color with text.

20 BY MR. WASDIN:

21 Q    Mr. Myers, I'm afraid that our print job here is not

22 perfectly clear.  But if you look down to the bottom left-hand

23 corner of the backside of the package that we're looking at,

24 can you tell what the date of this particular package was?

25 A    Yeah.

[Pages 113-116 of 8/16/2022
Hearing Transcript]

1  A    I don't believe so.

2  Q    Mr. Myers, I've handed you a document that we pre-marked

3  as Exhibit 66.  Can you tell us what is this?

4  A    It's a data table of the sales revenue of the Combat Arms

5  Earplug Version 2 through the life of the product.

6  Q    Did you assist in compiling this data and creating

7  portions at least of Exhibit 66?

8  A    I did.

9      I worked with a gentleman named Dave Viele on this.

10          MR. WASDIN:  Your Honor, we would move Exhibit 66

11 into evidence.

12          THE COURT:  Any objection to the admission of what

13 has been designated Exhibit 66?

14          MR. BUCHANAN:  No objection, Your Honor.

15          THE COURT:  All right.  Hearing none and seeing no

16 other objection, it is admitted.

17          (Debtors' Exhibit 66 admitted into evidence)

18 BY MR. WASDIN:

19 Q    Mr. Myers, can you tell us where did these sales revenue

20 data in Exhibit 66 come from?

21 A    So it came from two separate systems.

22      So there was an SAP-1 system that is the earlier part of

23 the data up and through about 2010, and then in 2010 our system

24 changed to what was called a WDSR system.  And that's where

25 orders were taken, revenues reported, product shipping was --

1  was involved.

2  Q    And what years are covered here in terms of sales of the

3  Combat Arms Version 2?

4  A    So from 1999 which was the first sales through the year

5  2016.

6  Q    And if you look to the column on the right under combined

7  totals, what was the total amount of -- the total dollar amount

8  of Combat Arms Version 2 sales over the life of the product?

9  A    So for the U.S., and I'm looking at kind of the table in

10 the middle, the total was $30,317,402.82.  And then globally as

11 a total, it was $31,524,486.43.

12 Q    Did you do work to try to figure out what portions of

13 those totals occurred prior to 3M's acquisition versus after?

14 A    Yeah, we did.

15      And that's summarized on the second page.

16 Q    So let's take a look at the second page of Exhibit 66.

17      And can you walk us through -- let's start with the

18 domestic sales, the total amount of $30,317,402.  What portion

19 of that occurred prior to 3M's acquisition of Aearo?

20 A    So it was -- it's 80.6 percent calculated there.

21 Q    And so what portion would have occurred after 3M's

22 acquisition of Aearo?

23 A    Roughly 20 percent.

24 Q    And does that division, approximately 80-20 pre-

25 acquisition, hold also for the global sales, as well?

1 A    It does.  It's about the same; 80-20.

2 Q    Mr. Myers, I've handed you another document.  This one was

3 premarked as Claimants' Exhibit A down at the bottom right-hand

4 corner.  Can you tell me whether or not you recognize this

5 document?

6 A    I do recognize this document.

7 Q    What is this?

8 A    So this was an original query to determine the sales

9 revenue associated with the Combat Arms earplug over the life

10 of the -- of the Combat Arms Earplug Version 2.

11 Q    Approximately when was this query performed?

12 A    I'm going to say it was maybe three years ago.  It was

13 some time ago.  I don't -- I don't recall the date.

14 Q    Okay.  What were the --

15         MR. WASDIN:  Your Honor, we'll go ahead and just put

16 Exhibit A -- we'd move it into evidence.

17         THE COURT:  Any objection to what has been designated

18 Exhibit A?

19         MR. BUCHANAN:  No objection, Your Honor.

20         THE COURT:  All right.  Hearing that and seeing no

21 other objection, the Court will admit it.

22         (Claimants' Exhibit A admitted into evidence)

23 BY MR. WASDIN:

24 Q    And, Mr. Myers, were you personally involved in sort of

25 the collection process that resulted in this data table, as

1  well?

2  A    I was.

3  Q    What years are covered here for sales of the Combat Arms

4  Version 2 earplug?

5  A    The same year span, 1999 through 2016.

6  Q    Exhibit A, Claimant's Exhibit A on the combined totals

7  comes out to 46 million.  Do you see that?

8  A    I do.

9  Q    So that's a little bit higher than the 30 million or 31-

10 million-dollar total that was reflected in Exhibit 66 that we

11 just went through.  Right?

12 A    It is.

13 Q    Can you just sort of tell us why this one -- did you do

14 any sort of work to figure out why this one was higher than the

15 30 million we looked at on Exhibit 66?

16 A    Yeah.

17      So in discussions with Dave Viele, what it came to learn

18 was that in the original inquiry there was an error where he

19 found all of the -- he pulled records on all of the orders that

20 had Combat Arms in it, but it pulled data on the entirety of

21 the order.

22 So, for example, if a distributor had ordered $1,000 worth of

23 safety products but only $100 of it was Combat Arms earplugs,

24 it would have pulled the full $1,000 so it tended to inflate

25 the revenue number.

# [Pages 224-227 of 8/16/2022 Hearing Transcript]

1  that fair?

2  A    Yes.  We wanted to cash deposited into a trust account.

3  Q    And, sir, where did the parties land on that -- on the 3M

4  commitment issue?

5  A    Ultimately, through vigorous negotiation which includes

6  many other points and counter points, the parties agreed that

7  3M would provide an uncapped funding commitment to ensure

8  prosecution of the bankruptcy case and resolution of all of the

9  outstanding claims and causes of action.

10        There would be an initial commitment which has no

11  impact on the uncapped funding from part of the agreement of

12  $1.24 billion which consisted of $1 billion to fund the trust

13  and $240 million for bankruptcy case and related expenses.

14  Q    Mr. Stein, let's turn to another issue that was addressed

15  in the negotiations on the next page, Page 10 of 14.  Was the

16  assumption of liabilities and indemnification a topic of the

17  negotiations between Aearo and 3M?

18  A    Yes.

19  Q    And based on the negotiations, what did you understand

20  3M's position to be regarding the assumption of liabilities and

21  indemnification?

22  A    As I recall, initially, 3M wanted to Aearo entities to not

23  only indemnify but also assume liabilities.  And there was an

24  ongoing dispute relative to whether or not that would include

25  payor affiliates.  And if it did, if the payor affiliates would

1 also be bound for the funding obligation.

2 Q    And where did the parties land on the issue of the

3 assumption of liabilities and indemnification?

4 A    Ultimately, the parties agreed that there would only be an

5 indemnification provided, no assumption of liabilities and that

6 the payor affiliates did not need to be included as obligated

7 parties because there was additional language, I believe it's

8 referred to as the permitted funding use to ensue that any

9 indemnification obligations to those payor affiliates would

10 ultimately be the obligation of 3M.

11 Q    Now, sir, under the funding agreement, you've undertaken

12 an obligation to -- Aearo has undertaken an obligation to

13 indemnify 3M for all earplug related liabilities.  Why take on

14 that commitment?

15 A    In our deliberations, as we discussed previously, Mr.

16 Meltzer and I were of the belief that there was an already

17 existing indemnification obligation from Aearo to 3M that may

18 have included the tort claims.  And that this additional

19 indemnification was requested by 3M as what I would describe as

20 an indemnification enhancement or wrap around the existing

21 indemnification because I believe 3M wanted to try and make

22 that indemnification as bullet proof as possible in exchange

23 for providing the uncapped funding to prosecute the case.

24 Q    And, sir, as a fiduciary to Aearo, considering what you

25 got and what you gave, do you believe the funding agreement is

1  in the best -- in Aearo's best interest?

2  A    Yes.

3  Q    Why?

4  A    I believe the funding agreement provides very fair and

5  balanced treatment to both parties but, in particular, with

6  respect to the Aearo debtors, it provides a means to pursue the

7  bankruptcy alternative which would not otherwise exist.  The

8  funding agreement, in and of itself, is quite unique.  It does

9  not have any interest payment requirements.  It does not have

10 any fee requirements.  In fact, it's never even required to be

11 repaid, which I find compelling on behalf of the Aearo debtors.

12       And I believe that in exchange for that providing the

13 indemnification enhancement and the other, what I would refer

14 to as gives and takes, resulted in a funding agreement that was

15 attractive to the Aearo debtors, provided the means to pursue

16 one of our two options.  And the option that Mr. Meltzer and I

17 and the full board concluded was in the best interest of

18 maximizing the value of the debtor's estates on a risk adjusted

19 basis.

20 Q    Now, sir, you mentioned earlier that you had a general

21 familiarity with the objections that had been filed to the

22 debtor's request for a preliminary injunction and declaratory

23 relief.  In addition to the KTBS firm, another firm on behalf

24 of -- Bailey and Glasser filed an objection as well.  It's at

25 Docket 100.  In that objection there's an assertion made that,

1  quote, no independent and honest debtor with or without a

2  funding promise would voluntarily assume billions of dollars of

3  liability before filing a bankruptcy -- or full filing

4  bankruptcy, excuse me.  Do you see that allegation, sir?

5  A    Yes.

6  Q    Do you agree with that assertion?

7  A    No.

8  Q    Why not?

9  A    I believe the Aearo debtors are already liable as named

10 defendants in each of the cases.

11 Q    Well, we're cover that topic further later on.  Let's go

12 back to the presentation you received from McDonald Hopkins'

13 firm.  And let me direct your attention to Page 11 which is on

14 your screen.  Do you see that, sir?

15 A    Yes.

16 Q    Were the conditions around the funding obligation an issue

17 that was negotiated between Aearo and 3M?

18 A    Yes.

19 Q    Again, based on the negotiations, what was your

20 understanding of 3M's position regarding the conditions around

21 funding?

22 A    Initially and really throughout negotiations until the

23 conclusion of the negotiations, 3M asserted that it would not

24 provide funding unless an extension of the automatic stay in

25 the Combat Arms litigation was granted.

# [Pages 238-241 of 8/16/2022 Hearing Transcript]

1        MR. McKANE:  Actually, Your Honor, could I just check

2   something with counsel on a confidentiality issue?

3        THE COURT:  You may.

4        MR. McKANE:  Your Honor, I apologize.  There's some

5   material not public information that I just want to be

6   sensitive to.

7   Q    Mr. Stein, did you receive information both at the status

8   quo and on a go forward basis post spin in this presentation

9   from 3M?

10  A    Yes.

11  Q    And was this information sufficient for you to satisfy you

12  with regard to 3M wherewithal?

13  A    Yes.

14  Q    And did you have an opportunity to address those issues

15  with your counsel and financial advisor?

16  A    Yes.  Mr. Meltzer and I individually and in conjunction

17  with the full board addressed this matter with our

18  professionals, in addition to the presentation we received from

19  Mr. Will and PJT, and concluded that although 3M would be a

20  smaller company post spinoff, it would continue to be a large

21  and well capitalized company that had the wherewithal to

22  satisfy the terms and conditions of the funding agreement.

23  Q    All right.  And, sir, the funding agreement is already in

24  evidence as Exhibit 2.  Are you familiar with those terms, the

25  final terms of the funding agreement?

1  A    Yes.

2  Q    And are you familiar with the priority of payment scheme

3  that is incorporated in the funding agreement?

4  A    Yes.

5  Q    Mr. Stein, do you have an understanding of what are the

6  sources of funds that are available to Aearo under the funding

7  agreement?

8  A    Yes.

9  Q    What are those sources of funds?

10 A    There are three sources of funds available, and there's a

11 clear hierarchy in regard to their utilization under the

12 funding agreement.  The first is existing cash and cash

13 generated from the operations of the Aearo debtors.  The second

14 is cash proceeds from the outstanding insurance policies that

15 provide coverage to the Aearo debtors.  And then finally, when

16 those resources have been exhausted, the Aearo debtors can

17 request the funding under the funding agreement from 3M.

18 Q    Sir, are any of those sources riskless?

19 A    No.

20 Q    Why not?

21 A    Beginning with cash and cash flow from operations at the

22 Aearo debtors, first the business is relatively small, but like

23 any other business it is susceptible to deterioration in

24 performance to the impact of a recession or other exogenous

25 events.

1        As it relates to the second, which is the insurance

2  policies, first, those policies have limits.  Essentially

3  there's a cap on the amount of coverage that is available, and

4  as that coverage is utilized the amount remaining is

5  diminished.  Separately, as those insurance policies are in

6  fact utilized, if and when payments are made, that certainly

7  impacts the ability of the Aearo debtors to procure similar

8  insurance in the future.  And to the extent it can be procured

9  it will certainly be more costly.

10        And then finally, the funding agreement is supported

11 by 3M, although 3M is an ongoing enterprise similar to the

12 Aearo debtors.  It, although quite viable at this time, is also

13 certainly susceptible to deterioration in performance, the

14 impact of a recession or other exogenous events.

15 Q    Okay.  Sir, in your view is it harmful to the debtors'

16 estate for the combat arms litigation to continue against 3M?

17 A    In my opinion, yes.

18 Q    Why?

19 A    I believe that if the combat arms litigation continues

20 outside of the bankruptcy forum it will first result in a

21 degradation of the assets of the Aearo debtors as they will be

22 utilized and impacted potentially by external litigation.  In

23 addition to that, I believe that it will fully distract from

24 the primary objective of these cases, which is to reorganize

25 the Aearo debtors.  And I believe this forum is the only forum

1 that would provide an opportunity to effectuate a global

2 resolution that would include all outstanding claims and causes

3 of action, not just the MDL, but also claims outstanding in the

4 state of Minnesota and any potential future claims.  And if the

5 litigation continues externally resources will be distracted

6 from the pursuit of that initiative.  And I continue to believe

7 that the bankruptcy forum and the focus on reorganizing the

8 companies represents the best path forward to maximize the

9 value of the Aearo debtors on a risk-adjusted basis and is

10 wholly consistent with my fiduciary duties.  Therefore I

11 support the relief that we are requesting today.

12 Q    All right.  Just turning to transition topics for a

13 minute, sir, and let's -- I covered the decision on filing for

14 bankruptcy, can you recall the time line forms from back up?

15 And can we focus on the right third of the time line?  Okay.

16 Mr. Stein, were you aware that 3M was engaged in a mediation

17 with certain members of the plaintiff's leadership regarding a

18 potential settlement of the MDL at some point in July?

19 A    Yes.  I was made aware of that fact.  I do not recall

20 exactly when, however.

21 Q    Right.  Right.  Without getting into the details of the

22 mediation, what did you learn about the outcome of the

23 mediation?

24           UNIDENTIFIED ATTORNEY:  Objection.  Hearsay.

25           MR. McKANE:  Sorry.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| IN RE: | . | Case No.  22-02890-JJG |
| | . | (Jointly Administered) |
| AEARO TECHNOLOGIES LLC, | . | |
| ET AL., | . | 116 U.S.  Courthouse |
| | . | 46 E.  Ohio Street, Room 116 |
| Debtors. | . | Indianapolis, IN  46204 |
| . . . . . . . . . . . . . | . | |
| AEARO TECHNOLOGIES LLC, | . | |
| ET AL., | . | |
| Plaintiffs, | . | |
| V. | . | Adversary No. 22-50059 |
| | . | |
| THOSE PARTIES LISTED ON | . | |
| APPENDIX A, | . | |
| Defendants. | . | |
| | . | Wednesday, August 17, 2022 |
| . . . . . . . . . . . . . | . | 8:00 a.m. |

TRANSCRIPT OF HEARING ON DEBTORS' MOTION FOR
DECLARATORY AND INJUNCTIVE RELIEF (DAY 3)
BEFORE THE HONORABLE JEFFREY J. GRAHAM
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          Kirkland & Ellis LLP
                          BY:  CHAD HUSNICK, ESQ.
                               NICHOLAS WASDIN, ESQ.
                               BRENTON ROGERS, P.C.
                          300 North LaSalle Street
                          Chicago, IL  60654

                          Kirkland & Ellis LLP
                          BY:  MARK McKANE, ESQ.
                          555 California Street, 27th Floor
                          San Francisco, CA  94104

Audio Operator:           Heather Heiser-Davis

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjCourt@jjCourt.com**

**(609) 586-2311    Fax No.  (609) 587-3599**

# I N D E X

**WITNESS FOR THE DEBTORS**                                              **PAGE**

JEFFREY STEIN
  Cross-Examination Resumed by Mr. Winston                    10
  Cross-Examination by Mr. Keller                             75
  Redirect Examination by Mr. McKane                          78


**DEBTORS' EXHIBITS**                                    **ID**.     **EVD**.

 138 3M and Aearo Omnibus Meeting Minutes for                          37
     June 21, 2022


**DEFENDANTS'/CLAIMANTS' EXHIBITS**                     **ID**.     **EVD**.

 GD  Order by Judge Rodgers in MDL (MDL ECF 3386)                      27


**CLOSING ARGUMENTS**                                                  **PAGE**

  By Mr. Husnick                                             118

  By Mr. Pfister                                             179

  By Ms. Cyganowski                                          215

  By Mr. Maclay                                              241

  By Mr. Keller                                              257

  By Mr. Barrett                                             277

  By Ms. Duvall                                              285

  By Mr. Husnick                                             286

# [Pages 232-235 of 8/17/2022 Hearing Transcript]

1          THE COURT:  Well I have to ask you again though,

2 aren't they a named defendant in every action?

3          MS. CYGANOWSKI:  They are, they are.  And --

4          THE COURT:  Why?

5          MS. CYGANOWSKI:  Because there are, because it was

6 their product.  Because they didn't --

7          THE COURT:  So they are a real defendant?

8          MS. CYGANOWSKI:  They are -- I don't want to --

9          THE COURT:  --  just a nominal defendant, it doesn't

10 matter.

11          MS. CYGANOWSKI:  Yes, they are.

12          THE COURT:  But it matters when it's on a caption --

13          MS. CYGANOWSKI:  It does matter.

14          THE COURT:  -- complaint.

15          MS. CYGANOWSKI:  It certainly does matter.  But when

16 you have another party and --

17          THE COURT:  And I understand that.

18          MS. CYGANOWSKI:  Right.

19          THE COURT:  But I guess I just --

20          MS. CYGANOWSKI:  We're not the ones who said that,

21 right, it was 3M.  3M voluntarily put on the cloak themselves

22 and said it's us.  We are the sole responsible party.  We will

23 run the litigation.  We will present the evidence.  We will, we

24 will be Aearo because they merged Aearo into themselves.

25          THE COURT:  Well then you dismiss them.

1          MS. CYGANOWSKI:  Actually motions are coming to do

2 that.

3          THE COURT:  But only filed after the bankruptcy.

4          MS. CYGANOWSKI:  I'm not confident of that Your

5 Honor.

6          THE COURT:  Okay.

7          MS. CYGANOWSKI:  I'm really not confident of that.

8          THE COURT:  And that's fine.

9          MS. CYGANOWSKI:  I know that there are motions

10 pending.  They may have been pending prior to the filing.  That

11 I, that I do not know.

12          I'm sure there are other questions and if you'd like

13 to ask them I'm happy to --

14          THE COURT:  I guess my first question would be, and

15 we kind of, are the, is it your view that you're saying that I

16 don't necessarily have related to the jurisdiction to look at

17 the issue?

18          MS. CYGANOWSKI:  Yeah, I believe you do.

19          THE COURT:  You believe I do?

20          MS. CYGANOWSKI:  Yes, absolutely.

21          THE COURT:  All right.

22          MS. CYGANOWSKI:  You -- you --

23          THE COURT:  That's a question I have, because --

24          MS. CYGANOWSKI:  Right.

25          THE COURT:  -- you say that, and they say they that

234

1  will be --

2          MS. CYGANOWSKI:  Yes.  No, you absolutely have that.

3          THE COURT:  And so your position -- the position of

4  those you represent is that their request failed on the prong

5  of 105 and the test under there?

6          MS. CYGANOWSKI:  Correct.

7          THE COURT:  Okay.  Thank you.  That was my first

8  clarification question.

9          MS. CYGANOWSKI:  Yes.

10         THE COURT:  My second clarification, and I'm trying

11 to -- and I know you're the legal expert, and you probably were

12 a bankruptcy judge longer than me, so you probably are the

13 biggest expert in the room, other than myself --

14         MS. CYGANOWSKI:  You're the most recent.

15         THE COURT:  That doesn't mean much.  I just have less

16 gray hair at the moment.

17         MS. CYGANOWSKI:  There's a reason for that.  I go to

18 beauty parlors.

19         THE COURT:  When we look at this, and -- I can't

20 comment on that --

21                         (Laughter)

22         THE COURT:  Now, I lost my train of thought.  I'm

23 sorry.  Well done.  All right.  No, I didn't lose my train of

24 thought.  Oh, I'm sorry, it's back.

25         When you cited the Seventh Circuit case law about

A.273

1 different types of jurisdiction, and -- and I don't think that

2 you mentioned <u>Bush</u> which unfortunately was an appeal from this

3 Court, not me, but was opining on that, and do you feel that,

4 in that decision, Judge Easterbrook modified how I should look

5 at those things or does it not matter, because that was

6 discussing related-to jurisdiction, which you say I have.

7           MS. CYGANOWSKI:  First the latter --

8           THE COURT:  All right.

9           MS. CYGANOWSKI:  -- first the latter, and I think at

10 bottom because less of a jurisdictional issue as to whether or

11 not you have the power, as much as our argument is that you

12 should decline to exercise it.

13           THE COURT:  Okay.

14           MS. CYGANOWSKI:  It truly is.  We do not believe that

15 the circumstances -- and I'm trying to think of another way to

16 say it -- that up until the moment when the lightbulb went off

17 in somebody's head at 3M, 3M was chugging along in this MDL

18 litigation by itself, surely, by itself, without even a thought

19 that the other defendant should be there, right?  I mean, they

20 could have, at any time, up until that point, as others have

21 done, <u>LTL</u> and -- and run off the other -- the other cases that

22 have been pointed to.

23           I mean, there are many differences between these

24 cases.  They're not the same, but they could have, at any time,

25 said, for nothing else than bookkeeping, jury, please allocate

EXHIBIT 0002
Page 1 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 1 of 28

**Exhibit B**

**Funding Agreement**

EXHIBIT 0002
Page 2 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 2 of 28

*Execution Version*

# FUNDING AND INDEMNIFICATION AGREEMENT

This FUNDING AND INDEMNIFICATION AGREEMENT, dated as of July 25, 2022 (as it may be amended, amended and restated, modified or supplemented from time to time, this "Agreement"), is by and among:

- Aearo Technologies LLC, a Delaware limited liability company; 3M Occupational Safety LLC, a Delaware limited liability company; Aearo Holding LLC, a Delaware limited liability company; Aearo Intermediate LLC, a Delaware limited liability company; Aearo LLC, a Delaware limited liability company; Cabot Safety Intermediate LLC, a Delaware limited liability company; and Aearo Mexico Holding Corporation, a Delaware corporation (each individually, an "Aearo Entity" and, collectively, the "Aearo Entities"); and

- 3M Company, a Delaware corporation (the "Payor" and, together with the Aearo Entities, the "Parties").

## RECITALS

A.    Certain of the Aearo Entities are defendants in Proceedings related to Earplug Liabilities and Respirator Liabilities. The Aearo Entities are direct and indirect wholly-owned subsidiaries of Payor, and Payor has been named as a defendant in Proceedings related to Earplug Liabilities and Respirator Liabilities. Payor and each of the Aearo Entities believe they have meritorious defenses to the claims that are the subject of Proceedings related to Earplug Liabilities or Respirator Liabilities.

B.    In connection with addressing the Earplug Liabilities and Respirator Liabilities, the Aearo Entities are considering seeking relief under chapter 11 of the Bankruptcy Code.

C.    In consideration of the Aearo Entities' agreement to indemnify Payor and all Payor Affiliates for all Losses arising out of or related to the Subject Liabilities pursuant to this Agreement, Payor has made the Commitment (as defined below) and agreed, pursuant to the terms of this Agreement, to fund the Aearo Entities as set forth in Section 2 hereof to satisfy all of the Aearo Entities' Liabilities specified herein on the terms set forth herein, such that each of the respective Aearo Entities will have assets with a value greater than its Liabilities and will have financial capacity sufficient to satisfy its obligations as they become due in the ordinary course of its business, including with respect to any Subject Liabilities.

D.    Payor and the Aearo Entities have respectively considered various alternatives to address potential Liabilities in connection with Proceedings related to Earplug Liabilities or Respirator Liabilities, and Payor and the Aearo Entities have respectively determined that entry into this Agreement is appropriate under the circumstances and in the best interests of their respective stakeholders and other parties in interest.

E.    Payor does not believe that any Liability in connection with Proceedings related to Earplug Liabilities is "probable" within the meaning of FASB Accounting Standards Codification 450 and nothing in this Agreement is or shall be construed as a concession by Payor to the contrary.

# AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the Parties hereto agree as follows:

1.    <u>Definitions</u>. As used in this Agreement (including the recitals hereto), the following terms have the meanings herein specified unless the context otherwise requires:

"<u>Aearo Entities</u>" has the meaning specified in the preamble hereof.

"<u>Aearo Entity Earplug Defendants</u>" means Aearo Technologies LLC; 3M Occupational Safety LLC; Aearo Holding LLC; Aearo Intermediate LLC; Aearo LLC; and any Aearo Entity that has been named as a defendant in a Proceeding related to Earplug Liabilities.

"<u>Aearo Entity Respirator Defendants</u>" means Aearo Technologies LLC; Aearo LLC; and any Aearo Entity that has been named as a defendant in a Proceeding related to Respirator Liabilities.

"<u>Affiliate</u>" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For purposes of this definition, "control," as used with respect to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such Person, whether through the ownership of voting securities, by agreement or otherwise. For purposes of this definition, the terms "controlling," "controlled by" and "under common control with" have correlative meanings. Also, for purposes of this definition, it is understood and agreed that appointment of trustee under chapter 7 or chapter 11 of the Bankruptcy Code, a receiver, or an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code shall not be, and shall not be deemed as, a loss of "control."

"<u>Agreement</u>" has the meaning specified in the preamble hereof.

"<u>Bankruptcy Case</u>" means any voluntary case(s) under chapter 11 of the Bankruptcy Code commenced by any Aearo Entity.

"<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time and any successor statute and all rules and regulations promulgated thereunder.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court where the Bankruptcy Case is commenced or such other court having jurisdiction over the Bankruptcy Case.

"<u>Base Rate</u>" means, for any day, a fluctuating interest rate per annum as shall be in effect from time to time, which rate per annum shall at all times be equal to the Federal Funds Effective Rate in effect from time to time, determined one Business Day in arrears, plus 0.5% per annum.

"<u>Board</u>" means:  (a) with respect to a corporation, the board of directors of the corporation; (b) with respect to a partnership, the board of directors, the managing member or members or the board of managers, as applicable, of the general partner of the partnership, or, to the extent the general partner has designated its rights to the partnership, the board of directors or similar board

of the partnership; (c) with respect to a limited liability company, the managing member or members or the board of directors or managers or similar governing body, as applicable, of the limited liability company; (d) with respect to any other Person, the governing body or committee of such Person serving a similar function; and (e) and any committee(s) or other Person(s) delegated authority to act on behalf of the Board.

