**No. 22-2606**

## UNITED STATES COURT OF APPEALS
### FOR THE SEVENTH CIRCUIT

In Re: Aearo Technologies, LLC, et al.

—————————————————————

Aearo Technologies, LLC, et al.,

*Debtors-Appellants,*

v.

Those Parties Listed On Appendix A to the Complaint and
John & Jane Does, 1–1000,

*Appellees.*

—————————————————————

On Direct Appeal from the United States Bankruptcy Court
for the Southern District of Indiana, Indianapolis Division
No. 22-2890, Adv. No. 22-50059

—————————————————————

**BRIEF OF *AMICI CURIAE* THE CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA AND AMERICAN TORT REFORM
ASSOCIATION IN SUPPORT OF DEBTORS-APPELLANTS**

—————————————————————

Janet Galeria
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, D.C. 20062

H. Sherman Joyce
Lauren Sheets Jarrell
American Tort Reform Association
1101 Connecticut Ave NW, Suite 400
Washington, D.C. 20036

R. Craig Martin
DLA Piper LLP (US)
1201 N. Market St., Suite 2100
Wilmington, DE 19801

Ilana H. Eisenstein
   *Counsel of Record*
DLA Piper LLP (US)
1650 Market St., Suite 5000
Philadelphia, PA 19103
(215) 656-3351
ilana.eisenstein@us.dlapiper.com

Richard A. Chesley
DLA Piper LLP (US)
203 North LaSalle Street,
Suite 1900
Chicago, IL 60601

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __22-2606_____

Short Caption:  In re: Aearo Technologies, LLC, et al. (Aearo Technologies, LLC v. Those Plaintiffs Listed on Appendix A)

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    The Chamber of Commerce of the United States of America

    American Tort Reform Association

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    DLA Piper LLP (US)

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    The Debtors are wholly-owned subsidiaries of non-Debtor 3M Company

Attorney's Signature: __Ilana H. Eisenstein__    Date: __1/3/2023__

Attorney's Printed Name: __Ilana H. Eisenstein__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [✔]  No [ ]

Address: __1650 Market Street, Suite 5000, Philadelphia, PA 19103__

Phone Number: __215-656-3351__    Fax Number: __215-606-3351__

E-Mail Address: __ilana.eisenstein@us.dlapiper.com__

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2606</u>

Short Caption: <u>In re: Aearo Technologies, LLC, et al. (Aearo Technologies, LLC v. Those Plaintiffs Listed on Appendix A)</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    <u>The Chamber of Commerce of the United States of America</u>

    <u>American Tort Reform Association</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    <u>DLA Piper LLP (US)</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>The Debtors are wholly-owned subsidiaries of non-Debtor 3M Company</u>

Attorney's Signature: <u>R. Craig Martin</u>    Date: <u>1/3/2023</u>

Attorney's Printed Name: <u>R. Craig Martin</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☐  No ☑

Address: <u>1201 N. Market St., Suite 2100, Wilmington, DE 19801</u>

Phone Number: <u>301-468-5655</u>    Fax Number: <u>302-778-7824</u>

E-Mail Address: <u>craig.martin@us.dlapiper.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2606</u>

Short Caption: <u>In re: Aearo Technologies, LLC, et al. (Aearo Technologies, LLC v. Those Plaintiffs Listed on Appendix A)</u>

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>The Chamber of Commerce of the United States of America</u>

<u>American Tort Reform Association</u>

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>DLA Piper LLP (US)</u>

(3) If the party, amicus or intervenor is a corporation:

 i) Identify all its parent corporations, if any; and

  <u>N/A</u>

 ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  <u>N/A</u>

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>The Debtors are wholly-owned subsidiaries of non-Debtor 3M Company</u>

Attorney's Signature: <u>Richard A. Chesley</u> Date: <u>1/3/2023</u>

Attorney's Printed Name: <u>Richard A. Chesley</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes [ ] No [✔]

Address: <u>203 North LaSalle Street, Suite 1900, Chicago, IL 60601</u>

Phone Number: <u>312-368-3430</u> Fax Number: <u>N/A</u>

E-Mail Address: <u>richard.chesley@us.dlapiper.com</u>

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2606

Short Caption: In re: Aearo Technologies, LLC, et al. (Aearo Technologies, LLC v. Those Plaintiffs Listed on Appendix A)

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
The Chamber of Commerce of the United States of America

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
DLA Piper LLP (US)

(3)  If the party, amicus or intervenor is a corporation:

    i)  Identify all its parent corporations, if any; and

       N/A

    ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       N/A

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

The Debtors are wholly-owned subsidiaries of non-Debtor 3M Company

Attorney's Signature: Janet Galeria      Date: 1/3/2023

Attorney's Printed Name: Janet Galeria

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: 1615 H Street, NW, Washington, DC 20062

Phone Number: 202-463-5337      Fax Number: N/A

E-Mail Address: jgaleria@uschamber.com

rev. 12/19 AK

Save As      Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2606</u>

Short Caption: <u>In re: Aearo Technologies, LLC, et al. (Aearo Technologies, LLC v. Those Plaintiffs Listed on Appendix A)</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>American Tort Reform Association</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>DLA Piper LLP (US)</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>The Debtors are wholly-owned subsidiaries of non-Debtor 3M Company</u>

Attorney's Signature: <u>H. Sherman Joyce</u>      Date: <u>1/3/2023</u>

Attorney's Printed Name: <u>H. Sherman Joyce</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✓]

