## No. 22-2606

# In the
# United States Court of Appeals
## for the Seventh Circuit

---

IN RE: AEARO TECHNOLOGIES LLC, et al.,

*Debtors-Appellants.*

---

AEARO TECHNOLOGIES LLC, AEARO HOLDING LLC, AEARO INTERMEDIATE LLC, AEARO, LLC and 3M OCCUPATIONAL SAFETY LLC,

*Appellants,*

v.

THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT and JOHN & JANE DOES, 1-1000,

*Appellees.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division, No. 0756-1:22-50059.
The Honorable **Jeffrey J. Graham**, Judge Presiding.

## BRIEF OF APPELLEES BELLWETHER PLAINTIFFS

Adam Wolfson (*pro hac vice*)
Eric D. Winston (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street
10th Floor
Los Angeles, CA 90017
(213) 443-3000

Patricia B. Tomasco
(*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
711 Louisiana
Suite 500
Houston, TX 77002
(713) 221-7000

Andrew Schapiro
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
191 North Wacker Drive
Suite 2700
Chicago, Illinois 60606
(312) 705-7400

*Counsel for Appellees*

---


COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER


Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2606

Short Caption: Aearo Technologies, LLC v. Those Parties Listed on Appendix A to the Complaint

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    **Amended** Bellwether Plaintiffs Adkins, Wilkerson, and Vaughn and several thousand additional plaintiffs

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Quinn Emanuel Urquhart & Sullivan, LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: Andrew H. Schapiro    Date: January 25, 2023

Attorney's Printed Name:  Andrew H. Schapiro

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address:  191 N. Wacker Drive, Suite 2700

    Chicago, IL 60606

Phone Number: 312-705-7400    Fax Number:

E-Mail Address: andrewschapiro@quinnemanuel.com

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2606

Short Caption: Aearo Technologies, LLC v. Those Parties Listed on Appendix A to the Complaint

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Bellwether Plaintiffs Adkins, Wilkerson, and Vaughn and several thousand additional plaintiffs

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Quinn Emanuel Urquhart & Sullivan, LLP

(3) If the party, amicus or intervenor is a corporation:

 i) Identify all its parent corporations, if any; and

 N/A

 ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

 N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: Patricia B. Tomasco     Date: January 25, 2023

Attorney's Printed Name: Patricia B. Tomasco

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☐  No ☑

Address: 711 Louisiana Suite 500

 Houston, TX 77002

Phone Number: 713-221-7000     Fax Number:

E-Mail Address: pattytomasco@quinnemanuel.com

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _22-2606_

Short Caption: _Aearo Technologies, LLC v. Those Parties Listed on Appendix A to the Complaint_

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
_Bellwether Plaintiffs Adkins, Wilkerson, and Vaughn and several thousand additional plaintiffs_

_____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
_Quinn Emanuel Urquhart & Sullivan, LLP_

_____

(3)   If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

         _N/A_

    ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         _N/A_

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   _N/A_

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   _N/A_

Attorney's Signature: _Eric D. Winston_      Date: _January 25, 2023_

Attorney's Printed Name: _Eric D. Winston_

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: _865 South Figueroa Street, 10th Floor_

       _Los Angeles, CA 90017_

Phone Number: _213-443-3000_      Fax Number: _____

E-Mail Address: _adamwolfson@quinnemanuel.com_

rev. 12/19 AK

| Save As | Clear Form |
|---|---|

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2606

Short Caption: Aearo Technologies, LLC v. Those Parties Listed on Appendix A to the Complaint

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Bellwether Plaintiffs Adkins, Wilkerson, and Vaughn and several thousand additional plaintiffs

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Quinn Emanuel Urquhart & Sullivan, LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: Adam Wolfson    Date: January 25, 2023

Attorney's Printed Name: Adam Wolfson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 865 South Figueroa Street, 10th Floor

Los Angeles, CA 90017

Phone Number: 213-443-3000    Fax Number:

E-Mail Address: adamwolfson@quinnemanuel.com

rev. 12/19 AK

## <u>TABLE OF CONTENTS</u>

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS.................................... i

TABLE OF AUTHORITIES ................................................................. viii

JURISDICTIONAL STATEMENT ....................................................... 1

INTRODUCTION ................................................................................ 1

STATEMENT OF ISSUES ................................................................... 4

STATEMENT OF THE CASE............................................................... 4

A.    The Parties To This Appeal And 3M .................................... 4

B.    Aearo Knowingly Sells The Defective CAEv2 Earplug To The U.S. Military................................................................................ 4

C.    3M Acquires Aearo In 2008, "Upstreams" The Business In 2010, And Continues To Sell CAEv2 Earplugs To The Military Until Its Competitor, Moldex, Discovers The Fraud ................... 5

D.    CAEv2 Earplug Litigation And The MDL ............................ 6

    1.    The Earplugs Litigation Begins With A *Qui Tam* Action Relating To 3M's Misconduct ......................... 6

    2.    Military Servicemembers Sue 3M And Aearo, And The Cases Are Consolidated Into The MDL ................... 7

    3.    3M Pays All MDL Fees And Costs, And Posts All Bonds On Appeal ................................................... 8

E.    3M Implements "Project Crane" To Manage Its MDL Liability Risk Through An Aearo Chapter 11 Bankruptcy Filing ......... 9

F.    With The 3M Board's Blessing, 3M And Aearo Enter Into The Funding Agreement ............................................................. 10

    1.    Aearo Agrees To Indemnify 3M For All CAEv2 Liabilities—But 3M Must Fund The Indemnity................. 10

    2.    3M Agrees In The Funding Agreement To Fund All Of Aearo's Possible Liabilities ........................................ 10

    3.    3M's Funding Obligations Are Non-Recourse And Not Conditioned On Any Imposition Of A Stay Against 3M In The MDL, Minnesota, Or Anywhere Else......................... 11

G.    Aearo Files For Bankruptcy, Premised On The Argument That The MDL Is "Broken," And Immediately Seeks To Enjoin Litigation Against 3M ........ 12

    1.    The Evidence Before The Bankruptcy Court ....................................... 12

        (a)    3M, not Aearo, handled all aspects of its "shared" insurance ... 13

        (b)    3M can pay all of the Aearo Entities' liabilities ........................ 15

        (c)    The CAEv2 earplugs litigation never impacted Aearo's business in any way ................................................................................ 15

H.    After Assessing The Evidence, The Bankruptcy Court Denies The Request For A Stay Or Injunction ............................................................... 16

I.    Subsequent Events ...................................................................................... 18

    1.    Aearo's Financial And Operational Performance Has Been Completely Unaffected By The Denial Of The Injunction Request ........................ 19

    2.    The MDL Court Bars 3M From Disputing Its Full And Independent Liability For CAEv2-Related Claims .................................................... 19

SUMMARY OF THE ARGUMENT ...................................................................... 20

ARGUMENT .......................................................................................................... 23

I.    Standard of Review ..................................................................................... 23

II.    Appellants' Arguments Fail Due To Lack Of Evidence—Not The Application Of A Particular Legal Standard ................................................ 23

III.    Bankruptcy Code Section 362(a) Does Not Support The Appellants' Claim Of Error ............................................................................................ 26

A.    Section 362(a)(1): The Bankruptcy Court Correctly Declined To Extend The Automatic Stay To Nondebtor 3M .................................... 26

    1.    This Appeal Presents No Basis To Adopt Or Apply *A.H. Robins'* Atextual "Unusual Circumstances" Standard ............................ 26

    2.    Even If This Court Considers Section 362(a)(1) A Legal Basis To Enjoin, 3M's Direct Liability Requires Affirmance .............. 27

B.    Section 362(a)(3): The Bankruptcy Court Correctly Found That Property Of The Estate Is Not And Cannot Be Threatened By Continued Litigation Against Nondebtor 3M ...................................... 28

IV.    The Bankruptcy Court Did Not Abuse Its Discretion By Denying Injunctive Relief .......................................................................................... 30

A.  The Bankruptcy Court Correctly Found That The Facts Fail To Support "Related To" Jurisdiction ...................................................... 30

B.  The Bankruptcy Court Correctly Rejected Aearo's "Distraction" Argument ................................................................................... 31

C.  The Bankruptcy Court Correctly Ruled In The Alternative That Aearo Failed To Establish The Need For Injunctive Relief .................. 34

D.  Section 105(a)'s Balance Of Equities, Public Interest, And Abuse-of-Process Factors Independently Warrant Affirmance .......................... 34

CONCLUSION ................................................................................... 36

## TABLE OF AUTHORITIES

*AP Siding & Roofing Co. v. Bank of New York Mellon*,
    548 B.R. 473 (N.D. Ill. 2016) ................................................. 35

