No. 22-2606

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

In re: Aearo Technologies LLC, et al.

_____

Aearo Technologies LLC, et al.

Debtors-Appellants,

v.

Those Parties Listed on Appendix A to the Complaint and John & Jane Does,
1-1000,

_____

Appellees.

On Direct Appeal from the United States
Bankruptcy Court for the Southern District of
Indiana, No. 22-2890, Adv. No. 22-50059 (Graham, J.)

**BRIEF FOR NANCY J. GARGULA, UNITED STATES TRUSTEE,
AS AMICUS CURIAE IN SUPPORT OF APPELLEES
AND SUPPORTING AFFIRMANCE**

_____

_Of Counsel:_

RAMONA D. ELLIOTT
  _Deputy Director/General Counsel_
P. MATTHEW SUTKO
  _Associate General Counsel_
WENDY COX
  _Trial Attorney_
  _Executive Office for United States_
    _Trustees_
  _U.S. Department of Justice_

BRIAN M. BOYNTON
  _Principal Deputy Assistant_
    _Attorney General_
ZACHARY A. MYERS
  _United States Attorney_
MARK B. STERN
SEAN R. JANDA
  _Attorneys, Appellate Staff_
  _Civil Division, Room 7260_
  _U.S. Department of Justice_
  _950 Pennsylvania Avenue NW_
  _Washington, DC 20530_
  _(202) 514-3388_

# TABLE OF CONTENTS

**Page**

INTEREST OF THE UNITED STATES TRUSTEE ...............................1

ISSUES PRESENTED .....................................................................1

STATEMENT OF THE CASE ............................................................3

    A.    Statutory Background.................................................3

    B.    Factual and Procedural Background ....................................6

SUMMARY OF ARGUMENT ...........................................................12

ARGUMENT ..................................................................................13

    A.    Section 362(a)(1) Does Not Stay the Tort Claims Against 3M ......................................................13

    B.    Section 362(a)(3) Does Not Stay the Tort Claims Against 3M ......................................................20

    C.    The Bankruptcy Court Properly Declined to Enjoin the Suits Against 3M Under 11 U.S.C. § 105(a) .........................23

CONCLUSION ...............................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                             **Page(s)**

*A.H. Robins Co. v. Piccinin,*
788 F.2d 994 (4th Cir. 1986) ...................................................... 15, 16

*Bush v. United States,*
939 F.3d 839 (7th Cir. 2019) ............................................................ 32

*Carousel Int'l Corp., In re,*
89 F.3d 359 (7th Cir. 1996) .............................................................. 21

*Castleton Plaza, LP, In re,*
707 F.3d 821 (7th Cir. 2013) ............................................................ 26

*Celotex Corp. v. Edwards,*
514 U.S. 300 (1995) ............................................................................ 31

*City of Chicago v. Fulton,*
141 S. Ct. 585 (2021) .......................................................................... 5

*Craig v. Ontario Corp.,*
543 F.3d 872 (7th Cir. 2008) ............................................................ 33

*Czyzewski v. Jevic Holding Corp.,*
580 U.S. 451 (2017) ..................................................................... 17, 25

*Fernstrom Storage & Van Co., In re,*
938 F.2d 731 (7th Cir. 1991) ............................................................ 16

*Fisher v. Apostolou,*
155 F.3d 876 (7th Cir. 1998) ................................................... 6, 19, 24

*Fox Valley Constr. Workers Fringe Benefit Funds v.*
*Pride of the Fox Masonry & Expert Restorations,*
140 F.3d 661 (7th Cir. 1998) ............................................................ 16

*Ionosphere Clubs, Inc., In re,*
922 F.2d 984 (2d Cir. 1990) ............................................................... 5

*Law v. Siegel,*
571 U.S. 415 (2014) ............................................................................ 17

*LTL Mgmt., LLC, In re,*
   \_\_ F.4th \_\_, 2023 WL 1098189 (3d Cir. Jan. 30, 2023) ...................... 27

*Matthews v. Rosene,*
   739 F.2d 249 (7th Cir. 1984) .............................................................. 18

*Memorial Estates, Inc., In re,*
   950 F.2d 1364 (7th Cir. 1991) ............................................................ 31

*Pitts v. Unarco Indus., Inc.,*
   698 F.2d 313 (7th Cir. 1983) (per curiam) ........................................ 14

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
   566 U.S. 639 (2012) ...................................................................... 3, 17

*Railway Labor Execs.' Ass'n v. Gibbons,*
   455 U.S. 457 (1982) ............................................................................ 3

*Scanlan v. Eisenberg,*
   669 F.3d 838 (7th Cir. 2012) .............................................................. 33

*Stinnett, In re,*
   465 F.3d 309 (7th Cir. 2006) ........................................................ 20, 21

*United States v. Crawley,*
   837 F.2d 291 (7th Cir. 1988) .............................................................. 16

*Wright v. Union Cent. Life Ins. Co.,*
   304 U.S. 502 (1938) ............................................................................ 3

