No. 22-2606

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

IN RE: AEARO TECHNOLOGIES, LLC, ET AL.,

AEARO TECHNOLOGIES, LLC, ET AL.,

*Debtors-Appellants*,

*v.*

THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT AND
JOHN & JANE DOES, 1-1000,

*Appellees.*

*on direct appeal from the United States Bankruptcy Court for the
Southern District of Indiana, Indianapolis Division
No. 22-2890, Adv. No. 22-50059*

## BRIEF OF AMICI CURIAE SENATOR RICHARD DURBIN, SENATOR SHELDON WHITEHOUSE, SENATOR RICHARD BLUMENTHAL, SENATOR TAMMY BALDWIN, SENATOR ELIZABETH WARREN, SENATOR TAMMY DUCKWORTH, U.S. REPRESENTATIVE JERROLD NADLER, AND U.S. REPRESENTATIVE DAVID CICILLINE, SUPPORTING APPELLEES AND URGING AFFIRMANCE

Trent Miracle
SIMMONS HANLY CONROY
One Court Street
Alton, IL  62002
(618) 259-2222

Elizabeth Middleton Burke
ROGERS, PATRICK, WESTBROOK &
  BRICKMAN LLC
1037 Chuck Dawley Blvd., Bldg A
Mount Pleasant, SC  29465
(843) 727-6500

February 1, 2023

J. Carl Cecere
CECERE PC
6035 McCommas Blvd.
Dallas, TX  75206
(469) 600-9455
ccecere@cecerepc.com

*Counsel for amici curiae*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2606

Short Caption: In re: Aearo Technologies LLC.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Amici Curaie Senators Richard Durbin, Sheldon Whitehouse, Richard Blumenthal, Tammy Baldwin, Elizabeth Warren,

and Tammy Duckworth, and U.S. Representatives Jerrold Nadler and David Cicilline

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Cecere PC; Rogers, Patrick, Westbrook & Brickman LLC; and Simmons Hanly Conroy

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        none

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        none

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
The Debtors are wholly owned subsidiaires of non-Debtor 3M Company

Attorney's Signature: /s/ J. Carl Cecere     Date: 2/1/2023

Attorney's Printed Name:  J. Carl Cecere

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☑     No ☐

Address:  6035 McCommas Blvd., Dallas, TX 75206

Phone Number: 469.600.9455     Fax Number:

E-Mail Address: ccecere@cecerepc.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As    Clear Form

Appellate Court No: __22-2606_____

Short Caption: _In re: Aearo Technologies LLC._____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Amici Curaie Senators Richard Durbin, Sheldon Whitehouse, Richard Blumenthal, Tammy Baldwin, Elizabeth Warren,

 and Tammy Duckworth, and U.S. Representatives Jerrold Nadler and David Cicilline

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Cecere PC; Rogers, Patrick, Westbrook & Brickman LLC; and Simmons Hanly Conroy

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        none

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        none

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 The Debtors are wholly owned subsidiaires of non-Debtor 3M Company

Attorney's Signature: _/s/ Trent Miracle_____    Date: _2/1/2023_____

Attorney's Printed Name: _Trent Miracle_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  Simmons Hanly Conroy

  One Court Street, Alton, IL  62002

Phone Number: _618.259.2222_____    Fax Number: _____

E-Mail Address: _tmiracle@simmonsfirm.com_____

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2606

Short Caption: In re: Aearo Technologies LLC.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Amici Curaie Senators Richard Durbin, Sheldon Whitehouse, Richard Blumenthal, Tammy Baldwin, Elizabeth Warren,

    and Tammy Duckworth, and U.S. Representatives Jerrold Nadler and David Cicilline

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Cecere PC; Rogers, Patrick, Westbrook & Brickman LLC; and Simmons Hanly Conroy

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    none

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    none

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    The Debtors are wholly owned subsidiaires of non-Debtor 3M Company

Attorney's Signature: /s/ Elizabeth Middleton Burke     Date: 2/1/2023

Attorney's Printed Name:  Elizabeth Middleton Burke

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐  No ☑

Address:  Rogers, Patrick, Westbrook & Brickman LLC

    1037 Chuck Dawley Blvd., Bldg. A, Mt. Pleasant, SC 29465

Phone Number: 843.727.6500     Fax Number:

E-Mail Address: bburke@rpwb.com

rev. 12/19 AK

# TABLE OF CONTENTS

Index of authorities ................................................................................. ii

Statement of interest.................................................................................1

Introduction and  summary of argument.................................................3

Argument....................................................................................................9

I.     Congress has not provided bankruptcy courts with any power to
       stay  litigation  against  non-debtors  like  3M  based  on  their
       corporate connections with the debtor.........................................9

         1.     § 362(a)(1)'s provisions extending the automatic stay
                to actions "against the debtor" does not encompass
                actions against non-debtors like 3M...................................10