"Budget" means a weekly cash forecast as prepared by the Aearo Entities and showing projected cash receipts and expenses by category, with a brief description of each such category, for the Bankruptcy Case on a weekly basis for the 13-week period commencing on the 1st day of the month immediately following the Petition Date, as the same may be revised and updated every two weeks. A copy of the initial Budget is attached hereto as **Schedule 3**.

"Business Day" means each day other than a Saturday, a Sunday or a day on which banking institutions in Indianapolis, Indiana or, in respect of any payment to be made under this Agreement, place of payment, are authorized by law, regulation or executive order to remain closed.

"Capital Stock" means: (a) in the case of a corporation, corporate stock; (b) in the case of an association or business entity, any and all shares, interests, participations, rights or other equivalents (however designated) of corporate stock; (c) in the case of a partnership or limited liability company, partnership or membership interests (whether general or limited); and (d) any other equity interest or participation right that confers on a Person the right to receive a share of the profits and losses of, or distributions of assets of, the issuing Person; but excluding (in each case of (a) through (d) above) any debt securities convertible into such equity interests.

"Cause of Action" means any claim, judgment, cause of action, counterclaim, crossclaim, third party claim, defense, indemnity claim, reimbursement claim, contribution claim, subrogation claim, right of set off, right of recovery, recoupment, right under any settlement Contract and similar right, whether choate or inchoate, known or unknown, contingent or noncontingent.

"Claim" shall have the meaning ascribed under section 101(5) of the Bankruptcy Code.

"Commitment" means the commitment by Payor of $1.24 billion to make Payments under the terms of this Agreement, including $1.0 billion to fund one or more Trusts and $240.0 million to administer a Bankruptcy Case, it being expressly understood that: (a) the Commitment shall be payable only pursuant to the terms of this Agreement; and (b) the Commitment does not serve as a cap on Payor's funding obligations or otherwise limit Payor's Payments under the terms of this Agreement.

"Company Parties" means the Payor and any of its Affiliates, including the Aearo Entities.

"Contract" means any legally binding contract, agreement, arrangement, lease, indenture, mortgage, deed of trust, evidence of indebtedness, License, Employee Benefit Plan, guarantee, understanding, course of dealing or performance, instrument, bid, order, proposal, demand, offer or acceptance, whether written or oral.

"Contractual Obligation" means, as to any Person, any legally binding obligation or similar provision of any security issued by such Person or any agreement, instrument or other undertaking

EXHIBIT 0002
Page 5 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 5 of 28

(excluding this Agreement but including any other Contract) to which such Person is a party or by which it or any of its property is bound.

"Default" means any event that is, or with the passage of time or the giving of notice or both would be, an Event of Default.

"District Court" means the United States District Court in the district of the Bankruptcy Court.

"Earplug Liabilities" means any Liability of any Company Party, whether existing now or arising in the future, based in whole or in part on any conduct or circumstance arising out of, relating to or in connection with dual-ended earplugs, including Dual-Ended Combat Arms – Version 2 earplugs, ARC Plug earplugs, and AO Safety Indoor Outdoor Range Earplugs, sold or manufactured by any Company Party, under any trade name, including any Liability pursuant to any Proceedings relating to any of the foregoing.

"Employee Benefit Plan" means, with respect to any Person, (i) any "employee benefit plan" (as defined in Section 3(3) of ERISA), (ii) all specified fringe benefit plans as defined in Section 6039(D) of the Internal Revenue Code, and (iii) any other plan, program, policy, agreement or arrangement, whether or not in writing, relating to compensation, employee benefits, severance, change in control, retention, deferred compensation, equity, employment, consulting, vacation, sick leave, paid time off, salary continuation, disability, hospitalization, medical insurance, life insurance, scholarship programs, incentive compensation or bonus compensation, in each case that is sponsored, maintained or contributed to or required to be sponsored, maintained or contributed to by, or otherwise covering, such Person.

"Event of Default" has the meaning specified in Section 7.

"Federal Funds Effective Rate" means, for any period, a fluctuating interest rate equal for each day during such period to the weighted average of the rates on overnight Federal Funds transactions with members of the Federal Reserve System arranged by Federal Funds brokers, as published for such day (or, if such day is not a Business Day, for the next preceding Business Day) by the Federal Reserve Bank of New York.

"Funding Account" means the account or accounts of any Aearo Entity listed on **Schedule 1**, or such other account or accounts designated in a Funding Request, in each case, into which the proceeds of all Payments made under this Agreement shall be deposited.

"Funding Date" has the meaning specified in Section 2(b).

"Funding Request" has the meaning specified in Section 2(b).

"GAAP" means generally accepted accounting principles in the United States set forth in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board or such other principles as may be approved by a significant segment of the accounting profession in the United States, in effect from time to time, consistently applied by Payor and the Payor Affiliates, as applicable.

4

EXHIBIT 0002
Page 6 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 6 of 28

"Governmental Authority" means any national, central, federal, state, provincial, municipal, local or other domestic, foreign or supranational governmental, legislative, administrative or regulatory authority, agency, court, arbitration tribunal, board, department or commission, or other governmental or regulatory entity, including any competent governmental authority responsible for the determination, assessment or collection of taxes.

"Indemnifying Party" means any Person that is obligated to pay any amount under Section 3 to any other Person entitled to indemnification thereunder.

"Indemnitee" means any Person entitled to receive any payment from an Indemnifying Party under Section 3.

"Initial Payment" means the initial sum of $5.0 million, payable by wire or other transfer, including ACH or any other mutually acceptable method of electronic funds transfer, of immediately available funds, to be funded in accordance with the terms of this Agreement and used solely for a Permitted Funding Use.

"Intellectual Property Agreement" means that certain Intellectual Property Agreement effective as of April 1, 2015, by and among Payor, 3M Innovative Properties Company, and Acaro Technologies LLC, as may be amended or restated from time to time, together with any ancillary or related agreements between the parties thereto and their respective affiliates.

"Investment Grade Credit Rating" means a credit rating of BBB- or higher by Standard & Poor's and Baa3 or higher by Moody's.

"Law" means any national, central, federal, state, provincial, municipal, local or other domestic, foreign or supranational statute, law, ordinance, decree, order, injunction, rule, regulation, directive, constitution, code, edict, writ, judgment, opinion, decree, injunction, stipulation, award or other document or pronouncement having the effect of law (including common law) of any Governmental Authority, including rules and regulations of any regulatory or self-regulatory authority with which compliance is required by any of the foregoing.

"Liability" shall mean any claim, demand, offer, acceptance, action, suit, liability or obligation of any kind, whether accrued or fixed, absolute or contingent, matured or unmatured, determined or determinable, choate or inchoate, asserted or unasserted, known or unknown, including (i) those arising or that may arise under any past, present or future Law or Contract or pursuant to any Cause of Action or Proceeding and (ii) all claims for monetary or non-monetary Losses of any type or nature whatsoever (including claims for physical, mental and emotional pain and suffering, loss of enjoyment of life, loss of society or consortium and wrongful death, as well as claims for damage to property and punitive damages). For the avoidance of doubt, a Liability shall include any Claim.

"License" means any license, sublicense, agreement, covenant not to sue or permission.

"Losses" means losses, damages, penalties, fines, judgments, awards, settlements, taxes, fees, costs, and expenses, including reasonable attorneys' fees, whether involving a third party claim or a claim solely between the Parties hereto.

5

EXHIBIT 0002
Page 7 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 7 of 28

"Minimum Balance" means $5.0 million in cash on hand held, in the aggregate, by all of the Aearo Entities, on and after the date of this Agreement.

"Minimum Funding Amount" means an amount equal to $1.0 million.

"Non-Severable Provisions" has the meaning specified in Section 14.

"Organizational Documents" means: (a) with respect to any corporation, its certificate or articles of incorporation and bylaws; (b) with respect to any limited liability company, its certificate or articles of formation or organization and its limited liability company or operating agreement; and (c) with respect to any partnership, joint venture, trust or other form of business entity, the certificate of formation or organization and any operating agreement or similar agreement governing such Person.

"Payment" means each of (a) the funding of the Initial Payment and (b) any payment made to an Aearo Entity, or to a third party on behalf of and duly authorized to receive such Payment by any Aearo Entity, on account of a Funding Request.

"Payor" has the meaning specified in the preamble hereof.

"Payor Affiliate" means any Affiliate of the Payor, excluding the Aearo Entities.

"Payor Change of Control Transaction" means any of the following events: (i) any "person(s)" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended) is or becomes the "beneficial owner(s)" (as defined in Rule 13d-3 under said Act), directly or indirectly, of securities of Payor representing fifty percent (50%) or more of the total voting power represented by Payor's then outstanding voting securities, whether by tender offer, or otherwise; (ii) the consummation of a merger or consolidation of Payor with any other entity, other than a merger or consolidation which would result in the voting securities of Payor outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into voting securities of the surviving entity) at least fifty percent (50%) of the total voting power represented by the voting securities of Payor or such surviving entity outstanding immediately after such merger or consolidation; or (iii) the sale or disposition by Payor of all or substantially all of Payor's assets.

"Payor Contractual Obligation" means, as to the Payor, any legally binding obligation or similar provision of any security issued by such Person or any under any material Contract filed by the Payor as a "material contract" pursuant to Item 601(b)(10) of Regulation S-K under the Securities Act of 1933, other than those Contracts that have expired in accordance with their terms.

"Permitted Funding Use" means, in accordance with Section 2(b), each of the following uses:

(a)    at any time when an Aearo Entity is an Affiliate of Payor, to pay the costs, expenditures (including capital expenditures), or other amounts incurred or to be incurred by such Aearo Entity (i) in the ordinary course of business, (ii) outside the ordinary course of business to the extent approved in accordance with internal governance procedures and, if a Bankruptcy Case

6

A.281

EXHIBIT 0002
Page 8 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 8 of 28

is pending, approved by the Bankruptcy Court or (iii) to administer a Bankruptcy Case, including any related professional fees and expenses;

     (b)    to satisfy the following:

     (i)    at any time when there is no Bankruptcy Case pending, any Subject Liability as finally determined by a judgment of a court of competent jurisdiction (which determination is not subject to further appeal) or a final binding settlement agreement executed by any Company Party with respect to any Subject Liability, or in respect of any appeal bonds or similar litigation-related surety Contracts related thereto, in each case, solely to the extent the Initial Payment is insufficient or otherwise unavailable to satisfy such amounts;

     (ii)    following the commencement of any Bankruptcy Case, any Subject Liability in connection with the funding of one or more Trusts;

     (iii)    any Liability for any other Causes of Action allowed or deemed allowed under a Plan, other than the Subject Liabilities; and

     (iv)    in the case of (b)(i)–(b)(iii), any ancillary costs and expenses of the Aearo Entities relating to the Subject Liabilities or other Causes of Action actually incurred (in the case of (b)(i)) or allowed or deemed allowed under a Plan (in the case of (b)(ii) and (b)(iii)), and any litigation thereof, including the costs and expenses of any appeals thereto (including appeal bonds or similar litigation-related surety Contracts);

     (c)    to pay any Liabilities of an Aearo Entity owed to the Payor or any Payor Affiliate, including any indemnification or other obligations of any Aearo Entity under Section 3;

     (d)    to pay any and all costs and expenses of the Aearo Entities incurred in connection with the pursuit of available remedies to collect any unfunded Payments due and owing to the Aearo Entities by Payor under this Agreement or otherwise to enforce the performance by the Payor of any provision of this Agreement, including attorneys' fees whether involving a third party claim or a claim solely between the Parties hereto; and

     (e)    to pay any indemnification or other obligations owing to any managers, directors, or officers of an Aearo Entity;

*provided*, *however*, that the uses described in clauses (a) through (e) above shall be Permitted Funding Uses solely to the extent that (i) the Initial Payment and (ii) any cash received or to be received by the Aearo Entities on account of (x) their business and related activities, including (subject to Bankruptcy Court approval) any accruals of cash in the Company Parties' centralized cash management system that were payable to the Aearo Entities by 3M Financial Management Company as of the date immediately preceding the date of this Agreement, or (y) their assets, including insurance recoveries, is or are projected to be, in each case or collectively, insufficient to pay or satisfy such Liabilities or amounts in full and otherwise maintain the Minimum Balance.

7

"Person" means any individual, corporation, partnership, limited liability company, joint venture, estate, trust, benefit plan, unincorporated organization, business, syndicate, sole proprietorship, association, organization, labor union or other entity or Governmental Authority.

"Plan" means a plan of reorganization under chapter 11 of the Bankruptcy Code approved by the Board of any Aearo Entity and confirmed by order of the Bankruptcy Court and, to the extent required, affirmed by order of the District Court.

"Proceeding" means any action, appeal, arbitration, assessment, cancellation, charge, citation, claim, complaint, concurrent use, controversy, contested matter, demand, grievance, hearing, inquiry, interference, investigation, litigation (including class actions and multidistrict litigation), mediation, opposition, re-examination, summons, subpoena or suit, or other case or proceeding, whether civil, criminal, administrative, judicial or investigative, whether formal or informal, whether public or private, commenced, brought, conducted or heard by or before, under the supervision or direction of, or otherwise involving, any Governmental Authority or arbitrator or other agreed-upon tribunal or dispute resolution mechanism.

"Respirator Liabilities" means any Liability of any Aearo Entity, whether existing now or arising in the future, based in whole or in part on any conduct or circumstance arising out of, relating to or in connection with any mask or respirator products, including any Liability pursuant to any Proceedings relating to any of the foregoing.

"SEC" means the Securities and Exchange Commission.

"Shared Services" means those services contemplated under the Support Services Agreement, the Intellectual Property Agreement, and any other services customarily provided in the ordinary course of business between the parties thereto as of the date hereof.

"Strategic Transaction" means: (a) any acquisition, consolidation, share exchange, distribution, dividend, or merger with or into any Person, or a series of acquisition, consolidations, share exchanges, distributions, dividends, or mergers; or (b) any sale, assignment, transfer, lease, conveyance or other disposition of all or substantially all of the assets of a Person (for the avoidance of doubt, calculated by including any equity interests held by a Person) to any other Person.

"Subject Liabilities" means any and all Earplug Liabilities and Respirator Liabilities.

"Support Services Agreement" means that certain Support Services Agreement dated as of April 1, 2008, by and among Payor, 3M Innovative Properties Company, and Aearo Company I (d/b/a Aearo Technologies), as may be amended or restated from time to time, together with any ancillary or related agreements between the parties thereto and their respective affiliates.

"Trust" means a trust created pursuant to a Plan (or as otherwise mutually agreed by the Parties in the writing) and for the benefit of existing and future claimants of any Subject Liability.

A.283

EXHIBIT 0002
Page 10 of 28

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457
Case 22-02890-JJG-11     Doc 11-2     Filed 07/26/22     EOD 07/26/22 09:29:14     Pg 10 of 28

2.     Funding Obligations and Procedures.

(a)     Funding Obligations.  In accordance with the Commitment, the Payor hereby agrees, on the terms and conditions set forth in this Agreement:

(i)     to fund, or cause to be funded, the Initial Payment into the Funding Account on or before July 25, 2022, or on such other date as mutually agreed by the Parties in writing; and

(ii)     upon the receipt of a Funding Request from any Aearo Entity from time to time in accordance with the requirements of Section 2(b), to make a Payment, or cause a Payment to be made, to such Aearo Entity or to a third party on behalf of and duly authorized to receive such Payment by any Aearo Entity, including any Trust as provided under a Plan for the Aearo Entities that has been confirmed by a final order of the Bankruptcy Court (and, if applicable, affirmed by a final order of the United States District Court for the District in which the Bankruptcy Court is located), the proceeds of which shall be used by or on behalf of such Aearo Entity for a Permitted Funding Use;

*provided, however*, that (x) nothing in this Agreement shall obligate the Payor to make Payments under this Agreement that in the aggregate exceed the aggregate amount of all Permitted Funding Uses and (y) nothing in Section 2(a)(ii) shall obligate the Payor to make any individual Payment under this Agreement that exceeds the amount requested by the Aearo Entities in the applicable Funding Request.

(b)     Funding Requests.  To request a Payment, an Aearo Entity shall deliver to the Payor a written request (which written request may be a .pdf delivered via email) for such Payment substantially in the form attached hereto as **Schedule 2**, with the then-current Budget attached, and signed by an authorized officer of the applicable Aearo Entity (each, a "Funding Request").  Each Funding Request shall include (i) the amount of the requested Payment, which shall be no less than the Minimum Funding Amount, (ii) the date(s) of the requested Payment (or any portions thereof), which shall be a date that is at least three Business Days following the delivery of such Funding Request (each such date, a "Funding Date"), (iii) the recipient(s) of the Payment (or any portions thereof), if not an Aearo Entity, (iv) the Funding Account(s), if another than that specified on **Schedule 1** and (v) a certification by such officer that the Funding Request complies with the Budget, except to the extent the Payment relates to the funding of a Plan or Trust.  The delivery of a Funding Request by an Aearo Entity shall constitute a representation and warranty by such Aearo Entity that the conditions set forth in Section 2(e) have been satisfied. Except as required to ensure that the amount of the requested Payment is no less than the Minimum Funding Amount, the Aearo Entities shall not deliver a Funding Request for an amount in excess of the aggregate amount necessary for the Aearo Entities to satisfy the current Permitted Funding Use(s) and all projected Permitted Funding Uses over the four weeks following the date of such Funding Request, in each case as reasonably determined by the Aearo Entity submitting the Funding Request.

(c)     Payments.  Subject only to the satisfaction of the conditions set forth in Section 2(e), on or before any Funding Date, the Payor shall pay or cause to be paid to or on behalf

of the applicable Aearo Entity an amount equal to the amount of the requested Payment specified in the applicable Funding Request. Unless otherwise specified by such Aearo Entity, Payments shall be made by wire or other transfer, including ACH or any other mutually acceptable method of electronic funds transfer, of immediately available funds, in United States dollars, to the Funding Account specified in each Funding Request. In the event that the Payor does not make any Payment on or prior to 11:59 p.m. prevailing central time on the Funding Date, the amount of the requested Payment shall bear interest at a rate per annum equal to the Base Rate *plus* 2% until such Payment is made (and the amount of such subsequent Payment shall be automatically increased by the accrued interest pursuant to this Section 2(c)).

(d)     <u>No Requirement of Repayment.</u>  For the avoidance of doubt, the Aearo Entities shall not be required to return or repay any Payment, in whole or in part, except to the extent any Payment is used to satisfy the Aearo Entities' obligations under Section 3.

(e)     <u>Conditions to Payments.</u>  The Payor's obligation to make any Payment pursuant to subparagraph (i) or (ii) of Section 2(a) or pursuant to a Funding Request is subject to the satisfaction of the following conditions as of the date of such Funding Request:

(i)     the representations and warranties of the Aearo Entities set forth in Section 4(b) shall be true and correct in all material respects, without regard to the impact of any Bankruptcy Case; and

(ii)     there shall be no continuing breach by the Aearo Entities of the covenants set forth in Section 6 in any material respect.

3.     <u>Indemnification.</u>

(a)     <u>Earplug Liabilities.</u>  The Aearo Entity Earplug Defendants shall and hereby agree to jointly and severally indemnify, defend and hold harmless the Payor and each of the Payor Affiliates (each of which is an express third-party beneficiary of the provisions of this Section 3) from and against, and pay and reimburse Payor (or the applicable Payor Affiliate) for any Losses incurred, sustained by or imposed on Payor or any Payor Affiliate arising out of, relating in any way to or in connection with any Earplug Liabilities, including any Losses for reimbursement or other obligations of Payor or any Payor Affiliate under or in respect of any appeal bonds or similar litigation-related surety Contracts that are or have been posted or entered into by Payor or any Payor Affiliate in connection with Proceedings in respect of any Earplug Liabilities, as applicable.

(b)     <u>Respirator Liabilities.</u>  The Aearo Entity Respirator Defendants shall and hereby agree to jointly and severally indemnify, defend and hold harmless the Payor and each of the Payor Affiliates (each of which is an express third-party beneficiary of the provisions of this Section 3) from and against, and pay and reimburse Payor (or the applicable Payor Affiliate) for any Losses incurred, sustained by or imposed on Payor or any Payor Affiliate arising out of, relating in any way to or in connection with any Respirator Liabilities, including any Losses for reimbursement or other obligations of Payor or any Payor Affiliate under or in respect of any appeal bonds or similar litigation-related surety Contracts that are or have been posted or entered

into by Payor or any Payor Affiliate in connection with Proceedings in respect of any Respirator Liabilities, as applicable.

(c)     Automatic Obligation.  The obligations of the Aearo Entities under Sections 3(a)–3(b) are automatic and shall not in any way depend upon the filing, commencement, or resolution of any Proceeding.

(d)     Control of Defense.  Indemnitees have the right, at their sole discretion, to control their defense using their own counsel (and to seek to settle or compromise), at the Indemnifying Party's expense, any Proceeding(s) covered by Sections 3(a)–(b).

(e)     Survival of Indemnities.  The rights and obligations of each of the Parties and their respective Indemnitees under this Section 3 shall survive (a) the sale or other transfer by any Party of any assets or businesses or the assignment by it of any Liabilities, (b) any merger, consolidation, business combination, sale of all or substantially all assets, restructuring, recapitalization, reorganization or similar transaction involving a Party or any of its respective subsidiaries, and (c) any cases or proceedings under chapter 11 of the Bankruptcy Code commenced by or for any Aearo Entity in the Bankruptcy Court, including a Bankruptcy Case.

4.     Representations and Warranties.

(a)     Representations and Warranties of the Payor.  The Payor represents and warrants to the Aearo Entities that:

(i)     Existence, Qualification and Power.  The Payor (A) is duly organized, validly existing and in good standing under the laws of the State of Delaware, and (B) has all requisite power and authority to execute and deliver this Agreement and perform its obligations under this Agreement.

(ii)     Authorization; No Contravention.  The execution, delivery and performance by the Payor of this Agreement has been duly authorized by all necessary corporate or other organizational action, and does not and will not (A) contravene the terms of its Organizational Documents, (B) conflict with or result in any breach or contravention of, or the creation of any lien under, or require any payment to be made under (I) any Payor Contractual Obligation to which it is a party or affecting it or its properties or (II) any order, injunction, writ or decree of any Governmental Authority or any arbitral award to which it or its property is subject, or (C) violate any applicable Law; except in each case referred to in clause (B) or (C), to the extent any such circumstance could not reasonably be expected to have a material adverse effect on the Payor's business.

(iii)     Governmental Authorization; Other Consents.  No approval, consent, exemption, authorization or other action by, or notice to, or filing with, any Governmental Authority is necessary or required in connection with the execution, delivery or performance of this Agreement by, or enforcement of this Agreement against, the Payor.

11

A.286

(iv)     <u>Binding Effect</u>.  This Agreement has been duly executed and delivered by the Payor.  This Agreement constitutes a legal, valid and binding obligation of the Payor, enforceable against the Payor in accordance with its terms, except to the extent such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally and by equitable principles.

(b)     <u>Representations and Warranties of the Aearo Entities</u>.  Each Aearo Entity represents and warrants to the Payor that:

(i)     <u>Existence, Qualification and Power</u>.  Each Aearo Entity (A) is duly organized, validly existing and in good standing under the laws of the State of Delaware, and (B) has all requisite power and authority to execute and deliver this Agreement and perform its obligations under this Agreement.

(ii)     <u>Authorization; No Contravention</u>.  The execution, delivery and performance by each Aearo Entity of this Agreement has been duly authorized by all necessary corporate or other organizational action, and does not and will not (A) contravene the terms of its Organizational Documents, (B) conflict with or result in any breach or contravention of, or the creation of any lien under, or require any payment to be made under (I) any Contractual Obligation to which it is a party or affecting it or its properties or (II) any order, injunction, writ or decree of any Governmental Authority or any arbitral award to which it or its property is subject, or (C) violate any applicable Law; except in each case referred to in clause (B) or (C), to the extent any such circumstance could not reasonably be expected to have a material adverse effect on such Aearo Entity's business.

(iii)     <u>Governmental Authorization; Other Consents</u>.  No approval, consent, exemption, authorization or other action by, or notice to, or filing with, any Governmental Authority is necessary or required in connection with the execution, delivery or performance of this Agreement by, or enforcement of this Agreement against, the Aearo Entities.

(iv)     <u>Binding Effect</u>.  This Agreement has been duly executed and delivered by each Aearo Entity.  This Agreement constitutes a legal, valid and binding obligation of each Aearo Entity, enforceable against each Aearo Entity in accordance with its terms, except to the extent such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally and by equitable principles.

5.     <u>Covenants of the Payor</u>.

(a)     <u>Provision of Financial Information</u>.

(i)     In the event that the Payor is no longer a public company and no longer files financial information with the SEC within the applicable time periods required by the SEC, no later than 90 days after the end of each fiscal year (in the case of annual financial statements) and 60 days after the end of each fiscal quarter

EXHIBIT 0002
Page 14 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 14 of 28

other than the last fiscal quarter (in the case of quarterly financial statements), the Payor will furnish to the Aearo Entities audited annual and unaudited quarterly consolidated financial statements of Payor prepared in accordance with GAAP, subject, with respect to quarterly financial statements, to normal year-end audit adjustments and the absence of footnote disclosure.

(ii)     By accepting the financial information in Section 5(a)(i), the Aearo Entities will be deemed to have represented to and agreed with the Payor that: (A) they will not use such information in violation of applicable securities laws or regulations; and (B) they will not communicate the information to any Person, including in any aggregated or converted form, and will keep the information confidential, other than where disclosure of such information is required by law, regulation or legal process (in which case the Aearo Entities shall, to the extent permitted by law, notify the Payor promptly thereof); *provided*, *however*, that the Aearo Entities may deliver a copy thereof to counsel for any official committee of claimants and any future claimants' representative appointed in any Bankruptcy Case on a confidential basis under a protective order entered in such Bankruptcy Case in form and substance acceptable to Payor.

(iii)     Notwithstanding the foregoing, the Payor may fulfill the requirement to furnish such financial information by filing the information with the SEC within the applicable time periods specified in the SEC's rules and regulations, including any applicable grace period or extension.  The Payor shall be deemed to have satisfied the reporting requirements of Section 5(a)(i) if it has filed such reports containing such information with the SEC within the applicable time periods specified in the SEC's rules and regulations, including any applicable grace period or extension, and such reports are publicly available.

(b)     <u>Successor to Payor upon Consolidation or Merger</u>.