Address: <u>1101 Connecticut Ave NW, Suite 400, Washington, D.C. 20036</u>

Phone Number: <u>202-682-1163</u>      Fax Number: <u>N/A</u>

E-Mail Address: <u>shermanjoyce@atra.org</u>

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>22-2606</u>

Short Caption: <u>In re: Aearo Technologies, LLC, et al. (Aearo Technologies, LLC v. Those Plaintiffs Listed on Appendix A)</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>American Tort Reform Association</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>DLA Piper LLP (US)</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>The Debtors are wholly-owned subsidiaries of non-Debtor 3M Company</u>

Attorney's Signature: <u>Lauren Sheets Jarrell</u>    Date: <u>1/3/2023</u>

Attorney's Printed Name: <u>Lauren Sheets Jarrell</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: <u>1101 Connecticut Ave NW, Suite 400, Washington, D.C. 20036</u>

Phone Number: <u>202-682-1163</u>    Fax Number: <u>N/A</u>

E-Mail Address: <u>lsheetsjarrell@atra.org</u>

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENTS...........................................................................  i

TABLE OF AUTHORITIES..........................................................................viii

STATEMENT OF AMICI CURIAE...................................................................... 1

SUMMARY OF ARGUMENT ........................................................................... 2

ARGUMENT .................................................................................................. 4

I.   BANKRUPTCY COURT RESOLUTION OF MASS TORT LIABILITIES HAS BEEN A KEY TOOL FOR U.S. BUSINESSES SINCE THE BANKRUPTCY CODE WAS ENACTED IN 1978 ............................................................... 4

II.  CHAPTER 11 PROVIDES AN EFFICIENT AND EQUITABLE OPTION COMPARED TO THE COMBAT ARMS MDL .............................................. 7

    A.   The Challenges of the Combat Arms MDL ....................................... 7

    B.   Chapter 11 Provides An Equitable and Efficient Solution to this Mass Tort Litigation..................................................................... 11

III. THE BANKRUPTCY COURT INCORRECTLY DECLINED TO STAY OR ENJOIN THE LITIGATION AGAINST THE DEBTORS' PARENT COMPANY 3M ................................................................................ 14

CONCLUSION ........................................................................................... 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
366 F. Supp. 3d 1368 (J.P.M.L. 2019) ...................................................... 8

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
No. 3:19-md-2885 (N.D. Fla.)................................................................ 9, 11

*In re A.H. Robins Co., Inc.*,
88 B.R. 742 (E.D. Va. 1988), *aff'd*, 880 F.2d 694 (4th Cir. 1989)................. 6

*A.H. Robins Co., Inc. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ............................................................. 16, 17

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................... 13

*In re Boy Scouts of Am. & Delaware BSA, LLC*,
642 B.R. 504 (Bankr. D. Del. 2022) ...................................................... 13

*Bush v. United States*,
939 F.3d 839 (7th Cir. 2019) ................................................................ 19

*In re Caesars Entm't. Operating Co.*,
808 F.3d 1186 (7th Cir. 2015) ........................................................... 17, 18

*In re Diet Drugs*,
325 F. Supp. 2d 540 (E.D. Pa. 2004) ....................................................... 9

*In re Dow Corning Corp.*,
280 F.3d 648 (6th Cir. 2002) .................................................................. 6

*Estes v. 3M*,
7:20cv137 (N.D. Fla. Mar. 30, 2021) ECF No. 184.................................. 10

*In re Fernstrom Storage & Van Co.*,
938 F.2d 731 (7th Cir. 1991) ................................................................ 17

*Fox Valley Construction Workers Fringe Benefit Funds v. Pride of the
Fox Masonry & Expert Restorations*,
140 F.3d 661 (7th Cir. 1998) ................................................................ 17

*In re Johns-Manville Corp.*,
   36 B.R. 727 (Bankr. S.D.N.Y. 1984), *leave to appeal denied* 39
   B.R. 234 (S.D.N.Y. 1984), *mandamus denied*, 749 F.2d 3 (2d
   Cir. 1984) ................................................................................ 4, 16

*Kreisler v. Goldberg*,
   478 F.3d 209 (4th Cir. 2007) .................................................. 18

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998) .................................................................. 13

*In re LTL Management, LLC*,
   637 B.R. 396 (Bankr. D.N.J. 2022) ........................................ 14

*In re Mallinckrodt PLC*,
   639 B.R. 837 (Bankr. D. Del. 2022) ......................................... 6

*In re Montreal Maine & Atl. Ry., Ltd.*,
   No. BR 13-10670, 2015 WL 7431192 (Bankr. D. Me. Oct. 9,
   2015) ......................................................................................... 6

*In re PG & E Corp.*,
   617 B.R. 671 (Bankr. N.D. Cal. 2020), *appeal dismissed sub
   nom, McDonald v. PG&E Corp.*, No. 20-CV-04568-HSG, 2020 WL
   6684592 (N.D. Cal. Nov. 12, 2020), *aff'd*, No. 20-17366, 2022
   WL 1657452 (9th Cir. May 25, 2022), *and appeal dismissed sub
   nom, Int'l Church of the Foursquare Gospel v. PG&E Corp.*, No.
   20-CV-04569-HSG, 2020 WL 6684578 (N.D. Cal. Nov. 12, 2020) ............... 6

*In re Piper Aircraft Corp.*,
   603 B.R. 525 (Bankr. S.D. Fla. 2019) ....................................... 6