*Arora v. Diversified Consultants, Inc.*,
    No. 20 C 4113, 2021 WL 2399978 (N.D. Ill. June 11, 2021) ................................ 26

*Edelson PC v. Girardi*,
    No. 20 C 7115, 2021 WL 3033616 (N.D. Ill. July 19, 2021) ................................ 25

*Ford for Est. of Srmack-Brinkman v. Hall*,
    No. 1:08-cv-1451-LJM-DKL, 2012 WL 13026886 (S.D. Ind. Apr. 17, 2012) ......... 26

*Fox Valley Const. Workers Fringe Ben. Funds v. Pride of Fox Masonry & Expert Restorations*,
    140 F.3d 661 (7th Cir. 1998) ........................................... 25, 27

*Harley-Davidson Credit Corp. v. JHD Holdings Inc.*,
    No. 19-CV-155, 2020 WL 7078828 (W.D. Wis. Dec. 3, 2020) ................................ 25

*Home Ins. Co. v. Cooper & Cooper, Ltd.*,
    889 F.2d 746 (7th Cir. 1989) ........................................... 29, 31

*In re A.H. Robins Co., Inc.*,
    788 F.2d 994 (4th Cir. 1986) ............................................. *passim*

*In re Aearo Techs., LLC*,
    642 B.R. 891 (Bankr. S.D. Ind. Aug. 26, 2022) .................................... 20

*In re Caesars Ent. Operating Co., Inc.*,
    540 B.R. 637 (Bankr. N.D. Ill. 2015) .................................... 25

*In re Calpine Corp.*,
    365 B.R. 401 (S.D.N.Y. 2007) .............................................. 33

*In re Coastal Cable TV, Inc.*,
    709 F.2d 762 (1st Cir. 1983) .............................................. 35

*In re Colonial Realty Co.*,
    980 F.2d 125 (2d Cir. 1992) ........................................... 27, 28

*In re Cox*,
    175 B.R. 266 (Bankr. C.D. Ill. 1994) .................................... 35

*In re Dye*,
    360 F.3d 744 (7th Cir. 2004) .............................................. 34

*In re Edgeworth*,
    993 F.2d 51 (5th Cir. 1993) ............................................... 29

*In re Excel Innovations, Inc.*,
 502 F.3d 1086 (9th Cir. 2007) ............................................................ 23

*In re Gathering Rest., Inc.*,
 79 B.R. 992 (Bankr. N.D. Ind. 1986) ................................................ 34

*In re LTL Mgmt. LLC*,
 638 B.R. 291 (Bankr. N.J. 2022) ........................................................ 26

*In re Marcus-Rehtmeyer*,
 784 F.3d 430 (7th Cir. 2015) .............................................................. 23

*In re MCSi, Inc.*,
 371 B.R. 270 (S.D. Ohio 2004) ........................................................... 33

*In re Mem'l Ests., Inc.*,
 950 F.2d 1364 (7th Cir. 1991) ............................................................ 30

*In re S. Beach Sec., Inc.*,
 606 F.3d 366 (7th Cir. 2010) ........................................................ 35, 36

*In re Stinnett*,
 465 F.3d 309 (7th Cir. 2006) ........................................................ 29, 30

*In re Thomas*,
 204 F.2d 788 (7th Cir. 1953) .............................................................. 35

*In re Xonics, Inc.*,
 83 F.2d 127 (7th Cir. 1987) ................................................................ 30

*In re Westlake Prop. Holdings, LLC*,
 606 B.R. 772 (Bankr. N.D. Ill. 2019) ................................................ 26

*Marrama v. Citizens Bank of Massachusetts*,
 549 U.S. 365 (2007) ...................................................................... 35-36

*Matter of Fernstrom Storage & Van Co.*,
 938 F.2d 731 (7th Cir. 1991) ....................................................*passim*

*Minnesota Mining & Mfg. Co. v. Pribyl*,
 259 F.3d 587 (7th Cir. 2001) .............................................................. 23

*Picard v. Fairfield Greenwich Ltd.*,
 762 F.3d 199 (2d Cir. 2014) ............................................................... 28

*Pitts v. Unarco Indus., Inc.*,
 698 F.2d 313 (7th Cir. 1983) .............................................................. 26

*Shapiro v. Wilgus*,
 287 U.S. 348 (1932) ........................................................................... 36

*Zedan v. Habash,*
   529 F.3d 398 (7th Cir. 2008) ................................................................. 34

**Statutes**

Bankruptcy Code § 105................................................................... 23, 26, 36

Bankruptcy Code § 105(a) ....................................................................*passim*

Bankruptcy Code § 362................................................................................. 26

Bankruptcy Code § 362(a) ............................................................. 23, 25, 26

Bankruptcy Code § 362(a)(1) ...............................................................*passim*

Bankruptcy Code § 362(a)(3) ...............................................................*passim*

## JURISDICTIONAL STATEMENT

The jurisdictional statement of the appellant is complete and correct.

## INTRODUCTION

This is a straightforward case, despite Appellants' efforts to turn it into something complex. The bankruptcy court held a three-day evidentiary hearing and made a factual determination that litigation against the nondebtor, 3M Company, poses no risk to Debtor Aearo's bankruptcy estates. That factual finding was amply supported by the evidence, and certainly did not constitute clear error. The district court overseeing the underlying MDL independently reached the same conclusion and ruled that 3M (Aearo's parent company) is solely, directly, and independently responsible for the Appellees' claims. As the district court overseeing the MDL also found, the eve-of-bankruptcy effort to force Aearo to indemnify 3M for such liabilities fails to create any identity of interests.

That simple fact—that litigation against 3M will not jeopardize Aearo in any way—is the unassailable foundation for the bankruptcy court's sound ruling. Accordingly, there is no reason for this Court to accept Appellants' invitation to wade into any debate about the appropriate standard for third-party injunctions or stays of litigation under sections 105(a), 362(a)(1) and 362(a)(3) of the Bankruptcy Code. That standard has no consequence here: whatever it might be, Appellants' evidence below failed to meet it.

The bankruptcy court's findings that Aearo's bankruptcy estates and their creditors will suffer no harm even though litigation proceeds against 3M rest on firm

evidentiary grounds. 3M, a Fortune 100 company and a nondebtor in bankruptcy, entered an agreement with Aearo promising to provide *uncapped* funding to cover *all* of Aearo's liabilities. Though Aearo purported to "indemnify" 3M in return for 3M indemnifying them, that promise costs Aearo precisely nothing to keep. Under the express terms of the agreement, 3M *itself* must fund Aearo's indemnity obligations back to 3M, round-tripping the money from 3M to Aearo right back to 3M. The assets of the estates are entirely unaffected. 3M's obligations to Aearo are unconditional: the uncapped funding does not turn on whether litigation against 3M is stayed, the outcome of that litigation, or the performance of Aearo's or 3M's core operations.

Even aside from the Funding Agreement's assurances that the Aearo estates cannot be harmed, Aearo has at all times been operationally profitable, with no employees involved in the MDL litigation, and 3M paying for all litigation costs. As one 3M employee testified, it was as if Aearo did not even exist for purposes of the MDL.

So one might ask why 3M caused its wholly-owned subsidiaries to file for bankruptcy protection and immediately seek to enjoin litigation against 3M, a nondebtor. The answer is clear. As both the bankruptcy court and the district judge overseeing the MDL recognized, 3M and Aearo are not actually concerned about restructuring Aearo or an equal-treatment of creditor problem, but instead are hoping to use the Bankruptcy Code to gain leverage and change forums after the years-old MDL resulted in verdicts 3M did not like.

In their Informational Brief filed concurrently with the injunction motion, and in nearly all other pleadings, Aearo excoriated the MDL and the MDL judge, dedicating pages of briefing to complaining about the MDL judge's rulings. Bk.12 at 20–52.[1] As Appellants, Aearo now omits this cringe-worthy attack. Nonetheless, the Informational Brief reveals much about Aearo's (and 3M's) motives: forum shopping and derailing an MDL that is not playing out as they hoped it would. In their submission here, Appellants try to extend this strategy by seeking to use the Bankruptcy Code to halt litigation against a nondebtor despite the absence of any evidence that such litigation would adversely impact the Debtors. Unsurprisingly, neither the Bankruptcy Code nor the decisions of this Court countenance such a gambit. The decision below should be affirmed.

---

[1] "Bk.[Dkt.#] at __" refers to the docket of the Bankruptcy Court of the Southern District of Indiana, No. 1:22-bk-02890; "Bk.Adv.[Dkt.#] at __" refers to the docket of the related adversary proceeding, No. 1:22-ap-50059; "MDL.[Dkt.#] at __" refers to the docket of the MDL case in the Northern District of Florida, No. 3:19-md-02885-MCR-GRJ; "JPML.[Dkt#] at __" refers to Case MDL No. 2885 before the Judicial Panel on Multidistrict Litigation; "SA" refers to Appellants' short appendix; "A" refers to Appellants' separate appendix; "Br." refers to the Opening Brief for Debtors-Appellants (Dkt. 31); "CA" refers to the Committee's Supplemental Appendix.