## Statutes:

11 U.S.C. § 105(a) ................................................................................ 6, 23

11 U.S.C. § 307 ........................................................................................ 1

11 U.S.C. § 362(a) .................................................................................... 5

11 U.S.C. § 362(a)(1) ................................................................ 6, 10, 12, 14

11 U.S.C. § 362(a)(3) ....................................................... 6, 10, 12, 18, 20

11 U.S.C. § 362(a)(4) ................................................................. 18

11 U.S.C. § 1141(d) ................................................................. 26

28 U.S.C. § 158(d)(2) ................................................................ 12

28 U.S.C. §§ 581-589a ............................................................... 1

28 U.S.C. § 1334(b) .................................................................. 31

**Legislative Materials:**

H.R. Rep. No. 95-595 (1977) ........................................................ 1

H.R. Rep. No. 103-835 (1994) ...................................................... 3, 4

## INTEREST OF THE UNITED STATES TRUSTEE

The United States Trustee files this brief under Federal Rule of Appellate Procedure 29(a).

The Attorney General appoints United States Trustees to supervise the administration of bankruptcy cases and trustees. 28 U.S.C. §§ 581-589a. They "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena." H.R. Rep. No. 95-595, at 88 (1977). To this end, Congress has provided that "[t]he United States trustee may raise and may appear and be heard on any issue in any case or proceeding." 11 U.S.C. § 307.

As detailed in the bankruptcy court's opinion, and as discussed below, this case presents questions regarding the misuse of the bankruptcy system that are of substantial importance to the United States Trustee.

## ISSUES PRESENTED

Aearo Technologies[1] and/or its parent company 3M are defendants in approximately 300,000 pending tort suits seeking to hold them liable for

---

[1] Debtors are a collection of related entities, *see* SA.3 & n.3; because the distinctions between those entities are not relevant to this appeal, this brief refers to them collectively as Aearo. Although the brief thus

*Continued on next page.*

injuries allegedly resulting from their manufacture and sale of a defective earplug intended to protect the hearing of its users. Shortly before Aearo filed for bankruptcy, it executed an agreement with 3M in which 3M agreed to fund an Aearo bankruptcy trust for the benefit of tort claimants. In turn, Aearo agreed to indemnify 3M for the tort liabilities. The filing of the bankruptcy petition resulted in an automatic stay of all claims against Aearo. Aearo also immediately asked the bankruptcy court to stay or enjoin the pending claims against 3M as well. The bankruptcy court declined to do so and certified its order for direct appeal. This Court authorized that direct appeal.

The issues presented are:

1. Whether the automatic stay provisions of the Bankruptcy Code apply to claims against 3M as well as to claims against Aearo.

2. Whether the bankruptcy court properly declined to enter a preliminary injunction to halt litigation of the claims against 3M.

---

uses the singular when discussing Aearo and its bankruptcy, several bankruptcy petitions and estates are implicated in this appeal.

## STATEMENT OF THE CASE

### A.     Statutory Background

**1.** Bankruptcy is the "subject of the relations between a[] . . . debtor[] and his creditors, extending to his and their relief." *Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 513-14 (1938) (quotation omitted). To standardize an "expansive (and sometimes unruly) area of law," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012), Congress enacted the Bankruptcy Code under the Bankruptcy Clause of the U.S. Constitution, which vests Congress with power to "adjust[] . . . a failing debtor's obligations," *Railway Labor Execs.' Ass'n v. Gibbons*, 455 U.S. 457, 466 (1982) (quotation omitted).

In enacting the Code, Congress was particularly concerned with "protect[ing] creditors in general," seeking to prevent "an insolvent debtor from selectively paying off the claims of certain favored creditors at the expense of others" and to temper the "inevitable temptation among creditors to compete fiercely over the debtor's limited funds." H.R. Rep. No. 103-835, at 33 (1994). Congress thus designed a bankruptcy system "to enforce a distribution of the debtor's assets in an orderly manner in which the claims of all creditors are considered

fairly, in accordance with established principles rather than on the basis of the inside influence or economic leverage of a particular creditor." *Id.* In addition, Congress intended the bankruptcy system to "provide honest debtors who have fallen on hard times the opportunity for a fresh start." *Id.* at 32.

To achieve those competing objectives, the Code implements a comprehensive scheme that establishes a reticulated mechanism for the equitable adjustment of the debtor-creditor relationship. That scheme reflects a basic bankruptcy *quid pro quo*. On the one hand, the Code imposes a host of duties on debtors—including requiring debtors to comply with extensive disclosure and reporting obligations, generally requiring them to devote the value of all but certain statutorily exempt assets to the estate, and specifying how the estate's assets must be distributed to creditors—to protect creditors' interests. In exchange, a debtor who complies with those and other duties may receive the Code's relief.

**2.** One important aspect of the Code's reticulated scheme gathers the debtor's assets under the supervision of the bankruptcy court and "centralize[s] all disputes concerning property of the debtor's estate in

4

the bankruptcy court." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990). In so doing, the Code aims to ensure that the debtor's assets will be distributed equitably to creditors according to the rules contained in the Code.