         2.     Earplug claims against 3M do not constitute "acts" to
                "control"  estate  property  under  § 362(a)(3)  merely
                because  3M  might  access  estate  property  to  satisfy
                them.....................................................................................18

         3.     § 105(a) does not permit bankruptcy courts to enjoin
                claims  in  the  absence  of  some  other  statutory
                authority...............................................................................21

II.    Rejecting 3M's effort to obtain a stay is vital to prevent abuse of
       the Bankruptcy Code. ...................................................................22

Conclusion................................................................................................25

Certificate of compliance .......................................................................26

Certificate of service...............................................................................27

i

# INDEX OF AUTHORITIES

**Cases:**

*In re A.H. Robins Co., Inc.,*
788 F.2d 994 (4th Cir. 1986) ................................................................10, 18

*In re Combat Arms Earplug Products Liability Litig.,*
MDL No. 2885 (N.D. Fla.) ................................................................7

*LTL Mgmt., LLC v. John & Jane Does 1-1000 (In re LTL Mgmt. LLC),*
Nos. 22-2003 *et al.* (3d Cir. Jan. 30, 2022) ................................................6

*Pitts v. Unarco Indus., Inc.,*
698 F.2d 313 (7th Cir. 1983) ................................................................18

**Statutes:**

The Bankruptcy Amendments and Federal Judgeship Act of 1984,
Pub. L. No 98-353, § 441(a)(1), 98 Stat. 371 ................................................19

11 U.S.C. § 101(13) ................................................................10

11 U.S.C. § 101(14) ................................................................10

11 U.S.C. § 105(a) ................................................................21

11 U.S.C. § 362(a) ................................................................13, 18, 21

11 U.S.C. § 362(a)(1) ................................................................10, 12, 13, 14, 17, 18

11 U.S.C. § 362(a)(2) ................................................................13

11 U.S.C. § 362(a)(3) ................................................................18, 19, 20

11 U.S.C. § 362(a)(4) ................................................................13

11 U.S.C. § 362(a)(5) ................................................................13

11 U.S.C. § 362(a)(6) ................................................................13

11 U.S.C. § 362(a)(7) ................................................................13

11 U.S.C. § 362(a)(8) ...................................................................13

11 U.S.C. § 922 ...........................................................................14

11 U.S.C. § 1201 .........................................................................15

11 U.S.C. § 1301 .........................................................................15

**Legislative Materals:**

168 Cong. Rec. S682 (daily ed. Feb. 15, 2022) ...................................23

168 Cong. Rec. S683 (daily ed. Feb. 15, 2022) ................................6, 24

H.R. Rep. No. 109-31 (2005) ..........................................................3

H.R. Rep. No. 95-595 (1977) ........................................12, 15, 16, 21

*Hr'gs on Bankruptcy Act Revision Before the House Subcommittee on*
*Civil and Constitutional rights of the Committee on the Judiciary,*
94th Cong., 2d Sess. (Apr. 5, 1976)..................................................17

Letter from Senators Richard J. Durbin, Elizabeth Warren, and
Richard Blumenthal, and Representatives Carolyn B. Maloney and
Raja Krishnamoorthi, to Alex Gorsky, Chairman and CEO,
Johnson & Johnson (Nov. 10, 2021), <https://bit.ly/3JdVxHt> .............6, 23

Letter from Senators Richard J. Durbin, Elizabeth Warren, and
Richard Blumenthal, and Representatives Carolyn B. Maloney
and Raja Krishnamoorthi, to Joaquin Duato, Vice-Chairman of the
Executive Committee, Johnson & Johnson (Dec. 17, 2021),
<https://bit.ly/3GLkKpM>.........................................................23, 24

S. Rep. No. 95-989 (1978). ..............................................................6

**Other Authorities**

Martina Barash, *3M Preview of Redo Quest in Earplug Trials*
*Rebuffed by Court,* Bloomberg Law (July 12, 2022),
<http://bit.ly/3wpnNzc> .............................................................7

*Black's Law Dictionary* (11th ed. 2019)............................................19

*Collier on Bankruptcy.* ............................................................................21

Adam J. Levitin, *Purdue's Poison Pill: The Breakdown of Chapter 11's Checks and Balances*, 100 Tex. L. Rev. 1079 (2022) ........................................5

Jonathan Randles, Becky Yerak & Andrew Scurria, *How Bankruptcy Could Help Johnson & Johnson Corral Vast Talc Litigation*, Wall St. J., Nov. 12, 2021, <https://perma.cc/48PV-FPV3> ..........................5

Jonathan Randles, *Profitable Companies Enlist Bankruptcy Courts to Sidestep Cancer Trials*, Wall St. J, Feb. 8, 2022, <http://bit.ly/3J4t4U2> ....................................................................5

Samir D. Parikh, *Mass Exploitation*, 170 U. Penn. Law Rev. Online 53 (2021), <https://bit.ly/3ZLTxM8> .....................................................5

Samir D. Parikh, *The New Mass Torts Bargain*, 91 Fordham L. Rev. 447 (2022) ............................................................5

## STATEMENT OF INTEREST[1]

Amici are members of the U.S. Senate and the House of Representatives. They include:

Senator **Richard Joseph Durbin**, the Chair of the Senate Judiciary Committee and the senior United States senator from Illinois, a seat he has held since 1997.