(i)     Subject to the provisions of Sections 5(b)(ii) and 5(b)(iii), nothing contained in this Agreement shall prevent a Strategic Transaction by Payor or a Payor Affiliate, including a Payor Change of Control Transaction; *provided*, *however*, that Payor shall make commercially reasonable efforts to maintain its long-term and corporate credit rating at an Investment Grade Credit Rating in connection with any Strategic Transaction. Payor hereby covenants and agrees that, if the surviving Person, acquiring Person or lessee under a Payor Change of Control Transaction is a Person other than Payor, upon and subsequent to any such Payor Change of Control Transaction, all of Payor's funding obligations under this Agreement and the observance of all other covenants and conditions of this Agreement to be performed by Payor, shall be expressly assumed by an amendment to this Agreement or such other documentation in form reasonably satisfactory to each Aearo Entity executed and delivered to the Aearo Entities, by the Person formed by such consolidation, or into which Payor shall have been merged, or by the Person which shall have acquired or leased such property.  This covenant will not apply to (A) a merger of Payor with an Affiliate thereof solely for the purpose of reincorporating Payor in another jurisdiction within the United States, (B) any

13

EXHIBIT 0002
Page 15 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 15 of 28

conversion of Payor from an entity formed under the laws of one state to the same type of entity formed under the laws of another state, (C) any conversion of Payor from a limited liability company to a corporation, from a corporation to a limited liability company, from a limited liability company to a limited partnership or a similar conversion, whether the converting entity and the converted entity are formed under the laws of the same state or the converting entity is formed under the laws of one state and the converted entity is formed of the laws of a different state or (D) any Strategic Transaction that does not constitute a Payor Change of Control Transaction. Notwithstanding the foregoing, this Section 5(b)(i) will not apply to any consolidation or merger, or any sale, assignment, transfer, conveyance, lease or other disposition of assets, between or among Payor and its subsidiaries.

(ii)    Upon any Payor Change of Control Transaction that is subject to, and that complies with, the provisions of the preceding clause (i), the successor Person formed by such consolidation with Payor or into which Payor is merged, or to which such sale, assignment, transfer, lease, conveyance or other disposition is made, shall succeed to, and be substituted for (so that from and after the date of such consolidation, merger, sale, lease, conveyance or other disposition, the provisions of this Agreement referring to Payor, including as a Payor, shall refer instead to the successor Person and not to Payor), and may exercise every right and power of, Payor, including as a Payor, under this Agreement with the same effect as if such successor Person had been named herein. In the event of a succession in compliance with this Section 5(b)(ii), the predecessor Person shall be relieved from every obligation and covenant under this Agreement upon the consummation of such succession.

(iii)    Any Payor Change of Control Transaction referred to in Section 5(b)(i) shall not be permitted under this Agreement unless immediately after giving effect to such transaction, no Default or Event of Default on the part of Payor shall have occurred and be continuing as a result of such Payor Change of Control Transaction.

(c)    No Contractual Payment Limitation. Payor covenants and agrees that it will not enter into any Contract that prohibits Payor from making any Payment under this Agreement.

(d)    Waiver of Objections. Payor covenants and agrees not to assert, and hereby waives, any argument(s) that this Agreement cannot be assumed under the Bankruptcy Code, including under section 365(c)(2) of the Bankruptcy Code. Payor further covenants and agrees not to assert, and hereby waives, any argument(s) that the Aearo Entities cannot seek to enforce this Agreement through an emergency motion before the Bankruptcy Court, subject to Payor's ability to oppose the relief requested in such motion on any grounds, including that Payor complied with its obligations under this Agreement.

(e)    Provision of Services. Payor covenants and agrees that (i) Payor shall continue providing, or cause other Payor Affiliates to continue providing (as applicable), the Shared Services, notwithstanding any defaults under the Support Services Agreement or Intellectual Property Agreement if such defaults existed prior to, or are on account of, the

14

A.289

EXHIBIT 0002
Page 16 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 16 of 28

commencement of any Bankruptcy Case, and (ii) during the pendency of any Bankruptcy Case, no amounts shall become due and owing or payable by an Aearo Entity to the Payor or any Payor Affiliate on account of the Shared Services. For the avoidance of doubt, nothing in this Agreement shall or shall be construed to expand the scope of the services provided by Payor or any Payor Affiliate under the Intellectual Property Agreement or the Support Services Agreement or the services customarily provided in the ordinary course of business between the parties thereto as of the date hereof.

6.    Covenants of the Aearo Entities.

(a)    Funding Requests.  The Aearo Entities shall not make a Funding Request for any Payment for any purpose other than a Permitted Funding Use.

(b)    Permitted Funding Use.  The Aearo Entities shall not use the proceeds of any Payment made under this Agreement for any purpose other than a Permitted Funding Use.

(c)    Performance of Obligations.  The Aearo Entities shall perform their obligations under Section 3 and any other indemnification obligations owed to the Payor and Payor Affiliates, subject, in the event that a proceeding under the Bankruptcy Code is pending with respect to the Aearo Entities, to the resulting automatic stay under section 362 of the Bankruptcy Code.

(d)    Budget.  The Aero Entities shall provide Payor a Budget every two weeks, with the first Budget after the date hereof being provided on the date that is 14 days following the date hereof (or if such date is not a Business Day, the next date that is a Business Day).

7.    Events of Default.

(a)    Each of the following events constitutes an "Event of Default":

(i)    any Aearo Entity defaults in the performance of, or breaches, any covenant or representation or warranty of any Aearo Entity in this Agreement and such default or breach continues for a period of 30 days after the receipt from Payor of a written statement specifying such default;

(ii)    the Payor defaults in the funding obligations pursuant to Section 2 and such default continues for a period of 10 Business Days;

(iii)    the Payor defaults in the performance of, or breaches, any covenant or representation or warranty of the Payor in this Agreement (other than a covenant or representation or warranty which is specifically dealt with elsewhere in this Section 7) and such default or breach continues for a period of 30 days after the receipt from the Aearo Entities of a written statement specifying such default, or, in the case of any failure to comply with Section 5(a) of this Agreement, 60 days after the receipt of such statement;

(iv)    the Payor, pursuant to or within the meaning of the Bankruptcy Code or any similar federal or state law for the relief of debtors, (i) commences a

15

A.290

voluntary case, (ii) consents to the entry of an order for relief against it in an involuntary case, (iii) consents to the appointment of a custodian of it or for all or substantially all of its property, (iv) makes a general assignment for the benefit of its creditors, or (v) generally is not paying its debts as they become due; or

(v)     a court of competent jurisdiction enters an order or decree under the Bankruptcy Code or any similar federal or state law for the relief of debtors that (i) is for relief against a Payor, (ii) appoints a custodian of a Payor for all or substantially all of the property of a Payor, or (iii) orders the liquidation of a Payor, and, in each case of (i) through (iii) above, such order or decree remains unstayed and in effect for 60 consecutive days.

(b)     Upon becoming aware of any Default or Event of Default, the Payor shall promptly deliver to the Aearo Entities a written statement specifying such Default or Event of Default.

8.     Remedies.  The Parties agree that irreparable damage will occur in the event that any Event of Default occurs under Section 7.  Accordingly, upon the occurrence of any such Event of Default, each of the Parties shall be entitled to specific performance of the terms hereof, including an injunction or injunctions to cure any Event of Default under Section 7 and to enforce specifically the terms and provisions of this Agreement in accordance with Section 11, including through emergency motion before the Bankruptcy Court.  Each of the Parties hereby further waives (a) any defense in any action for specific performance that a remedy at law would be adequate and (b) any requirement under any law to post security as a prerequisite to obtaining equitable relief.

9.     Certain Existing Rights and Obligations.  For the avoidance of doubt, nothing in this Agreement is intended or shall be construed to alter, modify, abrogate, waive or otherwise affect Payor's and the Aearo Entities' respective rights or obligations under any insurance policy, and all rights and obligations under any insurance policy are hereby preserved.

10.     Notices.  All notices required under this Agreement, including each Funding Request and any approval of or objection to a Funding Request, shall be delivered to the applicable party to this Agreement at the address set forth below.  Unless otherwise specified herein, delivery of any such notice by email or other electronic transmission (including .pdf) shall be effective as delivery of a manually executed counterpart thereof.

Payor:

3M Company
3M Center
St. Paul, MN 55144-1000
Attention: Michael M. Dai
Email: mmdai@mmm.com

with a copy to:

White & Case LLP
1221 Avenue of the Americas

New York, NY 10020
Attention: Jessica C. Lauria
Email: jessica.lauria@whitecase.com

Aearo Entities:

Aearo Technologies LLC
7911 Zionsville Road
Indianapolis, IN 46268
Attention: Jeffrey S. Stein
Email: jstein@steinadvisorsllc.com

with a copy to:

McDonald Hopkins LLC
300 North LaSalle Ave
Chicago, IL 60654
Attention: David A. Agay
Email: dagay@mcdonaldhopkins.com

11.     Governing Law; Submission to Jurisdiction.  This Agreement shall be governed and construed in accordance with the laws of the State of Indiana. **PAYOR AND EACH AEARO ENTITY AGREE TO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY OR ON BEHALF OF THE PARTIES HERETO WITH RESPECT TO ANY MATTER RELATING TO OR ARISING OUT OF THE ENGAGEMENT OR THE PERFORMANCE OR NON-PERFORMANCE OF THE PARTIES HEREUNDER.**  Any legal proceeding seeking to enforce any provision of, or based on any matter arising under, this Agreement may be brought: (a) at any time there is not a Bankruptcy Case pending, in state or federal court in Indianapolis, Indiana; or (b) at any time there is a Bankruptcy Case pending, in the Bankruptcy Court.  The Payor and each Aearo Entity hereby irrevocably and unconditionally submits to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such legal proceeding.

12.     No Implied Waiver; Amendments.  No failure or delay on the part of any Party to exercise any right, power or privilege under this Agreement, and no course of dealing between the Payor, on the one hand, and the Aearo Entities, on the other hand, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under this Agreement preclude any other or further exercise thereof or the exercise of any other right, power or privilege. No notice to or demand on any Party in any case shall entitle any Party to any other or further notice or demand in similar or other circumstances, or constitute a waiver of the right of the holder of this Agreement to any other or further action in any circumstances without notice or demand. The remedies provided in this Agreement are cumulative and not exclusive of any remedies provided by law.  No amendment or waiver of any provision of this Agreement, nor consent to any departure by any Party therefrom, shall in any event be effective unless the same shall be in writing, specifically refer to this Agreement, and be signed by the Payor and the Aearo Entities, and then such amendment or waiver shall be effective only in the specific instance and for the specific

17

EXHIBIT 0002
Page 19 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 19 of 28

purpose for which given.  A waiver on any such occasion shall not be construed as a bar to, or waiver of, any such right or remedy on any future occasion.

13.    Counterparts; Entire Agreement; Electronic Execution.  This Agreement may be executed in separate counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract.  This Agreement constitutes the entire contract among the parties hereto relating to the subject matter hereof and supersedes, in its entirety, any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.  This Agreement shall become effective when it shall have been executed by each party hereto and each party hereto shall have received counterparts hereof which, when taken together, bear the signatures of each of party hereto, and thereafter shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  Delivery of an executed counterpart of a signature page of this Agreement by telecopy, .pdf or any other electronic means that reproduces an image of the actual executed signature page shall be effective as delivery of a manually executed counterpart of this Agreement.

14.    Severability.  Except for Section 2 and Section 3 (together, the "Non-Severable Provisions"), if any one or more of the provisions contained in this Agreement are invalid, illegal or unenforceable in any respect, the validity, legality or enforceability of all the remaining provisions will not in any way be affected or impaired.  Except for the Non-Severable Provisions, if any other provisions contained in this Agreement are deemed invalid, illegal or unenforceable because of their scope or breadth, such provisions shall be reformed and replaced with provisions whose scope and breadth are valid under applicable law.  If the Non-Severable Provisions are held to be or deemed to be invalid, illegal or unenforceable in any respect, the Parties agree to revise such provisions to address such deficiencies in a manner acceptable to each of the Parties.

15.    Transfer; Assignment.  This Agreement shall be binding upon the Payor and the Aearo Entities and its and their respective successors and assigns, and the terms and provisions of this Agreement shall inure to the benefit of the Payor and the Aearo Entities and its and their respective successors and assigns.  The Payor's rights and obligations under this Agreement may not be assigned without the prior written consent of the Aearo Entities; *provided*, *however*, that no such consent of the Aearo Entities shall be required in connection with any transfer effectuated in compliance with Section 5(b).  The Aearo Entities' rights and obligations under this Agreement may not be assigned without the prior written consent of Payor, except in the event of an assignment of such rights and obligations to a Trust as provided under a Plan for the Aearo Entities that has been confirmed by a final order of the Bankruptcy Court (and, if applicable, affirmed by a final order of the United States District Court for the district in which the Bankruptcy Court is located).  Any purported assignment of rights or obligations under this Agreement other than as permitted by this Section 15 shall be null and void.

16.    Survival.  If any Party or any of its respective successors or assigns (i) shall merge or consolidate with or merge into any Person and shall not be the surviving or continuing corporation or entity of such consolidation or merger or (ii) shall transfer all or substantially all of its respective properties and assets as an entity in one or a series of related transactions to any Person, then in each such case, proper provisions shall be made so that the successors or assigns of such Party shall assume all of the obligations set forth in this Agreement; *provided* that the applicable Party shall not be relieved from such obligations unless such succession is in

EXHIBIT 0002
Page 20 of 28

compliance with Section 5(b), in which case the predecessor Person shall be relieved from every obligation and covenant under this Agreement upon the consummation of such succession; *provided, further*, that to the extent of any inconsistency between this Section 16 and Section 5(b), Section 5(b) shall control. For the avoidance of doubt, in the event of a Strategic Transaction that does not constitute a Payor Change of Control Transaction, no provision need be made with respect to the assumption of any obligations set forth in this Agreement.

17.    <u>Construction</u>.  The descriptive headings herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement.  The word "including" means without limitation by reason of enumeration.  The words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement.  Unless specifically stated otherwise, all references to Sections and Schedules are to the Sections and Schedules of or to this Agreement.

18.    <u>Rights of Parties</u>.  Except as expressly set forth herein, this Agreement shall not confer any rights or remedies upon any Person other than the parties hereto and their respective successors and permitted assigns; *provided, however*, that each Payor Affiliate is an express third party beneficiary of Section 3, regardless of whether such Payor Affiliate is a party to this Agreement.

*[Signature Page Follows]*

19

A.294

EXHIBIT 0002
Page 21 of 28

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457
Case 22-02890-JJG-11   Doc 11-2   Filed 07/26/22   EOD 07/26/22 09:29:14   Pg 21 of 28

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the date first written above.

**3M Company**, a Delaware corporation, as the Payor

By: _____

Michael M. Dai,
Secretary

*[Payor Signature Page to Funding and Indemnification Agreement]*

A.295

EXHIBIT 0002
Page 22 of 28

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457
Case 22-02890-JJG-11     Doc 11-2     Filed 07/26/22     EOD 07/26/22 09:29:14     Pg 22 of 28

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the date first written above.

**3M Occupational Safety LLC**, a Delaware limited liability company, as an Aearo Entity

By: _____

Jeffrey S. Stein,
Director

**Aearo Holding LLC**, a Delaware limited liability company, as an Aearo Entity

By: _____

Jeffrey S. Stein,
Director

**Aearo Intermediate LLC**, a Delaware limited liability company, as an Aearo Entity

By: _____

Jeffrey S. Stein,
Director

**Aearo LLC**, a Delaware limited liability company, as an Aearo Entity

By: _____

Jeffrey S. Stein,
Director

[*Aearo Entities Signature Page to Funding and Indemnification Agreement*]

EXHIBIT 0002
Page 23 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 23 of 28

**Aearo Technologies LLC**, a Delaware limited liability company, as an Aearo Entity

By: _____

Jeffrey S. Stein,
Director


**Cabot Safety Intermediate LLC**, a Delaware limited liability company, as an Aearo Entity

By: _____

Jeffrey S. Stein,
Director


**Aearo Mexico Holding Corporation**, a Delaware corporation, as an Aearo Entity

By: _____

Jeffrey S. Stein,
Director


[*Aearo Entities Signature Page to Funding and Indemnification Agreement*]

## SCHEDULE 2

**Funding Request Form**

EXHIBIT 0002
Page 25 of 28

Case: 22-2606    Document: 32    Filed: 12/12/2022    Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 25 of 28

## AEARO ENTITY FUNDING REQUEST

Request Date: [•]

Funding Date: [•]

3M Company
3M Center
St. Paul, MN 55144-1000
Attention: [●]
Email: [●]

c/o:    White & Case LLP
        1221 Avenue of the Americas
        New York, NY 10020
        Attention: Jessica C. Lauria
        Email: jessica.lauria@whitecase.com

c/o:    McDonald Hopkins LLC
        300 North LaSalle Ave
        Chicago, IL 60654
        Attention: David A. Agay
        Email: dagay@mcdonaldhopkins.com

      Reference is made to that certain of the Funding and Indemnification Agreement, dated [●], 2022 (as amended, restated, modified or supplemented from time to time, the "Funding and Indemnification Agreement"), by and among 3M Company, a Delaware corporation, (the "Payor") and the Aearo Entities. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Funding and Indemnification Agreement. Pursuant to Section 2(b) of the Funding and Indemnification Agreement, the undersigned Aearo Entity requests a Payment in the amount of $[●] on or prior to the Funding Date specified above, to the recipient and Funding Account set forth below. In connection with the Payment requested herein, the undersigned Aearo Entity, on behalf of itself and each Aearo Entity, hereby represents, warrants, and certifies to the Payor that (a) this Funding Request complies with the Budget; and (b) the conditions set forth in Section 2(e) have been satisfied. Attached hereto is the current Budget.

      Recipient:
Funding                                                    Account:

EXHIBIT 0002
Page 26 of 28

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457
Case 22-02890-JJG-11    Doc 11-2    Filed 07/26/22    EOD 07/26/22 09:29:14    Pg 26 of 28

**[Aearo Entity]**, a Delaware [limited liability company/corporation]

By: _____
    [NAME],
    [TITLE]

Received and acknowledged by:

**3M Company**, a Delaware corporation, as the Payor:

By: _____
    [NAME],
    [TITLE]

A.300

EXHIBIT 0002
Page 27 of 28

Case: 22-2606     Document: 32     Filed: 12/12/2022     Pages: 457
Case 22-02890-JJG-11   Doc 11-2   Filed 07/26/22   EOD 07/26/22 09:29:14   Pg 27 of 28

## SCHEDULE 3

**Budget**

EXHIBIT 0002
Page 28 of 28

Subject to Material Change

| Week #: Week Ending: $ in 000s | Week 1 08/07/22 Forecast | Week 2 08/14/22 Forecast | Week 3 08/21/22 Forecast | Week 4 08/28/22 Forecast | Week 5 09/04/22 Forecast | Week 6 09/11/22 Forecast | Week 7 09/18/22 Forecast | Week 8 09/25/22 Forecast | Week 9 10/02/22 Forecast | Week 10 10/09/22 Forecast | Week 11 10/16/22 Forecast | Week 12 10/23/22 Forecast | Week 13 10/30/22 Forecast | 13 Week 10/30/22 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Net Cash Flow** | | | | | | | | | | | | | | |
| **RECEIPTS** | | | | | | | | | | | | | | |
| Operating Collections | 2,138 | 1,936 | 2,525 | 2,980 | 1,581 | 2,048 | 2,891 | 2,282 | 1,978 | 1,948 | 2,237 | 1,880 | 1,949 | 28,374 |
| Related Party Collections | - | - | 2,303 | - | - | - | 2,244 | - | - | - | 2,209 | - | - | 6,756 |
| Other Collections | 55 | - | - | - | 55 | - | - | - | 55 | - | - | - | - | 166 |
| **Total Receipts** | 2,194 | 1,936 | 4,829 | 2,980 | 1,637 | 2,048 | 5,135 | 2,282 | 2,034 | 1,948 | 4,446 | 1,880 | 1,949 | 35,296 |
| **DISBURSEMENTS** | | | | | | | | | | | | | | |
| Raw Materials & Plant | - | - | - | (1,228) | (1,238) | (1,206) | (1,190) | (1,057) | (1,000) | (977) | (1,003) | (1,013) | (1,094) | (11,006) |
| Related Party Supplier | - | - | - | - | - | - | (1,402) | - | - | - | (1,380) | - | - | (2,782) |
| Outsource Services & Facilities | - | - | - | (178) | (335) | (239) | (205) | (229) | (195) | (211) | (177) | (171) | (242) | (2,183) |
| Freight | - | - | - | (127) | (128) | (124) | (113) | (103) | (96) | (96) | (96) | (96) | (112) | (1,094) |
| Other Operating | - | - | - | (95) | (69) | (69) | (69) | (69) | (69) | (85) | (85) | (85) | (85) | (777) |
| **Total Disbursements** | - | - | - | (1,628) | (1,770) | (1,638) | (2,978) | (1,453) | (1,360) | (1,369) | (2,740) | (1,372) | (1,531) | (17,841) |
| **NET OPERATING CASH FLOW** | 2,194 | 1,936 | 4,829 | 1,352 | (133) | 410 | 2,156 | 829 | 673 | 578 | 1,706 | 509 | 417 | 17,455 |
| **NON-OPERATING DISBURSEMENTS** | | | | | | | | | | | | | | |
| Professional Fees | - | - | - | - | - | - | - | (200) | - | - | - | (10,320) | (500) | (11,020) |
| Capex | - | - | - | (26) | (26) | (26) | (26) | (26) | (26) | (26) | (26) | (26) | (26) | (260) |
| Other Non-Operating Disbursements | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Non-Operating Disbursements** | - | - | - | (26) | (26) | (26) | (26) | (226) | (26) | (26) | (26) | (10,346) | (526) | (11,280) |
| **TOTAL NET CASH FLOW** | 2,194 | 1,936 | 4,829 | 1,326 | (159) | 384 | 2,130 | 603 | 647 | 552 | 1,680 | (9,837) | (109) | 6,176 |
| **Liquidity** | | | | | | | | | | | | | | |
| Beginning Cash Balance | 7,367 | 9,561 | 11,496 | 16,325 | 17,651 | 17,492 | 17,876 | 20,006 | 20,609 | 21,256 | 21,808 | 23,488 | 13,651 | 7,367 |
| Net Cash Flow (See Above) | 2,194 | 1,936 | 4,829 | 1,326 | (159) | 384 | 2,130 | 603 | 647 | 552 | 1,680 | (9,837) | (109) | 6,176 |
| Funding | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **ENDING BOOK LIQUIDITY** | 9,561 | 11,496 | 16,325 | 17,651 | 17,492 | 17,876 | 20,006 | 20,609 | 21,256 | 21,808 | 23,488 | 13,651 | 13,542 | 13,542 |

LIMITED LIABILITY COMPANY AGREEMENT
OF
3M OCCUPATIONAL SAFETY LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of 3M Occupational Safety LLC (the "Company"), is entered into by 3M Company, as the sole equity member (the "Member"). Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement and by causing the filing of the Certificate of Conversion of the Company, hereby forms the Company as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.), as amended from time to time (the "Act"), and this Agreement, and the Member hereby agrees as follows:

Section 1.     Name.

The name of the limited liability company is 3M Occupational Safety LLC.

Section 2.     Principal Business Office.

The principal business office of the Company shall be located at 3M Center, St. Paul MN 55144, or such other location as may hereafter be determined by the Member.

Section 3.     Registered Office.

The address of the registered office of the Company in the State of Delaware is c/o The Corporation Trust Company 1209 Orange Street in the City of Wilmington, County of New Castle, Delaware 19801.

Section 4.     Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is The Corporation Trust Company 1209 Orange Street, in the City of Wilmington, County of New Castle, Delaware 19801.

Section 5.     Members.

(a)     The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

(b)     The Member may act by written consent.

1

CONFIDENTIAL      A.303     

Section 6.     <u>Certificates</u>.

Maureen Faricy is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Conversion of the Company with the Secretary of State of the State of Delaware. Upon the filing of the Certificate of Conversion with the Secretary of State of the State of Delaware, her powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act. The Member or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Conversion as provided in the Act.

Section 7.     <u>Purpose</u>. The purpose to be conducted or promoted by the Company is to engage in the following activities:

> (i)     Holding; and
>
> (ii)    to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b)     The Company is hereby authorized to execute, deliver and perform, and the Member or any Director or Officer on behalf of the Company are hereby authorized to execute and deliver, the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any Member, Director, Officer or other Person notwithstanding any other provision of this Agreement. The foregoing authorization shall not be deemed a restriction on the powers of the Member or any Director or Officer to enter into other agreements on behalf of the Company.

Section 8.     <u>Powers</u>.

The Company, and the Board of Directors and the Officers of the Company on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in <u>Section 7</u> and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9.     <u>Management</u>.

(a)     <u>Board of Directors</u>. The business and affairs of the Company shall be managed by or under the direction of a Board of one or more Directors designated by the Member. The Member may determine at any time in its sole and absolute discretion the number of Directors to constitute the Board. The authorized number of Directors may be increased or decreased by the

3M 1185747v1

2

CONFIDENTIAL                                                        AEARO_CH11_00001945

Member at any time in its sole and absolute discretion, upon notice to all Directors. The initial number of Directors shall be three. Each Director elected, designated or appointed by the Member shall hold office until a successor is elected and qualified or until such Director's earlier death, resignation, expulsion or removal. Each Director shall execute and deliver the Management Agreement. Directors need not be a Member. The initial Directors designated by the Member are listed on Schedule D hereto.

    (b)    <u>Powers</u>. The Board of Directors shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Subject to <u>Sections 7 and 9</u>, the Board of Directors has the authority to bind the Company.

    (c)    <u>Meeting of the Board of Directors</u>. The Board of Directors of the Company may hold meetings, both regular and special, within or outside the State of Delaware. Regular meetings of the Board may be held without notice at such time and at such place as shall from time to time be determined by the Board. Special meetings of the Board may be called by the President on not less than one day's notice to each Director by telephone, facsimile, mail, telegram or any other means of communication, and special meetings shall be called by the President or Secretary in like manner and with like notice upon the written request of any one or more of the Directors.

    (d)    <u>Quorum: Acts of the Board</u>. At all meetings of the Board, a majority of the Directors shall constitute a quorum for the transaction of business and, except as otherwise provided in any other provision of this Agreement, the act of a majority of the Directors present at any meeting at which there is a quorum shall be the act of the Board. If a quorum shall not be present at any meeting of the Board, the Directors present at such meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. Any action required or permitted to be taken at any meeting of the Board or of any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee, as the case may be.

    (e)    <u>Electronic Communications</u>. Members of the Board, or any committee designated by the Board, may participate in meetings of the Board, or any committee, by means of telephone conference or similar communications equipment that allows all Persons participating in the meeting to hear each other, and such participation in a meeting shall constitute presence in Person at the meeting. If all the participants are participating by telephone conference or similar communications equipment, the meeting shall be deemed to be held at the principal place of business of the Company.

    (f)    <u>Committees of Directors</u>.

        (i)    The Board may, by resolution passed by a majority of the whole Board, designate one or more committees, each committee to consist of one or more of the Directors of the Company. The Board may designate one or more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

3

3M 1185747v1

CONFIDENTIAL

AEARO_CH11_00001946

(ii)    In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member.

(iii)    Any such committee, to the extent provided in the resolution of the Board, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Company. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board. Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

(g)    <u>Compensation of Directors; Expenses</u>. The Board shall have the authority to fix the compensation of Directors. The Directors may be paid their expenses, if any, of attendance at meetings of the Board, which may be a fixed sum for attendance at each meeting of the Board or a stated salary as Director. No such payment shall preclude any Director from serving the Company in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings.