*In re: Proton-Pump Inhibitor Prods. Liab. Litig.*,
   No. 2:17-md-02789 (D.N.J. Aug. 4, 2017) ECF No. 119 ............. 8

*In re Purdue Pharma L.P.*,
   633 B.R. 53 (Bankr. S.D.N.Y.), *vacated* 635 B.R. 26 (S.D.N.Y.
   2021), *certificate of appealability granted*, No. 21 ....................... 6

*Matter of UNR Indus., Inc.*,
   725 F.2d 1111 (7th Cir. 1984) ................................................ 15

*Vilsmeyer v. 3M*,
   No. 7:20cv113 (N.D. Fla. Mar. 25, 2022) ECF No. 139 .............. 10

*Zerand-Bernal Group, Inc. v. Cox*,
   23 F.3d 159 (7th Cir. 1994) .................................................... 17

**Statutes and Rules**

11 U.S.C. § 105(a) ............................................................... 17, 18

11 U.S.C. § 524(g) ................................................................... 5

11 U.S.C. § 362(a) .....................................................3, 16, 17, 18

28 U.S.C. § 1404(a) ................................................................ 12

28 U.S.C. § 1407 .................................................................... 12

28 U.S.C. § 1914 ...................................................................... 9

Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 111(b),
    108 Stat. 4106, 4117 (1994) .......................................................... 5

Fed. R. Bankr. Pro. 7001 and 7065 ............................................ 17

**Other Authorities**

*Abusing Chapter 11: Corporate Efforts to Side-Step Accountability
    Through Bankruptcy, Hearing Before the S. Comm. on the
    Judiciary, Sub. Comm. On Federal Court Oversight, Agency
    Action and Federal Rights*, 117th Cong. (Feb. 28, 2022)
    (Testimony of Paul H Zumbro) ................................................. 15

Alan N. Resnick, *Bankruptcy as a Vehicle for Resolving Enterprise-
    Threatening Mass Tort Liability*, 148 U. Pa. L. Rev. 2045 (2000)................. 16

Bolch Judicial Institute, *Guidelines and Best Practices for Large
    and Mass-Tort MDLs* (Duke Law School, 2d ed. 2018) ............................... 8

Chief Justice John G. Roberts Jr., 2021 Year-End Report on the
    Federal Judiciary ................................................................. 10

Elizabeth Chamblee Burch and Margaret S. Williams, *Perceptions
    of Justice in Multidistrict Litigation: Voices from the Crowd*,
    Cornell L. Rev. 35 (Forthcoming 2022), available at
    https://ssrn.com/abstract=3900527 ....................................... 12

M. Casey Rodgers, *Vetting the Wether: One Shepherd's View*, 89
    UMKC L. Rev. 873, 873–74 (2021) ............................................. 9

United States Panel on Multidistrict Litigation, MDL Statistics
  Report—Distribution of Pending MDL Dockets by Actions
  Pending, (Dec. 15, 2022), *avail. at*
  https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_
  Dockets_By_Actions_Pending-December-15-2022.pdf ................................. 8

U.S. Chamber of Commerce Institute for Legal Reform, *Unlocking
  the Code: The Value of Bankruptcy to Resolve Mass Torts* (Dec.
  2022) ................................................................................................. 11

Sheldon S. Toll, *Bankruptcy and Mass Torts: The Commission's
  Proposal*, 5 Am. Bankr. Inst. L. Rev. 363 (1997) ........................................ 5

## STATEMENT OF *AMICI CURIAE*[1]

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. It directly represents 300,000 members and indirectly represents the interests of more than three million companies and professional organizations of every size, in each industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The American Tort Reform Association ("ATRA") is a broad-based coalition of businesses, corporations, municipalities, associations, and professional firms that have pooled their resources to promote reform of the civil justice system with the goal of ensuring fairness, balance, and predictability in civil litigation. For more than three decades, ATRA has filed *amicus curiae* briefs in cases involving important liability issues.

Many of *Amici's* members participate in bankruptcy proceedings in different capacities, including during plan confirmations under chapter 11. Therefore, *Amici* have a strong interest in the appropriate interpretation of

---

[1] Counsel for *Amici Curiae* certify that no party or party's counsel authored any part of this brief. No one, apart from *Amici Curiae*, their members, or their counsel, contributed money intended to fund the brief's preparation or submission. This brief is filed by leave of the Court.

bankruptcy court powers and the ability of businesses to address mass tort liabilities under U.S. bankruptcy law.

## SUMMARY OF ARGUMENT

Complex mass tort bankruptcies often involve third parties, including debtor companies' predecessors and successors in interest, suppliers, customers, insurance companies, employees, officers and directors, parent companies, and corporate affiliates. Compensation systems established through bankruptcy often allow claimants to receive payments more efficiently than through the pursuit of lengthy litigation against multiple defendants. The bankruptcy system also contains numerous safeguards intended to maximize value for tort claimants.

The bankruptcy system has a long history of effectively managing the extraordinary costs and inefficiencies of mass tort litigation. It maximizes the funds available to claimants and serves the U.S. economy in positive ways. The use of bankruptcy to address mass tort claims is a historically valid bankruptcy purpose, and there are many examples of the bankruptcy process resolving major litigation in ways not otherwise possible.

This paradigmatic case shows the value conferred on claimants and debtors by the appropriate use of the bankruptcy procedures. Hundreds of thousands of hearing-injury claims related to the Combat Arms earplugs are stuck in a massive multi-district litigation ("Combat Arms MDL"). The Combat Arms MDL is the largest in history, with more than 260,000 hearing-injury claims and no clear end in sight.