## STATEMENT OF ISSUES

Whether the bankruptcy court committed clear error finding, after an evidentiary hearing, that litigation against nondebtor 3M Company would have no material adverse effect on the Debtors' estates or their creditors.

## STATEMENT OF THE CASE

### A.    The Parties To This Appeal And 3M

The Appellees are hundreds of thousands of current and former members of the United States armed forces, many of whom served in combat in Iraq and Afghanistan, who claim that the Combat Arms Earplug Version 2 (the "CAEv2") caused each of them physical injury. Beginning in late 2018, they began bringing claims against 3M and, in many instances, Aearo, seeking compensation for the harms caused by the defective CAEv2 earplug, after a *qui tam* settlement between 3M and the government regarding the CAEv2 brought the defects to light. Bk.Adv.143 at 5; SA.5.

3M, a Fortune 100 company, wholly owns, and is the ultimate parent of, each of the Aearo Entities. Even though it caused its subsidiaries to file for bankruptcy and desired the benefit of a stay of litigation against it, 3M itself did not file for bankruptcy.

### B.    Aearo Knowingly Sells The Defective CAEv2 Earplug To The U.S. Military

One of the products Aearo developed and manufactured was the CAEv2. It was marketed as a means of protecting the hearing of military personnel, who are regularly exposed to dangerous levels of noise in training and combat. But as a July

2000 internal Aearo report known as the Flange Report forthrightly documented, the CAEv2 suffered from significant defects that rendered them largely ineffective. A.116–29 ¶¶ 67–99. Despite knowledge of this flaw, which put the hearing of hundreds of thousands of service members at risk, Aearo continued to sell the product. A.152 ¶ 141.

**C.**     **3M Acquires Aearo In 2008, "Upstreams" The Business In 2010, And Continues To Sell CAEv2 Earplugs To The Military Until Its Competitor, Moldex, Discovers The Fraud**

3M purchased the stock of the Aearo Entities on April 1, 2008. Bk.Adv.128 at 65:8–10. Following the 2008 acquisition, 3M and the Aearo Entities entered into a Shared Services Agreement (the "Shared Services Agreement"), Bk.Adv.143 at 4–5; SA.4–5, by which 3M took control of essentially all functions of Aearo's hearing protection business, as well as "back-office" functions such as finance, accounting, treasury, insurance, human resources, procurement, IT, and legal. Bk.Adv.128 at 67:21–69:1. The payment obligations under the Shared Services Agreement do not change depending on how much 3M incurs in litigation defense costs for itself and for Aearo. Bk.Adv.128 at 157:10–12. 3M has never charged Aearo under the Shared Services Agreement through the entirety of the MDL that 3M directed Aearo to seek to stay via the bankruptcy process. Bk.Adv.128 at 159:11–16.

In 2010, 3M caused Aearo to "upstream" its CAEv2 Earplug business, in addition to other assets, to 3M (the "Upstream"). Bk.Adv.128 at 74:21–75:22, 173:6–12. All CAEv2 business personnel became 3M employees, Bk.Adv.136 at 147:2–7, and those who ran the business did not know that Aearo even continued to exist after that

process, Bk.Adv.136 at 118:15–119:8, 125:23–126:2. The Upstream generated a receivable on Aearo's books of approximately $965 million, which has never been paid. Bk.Adv.143 at 4; SA.4.

After the 2010 Upstream, 3M continued to make, market, and sell CAEv2 earplugs to the military. Bk.Adv.136 at 136:4–7, 139:20–140:5, 140:14–17, 146:15–21, 146:7–14. 3M stopped doing so only after a litigation opponent, Moldex, introduced at deposition reports from 3M's internal files indicating that former Aearo (and now-3M) employees fraudulently altered labeling test results for the product. Bk.Adv.136 at 152:8–155:6.

## D.     CAEv2 Earplug Litigation And The MDL

### 1.     The Earplugs Litigation Begins With A *Qui Tam* Action Relating To 3M's Misconduct

Shortly after 3M stopped selling the CAEv2 earplugs in 2015 in response to the discovery of its fraud, Moldex filed a *qui tam* action, *United States ex rel. Moldex-Metric, Inc. v. 3M Company*, No. 3:16-1533 (D.S.C. May 12, 2016), alleging that 3M defrauded the government by misrepresenting the CAEv2's safety metrics.

The United States intervened, and the parties subsequently settled the case on July 25, 2018 (the "Qui Tam Settlement"). *United States ex rel. Moldex-Metric v. 3M Company*, No. 3:16-1533, ECF No. 23 (D.S.C. July 25, 2018). Aearo did not pay or account for any portion of the Qui Tam Settlement. Bk.Adv.128 at 177:5–8; Bk.Adv.137 at 55:3–7. Rather, 3M paid the entire Qui Tam Settlement amount. Bk.Adv.128 at 177:5–8; Bk.Adv.137 at 55:3–7.

2.   <u>Military Servicemembers Sue 3M And Aearo, And The Cases Are
Consolidated Into The MDL</u>

When the Qui Tam Settlement brought the evidence to light, servicemembers
who had suffered hearing loss or tinnitus after using the defective earplugs filed
lawsuits seeking recovery for their injuries. Those lawsuits always named 3M, and
also often named the Aearo Entities.

At 3M's urging, the United States Judicial Panel on Multidistrict Litigation
consolidated all CAEv2 earplug-related lawsuits before Judge M. Casey Rodgers of
the United States District Court for the Northern District of Florida (the "MDL
Court"), Case No. 3:19-MD-2885. Bk.Adv.122 ¶ 1; A.90 ¶ 1.[2] 3M "support[ed]
centralization of the more than two hundred Combat Arms Earplug actions that have
been filed against it [], and the 'thousands' of additional similar cases plaintiffs'
counsel have stated they intend to file in the future," because, it said, multidistrict
litigation serves to coordinate "civil actions involving one or more common questions
of fact" and "promote the just and efficient conduct of such actions." JPML.98 at 1, 5–
6.

Starting in 2019, the MDL Court oversaw what has now become the largest
MDL in U.S. history. In that role, the MDL Court presided over extensive discovery
that spanned multiple years, decided hundreds of motions, including dozens of

---

[2]   In addition, nearly 2,000 cases have been filed in state court in Minnesota against
3M and Aearo related to CAEv2 Earplugs by consumers and government
contractors. Those cases have been consolidated before a single judge in the
District Court of Hennepin County (the "Minnesota Litigation"). A.149 ¶ 134.

*Daubert* and summary judgment motions each, and conducted or coordinated with other judges in the Northern District of Florida, to conduct 16 bellwether trials with 19 separate verdicts (because two bellwether trials consolidated multiple plaintiffs' claims). MDL.3610 at 6–7.

The net result of the bellwether process was 13 verdicts in plaintiffs' favor. MDL.3610 at 7. In each case, 3M listed itself as a potentially fully-liable party and never sought to apportion liability between itself and its Aearo subsidiaries. MDL.3386 at 4. In order to reduce the damages it would have to pay, 3M also successfully argued in post-trial briefing that any supposed differences between it and Aearo were "illusory" and that they were, in fact, one single defendant. MDL.3610 at 14–15.

### 3.     3M Pays All MDL Fees And Costs, And Posts All Bonds On Appeal

3M incurred approximately $347 million in fees and expenses defending the MDL litigation, but did not charge Aearo any of those costs (and Aearo itself has paid nothing). Bk.Adv.128 at 155:12–20; Bk.Adv.136 at 186:17–187:4. In fact, 3M has attempted to collect for itself (not Aearo) MDL litigation expenses under insurance policies issued to Aearo. Bk.Adv.128 at 247:25–248:20; CA.361.

3M could not identify "any intercompany charge whereby 3M Company has debited to any of the Aearo Entities a single penny of the $347 million spent defending CAEv2 litigation." Bk.Adv.136 at 187:5–22. Nor did 3M chargeback Aearo for any tort liability after 2010. Bk.Adv.128 at 214:1–10. 3M, not Aearo, posted every appeal bond in the few appeals pending in the MDL. Bk.Adv.136 at 187:23–188:1. And 3M never

sought reimbursement for the costs of these surety bonds from Aearo. Bk.Adv.136 at 188:4–6.

**E.    3M Implements "Project Crane" To Manage Its MDL Liability Risk Through An Aearo Chapter 11 Bankruptcy Filing**

In March 2022, 3M's General Counsel, Kevin Rhodes, assembled a team of 3M executives (but no Aearo executives) to work on "Project Crane," which was intended to explore "strategic alternatives to managing 3M's litigation." Bk.Adv.136 at 179:15–181:17, 185:4–11; CA.519. No director, officer, or employee of any of the Aearo Entities was assigned to or participated in the Project Crane team. Bk.Adv.136 at 180:12–14.