Thus, under the Code, the filing of a bankruptcy "petition creates an estate that, with some exceptions, comprises all legal or equitable interests of the debtor in property as of the commencement of the case." *City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021) (quotation omitted). And, "with certain exceptions, the petition 'operates as a stay, applicable to all entities,' of efforts to collect from the debtor outside of the bankruptcy forum." *Id.* (quoting 11 U.S.C. § 362(a)). That "automatic stay" is essential to the Code's operation. It "serves the debtor's interests by protecting the estate from dismemberment, and it also benefits creditors as a group by preventing individual creditors from pursuing their own interests to the detriment of the others." *Id.*

Of particular relevance to this case are two provisions of the automatic stay. First, the automatic stay prohibits "the commencement or continuation" of any "judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced

before the commencement of the" bankruptcy case or "to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Second, the automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id.* § 362(a)(3).

In addition, the Code provides a bankruptcy court with the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Code. 11 U.S.C. § 105(a). This Court has limited bankruptcy courts' § 105(a) authority in these circumstances to enjoining suits that will "affect the amount of property in the bankruptcy estate" or "the allocation of property among creditors." *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (quotation omitted).

### B.    Factual and Procedural Background

**1.** Debtor Aearo previously manufactured and sold a product called the Combat Arms Earplug Version 2 (Earplug), intended to protect users' hearing from damage. Aearo primarily sold the Earplug to the

United States military, although it also sold the product to civilian consumers. SA.3-4.

3M Corporation is a "multinational technology and manufacturing company that develops products across a wide range of markets." SA.4. 3M is "a large, profitable company": in 2021, it generated $35 billion in net sales. *Id.*

In 2008, 3M acquired Aearo. Between 2008 and 2010, "Aearo's business remained separate from 3M." SA.4. In 2010, Aearo transferred part of its business (including the Earplug) to 3M; that transfer generated a receivable on Aearo's books of nearly $1 billion that remains unpaid. Between 2010 and 2015, "3M continued to manufacture, market and sell" the Earplug. SA.4. In addition, following the transfer, Aearo and 3M "became much more integrated," with Aearo relinquishing many functions (including legal, accounting, and insurance services) to 3M. SA.4-5. Although 3M and Aearo entered into an agreement in which Aearo agreed to pay a fee to 3M for those services, 3M has apparently not been charging Aearo. *Id.*

In 2016, a False Claims Act suit was filed alleging that 3M had sold the Earplug to the United States military without disclosing defects in

the product. That suit was eventually settled, and following the suit, consumers began bringing individual suits against 3M and/or Aearo generally alleging that the Earplug was defective and had caused hearing injury. The suits brought in federal court were consolidated into a multidistrict litigation; there are currently approximately 290,000 individual suits in that multidistrict litigation (in addition to approximately 2000 suits pending in Minnesota state court). Most of those suits assert that 3M and Aearo are jointly and severally liable, although some assert claims only against 3M. *See* SA.5-6.

As part of the multidistrict litigation, 27 plaintiffs were selected to proceed with their claims as bellwethers. Of those 27, eight plaintiffs had their claims dismissed, 12 won verdicts in 10 different trials, and seven lost verdicts in six different trials. The verdicts in plaintiffs' favor varied in size, imposing joint and several liability against 3M and Aearo ranging from $1.7 million to $77.5 million. SA.6.

**2.** Beginning in March 2022, 3M and Aearo "began exploring strategic alternatives" to the tort litigation and ultimately determined to attempt to resolve the tort claims in bankruptcy. SA.7. To that end, 3M appointed two disinterested directors to Aearo's Board who were

directed to negotiate an agreement between Aearo and 3M to establish terms on which 3M would fund an Aearo bankruptcy.

Eventually, 3M and Aearo reached an agreement designed to achieve the goal of resolving all tort claims against both entities in bankruptcy court. As relevant here, this Funding Agreement included a commitment from 3M to fund an Aearo chapter 11 bankruptcy trust for Earplug (and some other) tort claims. It also includes a commitment from Aearo to indemnify 3M for Earplug-related liabilities, although the agreement contemplates that Aearo may use funding from 3M to satisfy any indemnity obligation. That commitment is uncapped, although the bankruptcy court interpreted the agreement to require Aearo to exhaust all of its assets before 3M's funding commitment is triggered. The agreement is not conditioned on Aearo's filing a bankruptcy petition (or successfully obtaining confirmation of a plan), nor is it conditioned on the bankruptcy court's extending the automatic stay to cover 3M. SA.8-11.

Aearo then filed a chapter 11 bankruptcy petition and, on the same day, filed an adversary proceeding in bankruptcy court against the plaintiffs in the pending tort suits. In the adversary proceeding, Aearo

asked the bankruptcy court to halt the tort proceedings either by declaring that the automatic bankruptcy stay prevented the further prosecution of the tort suits against 3M or by entering a preliminary injunction prohibiting the claimants from continuing to pursue those suits. *See* SA.2.

The bankruptcy court denied that motion. First, the court held that the automatic stay provision preventing the continuation of certain "judicial . . . action[s] or proceeding[s] against the debtor," 11 U.S.C. § 362(a)(1), does not prevent the continuation of the tort suits against 3M because that provision extends "only to the debtor filing bankruptcy proceedings and not to non-bankrupt co-defendants" like 3M. SA.19 (quotation omitted).