Senator **Sheldon Whitehouse**, the Chair of the Senate Judiciary Committee Subcommittee on Federal Courts, Oversight, Agency Action, and Federal Rights and the junior United States senator from Rhode Island, a seat he has held since 2007.

Senator **Richard Blumenthal**, a member of the Senate Judiciary Committee and the senior United States senator from Connecticut, a seat he has held since 2011.

Senator **Tammy Baldwin**, a member of the Senate Committee on Health, Education Labor & Pensions and the junior United States senator from Wisconsin, a seat she has held since 2013.

---

[1] No counsel for any party authored this brief in whole or in part, and no person or entity other than amici or their counsel made a monetary contribution intended to fund the brief's preparation or submission. All parties have consented to the filing of this brief.

1

Senator **Elizabeth Warren**, former bankruptcy law professor and the senior United States senator from Massachusetts, a seat she has held since 2013.

Senator **Tammy Duckworth**, retired Army National Guard lieutenant colonel and the junior United States senator from Illinois, a seat she has held since 2017.

Congressman **Jerry Nadler**, former Chairman and current Ranking Member of the House Judiciary Committee and the U.S. Representative for New York's 12th Congressional District. He has served in the U.S. House of Representatives since 1992.

Congressman **David Cicilline**, the U.S. Representative for Rhode Island's First Congressional District, a seat he has held since 2011.

Amici possess deep experience with the Nation's bankruptcy laws. Several serve in leadership positions on congressional committees with legislative jurisdiction over bills to amend the Bankruptcy Code and the laws governing the jurisdiction of the bankruptcy courts, including the current Chair of the Senate Judiciary Committee, the current Chair of the Senate Judiciary Subcommittee that has jurisdiction over bankruptcy, and the former Chairman and current Ranking Member of the House Judiciary Committee.

Amici also share a grave concern for the ways in which wealthy corporations abuse the protections of bankruptcy, including improper manipulation of the automatic stay, to shield themselves from liability while denying thousands of injured people, including Amici's constituents, their day in court.

Amici write to urge the Court to reject this latest attempt at bankruptcy abuse, which, if adopted, would allow 3M to evade accountability for harming thousands of Americans without having to enter bankruptcy themselves, and would create a roadmap allowing other large corporations to evade liability for mass torts and other harmful misconduct. Congress did not intend to permit that result.

## INTRODUCTION AND
## SUMMARY OF ARGUMENT

Congress created bankruptcy to provide a "fresh start" for the "honest but unfortunate debtor" overwhelmed by insurmountable debts, *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (internal quotation omitted)—the "last resort" for those with no other option, H.R. Rep. No. 109-31, pt. 1, at 4 (2005). Yet in recent years, the Bankruptcy Code has increasingly been manipulated by solvent, blue-chip companies faced with mass tort liability and is becoming a font for abuse by mammoth corporations with billions on their balance

sheets. Through dubious readings of the Bankruptcy Code that Congress never intended, financially healthy corporations and those that control them have invented elaborate loopholes enabling them to pick and choose among the debt-discharging benefits of bankruptcy without having to subject themselves to its creditor-protecting burdens—and without ever declaring bankruptcy themselves. And they use these tactics to avoid liability for products that kill or harm thousands of people, to shield billions in assets from creditors, and to force victims to accept pennies on the dollar for their claims.

These abusive tactics are proliferating, and if left unchecked, will accelerate. Perhaps the most notorious has been the Sackler Family's employment of "third-party releases" as part of the Chapter 11 reorganization plan of their family-owned company Purdue Pharma, manufacturer of the highly addictive opioid oxycontin. When the Sacklers recognized that Purdue's liabilities for creating the opioid crisis would swamp the company, and would extend to them personally, they stripped the company of assets that could be used to pay claims, sent the money oversees to impenetrable funds located in the Channel Islands, and then demanded that all opioid claimants be forced to release them from liability in exchange for giving a portion back to Purdue to fund a trust that would pay those injured by their wrongdoing a miniscule

fraction of their true value.[2] But the Sacklers never entered bankruptcy themselves, and get to retain the bulk of their multi-billion-dollar fortune.