(h)    <u>Removal of Directors</u>. Unless otherwise restricted by law, any Director or the entire Board of Directors may be removed or expelled, with or without cause, at any time by the Member, and, any vacancy caused by any such removal or expulsion may be filled by action of the Member.

(i)    <u>Directors as Agents</u>. To the extent of their powers set forth in this Agreement, the Directors are agents of the Company for the purpose of the Company's business, and the actions of the Directors taken in accordance with such powers set forth in this Agreement shall bind the Company. Notwithstanding the last sentence of Section 18-402 of the Act, except as provided in this Agreement or in a resolution of the Directors, a Director may not bind the Company.

Section 10.    <u>Intentionally Omitted</u>.

Section 11.    <u>Officers</u>.

(a)    <u>Officers</u>. The initial Officers of the Company shall be designated by the Member. The additional or successor Officers of the Company shall be chosen by the Board and shall consist of at least a President, a Secretary and a Treasurer. The Board of Directors may also choose one or more Vice Presidents, Assistant Secretaries and Assistant Treasurers. Any number of offices may be held by the same person. The Board may appoint such other Officers and agents as it shall deem necessary or advisable who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board. The salaries of all Officers and agents of the Company shall be fixed by or in the manner prescribed by the Board. The Officers of the Company shall hold office until their successors are chosen and qualified. Any Officer may be removed at any time, with or without cause, by the affirmative vote of a majority of the Board. Any vacancy occurring in any office of

4

the Company shall be filled by the Board. The initial Officers of the Company designated by the Member are listed on Schedule E hereto.

(b)    President. The President shall be the chief executive officer of the Company, shall preside at all meetings of the Board, shall be responsible for the general and active management of the business of the Company and shall see that all orders and resolutions of the Board are carried into effect. The President or any other Officer authorized by the President or the Board shall execute all bonds, mortgages and other contracts, except: (i) where required or permitted by law or this Agreement to be otherwise signed and executed, including Section 7(b); (ii) where signing and execution thereof shall be expressly delegated by the Board to some other Officer or agent of the Company, and (iii) as otherwise permitted in Section 11(c).

(c)    Vice President. In the absence of the President or in the event of the President's inability to act, the Vice President, if any (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Directors, or in the absence of any designation, then in the order of their election), shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. The Vice Presidents, if any, shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(d)    Secretary and Assistant Secretary. The Secretary shall be responsible for filing legal documents and maintaining records for the Company. The Secretary shall attend all meetings of the Board and record all the proceedings of the meetings of the Company and of the Board in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or shall cause to be given, notice of all meetings of the Member, if any, and special meetings of the Board, and shall perform such other duties as may be prescribed by the Board or the President, under whose supervision the Secretary shall serve. The Assistant Secretary, or if there be more than one, the Assistant Secretaries in the order determined by the Board (or if there be no such determination, then in order of their election), shall, in the absence of the Secretary or in the event of the Secretary's inability to act, perform the duties and exercise the powers of the Secretary and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(e)    Treasurer and Assistant Treasurer. The Treasurer shall have the custody of the Company funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company and shall deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Board. The Treasurer shall disburse the funds of the Company as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the President and to the Board, at its regular meetings or when the Board so requires, an account of all of the Treasurer's transactions and of the financial condition of the Company. The Assistant Treasurer, or if there shall be more than one, the Assistant Treasurers in the order determined by the Board (or if there be no such determination, then in the order of their election), shall, in the absence of the Treasurer or in the event of the Treasurer's inability to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

3M 1185747v1

CONFIDENTIAL                                                                    AEARO_CH11_00001948

    (f)    <u>Officers as Agents</u>.  The Officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Board not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business and the actions of the Officers taken in accordance with such powers shall bind the Company.

    (g)    <u>Duties of Board and Officers</u>.  Except to the extent otherwise modified herein, each Director and Officer shall have fiduciary duties identical to those of directors and officers of business corporations organized under the General Corporation Law of the State of Delaware.

Section 12.    <u>Limited Liability</u>.

    Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor any Director shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or Director of the Company.

Section 13.    <u>Capital Contributions</u>.

    The Member has contributed to the Company property of an agreed value as listed on <u>Schedule B</u> attached hereto.

Section 14.    <u>Additional Contributions</u>.

    The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member.  To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise <u>Schedule B</u> of this Agreement. The provisions of this Agreement, including this <u>Section 14</u>, are intended to benefit the Member and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (other than a Covered Person) (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 15.    <u>Allocation of Profits and Losses</u>.

    The Company's profits and losses shall be allocated to the Member.

Section 16.    <u>Distributions</u>.

    Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Board.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law.

3M 1185747v1

CONFIDENTIAL

AEARO_CH11_00001949

Section 17.     Books and Records.

The Board shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business. The books of the Company shall at all times be maintained by the Board. The Member and its duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours. The Company, and the Board on behalf of the Company, shall not have the right to keep confidential from the Member any information that the Board would otherwise be permitted to keep confidential from the Member pursuant to Section 18-305(c) of the Act. The Company's books of account shall be kept using the method of accounting determined by the Member. The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

Section 18.     Reports.

The Board shall, after the end of each fiscal year, use reasonable efforts to cause the Company's independent accountants, if any, to prepare and transmit to the Member as promptly as possible any such tax information as may be reasonably necessary to enable the Member to prepare its federal, state and local income tax returns relating to such fiscal year.

Section 19.     Other Business.

Notwithstanding any duty otherwise existing at law or in equity, the Member and any Officer, Director, employee or agent of the Company and any Affiliate of the Member may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others, and the Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 20.     Exculpation and Indemnification.

(a)     To the fullest extent permitted by applicable law, neither the Member nor any Officer, Director, employee or agent of the Company nor any employee, representative, agent or Affiliate of the Member (collectively, the "Covered Persons") shall be liable to the Company or any other Person who is bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's bad faith or willful misconduct.

(b)     To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim

7

CONFIDENTIAL     A.309

incurred by such Covered Person by reason of such Covered Person's bad faith or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 20 by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.

(c)     To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 20.

(d)     A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)     The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person to the Company or its members otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(f)     The foregoing provisions of this Section 20 shall survive any termination of this Agreement.

Section 21.    Assignments.

The Member may assign in whole or in part its limited liability company interest in the Company.  Subject to Section 23, the transferee of a limited liability company interest in the Company shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement.  If the Member transfers all of its limited liability company interest in the Company pursuant to this Section 21, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company.  Notwithstanding anything in this Agreement to the contrary, any successor to the Member by merger or consolidation in compliance with the Basic Documents shall, without further act, be the Member hereunder, and such merger or consolidation shall not constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

Section 22.    Resignation.

The Member may resign only upon its written consent.  If the Member is permitted to resign pursuant to this Section 22, an additional member of the Company shall be admitted to the

8

CONFIDENTIAL

A.310

Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

Section 23.     Admission of Additional Members.

One or more additional Members of the Company may be admitted to the Company with the written consent of the Member.

Section 24.     Dissolution.

(a)     The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) at any time there are no members of the Company, unless the Company is continued without dissolution in a manner permitted by the Act, (ii) the entry of a decree of judicial dissolution of the Company under Section 18-802 of the Act, or (iii) the written consent of the Member to dissolve the Company.

(b)     Notwithstanding any other provision of this Agreement, the Bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

(c)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(d)     The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Conversion shall have been canceled in the manner required by the Act.

Section 25.     Nature of Interest.

The Member shall not have any interest in any specific assets of the Company. The interest of the Member in the Company is personal property.

Section 26.     Benefits of Agreement; No Third-Party Rights.

None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member. Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (other than Covered Persons).

9

CONFIDENTIAL                    A.311                    AEARO_CH11_00001952

Section 27.    Severability of Provisions.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 28.    Entire Agreement.

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 29.    Binding Agreement.

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member in accordance with its terms.

Section 30.    Governing Law.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 31.    Amendments.

This Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member.

Section 32.    Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 33.    Notices.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in Section 2, (b) in the case of the Member, to the Member at its address as listed on Schedule B attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

3M 1185747v1

CONFIDENTIAL                AEARO_CH11_00001953

Section 34.     Effectiveness.

Pursuant to Section 18-214(d) of the Act, this Agreement shall be effective as of the time of the filing of the Certificate of Conversion with the Office of the Delaware Secretary of State on September 29, 2008.

[SIGNATURE PAGE FOLLOWS]

3M 1185747v1

CONFIDENTIAL     AEARO_CH11_00001954

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Limited Liability Company Agreement as of the $\underline{25}$ day of March, 2013.

MEMBER:

3M COMPANY

By: _____
Name: Robert W. Sprague
Title: Assistant Secretary

3M 1185747v1

CONFIDENTIAL

AEARO_CH11_00001955

SCHEDULE A

Definitions

A.    Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person.

"Agreement" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Bankruptcy" means, with respect to any Person, (A) if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, or (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (B) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated.  The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(1) and 18-304 of the Act.

"Basic Documents" means [insert documents being executed by Company at closing] and all documents and certificates contemplated thereby or delivered in connection therewith.

"Board" or "Board of Directors" means the Board of Directors of the Company.

"Certificate of Conversion" means the Certificate of Conversion of the Company filed with the Secretary of State of the State of Delaware on September 29, 2008, as amended or amended and restated from time to time.

"Company" means 3M Occupational Safety LLC, a Delaware limited liability company.

A-1

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Covered Persons" has the meaning set forth in Section 20(a).

"Directors" means the Persons elected to the Board of Directors from time to time by the Member in their capacity as managers of the Company. A Director is hereby designated as a "manager" of the Company within the meaning of Section 18-101(10) of the Act.

"Management Agreement" means the agreement of the Directors in the form attached hereto as Schedule C. The Management Agreement shall be deemed incorporated into, and a part of, this Agreement.

"Member" means 3M Company, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company.

"Officer" means an officer of the Company described in Section 11.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

B.    Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

3M 1185747v1

CONFIDENTIAL

AEARO_CH11_00001957

SCHEDULE B

<u>Member</u>

| <u>Name</u> | <u>Mailing Address</u> | Agreed Value of <u>Capital Contribution</u> | <u>Limited Liability</u> <u>Company Interest</u> |
|---|---|---|---|
| 3M Company | 3M Center, St. Paul, MN 55144 | $1,097,041,132 | 100% |

B-1

SCHEDULE C

Management Agreement

March ___, 2013

3M Company
3M Center
St. Paul MN 55144

Re:  Management Agreement – 3M Occupational Safety LLC

Ladies and Gentlemen:

For good and valuable consideration, each of the undersigned Persons, who have been designated as directors of 3M Occupational Safety LLC, a Delaware limited liability company (the "Company"), in accordance with the Limited Liability Company Agreement of the Company, dated as of March ___, 2013, as it may be amended or restated from time to time (the "LLC Agreement"), hereby agree as follows:

Each of the undersigned accepts such Person's rights and authority as a Director under the LLC Agreement and agrees to perform and discharge such Person's duties and obligations as a Director under the LLC Agreement, and further agrees that such rights, authorities, duties and obligations under the LLC Agreement shall continue until such Person's successor as a Director is designated or until such Person's resignation or removal as a Director in accordance with the LLC Agreement.  Each of the undersigned agrees and acknowledges that it has been designated as a "manager" of the Company within the meaning of the Delaware Limited Liability Company Act.

Each of the undersigned agrees, solely in its capacity as a creditor of the Company on account of any indemnification or other payment owing to the undersigned by the Company, not to acquiesce, petition or otherwise invoke or cause the Company to invoke the process of any court or governmental authority for the purpose of commencing or sustaining an involuntary case against the Company under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Company or any substantial part of the property of the Company, or ordering the winding up or liquidation of the affairs of the Company.

THIS MANAGEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, AND ALL RIGHTS AND REMEDIES SHALL BE GOVERNED BY SUCH LAWS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

Initially capitalized terms used and not otherwise defined herein have the meanings set forth in the LLC Agreement.

C-1

3M 1185747v1

This Management Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Management Agreement and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this Management Agreement as of the day and year first above written.

_____
Denise R. Rutherford

_____
David R. Schlaefer

_____
Herve M. Gindre

_____
Neil G. Plesner

C-2

3M 1185747v1

CONFIDENTIAL

SCHEDULE D

DIRECTORS

1. Denise R. Rutherford
2. David R. Schlaefer
3. Herve M. Gindre
4. Neil G. Plesner

D-1

3M 1185747v1

SCHEDULE E

| OFFICERS | TITLE |
|---|---|
| Denise R. Rutherford | President |
| Roxanne Lapadat | Treasurer |
| Carol L. Bros | Secretary |
| Kimberly M. Torseth | Assistant Treasurer |
| Maureen C. Faricy | Assistant Secretary |

E-1

3M 1185747v1

CONFIDENTIAL                                                                AEARO_CH11_00001962

LIMITED LIABILITY COMPANY AGREEMENT
OF
AEARO HOLDING LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of Aearo Holding LLC (the "Company"), is entered into by 3M Occupational Safety LLC, as the sole equity member (the "Member"). Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement and by causing the filing of the Certificate of Conversion of the Company, hereby forms the Company as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.), as amended from time to time (the "Act"), and this Agreement, and the Member hereby agrees as follows:

Section 1.    Name.

The name of the limited liability company is Aearo Holding LLC.

Section 2.    Principal Business Office.

The principal business office of the Company shall be located at 5457 West 79TH Street, Indianapolis, IN 46268 or such other location as may hereafter be determined by the Member.

Section 3.    Registered Office.

The address of the registered office of the Company in the State of Delaware is c/o The Corporation Trust Company 1209 Orange Street in the City of Wilmington, County of New Castle, Delaware 19801.

Section 4.    Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is The Corporation Trust Company 1209 Orange Street, in the City of Wilmington, County of New Castle, Delaware 19801.

Section 5.    Members.

(a)    The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

(b)    The Member may act by written consent.

1

Section 6.    Certificates.

Maureen Faricy is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Conversion of the Company with the Secretary of State of the State of Delaware. Upon the filing of the Certificate of Conversion with the Secretary of State of the State of Delaware, her powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act. The Member or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Conversion as provided in the Act.

Section 7.    Purpose. The purpose to be conducted or promoted by the Company is to engage in the following activities:

        (i)     Holding/finance; and

        (ii)    to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b)    The Company is hereby authorized to execute, deliver and perform, and the Member or any Director or Officer on behalf of the Company are hereby authorized to execute and deliver, the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any Member, Director, Officer or other Person notwithstanding any other provision of this Agreement. The foregoing authorization shall not be deemed a restriction on the powers of the Member or any Director or Officer to enter into other agreements on behalf of the Company.

Section 8.    Powers.

The Company, and the Board of Directors and the Officers of the Company on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in Section 7 and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9.    Management.

(a)    Board of Directors. The business and affairs of the Company shall be managed by or under the direction of a Board of one or more Directors designated by the Member. The Member may determine at any time in its sole and absolute discretion the number of Directors to constitute the Board. The authorized number of Directors may be increased or decreased by the

CONFIDENTIAL

A.323

Member at any time in its sole and absolute discretion, upon notice to all Directors. The initial number of Directors shall be three. Each Director elected, designated or appointed by the Member shall hold office until a successor is elected and qualified or until such Director's earlier death, resignation, expulsion or removal. Each Director shall execute and deliver the Management Agreement. Directors need not be a Member. The initial Directors designated by the Member are listed on Schedule D hereto.

(b)     Powers. The Board of Directors shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Subject to Sections 7 and 9, the Board of Directors has the authority to bind the Company.

(c)     Meeting of the Board of Directors. The Board of Directors of the Company may hold meetings, both regular and special, within or outside the State of Delaware. Regular meetings of the Board may be held without notice at such time and at such place as shall from time to time be determined by the Board. Special meetings of the Board may be called by the President on not less than one day's notice to each Director by telephone, facsimile, mail, telegram or any other means of communication, and special meetings shall be called by the President or Secretary in like manner and with like notice upon the written request of any one or more of the Directors.

(d)     Quorum: Acts of the Board. At all meetings of the Board, a majority of the Directors shall constitute a quorum for the transaction of business and, except as otherwise provided in any other provision of this Agreement, the act of a majority of the Directors present at any meeting at which there is a quorum shall be the act of the Board. If a quorum shall not be present at any meeting of the Board, the Directors present at such meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. Any action required or permitted to be taken at any meeting of the Board or of any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee, as the case may be.

(e)     Electronic Communications. Members of the Board, or any committee designated by the Board, may participate in meetings of the Board, or any committee, by means of telephone conference or similar communications equipment that allows all Persons participating in the meeting to hear each other, and such participation in a meeting shall constitute presence in Person at the meeting. If all the participants are participating by telephone conference or similar communications equipment, the meeting shall be deemed to be held at the principal place of business of the Company.

(f)     Committees of Directors.

(i)     The Board may, by resolution passed by a majority of the whole Board, designate one or more committees, each committee to consist of one or more of the Directors of the Company. The Board may designate one or more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

3M 1185726v1

CONFIDENTIAL                                                                      AEARO_CH11_00001970

(ii)    In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member.

(iii)    Any such committee, to the extent provided in the resolution of the Board, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Company. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board. Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

(g)    <u>Compensation of Directors; Expenses</u>. The Board shall have the authority to fix the compensation of Directors. The Directors may be paid their expenses, if any, of attendance at meetings of the Board, which may be a fixed sum for attendance at each meeting of the Board or a stated salary as Director. No such payment shall preclude any Director from serving the Company in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings.

(h)    <u>Removal of Directors</u>. Unless otherwise restricted by law, any Director or the entire Board of Directors may be removed or expelled, with or without cause, at any time by the Member, and, any vacancy caused by any such removal or expulsion may be filled by action of the Member.

(i)    <u>Directors as Agents</u>. To the extent of their powers set forth in this Agreement, the Directors are agents of the Company for the purpose of the Company's business, and the actions of the Directors taken in accordance with such powers set forth in this Agreement shall bind the Company. Notwithstanding the last sentence of Section 18-402 of the Act, except as provided in this Agreement or in a resolution of the Directors, a Director may not bind the Company.

Section 10.    <u>Intentionally Omitted</u>.

Section 11.    <u>Officers</u>.

(a)    <u>Officers</u>. The initial Officers of the Company shall be designated by the Member. The additional or successor Officers of the Company shall be chosen by the Board and shall consist of at least a President, a Secretary and a Treasurer. The Board of Directors may also choose one or more Vice Presidents, Assistant Secretaries and Assistant Treasurers. Any number of offices may be held by the same person. The Board may appoint such other Officers and agents as it shall deem necessary or advisable who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board. The salaries of all Officers and agents of the Company shall be fixed by or in the manner prescribed by the Board. The Officers of the Company shall hold office until their successors are chosen and qualified. Any Officer may be removed at any time, with or without cause, by the affirmative vote of a majority of the Board. Any vacancy occurring in any office of

4

CONFIDENTIAL

the Company shall be filled by the Board. The initial Officers of the Company designated by the Member are listed on Schedule E hereto.

(b)    President. The President shall be the chief executive officer of the Company, shall preside at all meetings of the Board, shall be responsible for the general and active management of the business of the Company and shall see that all orders and resolutions of the Board are carried into effect. The President or any other Officer authorized by the President or the Board shall execute all bonds, mortgages and other contracts, except: (i) where required or permitted by law or this Agreement to be otherwise signed and executed, including Section 7(b); (ii) where signing and execution thereof shall be expressly delegated by the Board to some other Officer or agent of the Company, and (iii) as otherwise permitted in Section 11(c).

(c)    Vice President. In the absence of the President or in the event of the President's inability to act, the Vice President, if any (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Directors, or in the absence of any designation, then in the order of their election), shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. The Vice Presidents, if any, shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(d)    Secretary and Assistant Secretary. The Secretary shall be responsible for filing legal documents and maintaining records for the Company. The Secretary shall attend all meetings of the Board and record all the proceedings of the meetings of the Company and of the Board in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or shall cause to be given, notice of all meetings of the Member, if any, and special meetings of the Board, and shall perform such other duties as may be prescribed by the Board or the President, under whose supervision the Secretary shall serve. The Assistant Secretary, or if there be more than one, the Assistant Secretaries in the order determined by the Board (or if there be no such determination, then in order of their election), shall, in the absence of the Secretary or in the event of the Secretary's inability to act, perform the duties and exercise the powers of the Secretary and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(e)    Treasurer and Assistant Treasurer. The Treasurer shall have the custody of the Company funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company and shall deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Board. The Treasurer shall disburse the funds of the Company as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the President and to the Board, at its regular meetings or when the Board so requires, an account of all of the Treasurer's transactions and of the financial condition of the Company. The Assistant Treasurer, or if there shall be more than one, the Assistant Treasurers in the order determined by the Board (or if there be no such determination, then in the order of their election), shall, in the absence of the Treasurer or in the event of the Treasurer's inability to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

5

(f)     Officers as Agents.  The Officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Board not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business and the actions of the Officers taken in accordance with such powers shall bind the Company.

(g)     Duties of Board and Officers.  Except to the extent otherwise modified herein, each Director and Officer shall have fiduciary duties identical to those of directors and officers of business corporations organized under the General Corporation Law of the State of Delaware.

Section 12.     Limited Liability.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor any Director shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or Director of the Company.

Section 13.     Capital Contributions.

The Member has contributed to the Company property of an agreed value as listed on Schedule B attached hereto.

Section 14.     Additional Contributions.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member.  To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise Schedule B of this Agreement. The provisions of this Agreement, including this Section 14, are intended to benefit the Member and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (other than a Covered Person) (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 15.     Allocation of Profits and Losses.

The Company's profits and losses shall be allocated to the Member.

Section 16.     Distributions.

Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Board.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law.

3M 1185726v1

CONFIDENTIAL                                              AEARO_CH11_00001973

Section 17.     Books and Records.

The Board shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business.  The books of the Company shall at all times be maintained by the Board.  The Member and its duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours.  The Company, and the Board on behalf of the Company, shall not have the right to keep confidential from the Member any information that the Board would otherwise be permitted to keep confidential from the Member pursuant to Section 18-305(c) of the Act.  The Company's books of account shall be kept using the method of accounting determined by the Member.  The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

Section 18.     Reports.

The Board shall, after the end of each fiscal year, use reasonable efforts to cause the Company's independent accountants, if any, to prepare and transmit to the Member as promptly as possible any such tax information as may be reasonably necessary to enable the Member to prepare its federal, state and local income tax returns relating to such fiscal year.

Section 19.     Other Business.

Notwithstanding any duty otherwise existing at law or in equity, the Member and any Officer, Director, employee or agent of the Company and any Affiliate of the Member may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others, and the Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 20.     Exculpation and Indemnification.

(a)     To the fullest extent permitted by applicable law, neither the Member nor any Officer, Director, employee or agent of the Company nor any employee, representative, agent or Affiliate of the Member (collectively, the "Covered Persons") shall be liable to the Company or any other Person who is bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's bad faith or willful misconduct.

(b)     To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim

7

3M 1185726v1

incurred by such Covered Person by reason of such Covered Person's bad faith or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 20 by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.

(c)     To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 20.

(d)     A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)     The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person to the Company or its members otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(f)     The foregoing provisions of this Section 20 shall survive any termination of this Agreement.

Section 21.    Assignments.

The Member may assign in whole or in part its limited liability company interest in the Company.  Subject to Section 23, the transferee of a limited liability company interest in the Company shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement.  If the Member transfers all of its limited liability company interest in the Company pursuant to this Section 21, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company.  Notwithstanding anything in this Agreement to the contrary, any successor to the Member by merger or consolidation in compliance with the Basic Documents shall, without further act, be the Member hereunder, and such merger or consolidation shall not constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

Section 22.    Resignation.

The Member may resign only upon its written consent.  If the Member is permitted to resign pursuant to this Section 22, an additional member of the Company shall be admitted to the

3M 1185726v1

CONFIDENTIAL

AEARO_CH11_00001975

Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

Section 23.     Admission of Additional Members.

One or more additional Members of the Company may be admitted to the Company with the written consent of the Member.

Section 24.     Dissolution.

(a)     The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following:  (i) at any time there are no members of the Company, unless the Company is continued without dissolution in a manner permitted by the Act, (ii) the entry of a decree of judicial dissolution of the Company under Section 18-802 of the Act, or (iii) the written consent of the Member to dissolve the Company.

(b)     Notwithstanding any other provision of this Agreement, the Bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

(c)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(d)     The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Conversion shall have been canceled in the manner required by the Act.

Section 25.     Nature of Interest.

The Member shall not have any interest in any specific assets of the Company.  The interest of the Member in the Company is personal property.

Section 26.     Benefits of Agreement; No Third-Party Rights.

None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member.  Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (other than Covered Persons).

3M 1185726v1

Section 27.    Severability of Provisions.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 28.    Entire Agreement.

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 29.    Binding Agreement.

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member in accordance with its terms.

Section 30.    Governing Law.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 31.    Amendments.

This Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member.

Section 32.    Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 33.    Notices.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in Section 2, (b) in the case of the Member, to the Member at its address as listed on Schedule B attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

3M 1185726v1

CONFIDENTIAL    AEARO_CH11_00001977

Section 34.     Effectiveness.

Pursuant to Section 18-214(d) of the Act, this Agreement shall be effective as of the time of the filing of the Certificate of Conversion with the Office of the Delaware Secretary of State on September 29, 2008.

[SIGNATURE PAGE FOLLOWS]

CONFIDENTIAL

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Limited Liability Company Agreement as of the ℨ𝟴 day of March, 2013.

MEMBER:

3M OCCUPATIONAL SAFETY LLC

By: _____
Name: Denise Rutherford
Title: President

3M 1185726v1

CONFIDENTIAL                                          AEARO_CH11_00001979

SCHEDULE A

Definitions

A.     Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person.

"Agreement" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Bankruptcy" means, with respect to any Person, (A) if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, or (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (B) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated. The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(1) and 18-304 of the Act.

"Basic Documents" means [insert documents being executed by Company at closing] and all documents and certificates contemplated thereby or delivered in connection therewith.

"Board" or "Board of Directors" means the Board of Directors of the Company.

"Certificate of Conversion" means the Certificate of Conversion of the Company filed with the Secretary of State of the State of Delaware on September 29, 2008, as amended or amended and restated from time to time.

"Company" means Aearo Holding LLC, a Delaware limited liability company.

A-1

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Covered Persons" has the meaning set forth in Section 20(a).

"Directors" means the Persons elected to the Board of Directors from time to time by the Member in their capacity as managers of the Company. A Director is hereby designated as a "manager" of the Company within the meaning of Section 18-101(10) of the Act.

"Management Agreement" means the agreement of the Directors in the form attached hereto as Schedule C. The Management Agreement shall be deemed incorporated into, and a part of, this Agreement.

"Member" means 3M Occupational Safety LLC, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company.