The claims of potentially legitimate tort claimants are languishing in the MDL with little chance at recovery under any practical timeframe. And the eventual remand of tens of thousands of claims will severely burden every single district court docket around the country and take a staggering amount of judicial resources. In the interim, the debtors-appellants Aearo[2] ("Debtors") and its related companies will be forced to expend millions of dollars litigating cases one-by-one that drain their resources, ultimately threatening their solvency and ongoing business operations. The continuation of this process brings neither the defendants nor the hundreds of thousands of remaining tort claimants meaningfully closer to resolution.

There is another option: these claims may be fairly and equitably resolved through the good-faith use of bankruptcy procedures. With a fully funded settlement trust and channeling injunctions, the tort claimants collectively will be in a far better position than they would be in the Combat Arms MDL. This appropriate use of the bankruptcy procedures may also be the only way for businesses like the Debtors to address catastrophic tort-liability while continuing to contribute to society (*i.e.*, through employment, payment of taxes, providing public equity for pension and retirement funds to own, and providing lifesaving and beneficial medical and industrial equipment and consumer products that enhance societal well-being).

Below, the Debtors sought application of the automatic stay under Bankruptcy Code § 362 to their parent and co-defendant 3M or, alternatively, an

---

[2] "Aearo" refers to all five debtors-appellants.

3

injunction of continued litigation of the hearing-injury cases in the Combat Arms MDL—a request that is regularly granted in similar proceedings. In refusing to apply the stay or grant the injunction, the bankruptcy court adopted an inappropriately constrained approach to bankruptcy jurisdiction that undermines the Debtors' reorganization efforts and is inconsistent with the broad remedial approach to "related to" bankruptcy jurisdiction. This failure to appropriately use the tools of bankruptcy impedes the resolution of mass tort liability and threatens the prospects for a successful reorganization.

## **ARGUMENT**

### I. **BANKRUPTCY COURT RESOLUTION OF MASS TORT LIABILITIES HAS BEEN A KEY TOOL FOR U.S. BUSINESSES SINCE THE BANKRUPTCY CODE WAS ENACTED IN 1978**

The present Bankruptcy Code was enacted in 1978 and, since its adoption, has provided a useful statutory mechanism to address mass tort claims. This history began with the Johns-Manville Corporation, a company that manufactured numerous building products containing asbestos. As lawsuits mounted against Johns-Manville, the company filed for bankruptcy in 1982, even though at the time it was considered to be solvent. Although claimants argued that a company could not use bankruptcy procedures to address prospective tort liability, the bankruptcy court disagreed and held that insolvency was not a requirement for a chapter 11 filing, and that a debtor does not need to wait until the financial situation is dire to file a chapter 11 petition. *In re Johns-Manville Corp.*, 36 B.R. 727, 730–40 (Bankr. S.D.N.Y. 1984), *leave to appeal denied* 39 B.R. 234 (S.D.N.Y. 1984), *mandamus denied*, 749 F.2d 3 (2d

Cir. 1984). Johns-Manville then proposed a plan that channeled all asbestos claims to a trust that was funded by dividends from the reorganized debtors and provided payments to those harmed by their products.

A few years later, as part of the Bankruptcy Reform Act of 1994, Congress enacted legislation, codified in 11 U.S.C. § 524(g), to deal with asbestos mass tort claims in chapter 11 reorganizations. The structured bankruptcy system can manage multiple liabilities and provides a forum for companies with massive liabilities to do so. Within a few years of the Act's passage, "[a]t least 15 asbestos manufacturers, including UNR, Amatex, Johns-Manville, National Gypsum, Eagle-Picher, Celotex, and Raytech have organized or liquidated in attempts to address massive numbers of known and unknown asbestos claimants using Chapter 11 of the Bankruptcy Code." Sheldon S. Toll, *Bankruptcy and Mass Torts: The Commission's Proposal*, 5 Am. Bankr. Inst. L. Rev. 363, 364 (1997) (citing Nat'l Bankr. Rev. Comm'n, *Bankruptcy: The Next Twenty Years, Final Report* 315 (1997)).

The use of bankruptcy procedure to deal with mass tort liability was not limited by Congress to asbestos claims. *Id.* Congress explicitly stated the 1994 asbestos amendments do not preclude the use of bankruptcy to deal with other types of mass tort claims. *See* Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 111(b), 108 Stat. 4106, 4117 (1994) (uncodified) ("Nothing in [524(g)] shall be construed to modify, impair, or supersede any other authority the court has to issue injunctions in connection with an order confirming a plan of

reorganization."). Indeed, many companies have, under chapter 11, addressed mass tort liabilities in non-asbestos cases for present and future claimants:

- Addressing liability associated with medical devices, such as the Dalkon Shield and silicone breast implants. *See In re A.H. Robins Co., Inc.*, 88 B.R. 742 (E.D. Va. 1988), *aff'd*, 880 F.2d 694 (4th Cir. 1989); *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002).

- Settling successor liability for defects in aircraft by allowing an OldCo aircraft debtor to sell its assets to a NewCo aircraft company by using a channeling injunction and the funding of a trust. *See In re Piper Aircraft Corp.*, 603 B.R. 525 (Bankr. S.D. Fla. 2019).