By March 2022, the majority of the MDL bellwether trials were completed and the MDL Court began issuing "wave orders" to prepare cases for remand to their original district courts. Bk.Adv.136 at 181:19–24. 3M faced mounting defense costs and the risk that the large judgments issued against it would increase, because the MDL was near its end.

Over the next several months, 3M's General Counsel and its outside advisors provided periodic updates to 3M's Board of Directors ("3M's Board") about the CAEv2 litigation and the progress of the Project Crane initiative. Bk.Adv.136 at 180:12–181:8; CA.504–05, 510, 519–20, 531. On July 22, 2022, 3M's Board received "an update on MDL court-order mediation and settlement discussions." Bk.Adv.136 at 184:3–17. The next day, 3M's Board received a presentation on "potential subsidiary chapter 11 proceedings," a "potential funding and indemnification agreement," and the sufficiency of "$1 billion in trust funding." Bk.Adv.136 at 185:12–16; CA.520.

9

**F.    With The 3M Board's Blessing, 3M And Aearo Enter Into The Funding Agreement**

Two days after the July 23, 2022, 3M Board meeting, the Aearo Entities and 3M entered into what has become known as "the Funding Agreement." Bk.Adv.143 at 9; SA.9; *see also* A.275. Michael Dai signed for 3M, and Jeffrey Stein, an "independent director" selected by 3M's counsel, signed for Aearo. A.295–97. The first draft of the Funding Agreement pre-dated the appointment of the "independent director," Bk.Adv.128 at 148:10–17; CA.370, and underwent revisions over the next several weeks.

1.    Aearo Agrees To Indemnify 3M For All CAEv2 Liabilities—But 3M Must Fund The Indemnity

The Funding Agreement obligates Aearo to indemnify 3M for all CAEv2 liabilities, whether or not those liabilities related to Aearo's conduct. Br.12.  But the indemnity obligation's "net effect to Aearo is zero" because § 2(d) of the Funding Agreement Aearo can  indemnify 3M "by asking 3M for the money to do so." Bk.Adv.143 at 10; SA.10. The obligation is, as two federal courts have now held, entirely illusory. Bk.Adv.143 at 10 n.5; SA.10 n.5; MDL.3610 at 8 n.9. "In essence, Aearo is able to ask 3M for the funds required to pay Aearo's indemnity obligation to . . . 3M. This does seem to be a circular arrangement as the Objecting Parties argue." Bk.Adv.143 at 31; SA.31.

2.    3M Agrees In The Funding Agreement To Fund All Of Aearo's Possible Liabilities

3M agreed in the Funding Agreement to provide *uncapped* funding, to pay all of Aearo's liabilities whenever Aearo's assets or income are, or are projected to be,

insufficient—and whether based on CAEv2-related liability or not. A.281–82, 284–85 (defining "Permitted Funding"). This uncapped funding exists whether Aearo is in bankruptcy or outside of bankruptcy.

The Funding Agreement's definition of "Commitment" states that "the Commitment does not serve as a cap on [3M's] funding obligations or otherwise limit [3M's] Payments under the terms of this Agreement." A.278. Both signatories to the Funding Agreement confirmed under oath that 3M's "uncapped" obligation to pay all liabilities includes CAEv2 claims. Bk.Adv.136 at 171:5–19, 173:19–174:4 (Mr. Dai); Bk.Adv.136 at 270:13–271:4, Bk.Adv.137 at 51:7–12 (Mr. Stein).

3.   3M's Funding Obligations Are Non-Recourse And Not Conditioned On Any Imposition Of A Stay Against 3M In The MDL, Minnesota, Or Anywhere Else

3M is obligated to fund all of Aearo's liabilities, but 3M has no recourse against Aearo for funding it provides to Aearo in order for Aearo to pay indemnity owed to 3M. A.285 ("No Requirement of Repayment" at § 2(d)).[3] Although Appellants suggest that there is a "priority" or "hierarchy" of assets that must be used before 3M's funding obligation arises, Br.66–67, the plain terms of the Funding Agreement impose no particular sequence in which assets must be utilized before Aearo can request funding from 3M.  3M must fund projected shortfalls even before Aearo has utilized all of its assets. Bk.Adv.143 at 31.

_____

[3]   The conditions to funding are set forth in the proviso in Section 2(b). A.284. These conditions were heavily negotiated. Bk.Adv.136 at 174:14–175:2.

Nor are 3M's obligations under the Funding Agreement conditioned on Aearo seeking bankruptcy protection, or a stay of litigation against 3M. Bk.Adv.143 at 11; SA.11; A.285 ("Conditions to Payments" at § 2(e)); Bk.Adv.136 at 174:10–13, 227:19–228:11. The Funding Agreement protects Aearo fully in the absence of a stay of litigation against 3M.

**G. Aearo Files For Bankruptcy, Premised On The Argument That The MDL Is "Broken," And Immediately Seeks To Enjoin Litigation Against 3M**

One day after entering the Funding Agreement, Aearo filed for bankruptcy. Simultaneously, it filed an adversary proceeding seeking to enjoin the MDL and the Minnesota Action against 3M.

In its first "informational brief" filed on the day it sought bankruptcy protection, Aearo harshly criticized the MDL process and the MDL judge in an effort to justify the purported need for bankruptcy protection and a stay of litigation against 3M, even though 3M itself was not seeking bankruptcy protection. Bk.12 at 57.

The bankruptcy court then conducted a three-day evidentiary hearing from August 15–17, 2022, to decide the preliminary injunction request.

1.  <u>The Evidence Before The Bankruptcy Court</u>

At the evidentiary hearing, seven witnesses testified: John Castellano (Aearo's Chief Restructuring Officer),[4] Christopher Sullivan (3M's insurance manager), Brian

---

[4]  Mr. Castellano was appointed as the Chief Restructuring Officer just days before the bankruptcy filings; prior to that appointment, he was a financial advisor to both 3M and Aearo. Bk.11 ¶¶ 2, 4.

Myers (3M officer, but formerly an Aearo employee), Jeffrey Stein ("independent" director), Michael Dai (3M officer), and Dr. J.B. Heaton (expert). Mr. Dai testified in his capacity as a corporate representative of 3M, but was called as an adverse witness in support of the Joint Claimant Objection. Dr. Heaton testified as an expert witness in support of one of the objecting parties. All other witnesses testified for Aearo in support of the Injunction Motion. No Aearo employee testified in support of the injunction.

In addition to this testimony, the bankruptcy court admitted into evidence numerous exhibits, took judicial notice of various filings in the MDL, and accepted stipulated facts. *See generally* Bk.Adv. 128, 136, 137. Beyond the evidence that came in regarding the Funding Agreement, the evidentiary hearing yielded additional evidence discussed below.

(a)     3M, not Aearo, handled all aspects of its "shared" insurance

3M manages two insurance programs covering the CAEv2 Earplug claims: (i) the 3M Tower Program and (ii) the Aearo Legacy Program. Bk.Adv.128 at 254:2–6; CA.364–69.

The available insurance coverage under the 3M Tower is $1.05 billion, and it covers claims made against 3M and its subsidiaries, both domestic and foreign, during the applicable policy period of March 1, 2018, to March 1, 2019. Bk.Adv.128 at 220:24–221:16, 222:10–223:8, 255:7–8, 256:19–25, 266:1; CA.248; CA.367. 3M pays the premiums related to, and is the primary insured under the 3M Tower. Bk.Adv.128 at 220:24–221:16, 222:10–223:8, 255:7–8, 256:19–24; CA.248.  Mr. Sullivan confirmed

that the only claims pending against the 3M Tower are the CAEv2 claims. Bk.Adv.128 at 257:10–12. He also confirmed that all coverage under the 3M Tower remains available and free from competing demands. *Id.* at 240:1–4, 262:12–14. 3M has not paid the $25 million retention required under the 3M Tower. *Id.* at 262:12–22. And no payments for coverage under the 3M Tower are imminent. *Id.* at 263:22–25, 264:1–2.

Separately, the Aearo Legacy Program provides $550 million in coverage. The insurance policies in the Aearo Legacy Program date from and cover "occurrences" from 1997 to 2008; Aearo is the named insured. *Id.* at 265:7–13; CA.364.

After 3M acquired Aearo, it was 3M that noticed claims to the insurers on June 28, 2019, Bk.Adv.128 at 267:1–3; CA.357; CA.358, and 3M was the only party to collect the few payments issued under those policies (four checks of $1 million each). Bk.Adv.128 at 267:19–25, 268:1–4; CA.361.[5]

Mr. Sullivan testified that 3M has not collected one dollar under the Aearo Legacy Program and none of the coverage under the Aearo Legacy Program has eroded, nor are any payments to retain the insurance imminent. Bk.Adv.128 at 270:9–19, 271:1–4.