Second, the bankruptcy court held that the automatic stay provision precluding "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), does not prevent the maintenance of the suits against 3M. The court noted that Aearo and 3M share certain insurance policies whose proceeds may constitute property of the bankruptcy estate, but it explained that the tort suits against 3M do not

10

constitute acts to obtain or control that property so as to negatively affect the estate. The suits themselves do not seek recovery against the policies, and in any event, 3M's agreement to fund Aearo's tort liability "operates as a complete, uncapped backstop to the insurance policies" such that using up the insurance proceeds would "not affect the amount of money Aearo can pay its creditors." *See* SA.22-26.

Third, the bankruptcy court declined to grant a preliminary injunction halting the pending tort actions against 3M. In doing so, the court rejected Aearo's contention that its obligation to indemnify 3M meant that any judgment against 3M would affect the estate. The court noted that 3M had undertaken to provide Aearo with the funds necessary to satisfy any indemnity obligation; therefore, any such judgment would not, as a practical matter, diminish the funds available in the estate. Based on that determination, the court concluded both that it did not have jurisdiction over the suits against 3M and that, even if it did have jurisdiction, an injunction would be unwarranted in light of the minimal "actual economic effect" on the estate that the suits might have. SA.26-36.

Aearo filed a notice of appeal, and the bankruptcy court certified its decision for direct review in this Court under 28 U.S.C. § 158(d)(2). *See* A.431. This Court granted Aearo's petition for permission to appeal, *see* A.441, and this appeal followed.

## SUMMARY OF ARGUMENT

The Bankruptcy Code's automatic stay provisions preserve the assets of the debtor's estate until dismissal or closure of the bankruptcy case or entry of discharge. As relevant here, the Code stays actions or proceedings "against the debtor that [were] or could have been commenced" before the bankruptcy petition or seeking "to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). It also prohibits acts to "obtain" or "exercise control over" any "property of the estate." *Id.* § 362(a)(3).

These provisions apply only to the debtor and to property of the estate—not to 3M. Aearo's bankruptcy petition triggered the automatic stay provisions and stayed the pending tort suits against it. But it did not also halt the pending claims against 3M, which has not availed

itself of the Code's protections or undertaken the Code's concomitant obligations.

The bankruptcy court also correctly declined to exercise its discretion to enjoin the proceedings against 3M. The court explained that the suits against 3M have no practical impact on Aearo's estate. The Funding Agreement not only requires 3M to fund a bankruptcy trust for Aearo's Earplug-related liabilities but also requires 3M to fund any indemnity obligations Aearo might incur. SA.8-11. Thus, under the Funding Agreement, 3M serves "as a complete, uncapped backstop" for Aearo. SA.25-26. In light of that finding, the bankruptcy court correctly concluded that it lacked jurisdiction to enjoin the suits against 3M and that, if jurisdiction existed, it would decline to enjoin the suits anyway.

## ARGUMENT

### A. Section 362(a)(1) Does Not Stay the Tort Claims Against 3M

**1.** Section 362(a)(1) prohibits "the commencement or continuation" of any "judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the" bankruptcy case or "to recover a claim against the debtor that arose before the commencement of the case under this

title." 11 U.S.C. § 362(a)(1). By its terms, it stays only litigation of certain claims "against the debtor." As this Court has recognized, the "clear language" of § 362(a)(1) "extends the automatic stay provision only to the debtor filing bankruptcy proceedings and not to non-bankrupt co-defendants." *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314 (7th Cir. 1983) (per curiam). Applying that principle in *Pitts*, this Court denied one defendant's motion for a stay, filed after a co-defendant had filed a bankruptcy petition. The Court explained that § 362(a)(1) "stays the proceedings in this appeal only with respect to the bankruptcy debtor and not all co-defendants." *Id.*

**2.** In arguing to the contrary, Aearo observes that the second clause of § 362(a)(1) includes suits "to recover a claim against the debtor that arose before the commencement" of the bankruptcy case. 11 U.S.C. § 362(a)(1). It argues that applying this clause only to debtors, as required by the statute's language, would make the second clause duplicative of the section's first clause, which applies to a suit "against the debtor that was or could have been commenced before the commencement" of the bankruptcy case. *Id.*

14

The clauses are not duplicative and there is no basis for disregarding the statute's plain language. The first clause applies to suits against the debtor that were or could have been commenced before the bankruptcy petition. The second clause extends the automatic stay to cover any suit to recover a claim that arose before the bankruptcy petition whether or not the suit was or could have been commenced before the bankruptcy petition, and it may operate to prevent attempts to recover claims against the debtor from third parties (as, for example, where a fraudulent transfer is alleged). In any event, "claim[s] against the debtor" cannot be read to mean "claims against entities other than the debtor."