Equally abusive is the "Texas two-step,"[3] a maneuver through which Johnson & Johnson, a $200 billion Delaware-based company, famously attempted to shed its liability for cancer-causing asbestos in its talcum powder product designed for babies. It did so through a labyrinthine corporate reshuffling that involved reincorporating in Texas, dividing in two, shunting its talc-related liabilities into the newly formed company whose sole purpose was to reincorporate in another jurisdiction so that it might declare bankruptcy in a favorable jurisdiction.[4] Thankfully, just this week, the Third Circuit rejected this attempted evasion, concluding that the bankruptcy of Johnson & Johnson's debt-laden affiliate must be dismissed because it was not

---

[2] *See* Samir D. Parikh, *The New Mass Torts Bargain*, 91 Fordham L. Rev. 447, 451 (2022); *see also* Adam J. Levitin, *Purdue's Poison Pill: The Breakdown of Chapter 11's Checks and Balances*, 100 Tex. L. Rev. 1079, 1106 (2022).

[3] Jonathan Randles, *Profitable Companies Enlist Bankruptcy Courts to Sidestep Cancer Trials*, Wall St. J, Feb. 8, 2022, <http://bit.ly/3J4t4U2>.

[4] *See* Samir D. Parikh, *Mass Exploitation*, 170 U. Penn. Law Rev. Online 53, 55, 58-59 (2021), <https://bit.ly/3ZLTxM8>; *see also* Jonathan Randles, Becky Yerak & Andrew Scurria, *How Bankruptcy Could Help Johnson & Johnson Corral Vast Talc Litigation*, Wall St. J., Nov. 12, 2021, <https://perma.cc/48PV-FPV3>.

filed in good faith. *See LTL Mgmt., LLC v. John & Jane Does 1-1000 (In re LTL Mgmt. LLC)*, Nos. 22-2003 *et al.* (3d Cir. Jan. 30, 2022).

Yet such manipulated "loopholes,"[5] which represent an improper "[e]xploitation of the bankruptcy system"[6] through corporate "shell games," remain a matter of great concern for Congress. Amici are actively pursuing legislative solutions to these misuses of the Bankruptcy Code to enshrine in statute that these abuses are not authorized by Congress—and never were.

The manipulations at issue in the present case concern one of the most "fundamental debtor protections provided by the bankruptcy laws": the automatic stay. S. Rep. No. 95-989, at 54-55 (1978). The protection of the automatic stay is meant to provide "the debtor a breathing spell from his creditors," ceasing "all collection efforts, all harassment, and all foreclosure actions," so that debtors might "attempt a repayment or reorganization plan or simply be relieved of the financial pressures" that drove them into bankruptcy. *Id.* But many large companies now invoke the automatic stay to

---

[5] 168 Cong. Rec. S683 (daily ed. Feb. 15, 2022) (Statement of Sen. Durbin).

[6] Letter from Senators Richard J. Durbin, Elizabeth Warren, and Richard Blumenthal, and Representatives Carolyn B. Maloney and Raja Krishnamoorthi, to Alex Gorsky, Chairman and CEO, Johnson & Johnson at 2 (Nov. 10, 2021), (*Nov. 10, 2021 Letter*) <https://bit.ly/3JdVxHt>.

stave off mass tort litigation despite being at no risk of going bankrupt themselves. The current case represents a deeply troubling example of that abusive practice.

3M, a multi-billion-dollar company, currently faces over 200,000 claims that the Combat Arms Earplugs it provided to American servicemen and women are dangerously defective and caused hearing loss. *See In re Combat Arms Earplug Products Liability Litig.*, MDL No. 2885 (N.D. Fla.). SA.5. After experiencing a string of losses in bellwether trials in the multi-district litigation where those claims are currently being litigated, 3M devised a way to escape the multi-district litigation and extinguish its liability on these claims.[7] 3M arranged for Aearo, the corporate affiliate from which it purchased its earplug business, to enter bankruptcy, and then attempted to use its corporate relationship with Aearo to justify a stay of all earplug litigation against 3M—even though 3M would never enter bankruptcy itself. (Aearo Br. 11-12, citing SA.7-13.) And while 3M insists in this Court that it seeks nothing more than a "temporary" pause of that litigation during

---

[7] *See* Martina Barash, *3M Preview of Redo Quest in Earplug Trials Rebuffed by Court*, Bloomberg Law (July 12, 2022), <http://bit.ly/3wpnNzc> (reporting that "[i]n the 16 bellwether trials conducted to date, 3M has won 6 and lost 10).

7

bankruptcy (Aearo Br. 53), there is little doubt that 3M will eventually try to convert that temporary pause into a permanent injunction, a prelude to seeking total absolution for its liabilities. Aearo has already previewed in the bankruptcy court that it will seek a "third-party release of 3M," and will force all 3M claimants to go through the anticipated Aearo bankruptcy "settlement trust" for compensation rather than the multi-district litigation, depriving plaintiffs of their day in court. *In re Aearo*, No. 1:22-bk-2890, Informational Brief, ECF No. 12 at 56.