"Officer" means an officer of the Company described in Section 11.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

B.    Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

A-2

CONFIDENTIAL

A.335

AEARO_CH11_00001981

SCHEDULE B

Member

| Name | Mailing Address | Agreed Value of Capital Contribution | Limited Liability Company Interest |
|------|-----------------|--------------------------------------|------------------------------------|
| 3M Occupational Safety LLC | 3M Center, St. Paul, MN 55144 | $1,182,583,543 | 100% |

B-1

3M 1185726v1

CONFIDENTIAL

AEARO_CH11_00001982

SCHEDULE C

Management Agreement

March 23, 2013

3M Occupational Safety LLC
3M Center
St. Paul MN 55144

Re: Management Agreement – Aearo Holding LLC

Ladies and Gentlemen:

For good and valuable consideration, each of the undersigned Persons, who have been designated as directors of Aearo Holding LLC, a Delaware limited liability company (the "Company"), in accordance with the Limited Liability Company Agreement of the Company, dated as of March 23, 2013, as it may be amended or restated from time to time (the "LLC Agreement"), hereby agree as follows:

Each of the undersigned accepts such Person's rights and authority as a Director under the LLC Agreement and agrees to perform and discharge such Person's duties and obligations as a Director under the LLC Agreement, and further agrees that such rights, authorities, duties and obligations under the LLC Agreement shall continue until such Person's successor as a Director is designated or until such Person's resignation or removal as a Director in accordance with the LLC Agreement. Each of the undersigned agrees and acknowledges that it has been designated as a "manager" of the Company within the meaning of the Delaware Limited Liability Company Act.

Each of the undersigned agrees, solely in its capacity as a creditor of the Company on account of any indemnification or other payment owing to the undersigned by the Company, not to acquiesce, petition or otherwise invoke or cause the Company to invoke the process of any court or governmental authority for the purpose of commencing or sustaining an involuntary case against the Company under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Company or any substantial part of the property of the Company, or ordering the winding up or liquidation of the affairs of the Company.

THIS MANAGEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, AND ALL RIGHTS AND REMEDIES SHALL BE GOVERNED BY SUCH LAWS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

Initially capitalized terms used and not otherwise defined herein have the meanings set forth in the LLC Agreement.

C-1

3M 1185726v1

CONFIDENTIAL

AEARO_CH11_00001983

This Management Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Management Agreement and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this Management Agreement as of the day and year first above written.

_____
Denise R. Rutherford

_____
David R. Schlaefer

_____
Hervé M. Gindre

_____
Neil G. Plesner

C-2

3M 1185726v1

SCHEDULE D

DIRECTORS

1. Denise R. Rutherford
2. David R. Schlaefer
3. Herve M. Gindre
4. Neil G. Plesner

3M 1185726v1

CONFIDENTIAL                                                        AEARO_CH11_00001985

SCHEDULE E

| OFFICERS | TITLE |
|---|---|
| Denise R. Rutherford | President |
| Roxanne Lapadat | Treasurer |
| Carol L. Bros | Secretary |
| Kimberly M. Torseth | Assistant Treasurer |
| Maureen C. Faricy | Assistant Secretary |

E-1

3M 1185726v1

LIMITED LIABILITY COMPANY AGREEMENT
OF
AEARO INTERMEDIATE LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of Aearo Intermediate LLC (the "Company"), is entered into by Aearo Holding LLC, as the sole equity member (the "Member"). Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement and by causing the filing of the Certificate of Conversion of the Company, hereby forms the Company as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.), as amended from time to time (the "Act"), and this Agreement, and the Member hereby agrees as follows:

Section 1.     Name.

The name of the limited liability company is Aearo Intermediate LLC.

Section 2.     Principal Business Office.

The principal business office of the Company shall be located at 5457 West 79TH Street, Indianapolis, IN 46268 or such other location as may hereafter be determined by the Member.

Section 3.     Registered Office.

The address of the registered office of the Company in the State of Delaware is c/o The Corporation Trust Company 1209 Orange Street in the City of Wilmington, County of New Castle, Delaware 19801.

Section 4.     Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is The Corporation Trust Company 1209 Orange Street, in the City of Wilmington, County of New Castle, Delaware 19801.

Section 5.     Members.

(a)     The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

(b)     The Member may act by written consent.

1

3M 1185594v1

CONFIDENTIAL

AEARO_CH11_00001992

Section 6.     Certificates.

Maureen Faricy is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Conversion of the Company with the Secretary of State of the State of Delaware. Upon the filing of the Certificate of Conversion with the Secretary of State of the State of Delaware, her powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act. The Member or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Conversion as provided in the Act.

Section 7.     Purpose. The purpose to be conducted or promoted by the Company is to engage in the following activities:

(i)     Holding/finance; and

(ii)     to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b)     The Company is hereby authorized to execute, deliver and perform, and the Member or any Director or Officer on behalf of the Company are hereby authorized to execute and deliver, the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any Member, Director, Officer or other Person notwithstanding any other provision of this Agreement. The foregoing authorization shall not be deemed a restriction on the powers of the Member or any Director or Officer to enter into other agreements on behalf of the Company.

Section 8.     Powers.

The Company, and the Board of Directors and the Officers of the Company on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in Section 7 and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9.     Management.

(a)     Board of Directors. The business and affairs of the Company shall be managed by or under the direction of a Board of one or more Directors designated by the Member. The Member may determine at any time in its sole and absolute discretion the number of Directors to constitute the Board. The authorized number of Directors may be increased or decreased by the

3M 1185594v1

2

Member at any time in its sole and absolute discretion, upon notice to all Directors. The initial number of Directors shall be three. Each Director elected, designated or appointed by the Member shall hold office until a successor is elected and qualified or until such Director's earlier death, resignation, expulsion or removal. Each Director shall execute and deliver the Management Agreement. Directors need not be a Member. The initial Directors designated by the Member are listed on Schedule D hereto.

(b)    Powers.   The Board of Directors shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Subject to Sections 7 and 9, the Board of Directors has the authority to bind the Company.

(c)    Meeting of the Board of Directors.   The Board of Directors of the Company may hold meetings, both regular and special, within or outside the State of Delaware. Regular meetings of the Board may be held without notice at such time and at such place as shall from time to time be determined by the Board. Special meetings of the Board may be called by the President on not less than one day's notice to each Director by telephone, facsimile, mail, telegram or any other means of communication, and special meetings shall be called by the President or Secretary in like manner and with like notice upon the written request of any one or more of the Directors.

(d)    Quorum: Acts of the Board.   At all meetings of the Board, a majority of the Directors shall constitute a quorum for the transaction of business and, except as otherwise provided in any other provision of this Agreement, the act of a majority of the Directors present at any meeting at which there is a quorum shall be the act of the Board. If a quorum shall not be present at any meeting of the Board, the Directors present at such meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. Any action required or permitted to be taken at any meeting of the Board or of any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee, as the case may be.

(e)    Electronic Communications.   Members of the Board, or any committee designated by the Board, may participate in meetings of the Board, or any committee, by means of telephone conference or similar communications equipment that allows all Persons participating in the meeting to hear each other, and such participation in a meeting shall constitute presence in Person at the meeting. If all the participants are participating by telephone conference or similar communications equipment, the meeting shall be deemed to be held at the principal place of business of the Company.

(f)    Committees of Directors.

(i)    The Board may, by resolution passed by a majority of the whole Board, designate one or more committees, each committee to consist of one or more of the Directors of the Company. The Board may designate one or more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

3

CONFIDENTIAL

A.343

(ii)    In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member.

(iii)    Any such committee, to the extent provided in the resolution of the Board, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Company. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board. Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

(g)    <u>Compensation of Directors; Expenses</u>. The Board shall have the authority to fix the compensation of Directors. The Directors may be paid their expenses, if any, of attendance at meetings of the Board, which may be a fixed sum for attendance at each meeting of the Board or a stated salary as Director. No such payment shall preclude any Director from serving the Company in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings.

(h)    <u>Removal of Directors</u>. Unless otherwise restricted by law, any Director or the entire Board of Directors may be removed or expelled, with or without cause, at any time by the Member, and, any vacancy caused by any such removal or expulsion may be filled by action of the Member.

(i)    <u>Directors as Agents</u>. To the extent of their powers set forth in this Agreement, the Directors are agents of the Company for the purpose of the Company's business, and the actions of the Directors taken in accordance with such powers set forth in this Agreement shall bind the Company. Notwithstanding the last sentence of Section 18-402 of the Act, except as provided in this Agreement or in a resolution of the Directors, a Director may not bind the Company.

Section 10.    <u>Intentionally Omitted</u>.

Section 11.    <u>Officers</u>.

(a)    <u>Officers</u>. The initial Officers of the Company shall be designated by the Member. The additional or successor Officers of the Company shall be chosen by the Board and shall consist of at least a President, a Secretary and a Treasurer. The Board of Directors may also choose one or more Vice Presidents, Assistant Secretaries and Assistant Treasurers. Any number of offices may be held by the same person. The Board may appoint such other Officers and agents as it shall deem necessary or advisable who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board. The salaries of all Officers and agents of the Company shall be fixed by or in the manner prescribed by the Board. The Officers of the Company shall hold office until their successors are chosen and qualified. Any Officer may be removed at any time, with or without cause, by the affirmative vote of a majority of the Board. Any vacancy occurring in any office of

3M 1185594v1

CONFIDENTIAL

A.344

AEARO_CH11_00001995

the Company shall be filled by the Board. The initial Officers of the Company designated by the Member are listed on Schedule E hereto.

(b)    President. The President shall be the chief executive officer of the Company, shall preside at all meetings of the Board, shall be responsible for the general and active management of the business of the Company and shall see that all orders and resolutions of the Board are carried into effect. The President or any other Officer authorized by the President or the Board shall execute all bonds, mortgages and other contracts, except: (i) where required or permitted by law or this Agreement to be otherwise signed and executed, including Section 7(b); (ii) where signing and execution thereof shall be expressly delegated by the Board to some other Officer or agent of the Company, and (iii) as otherwise permitted in Section 11(c).

(c)    Vice President. In the absence of the President or in the event of the President's inability to act, the Vice President, if any (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Directors, or in the absence of any designation, then in the order of their election), shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. The Vice Presidents, if any, shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(d)    Secretary and Assistant Secretary. The Secretary shall be responsible for filing legal documents and maintaining records for the Company. The Secretary shall attend all meetings of the Board and record all the proceedings of the meetings of the Company and of the Board in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or shall cause to be given, notice of all meetings of the Member, if any, and special meetings of the Board, and shall perform such other duties as may be prescribed by the Board or the President, under whose supervision the Secretary shall serve. The Assistant Secretary, or if there be more than one, the Assistant Secretaries in the order determined by the Board (or if there be no such determination, then in order of their election), shall, in the absence of the Secretary or in the event of the Secretary's inability to act, perform the duties and exercise the powers of the Secretary and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(e)    Treasurer and Assistant Treasurer. The Treasurer shall have the custody of the Company funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company and shall deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Board. The Treasurer shall disburse the funds of the Company as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the President and to the Board, at its regular meetings or when the Board so requires, an account of all of the Treasurer's transactions and of the financial condition of the Company. The Assistant Treasurer, or if there shall be more than one, the Assistant Treasurers in the order determined by the Board (or if there be no such determination, then in the order of their election), shall, in the absence of the Treasurer or in the event of the Treasurer's inability to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

5

CONFIDENTIAL

A.345

(f)     _Officers as Agents_.  The Officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Board not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business and the actions of the Officers taken in accordance with such powers shall bind the Company.

(g)     _Duties of Board and Officers_.  Except to the extent otherwise modified herein, each Director and Officer shall have fiduciary duties identical to those of directors and officers of business corporations organized under the General Corporation Law of the State of Delaware.

Section 12.     _Limited Liability_.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor any Director shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or Director of the Company.

Section 13.     _Capital Contributions_.

The Member has contributed to the Company property of an agreed value as listed on Schedule B attached hereto.

Section 14.     _Additional Contributions_.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member.  To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise Schedule B of this Agreement. The provisions of this Agreement, including this Section 14, are intended to benefit the Member and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (other than a Covered Person) (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 15.     _Allocation of Profits and Losses_.

The Company's profits and losses shall be allocated to the Member.

Section 16.     _Distributions_.

Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Board.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law.

6

CONFIDENTIAL                    A.346                    AEARO_CH11_00001997

Section 17.     <u>Books and Records.</u>

The Board shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business. The books of the Company shall at all times be maintained by the Board. The Member and its duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours. The Company, and the Board on behalf of the Company, shall not have the right to keep confidential from the Member any information that the Board would otherwise be permitted to keep confidential from the Member pursuant to Section 18-305(c) of the Act. The Company's books of account shall be kept using the method of accounting determined by the Member. The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

Section 18.     <u>Reports.</u>

The Board shall, after the end of each fiscal year, use reasonable efforts to cause the Company's independent accountants, if any, to prepare and transmit to the Member as promptly as possible any such tax information as may be reasonably necessary to enable the Member to prepare its federal, state and local income tax returns relating to such fiscal year.

Section 19.     <u>Other Business.</u>

Notwithstanding any duty otherwise existing at law or in equity, the Member and any Officer, Director, employee or agent of the Company and any Affiliate of the Member may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others, and the Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 20.     <u>Exculpation and Indemnification.</u>

(a)     To the fullest extent permitted by applicable law, neither the Member nor any Officer, Director, employee or agent of the Company nor any employee, representative, agent or Affiliate of the Member (collectively, the "<u>Covered Persons</u>") shall be liable to the Company or any other Person who is bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's bad faith or willful misconduct.

(b)     To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim

7

CONFIDENTIAL

A.347

AEARO_CH11_00001998

incurred by such Covered Person by reason of such Covered Person's bad faith or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 20 by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.

(c)    To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 20.

(d)    A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)    The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person to the Company or its members otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(f)    The foregoing provisions of this Section 20 shall survive any termination of this Agreement.

Section 21.    Assignments.

The Member may assign in whole or in part its limited liability company interest in the Company. Subject to Section 23, the transferee of a limited liability company interest in the Company shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. If the Member transfers all of its limited liability company interest in the Company pursuant to this Section 21, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company. Notwithstanding anything in this Agreement to the contrary, any successor to the Member by merger or consolidation in compliance with the Basic Documents shall, without further act, be the Member hereunder, and such merger or consolidation shall not constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

Section 22.    Resignation.

The Member may resign only upon its written consent. If the Member is permitted to resign pursuant to this Section 22, an additional member of the Company shall be admitted to the

3M 1185594v1

CONFIDENTIAL    AEARO_CH11_00001999

Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

Section 23.    Admission of Additional Members.

One or more additional Members of the Company may be admitted to the Company with the written consent of the Member.

Section 24.    Dissolution.

(a)    The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) at any time there are no members of the Company, unless the Company is continued without dissolution in a manner permitted by the Act, (ii) the entry of a decree of judicial dissolution of the Company under Section 18-802 of the Act, or (iii) the written consent of the Member to dissolve the Company.

(b)    Notwithstanding any other provision of this Agreement, the Bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

(c)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(d)    The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Conversion shall have been canceled in the manner required by the Act.

Section 25.    Nature of Interest.

The Member shall not have any interest in any specific assets of the Company. The interest of the Member in the Company is personal property.

Section 26.    Benefits of Agreement; No Third-Party Rights.

None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member. Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (other than Covered Persons).

9

3M 1185594v1

Section 27.    Severability of Provisions.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 28.    Entire Agreement.

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 29.    Binding Agreement.

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member in accordance with its terms.

Section 30.    Governing Law.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 31.    Amendments.

This Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member.

Section 32.    Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 33.    Notices.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in Section 2, (b) in the case of the Member, to the Member at its address as listed on Schedule B attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

3M 1185594v1

CONFIDENTIAL                                    AEARO_CH11_00002001

Section 34.    <u>Effectiveness.</u>

Pursuant to Section 18-214(d) of the Act, this Agreement shall be effective as of the time of the filing of the Certificate of Conversion with the Office of the Delaware Secretary of State on September 29, 2008.

[SIGNATURE PAGE FOLLOWS]

3M 1185594v1

CONFIDENTIAL

A.351

AEARO_CH11_00002002

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Limited Liability Company Agreement as of the 28 day of March, 2013.

MEMBER:

AEARO HOLDING LLC

By: _____
Name: Denise Rutherford
Title: President

3M 1185594v1

CONFIDENTIAL                                                   AEARO_CH11_00002003

SCHEDULE A

Definitions

A.    Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person.

"Agreement" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Bankruptcy" means, with respect to any Person, (A) if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, or (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (B) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated. The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(1) and 18-304 of the Act.

"Basic Documents" means [insert documents being executed by Company at closing] and all documents and certificates contemplated thereby or delivered in connection therewith.

"Board" or "Board of Directors" means the Board of Directors of the Company.

"Certificate of Conversion" means the Certificate of Conversion of the Company filed with the Secretary of State of the State of Delaware on September 29, 2008, as amended or amended and restated from time to time.

"Company" means Aearo Intermediate LLC, a Delaware limited liability company.

A-1

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Covered Persons" has the meaning set forth in Section 20(a).

"Directors" means the Persons elected to the Board of Directors from time to time by the Member in their capacity as managers of the Company. A Director is hereby designated as a "manager" of the Company within the meaning of Section 18-101(10) of the Act.

"Management Agreement" means the agreement of the Directors in the form attached hereto as Schedule C. The Management Agreement shall be deemed incorporated into, and a part of, this Agreement.

"Member" means Aearo Holding LLC, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company.

"Officer" means an officer of the Company described in Section 11.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

B.    Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

3M 1185594v1

CONFIDENTIAL    AEARO_CH11_00002005

SCHEDULE B

Member

| Name | Mailing Address | Agreed Value of Capital Contribution | Limited Liability Company Interest |
|---|---|---|---|
| Aearo Holding LLC | 5457 West 79th Street, Indianapolis, IN | $1,201,593,997 | 100% |

B-1

3M 1185594v1

A.355

SCHEDULE C

Management Agreement

March 28, 2013

Aearo Holding LLC
5457 West 79th Street
Indianapolis, IN

Re: Management Agreement – Aearo Intermediate LLC

Ladies and Gentlemen:

For good and valuable consideration, each of the undersigned Persons, who have been designated as directors of Aearo Intermediate LLC, a Delaware limited liability company (the "Company"), in accordance with the Limited Liability Company Agreement of the Company, dated as of March 25, 2013, as it may be amended or restated from time to time (the "LLC Agreement"), hereby agree as follows:

Each of the undersigned accepts such Person's rights and authority as a Director under the LLC Agreement and agrees to perform and discharge such Person's duties and obligations as a Director under the LLC Agreement, and further agrees that such rights, authorities, duties and obligations under the LLC Agreement shall continue until such Person's successor as a Director is designated or until such Person's resignation or removal as a Director in accordance with the LLC Agreement. Each of the undersigned agrees and acknowledges that it has been designated as a "manager" of the Company within the meaning of the Delaware Limited Liability Company Act.

Each of the undersigned agrees, solely in its capacity as a creditor of the Company on account of any indemnification or other payment owing to the undersigned by the Company, not to acquiesce, petition or otherwise invoke or cause the Company to invoke the process of any court or governmental authority for the purpose of commencing or sustaining an involuntary case against the Company under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Company or any substantial part of the property of the Company, or ordering the winding up or liquidation of the affairs of the Company.

THIS MANAGEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, AND ALL RIGHTS AND REMEDIES SHALL BE GOVERNED BY SUCH LAWS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

Initially capitalized terms used and not otherwise defined herein have the meanings set forth in the LLC Agreement.

C-1

3M 1185594v1

CONFIDENTIAL                    AEARO_CH11_00002007

This Management Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Management Agreement and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this Management Agreement as of the day and year first above written.

Denise R. Rutherford

David R. Schlaefer

Herve M. Gindre

Neil G. Plesner

C-2

3M 1185594v1

CONFIDENTIAL                                    AEARO_CH11_00002008

SCHEDULE D

DIRECTORS

1. Denise R. Rutherford
2. David R. Schlaefer
3. Herve M. Gindre
4. Neil G. Plesner

D-1

3M 1185594v1

SCHEDULE E

| OFFICERS | TITLE |
|---|---|
| Denise R. Rutherford | President |
| Roxanne Lapadat | Treasurer |
| Carol L. Bros | Secretary |
| Kimberly M. Torseth | Assistant Treasurer |
| Maureen C. Faricy | Assistant Secretary |

E-1

3M 1185594v1

LIMITED LIABILITY COMPANY AGREEMENT
OF
AEARO LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of Aearo LLC (the "Company"), is entered into by Aearo Intermediate LLC, as the sole equity member (the "Member"). Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement and by causing the filing of the Certificate of Conversion of the Company, hereby forms the Company as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.), as amended from time to time (the "Act"), and this Agreement, and the Member hereby agrees as follows:

Section 1.    Name.

The name of the limited liability company is Aearo LLC.

Section 2.    Principal Business Office.

The principal business office of the Company shall be located at 5457 West 79TH Street, Indianapolis, IN 46268 or such other location as may hereafter be determined by the Member.

Section 3.    Registered Office.

The address of the registered office of the Company in the State of Delaware is c/o The Corporation Trust Company 1209 Orange Street in the City of Wilmington, County of New Castle, Delaware 19801.

Section 4.    Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is The Corporation Trust Company 1209 Orange Street, in the City of Wilmington, County of New Castle, Delaware 19801.

Section 5.    Members.

(a)    The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

(b)    The Member may act by written consent.

1

A.360

CONFIDENTIAL

Section 6.     Certificates.

Maureen Faricy is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Conversion of the Company with the Secretary of State of the State of Delaware.  Upon the filing of the Certificate of Conversion with the Secretary of State of the State of Delaware, her powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act.  The Member or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Conversion as provided in the Act.

Section 7.     Purpose.  The purpose to be conducted or promoted by the Company is to engage in the following activities:

          (i)      Holding/finance; and

          (ii)     to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b)     The Company is hereby authorized to execute, deliver and perform, and the Member or any Director or Officer on behalf of the Company are hereby authorized to execute and deliver, the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any Member, Director, Officer or other Person notwithstanding any other provision of this Agreement.  The foregoing authorization shall not be deemed a restriction on the powers of the Member or any Director or Officer to enter into other agreements on behalf of the Company.

Section 8.     Powers.

The Company, and the Board of Directors and the Officers of the Company on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in Section 7 and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9.     Management.

(a)     Board of Directors.  The business and affairs of the Company shall be managed by or under the direction of a Board of one or more Directors designated by the Member.  The Member may determine at any time in its sole and absolute discretion the number of Directors to constitute the Board.  The authorized number of Directors may be increased or decreased by the

3M 1185568v1

CONFIDENTIAL

AEARO_CH11_00002017

Member at any time in its sole and absolute discretion, upon notice to all Directors. The initial number of Directors shall be three. Each Director elected, designated or appointed by the Member shall hold office until a successor is elected and qualified or until such Director's earlier death, resignation, expulsion or removal. Each Director shall execute and deliver the Management Agreement. Directors need not be a Member. The initial Directors designated by the Member are listed on Schedule D hereto.

    (b)   <u>Powers</u>. The Board of Directors shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Subject to <u>Sections 7 and 9</u>, the Board of Directors has the authority to bind the Company.

    (c)   <u>Meeting of the Board of Directors</u>. The Board of Directors of the Company may hold meetings, both regular and special, within or outside the State of Delaware. Regular meetings of the Board may be held without notice at such time and at such place as shall from time to time be determined by the Board. Special meetings of the Board may be called by the President on not less than one day's notice to each Director by telephone, facsimile, mail, telegram or any other means of communication, and special meetings shall be called by the President or Secretary in like manner and with like notice upon the written request of any one or more of the Directors.

    (d)   <u>Quorum: Acts of the Board</u>. At all meetings of the Board, a majority of the Directors shall constitute a quorum for the transaction of business and, except as otherwise provided in any other provision of this Agreement, the act of a majority of the Directors present at any meeting at which there is a quorum shall be the act of the Board. If a quorum shall not be present at any meeting of the Board, the Directors present at such meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. Any action required or permitted to be taken at any meeting of the Board or of any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee, as the case may be.

    (e)   <u>Electronic Communications</u>. Members of the Board, or any committee designated by the Board, may participate in meetings of the Board, or any committee, by means of telephone conference or similar communications equipment that allows all Persons participating in the meeting to hear each other, and such participation in a meeting shall constitute presence in Person at the meeting. If all the participants are participating by telephone conference or similar communications equipment, the meeting shall be deemed to be held at the principal place of business of the Company.

    (f)   <u>Committees of Directors</u>.

        (i)   The Board may, by resolution passed by a majority of the whole Board, designate one or more committees, each committee to consist of one or more of the Directors of the Company. The Board may designate one or more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

3M 1185568v1

CONFIDENTIAL

AEARO_CH11_00002018

    (ii)    In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member.

    (iii)    Any such committee, to the extent provided in the resolution of the Board, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Company. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board. Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

    (g)    <u>Compensation of Directors; Expenses</u>. The Board shall have the authority to fix the compensation of Directors. The Directors may be paid their expenses, if any, of attendance at meetings of the Board, which may be a fixed sum for attendance at each meeting of the Board or a stated salary as Director. No such payment shall preclude any Director from serving the Company in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings.

    (h)    <u>Removal of Directors</u>. Unless otherwise restricted by law, any Director or the entire Board of Directors may be removed or expelled, with or without cause, at any time by the Member, and, any vacancy caused by any such removal or expulsion may be filled by action of the Member.

    (i)    <u>Directors as Agents</u>. To the extent of their powers set forth in this Agreement, the Directors are agents of the Company for the purpose of the Company's business, and the actions of the Directors taken in accordance with such powers set forth in this Agreement shall bind the Company. Notwithstanding the last sentence of Section 18-402 of the Act, except as provided in this Agreement or in a resolution of the Directors, a Director may not bind the Company.

Section 10.    <u>Intentionally Omitted</u>.

Section 11.    <u>Officers.</u>

    (a)    <u>Officers</u>. The initial Officers of the Company shall be designated by the Member. The additional or successor Officers of the Company shall be chosen by the Board and shall consist of at least a President, a Secretary and a Treasurer. The Board of Directors may also choose one or more Vice Presidents, Assistant Secretaries and Assistant Treasurers. Any number of offices may be held by the same person. The Board may appoint such other Officers and agents as it shall deem necessary or advisable who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board. The salaries of all Officers and agents of the Company shall be fixed by or in the manner prescribed by the Board. The Officers of the Company shall hold office until their successors are chosen and qualified. Any Officer may be removed at any time, with or without cause, by the affirmative vote of a majority of the Board. Any vacancy occurring in any office of

4

the Company shall be filled by the Board. The initial Officers of the Company designated by the Member are listed on Schedule E hereto.

(b)     <u>President</u>. The President shall be the chief executive officer of the Company, shall preside at all meetings of the Board, shall be responsible for the general and active management of the business of the Company and shall see that all orders and resolutions of the Board are carried into effect. The President or any other Officer authorized by the President or the Board shall execute all bonds, mortgages and other contracts, except: (i) where required or permitted by law or this Agreement to be otherwise signed and executed, including <u>Section 7(b)</u>; (ii) where signing and execution thereof shall be expressly delegated by the Board to some other Officer or agent of the Company, and (iii) as otherwise permitted in <u>Section 11(c)</u>.