- Addressing the opioid crisis. *In re Purdue Pharma L.P.*, 633 B.R. 53 (Bankr. S.D.N.Y. 2021), *vacated* 635 B.R. 26 (S.D.N.Y. 2021), *certificate of appealability granted*, No. 21-CV-7532 (CM), 2022 WL 121393 (S.D.N.Y. Jan. 7, 2022); *In re Mallinckrodt PLC*, 639 B.R. 837 (Bankr. D. Del. 2022).

- Addressing wildfires in California. *In re PG & E Corp.*, 617 B.R. 671 (Bankr. N.D. Cal. 2020), *appeal dismissed sub nom, McDonald v. PG&E Corp.*, No. 20-CV-04568-HSG, 2020 WL 6684592 (N.D. Cal. Nov. 12, 2020), *aff'd*, No. 20-17366, 2022 WL 1657452 (9th Cir. May 25, 2022), *and appeal dismissed sub nom, Int'l Church of the Foursquare Gospel v. PG&E Corp.*, No. 20-CV-04569-HSG, 2020 WL 6684578 (N.D. Cal. Nov. 12, 2020).

- Addressing a train crash in Maine. *In re Montreal Maine & Atl. Ry., Ltd.*, No. BR 13-10670, 2015 WL 7431192 (Bankr. D. Me. Oct. 9, 2015), *adopted*, No. 1:15-MC-329-JDL, 2015 WL 7302223 (D. Me. Nov. 18, 2015).

In short, for the last 40 years many companies have filed chapter 11 petitions to address mass tort liabilities in circumstances similar to the one facing the Debtors here, and the courts consistently permit this practice. As a result of these bankruptcy filings, millions of people have received compensation for their claims, often in a prompt and efficient manner. This history supports the Debtors' position that filing a chapter 11 petition to address mass tort liability is an established and supported exercise of bankruptcy law.

## II. CHAPTER 11 PROVIDES AN EFFICIENT AND EQUITABLE ALTERNATIVE COMPARED TO THE COMBAT ARMS MDL

### A. The Challenges of the Combat Arms MDL

The Combat Arms MDL involves claims alleging that the Debtors' dual-ended Combat Arms earplugs were defective and caused the plaintiffs to develop hearing loss. The Debtors developed the Combat Arms earplugs to address the unique hearing protection needs of military servicemembers. The Combat Arms earplugs are double-sided, with one side filtering out sharp impulse noises, like gunfire, and the other side filtering out high steady-state noise, like heavy machinery. The military purchased Combat Arms earplugs as one of the many hearing protection devices it offered to its servicemembers.

After years of use, the Combat Arms earplugs became the focus of litigation when plaintiff lawyers seized upon a memorandum produced by the Debtors in an unrelated lawsuit purportedly showing that the Combat Arms earplugs did not reduce noise as much as expected. Soon enough, both the Debtors and their parent 3M were facing hundreds of claims asserting that both were jointly and severally liable for hearing loss suffered from the use of the Combat Arms

earplugs. So, in April 2019, the Judicial Panel on Multidistrict Litigation formed MDL No. 2885 to "promote the just and efficient conduct of this litigation." *In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, 366 F. Supp. 3d 1368, 1369 (J.P.M.L. 2019).

But after only a few years, the Combat Arms MDL has ballooned and is now the largest MDL in history. Overshadowing all prior MDLs, in December 2022, it had over 260,000 hearing-injury claims, which is twice as many claims as the other 191 pending MDLs *combined*.[3] The Combat Arms MDL suffers from several distinctive challenges—highlighting the reality that, although a useful tool, the MDL process will not always have the capacity to resolve a massive docket of individualized personal injury claims.

For example, in large, personal injury MDLs, a standard case management tool is the requirement that each plaintiff provide basic factual information and discovery regarding their claim. *See*, *e.g.*, Case Management Order No. 9 at 2, & Ex. A, *In re: Proton-Pump Inhibitor Prods. Liab. Litig.*, No. 2:17-md-02789 (D.N.J. Aug. 4, 2017) ECF No. 119, (requiring all plaintiffs to complete a 25-page fact sheet and produce records substantiating the use of the product). These initial disclosure requirements enable defendants to make quicker and more accurate conclusions about the potential for settlement and prevents the complications caused by unrestrained filing of potentially frivolous claims. *See* Bolch Judicial

---

[3] United States Judicial Panel on Multidistrict Litigation, *MDL Statistics Report - Distribution of Pending MDL Dockets by Actions Pending* (Dec. 15, 2022) *avail. at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-December-15-2022.pdf.

Institute, *Guidelines and Best Practices for Large and Mass-Tort MDLs* 10–11 (Duke Law School, 2d ed. 2018) (discussing the usefulness of fact sheets in mass-tort MDLs). Another layer of protection against the meritless filing of MDL claims is the small filing fee required by 28 U.S.C. § 1914, which, in the MDL context, "acts as a threshold barrier, albeit a modest one, against the filing of frivolous or otherwise meritless lawsuits." *See In re Diet Drugs*, 325 F. Supp. 2d 540, 541 (E.D. Pa. 2004).

Without these important case-management procedures, any potential plaintiff can join the MDL at essentially no cost. As the judge presiding over the Combat Arms MDL noted in a different forum:

> Left unchecked, high volumes of unsupportable claims can wreak havoc on an MDL. They clog the docket, interfere with a court's ability to establish a fair and informative bellwether process, frustrate efforts to assess the strengths and weaknesses of the MDL as a whole, and hamper settlement discussions. And yes, as some may be loath to admit, the sheer volume of unsupportable claims in some MDLs can grossly distort the true merit and size of the litigation.