---

[5] Liberty Mutual made these payments to 3M in partial payment of the *Sloan* verdict (an MDL bellwether). Bk.Adv.128 at 269:18–21; CA.361. Mr. Sullivan testified that 3M currently holds the four checks in its vault. Bk.Adv.128 at 269:18–25.

(b)    3M can pay all of the Aearo Entities' liabilities

At the evidentiary hearing, the bankruptcy court heard that 3M is one of the world's largest multi-national corporations. CA.539. It produces some of the most ubiquitous and well-known household and office products in the world, including Scotch® tape and Post-it® notes. CA.538.

The testimony established that 3M would be able to fund any and all payments required under the Funding Agreement, Bk.Adv.143 at 25; SA.25, and that the Funding Agreement provided a clear path to restructuring Aearo "even absent a stay of the Pending Actions." *Id.* at 12. The evidence also confirmed that regardless of what liabilities Aearo faces, whether "in bankruptcy, outside of bankruptcy, stay in place, or no stay," Aearo can satisfy them simply by making a payment request under the Funding Agreement. *Id.* at 32.

(c)    The CAEv2 earplugs litigation never impacted Aearo's business in any way

Aearo provided no evidence that the business had been impacted by the CAEv2 litigation, at any point in time. No Aearo employee or officer testified at the hearing. Rather, Mr. Castellano, Aearo's Chief Restructuring Officer (who had been representing both 3M and Aearo days before the bankruptcy filing), testified. He confirmed that no employee of Aearo had testified at any trial or deposition in the MDL or had to collect or review documents in connection with the MDL. Bk.Adv.128 at 165:16–166:25. The same is true with respect to the Minnesota Litigation. *Id.* at 166:4–9.

During the time Mr. Castellano served as an advisor to Aearo, he saw no operational distractions as a result of the MDL. *Id.* at 161:25–162:15. Throughout pendency of the MDL, 3M continued to provide services under the Shared Services Agreement. *Id.* at 162:16–23. At no time were 3M employees unable to help Aearo under the Shared Services Agreement, *id.* at 163:7–15, nor would the MDL distract them going forward, *id.* at 164:15–162:8, 193:7–18.

Although Mr. Castellano testified that litigation would be a significant distraction for certain 3M employees, he had no idea how much time any of the 3M employees spent in connection with 3M's defense of CAEv2 litigation. *Id.* at 103:16–23, 191:17–19, 192:11–17, 193:7–15, 194:5–7, 21–25. Moreover, Mr. Castellano admitted that the 3M employees have been able to perform their services to Aearo under the Shared Services Agreement. *Id.* at 184:21–25.

## H. After Assessing The Evidence, The Bankruptcy Court Denies The Request For A Stay Or Injunction

On August 26, 2022, the bankruptcy court issued its order denying Aearo's motion for preliminary injunction. In so doing, the bankruptcy court emphasized the importance of one of its factual findings to each aspect of its decision: the fact that the 3M litigation does not pose any risk to Aearo's estates because "the Funding Agreement provides for an *uncapped, non-recourse* commitment from 3M to fund *all* of the Aearo Entities liabilities pre- and post-petition financing, including those arising from CAEv2 claims and Respirator Claims." Bk.Adv.143 at 31; SA.31 (emphasis in original). The bankruptcy court also considered and rejected each of Aearo's three claimed bases for relief in turn.

*First*, the bankruptcy court "decline[d] Aearo's invitation to extend [the automatic stay provided under] § 362(a)(1) to [nondebtor] 3M." *Id.* at 22. The bankruptcy court explained that while some courts of appeals have adopted exceptions to § 362(a)(1)'s plain text that allow  extension of stays to nondebtors in "rare" and "unusual circumstances," the Seventh Circuit is not one of them. *Id.* at 20–21. In fact, the bankruptcy court noted, this Court has never applied an exception to § 362(a)(1) to permit a stay of litigation against a nondebtor. *Id.* at 21.

But the bankruptcy court did not leave it there. Noting that courts often conflate § 362(a)(1) (authorizing stays) and § 105(a) (authorizing injunctions) in deciding whether to halt litigation against a nondebtor, the bankruptcy court stated that rather than "extend § 362(a)(1) to 3M" it would "frame[] its analysis" relevant to that claim "pursuant to the Court's authority to issue injunctive relief under § 105(a)." *Id.* at 22. The bankruptcy court concluded in that context that because the "actual economic effect" of the 3M litigation on Aearo is non-existent, relief under § 105(a)— and thus § 362(a)(1)—is not appropriate. *Id.* at 35.

*Second*, the bankruptcy court "disagree[d]" with the contention that § 362(a)(3)'s automatic stay extended to 3M because the 3M litigation was purportedly an effort to "exercise control over" two insurance policies shared by Aearo and 3M. *Id.* at 23. While the bankruptcy court assumed that the insurance policies qualified as "property" of Aearo's bankruptcy estates, it found that there was "no evidence" of any "direct efforts" to exercise control over the insurance policies. Nor was there any "threat of inequitable distribution of insurance proceeds" from the

policies given that "3M will fully fund any liability incurred by Aearo relating to the [3M litigation] pursuant to the Funding Agreement." *Id.* at 23–26. The bankruptcy court described its evidentiary determination succinctly: "[T]apping the insurance policies to cover any liability incurred in the [3M litigation] does not affect the amount of money Aearo can pay its creditors because the Funding Agreement covers all claims arising from the [3M litigation] in the absence or exhaustion of the applicable insurance." *Id.* at 26.

**Third**, the bankruptcy court declined to use its equitable authority under § 105(a) to enjoin the 3M litigation. The bankruptcy court explained, first, that it lacked "related to" subject matter jurisdiction to issue an injunction under § 105(a) because it could not "conclude that continuation of the [3M litigation] will affect the amount of property for distribution or the allocation of property among creditors." *Id.* at 28–32. However, the bankruptcy court also confirmed that even if it did have jurisdiction, it would "reach the same conclusion" because Aearo failed to show that an injunction is "necessary or appropriate" given that the Funding Agreement ensures that the 3M litigation will have no "actual economic effect" on distributions to Aearo's creditors. *Id.* at 35.

## I.    Subsequent Events

Appellants devote several pages of their Opening Brief to events occurring after the bankruptcy court denied the Injunction Request. Br.18–19. Two much more significant post-ruling developments warrant discussion here.

18

1.    Aearo's Financial And Operational Performance Has Been Completely
      Unaffected By The Denial Of The Injunction Request

At no point since the bankruptcy court denied the preliminary injunction request has Aearo filed a document in the bankruptcy indicating its business has been adversely impacted by the denial. Rather, Aearo continues to be operationally profitable. *See* Bk.818 at 17; Bk.948 at 5; Bk.1025 at 1.[6]

2.    The MDL Court Bars 3M From Disputing Its Full And Independent
      Liability For CAEv2-Related Claims

On December 22, 2022, the MDL Court issued an order granting summary judgment in favor of plaintiffs and against 3M on the issue of its full and independent responsibility for any proven liability associated with the CAEv2. *See* MDL.3610. The order also stayed the entirety of MDL proceedings pending an interlocutory appeal of the order, which is currently underway. *Id.* at 22.[7]

The district court ruled that 3M's post-bankruptcy filing efforts to blame Aearo for CAEv2-related liabilities is a bad faith about-face, and imposed sanctions as a result. The court noted that 3M had presented itself as the real party in interest—at the beginning of the case and over the next three-and-a-half years of litigation, through 16 different bellwether trials, in post-trial briefing, and in actions before the Eleventh Circuit—and had represented that it would never raise a successor liability

---

[6]    But for the costs of the bankruptcy itself, Aearo has earned millions in net cash flow.

[7]    In a round-about way, 3M has obtained the very stay of litigation in the MDL, except that it was the MDL court that *sua sponte* ordered a stay pending resolution of any appeal of its order granting summary judgment by the Eleventh Circuit.

or other wrong-party defense. *Id.* at 10–15. The MDL Court further found that it was only after 3M implemented Project Crane, its bankruptcy-based "liability management" project, that it changed course and took steps to shift all liability to Aearo, including the eve-of-bankruptcy indemnification obligations inserted into the Funding Agreement. *Id.* at 8–9. On these bases, the MDL Court has precluded 3M from trying to place blame on Aearo in any and all future CAEv2-related trials (while leaving all other defenses intact). *Id.* at 21.