Aearo nevertheless urges that the bankruptcy court should have adopted the analysis of decisions from other circuits that, as the bankruptcy court explained, "identified two exceptions to the general rule that § 362(a)(1) does not apply to non-debtor parties," applicable in "unusual circumstances." SA.20 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986)). Aearo urges that those "exceptions" should include cases where there is "such identity between the debtor" and non-debtor co-defendant that a judgment against the non-debtor "will in

effect be a judgment against the debtor" as well as where the pending litigation "would cause the debtor irreparable harm." *Id.*

As the bankruptcy court explained, while this Court "and other courts within the Circuit, have cited *A.H. Robins* and the above exceptions to § 362(a)(1)'s seemingly plain language, the Circuit has not, to date, expansively discussed or formally adopted *A.H. Robins* in this regard." SA.21. *See In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991); *Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of the Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998). Nor, as the bankruptcy court observed, has this Court ever "actually extended the stay to a non-debtor party under that reasoning." SA.21. Instead, in each cited case, the Court correctly held that the automatic stay did not extend beyond the debtor, and because the discussion of the urged exceptions in those cases was "unnecessary to the outcome," *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988), it was unnecessary for the Court to consider whether the Fourth Circuit's decision could be squared with the statutory text.

**3.** Additional considerations confirm that this Court should not extend § 362(a)(1) beyond its plain meaning. The Bankruptcy Code

reflects Congress's careful balancing of competing interests. The Supreme Court has thus repeatedly made clear that courts must apply the Code's requirements as Congress has written them and cannot deviate from them even in the "rare case." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 469-71 (2017); *see also, e.g.*, *Law v. Siegel*, 571 U.S. 415 (2014); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012). The statutory stay is not an exercise of a court's equitable discretion. It applies to a specified list of enumerated actions and takes effect immediately and without regard to a court's assessment of the equities.

Congress's careful enumeration of actions prohibited by the automatic stay, along with various specified exceptions, underscores that there can be no proper basis for expanding Congress's list and extending the stay to entities other than the debtor. *See Law*, 571 U.S. at 424 (explaining, in the context of a different Code provision, that the Code's "meticulous—not to say mind-numbingly detailed— enumeration" of exceptions "confirms that courts are not authorized to create additional exceptions").

17

Expanding the scope of the automatic stay would also be at odds with the operation of that provision. The automatic stay is self-executing; it operates automatically upon the filing of a bankruptcy petition to prohibit the enumerated actions. Thus, court orders that issue in violation of the stay "ordinarily are void." *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984). And subject to potential equitable limitations, individuals may be liable for actions that violate the stay. *See id.* Extending the scope of the stay based on case-specific determinations would be irreconcilable with the critical goal of providing clear rules to debtors, creditors, and courts. *Cf.* Aearo Br. 50 (recognizing "the need for administrability and clarity in often complex and fast-moving Chapter 11 cases").

That other provisions of § 362(a) operate to prevent actions— including against non-debtors—that will diminish the estate further confirms that there is no compelling reason to expand § 362(a)(1) beyond its text. *See, e.g.*, 11 U.S.C. § 362(a)(3), (4) (prohibiting actions to "obtain possession of property of the estate" or to "create, perfect, or enforce any lien against property of the estate"). And, as noted, this Court has recognized bankruptcy courts' limited equitable authority

18

under § 105(a) to enjoin suits that will "affect the amount of property in the bankruptcy estate" or "the allocation of property among creditors." *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (quotation omitted).

Apart from the overarching reasons for rejecting Aearo's proposed expansion of the automatic stay, accepting Aearo's argument would be particularly inappropriate here, where Aearo voluntarily agreed to the indemnity obligation on the eve of bankruptcy. As explained, the Code reflects a basic *quid pro quo* established by Congress that requires debtors to undertake certain obligations in order to obtain the benefits of bankruptcy relief, including the relief provided by the automatic stay. But 3M has not itself filed for bankruptcy and has not agreed to undertake those obligations. Permitting a debtor to orchestrate the extension of the automatic stay to a solvent co-defendant would encourage strategic gamesmanship and provide solvent companies facing large tort liability a roadmap to achieving at least some of bankruptcy's benefits without shouldering its obligations as Congress intended.

### B.    Section 362(a)(3) Does Not Stay the Tort Claims Against 3M

Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Although the provision speaks only to property of the estate, Aearo urges that it also automatically stayed the pending tort claims against 3M. Aearo argues that it "shares coverage under insurance policies with 3M"; that the proceeds of those policies constitute property of Aearo's estate; and that if the claims are not stayed, "3M will continue to pursue coverage and payment under those policies, thus diminishing Aearo's estate property." Aearo Br. 45. But Aearo errs in characterizing the proceeds from the insurance policies as property of the estate and, in any event, the tort suits themselves do not seek to obtain any proceeds from the policies.

Although the shared insurance policies that Aearo identifies are themselves property of the estate, *see In re Stinnett*, 465 F.3d 309, 312 (7th Cir. 2006), it does not follow that any proceeds paid out under the policies to cover claims against 3M are also property of the estate. To the contrary, both Aearo and 3M have independent contractual rights to

the proceeds from the shared policies, and a "debtor's interest in a portion of property does not subject the entire property" to the estate, *In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996).