But the bankruptcy court rejected that demand, and this Court should affirm that decision. Congress provided no option in the Bankruptcy Code to stay litigation against non-debtors like 3M—whether through the provisions of the automatic stay or through application of the bankruptcy court's injunctive powers. And 3M's attempt to force that stay through its free-form, atextual gloss on the Code's provisions would give any giant corporation a roadmap to avoid virtually any mass tort liability by obtaining a bankruptcy-like absolution without providing bankruptcy-required protections for creditors. That was not the result that Congress intended in the Bankruptcy Code, and it is not a result that this Court should permit.

8

The lower court's denial of 3M's requested injunction should therefore be affirmed.

## ARGUMENT

### I.    Congress has not provided bankruptcy courts with any power to stay litigation against non-debtors like 3M based on their corporate connections with the debtor.

Aearo insists that every one of the more than 200,000 earplug claims that have been asserted against 3M must be halted, and eventually extinguished, because Aearo and 3M have connections that, to Aearo's eyes, require that 3M enjoy the protections of the automatic stay. But the ties that bind 3M and Aearo—which stem from the fact that many plaintiffs have asserted claims against both companies, and that 3M might access property of the estate to satisfy those claims through contractual indemnity obligations or shared insurance coverage—are no different than the connections that essentially all corporate affiliates involved as co-defendants in mass tort litigation would possess. Congress did not intend for such connections to justify extending the automatic stay to cover 3M under any of the Code provisions that Aearo invokes.

1.    § 362(a)(1)'s provisions extending the automatic stay to actions "against the debtor" does not encompass actions against non-debtors like 3M.

Aearo (at 28) first relies upon § 362(a)(1), which stays actions "against the debtor" or "to recover a claim against the debtor." 11 U.S.C. § 362(a)(1). By their terms, these two clauses in § 362(a)(1) pertain only to actions that concern the "debtor"—*i.e.* the particular "individual," "partnership," "corporation" or "municipality" that files for bankruptcy. 11 U.S.C. § 101(13), (14). Aearo acknowledges that this "typically" means that § 362(a)(1) does not extend the automatic stay to non-debtors like 3M. (Aearo Br. 20.) But Aearo nonetheless insists that § 362(a)(1) contains its own "exception" (Aearo Br. 21) to that general rule, rooted in the Fourth Circuit's decision in *In re A.H. Robins Co., Inc.*, 788 F.2d 994 (4th Cir. 1986). And Aearo claims this supposed "exception" extends the stay to non-debtors in two situations: (1) when there is such an "identity" of interests between the debtor and the non-debtor that a judgment against one is "effectively" a judgment against the other; or (2) when taking action against the non-debtor would present a risk of "irreparable harm" to the debtor or create difficulty in "formulat[ing] an acceptable reorganization plan." (*Id.*)

10

Aearo claims that both situations described by that exception are present here. Aearo asserts that there is an "identity" of interests between 3M and itself because plaintiffs normally bring earplug claims against both 3M and Aearo as joint tortfeasors, creating an overlap in "evidence, arguments, and theories" between the claims asserted against both defendants. (*Id.*) And Aearo asserts that the sheer number of claims brought against 3M creates a risk of "irreparable harm" to the debtor, and may make formulating a plan difficult, because 3M might draw upon its contractual indemnity rights or joint insurance coverage to pay those claims, draining the estate of assets that could be used to pay creditors. (*Id.*) But Congress left no room for such an "exception" in § 362(a)(1)—and certainly not under the unbounded terms Aearo describes.

It is true that the second clause of § 362(a)(1) extends the automatic stay beyond lawsuits "against the debtor" directly, to include lawsuits that seek to "recover a claim against the debtor"—even if that recovery comes *indirectly*, from non-debtors. But the category of third-party claims described in that second clause is strictly limited and does not map on to Aearo's supposed "exception." Rather, that second clause refers only to claims that are *actually* "against the debtor," even when asserted against a third party. Congress

11

intended for this provision to make fraudulent transfer actions subject to the automatic stay, because such an action is usually asserted against the transferee who receives the allegedly improper conveyance, but it concerns "a claim against the debtor" because the conveyance is recoverable only as the result of the debtor's wrongful conduct.

Congress included this second clause in § 362(a)(1) because fraudulent transfers do not fit within the various provisions in § 362(a) that stay actions concerning "property of the estate or property of the debtor." H.R. Rep. No. 95-595, at 341 (1977). This is because the assets fraudulently transferred ceased being "property that was property of the debtor before the case" when they were "transferred" to the fraudulent transferee. *Id.*

But the category of third-party actions Congress included in § 362(a)(1) to capture fraudulent transfer claims does not extend to earplug claims against 3M. Claims that *actually* seek to recover "claims against the debtor," because they depend upon the debtor's unlawful conduct, bear no resemblance to claims that are only "effectively" against the debtor in Aearo's vague phrasing. And the earplug claims against 3M fall short even of that uncertain mark, because the only relationship that those claims possess to a claim against Aearo stems from the fact that both 3M and the debtor are co-defendants in

most of them. Such claims are "effectively" against the debtor only because Aearo says so. Accordingly, earplug claims against 3M cannot even fit within Aearo's imaginary exception. And the fact that Congress delineated the categories of claims protected by the automatic stay § 362(a)(1) so carefully and precisely as to include a special subclause within § 362(a)(1) solely to capture fraudulent transfer claims makes clear that the provision does not extend beyond what § 362(a)(1)'s plain text allows, leaving no room for any atextual "exception" that might accommodate those claims.