(c)     <u>Vice President</u>. In the absence of the President or in the event of the President's inability to act, the Vice President, if any (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Directors, or in the absence of any designation, then in the order of their election), shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. The Vice Presidents, if any, shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(d)     <u>Secretary and Assistant Secretary</u>. The Secretary shall be responsible for filing legal documents and maintaining records for the Company. The Secretary shall attend all meetings of the Board and record all the proceedings of the meetings of the Company and of the Board in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or shall cause to be given, notice of all meetings of the Member, if any, and special meetings of the Board, and shall perform such other duties as may be prescribed by the Board or the President, under whose supervision the Secretary shall serve. The Assistant Secretary, or if there be more than one, the Assistant Secretaries in the order determined by the Board (or if there be no such determination, then in order of their election), shall, in the absence of the Secretary or in the event of the Secretary's inability to act, perform the duties and exercise the powers of the Secretary and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(e)     <u>Treasurer and Assistant Treasurer</u>. The Treasurer shall have the custody of the Company funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company and shall deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Board. The Treasurer shall disburse the funds of the Company as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the President and to the Board, at its regular meetings or when the Board so requires, an account of all of the Treasurer's transactions and of the financial condition of the Company. The Assistant Treasurer, or if there shall be more than one, the Assistant Treasurers in the order determined by the Board (or if there be no such determination, then in the order of their election), shall, in the absence of the Treasurer or in the event of the Treasurer's inability to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

3M 1185568v1

CONFIDENTIAL

AEARO_CH11_00002020

(f)     <u>Officers as Agents</u>.  The Officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Board not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business and the actions of the Officers taken in accordance with such powers shall bind the Company.

(g)     <u>Duties of Board and Officers</u>.  Except to the extent otherwise modified herein, each Director and Officer shall have fiduciary duties identical to those of directors and officers of business corporations organized under the General Corporation Law of the State of Delaware.

Section 12.     <u>Limited Liability</u>.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor any Director shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or Director of the Company.

Section 13.     <u>Capital Contributions</u>.

The Member has contributed to the Company property of an agreed value as listed on <u>Schedule B</u> attached hereto.

Section 14.     <u>Additional Contributions</u>.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member.  To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise <u>Schedule B</u> of this Agreement. The provisions of this Agreement, including this <u>Section 14</u>, are intended to benefit the Member and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (other than a Covered Person) (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 15.     <u>Allocation of Profits and Losses</u>.

The Company's profits and losses shall be allocated to the Member.

Section 16.     <u>Distributions</u>.

Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Board.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law.

6

3M 1185568v1

CONFIDENTIAL                                                     AEARO_CH11_00002021

Section 17.    <u>Books and Records</u>.

The Board shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business. The books of the Company shall at all times be maintained by the Board. The Member and its duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours. The Company, and the Board on behalf of the Company, shall not have the right to keep confidential from the Member any information that the Board would otherwise be permitted to keep confidential from the Member pursuant to Section 18-305(c) of the Act. The Company's books of account shall be kept using the method of accounting determined by the Member. The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

Section 18.    <u>Reports</u>.

The Board shall, after the end of each fiscal year, use reasonable efforts to cause the Company's independent accountants, if any, to prepare and transmit to the Member as promptly as possible any such tax information as may be reasonably necessary to enable the Member to prepare its federal, state and local income tax returns relating to such fiscal year.

Section 19.    <u>Other Business</u>.

Notwithstanding any duty otherwise existing at law or in equity, the Member and any Officer, Director, employee or agent of the Company and any Affiliate of the Member may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others, and the Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 20.    <u>Exculpation and Indemnification</u>.

(a)    To the fullest extent permitted by applicable law, neither the Member nor any Officer, Director, employee or agent of the Company nor any employee, representative, agent or Affiliate of the Member (collectively, the "<u>Covered Persons</u>") shall be liable to the Company or any other Person who is bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's bad faith or willful misconduct.

(b)    To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim

7

CONFIDENTIAL

AEARO_CH11_00002022

incurred by such Covered Person by reason of such Covered Person's bad faith or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 20 by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.

(c)     To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 20.

(d)     A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)     The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person to the Company or its members otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(f)     The foregoing provisions of this Section 20 shall survive any termination of this Agreement.

Section 21.     Assignments.

The Member may assign in whole or in part its limited liability company interest in the Company. Subject to Section 23, the transferee of a limited liability company interest in the Company shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. If the Member transfers all of its limited liability company interest in the Company pursuant to this Section 21, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company. Notwithstanding anything in this Agreement to the contrary, any successor to the Member by merger or consolidation in compliance with the Basic Documents shall, without further act, be the Member hereunder, and such merger or consolidation shall not constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

Section 22.     Resignation.

The Member may resign only upon its written consent. If the Member is permitted to resign pursuant to this Section 22, an additional member of the Company shall be admitted to the

8

CONFIDENTIAL                    A.367                    AEARO_CH11_00002023

Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

Section 23.     Admission of Additional Members.

One or more additional Members of the Company may be admitted to the Company with the written consent of the Member.

Section 24.     Dissolution.

(a)     The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) at any time there are no members of the Company, unless the Company is continued without dissolution in a manner permitted by the Act, (ii) the entry of a decree of judicial dissolution of the Company under Section 18-802 of the Act, or (iii) the written consent of the Member to dissolve the Company.

(b)     Notwithstanding any other provision of this Agreement, the Bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

(c)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(d)     The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Conversion shall have been canceled in the manner required by the Act.

Section 25.     Nature of Interest.

The Member shall not have any interest in any specific assets of the Company. The interest of the Member in the Company is personal property.

Section 26.     Benefits of Agreement; No Third-Party Rights.

None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member. Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (other than Covered Persons).

3M 1185568v1

CONFIDENTIAL     A.368     AEARO_CH11_00002024

Section 27.    <u>Severability of Provisions</u>.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 28.    <u>Entire Agreement</u>.

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 29.    <u>Binding Agreement</u>.

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member in accordance with its terms.

Section 30.    <u>Governing Law</u>.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 31.    <u>Amendments</u>.

This Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member.

Section 32.    <u>Counterparts</u>.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 33.    <u>Notices</u>.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in <u>Section 2</u>, (b) in the case of the Member, to the Member at its address as listed on <u>Schedule B</u> attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

3M 1185568v1

CONFIDENTIAL                                    AEARO_CH11_00002025

Section 34.     <u>Effectiveness</u>.

       Pursuant to Section 18-214(d) of the Act, this Agreement shall be effective as of the time of the filing of the Certificate of Conversion with the Office of the Delaware Secretary of State on September 29, 2008.

[SIGNATURE PAGE FOLLOWS]

CONFIDENTIAL

A.370

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Limited Liability Company Agreement as of the 28 day of March, 2013.

MEMBER:

AEARO INTERMEDIATE LLC

By: _____
Name: Denise Rutherford
Title: President

3M 1185568v1

CONFIDENTIAL

AEARO_CH11_00002027

SCHEDULE A

Definitions

A.    Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person.

"Agreement" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Bankruptcy" means, with respect to any Person, (A) if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, or (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (B) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated. The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(1) and 18-304 of the Act.

"Basic Documents" means [insert documents being executed by Company at closing] and all documents and certificates contemplated thereby or delivered in connection therewith.

"Board" or "Board of Directors" means the Board of Directors of the Company.

"Certificate of Conversion" means the Certificate of Conversion of the Company filed with the Secretary of State of the State of Delaware on September 29, 2008, as amended or amended and restated from time to time.

"Company" means Aearo LLC, a Delaware limited liability company.

A-1

3M 1185568v1

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Covered Persons" has the meaning set forth in Section 20(a).

"Directors" means the Persons elected to the Board of Directors from time to time by the Member in their capacity as managers of the Company. A Director is hereby designated as a "manager" of the Company within the meaning of Section 18-101(10) of the Act.

"Management Agreement" means the agreement of the Directors in the form attached hereto as Schedule C. The Management Agreement shall be deemed incorporated into, and a part of, this Agreement.

"Member" means Aearo Intermediate LLC, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company.

"Officer" means an officer of the Company described in Section 11.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

B.    Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

3M 1185568v1

CONFIDENTIAL

AEARO_CH11_00002029

SCHEDULE B

<u>Member</u>

| <u>Name</u> | <u>Mailing Address</u> | Agreed Value of <u>Capital Contribution</u> | <u>Limited Liability</u> <u>Company Interest</u> |
|---|---|---|---|
| Aearo Intermediate LLC | 5457 West 79th Street, Indianapolis, IN | $1,201,259,080 | 100% |

B-1

SCHEDULE C

Management Agreement

March 2̲8̲, 2013

Aearo Intermediate LLC
5457 West 79th Street
Indianapolis, IN

Re:  Management Agreement – Aearo LLC

Ladies and Gentlemen:

For good and valuable consideration, each of the undersigned Persons, who have been designated as directors of Aearo LLC, a Delaware limited liability company (the "Company"), in accordance with the Limited Liability Company Agreement of the Company, dated as of March 2̲8̲, 2013, as it may be amended or restated from time to time (the "LLC Agreement"), hereby agree as follows:

Each of the undersigned accepts such Person's rights and authority as a Director under the LLC Agreement and agrees to perform and discharge such Person's duties and obligations as a Director under the LLC Agreement, and further agrees that such rights, authorities, duties and obligations under the LLC Agreement shall continue until such Person's successor as a Director is designated or until such Person's resignation or removal as a Director in accordance with the LLC Agreement. Each of the undersigned agrees and acknowledges that it has been designated as a "manager" of the Company within the meaning of the Delaware Limited Liability Company Act.

Each of the undersigned agrees, solely in its capacity as a creditor of the Company on account of any indemnification or other payment owing to the undersigned by the Company, not to acquiesce, petition or otherwise invoke or cause the Company to invoke the process of any court or governmental authority for the purpose of commencing or sustaining an involuntary case against the Company under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Company or any substantial part of the property of the Company, or ordering the winding up or liquidation of the affairs of the Company.

THIS MANAGEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, AND ALL RIGHTS AND REMEDIES SHALL BE GOVERNED BY SUCH LAWS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

Initially capitalized terms used and not otherwise defined herein have the meanings set forth in the LLC Agreement.

C-1

3M 1185568v1

SCHEDULE C

Management Agreement

March ⸻, 2013

Aearo Intermediate LLC
5457 West 79th Street
Indianapolis, IN

        Re:  Management Agreement – Aearo LLC

Ladies and Gentlemen:

        For good and valuable consideration, each of the undersigned Persons, who have been designated as directors of Aearo LLC, a Delaware limited liability company (the "Company"), in accordance with the Limited Liability Company Agreement of the Company, dated as of March ⸻, 2013, as it may be amended or restated from time to time (the "LLC Agreement"), hereby agree as follows:

        Each of the undersigned accepts such Person's rights and authority as a Director under the LLC Agreement and agrees to perform and discharge such Person's duties and obligations as a Director under the LLC Agreement, and further agrees that such rights, authorities, duties and obligations under the LLC Agreement shall continue until such Person's successor as a Director is designated or until such Person's resignation or removal as a Director in accordance with the LLC Agreement.  Each of the undersigned agrees and acknowledges that it has been designated as a "manager" of the Company within the meaning of the Delaware Limited Liability Company Act.

        Each of the undersigned agrees, solely in its capacity as a creditor of the Company on account of any indemnification or other payment owing to the undersigned by the Company, not to acquiesce, petition or otherwise invoke or cause the Company to invoke the process of any court or governmental authority for the purpose of commencing or sustaining an involuntary case against the Company under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Company or any substantial part of the property of the Company, or ordering the winding up or liquidation of the affairs of the Company.

        THIS MANAGEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, AND ALL RIGHTS AND REMEDIES SHALL BE GOVERNED BY SUCH LAWS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

        Initially capitalized terms used and not otherwise defined herein have the meanings set forth in the LLC Agreement.

C-1

3M 1185568v1

CONFIDENTIAL                                              AEARO_CH11_00002032

This Management Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Management Agreement and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this Management Agreement as of the day and year first above written.

_____
Denise R. Rutherford

_____
David R. Schlaefer

_____
Herve M. Gindre

_____
Neil G. Plesner

C-2

3M 1185568v1

SCHEDULE D

DIRECTORS

1. Denise R. Rutherford
2. David R. Schlaefer
3. Herve M. Gindre
4. Neil G. Plesner

D-1

CONFIDENTIAL                                                  AEARO_CH11_00002034

SCHEDULE E

| OFFICERS | TITLE |
|---|---|
| Denise R. Rutherford | President |
| Roxanne Lapadat | Treasurer |
| Carol L. Bros | Secretary |
| Kimberly M. Torseth | Assistant Treasurer |
| Maureen C. Faricy | Assistant Secretary |

E-1

3M 1185568v1

CONFIDENTIAL    AEARO_CH11_00002035

LIMITED LIABILITY COMPANY AGREEMENT
OF
AEARO TECHNOLOGIES LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of Aearo Technologies LLC (the "Company"), is entered into by Aearo LLC, as the sole equity member (the "Member"). Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement and by causing the filing of the Certificate of Conversion of the Company, hereby forms the Company as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.), as amended from time to time (the "Act"), and this Agreement, and the Member hereby agrees as follows:

Section 1.     Name.

The name of the limited liability company is Aearo Technologies LLC.

Section 2.     Principal Business Office.

The principal business office of the Company shall be located at 5457 West 79TH Street, Indianapolis, IN 46268 or such other location as may hereafter be determined by the Member.

Section 3.     Registered Office.

The address of the registered office of the Company in the State of Delaware is c/o The Corporation Trust Company 1209 Orange Street in the City of Wilmington, County of New Castle, Delaware 19801.

Section 4.     Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is The Corporation Trust Company 1209 Orange Street, in the City of Wilmington, County of New Castle, Delaware 19801.

Section 5.     Members.

(a)     The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

(b)     The Member may act by written consent.

1

CONFIDENTIAL

Section 6.    Certificates.

Maureen Faricy is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Conversion of the Company with the Secretary of State of the State of Delaware. Upon the filing of the Certificate of Conversion with the Secretary of State of the State of Delaware, her powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act. The Member or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Conversion as provided in the Act.

Section 7.    Purpose. The purpose to be conducted or promoted by the Company is to engage in the following activities:

> (i)    manufacturing, sales, marketing and distribution of thermal & acoustic solutions products and related business; and
>
> (ii)   to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b)    The Company is hereby authorized to execute, deliver and perform, and the Member or any Director or Officer on behalf of the Company are hereby authorized to execute and deliver, the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any Member, Director, Officer or other Person notwithstanding any other provision of this Agreement. The foregoing authorization shall not be deemed a restriction on the powers of the Member or any Director or Officer to enter into other agreements on behalf of the Company.

Section 8.    Powers.

The Company, and the Board of Directors and the Officers of the Company on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in Section 7 and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9.    Management.

(a)    Board of Directors. The business and affairs of the Company shall be managed by or under the direction of a Board of one or more Directors designated by the Member. The Member may determine at any time in its sole and absolute discretion the number of Directors to

2

constitute the Board. The authorized number of Directors may be increased or decreased by the Member at any time in its sole and absolute discretion, upon notice to all Directors. The initial number of Directors shall be three. Each Director elected, designated or appointed by the Member shall hold office until a successor is elected and qualified or until such Director's earlier death, resignation, expulsion or removal. Each Director shall execute and deliver the Management Agreement. Directors need not be a Member. The initial Directors designated by the Member are listed on Schedule D hereto.

(b)     Powers. The Board of Directors shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Subject to Sections 7 and 9, the Board of Directors has the authority to bind the Company.

(c)     Meeting of the Board of Directors. The Board of Directors of the Company may hold meetings, both regular and special, within or outside the State of Delaware. Regular meetings of the Board may be held without notice at such time and at such place as shall from time to time be determined by the Board. Special meetings of the Board may be called by the President on not less than one day's notice to each Director by telephone, facsimile, mail, telegram or any other means of communication, and special meetings shall be called by the President or Secretary in like manner and with like notice upon the written request of any one or more of the Directors.

(d)     Quorum; Acts of the Board. At all meetings of the Board, a majority of the Directors shall constitute a quorum for the transaction of business and, except as otherwise provided in any other provision of this Agreement, the act of a majority of the Directors present at any meeting at which there is a quorum shall be the act of the Board. If a quorum shall not be present at any meeting of the Board, the Directors present at such meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. Any action required or permitted to be taken at any meeting of the Board or of any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee, as the case may be.

(e)     Electronic Communications. Members of the Board, or any committee designated by the Board, may participate in meetings of the Board, or any committee, by means of telephone conference or similar communications equipment that allows all Persons participating in the meeting to hear each other, and such participation in a meeting shall constitute presence in Person at the meeting. If all the participants are participating by telephone conference or similar communications equipment, the meeting shall be deemed to be held at the principal place of business of the Company.

(f)     Committees of Directors.

(i)     The Board may, by resolution passed by a majority of the whole Board, designate one or more committees, each committee to consist of one or more of the Directors of the Company. The Board may designate one or

3M 1182020v1

3

more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

(ii)    In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member.

(iii)    Any such committee, to the extent provided in the resolution of the Board, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Company. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board. Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

(g)    Compensation of Directors; Expenses. The Board shall have the authority to fix the compensation of Directors. The Directors may be paid their expenses, if any, of attendance at meetings of the Board, which may be a fixed sum for attendance at each meeting of the Board or a stated salary as Director. No such payment shall preclude any Director from serving the Company in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings.

(h)    Removal of Directors. Unless otherwise restricted by law, any Director or the entire Board of Directors may be removed or expelled, with or without cause, at any time by the Member, and, any vacancy caused by any such removal or expulsion may be filled by action of the Member.

(i)    Directors as Agents. To the extent of their powers set forth in this Agreement, the Directors are agents of the Company for the purpose of the Company's business, and the actions of the Directors taken in accordance with such powers set forth in this Agreement shall bind the Company. Notwithstanding the last sentence of Section 18-402 of the Act, except as provided in this Agreement or in a resolution of the Directors, a Director may not bind the Company.

Section 10.    Intentionally Omitted.

Section 11.    Officers.

(a)    Officers. The initial Officers of the Company shall be designated by the Member. The additional or successor Officers of the Company shall be chosen by the Board and shall consist of at least a President, a Secretary and a Treasurer. The Board of Directors may also choose one or more Vice Presidents, Assistant Secretaries and Assistant Treasurers. Any number of offices may be held by the same person. The Board may appoint such other Officers and agents as it shall deem necessary or advisable who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board. The salaries of all Officers and agents of the Company shall be fixed by or in the

4

CONFIDENTIAL    A.383    AEARO_CH11_00002045

manner prescribed by the Board. The Officers of the Company shall hold office until their successors are chosen and qualified. Any Officer may be removed at any time, with or without cause, by the affirmative vote of a majority of the Board. Any vacancy occurring in any office of the Company shall be filled by the Board. The initial Officers of the Company designated by the Member are listed on Schedule E hereto.

(b)     President. The President shall be the chief executive officer of the Company, shall preside at all meetings of the Board, shall be responsible for the general and active management of the business of the Company and shall see that all orders and resolutions of the Board are carried into effect. The President or any other Officer authorized by the President or the Board shall execute all bonds, mortgages and other contracts, except: (i) where required or permitted by law or this Agreement to be otherwise signed and executed, including Section 7(b); (ii) where signing and execution thereof shall be expressly delegated by the Board to some other Officer or agent of the Company, and (iii) as otherwise permitted in Section 11(c).

(c)     Vice President. In the absence of the President or in the event of the President's inability to act, the Vice President, if any (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Directors, or in the absence of any designation, then in the order of their election), shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. The Vice Presidents, if any, shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(d)     Secretary and Assistant Secretary. The Secretary shall be responsible for filing legal documents and maintaining records for the Company. The Secretary shall attend all meetings of the Board and record all the proceedings of the meetings of the Company and of the Board in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or shall cause to be given, notice of all meetings of the Member, if any, and special meetings of the Board, and shall perform such other duties as may be prescribed by the Board or the President, under whose supervision the Secretary shall serve. The Assistant Secretary, or if there be more than one, the Assistant Secretaries in the order determined by the Board (or if there be no such determination, then in order of their election), shall, in the absence of the Secretary or in the event of the Secretary's inability to act, perform the duties and exercise the powers of the Secretary and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(e)     Treasurer and Assistant Treasurer. The Treasurer shall have the custody of the Company funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company and shall deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Board. The Treasurer shall disburse the funds of the Company as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the President and to the Board, at its regular meetings or when the Board so requires, an account of all of the Treasurer's transactions and of the financial condition of the Company. The Assistant Treasurer, or if there shall be more than one, the Assistant Treasurers in the order determined by the Board (or if there be no such determination, then in the order of their election), shall, in the

3M 1182020v1

CONFIDENTIAL                                                    AEARO_CH11_00002046

absence of the Treasurer or in the event of the Treasurer's inability to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(f)    Officers as Agents.  The Officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Board not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business and the actions of the Officers taken in accordance with such powers shall bind the Company.

(g)    Duties of Board and Officers.  Except to the extent otherwise modified herein, each Director and Officer shall have fiduciary duties identical to those of directors and officers of business corporations organized under the General Corporation Law of the State of Delaware.

Section 12.    Limited Liability.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor any Director shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or Director of the Company.

Section 13.    Capital Contributions.

The Member has contributed to the Company property of an agreed value as listed on Schedule B attached hereto.

Section 14.    Additional Contributions.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member.  To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise Schedule B of this Agreement. The provisions of this Agreement, including this Section 14, are intended to benefit the Member and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (other than a Covered Person) (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 15.    Allocation of Profits and Losses.

The Company's profits and losses shall be allocated to the Member.

Section 16.    Distributions.

Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Board.  Notwithstanding any provision to the contrary contained in this

6

CONFIDENTIAL                                 A.385                                 AEARO_CH11_00002047

Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law.

Section 17.    Books and Records.

The Board shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business. The books of the Company shall at all times be maintained by the Board. The Member and its duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours. The Company, and the Board on behalf of the Company, shall not have the right to keep confidential from the Member any information that the Board would otherwise be permitted to keep confidential from the Member pursuant to Section 18-305(c) of the Act. The Company's books of account shall be kept using the method of accounting determined by the Member. The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

Section 18.    Reports.

The Board shall, after the end of each fiscal year, use reasonable efforts to cause the Company's independent accountants, if any, to prepare and transmit to the Member as promptly as possible any such tax information as may be reasonably necessary to enable the Member to prepare its federal, state and local income tax returns relating to such fiscal year.

Section 19.    Other Business.

Notwithstanding any duty otherwise existing at law or in equity, the Member and any Officer, Director, employee or agent of the Company and any Affiliate of the Member may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others, and the Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 20.    Exculpation and Indemnification.

(a)    To the fullest extent permitted by applicable law, neither the Member nor any Officer, Director, employee or agent of the Company nor any employee, representative, agent or Affiliate of the Member (collectively, the "Covered Persons") shall be liable to the Company or any other Person who is bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's bad faith or willful misconduct.

(b)    To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such

7

CONFIDENTIAL

**A.386**

AEARO_CH11_00002048

Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's bad faith or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 20 by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.

(c)    To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 20.

(d)    A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)    The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person to the Company or its members otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(f)    The foregoing provisions of this Section 20 shall survive any termination of this Agreement.

Section 21.    Assignments.

The Member may assign in whole or in part its limited liability company interest in the Company. Subject to Section 23, the transferee of a limited liability company interest in the Company shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. If the Member transfers all of its limited liability company interest in the Company pursuant to this Section 21, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company. Notwithstanding anything in this Agreement to the contrary, any successor to the Member by merger or consolidation in compliance with the Basic Documents shall, without further act, be the Member hereunder, and such merger or consolidation shall not constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

3M 1182020v1

CONFIDENTIAL                                            AEARO_CH11_00002049

Section 22.    Resignation.

The Member may resign only upon its written consent. If the Member is permitted to resign pursuant to this Section 22, an additional member of the Company shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

Section 23.    Admission of Additional Members.

One or more additional Members of the Company may be admitted to the Company with the written consent of the Member.

Section 24.    Dissolution.

(a)    The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) at any time there are no members of the Company, unless the Company is continued without dissolution in a manner permitted by the Act, (ii) the entry of a decree of judicial dissolution of the Company under Section 18-802 of the Act, or (iii) the written consent of the Member to dissolve the Company.

(b)    Notwithstanding any other provision of this Agreement, the Bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

(c)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(d)    The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Conversion shall have been canceled in the manner required by the Act.

Section 25.    Nature of Interest.

The Member shall not have any interest in any specific assets of the Company. The interest of the Member in the Company is personal property.

Section 26.    Benefits of Agreement; No Third-Party Rights.

None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member. Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and

9

CONFIDENTIAL    A.388    AEARO_CH11_00002050

this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (other than Covered Persons).

Section 27.    Severability of Provisions.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 28.    Entire Agreement.

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 29.    Binding Agreement.

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member in accordance with its terms.

Section 30.    Governing Law.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 31.    Amendments.

This Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member.

Section 32.    Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 33.    Notices.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in Section 2, (b) in the case of the Member, to the Member at its address as listed on Schedule B attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

10

CONFIDENTIAL    A.389    AEARO_CH11_00002051

Section 34.     Effectiveness.

Pursuant to Section 18-214(d) of the Act, this Agreement shall be effective as of the time of the filing of the Certificate of Conversion with the Office of the Delaware Secretary of State on September 29, 2008.

[SIGNATURE PAGE FOLLOWS]

11

CONFIDENTIAL

A.390

AEARO_CH11_00002052

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Limited Liability Company Agreement as of the 28 day of March, 2013.

MEMBER:

AEARO LLC

By: _____

Name: Denise Rutherford

Title: President

3M 1182020v1

CONFIDENTIAL                                         AEARO_CH11_00002053

SCHEDULE A

Definitions

A.     Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person.

"Agreement" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Bankruptcy" means, with respect to any Person, (A) if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, or (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (B) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated. The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(1) and 18-304 of the Act.

"Basic Documents" means [insert documents being executed by Company at closing] and all documents and certificates contemplated thereby or delivered in connection therewith.

"Board" or "Board of Directors" means the Board of Directors of the Company.

"Certificate of Conversion" means the Certificate of Conversion of the Company filed with the Secretary of State of the State of Delaware on September 29, 2008, as amended or amended and restated from time to time.

"Company" means Aearo Technologies LLC, a Delaware limited liability company.

A-1

3M 1182020v1

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Covered Persons" has the meaning set forth in Section 20(a).

"Directors" means the Persons elected to the Board of Directors from time to time by the Member in their capacity as managers of the Company. A Director is hereby designated as a "manager" of the Company within the meaning of Section 18-101(10) of the Act.

"Management Agreement" means the agreement of the Directors in the form attached hereto as Schedule C. The Management Agreement shall be deemed incorporated into, and a part of, this Agreement.

"Member" means Aearo LLC, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company.