M. Casey Rodgers, *Vetting the Wether: One Shepherd's View*, 89 UMKC L. Rev. 873, 873–74 (2021).

That is what happened in the Combat Arms MDL. Early on, the MDL court suspended plaintiffs' obligations to take action to substantiate their claims. Pretrial Order No. 20 Inactive Administrative Docket, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885 (N.D. Fla. Dec. 6, 2019) ECF No. 864. And, when coupled with extensive advertising campaigns by claims aggregators, the result was an influx of claims in unanticipated amounts that threaten to swamp both the Debtors and their parent 3M. In fact, there are so

many claims in the Combat Arms MDL that even Chief Justice John R. Roberts called out "unusually large number of filings" in the Combat Arms MDL in his annual report on the federal judiciary and has begun producing two sets of data on the federal courts—one set that includes this MDL and one that does not. *See* Chief Justice John G. Roberts Jr., 2021 Year-End Report on the Federal Judiciary at 8.

At this point, the MDL consists of hundreds of thousands of claims that are putting enormous financial pressure on otherwise healthy, stable, and socially valuable companies. And the unwieldy size of the MDL and lack of vetting procedures make it difficult to determine whether any of the remaining tort claimants have meritorious claims and, if so, their value.

The bellwether trials did little to advance the resolution of these claims, particularly in light of the widely divergent results. For example, in the space of one year, compensatory damages awarded by juries in Pensacola, Florida for similar injuries increased from $350,000 to $50,000,000,[4] while other juries found in favor the defendants. Moreover, there are multiple post-trial motions and appeals related to legal issues based on arguments that these verdicts were the product of, among other things, the MDL court's exclusion of key defense evidence.[5]

---

[4] Jury Verdict, *Estes v. 3M*, 7:20cv137 (N.D. Fla. Mar. 30, 2021) ECF No. 184 (awarding $350,500 in compensatory damages); Jury Verdict, *Vilsmeyer v. 3M*, No. 7:20cv113 (N.D. Fla. Mar. 25, 2022) ECF No. 139 (awarding $50,000,000 in compensatory damages).

[5] For example, the MDL court granted plaintiffs' motion for summary judgment on the government contractor defense and prevented defendants from arguing

The massive scope and size of the MDL means that any legitimate tort claimants will waste years in the MDL only to spend additional time and money litigating their claims when they are remanded to district court dockets at the end of the long and drawn-out MDL process. And considering the disruptive effect of thousands of unresolved personal injury claims on district court dockets around the country, it was reasonable and appropriate for the Debtors to pursue a different path. As the MDL court noted, these unresolved cases "average[] to approximately 2,500 cases being remanded for trial to each of the 94 districts nationwide . . . . the amount of judicial resources required to handle this number of cases is staggering." Mediation Order, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885 (N.D. Fla. Jun. 10, 2022) ECF No. 3188. Chapter 11 provides a fair and expeditious alternative solution.

### B. Chapter 11 Provides An Equitable and Efficient Solution to this Mass Tort Litigation.

The Bankruptcy Code's procedures provide a critical alternative when MDL processes stop working. "Although class actions and MDLs can be effective at aggregating individual claims, they have limited utility in providing effective, timely, and final global resolution, especially in product liability and other cases involving latent injuries and an unknown class of potential future claimants." U.S. Chamber of Commerce Institute for Legal Reform, *Unlocking the Code: The*

---

the defense to a jury. *See* Order Denying Defendants' Motion for Summary Judgment on the Government Contractor Defense, and granting Plaintiffs' Motion for Summary Judgment on the Government Contractor Defense, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885 (N.D. Fla. Jul. 24, 2020) ECF No. 1280.

*Value of Bankruptcy to Resolve Mass Torts*, 30 (Dec. 2022).  In the first ever MDL survey, two commentators noted that "when compared with average civil cases . . . products-liability MDLs last significantly longer." Elizabeth Chamblee Burch & Margaret S. Williams, *Perceptions of Justice in Multidistrict Litigation: Voices from the Crowd*, Cornell L. Rev. 35 (Forthcoming 2022).[6] The same authors note that "[e]ven Judge Goodwin, who handled the seven pelvic-mesh MDLs, observed that 'delay may deny the parties timely justice and is rightly considered by many as a major failure of the MDL paradigm.'" *Id.* (quoting Judge Joseph R. Goodwin, *Remand: The Final Step in the MDL Process—Sooner Rather than Later*, 89 UMKC L. Rev. 991, 995 (2021)).

Congress did not intend MDL procedures to be the exclusive mechanism for dealing with mass tort litigation. True, formation of an MDL is a valid and legitimate way to address complex litigation. But it is not the only means of addressing mass tort claims and often falls short of the collective solution possible under chapter 11. The MDL process is designed to handle only pre-trial coordination of mass-tort proceedings—it does not address the management of mass-tort liabilities. 28 U.S.C. § 1407. To the contrary, a transferee court administering an MDL is empowered to manage cases only up until trial, after which it must remand to the transferor jurisdiction. 28 U.S.C. § 1404(a).

Of course, in the process of an MDL, parties may enter into settlements or may, by agreement, allow bellwether trials to occur in the MDL court. But those

_____

[6] *Available at* https://ssrn.com/abstract=3900527.

are voluntary litigation options, not procedures mandated by Congress. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36 (1998) (holding transferee court cannot assign a transferred case to itself for trial absent waiver of the right to remand). Nothing in the MDL statute or rules suggests its pre-trial coordination procedures preclude the normal operation of the Bankruptcy Code.