Notably the MDL Court found, just as the bankruptcy court did, that by virtue of the Funding Agreement, continued litigation against 3M does not harm and cannot harm Aearo's bankruptcy estates:

> [A]s the bankruptcy court recognized, the flaw in this orchestrated extraction is that the agreement is entirely circular given that under the agreement, Aearo is obligated to indemnify 3M for all CAEv2 liability, yet Aearo is also authorized to seek repayment from 3M for those same liabilities. *See In re Aearo Techs., LLC*, 642 B.R. 891 (Bankr. S.D. Ind. Aug. 26, 2022). Thus, the agreement has no practical economic impact on Aearo's ability to reorganize and fails to create the identity of interest that 3M desired.

*Id.* at 8 n.9.

## SUMMARY OF THE ARGUMENT

The bankruptcy court's decision that Aearo cannot use the Bankruptcy Code strategically to halt litigation against the multibillion dollar parent company, 3M, was thoroughly supported by the evidence and the law, and should be affirmed.

As an initial matter, the bankruptcy court's decision rested on its conclusion that Aearo failed at the evidentiary hearing to show that the 3M litigation presents a genuine risk of material harm to its estates. That conclusion, in turn, was based on

the bankruptcy court's factual finding that Aearo is protected from the 3M litigation by a fully-funded, uncapped, and unconditional source of financing under the Funding Agreement with 3M. That determination was amply supported by the evidence. Notwithstanding Appellants' groundless contentions that the bankruptcy court applied the wrong legal standard in reaching its decision, the fact that Appellants did not and cannot show that the 3M litigation puts their estates at risk means that the bankruptcy court's decision was correct under any possible application of the law.

For those reasons, the Court need not treat this appeal as anything more than a meritless disagreement with a lower court's well supported findings of fact. However, even if the Court elects to view the appeal through Appellants' distorted prism and endeavors to settle the proper application of various provisions of the Bankruptcy Code, the appeal still fails.

*First*, this Court has long held that § 362(a)(1)'s automatic stay applies—as the plain language of the provision says—to "debtors," not nondebtors. The bankruptcy court thus properly declined to extend the Debtors' automatic stay to cover Aearo's nondebtor parent, 3M. The Fourth Circuit's decision in *A.H. Robins* does not change things. As the bankruptcy court explained, although this Court has cited *A.H. Robins* in prior cases, it has not adopted its counter-textual rule that § 362(a)(1)'s automatic stay can be unmoored from protecting "debtors" and used to insulate "nondebtors" (much less actually applied the rule in a case to benefit a nondebtor). Even if the Court were inclined to embrace *A.H. Robins* in this manner, this is not the case in which to do so. Given the bankruptcy court's findings of fact—

in particular the fact that Aearo faces no risk whatsoever if the 3M litigation continues—this case plainly does not present the type of "unusual circumstances" that might entitle a nondebtor like 3M to an automatic stay under *A.H. Robins.*

*Second*, the bankruptcy court properly found that the automatic stay provided by § 362(a)(3) does not apply to 3M as a result of its two shared insurance policies with Aearo. Even assuming, as the bankruptcy court did, that Aearo's and 3M's shared insurance policies constitute property of the Aearo's bankruptcy estates, the litigation against 3M is not an attempt to "exercise control" over those policies or their proceeds under § 362(a)(3) for two reasons. First, Aearo did not present any evidence below that they had the right to receive insurance proceeds in the event they were disbursed. To the contrary, the evidence showed that 3M—the entity that paid all litigation-related expenses—is entitled to the proceeds. Second, even if Aearo could demand insurance proceeds that will instead accrue to 3M if litigation continues, under the Funding Agreement Aearo is fully protected by 3M for any possible liabilities.

*Third*, the bankruptcy court correctly determined that it lacked the subject matter jurisdiction required to preliminarily enjoin the 3M litigation under § 105(a). Here, too, the bankruptcy court's finding that 3M guaranteed Aearo an unrestricted source of capital pursuant to the Funding Agreement rightfully carried the day. As the bankruptcy court explained, in light of that commitment, there can be no dispute that the 3M litigation will have no effect on the amount or allocation of property available for distribution to Aearo's creditors. Even if the Court adds the word

"potential" to the analysis—as Appellants insist—the result is the same. The fact that 3M, a multi-billion dollar international corporation, agreed to fully fund any and all liabilities held by Aearo eliminates any realistic potential for the 3M litigation to adversely affect distributions to Aearo's creditors. For the same reason, the bankruptcy court correctly added that, even if it had subject matter jurisdiction, the Debtors could not show the irreparable harm necessary to warrant injunctive relief under § 105(a).

## **ARGUMENT**

### I.    **Standard of Review**

A bankruptcy court's factual findings are reviewed for clear error. *In re Marcus-Rehtmeyer*, 784 F.3d 430, 436 (7th Cir. 2015). Decisions granting or denying an injunction are reviewed for abuse of discretion. *Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 597 (7th Cir. 2001). This standard applies to injunctions under § 105 of the Bankruptcy Code. See *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007).

### II.   **Appellants' Arguments Fail Due To Lack Of Evidence—Not The Application Of A Particular Legal Standard**

Appellants argue that the bankruptcy court erred by holding that under this Circuit's longstanding precedent, injunctive relief against nondebtors such as 3M is available only under Bankruptcy Code § 105(a); not § 362(a). But that is a red herring. Regardless of which legal framework applies, Appellants failed in their evidentiary proof.

In order to prevail, the Appellants needed to show that absent a stay of litigation against 3M, the bankruptcy estates faced a genuine risk of material harm. That is the injunctive relief standard under Bankruptcy Code § 105(a), and it is true as well under Appellants' favored rubric in *In re A.H. Robins Co., Inc.*, 788 F.2d 994 (4th Cir. 1986).

The bankruptcy court's findings demonstrate that continuing the CAEv2 earplugs litigation against 3M would not—indeed, could not—pose a genuine risk of harm to Aearo because, at every turn, Aearo is protected by a fully-funded, uncapped, and unconditional source of capital under the Funding Agreement. There is no circumstance under which Aearo will fail to receive funding from 3M for all possible liabilities, including indemnity obligations the Funding Agreement itself imposed on Aearo.

The bankruptcy court correctly determined, based on the evidence and the testimony, that continuation of the pending actions against 3M will not cause "any financial impact to creditors, let alone a significant and adverse one." Bk.Adv.143 at 32; SA.32. And in a separate and subsequent ruling, the MDL Court found that 3M, and not Aearo, is primarily and independently liable for the CAEv2 liabilities and cannot blame Aearo for any proven liabilities. That court, too, found that the Funding Agreement ensures no possible harm will befall Aearo. MDL.3610 at 21.

This Court need not adopt Appellants' proposed legal standard to resolve this appeal. This Court and lower courts within this Circuit have routinely held that there should be no injunction of nondebtor litigation if a debtor's estate fails in its proof,

without the need to decide if Bankruptcy Code § 362(a) can even apply as a matter of law. *Matter of Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991) (analyzing whether the *A.H. Robins* test would have been satisfied, but finding that "*Fernstrom* fits within neither of these exceptions"); *In re Caesars Ent. Operating Co., Inc.*, 540 B.R. 637, 643 n.8 (Bankr. N.D. Ill. 2015) ("But the Seventh Circuit has never adopted the *Robins* exception: in [*Fernstrom* and *Fox Valley*] the court mentioned the exception and then found it inapplicable without ever endorsing it."); *Edelson PC v. Girardi*, No. 20 C 7115, 2021 WL 3033616, at *15 (N.D. Ill. July 19, 2021) ("That is because in the handful of times the Seventh Circuit has considered *A.H. Robins Co* or other exceptions to section 362(a)(1), it has found that the non-debtor does not qualify for the exceptions."); *Harley-Davidson Credit Corp. v. JHD Holdings Inc.*, No. 19-CV-155, 2020 WL 7078828, at *1 (W.D. Wis. Dec. 3, 2020) ("The Seventh Circuit didn't decide whether to adopt the Fourth Circuit's rule because the party hadn't satisfied it, even if it did apply.").

Simply put, regardless of which framework applies, the bankruptcy court's factual findings were not clearly erroneous and allow only one conclusion under any standard: the bankruptcy court did not abuse its discretion by rejecting Aearo's efforts to halt litigation against 3M.

**III.    Bankruptcy Code § 362(a) Does Not Support The Appellants' Claim Of Error**

    **A.    Section 362(a)(1): The Bankruptcy Court Correctly Declined To Extend The Automatic Stay To Nondebtor 3M**

        1.    <u>This Appeal Presents No Basis To Adopt Or Apply *A.H. Robins'* Atextual "Unusual Circumstances" Standard</u>

As the bankruptcy court correctly recognized, this Court has long held that Bankruptcy Code § 362(a) means what is says—that it protects a debtor, and property of a debtor, but not a nondebtor.[8] But the bankruptcy court also noted that the label for its analysis ultimately did not matter, because "'many courts have used some iteration of the phrases "extension of the stay" and "injunctive relief" interchangeably when discussing whether to permit actions against nondebtor third parties to proceed,' while other courts have cited only to § 105," and in this case it would simply do the latter. Bk.Adv.143 at 22; SA.22 (quoting *In re LTL Mgmt. LLC*, 638 B.R. 291, 300 (Bankr. N.J. 2022)).