Thus, 3M has its own independent property interest in the right to receive payouts from the insurance policies, and that property interest is not property of the estate subject to § 362(a)(3). *Cf. Stinnett*, 465 F.3d at 312-13 (suggesting that insurance payouts are property of the estate only "to the extent that the debtor has or would have a right to receive and keep those payments when the insurer paid on a claim"). Because the tort claimants seek to proceed only against 3M, those suits would, at most, implicate 3M's independent property interest in, and not the bankruptcy estate's interest in, those shared policies.

In any event, the tort suits against 3M are not stayed by § 362(a)(3) because the suits do not themselves seek to obtain, or exercise control over, any proceeds from the insurance policies. To the contrary, the tort suits seek a judgment against 3M, and "[t]here is no evidence" that the tort plaintiffs "are proceeding directly against the insurance policies." SA.24.

The correctness of the bankruptcy court's ruling is underscored by its finding that the paying of insurance proceeds to 3M would not actually diminish Aearo's estate. Under the Funding Agreement, 3M has agreed to act "as a complete, uncapped backstop to the insurance policies," which means that "tapping the insurance policies to cover any liability incurred" in the tort suits "does not affect the amount of money Aearo can pay its creditors because the Funding Agreement covers all claims arising from" those suits "in the absence or exhaustion of the applicable insurance." SA.25-26. Thus, any attempt by 3M to exercise its own independent right to payouts under the shared insurance policies will not have the effect, legally or practically, of exercising control over Aearo's estate property.

Finally, the error in Aearo's argument is underscored by Aearo's own framing of the interaction between the tort suits and the insurance policies. Aearo does not suggest that the tort suits themselves will directly operate against the shared insurance policies. Instead, Aearo speculates that 3M may seek reimbursement under the policies to fund its litigation defense or to satisfy adverse judgments against it. *See* Aearo Br. 45-48. If the proceeds were, in fact, property of the estate, the

automatic stay would not halt the tort suits; it would bar 3M from tapping the policies. Aearo has not suggested that the court should preserve the estate's property in this manner.

### C. The Bankruptcy Court Properly Declined to Enjoin the Suits Against 3M Under 11 U.S.C. § 105(a)

The bankruptcy court also correctly rejected Aearo's request to exercise its equitable authority under 11 U.S.C. § 105(a) to enjoin the tort claims against 3M. That rejection reflected the court's factual finding that the tort claims against 3M will not have any actual effect on Aearo's bankruptcy estate or on the distribution of property to creditors. Based on that factual finding, the court correctly applied this Court's precedents to conclude that it lacked jurisdiction to enjoin the tort suits and properly determined, in the alternative, that it would not exercise its equitable authority to enjoin the suits in any event.

**1.** Section 105(a) authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Consistent with this Court's conclusion that § 105(a) focuses on enabling the bankruptcy court to "protect [its] jurisdiction" and ability to carry out the substantive provisions of the

Code, a bankruptcy court in this circuit may issue a preliminary injunction under § 105(a) prohibiting the continuation of suits against non-debtors when the court "is satisfied that such proceedings would defeat or impair its jurisdiction" by affecting "the amount of property in the bankrupt[cy] estate" or "the allocation of property among creditors." *Fisher*, 155 F.3d at 882 (quotation omitted).

As an initial matter, a court's exercise of discretion should be informed by the provisions of the automatic stay, which reflect the equitable balance legislated by Congress. A court should not lightly employ its discretion to extend the stay beyond the parameters established by the stay provisions.

The court below plainly did not abuse its discretion in concluding that the terms of the agreement between 3M and Aearo immediately prior to the bankruptcy filing did not provide grounds for enjoining the pending suits against 3M. As explained, under the Funding Agreement, when a judgment is entered against 3M in one of the tort suits, it will ask Aearo for the funds to satisfy the judgment. Aearo will then turn around and request that 3M provide it the funds to satisfy 3M's request.

24

3M will provide the funds to Aearo. And Aearo will send the funds right back to 3M.

As a practical matter, then, these portions of the Funding Agreement—entered into on the eve of Aearo's bankruptcy—seem to have little purpose other than to pass 3M's potential tort liability through Aearo's bankruptcy estate. As Aearo's requests—relying in large part on that pass-through—for automatic stay and preliminary injunction relief for 3M demonstrate, the point of passing through those liabilities appears to be to gain bankruptcy's protections for 3M without requiring 3M to actually file a bankruptcy petition.

But any such machinations geared at extending the benefits of bankruptcy to the non-debtor 3M "circumvent the Code's procedural safeguards," *Jevic Holding Corp.*, 580 U.S. at 468, and undermine the basic *quid pro quo* contemplated by the Code. To benefit from bankruptcy, a debtor is required to shoulder a host of obligations. A chapter 11 debtor must make extensive disclosures of its creditors, assets and liabilities, income and expenditures, and the nature of its financial affairs. It must then, under the supervision of the bankruptcy court, agree to, and obtain confirmation of, a chapter 11 plan that meets

multiple substantive requirements, including that ensure that the plan is feasible, treats all of the creditors' claims equitably, and generally leaves each class of creditors no worse off than it would be if the debtor were liquidated. Furthermore, the equity owners of the debtor generally cannot retain their interest or receive a distribution on account of their ownership until all creditors have been paid in full with interest. *See In re Castleton Plaza, LP*, 707 F.3d 821, 821 (7th Cir. 2013). And only if a corporation in chapter 11 bankruptcy can obtain successful confirmation of a plan of reorganization will that corporation be able to discharge certain debts. 11 U.S.C. § 1141(d).