That conclusion is confirmed by the careful drafting of § 362(a)'s provisions delineating the scope of the automatic stay. Each of the provisions in this list is clear about whether it pertains to claims against non-debtors or not. Congress provided that clarity by delineating between provisions, like § 362(a)(1), that stay actions against "the debtor"—and only the debtor (*see* 11 U.S.C. § 362(a)(1), (5), (6), (7), (8))—and others that stay any certain actions that concern "property of the estate" (*see* 11 U.S.C. § 362(a)(2), (3), (4)), which extend the stay to any action that seeks such estate property, even when it lies in non-debtor hands.

Furthermore, Congress's extension of the automatic stay to non-debtors in other parts of § 362(a) only reinforces the idea that § 362(a)(1) itself is

confined to actions against the debtor. Likewise, the fact that Congress specified that several items in § 362(a)'s list would pertain to actions that affect estate property, and § 362(a)(1) is not among them, is further evidence that Congress did not intend for § 362(a)(1) to contain any "exception" that captures *all* claims affecting estate property—even when it affects that property in significant or irreparable ways.

Equally compelling evidence to support that conclusion can be found in the variations on the automatic stay that Congress has provided for bankruptcy proceedings outside of Chapter 11. Many chapters of the Bankruptcy Code contain their own specially tailored versions of the automatic stay. And many of these bespoke automatic stay provisions expressly reach non-debtors in the precise circumstances in which Aearo claims § 362(a)(1)'s "exception" should apply, making it even more telling that Congress omitted any specific mention of such an exception in § 362(a)(1).

For instance, Chapter 9, which covers bankruptcies by municipalities, contains a provision "in addition to the stay provided by section 362" that extends the automatic stay to any "action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." 11 U.S.C. § 922. Congress deemed this extension of the automatic stay to specific

14

individuals to be necessary because it considered "[t]he automatic stay provided under section 362 of title 11" to be "incomplete for a municipality because there is the possibility of action by a creditor or inhabitant of the municipality to collect taxes due the municipality." H.R. Rep. 95-595, at 398 (1977). This provision demonstrates that when Congress wants to extend the automatic stay to specific categories of non-debtors—like officers or inhabitants—it says so directly. If Congress had actually adopted Aearo's "exception" extending the stay to a debtor's non-debtor joint tortfeasors and corporate affiliates, Congress would have provided for it specifically and mentioned those categories of non-debtors by name. Congress's decision not to do so demonstrates that this "exception" does not exist.

Similarly specific are the special versions of the automatic stay included in Chapter 12, which is dedicated to family farm operations and fishermen, and in Chapter 13, which allows for reorganizations by individuals. These chapters contain provisions, stated in nearly identical terms, which provide that in addition to the stay provided under § 362(a), creditors of debtors covered by these chapters are stayed from collecting any "consumer debt of the debtor from any individual that is liable on such debt with the debtor." *See* 11 U.S.C. §§ 1201, 1301. These "co-debtor" stays prevent collection efforts against co-

signers, guarantors, or sureties on a debtor's consumer debts during the course of bankruptcies under Chapters 12 and 13, out of concern that debtors in such proceedings might be subject to "indirect pressure from a creditor exerted through his friends or relatives" during the bankruptcy. H.R. Rep. No. 95-595, at 121. "Most often, cosigners" on consumer debts "are relatives, friends or coworkers of the debtor, who have signed as a favor to the debtor." *Id.* And if a creditor moves to collect against these friends or relatives to recover on the debtor's obligations, often "[t]he debtor, not wishing to see his friends or relatives subjected to having to pay the debt, will make an agreement with the creditor to reaffirm the debt and pay it himself." *Id.*

Congress recognized that the potential for such side agreements with particular creditors would make it "difficult" to "consummate" individual bankruptcies. *Id.* This is so because such agreements place certain creditors above others in violation of the priority scheme provided by the Code and may drain the estate of funds available to pay claims—either because the debtor pays the creditor outside of bankruptcy or the creditor collects against the co-debtor, causing the co-debtor to assert a "subrogation" claim against the debtor. *See id.; Hr'gs on Bankruptcy Act Revision Before the House*

16

*Subcommittee on Civil and Constitutional rights of the Committee on the Judiciary,* 94th Cong., 2d Sess. 2101 (Apr. 5, 1976).