"Officer" means an officer of the Company described in Section 11.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

B.     Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

3M 1182020v1

CONFIDENTIAL

AEARO_CH11_00002055

SCHEDULE B

Member

| Name | Mailing Address | Agreed Value of Capital Contribution | Limited Liability Company Interest |
|------|-----------------|--------------------------------------|-------------------------------------|
| Aearo LLC | 5457 West 79th Street, Indianapolis, IN | $466,061,114 | 100% |

B-1

3M 1182020v1

CONFIDENTIAL    AEARO_CH11_00002056

SCHEDULE C

Management Agreement

March 28, 2013

Aearo LLC
5457 West 79th Street
Indianapolis, IN

      Re: Management Agreement – Aearo Technologies LLC

Ladies and Gentlemen:

      For good and valuable consideration, each of the undersigned Persons, who have been designated as directors of Aearo Technologies LLC, a Delaware limited liability company (the "Company"), in accordance with the Limited Liability Company Agreement of the Company, dated as of March 28, 2013, as it may be amended or restated from time to time (the "LLC Agreement"), hereby agree as follows:

      Each of the undersigned accepts such Person's rights and authority as a Director under the LLC Agreement and agrees to perform and discharge such Person's duties and obligations as a Director under the LLC Agreement, and further agrees that such rights, authorities, duties and obligations under the LLC Agreement shall continue until such Person's successor as a Director is designated or until such Person's resignation or removal as a Director in accordance with the LLC Agreement. Each of the undersigned agrees and acknowledges that it has been designated as a "manager" of the Company within the meaning of the Delaware Limited Liability Company Act.

      Each of the undersigned agrees, solely in its capacity as a creditor of the Company on account of any indemnification or other payment owing to the undersigned by the Company, not to acquiesce, petition or otherwise invoke or cause the Company to invoke the process of any court or governmental authority for the purpose of commencing or sustaining an involuntary case against the Company under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Company or any substantial part of the property of the Company, or ordering the winding up or liquidation of the affairs of the Company.

      THIS MANAGEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, AND ALL RIGHTS AND REMEDIES SHALL BE GOVERNED BY SUCH LAWS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

      Initially capitalized terms used and not otherwise defined herein have the meanings set forth in the LLC Agreement.

C-1

3M 1182020v1

                     **A.395**                 

This Management Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Management Agreement and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this Management Agreement as of the day and year first above written.

_____
Denise R. Rutherford

_____
David R. Schlaefer

_____
Herve M. Gindre

_____
Neil G. Plesner

C-2

3M 1182020v1

This Management Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Management Agreement and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this Management Agreement as of the day and year first above written.

_____
Denise R. Rutherford

_____
David R. Schlaefer

_____
Herve M. Gindre

_____
Neil G. Plesner

C-2

3M 1182020v1

CONFIDENTIAL                                                    AEARO_CH11_00002059

SCHEDULE D

DIRECTORS

1. Denise R. Rutherford
2. David R. Schlaefer
3. Herve M. Gindre
4. Neil G. Plesner

D-1

3M 1182020v1

CONFIDENTIAL

SCHEDULE E

| OFFICERS | TITLE |
|----------|-------|
| Denise R. Rutherford | President |
| Roxanne Lapadat | Treasurer |
| Carol L. Bros | Secretary |
| Kimberly M. Torseth | Assistant Treasurer |
| Maureen C. Faricy | Assistant Secretary |

E-1

3M 1182020v1

## LIMITED LIABILITY COMPANY AGREEMENT
### OF
### CABOT SAFETY INTERMEDIATE LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of Cabot Safety Intermediate LLC (the "Company"), is entered into by Aearo Technologies LLC, as the sole equity member (the "Member"). Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement and by causing the filing of the Certificate of Conversion of the Company, hereby forms the Company as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.), as amended from time to time (the "Act"), and this Agreement, and the Member hereby agrees as follows:

Section 1.      Name.

The name of the limited liability company is Cabot Safety Intermediate LLC.

Section 2.      Principal Business Office.

The principal business office of the Company shall be located at 5457 West 79TH Street, Indianapolis, IN 46268 or such other location as may hereafter be determined by the Member.

Section 3.      Registered Office.

The address of the registered office of the Company in the State of Delaware is c/o The Corporation Trust Company 1209 Orange Street in the City of Wilmington, County of New Castle, Delaware 19801.

Section 4.      Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is The Corporation Trust Company 1209 Orange Street, in the City of Wilmington, County of New Castle, Delaware 19801.

Section 5.      Members.

(a)      The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

(b)      The Member may act by written consent.

1

3M 1187319v1

Section 6.     Certificates.

Maureen Faricy is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Conversion of the Company with the Secretary of State of the State of Delaware. Upon the filing of the Certificate of Conversion with the Secretary of State of the State of Delaware, her powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act. The Member or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Conversion as provided in the Act.

Section 7.     Purpose. The purpose to be conducted or promoted by the Company is to engage in the following activities:

      (i)     Insurance holding company; and

      (ii)    to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b)     The Company is hereby authorized to execute, deliver and perform, and the Member or any Director or Officer on behalf of the Company are hereby authorized to execute and deliver, the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any Member, Director, Officer or other Person notwithstanding any other provision of this Agreement. The foregoing authorization shall not be deemed a restriction on the powers of the Member or any Director or Officer to enter into other agreements on behalf of the Company.

Section 8.     Powers.

The Company, and the Board of Directors and the Officers of the Company on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in Section 7 and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9.     Management.

(a)     Board of Directors. The business and affairs of the Company shall be managed by or under the direction of a Board of one or more Directors designated by the Member. The Member may determine at any time in its sole and absolute discretion the number of Directors to constitute the Board. The authorized number of Directors may be increased or decreased by the

Member at any time in its sole and absolute discretion, upon notice to all Directors. The initial number of Directors shall be three. Each Director elected, designated or appointed by the Member shall hold office until a successor is elected and qualified or until such Director's earlier death, resignation, expulsion or removal. Each Director shall execute and deliver the Management Agreement. Directors need not be a Member. The initial Directors designated by the Member are listed on Schedule D hereto.

(b)    Powers. The Board of Directors shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Subject to Sections 7 and 9, the Board of Directors has the authority to bind the Company.

(c)    Meeting of the Board of Directors. The Board of Directors of the Company may hold meetings, both regular and special, within or outside the State of Delaware. Regular meetings of the Board may be held without notice at such time and at such place as shall from time to time be determined by the Board. Special meetings of the Board may be called by the President on not less than one day's notice to each Director by telephone, facsimile, mail, telegram or any other means of communication, and special meetings shall be called by the President or Secretary in like manner and with like notice upon the written request of any one or more of the Directors.

(d)    Quorum: Acts of the Board. At all meetings of the Board, a majority of the Directors shall constitute a quorum for the transaction of business and, except as otherwise provided in any other provision of this Agreement, the act of a majority of the Directors present at any meeting at which there is a quorum shall be the act of the Board. If a quorum shall not be present at any meeting of the Board, the Directors present at such meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. Any action required or permitted to be taken at any meeting of the Board or of any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee, as the case may be.

(e)    Electronic Communications. Members of the Board, or any committee designated by the Board, may participate in meetings of the Board, or any committee, by means of telephone conference or similar communications equipment that allows all Persons participating in the meeting to hear each other, and such participation in a meeting shall constitute presence in Person at the meeting. If all the participants are participating by telephone conference or similar communications equipment, the meeting shall be deemed to be held at the principal place of business of the Company.

(f)    Committees of Directors.

(i)    The Board may, by resolution passed by a majority of the whole Board, designate one or more committees, each committee to consist of one or more of the Directors of the Company. The Board may designate one or more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

3M 1187319v1

(ii)   In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member.

(iii)  Any such committee, to the extent provided in the resolution of the Board, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Company.  Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board.  Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

(g)   <u>Compensation of Directors; Expenses</u>.  The Board shall have the authority to fix the compensation of Directors.  The Directors may be paid their expenses, if any, of attendance at meetings of the Board, which may be a fixed sum for attendance at each meeting of the Board or a stated salary as Director.  No such payment shall preclude any Director from serving the Company in any other capacity and receiving compensation therefor.  Members of special or standing committees may be allowed like compensation for attending committee meetings.

(h)   <u>Removal of Directors</u>.  Unless otherwise restricted by law, any Director or the entire Board of Directors may be removed or expelled, with or without cause, at any time by the Member, and, any vacancy caused by any such removal or expulsion may be filled by action of the Member.

(i)   <u>Directors as Agents</u>.  To the extent of their powers set forth in this Agreement, the Directors are agents of the Company for the purpose of the Company's business, and the actions of the Directors taken in accordance with such powers set forth in this Agreement shall bind the Company.  Notwithstanding the last sentence of Section 18-402 of the Act, except as provided in this Agreement or in a resolution of the Directors, a Director may not bind the Company.

Section 10.   <u>Intentionally Omitted</u>.

Section 11.   <u>Officers</u>.

(a)   <u>Officers</u>.  The initial Officers of the Company shall be designated by the Member. The additional or successor Officers of the Company shall be chosen by the Board and shall consist of at least a President, a Secretary and a Treasurer.  The Board of Directors may also choose one or more Vice Presidents, Assistant Secretaries and Assistant Treasurers.  Any number of offices may be held by the same person.  The Board may appoint such other Officers and agents as it shall deem necessary or advisable who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board.  The salaries of all Officers and agents of the Company shall be fixed by or in the manner prescribed by the Board.  The Officers of the Company shall hold office until their successors are chosen and qualified.  Any Officer may be removed at any time, with or without cause, by the affirmative vote of a majority of the Board.  Any vacancy occurring in any office of

4

CONFIDENTIAL                                                                 AEARO_CH11_00002070

the Company shall be filled by the Board. The initial Officers of the Company designated by the Member are listed on Schedule E hereto.

(b)     President. The President shall be the chief executive officer of the Company, shall preside at all meetings of the Board, shall be responsible for the general and active management of the business of the Company and shall see that all orders and resolutions of the Board are carried into effect. The President or any other Officer authorized by the President or the Board shall execute all bonds, mortgages and other contracts, except: (i) where required or permitted by law or this Agreement to be otherwise signed and executed, including Section 7(b); (ii) where signing and execution thereof shall be expressly delegated by the Board to some other Officer or agent of the Company, and (iii) as otherwise permitted in Section 11(c).

(c)     Vice President. In the absence of the President or in the event of the President's inability to act, the Vice President, if any (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Directors, or in the absence of any designation, then in the order of their election), shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. The Vice Presidents, if any, shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(d)     Secretary and Assistant Secretary. The Secretary shall be responsible for filing legal documents and maintaining records for the Company. The Secretary shall attend all meetings of the Board and record all the proceedings of the meetings of the Company and of the Board in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or shall cause to be given, notice of all meetings of the Member, if any, and special meetings of the Board, and shall perform such other duties as may be prescribed by the Board or the President, under whose supervision the Secretary shall serve. The Assistant Secretary, or if there be more than one, the Assistant Secretaries in the order determined by the Board (or if there be no such determination, then in order of their election), shall, in the absence of the Secretary or in the event of the Secretary's inability to act, perform the duties and exercise the powers of the Secretary and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(e)     Treasurer and Assistant Treasurer. The Treasurer shall have the custody of the Company funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company and shall deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Board. The Treasurer shall disburse the funds of the Company as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the President and to the Board, at its regular meetings or when the Board so requires, an account of all of the Treasurer's transactions and of the financial condition of the Company. The Assistant Treasurer, or if there shall be more than one, the Assistant Treasurers in the order determined by the Board (or if there be no such determination, then in the order of their election), shall, in the absence of the Treasurer or in the event of the Treasurer's inability to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

5

CONFIDENTIAL                                                      AEARO_CH11_00002071

(f)     Officers as Agents.  The Officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Board not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business and the actions of the Officers taken in accordance with such powers shall bind the Company.

(g)     Duties of Board and Officers.  Except to the extent otherwise modified herein, each Director and Officer shall have fiduciary duties identical to those of directors and officers of business corporations organized under the General Corporation Law of the State of Delaware.

Section 12.     Limited Liability.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor any Director shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or Director of the Company.

Section 13.     Capital Contributions.

The Member has contributed to the Company property of an agreed value as listed on Schedule B attached hereto.

Section 14.     Additional Contributions.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member.  To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise Schedule B of this Agreement. The provisions of this Agreement, including this Section 14, are intended to benefit the Member and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (other than a Covered Person) (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 15.     Allocation of Profits and Losses.

The Company's profits and losses shall be allocated to the Member.

Section 16.     Distributions.

Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Board.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law.

3M 1187319v1

CONFIDENTIAL                        A.405                        AEARO_CH11_00002072

Section 17.     Books and Records.

The Board shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business. The books of the Company shall at all times be maintained by the Board. The Member and its duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours. The Company, and the Board on behalf of the Company, shall not have the right to keep confidential from the Member any information that the Board would otherwise be permitted to keep confidential from the Member pursuant to Section 18-305(c) of the Act. The Company's books of account shall be kept using the method of accounting determined by the Member. The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

Section 18.     Reports.

The Board shall, after the end of each fiscal year, use reasonable efforts to cause the Company's independent accountants, if any, to prepare and transmit to the Member as promptly as possible any such tax information as may be reasonably necessary to enable the Member to prepare its federal, state and local income tax returns relating to such fiscal year.

Section 19.     Other Business.

Notwithstanding any duty otherwise existing at law or in equity, the Member and any Officer, Director, employee or agent of the Company and any Affiliate of the Member may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others, and the Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 20.     Exculpation and Indemnification.

(a)     To the fullest extent permitted by applicable law, neither the Member nor any Officer, Director, employee or agent of the Company nor any employee, representative, agent or Affiliate of the Member (collectively, the "Covered Persons") shall be liable to the Company or any other Person who is bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's bad faith or willful misconduct.

(b)     To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim

7

EXHIBIT 0041
Page 8 of 20

incurred by such Covered Person by reason of such Covered Person's bad faith or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 20 by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.

(c)     To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 20.

(d)     A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)     The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person to the Company or its members otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(f)     The foregoing provisions of this Section 20 shall survive any termination of this Agreement.

Section 21.     Assignments.

The Member may assign in whole or in part its limited liability company interest in the Company.  Subject to Section 23, the transferee of a limited liability company interest in the Company shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement.  If the Member transfers all of its limited liability company interest in the Company pursuant to this Section 21, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company.  Notwithstanding anything in this Agreement to the contrary, any successor to the Member by merger or consolidation in compliance with the Basic Documents shall, without further act, be the Member hereunder, and such merger or consolidation shall not constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

Section 22.     Resignation.

The Member may resign only upon its written consent.  If the Member is permitted to resign pursuant to this Section 22, an additional member of the Company shall be admitted to the

CONFIDENTIAL

AEARO_CH11_00002074

Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

Section 23.    Admission of Additional Members.

One or more additional Members of the Company may be admitted to the Company with the written consent of the Member.

Section 24.    Dissolution.

(a)    The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following:  (i) at any time there are no members of the Company, unless the Company is continued without dissolution in a manner permitted by the Act, (ii) the entry of a decree of judicial dissolution of the Company under Section 18-802 of the Act, or (iii) the written consent of the Member to dissolve the Company.

(b)    Notwithstanding any other provision of this Agreement, the Bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

(c)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(d)    The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Conversion shall have been canceled in the manner required by the Act.

Section 25.    Nature of Interest.

The Member shall not have any interest in any specific assets of the Company.  The interest of the Member in the Company is personal property.

Section 26.    Benefits of Agreement; No Third-Party Rights.

None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member.  Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (other than Covered Persons).

9

CONFIDENTIAL

A.408

Section 27.     Severability of Provisions.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 28.     Entire Agreement.

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 29.     Binding Agreement.

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member in accordance with its terms.

Section 30.     Governing Law.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 31.     Amendments.

This Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member.

Section 32.     Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 33.     Notices.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in Section 2, (b) in the case of the Member, to the Member at its address as listed on Schedule B attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

3M 1187319v1

CONFIDENTIAL     A.409     AEARO_CH11_00002076

Section 34.     <u>Effectiveness</u>.

      Pursuant to Section 18-214(d) of the Act, this Agreement shall be effective as of the time of the filing of the Certificate of Conversion with the Office of the Delaware Secretary of State on September 29, 2008.

[SIGNATURE PAGE FOLLOWS]

3M 1187319v1

CONFIDENTIAL

AEARO_CH11_00002077

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Limited Liability Company Agreement as of the 28 day of March, 2013.

MEMBER:

AEARO TECHNOLOGIES LLC

By: _____
Name: Denise Rutherford
Title: President

S-1

CONFIDENTIAL

A.411

AEARO_CH11_00002078

SCHEDULE A

Definitions

A.    Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person.

"Agreement" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Bankruptcy" means, with respect to any Person, (A) if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, or (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (B) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated. The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(1) and 18-304 of the Act.

"Basic Documents" means [insert documents being executed by Company at closing] and all documents and certificates contemplated thereby or delivered in connection therewith.

"Board" or "Board of Directors" means the Board of Directors of the Company.

"Certificate of Conversion" means the Certificate of Conversion of the Company filed with the Secretary of State of the State of Delaware on September 29, 2008, as amended or amended and restated from time to time.

A-1

CONFIDENTIAL    A.412    AEARO_CH11_00002079

"Company" means Cabot Safety Intermediate LLC, a Delaware limited liability company.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Covered Persons" has the meaning set forth in Section 20(a).

"Directors" means the Persons elected to the Board of Directors from time to time by the Member in their capacity as managers of the Company. A Director is hereby designated as a "manager" of the Company within the meaning of Section 18-101(10) of the Act.

"Management Agreement" means the agreement of the Directors in the form attached hereto as Schedule C. The Management Agreement shall be deemed incorporated into, and a part of, this Agreement.

"Member" means Aearo Technologies LLC, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company.

"Officer" means an officer of the Company described in Section 11.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

B.    Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

A-2

CONFIDENTIAL                                    AEARO_CH11_00002080

SCHEDULE B

Member

| Name | Mailing Address | Agreed Value of Capital Contribution | Limited Liability Company Interest |
|---|---|---|---|
| Aearo Technologies LLC | 5457 West 79th Street, Indianapolis, IN | $ 324,237,350 | 100% |

B-1

3M 1187319v1

SCHEDULE C

Management Agreement

March 2̲5̲, 2013

Aearo Technologies LLC
5457 West 79th Street
Indianapolis, IN

  Re: Management Agreement – Aearo Technologies LLC

Ladies and Gentlemen:

  For good and valuable consideration, each of the undersigned Persons, who have been designated as directors of Cabot Safety Intermediate LLC, a Delaware limited liability company (the "Company"), in accordance with the Limited Liability Company Agreement of the Company, dated as of March 2̲5̲, 2013, as it may be amended or restated from time to time (the "LLC Agreement"), hereby agree as follows:

  Each of the undersigned accepts such Person's rights and authority as a Director under the LLC Agreement and agrees to perform and discharge such Person's duties and obligations as a Director under the LLC Agreement, and further agrees that such rights, authorities, duties and obligations under the LLC Agreement shall continue until such Person's successor as a Director is designated or until such Person's resignation or removal as a Director in accordance with the LLC Agreement. Each of the undersigned agrees and acknowledges that it has been designated as a "manager" of the Company within the meaning of the Delaware Limited Liability Company Act.

  Each of the undersigned agrees, solely in its capacity as a creditor of the Company on account of any indemnification or other payment owing to the undersigned by the Company, not to acquiesce, petition or otherwise invoke or cause the Company to invoke the process of any court or governmental authority for the purpose of commencing or sustaining an involuntary case against the Company under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Company or any substantial part of the property of the Company, or ordering the winding up or liquidation of the affairs of the Company.

  THIS MANAGEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, AND ALL RIGHTS AND REMEDIES SHALL BE GOVERNED BY SUCH LAWS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

  Initially capitalized terms used and not otherwise defined herein have the meanings set forth in the LLC Agreement.

C-1

3M 1187319v1

This Management Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Management Agreement and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this Management Agreement as of the day and year first above written.

_____
Denise R. Rutherford

_____
David R. Schlaefer

_____
Herve M. Gindre

_____
Neil G. Plesner

C-2

CONFIDENTIAL                                                                AEARO_CH11_00002083

This Management Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Management Agreement and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this Management Agreement as of the day and year first above written.

Denise R. Rutherford

David R. Schlaefer

Herve M. Gindre

Neil G. Plesner

C-2

3M 1187319v1

SCHEDULE D

DIRECTORS

1. Denise R. Rutherford
2. David R. Schlaefer
3. Herve M. Gindre
4. Neil G. Plesner

D-1

CONFIDENTIAL

SCHEDULE E

| OFFICERS | TITLE |
|---|---|
| Denise R. Rutherford | President |
| Roxanne Lapadat | Treasurer |
| Carol L. Bros | Secretary |
| Kimberly M. Torseth | Assistant Treasurer |
| Maureen C. Faricy | Assistant Secretary |

E-1

3M 1187319v1

Table Summary

| | Sales 1999-Q1 2008 | | Total Sales 1999-2017 | |
|---|---|---|---|---|
| | Sales ($) | % of Total Lifetime CAEV2 Sales | Sales ($) | % of Total Lifetime CAEV2 Sales |
| **Domestic** | $ 24,448,665.29 | 80.6% | $ 30,317,402.82 | 100.0% |
| **Global** | $ 25,182,278.39 | 79.88165% | $ 31,524,486.43 | 100.0% |

EXHIBIT 0067
Page 1 of 1

Case: 22-2606          Document: 32          Filed: 12/12/2022          Pages: 457

Combat Arms Litigation Expense 2018-2022

| Actual/Projected | 2018 | 2019 | | | | 2020 | | | | | 2021 | | | | | 2022 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Act | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Projected | Projected |
| Quarter/Total Year | TY | Q1 | Q2 | Q3 | Q4 | TY | Q1 | Q2 | Q3 | Q4 | TY | Q1 | Q2 | Q3 | Q4 | TY | Q1 | Q2 | Q3 | Q4 | TY |
| Amount (in millions) | - | | 0 | 1 | 6 | 7 | 7 | 6 | 12 | 42 | 67 | 29 | 31 | 32 | 60 | 151 | 47 | 75 | 57 | 43 | 222 |

CONFIDENTIAL
AEARO_CH11_00002476

# Aearo Structure Chart

**3M Company**
*(Delaware)*

*Various other 3M subsidiaries*

**3M Occupational Safety LLC**
*(Delaware)*

**Aearo Holding LLC**
*(Delaware)*

**Aearo Intermediate LLC**
*(Delaware)*

**Aearo LLC**
*(Delaware)*

**Aearo Technologies LLC**
*(Delaware)*

**Aearo Trading (Shenzhen)**
Co. LTD. *(China)*

**Aearo Technologies de Baja,
S.A. de C.V.** *(Mexico)*
*Aearo LLC = 1%*

99%

**Cabot Safety Intermediate LLC**
*(Delaware)*

**Aearo Canada Limited /
Aearo Canada Limitee**
*(Canada)*

70%

**Aearo Mexico Holding Corp.**
*(Delaware)*
Aearo Technologies LLC = 30%

99.998%

**Aearo Technologies de Mexico,
S.A. de C.V.** *(Mexico)*
Cabot Safety Intermediate LLC = .002%

**CASTELLANO DEM-1**

[] Debtor Entities

★ Defendants in the Combat Arms MDL

A.423

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| IN RE: | . | Case No.  22-02890-JJG |
| | . | (Jointly Administered) |
| AEARO TECHNOLOGIES LLC, | . | |
| ET AL., | . | 116 U.S.  Courthouse |
| | . | 46 E.  Ohio Street, Room 116 |
| Debtors. | . | Indianapolis, IN  46204 |
| | . | |
| | . | Thursday, September 8, 2022 |
| . . . . . . . . . . . . . | . | 10:30 a.m. |

TRANSCRIPT OF HEARING ON DEBTORS' MOTION
FOR ENTRY OF AN ORDER (I) APPOINTING THE HONORABLE JAMES M.
CARR AND RANDI S. ELLIS AS CO-MEDIATORS, (II) AUTHORIZING THE
DEBTORS TO PARTICIPATE IN THE MEDIATION, and (III) GRANTING
RELATED RELIEF

BEFORE THE HONORABLE JEFFREY J. GRAHAM
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Kirkland & Ellis LLP
                            BY:  CHAD HUSNICK, ESQ.
                            300 North LaSalle Street
                            Chicago, IL  60654

For CAE Committee:          Klee, Tuchin, Bogdanoff & Stern, LLP
                            BY:  ROBERT J. PFISTER, ESQ.
                            1801 Century Park East, 26th Floor
                            Los Angeles, CA  90067

                            Otterbourg P.C.
                            BY:  MELANIE CYGANOWSKI, ESQ.
                            230 Park Avenue
                            New York, NY  10169-0075

Audio Operator:             Heather Heiser-Davis

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjCourt@jjCourt.com**

**(609) 586-2311    Fax No.  (609) 587-3599**

A.424

# I N D E X

**STATEMENT:**                                                                            **PAGE**

Re:  Mediator Appointment

By Judge Carr                                                                                  6

**OUTLINE OF TERMS OF ORDER:**

Re:  Mediator Appointment

By Mr. Husnick                                                                                17

**RULING:**

Re: Motion for Mediation

By the Court                                                                                    24

**ARGUMENT:**

Re:  Shorten Time Motion

By Mr. Pfister                                                                                  27

By Mr. Husnick                                                                                31

By Mr. Wolfson                                                                                33

By Mr. McCullough                                                                           35

By Mr. Pfister                                                                                  35

By Mr. Husnick                                                                                40

By Mr. Pfister                                                                                  41

**DECISION:**

By the Court                                                                                    45

# [Pages 43-46 of 9/8/2022 Hearing Transcript]

1 if they weren't able to reach out to Mr. McCullough and start

2 to work out a respirator claim mediation.

3          That would be good for the debtors.  And it would be

4 good for the committees in the fact that you represent, you

5 know, interests.  That would clear up one of the two pieces in

6 the bankruptcy.  I understand there are some -- I don't want to

7 say there are no trade creditors, but they are smaller by order

8 of magnitude of everything else.  But that would be good.

9          It probably also would be good if they were working

10 with Mr. McCullough to structure some sort, if they wanted to

11 -- which is a possibility -- some sort of a trust.  I think it

12 was mentioned a trust or trusts that could be done.  Maybe they

13 could set up a framework that would do something to look at in

14 the Combat Arms.  Well, here's one they've already set up.

15 Maybe you would want to structure something like that.

16          3M is not here.  I don't anticipate 3M talking today.

17 But maybe that would be appealing to them; maybe not, because

18 you're right.  When it comes to funds, 3M is the largest fund-

19 holder of anybody.  And nothing can happen if 3M isn't fully on

20 board.  whatever 3M -- whatever can help 3M get fully on board

21 is a good thing, which is why I thought, wouldn't it be helpful

22 to have the Chapter 11 mediation set up, so that maybe they

23 could structure it.

24          As I hear what you're saying, though, I think you're

25 right.  I don't -- I don't know if there is an air of

44

1  uncertainty, but I don't want to impede, whatsoever, the MDL,
2  so maybe the 14th isn't the best day to hear it.  Mr. Husnick
3  considered that, okay, maybe a little bit later would be fine,
4  but certainly before the October omnibus.