Here, the bankruptcy procedures offer an alternative means to efficiently resolve the Combat Arms mass tort. The Debtors anticipates a fully funded settlement trust backed by an uncapped funding commitment from the Debtors' parent company, 3M. This settlement trust would ensure sufficient resources to pay tort claimants with legitimate claims, and it would also provide mechanisms for determining the legitimacy of claims through claims estimation processes, for establishing the value of their claims, and for claimants to receive payment from the settlement trust. *See, e.g., In re Boy Scouts of Am. & Delaware BSA, LLC*, 642 B.R. 504,534–51 (Bankr. D. Del. 2022) (setting out the factual background of mediation and the development of trust distribution procedures).

The Debtors' reorganization thus will benefit tort claimants by allowing prompt and efficient recovery without the burdensome cost of litigation. Tort claimants will not need to potentially wait years for their claims to be remanded out of the Combat Arms MDL. The bankruptcy process will also make it easier for claimants to pursue claims that are difficult to prove in court or that have lower value. *See, e.g., Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 628–29 (1997) ("[A] nationwide administrative claims processing regime would provide

the most secure, fair, and efficient means of compensating victims of asbestos exposure."). And the elimination of meritless claims will ensure that recovery is available to those claimants with supportable claims.

### III. THE BANKRUPTCY COURT INCORRECTLY DECLINED TO STAY OR ENJOIN THE LITIGATION AGAINST THE DEBTORS' PARENT COMPANY 3M

The bankruptcy court's restrictive interpretation of its powers and its consequent refusal to stay or preliminary enjoin litigation against the Debtors' parent company 3M undermines the resolution of the mass tort hearing-injury claims. This Court should reject the flawed view that, to avail itself of the bankruptcy system, both the subsidiary and parent company must be liquidated or restructured. *Cf. In re LTL Management, LLC*, 637 B.R. 396, 423–24 (Bankr. D.N.J. 2022) (rejecting the "refrain" that if a parent company is to benefit from bankruptcy, "they should file their own chapter 11 cases"). Such a rule would not only increase the costs and inefficiencies of the bankruptcy proceeding, but it also would unnecessarily jeopardize companies that employ thousands, that provide products that improve the quality of life for customers, and in which numerous pension funds and other retirement vehicles own stock. Moreover, such a rule would have the practical effect of forcing businesses to litigate for years in MDLs, regardless of whether the MDL is capable of delivering results, only to limp eventually into bankruptcy when they no longer have available assets.

A legally viable alternative is to allow the subsidiary to enter bankruptcy, and to protect the reorganization through channeling provisions and injunctions

14

that require all related claims against both subsidiary and parent to be brought against the settlement trust. At the heart of this arrangement in this case is the funding agreement which "evidences an affirmative acceptance of financial responsibility and access to the value of the company . . . not a corporate effort to side-step accountability." *Abusing Chapter 11: Corporate Efforts to Side-Step Accountability Through Bankruptcy, Hearing Before the S. Comm. on the Judiciary, Sub. Comm. On Federal Court Oversight, Agency Action and Federal Rights*, 117th Cong. 2 (Feb. 28, 2022) (Testimony of Paul H Zumbro). These types of arrangements mitigate potentially crippling costs and financial drain associated with defending—over the next several decades—hundreds of thousands of hearing-injury related claims. It would also benefit the tort claimants by providing similar treatment for all claims—both present and future.

Decades ago, this Court queried "[c]ould it not be argued therefore that a bankruptcy court can and should use its equitable powers, which traditionally 'have been invoked to the end that substance will not give way to form, that technical considerations will not prevent substantial justice from being done,' especially, perhaps, in a reorganization case"? *Matter of UNR Indus., Inc.*, 725 F.2d 1111, 1119 (7th Cir. 1984) (cleaned up) (citing *Pepper v. Litton*, 308 U.S. 295, 305 (1939)). And although at that time the Court was unsure if it was "beyond the realistic boundaries of judicial competence" to effectively use bankruptcy procedures in the mass tort context, *id.* at 1120, the intervening years have put those concerns to rest. From the Johns-Manville bankruptcy involving asbestos litigation to the Dow Corning bankruptcy involving breast

implant litigation, and to many other mass tort bankruptcies, the judiciary has shown itself very capable of using bankruptcy procedures as a "fair and effective vehicle for dealing with mass tort liability." Alan N. Resnick, *Bankruptcy as a Vehicle for Resolving Enterprise-Threatening Mass Tort Liability*, 148 U. Pa. L. Rev. 2045, 2046–48 (2000) (listing successful mass tort bankruptcies).

Bankruptcy procedures are an especially appropriate and efficient vehicle to tackle mass tort litigation in the quintessential scenario that often triggers a bankruptcy filing: a race to the courthouse to collect on limited assets. *In re Johns-Manville Corp.*, 36 B.R. at 740 (finding that, but for bankruptcy, the debtor "would become a target for economic dismemberment, liquidation, and chaos, which would benefit no one except the few winners of the race to the courthouse"). That race to the courthouse is fully underway in this case, where over 260,000 claimants are all trying to collect from the Debtors. The appropriate use of the bankruptcy procedures brings order to these mass tort situations.