---

[8]    The "automatic stay provisions of Section 362(a) operate in favor of the bankrupt debtor only." *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314 (7th Cir. 1983). Lower courts in this Circuit, following decades of precedent, routinely hold that the automatic stay does not protect nondebtor co-defendants. *Ford for Est. of Srmack-Brinkman v. Hall*, No. 1:08-cv-1451-LJM-DKL, 2012 WL 13026886, at *2 (S.D. Ind. Apr. 17, 2012) ("Defendants have not filed for bankruptcy protection on their own, and the stay stemming from Bankruptcy Defendants' petitions does not automatically extend to them as nondebtor codefendants." (citing *Fernstrom*, 938 F.2d at 735; *Pitts*, 698 F.2d at 314)); *Arora v. Diversified Consultants, Inc.*, No. 20 C 4113, 2021 WL 2399978, at *4 n.3 (N.D. Ill. June 11, 2021) ("It is the overwhelming consensus among the circuits, as in the Seventh Circuit, to hold that the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor."); *In re Westlake Prop. Holdings, LLC*, 606 B.R. 772, 780 (Bankr. N.D. Ill. 2019) ("The protections of § 362 neither apply to co-defendants nor preclude severance." (citation omitted)).

This Court should affirm. It has never applied the *A.H. Robins* holding to extend the automatic stay to a nondebtor. *Fox Valley Const. Workers Fringe Ben. Funds v. Pride of Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998) (citing *A.H. Robins*, but "quickly dispos[ing] of any argument that the automatic stay deprived the [lower] court of jurisdiction to sanction [a nondebtor]"); *Fernstrom*, 938 F.2d at 735–36 (affirming decisions below rejecting application of the automatic stay and permitting litigation by a nondebtor to proceed against the debtor in non-bankruptcy court where any recovery would be limited to the debtor's insurance proceeds). Whatever might be the status of the *A.H. Robins* approach in this Circuit, this is certainly not the case by which to adopt and refine it, given that the very factors assessed by the bankruptcy court in connection with Aearo's request for relief under § 105(a) would disqualify it for relief under any reading of *A.H. Robins*.

> 2. <u>Even If This Court Considers § 362(a)(1) A Legal Basis To Enjoin, 3M's Direct Liability Requires Affirmance</u>

Nor is there any merit to Appellants' new argument, *see* Br.34, that § 362(a)(1) "must encompass cases in which the debtor is not a defendant" because its second clause refers to suits "to recover a claim against the debtor." Br.34 (citing *In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992)).[9]

---

[9] None of the cases Appellants cite in support of this argument were cited or discussed by Appellants below, and, not surprisingly, the bankruptcy court had no need to address them.

Even had they properly raised the issue below, Appellants ignore the factual findings of the MDL Court, that 3M and not Aearo bears responsibility for any proven CAEv2 liabilities. A suit against 3M is not a suit "to recover a claim against the debtor." Litigation against 3M is litigation against 3M, for 3M's separately culpable conduct. *A.H. Robins*, 788 F.2d at 999 (noting that § 362(a)(1) protects only pure indemnitees, not separately liable joint tortfeasors). The only possible way Aearo could have any responsibility is via the Funding Agreement's indemnity provision, but 3M is responsible for funding the indemnity obligation, so in the end the MDL litigation against 3M still is not litigation to recover a claim against Aearo.

The Second Circuit has made clear that the *Colonial Realty* holding on which Appellants seek to rely applies only in the narrow circumstance of fraudulent transfer litigation against transferees of a debtor's property brought by creditors of the debtor. "[W]e explained in *Colonial Realty* [that] '[a]bsent a claim against the debtor, there is no independent basis for the action against the transferee.' . . . In order to qualify as 'disguised fraudulent transfer actions,' therefore, the complaints . . . would have to be contingent on [the debtor's] wrongful transfer of the funds sought." *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 209 (2d Cir. 2014). Appellants' citation to *Colonial Realty* is thus irrelevant.

### B. Section 362(a)(3): The Bankruptcy Court Correctly Found That Property Of The Estate Is Not And Cannot Be Threatened By Continued Litigation Against Nondebtor 3M

Appellants' argument that Bankruptcy Code § 362(a)(3) also bars continued litigation against 3M fares no better, and for similar reasons. Section 362(a)(3) stays

"any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Appellants contend that the CAEv2 cases against 3M meet this standard because they purportedly involve an attempt to exercise control over the proceeds from insurance policies that Aearo shares with 3M. As the bankruptcy court found, they are incorrect.

Of course, a debtor's insurance policy is property of the estate. *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir. 1989) ("A policy of insurance is an asset of the estate."). But litigation against 3M is not an attempt to seize an insurance policy that belongs to Aearo.

Insurance *proceeds* fall under a different rubric. As the bankruptcy court recognized, the relevant question is not whether there is a policy but rather whether "tapping the insurance policies to cover any liability incurred in the Pending Actions [could] affect the amount of money Aearo can pay its creditors." Bk.Adv.143 at 26; SA.26 (citing *In re Stinnett*, 465 F.3d 309, 312–13 (7th Cir. 2006)). *Stinnett* dictates that whether insurance proceeds are property of the estate depends on "whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim." *Id*. at 313 (quoting *In re Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993)). Appellants did not present any evidence below that if insurance proceeds were paid, Aearo had any right to them; rather, the evidence showed that because 3M paid all expenses, it would be the party entitled to reimbursement.

Further, this Court in *Fernstrom* held that a suit against a nondebtor to collect the proceeds of a debtor's insurance policy was not a suit to collect property of the

estate because it would not cause any detriment to the estate's creditors. 938 F.2d at 735–36. As the bankruptcy court found, depleting the available insurance proceeds will not adversely impact the Aearo's creditors because of the Funding Agreement's backstop. Bk.Adv.143 at 26; SA.26. Section 362(a)(3) thus does not apply.

Appellants pretend that the bankruptcy court held that § 362(a)(3) does not protect against interference with property of the estate as long as there are sufficient funds from other property of the estate, *see* Br.49, but that is not what the bankruptcy court held. To the contrary, the bankruptcy court, relying on *Stinnett*, ruled only that the shared liability policies do not inure to the benefit of the estate, and therefore that litigation against 3M did not violate § 362(a)(3). Bk.Adv.143 at 24–26; SA.24–26. That finding was not clearly erroneous.

## IV. The Bankruptcy Court Did Not Abuse Its Discretion By Denying Injunctive Relief

### A. The Bankruptcy Court Correctly Found That The Facts Fail To Support "Related To" Jurisdiction

"A case is 'related' to a bankruptcy when the dispute 'affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors.'" *In re Mem'l Ests., Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1991) (quoting *In re Xonics, Inc.*, 83 F.2d 127, 131 (7th Cir. 1987)). The bankruptcy court correctly found that this test is not satisfied here:

> [W]hatever liability the Pending Actions generate—in bankruptcy, outside of bankruptcy, stay in place, or no stay—Aearo can satisfy such liability by making a payment request under the Funding Agreement. From this, the Court is unable to discern any financial impact to creditors, let alone a significant and adverse one, from the continuation of the Pending Actions. Stated differently, the Court cannot conclude

that continuation of the Pending Actions will affect the amount of property for distribution or the allocation of property among creditors.

Bk.Adv.143 at 32; SA.32.

Appellants note that "related to" jurisdiction is broad, Br.61, but that is neither here nor there. As the bankruptcy court correctly explained, the test is whether the dispute will impair the estate, and "simply because a dispute may have some type of nexus to a bankruptcy proceeding is not enough to give the court 'related to' jurisdiction over it." Bk.Adv.143 at 30; SA.30 (citing *Home Ins. Co.*, 889 F.2d at 749). Indeed, even though many circuits use the "any conceivable effect" test for "related to" jurisdiction, in this case there can be no conceivable effect on the Aearo's bankruptcy estates because of the terms of the Funding Agreement. There is no scenario in which, absent a stay of the CAEv2 litigation against it, 3M can cut off all funding to Aearo necessary to pay all liabilities.

So too, the evidence reveals Appellants' lengthy discussion of "ex ante" assessment and "potential effects" to be a sideshow. *See* Br.62–65. The bankruptcy court found that the Funding Agreement is "a circular arrangement," obviating the possibility of harm to Aearo—"potential" or otherwise. Accordingly, "related to" jurisdiction was not established.