In this case, because only Aearo has filed a bankruptcy petition, only Aearo has agreed to take on the obligations and duties that the Code requires. 3M has not made the extensive financial disclosures required for a debtor, nor has 3M submitted itself to the supervision of the bankruptcy court to obtain relief under a feasible and equitable chapter 11 plan. At the same time, the corporate enterprise's apparent strategy in this case is to have 3M fund a settlement trust for tort claimants as part of an Aearo plan of reorganization, presumably in exchange for an order releasing not just Aearo but also 3M from liability for those

claims. *See* SA.36 (suggesting the intent of "Aearo and/or 3M" to "negotiate a global settlement" of the claims).

The attempt to allow both 3M and Aearo to enjoy bankruptcy's benefits while only Aearo shoulders its obligations is additionally unjustified because "bankruptcy significantly disrupts creditors' existing claims against the debtor." *In re LTL Mgmt., LLC*, __ F.4th __, 2023 WL 1098189, at *10 (3d Cir. Jan. 30, 2023). The Bankruptcy Code provides a debtor "with considerable powers," including "the automatic stay" and the "discharge of debts," that "can impose significant hardship on particular creditors." *Id.* (quotation omitted). Although Congress has determined that "the exercise of those powers is justified" with respect to a debtor who is validly in bankruptcy and complying with bankruptcy's obligations, *id.* (quotation omitted), Congress has not determined to extend those same powers to non-debtor joint tortfeasors, co-defendants, or other third parties.

**2.a.** The bankruptcy court's denial of plaintiffs' claim for equitable relief also reflects its finding that the litigation against 3M will have no "actual economic effect" on "Aearo's bankruptcy estate and, ultimately, its distribution to creditors." SA.35. For this reason, the bankruptcy

court also recognized that there was no reasonable "basis upon which to invoke [the court's] § 105(a) powers" at this point. *Id.*

As discussed above, Aearo claimed that the suits could diminish its estate by depleting insurance proceeds or triggering its obligation under the Funding Agreement to indemnify 3M for any judgments. As the bankruptcy court explained, however, the Funding Agreement obligates 3M to fund, at an uncapped level, a bankruptcy trust for both Aearo's Earplug-related liabilities and also for any indemnity obligations Aearo might incur. SA.8-11. In short, under the Funding Agreement, 3M serves "as a complete, uncapped backstop" for Aearo. SA.25-26.

The bankruptcy court's finding is correct. If a judgment is entered in one of those suits against 3M, Aearo may have an obligation to indemnify 3M. But Aearo can demand funding from 3M to satisfy that obligation. This circular exchange thus has no net effect on Aearo's estate. The same would be true if 3M exhausted a shared insurance policy to fund defense of the tort suits against it. 3M will ultimately be responsible for funding Aearo's bankruptcy trust whether or not Aearo has access to insurance proceeds. Accordingly, there is not "any financial impact to creditors, let alone a significant and adverse one,

from the continuation of the" tort suits. SA.32; *see also id.* (finding that continuation of the tort suits will not "affect the amount of property for distribution or the allocation of property among creditors").

In resisting that conclusion, Aearo does not suggest that the bankruptcy court misunderstood the workings of its agreement with 3M. It instead argues (at 66) that, under the Funding Agreement, Aearo is required to exhaust its own assets before receiving any funding from 3M.

But even assuming Aearo correctly interprets the Funding Agreement, the bankruptcy court observed that "the Funding Agreement[] makes clear that if Aearo's assets are 'or are projected to be . . . insufficient to pay or satisfy the Liabilities or amounts or otherwise maintain the Minimum Balance,' then 3M must honor Aearo's funding request." SA.31 (second alteration in original) (footnote omitted). (The minimum balance is $5 million cash on hand, held by the Aearo companies. SA.31 n.13.) Aearo has not offered any reason to conclude that its assets will avoid exhaustion, or projected exhaustion, and thereby avoid triggering this obligation, regardless of whether the tort suits proceed. On the contrary, as part of the Funding Agreement,

29

3M made an initial commitment of $1.24 billion to fund Aearo's bankruptcy case and a trust for the tort claimants, strongly suggesting an understanding that Aearo's assets standing alone are insufficient to fund a bankruptcy resolution. SA.8. The parties have thus plainly recognized that Aearo's liabilities will outstrip its assets and that Aearo will be required to tap into the Funding Agreement, regardless of whether the tort suits proceed.