The existence of these "co-debtor" stays in Chapters 12 and 13 confirm that the "exception" that Aearo sees in § 362(a)(1) does not exist, because that exception would make such co-debtor stays unnecessary. After all, debtors share the same "identity of interest" with co-debtors as Aearo shares with 3M, because a lender seeking to collect such a debt could file a lawsuit against both debtor and co-debtor, and would have to prove the same "evidence, arguments, and theories" to succeed on its claims against each. (Aearo Br. 21.) Likewise, a co-debtor who pays a debt against a creditor has the same sorts of rights against the debtor that 3M has against Aearo, and would present a risk of "irreparable harm" to the estate under Aearo's "exception." So if § 362(a)(1) really did contain a general provision that extended the automatic stay to suits against non-debtors whenever that "identity of interest" with the debtor existed, or the suit against the non-debtor presented a risk of "irreparable harm" to the debtor, then Congress would not have felt it necessary to build specific bespoke provisions on top of § 362(a)(1) to address these concerns in the specific context of codebtors in Chapters 12 and 13.

The implication from this close textual analysis of § 362(a)(1) and its surrounding Code provisions is unmistakable: "[t]he clear language of Section 362(a)(1) thus extends the automatic stay provision only to the debtor filing bankruptcy proceedings and not to non-bankrupt co-defendants." *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314 (7th Cir. 1983). That is the law in this circuit, and that law should not change. To allow otherwise would permit an atextual gloss on the Code, based on judicial suppositions about the Code's "purpose and intent," to override Congress's express intent enumerated in statutory text. *Robins*, 788 F.2d at 999.

> ### 2.   Earplug claims against 3M do not constitute "acts" to "control" estate property under § 362(a)(3) merely because 3M might access estate property to satisfy them.

Aearo fares no better with its invocation of § 362(a)(3). While that subsection is among the items in § 362(a)'s list that expands the scope of the automatic stay to encompass certain actions against non-debtors, Congress did not extend its scope far enough to reach earplug claims against 3M.

§ 362(a)(3) prohibits any "act" to "obtain possession of property of the estate" or to obtain property "from the estate" or "to exercise control over property of the estate." Aearo asserts that earplug claims against 3M fall into the third of these categories, contending that because 3M might draw upon

insurance coverage it allegedly shares with Aearo to pay those claims, that potential action *by 3M* makes the *earplug claimant's claim* an "act" to "exercise control over property of the estate." (Aearo Br. 23.) But that conclusion is unfounded.

Congress did not include this third clause of § 362(a)(3) in the initial version of the Bankruptcy Code. Congress added it in 1984, with the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No 98-353, § 441(a)(1), 98 Stat. 371, to make clear that the stay extended beyond mere efforts to "obtain possession" of estate property and encompasses efforts to "exercise control" over that property in another's possession.

But a plaintiff does not seek to "exercise control over property of the estate" when he sues a non-debtor to obtain that non-debtor's property in that non-debtor's possession. The term "exercise" means "make use of; to put into action." *Black's Law Dictionary* (11th ed. 2019) ("exercise"). Congress' use of the term in § 363(a)(3) was meant to capture circumstances in which an "act" by the claimant—the "act" to be stayed—is the act that seeks to obtain or control property of the estate. Those circumstances would include an action against the debtor's bank to freeze the debtor's account, or an action against an insurance company to control disposition of the proceeds from the debtors'

insurance policies. Those circumstances do not, however, include claims such as earplug claims against 3M. The plaintiffs in those cases are not suing Aearo's insurers, or 3M's either. They are simply suing 3M itself, to recover against 3M. That cannot be considered an action to "obtain possession of" or "control" Aearo's property.

That result remains unchanged by the fact that 3M asserts the right to make use of estate property to satisfy claims in those actions. The plaintiffs suing 3M are not attempting to force 3M to access insurance coverage shared with Aearo, or to direct 3M to invoke its indemnity rights against Aearo. The earplug claimants are indifferent to the method by which they receive restitution, or the particular source of the funds used to make them whole, so long as they receive full compensation for their damages. It is up to 3M to decide whether to access estate assets to satisfy earplug claims, and thus the "act" to "control" the property of the estate would be initiated by 3M, not the earplug claimants. Accordingly, those claimants are not trying to "make use" of Aearo's assets, or "put" them into action, and they are therefore not seeking to "exercise" control over Aearo's assets. That makes § 362(a)(3) inapplicable to earplug claims against 3M.

**3.      § 105(a) does not permit bankruptcy courts to enjoin claims in the absence of some other statutory authority.**

Finally, Aearo cannot invoke a bankruptcy court's powers to issue injunctions under section § 105(a) to obtain a stay of claims against 3M when the provisions of § 362(a) do not already extend the automatic stay to them. § 105(a) empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of title 11. This provision is derived from the "All Writs Act," and conveys "full injunctive powers" to bankruptcy courts. H.R. Rep. No. 95-595, at 12. But those powers are nonetheless bounded by specific textual limitations in § 105(a) itself.  Because a bankruptcy court can issue injunctions only to "carry out the provisions" of the Bankruptcy Code, Congress intended that a bankruptcy court's exercise of § 105(a) power must be tied to, and authorized by, a specific Code provision. It cannot be based on some "general bankruptcy concept or objective." 2 *Collier on Bankruptcy* ¶ 105.01[1]. Aearo's failure to show that any provision of the automatic stay applies to 3M's claims therefore dooms Aearo's attempt to obtain an injunction under § 105(a)—because it leaves Aearo without the necessary statutory authority under the Code to support such an injunction.