5      I agree with that, because it probably should be
6  sooner than later because I don't know when these issues will
7  come up.  And my goal here is not to impede or to interfere,
8  whatsoever, with the MDL mediation.  But I want to make
9  available every tool available to the mediators, Ms. Ellis, and
10  Judge Carr, to do whatever they need to do to get this done,
11  understanding that nothing gets done if we get everything done
12  and have a really nice house built, if 3M doesn't want to do
13  anything with it, because that's correct, that is the key to
14  all of this.

15      Now, whether they are able to order the debtor, I'm
16  not going to get into that.  I don't want to get into any
17  rhetoric, because I don't care.  I'm just a simple bankruptcy
18  judge dealing with facts and bankruptcy law.  You all have much
19  more history involved, and it was illuminating during the
20  hearing on the preliminary injunction.  Everybody knows
21  everybody.  They've all dealt with everybody on different
22  cases.  It's a horribly incestuous bankruptcy Bar, so you all
23  know the players.  You all know each other.

24      Is this going to be different, now, to mediate?  I
25  hope so, because right now, we're in a horrible limbo.  Right

45

1 now, the debtors are stayed, as far as the MDL going forward.
2 3M is not.  What can happen?  How far can we go forward in
3 cases?  How far can we not?  The debtors, on the 14th, are
4 asking to lift the stay, I believe, on the 11th Circuit
5 appeals.  I think that's scheduled.  Dates and times run
6 together when you make me stay up late.

7           But so, there's a lot of moving parts.  But we're in
8 a limbo here.  And what a better time to try to get everyone
9 together than this limbo?  So I think I will -- I'll do this.
10 I am going to modify the order -- I can't really modify that,
11 but I will modify the motion to expedite such as this.  I'm
12 going to take it off of the omnibus date on the 14th.  I don't
13 know if people will be clouded in judgment.  I have a feeling
14 nobody, really, is all that concerned about the omnibus hearing
15 dates and afraid of the MDL, but I'm going to take that spector
16 away.

17           I don't want you landing in Pensacola worried about
18 what that crazy guy in Indianapolis is going to do or not do.
19 I don't want to do that.  But I think we do need to hear it
20 pretty quickly, because, again, substance -- obviously, I'm not
21 arguing substance.  I'm just setting the hearing.  You all will
22 have wonderfully eloquent substantive arguments, I have no
23 doubt.

24           But my goal here -- and I'm just going to be
25 forthright with all of you -- is to give these mediators every

46

1  tool available to do what they need to do, because I don't want

2  to have it come down to, something comes up, and they're like,

3  we can't do anything because we need to look at what an 11

4  structure would be or, perhaps, a party says, well, we would

5  prefer a bankruptcy structure or what would a bankruptcy

6  structure, maybe, look like that would enable this.  I don't

7  know.

8            You all are vastly more experienced in this than me,

9  but I don't want to have any hindrance to Judge Carr and Ms.

10 Ellis to resolve the Combat Arms, which is how I view and how I

11 will structure an order on this other mediation, which is to

12 enable them to do what they need to do.  It's not dual-tracked.

13 I don't expect Mr. Pfister to be in Indianapolis doing Aearo

14 things, and Mr. Barrett to be in Pensacola doing MDL things.

15           I don't see it that way.  It can't be that way.  I

16 won't let it be that way.  But to give them tools to look at --

17 and this is just -- I don't know what they're going to do.  But

18 I want them to be able to look at the respirator claims.  I

19 want them to be able to look at a Chapter 11.  I don't

20 anticipate them stopping the MDL to do these other fun things.

21 I wouldn't think that.  But I don't know what the co-mediators

22 want to do, but I don't want to stand in the way of that, nor

23 do I want to stand in the way of Judge Rogers' MDL.

24           I want to put all of the tools on the table that they

25 can do to create something that works.  And that's how I view



**Jeffrey J. Graham**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| AEARO TECHNOLOGIES LLC, *et al.* [1] | ) | Case No. 22-02890-JJG-11 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| 3M OCCUPATIONAL SAFETY LLC, | ) | |
|   AEARO HOLDING LLC, | ) | |
|   AEARO INTERMEDIATE LLC, | ) | |
|   AEARO LLC, and | ) | |
|   AEARO TECHNOLOGIES, LLC, | ) | |
| | ) | |
|   Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 22-50059 |
| | ) | |
| THOSE PARTIES LISTED ON | ) | |
|   APPENDIX A TO THE COMPLAINT AND | ) | |
|   JOHN AND JANE DOES 1-1000, | ) | |
| | ) | |
|   Defendants. | ) | |

**CERTIFICATION FOR DIRECT APPEAL**

This matter comes before the Court on the Plaintiffs' *Request for Certification*

---

[1]  The Debtors in these Chapter 11 cases, along with the last four digits of digits of each Debtor's federal tax identification number, are set forth in the *Debtors' First Day Motion for Entry of an Order (I) Directing Joint Administration and (II) Granting Related Relief.*

pursuant to 28 U.S.C. § 158(d)(2) and Federal Rule of Bankruptcy Procedure 8006(f). Notice of such Request was served as required by Rule 8006(f)(2). The Official Committee of Unsecured Creditors for Tort Claimants—Related to Use of Combat Arms Version 2 Earplugs and counsel Quinn Emanuel Urquart and Sullivan, LLP, on behalf of certain Bellwether Plaintiffs in the related Multidistrict Litigation, filed timely objections and/or responses in opposition to the Request.

The Court hereby certifies that its *Order Denying Plaintiffs' Motion for Preliminary Injunction* (the "Order") entered on August 26, 2022, involves a matter of public importance, as well as questions of law for which there is no controlling decision from the Seventh Circuit Court of Appeals or the Supreme Court of the United States. *See* 28 U.S.C. § 158(d)(2)(A)(i). The Court further certifies that an immediate appeal from the Order may materially advance the progress of the proceeding in which the appeal is taken and its related bankruptcy case. *See* 28 U.S.C. § 158(d)(2)(A)(iii). As such, the Court hereby certifies that a direct appeal of the Order to the Seventh Circuit Court of Appeals is warranted under 28 U.S.C. § 158(d)(2).

### 

2

A.432

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA

```
IN RE:                        .    Case No. 22-02890-JJG
                              .    (Jointly Administered)
AEARO TECHNOLOGIES LLC,       .
et al.,                       .    116 U.S.  Courthouse
                              .    46 E.  Ohio Street, Room 116
          Debtors.            .    Indianapolis, IN  46204
                              .
                              .    Wednesday, September 14, 2022
. . . . . . . . . . . . .     .    9:10 a.m.
```

TRANSCRIPT OF HEARING ON DEBTORS' (1)MOTION TO LIFT THE
AUTOMATIC STAY; (II) CERTAIN FIRST DAY MOTIONS;
AND (III) CERTAIN MOTIONS REGARDING RETENTION
AND COMPENSATION MATTERS
BEFORE HONORABLE JEFFREY J. GRAHAM
UNITED STATES BANKRUPTCY COURT CHIEF JUDGE

APPEARANCES:

```
For the Debtors:         Kirkland & Ellis LLP
                         BY:  SPENCER A. WINTERS, ESQ.
                              CLAIRE STEPHENS, ESQ.
                              CHAD J. HUSNICK, ESQ.
                         300 North LaSalle Street
                         Chicago, IL  60654

                         Kirkland & Ellis LLP
                         BY:  DEREK I. HUNTER, ESQ.
                         601 Lexington Avenue
                         New York, NY  10022

                         Kirkland & Ellis LLP
                         BY:  TABITHA DE PAULO, ESQ.
                         609 Main Street
                         Houston, TX  77002

Audio Operator:          Heather Heiser-Davis
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjCourt@jjCourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

**[Pages 36-38 of 9/14/2022 Hearing Transcript]**

1  that the debtors are authorized to pay up to 15,150 but nothing

2  prohibits 3M from paying the amount of the SIP obligation that

3  exceeds that amount.  Understanding that 3M may not, I mean, in

4  a strange world, 3M might not be able to recover that money

5  from the debtors if everything goes bad.

6            UNIDENTIFIED SPEAKER:  Yes.

7            THE COURT:  But isn't that the way around this, such

8  that I don't violate the Bankruptcy Code and create that

9  precedent but yet these employees still get paid?  If 3M is

10  willing to do that.

11            UNIDENTIFIED SPEAKER:  Yes, Your Honor.  That would

12  work for the debtors and your understanding that -- how it

13  works practically, correctly.

14            THE COURT:  Okay.

15            So, see it was a good question whoever that was --

16                      (Laughter)

17            THE COURT:  All right.  So, here is what I'm going to

18  do on this.  I'll overrule the objection and grant the motion

19  as modified.  The modification being that the debtors are

20  authorized to pay these employees up to the 15,150, but nothing

21  in the order prohibits 3M from paying these people the amounts

22  that they are owed under the SIP agreement.  Understanding

23  there's reimbursements, but that, I think, can all go in the

24  loge.  But I'm hesitant to say -- to go against the specific

25  amount in the Code because at that point I'm elevating an

1  unsecured claim over everybody in a case where, at least

2  tangentially, there's a chance that all unsecured creditors may

3  not get paid depending upon what happens.

4        But I do think they need to get paid and all

5  employees should get paid -- I understand that.  But given the

6  funding agreement, it sounds like 3M would be paying that money

7  anyway so that, for instance, most of them, I think, were the

8  account managers but to the extent that they had the 20,000 but

9  they would get the 5,000 then from 3M and the rest could come

10 from the debtors.  And I think that way everybody's protected.

11 I'm not erasing anything from the Code intentionally and we all

12 live to fight another day on the issue later on.

13        UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

14        THE COURT:  And so, this is going to require a new

15 order.  Can you get me that order within seven days?

16        UNIDENTIFIED SPEAKER:  Yes.

17        THE COURT:  Okay.  Thank you.

18        That takes us -- you're doing 2, 3 and 4, correct?

19        UNIDENTIFIED SPEAKER:  Yes, Your Honor.

20        THE COURT:  And, Mr. Hunter, lead us to Number 3

21 then.

22        MR. HUNTER:  That takes us to Kmart.

23        THE COURT:  Now, last time you said it wasn't Kmart.

24 You were really trying to draw the distinction for me.

25        MR. HUNTER:  Yeah, I have news on that front, but

38

1  I'll get there in a minute, Your Honor.  The next one on the

2  agenda, Agenda Item 3 which is at Docket Number 25 and was

3  entered as Docket Number 149.  You should have a revised

4  proposed order in the binder we handed up.  I think I'll start

5  there because we did tailor the relief significantly to where

6  it was at the first day.  So, first substantive change,

7  Paragraph Number 2, the debtors in the final order are only

8  seeking authority to pay 1.1 million and 503(b)(9) claims and

9  then $61,385 in a single critical vendor claim which we'll talk

10 more about.

11       Paragraph 3 was the resolution of the objection from

12 the tort claimants about, you know, 3M seeking reimbursement.

13 This language appears in most of the operational orders.  And

14 then the third change in Paragraph 9 is reporting over the

15 concept from the (indiscernible) order on the 503(b)(9)

16 reporting which we agreed to resolve the U.S. Trustee's

17 objection the first day.  You know, we're happy to keep that

18 reporting.  I understand where they're coming from in that

19 issue and so the debtors will continue to report 503(b)(9)

20 payments on a final basis.

21       Your Honor, so with these changes, you know,

22 hopefully this works for the U.S. Trustee, again, on the

23 503(b)(9) front.  It resolved the objection of the tort claim

24 obviously.  As to the critical vendor portion, we shared

25 information with the U.S. Trustee regarding the one critical

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Wave Cases | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## <u>CASE MANAGEMENT ORDER NO. 52</u>

Defendant 3M Company must file an Answer to the Short Form Complaints in all individual Wave cases within 14 days of the date of this Order.[1]  Going forward, when a Wave order is entered identifying cases selected for Wave discovery, Defendant 3M Company will have 14 days from that date to file an Answer in the individual case.

**DONE and ORDERED** on this 19th day of September, 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[1]  Exempt from this Order are the Wave cases in which Defendant 3M Company already has a deadline to file an Answer. *See, e.g.*, *Casiano*, Case No. 7:20cv54227, ECF No. 23; *Slocum*, Case No. 7:20cv06999, ECF No. 14.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *George*, 7:20cv71963 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## <u>ORDER</u>

On October 2, 2022, following entry of the Order resetting this trial for October 24, 2022, ECF No. 63, the undersigned unexpectedly suffered a tremendous personal loss that will hinder her ability to complete the extensive preparations needed to proceed with a trial on the 24th. Accordingly, the order resetting the trial in this case for October 24, 2022, ECF No. 63, is hereby vacated. The trial will go forward on February 13, 2023, as previously ordered, *see* ECF No. 59. The amended pretrial deadlines set forth in the Order dated September 23, 2022, *see id*., are reinstated, with the exception of the deadline for fact discovery on successor liability issues. Successor liability discovery remains suspended, pending resolution of the legal questions related to waiver and estoppel. Additionally, because the trial is no longer imminent, the Court will

extend the deadline for the limited deposition of Plaintiff David Elliott George to

November 1, 2022.

**SO ORDERED**, on this 3rd day of October, 2022.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## ORDER

October 12, 2022

*Before*

DIANE S. SYKES, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

<table>
<tr><td rowspan="5">No. 22-2606</td><td>IN RE: AEARO TECHNOLOGIES LLC, et al.,<br>              Debtors - Appellants<br>-------------------------------</td></tr>
<tr><td>AEARO TECHNOLOGIES LLC, AEARO HOLDING LLC, AEARO INTERMEDIATE LLC, AEARO LLC, and 3M OCCUPATIONAL SAFETY LLC,<br>              Appellants</td></tr>
<tr><td>v.</td></tr>
<tr><td>THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT and JOHN & JANE DOES, 1-1000,<br>              Appellees</td></tr>
</table>

| **Originating Case Information:** |
|---|
| Bankruptcy Case No: 22-50059 |
| Southern District of Indiana, Indianapolis Division-BK |
| Bankruptcy Judge Jeffrey J. Graham |

The following are before the court:

1. **PETITION FOR AUTHORIZATION OF DIRECT APPEAL UNDER 28 U.S.C. §158(d)(2)**, filed on September 23, 2022, by counsel for the petitioners.

2. **ANSWER OF CAE COMMITTEE IN OPPOSITION TO PETITION FOR DIRECT APPEAL UNDER 28 U.S.C. §158(d)(2)**, filed on October 3, 2022, by counsel for CAE Committee.

3.       **OBJECTION TO PETITION FOR AUTHORIZATION OF DIRECT APPEAL UNDER 28 U.S.C. §158(d)(2)**, filed on October 3, 2022, by counsel for the Bellwether Plaintiffs, Adkins and Vaughn and Certain Defendants.

4.       **REPLY IN SUPPORT OF PETITION FOR AUTHORIZATION OF DIRECT APPEAL UNDER 28 U.S.C. §158(d)(2)**, filed on October 6, 2022, by counsel for the petitioners.

**IT IS ORDERED** that the petition is **GRANTED**. The appellants shall pay the required appellate fees to the clerk of the bankruptcy court within 14 days from the entry of this order pursuant to Federal Rule of Appellate Procedure 5(d)(1).

form name: **c7_Order_3J**    (form ID: **177**)

STATE OF MINNESOTA
COUNTY OF HENNEPIN

DISTRICT COURT
FOURTH JUDICIAL DISTRICT

| In re: 3M COMBAT ARMS EARPLUG LITIGATION  This Document Relates to: *Watts*, 27-CV-20-10633 | Case Type: Personal Injury Hon. Laurie J. Miller  Case No. 27-CV-19-19916  **ORDER** |
| --- | --- |

Pursuant to the Agreement between Plaintiff and Defendant 3M Company, IT IS HEREBY ORDERED that the trial in *Watts* that was scheduled for October 31, 2022 is continued in the interest of supporting efforts towards global settlement negotiations for all CAEv2 claims, including those pending in the Minnesota State Court Litigation, the Multi-District Litigation in the United States District Court for the Northern District of Florida, and the Aearo Chapter 11 proceedings currently pending in the United States Bankruptcy Court for the Southern District of Indiana;

The *Watts* trial will commence on January 23, 2023, should settlement efforts be unsuccessful; and

The parties are further directed to re-notice the pending motions in limine for a new date in advance of trial and to submit a proposed amended scheduling order with new pre-trial deadlines.

Dated:  October 19, 2022

_____

HONORABLE LAURIE J. MILLER
Judge of District Court

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

## <u>ORDER</u>

The past few months have been fairly tumultuous, both in the MDL and elsewhere, with CAEv2-related controversies now pending in this Court, in the Eleventh Circuit Court of Appeals, Seventh Circuit Court of Appeals, United States Bankruptcy Court for the Southern District of Indiana, and Minnesota state court. Nonetheless, in that time, thousands of plaintiffs—9,290 in total—have filed new cases against only 3M Company in the MDL.[1] More than 3,100 plaintiffs have newly transitioned to the MDL docket and paid the requisite filing fee. And four waves of individual MDL cases (totaling 2,000 plaintiffs) have continued with plaintiff-specific discovery in preparation for remand to their respective transferor courts for trial.[2] Of course, the current litigation posture follows on the heels of 16 bellwether trials and 19 verdicts that occurred between March 2021 and May 2022,

---

[1] There were 229,484 cases pending in the MDL as of October 25, 2022.

[2] Five hundred cases were initially assigned to each wave. Currently, there are 374 active cases in Wave 1, 362 active cases in Wave 2, 362 active cases in Wave 3, and 500 active cases in Wave 4.

which was preceded by extensive corporate and government discovery on common issues.   Needless to say, incalculable time and resources have been and continue to be devoted to these endeavors by the parties, the special masters, and the federal judiciary.

Shortly after 3M's MDL co-defendants filed for bankruptcy in July 2022, 3M adopted a jarringly novel litigation stance—namely, that it "is not liable for the conduct of" its co-defendants (in particular, the Aearo entities) because, among other reasons, it is not a successor-in-interest to the co-defendants' alleged tort liability and it did not directly assume that liability when it acquired the Aearo entities.  *See, e.g.*, *George v. 3M Co.*, 7:20cv71963, ECF No. 46 at 9-10.  In other words, for the first time in the three-and-a-half year history of the MDL, 3M paradoxically claims that Aearo alone (now strategically steered into bankruptcy) is the bogeyman and 3M itself has neither independent nor successor liability for any alleged CAEv2-related injuries.   The Wave 1 plaintiffs have collectively moved for summary judgment on 3M's "full and independent liability for [all] CAEv2-related injuries" based on judicial estoppel, collateral estoppel, waiver, and implied assumption of liability.   *See* ECF No. 3506-1.  That matter is now fully briefed and ripe for adjudication by the Court.  Although the briefing was filed in the context of the Wave 1 cases, it presents liability issues common to all cases in the MDL, the resolution of which will affect how all of those cases may proceed.  The Court will rule on the

matter promptly.  However, given the broad import and impact of that decision, the Court also intends to *sua sponte* certify its decision for interlocutory appeal.  While this will inject further delay into the litigation, and continued uncertainty about the claims and/or defenses, appellate review of the Court's decision—if desired by either side—needs to occur before thousands of cases are remanded to transferor courts around the country for trial.

To conserve the parties' and judicial resources in the interim, and enable both sides to fully engage in ongoing settlement negotiations, the following changes will be implemented in the MDL:

1.    **Stay of Wave Process**.  The current waves will be stayed as of the below dates, and no new waves will be initiated, until further order of the Court. Any Wave plaintiff who believes successor liability is not at issue in his or her case, such that the stay should be lifted and the case permitted to proceed at this time, may file an appropriate motion.

| No. | Date |
|---|---|
| Wave 1 | Immediate Stay |
| Wave 2 | October 31, 2022 (close of expert discovery) |
| Wave 3 | November 4, 2022 (close of fact discovery) |
| Wave 4 | November 7, 2022 (deadline for written discovery requests and production of online records) |

**2.     Stay of Transition Process.**  The transition process is hereby stayed until further order of the Court.

**3.     Monthly Settlement Conferences.**  Beginning in November 2022, the parties must convene for monthly settlement conferences at the United States District Court, One North Palafox Street, Pensacola, Florida.  Special Master Randi S. Ellis will schedule and conduct the conferences.  The following attorneys must personally attend each conference on behalf of the common plaintiffs:   Bryan Aylstock, Chris Seeger, and Justin Witkin.   On behalf of 3M, Kevin Rhodes, Executive Vice President and Chief Legal Affairs Officer, must attend the conferences as the corporate representative with full settlement authority, subject to Board approval.   Courtney Enloe, Senior Vice President and Deputy General Counsel for 3M, may also attend.   Additionally, 3M must be represented at the conferences by settlement counsel with demonstrated experience resolving mass torts (and in particular, product liability matters) in the multidistrict litigation context.  During the conferences, the parties must meet and confer with each other and Special Master Ellis to discuss settlement, and negotiate in good faith.  The confidentiality parameters adopted for prior mediations will apply to the monthly settlement conferences.  *See* ECF No. 3424.

The Defense Occupational and Environmental Health Readiness System ("DOEHRS") records that were recently produced by the Department of Defense for

Case No. 3:19md2885/MCR/GRJ

Case 3:19-md-02885-MCR-HTC   Document 3568   Filed 10/27/22   Page 5 of 8
Case: 22-2606     Document: 32        Filed: 12/12/2022    Pages: 457

Page 5 of 8

nearly the entire MDL plaintiff population will be an essential component of the settlement discussions. BrownGreer PLC, a neutral third-party, has now analyzed that data and shared its findings with the Court. In the Court's view, it is critically important for both sides to hear BrownGreer's unbiased insights regarding the nature and scope of that audiometric data as it relates to the hearing loss claims in this litigation,[3] and to use those insights to rationally inform their decision-making.[4]

A few additional comments are warranted. Much vitriol has been directed at the undersigned in various forums of late for a range of supposed failings in this MDL. The vilification, while frequently personal and provocative, generally amounts to nothing more than the overzealous and deceptive public posturing that has unfortunately seeped into the adversarial process in recent years, a response to

---

[3] BrownGreer was prepared to present its findings to the parties at the mediation session previously set for October 6, 2022. That mediation was cancelled, however, after the Court was notified that 3M had no intent to reach a global resolution in the MDL. That may or may not still be true—litigants routinely make concessions and/or change their settlement positions for a variety of reasons (and, sometimes, for no apparent reason at all). Either way, BrownGreer's objective findings are significant enough that both sides should have them.

[4] This is not to say that the DOEHRS data alone establishes the cause of any service member's hearing-related injuries. But the data does demonstrate the *fact* of certain injuries based on hearing thresholds measured by conventional pure tone audiometry, the gold standard for determining the type, degree, and configuration of hearing loss. There is no averaging of select frequencies, as with pure-tone averages, which are only "for epidemiological use" (not individual diagnoses) in any event. *See* World Health Organization, *World Report on Hearing* at 38 (2021). And there are no estimations, formulas or assumptions as used in the workers' compensation and disability ratings context. Rather, the DOEHRS data reflects the *actual* hearing loss of individual service members in this litigation.

Case No. 3:19md2885/MCR/GRJ

which is beneath the dignity of the Court.  One matter, however—repeated attacks on the integrity of the bellwether process—cannot stand uncorrected.

The bellwether process for this MDL is beyond legitimate reproach.  From the beginning, both sides agreed that bellwether proceedings would be important and necessary to the parties' evaluation of the relative merits of the various claims and defenses, to understand how juries respond to the evidence, to gain insights to assist in valuing the larger pool of cases, and to advance the litigation as a whole.  Through collaboration and consensus, the parties and the Court together designed a selection process that resulted in a truly representative pool of bellwether cases.  This involved prevalence analyses performed on a random sample of the inventory by BrownGreer PLC (again, a neutral third-party) to ascertain the most representative characteristics of the plaintiffs in terms of branch of service, age, and injury.[5]  From the pool of representative bellwether candidates, each side selected an equal number of cases (and alternates), alongside a number of random selections by both the parties and the Court, to proceed with plaintiff-specific discovery and trial.  Nineteen bellwether

---

[5] At the time, there were 139,693 claimants registered in MDL Centrality in connection with the 3M litigation.  One percent of that population—1,397 claimants—was *randomly selected* for consideration as potential bellwether candidates.  Next, a series of prevalence analyses were conducted on the entire population of claimants with completed census forms, to identify the individual plaintiff characteristics that were most representative of the whole, in terms of branch of service, age, and injury.  The analyses revealed that the most representative claimant was between the ages of 30 and 49, serves or served in the Army, and alleged a combination of tinnitus and hearing loss.  Of the randomly selected 1%, 175 cases met the three criteria.  Those 175 cases comprised the bellwether candidate pool from which all bellwether plaintiffs were selected.

Case No. 3:19md2885/MCR/GRJ

Case 3:19-md-02885-MCR-HTC   Document 3568   Filed 10/27/22   Page 7 of 8
Case: 22-2606   Document: 32       Filed: 12/12/2022   Pages: 457

Page 7 of 8

cases were tried.  The statistics have been recited numerous times before but they bear repeating here.  16 different trials.  19 representative plaintiffs.  19 separate verdicts.  10 different presiding judges from districts throughout the Eleventh Circuit.  Jury venires drawn from three dissimilar divisions in the Northern District of Florida.  One side or the other may be unhappy with certain results, or with the uncomfortable lessons learned from jury after jury, but several truths are inviolate no matter how loudly one yells or how forcefully one pounds the table—the bellwether selection process was developed fairly and by consensus, the bellwether plaintiffs were representative of the overall composition of this litigation,[6] the bellwether trial process enabled the cases to be heard by a diverse combination of judges and jury pools, and, as a result, the bellwether verdicts provide a fair representation of how juries view the evidence and value the claims.  No other MDL litigants in this country have obtained more objectively representative and reliable data points about individual claims, and the broader whole, in this timeframe, than the parties in this litigation.    Whether they use that information honestly and responsibly going forward is, of course, up to them.  But the fundamental fairness of

---

[6] After the bellwether selections were made, and the MDL inventory had grown to 150,885 plaintiffs with 89,815 census forms on file, BrownGreer performed another prevalence analysis on the new data.  That analysis confirmed the characteristics of the most representative plaintiff remained the same as before, and matched the criteria used in the bellwether selection process.  On October 27, 2022, at the Court's request, BrownGreer again performed a prevalence analysis on the 220,240 census forms currently completed in MDL Centrality.  **The trends as to the most representative characteristics—plaintiffs between the ages of 30 and 49, who serve or served in the Army, and allege a combination of tinnitus and hearing—remain the same today**.

the bellwether process by which the information was obtained is unassailable, as is

the recently produced DOEHRS data.

**DONE AND ORDERED**, on this 27th day of October, 2022.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

## CIRCUIT RULE 30(d) STATEMENT

I certify that all materials required by Circuit Rule 30(a)-(b) are included in the Appendix.

*/s/ Paul D. Clement*

Paul D. Clement