Several provisions of bankruptcy procedure uniquely empower bankruptcy courts to efficiently resolve mass tort liability. To start, the automatic stay provisions in 11 U.S.C. § 362(a)(1) and (3), protect both debtors and non-debtor third parties from collateral litigation that jeopardizes either the debtor or the property of the estate. *See*, *e.g.*, *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001–1003 (4th Cir. 1986). Section 362(a)(1) automatically stays related litigation "when there is such identity between the debtor and the third-party defendant." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991); *see also Fox Valley Construction Workers Fringe Benefit Funds v. Pride of the Fox*

16

*Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998) (§ 362(a)(1) applies when "the debtor and some third party have such a similarity of interests"). And § 362(a)(3) stays "any act to obtain possession of property of . . . or . . . from the estate or to exercise control over property of the estate." And because property of the estate includes insurance policies, a related action that "may diminish this 'important asset' is unquestionably subject to a stay" under § 362(a)(3). *See A.H. Robins Co.,* 788 F.2d at 1001 (quoting *In re Johns Manville Corp.*, 33 B.R. 254, 261 (Bankr. S.D.N.Y. 1983)).

Similarly, § 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process or judgment that is necessary or appropriate to" sustain a reorganization. And the bankruptcy court has the power to issue preliminary injunctions in adversary proceedings over which it has jurisdiction. *See* Fed. R. Bankr. Pro. 70001 and 7065. These provisions "grant[] the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties." *In re Caesars Entm't. Operating Co.*, 808 F.3d 1186, 1188 (7th Cir. 2015). Those equitable powers include the ability to enjoin related litigation against both debtor and non-debtor that threaten the bankruptcy proceedings. *See Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994) ("[S]uits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate . . . . can then be stayed by authority of section 105.").

Here, where the Debtors and their parent company face unprecedented litigation from the hearing-injury mass tort, the circumstances readily warrant

17

staying or enjoining the related litigation. An essential component of the Debtors' reorganization efforts is the funding and indemnification agreement with the non-debtor parent company. This agreement gives the Debtors a significant asset that will support a proposed plan of reorganization that channels the claims to a trust able to provide recoveries to both current and future tort claimants.

But if hearing-injury litigation against the parent company continues during the pendency of the chapter 11 proceedings, that will inevitably hinder any reorganization effort and adversely affect estate assets. To start, there is sufficient identify of interests between the Debtors and their parent company because litigation against the parent company will deplete the bankruptcy estate and dilute the claims pool due to the Debtors' contractual obligation to indemnify the parent company. Moreover, continuation of hundreds of thousands of hearing-injury claims against the parent company could also deteriorate the value of the Debtors' insurance assets, which are estate property.

In these circumstances, the provisions of § 362(a) and (3) automatically stay the related hearing-injury litigation that impairs the Debtors' ability to reorganize. For similar reasons, an injunction is appropriate to prevent litigation against the non-debtor parent from practically interfering with the Debtors' reorganization efforts. *See*, *e.g.*, *Kreisler v. Goldberg*, 478 F.3d 209, 215 (4th Cir. 2007) (explaining that § 105(a) permits injunctive relief to prevent "detrimental pressure on the[] reorganization effort"); *Caesars Entm't*, 808 F.3d at 1188–89 (observing that because "its denial will thus endanger the success of the bankruptcy proceeding," the grant of the injunction is "appropriate"). Indeed, as

18

this Court has previously noted, "the Supreme Court's most recent engagement with the related-to jurisdiction favorably quoted a rule, which it attributed to nine courts of appeals, that a matter comes within the related-to jurisdiction if it 'could conceivably have any effect on the estate being administered in bankruptcy.'" *Bush v. United States*, 939 F.3d 839, 846 (7th Cir. 2019) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6, (1995).

In refusing to use the tools at its disposal, the bankruptcy court failed to give the Debtors the opportunity to pursue a fair and efficient resolution to the hearing-injury mass tort. This Court should correct that error by finding that the bankruptcy court may stay or enjoin related litigation against the non-debtor parent company to permit pursuit of the goals of Chapter 11 of the Bankruptcy Code. This good faith use of bankruptcy is fully consistent with the history of the Bankruptcy Code.

## <u>CONCLUSION</u>

*Amici* respectfully request this Court reverse the bankruptcy court's order denying a stay and preliminary injunction.

January 3, 2023

Janet Galeria
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, D.C. 20062

Respectfully submitted,

/s/ Ilana H. Eisenstein
Ilana H. Eisenstein
  *Counsel of Record*
DLA PIPER LLP (US)
1650 Market St., Suite 5000
Philadelphia, PA 19103
(215) 656-3351
ilana.eisenstein@us.dlapiper.com

H. Sherman Joyce
Lauren Sheets Jarrell
AMERICAN TORT REFORM ASSOCIATION
1101 Connecticut Ave NW, Suite 400
Washington, D.C. 20036

R. Craig Martin
DLA PIPER LLP (US)
N. Market St., Suite 2100
Wilmington, DE 19801

Richard A. Chesley
DLA PIPER LLP (US)
203 North LaSalle Street,1201
Suite 1900
Chicago, IL 60601

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS</u>

1.      This *amici curiae* brief complies with the type-volume limit of Fed. R. App. P. 32, as modified by 7th Cir. Rule 29 because, excluding the parts exempted by Fed. R. App. P. 32(f), the brief contains 4,899 words.

2.      This *amici curiae* brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as modified by 7th Cir. Rule 32(b), and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief uses a proportionally spaced 12-point Bookman Old Style font, according to the Microsoft Word software application used to prepare it.

<u>/s/ Ilana H. Eisenstein</u>
Ilana H. Eisenstein

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Ilana H. Eisenstein</u>
Ilana H. Eisenstein