## B. The Bankruptcy Court Correctly Rejected Aearo's "Distraction" Argument

Appellants tell this Court that "[t]estimony established that critical 3M legal, insurance, and accounting executives who provide services to Aearo under the SSA 'would be significant[ly] distracted' from assisting with Aearo's reorganization by the

CAEv2 litigation against 3M." Br.57. But the court that actually heard that testimony concluded otherwise:

> The Court puts little stock on this claim. Aearo and 3M have been embroiled in the MDL for over three years, yet the Court heard no evidence that 3M has, to date, been unable to perform under the SSA. Undoubtedly those 3M employees tasked with providing services under the SSA are busy and likely taxed on a regular basis in the ordinary course of 3M's business. But the Court has otherwise heard no evidence to conclude that Aearo's operations or its administration of these bankruptcy cases will be impacted in the manner that Aearo argues.

Bk.Adv.143 at 34–35; SA.34–35.

Appellants failed to identify a single Aearo or 3M employee who would be necessary to Aearo's reorganization and distracted by continuing litigation against 3M. Without such evidence, the Court properly rejected Aearo's "distraction" theory as baseless.

Appellants pointed only to various 3M employees who provide generic back-office services to Aearo under the Shared Services Agreement. But 3M's obligations to provide services to Aearo under the Shared Services Agreement existed throughout the MDL without causing any distractions and, in any event, were not conditioned on the existence (or non-existence) of CAEv2 Earplug litigation against 3M. The bankruptcy court did not clearly err by putting "little stock" in this evidentiary argument.

Appellants also argue that "ongoing prosecution of the Pending Actions against 3M will force the Debtors' management and outside advisors to focus on defending thousands of lawsuits instead of working toward a global, systematic, and equitable resolution of Combat Arms Claims under the supervision of the Bankruptcy Court."

Bk.Adv.2 at 38. Appellants fail to cite any Seventh Circuit case enjoining litigation against a nondebtor because it might "distract" management or outside advisors. It is a nonsensical position to take, both as a matter of law, and as a factual matter here.

Courts addressing nominally analogous matters have rejected the argument Appellants make. *In re MCSi, Inc.*, 371 B.R. 270, 270–71 (S.D. Ohio 2004), concerned whether litigation against certain officers of the debtor was subject to the automatic stay. The court neither held nor even examined whether distraction of the officers, who—unlike any of Aearo's officers or advisors here—were actually named co-defendants in a suit against the debtor, might support staying the litigation against them. *See id.* And, ultimately, the court there found the stay did not extend to the litigation against the officers. *Id.* at 275.

In *In re Calpine Corp.*, 365 B.R. 401, 411–13 (S.D.N.Y. 2007), the debtor was in the business of generating electrical power. The key employee in question, "Zadlo[,] [was] the sole remaining Transmission Director and the only transmission engineer." *Id.* at 411. The court found that the evidence supported a finding that Zadlo's unique and highly technical knowledge in the area of electricity transmission was indispensable to the debtor's restructuring effort. The court further found that if the litigation continued, Zadlo would have to devote significant time to reviewing discovery "due to the highly technical nature of the documents, which could not be deciphered by a lay person (or a lawyer)." *Id.*

No similar facts exist here. Appellants failed to identify a single employee who would be necessary to their reorganization and distracted by continuing litigation

against 3M. Testimony below made clear that *no* Aearo employees had any involvement in the MDL, and no evidence was provided to establish that absent a stay Aearo's management would somehow now be distracted. The bankruptcy court made no erroneous findings on this issue.[10]

### C.     The Bankruptcy Court Correctly Ruled In The Alternative That Aearo Failed To Establish The Need For Injunctive Relief

The burden is on the movant to clearly establish the necessity for injunctive relief. *See In re Gathering Rest., Inc.*, 79 B.R. 992, 1000 (Bankr. N.D. Ind. 1986). The bankruptcy court expressly ruled that "even if it were to find that it has subject matter jurisdiction over the Pending Actions, the court would reach the same conclusion." Bk.Adv.143 at 35; SA.35. Having determined that a continuation of the Pending Actions would have no economic effect on the bankruptcy estate, the court found "no basis upon which to invoke its § 105(a) powers." *Id*. That ruling plainly was not an abuse of discretion, and should not be disturbed.

### D.     Section 105(a)'s Balance Of Equities, Public Interest, And Abuse-of-Process Factors Independently Warrant Affirmance

This Court can affirm the decision of the bankruptcy court on any ground advanced by the Objecting Parties below. *Zedan v. Habash*, 529 F.3d 398, 403 (7th Cir. 2008); *In re Dye*, 360 F.3d 744, 750 (7th Cir. 2004). In addition to the points established above, this Court should affirm the denial of injunction on the ground

---

[10]  Since the Petition Date, the Aearo Debtors have been operationally profitable, and there has been no significant loss of employees notwithstanding the continued litigation against 3M. *See* Bk.818 at 17; Bk.948 at 5; Bk.1025 at 1.

that the Debtors and 3M sought to manufacture Appellants' insolvency through the Funding Agreement for the improper purpose of evading the MDL Court. *See* Bk.Adv.108 at 34.

"The object of bankruptcy is to adjust the rights of the creditors of a bankrupt company; it is not to allow a solvent company to try to lighten its [debt] burden." *In re S. Beach Sec., Inc.*, 606 F.3d 366, 376 (7th Cir. 2010). *South Beach* echoes the facts presented here:

> At the onset of the series of transactions among [the sole shareholder's] puppet firms, [debtor] was solvent. At the end it was insolvent as a result of having been directed by [the sole shareholder to incur debt that it] could not repay . . . . The series of transactions set the stage for . . . a Chapter 11 reorganization . . . [without] any real debt or real creditors [which] shows that this case doesn't belong in bankruptcy court.

*Id.* (citing *In re Coastal Cable TV, Inc.*, 709 F.2d 762, 764–65 (1st Cir. 1983)). The Funding Agreement represents a manipulation of the Appellants' financial situation and indemnity obligations to shoehorn their facts into the injunction factors. But this manipulation, found by one federal court to be in bad faith, cannot then support the invocation of the bankruptcy court's equitable powers.

A "bankruptcy court is one of equity . . . [and] a person who seeks the protection of equity must do equity." *In re Thomas*, 204 F.2d 788, 794 (7th Cir. 1953). A party who acts in bad faith related to the matter cannot seek equitable relief in that same matter. *AP Siding & Roofing Co. v. Bank of New York Mellon*, 548 B.R. 473, 480 (N.D. Ill. 2016); *In re Cox*, 175 B.R. 266, 274 (Bankr. C.D. Ill. 1994). Section 105 allows a court to "tak[e] any action or mak[e] any determination necessary or appropriate . . . to prevent an abuse of process." 11 U.S.C. § 105(a); *see also Marrama*

*v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007). Here, 3M's manipulation of Aearo's liabilities to then invoke § 105 to garner the protections of the automatic stay abuses the bankruptcy process. Appellants cannot use the bankruptcy court to further a bad faith design. *S. Beach*, 606 F.3d at 377 (citing *Shapiro v. Wilgus*, 287 U.S. 348, 355 (1932) (where the Supreme Court declared equitable relief that "was part and parcel of a scheme whereby the form of a judicial remedy was to supply a protective cover for a fraudulent design")).

More than twelve years after transferring their then-active CAEv2 Earplug business to 3M, and after consistently accounting for and conducting themselves accordingly, 3M suddenly shifted positions to try to blame Aearo in order to justify Aearo's bankruptcy filing. MDL.3610 at 7–9. Fleeing adverse rulings in the MDL it previously supported, 3M shifted its liabilities to the Debtors in an eve-of-bankruptcy transaction transferring billions of dollars of 3M's liabilities to Debtors in return for 3M's agreement to fund the repayment of those same liabilities. *Id.* This transaction lacked any purpose other than to make Appellants a pawn in 3M's plan to hinder and delay pending litigation in other forums. This Court should not countenance such misconduct.

## <u>CONCLUSION</u>

The judgment should be affirmed, and the case remanded to the bankruptcy court for further proceedings.

(SIGNATURE BLOCK ON FOLLOWING PAGE)

Dated: January 25, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro
Counsel of Record
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: 212-705-7400
andrewschapiro@quinnemanuel.com

-and-

Adam Wolfson (*pro hac vice*)
Eric D. Winston (*pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000

-and-

Patricia B. Tomasco (*pro hac vice*)
711 Louisiana, Suite 500
Houston, Texas 77002
Telephone: 713-221-7000

*Counsel to the Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because this document contains 9,518 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2016 in 12-point Century Schoolbook style font.

Dated:   January 25, 2023

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro
One of the Attorneys for Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2023, the Brief of Appellees was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Andrew H. Schapiro*
Andrew H. Schapiro