Aearo also briefly suggests (at 66-67) that "it is by no means guaranteed that Aearo will always receive 3M funding to make up for any reduction in assets." But Aearo has presented no evidence that there is any serious possibility that 3M will be unable to fulfill its obligations. As the bankruptcy court explained, "3M is a large, profitable company, boasting $35 billion in net sales in 2021." SA.4. By contrast, the jury verdicts already returned in the tort suits "ranged from $1.7 million to $77.5 million." SA.6. It is thus unsurprising that Aearo has identified no indication that 3M is in any imminent danger of being unable to cover the costs associated with the tort suits.

**b.** The bankruptcy court also correctly concluded that because the tort suits against 3M will not have "any financial impact [on] creditors,"

SA.32, the court would, under this Court's precedents, lack jurisdiction to enjoin the pending suits.

District courts (and, by referral, bankruptcy courts) have jurisdiction over proceedings "arising under" title 11 or "arising in or related to" title 11 bankruptcy cases. 28 U.S.C. § 1334(b). For the bankruptcy court to have jurisdiction to enjoin the tort suits against 3M, those suits must satisfy one of those three requirements. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Because it is plain that the tort suits do not "arise under" title 11 or "aris[e] in" Aearo's bankruptcy case, the bankruptcy court's jurisdiction turns on whether the suits are "related to" Aearo's bankruptcy case.

This Court applies a "constrained approach" to "related to" jurisdiction, SA.30: a dispute is "related to" a pending title 11 case only when the dispute "affects the amount of property for distribution . . . or the allocation of property among creditors," *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1991) (quotation omitted). Because, on the record before the bankruptcy court, the court reasonably found that the tort suits against 3M would not have any such practical effect, it also

correctly concluded that it would lack jurisdiction to enjoin the ongoing proceedings against 3M.

In resisting that conclusion, Aearo primarily contends that more recent caselaw from this Court abrogates that longstanding precedent and instead adopts a test under which any dispute that has a "potential effect" on the estate falls within the bankruptcy court's "related to" jurisdiction. *See* Aearo Br. 62-64 (citing *Bush v. United States*, 939 F.3d 839, 846 (7th Cir. 2019)).

*Bush* did not purport to overrule this Court's precedent establishing that an actual effect is required. *Cf. Bush*, 939 F.3d at 846 (warning that nothing in the opinion should be read to "imply an overruling or even a modification of circuit precedent"). Instead, *Bush* simply clarified that the jurisdictional inquiry must be undertaken *ex ante* because a jurisdictional decision cannot be deferred until "after the merits have been resolved and the effect can be known with certainty." *Id.* And here, the bankruptcy court properly engaged in that required *ex ante* inquiry, determining—at this point on the record before it—that the tort suits will not have any actual effect on the estate.

Moreover, regardless of which standard was employed, Aearo's speculation regarding unlikely contingencies is insufficient to demonstrate the bankruptcy court's jurisdiction. On jurisdictional questions, "the party asserting a right to a federal forum has the burden of proof," *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008), and Aearo has failed to come forward with any concrete evidence to substantiate its speculation that the tort suits will have an actual or potential effect on the estate. *Cf. Scanlan v. Eisenberg*, 669 F.3d 838 (7th Cir. 2012) ("Mere speculation is not enough to establish an injury in fact." (quotation omitted)).

In short, through the bankruptcy filing and subsequent preliminary injunction motion, 3M seeks to garner the fundamental benefits of bankruptcy—including a stay that prevents tort claimants from pursuing litigation in the forum of their choice and gives it the ability to reach a single, overarching resolution of all the tort claims (even over some claimants' objection)—without subjecting itself to the Code's attendant obligations. The bankruptcy court was fully justified in refusing to exercise its extraordinary equitable authority to aid that effort.

33

## CONCLUSION

For the foregoing reasons, the order of the bankruptcy court should
be affirmed.

                                    Respectfully submitted,

*Of Counsel:*                       BRIAN M. BOYNTON
                                       *Principal Deputy Assistant*
                                       *Attorney General*

RAMONA D. ELLIOTT                   ZACHARY A. MYERS
   *Deputy Director/General*           *United States Attorney*
   *Counsel*
P. MATTHEW SUTKO                    MARK B. STERN
   *Associate General Counsel*
WENDY COX                           *s/ Sean R. Janda*
   *Trial Attorney*                 SEAN R. JANDA
   *Executive Office for United*       *Attorneys, Appellate Staff*
   *States Trustees*                   *Civil Division, Room 7260*
   *U.S. Department of Justice*        *U.S. Department of Justice*
                                       *950 Pennsylvania Avenue NW*
                                       *Washington, DC 20530*
                                       *(202) 514-3388*
                                       *sean.r.janda@usdoj.gov*

February 2023

34

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Circuit Rule 29 because it contains 6,392 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Sean R. Janda*

Sean R. Janda

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Sean R. Janda*

Sean R. Janda

**ADDENDUM**

# TABLE OF CONTENTS

11 U.S.C. § 105(a) ...................................................................... A1

11 U.S.C. § 362(a) ...................................................................... A1

## 11 U.S.C. § 105(a)

### § 105. Power of court

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

## 11 U.S.C. § 362(a)

### § 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

A1

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.