21

Accordingly, Aearo cannot invoke any authority that would permit a bankruptcy court to stay earplug claims against 3M based on 3M's connections to the debtor. Congress has simply declined to provide any mechanism in the Code allowing for that result.

## II.    Rejecting 3M's effort to obtain a stay is vital to prevent abuse of the Bankruptcy Code.

Congress had good reason to decline to grant non-debtors the protections of the automatic stay under the circumstances of this case. The possibility that non-debtors might obtain the protections of the automatic stay in bankruptcy based on nothing more than their routine corporate connections to bankrupt affiliates creates a font for potential abuse by giant corporations seeking to offload mass tort liabilities while shielding their mammoth assets. And if Aearo's position becomes law, it will likely make these abuses routine. After all, if a non-debtor's conventional corporate connections to a debtor are truly enough to justify a stay of litigation against the non-debtor during the pendency of a Chapter 11 proceeding, then wealthy corporations will be able to use bankruptcy to evade liability for virtually any mass tort.

This is especially so when these wealthy corporations inevitably combine abuses of the automatic stay with other bankruptcy abuses. If Aearo succeeds in this case, then it is reasonable to expect that in the next case involving a

22

corporation that harmed thousands of people, that corporation will invoke the "Texas Two-Step" strategy to *create* the corporate affiliate that could trigger the stay and assume those mass tort liabilities. Then that corporation could engage in machinations to force third-party releases that make the litigation stay permanent. That is the logical consequence of a ruling for 3M in this case—the roadmap that corporations could follow in response to virtually every mass tort case.

Accordingly, allowing Aearo's position to prevail here would fuel abuses that are already transforming a system designed to help "struggling businesses as a last resort"[8] to become the favorite of "massively wealthy corporations whose products caused harm,"[9] enabling them to "offload liability,"[10] "evade accountability,"[11] and "dodge their legal obligations to

---

[8] Letter from Senators Richard J. Durbin, Elizabeth Warren, and Richard Blumenthal, and Representatives Carolyn B. Maloney and Raja Krishnamoorthi, to Joaquin Duato, Vice-Chairman of the Executive Committee, Johnson & Johnson at 1 (Dec. 17, 2021) (*Dec. 17, 2021 Letter*), <https://bit.ly/3GLkKpM>.

[9] 168 Cong. Rec. S682 (daily ed. Feb. 15, 2022) (Statement of Sen. Durbin).

[10] *Nov. 10, 2021 Letter*, *supra* at 1.

[11] *Id.*

victims."[12] That will improperly force tens of thousands of people to give up "their day in court,"[13] and seek restitution from "shell compan[ies]" created exclusively to protect other companies where they will "likely receive pennies on the dollar, if anything at all"[14] for their claims, even as the fully solvent companies that actually caused the harm, and have the money to pay claims, escape liability entirely.

This is entirely out of line with Congress's intent in providing for automatic stays in bankruptcy cases. It would corrupt the fundamental purpose of the bankruptcy system itself. And that is why this Court should not depart from the text Congress provided.

---

[12] 168 Cong. Rec. S683 (daily ed. Feb. 15, 2022) (Statement of Sen. Durbin).

[13] *Id.*

[14] *Dec. 21, 2021 Letter*, *supra* at 1.

## CONCLUSION

This Court should affirm the judgment of the bankruptcy court.

Respectfully submitted,

*/s/ J. Carl Cecere*

Trent Miracle                           J. Carl Cecere
SIMMONS HANLY CONROY                     CECERE PC
One Court Street                         6035 McCommas Blvd.
Alton, IL  62002                         Dallas, TX  75206
(618) 259-2222                           (469) 600-9455
                                         ccecere@cecerepc.com

Elizabeth Middleton Burke
ROGERS, PATRICK, WESTBROOK               *Counsel for amici curiae*
  & BRICKMAN LLC
1037 Chuck Dawley Blvd., Bldg A
Mount Pleasant, SC 29465
(843) 727-6500


February 1, 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 29(d) of the Federal Rules of Appellate Procedure because this brief contains 4,967 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure and Circuit Rule 32(a)(2).

This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because the brief has been prepared using Microsoft Word 2013 in 14-point Century Expanded BT font, which is a proportionately spaced typeface.

*/s/ J. Carl Cecere*

**J. Carl Cecere**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, which will send notice of such filing to all counsel who are registered CM/ECF users.

*/s/ J. Carl Cecere*

**J. Carl Cecere**