No. 22-2606

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

IN RE: AEARO TECHNOLOGIES, LLC, ET AL.

———————————————————

AEARO TECHNOLOGIES, LLC, ET AL.,

*Debtors-Appellants,*

v.

THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT AND
JOHN & JANE DOES, 1-1000,

*Appellees.*

———————————————————

On Direct Appeal from the United States Bankruptcy Court for the Southern
District of Indiana, Indianapolis Division
No. 22-2890, Adv. No. 22-50059

———————————————————

## BRIEF FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR TORT CLAIMANTS – RELATED TO THE USE OF RESPIRATORS AS *AMICUS CURIAE* IN SUPPORT OF APPELLEE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR TORT CLAIMANTS – RELATED TO THE USE OF COMBAT ARMS VERSION 2 EARPLUGS

———————————————————

Michael R. Rochelle
Kevin D. McCullough
Shannon S. Thomas
Tara L. Bush
ROCHELLE MCCULLOUGH, LLP
325 N. Saint Paul St., Suite 4500
Dallas, TX 75201

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2606

Short Caption: Aearo Technologies, LLC, et al. v. Those Parties Listed on Appendix A to the Complaint, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Official Committee of Unsecured Creditors for Tort Claimants – Related to the Use of Respirators

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Rochelle McCullough, LLP; Mattingly Burke Cohen & Biederman LLP

(3)    If the party, amicus or intervenor is a corporation:

 i)    Identify all its parent corporations, if any; and

 N/A

 ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

 N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 The Debtors are wholly-owned subsidiaries of non-debtor 3M Company

Attorney's Signature: /s/ Michael R. Rochelle        Date: 02/01/2023

Attorney's Printed Name: Michael R. Rochelle

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 325 North Saint Paul Street, Suite 4500

 Dallas, Texas 75201

Phone Number: 214-580-2501        Fax Number: 214-953-0185

E-Mail Address: buzz.rochelle@romclaw.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2606</u>

Short Caption: <u>Aearo Technologies, LLC, et al. v. Those Parties Listed on Appendix A to the Complaint, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    <u>Official Committee of Unsecured Creditors for Tort Claimants    Related to the Use of Respirators</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Rochelle McCullough, LLP; Mattingly Burke Cohen & Biederman LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>The Debtors are wholly-owned subsidiaries of non-debtor 3M Company</u>

Attorney's Signature: <u>/s/ Kevin D. McCullough</u>    Date: <u>02/01/2023</u>

Attorney's Printed Name: <u>Kevin D. McCullough</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address: <u>325 North Saint Paul Street, Suite 4500</u>

        <u>Dallas, Texas 75201</u>

Phone Number: <u>214-580-2580</u>    Fax Number: <u>214-963-0182</u>

E-Mail Address: <u>kdm@romclaw.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2606

Short Caption: Aearo Technologies, LLC, et al. v. Those Parties Listed on Appendix A to the Complaint, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Official Committee of Unsecured Creditors for Tort Claimants      Related to the Use of Respirators

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Rochelle McCullough, LLP; Mattingly Burke Cohen & Biederman LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

The Debtors are wholly-owned subsidiaries of non-debtor 3M Company

Attorney's Signature: /s/ Shannon S. Thomas      Date: 02/01/2023

Attorney's Printed Name: Shannon S. Thomas

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: 325 North Saint Paul Street, Suite 4500

Dallas, Texas 75201

Phone Number: 214-580-2504      Fax Number: 214-963-0182

E-Mail Address: sthomas@romclaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2606

Short Caption: Aearo Technologies, LLC, et al. v. Those Parties Listed on Appendix A to the Complaint, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   Official Committee of Unsecured Creditors for Tort Claimants     Related to the Use of Respirators

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Rochelle McCullough, LLP; Mattingly Burke Cohen & Biederman LLP

(3)      If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

      N/A

   ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      N/A

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   The Debtors are wholly-owned subsidiaries of non-debtor 3M Company

Attorney's Signature: /s/ Tara L. Bush                    Date: 02/01/2023

Attorney's Printed Name:   Tara L. Bush

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✓]

Address:   325 North Saint Paul Street, Suite 4500

   Dallas, Texas 75201

Phone Number:  214-580-2520                    Fax Number:  214-963-0182

E-Mail Address:  tbush@romclaw.com

rev. 12/19 AK

iv

## <u>TABLE OF CONTENTS</u>

DISCLOSURE STATEMENTS..................................................i

TABLE OF AUTHORITIES ...............................................vii

STATEMENT OF AMICUS CURIAE ...................................... 1

SUMMARY OF ARGUMENT ................................................ 2

ARGUMENT ......................................................................... 4

    I.    3M IS NOT A DEBTOR AND DOES NOT DESERVE A
          DEBTOR'S PROTECTIONS. ........................................ 4

    II.   NO STAY UNDER § 362 (a) (1) IS AVAILABLE TO 3M IN
          THE SEVENTH CIRCUIT.........................................6

        A. Section 362(a)(1) Only Protects the Debtors..........................6

        B. No "Unusual Circumstances" Exist Here ...............................8

        C. Denying a Stay Creates No Irreparable Harm......................9

    III.  BECAUSE THE MDL LITIGATION WILL NOT DEPLETE
          THE DEBTORS' ESTATES, NO STAY IS AVAILABLE
          UNDER § 362 (a) (3)....................................................11

        A. The Seventh Circuit Test.......................................................11

        B. The Funding Agreement Ensures That the Estate Will Not
           Be Depleted ..................................................................... 11

    IV.  THE BANKRUPTCY COURT PROPERLY DECLINED TO
          ENJOIN MATTERS WHICH WOULD NOT AFFECT THE
          DEBTORS' ESTATES. ............................................... 13

        A. Bankruptcy Jurisdiction Is Limited, and This Circuit Is
           Careful About Its Outer Reaches .........................................13

        B. The Bankruptcy Court Properly Applied Seventh Circuit
           Standards to the Issue ..........................................................14

        C. The Bankruptcy Court's Declining to Enjoin Under § 105(a)
           Properly Returns the MDL Issues to the MDL Court.......... 16

CONCLUSION .............................................................. 18

CERTIFICATE OF COMPLIANCE ....................................................... 19

CERTIFICATE OF SERVICE................................................................ 20

# TABLE OF AUTHORITIES

C<small>ASES</small>

*A.H. Robins Co. v. Piccinin,*
    788 F.2d 994, 999 (4th Cir.)--------------------------------------------------------8, 9
*Croyden Assocs. v. Alleco, Inc.,*
    969 F.2d 675, 677 (8th Cir. 1992) ----------------------------------------------- 8
*Dore v. Assoc.'s Contracting, Inc. v. American Druggist Ins. Co.,*
    54 B.R. 353, 357 (Bankr. W.D. Wis. 1985)--------------------------------- 16
*Home Ins. Co. v. Cooper & Cooper, Ltd.,*
    889 F.2d 746, 749 (7th Cir. 1989) ----------------------------------------------- 16
*In re FedPak Sys.,*
    80 F.3d 207, 214 (7th Cir. 1996) ------------------------------------------------- 16
*In re Fernstrom Storage & Van Co.,*
    938 F.2d 731, 735 (7th Cir. 1991) -------------------------------------- 7, 8, 9
*In re Harang,*
    634 B.R. 731, 2021 WL 6128992, at *5 (B.A.P. 6th Cir. 2021) -------- 11
*In re Integrated Telecom Express, Inc.,*
    384 F.3d 108, 120 (3d Cir. 2004) -------------------------------------------------- 6
*In re Klarchek,*
    508 B.R. 386, 395 (Bankr. N.D. Ill. 2014)--------------------------------- 12
*In re Lengacher,*
    485 B.R. 380, 383 (Bankr. N.D. Ind. 2012) ---------------------------------- 8
*In re LTL Mgmt., LLC,*
    No. 22-2003, at 39–40 (3d Cir. Jan. 30, 2023) -------------------------------- 6
*In re MCSi, Inc.,* 371 B.R. 270,
    275 (S.D. Ohio 2004) ------------------------------------------------------------- 11
*In re SGL Carbon Corp.,*
    200 F.3d 154, 165-66 (3d Cir. 1999) --------------------------------------------- 7
*In re White,*
    415 B.R. 696, 698 (Bankr. N.D. Ill. 2009)-------------------------------------- 8
*In re Xonics, Inc.,*
    813 F.2d 127, 131 (7th Cir. 1987) ------------------------------------------------ 16
*McCartney v. Integra Nat'l Bank, N.,*
    106 F.3d 506, 510 (3d Cir. 1997) ----------------------------------------------8, 9

*National Tax Credit Partners, L.P. v. Havlik,*
  20 F.3d 705, 708 (7th Cir. 1994)------------------------------------------- 12, 13

*Queenie, Ltd. v. Nygard Int'l,*
  321 F.3d 282, 287 (2d Cir. 2003)------------------------------------------- 10

*Stanford v. Foamex L.P.*, No. 07-4225, 2009 U.S. Dist. LEXIS 32405,
  2009 WL 1033607, at *6–7 (E.D. Pa. Apr. 15, 2009) -------------------- 8, 9

## STATUTES

§ 362(a)(1) --------------------------------------------------------------8, 9, 10, 11
§ 362(a)(3) -------------------------------------------------------------------- 13
11 U.S.C. § 105(a) ------------------------------------------------15, 16, 18, 19, 20
28 U.S.C. § 1334 ------------------------------------------------------------ 8, 17
Fed. R. App. P. 29(a)(4) ---------------------------------------------------- 3

## STATEMENT OF AMICUS CURIAE

The Respirator Committee[1] represents individual stakeholders (the "Respirator Claimants") in the bankruptcy cases filed by the Debtors-Appellants (the "Bankruptcy Cases").[2] The Respirator Claimants brought thousands of products liability suits before the Bankruptcy Cases were filed (the "Respirator Cases").[3] Those suits, which seek damages for injuries from respirator use in coal mines, currently pend in both state and federal courts. The major defendants include not only the Debtors-Appellants but also 3M Company; Cabot CSC LLC; American Optical Company; and Mine Safety Appliances Company, LLC (non-Debtor defendants collectively being the "Other Defendants").

---

[1]      The full title of the committee created by the U.S. Trustee is the Official Committee of Unsecured Creditors for Tort Claimants – Related to the Use of Respirators, hence the shortening.

[2]      Pursuant to Fed. R. App. P. 29(a)(4), no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting of the brief; and no person other than the amicus curiae, its members, or its counsel, contributed money that was intended to fund preparing or submitting the brief.

[3]      The Respirator Cases involve 2,500-plus individual Respirator Claimants, many of many of whom are severely and/or terminally ill suffering from coal worker's pneumoconiosis, rapidly progressive pneumoconiosis, silicosis, and complications from those diseases. More than 20 individual Respirator Claimants have died since the Debtors-Appellants filed the Bankruptcy Cases. According to the Respirator Committee's best estimates, the total sum of the claims in the Respirator Cases could exceed $1 billion.

The Respirator Claimants were not named parties in the Debtors' adversary proceeding subject to this appeal because they are not parties in the underlying multi-district litigation (the "MDL"). Nonetheless, the filing of the Bankruptcy Cases has made the Respirator Plaintiffs' difficult situation worse. Although each such individual must deal with chronic and incurable disease, the Debtors' filings have stopped all progress in their securing redress.[4]

The Respirator Committee has a strong interest in the outcome of this appeal because it directly impacts the Respirator Claimants' abilities to pursue their claims against 3M and the Other Defendants in the Respirator Cases.

## SUMMARY OF ARGUMENT

Chapter 11 has twin goals: helping financially distressed debtors to reorganize while maximizing their estate's value. In denying an

---

[4] The bankruptcy filings effectively halted all actions outside the Bankruptcy Court in the Respirator Cases, as state and federal trial court judges have been reluctant to allow the Respirator Cases to proceed against the Other Defendants where any of the Debtors-Appellants are named co-defendants. The Respirator Committee is currently seeking relief from the United States Bankruptcy Court for the Southern District of Indiana (the "Bankruptcy Court") in the form of an Omnibus Order that, pursuant to § 362 of the Bankruptcy Code, the automatic stay does not extend to the Other Defendants so that the Respirator Claimants may sever, dismiss, or otherwise remove the Debtors-Appellants from the Respirator Cases and proceed against the Other Defendants in non-bankruptcy courts.

injunction benefiting 3M, the Bankruptcy Court achieved these fundamental goals by correctly applying Seventh Circuit law.[5]

The Debtors protest the *potential* financial harm to their estates from the Bankruptcy Court's decision but ignore the actual human cost the Bankruptcy Cases continue to cause the Respirator Claimants and their families. Thousands of Respirator Claimants – who never used Aearo and 3M earplugs – had their lives disrupted by the bankruptcy filings, which halted not only the MDL earplugs proceeding but also the Respirator Claimants' suits for redress. Suddenly, miners suffering incurable lung diseases saw their straightforward state court litigation halted.

3M developed a risk management plan for its earplug liabilities. It caused several expendable subsidiaries to file chapter 11 and at the same time asked the Bankruptcy Court to stay the MDL litigation against 3M, claiming the stay would protect the debtors' estates. When a solvent company like 3M seeks bankruptcy's benefits but shuns its burdens, unintended consequences occur. The Respirator Claimants and their

---

[5] Following the naming convention used by the Official Committee of Unsecured Creditors for Tort Claimants – Related to the Use of Combat Arms Version 2 Earplugs, "SA" is Aearo's Short Appendix; "A" is Aearo's Appendix; and "CA" is the CAEv2 Committee's Supplemental Appendix.

families have borne the heaviest burden in this case. 3M's decision to place the Aearo entities into bankruptcy has delayed justice for the Respirator Claimants by staying state and federal court lawsuits. The miners are stayed, but their disease continues its incurable path.

In considering 3M's request for an injunction, the Bankruptcy Court's analysis was methodical and correct: no unusual circumstances justify a stay under Section 362(a)(1); denying the stay will have no pecuniary effect on the bankruptcy estates under Section 362(a)(3); and no "related to" jurisdiction exists that would allow a stay under Section 105(a).

The Bankruptcy Code does not provide for 3M, a non-debtor third party, to gain from the Bankruptcy Cases at the Respirator Claimants' expense. The Respirator Claimants depend upon this Court to protect their interests by upholding the provisions and intent of the Bankruptcy Code.

## ARGUMENT

## I. 3M IS NOT A DEBTOR AND DOES NOT DESERVE A DEBTOR'S PROTECTIONS.

The 3M Company did not file a bankruptcy petition, yet it seeks many of bankruptcy's protections. The Respirator Claimants have been

severely harmed by the Debtors' filings and impeded in their ability to seek compensation for their injuries. They are a vulnerable population of individuals, virtually all of them miners or their widows, who sustained serious injuries by using products made by the Debtors and 3M.

The impact of the Bankruptcy Cases on these two groups could not be more different. Since the filing of the Bankruptcy Cases, 3M has profited from continuing to conduct its broad operations across many divisions, business as usual. For the individual Respirator Claimants, however, the Bankruptcy Cases have had a profound negative impact, stalling their lawsuits in state and federal courts as 3M and other defendants named alongside the Debtors have asserted claims that a purported automatic stay shields them from continuing litigation even though they are non-debtors. Meanwhile, more than 20 Respirator Claimants have died without being able to pursue final resolution of their claims since the filing of the Bankruptcy Cases. This inequity is not what legislators intended when implementing the Bankruptcy Code.

Had the Bankruptcy Court granted the Debtors' injunction request, 3M would have secured for itself, a non-debtor, many of chapter 11's

considerable powers—the automatic stay, the exclusive right
to propose a reorganization plan, the discharge of debts, etc.—
that can impose significant hardship on particular creditors.

*In re LTL Mgmt., LLC*, No. 22-2003, at 39–40 (3d Cir. Jan. 30, 2023)

(quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 120 (3d Cir.

2004) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 165-66 (3d Cir.

1999)). The Bankruptcy Court properly decided that those powers and

protections were not meant for the likes of 3M.

## II.    NO STAY UNDER § 362 (a) (1) IS AVAILABLE TO 3M IN THE SEVENTH CIRCUIT.

### A. Section 362(a)(1) Only Protects the Debtors.

The Bankruptcy Court's declining to use the so-called "tools" of

bankruptcy[6] for 3M's benefit does not "threaten the prospects for a

successful reorganization" of the Debtors and does not "irreparably

harm" Aearo pursuant to § 362(a)(1). *See In re Fernstrom Storage & Van

Co.*, 938 F.2d 731, 735 (7th Cir. 1991).

This Circuit has made it clear that under § 362(a) the automatic

stay operates for the bankrupt debtor only:

---

[6]    *I.e.*, 28 U.S.C. § 1334, 11 U.S.C. § 362, and 11 U.S.C. § 105(a).

The clear language of Section 362(a)(1) thus extends the automatic stay provision only to the debtor filing bankruptcy proceedings and not to non-bankrupt co-defendants.

*Pitts v. Unarco Indus.*, 698 F.2d 313, 314 (7th Cir. 1983); *see also Arora v. Diversified Consultants, Inc.*, No. 20 C 4113, 2021 U.S. Dist. LEXIS 109927, at *9 (N.D. Ill. June 11, 2021).[7]

The Courts in this Circuit have consistently followed this rule. Section 362(a)(1) "does not protect separate legal entities, corporations, partnerships or non-debtor co-defendants in pending litigation." *See In re Lengacher*, 485 B.R. 380, 383 (Bankr. N.D. Ind. 2012); *see also In re White*, 415 B.R. 696, 698 (Bankr. N.D. Ill. 2009) ("Generally, the automatic stay . . . does not bar suits against third parties, such as non-debtor entities, even when wholly owned by the debtor, or the debtor's insurers, guarantors, and sureties.").

---

[7]    The Respirator Committee also understands this to be the law in most circuits. *See Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir.1992) ("We are persuaded that the stay required by section 362 should extend only to claims against Alleco, and that the stay is not available to nonbankrupt codefendants, 'even if they are in a similar legal or factual nexus with the debtor.'"); *see also Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir.1984) (nothing in section 362 purports to extend the automatic stay to claims against debtor's solvent co-defendants); *see also Croyden Assocs. v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir. 1992). The only exception to this rule that any of the circuits recognize seems to relate only to non-bankrupt codefendants in "unusual circumstances." *See A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

**B. No "Unusual Circumstances" Exist Here.**

Some Circuits[8]—but not the Seventh—have extended the stay to non-debtor third parties under § 362(a)(1) where "unusual circumstances" exist.[9] The Fourth Circuit has held that they can arise if one of two closely-related situations exist:

- the debtor and another defendant are so closely related and have such an identity of interest that suing the defendant amounts to suing the debtor; or

- suing the other defendant will cause the debtor irreparable injury.

*In re Fernstrom*, 938 F.2d at 736; *see also A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); *see also Stanford v. Foamex L.P.*, No. 07-4225, 2009 U.S. Dist. LEXIS 32405, 2009 WL 1033607, at *6–7 (E.D. Pa. Apr. 15, 2009) (citing *McCartney v. Integra Nat'l Bank, N.*, 106 F.3d 506, 510 (3d Cir. 1997)).

In *Robins*, the Fourth Circuit enjoined suits against directors and officers which interfered with their managing the debtor. The *Robins* court noted that the debtor was genuinely distressed and short on funds.

---

[8]     *See In re Fernstrom*, 938 F.2d at 736; *see also A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); *see also Stanford v. Foamex L.P.*, No. 07-4225, 2009 U.S. Dist. LEXIS 32405, 2009 WL 1033607, at *6–7 (E.D. Pa. Apr. 15, 2009) (citing *McCartney v. Integra Nat'l Bank, N.*, 106 F.3d 506, 510 (3d Cir. 1997)).

[9]     The Bankruptcy Court so noted in its Injunction Denial Order. SA.21 (distinguishing *A.H. Robins Co., Inc. v. Aetna (In re A.H. Robins Co., Inc.)*, 828 F.2d 1023–24 (4th Cir. 1987)).

*See A.H. Robins Co. v. Piccinin*, 788 F.2d at 1004. Here, the Debtors have an uncapped Funding Agreement and filed bankruptcy expressly to derail a long-standing MDL proceeding which had produced results unfavorable to 3M. Given that *Robins'* facts were so inapposite, it is no surprise that the Bankruptcy Court declined to use it as a model for protecting 3M.

Nonetheless, even if the Court were to adopt *Robins'* "unusual circumstances" test, no identity of interest or risk of irreparable injury to the Debtors exists that requires enjoining pursuit of 3M. Under § 362(a)(1), a judgment against 3M is not invariably a "judgment or finding against Aearo" as the Debtors assert.[10] Indeed, after the Bankruptcy Court denied the injunction, the MDL court sanctioned 3M for trying to change its story from "3M alone is responsible" to "Aearo alone is responsible." CA.573–74.

### C. Denying a Stay Creates No Irreparable Harm.

Likewise, continuing the MDL will not irreparably harm the Debtors through issue preclusion or record taint. Generally, for the automatic stay to apply to non-debtors, adjudication of a claim against

---

[10]     Brief for Debtors-Appellants, Case No. 22-2606, Dkt. No. 31, at 35 (the "Opening Brief") (internal quotation marks omitted) (citing *Fernstrom*, 938 F.2d at 736).

the non-debtor must "have an *immediate adverse economic consequence for the debtor's estate*." *See id.* at 315 (quoting *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) (emphasis added)). That is not the case here.

Further, collateral estoppel "has never been the sole justification for extending the stay as to [non-debtor] co-defendants." *See LTL Management*, 638 B.R. at 315 (quoting *In re MCSi, Inc.*, 371 B.R. 270, 275 (S.D. Ohio 2004). The preclusive effect on a future proceeding "remains an open question for another court in a collateral proceeding." *See In re Harang*, 634 B.R. 731, 2021 WL 6128992, at *5 (B.A.P. 6th Cir. 2021).

The risk of potential record taint will not cause "irreparable harm" to the Debtors and therefore cannot warrant extending the stay to 3M. Instead of prejudicing the Debtors, allowing the MDL to proceed assists all parties, including the Debtors, in valuing claims in the Bankruptcy Cases. As the Third Circuit recognized in its recent *LTL Mgmt.* decision, numerous benefits can come from allowing multi-district litigation to progress and "sharpen all interested parties' views of mutually beneficial settlement values." *See LTL Mgmt., LLC*, No. 22-2003, at 49.

### III.    BECAUSE THE MDL LITIGATION WILL NOT DEPLETE THE DEBTORS' ESTATES, NO STAY IS AVAILABLE UNDER § 362 (a) (3).

#### A. The Seventh Circuit Test

To determine whether § 362(a)(3) stays an action, a court must determine whether:

- property of the estate is at issue; and

- the suit constitutes an action to obtain possession of, or exercise control over, the property in question.

*In re Klarchek*, 508 B.R. 386, 395 (Bankr. N.D. Ill. 2014)). Section 362(a)(3) encompasses "every effort to 'exercise control over property of the estate.'" *See National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708 (7th Cir. 1994). "At the heart of the Seventh Circuit's analysis under § 362(a)(3) is whether a third party's effort has a pecuniary effect on the estate." SA.25.

#### B. The Funding Agreement Ensures That the Estate Will Not Be Depleted.

In its § 362(a)(3) argument, Aearo emphasizes the potential for depletion of the shared insurance policies, which are assets of the Debtors' bankruptcy estates. *The Funding Agreement—not the shared insurance policies*—is the Debtors' largest asset and is uncapped. Even

with the Debtors' indemnity obligations to 3M, continued MDL litigation does not deplete the Funding Agreement, which is by far the largest asset of the Debtors' estates. The Debtors concede in their Opening Brief that, "3M is certainly a creditworthy counterparty" and that, "the likelihood of 3M's inability to fund the total amount of depleted insurance proceeds may be relatively low," essentially acknowledging that there is little risk to the Debtors' estate assets. *See* Opening Brief, at 52–53.

The Bankruptcy Court noted that the Funding Agreement does not require either the Debtors be in bankruptcy or any actions against 3M be enjoined as a condition to funding. SA.8. Thus, the Bankruptcy Court could not "discern any financial impact to creditors, let alone a significant and adverse one, from continuation of the Pending Actions." SA.32; *see Havlik*, 20 F.3d at 708.

3M did not create the Funding Agreement because the Debtors were insolvent, but rather as part of a risk management plan to enable forum shopping.[11] An essential part of the scheme required that 3M attach itself to the Debtors' bankruptcy coattails by getting an injunction

---

[11]     This was a challenging maneuver, given that for four years 3M had claimed sole responsibility for those liabilities in the MDL litigation. It also resulted in significant sanctions being imposed on 3M by the MDL court. CA.573–74.

of the MDL proceedings. If the tactic succeeded, 3M would gain most of the benefits of filing bankruptcy, while suffering none of the burdens.

The Bankruptcy Court did not buy into the plan, since it found that the uncapped Funding Agreement ensured the Debtors would remain highly solvent with their uncapped access to cash. As a result, because there was no instance where the estates would be depleted, no injunction under § 362(a)(3) was appropriate.

## IV.  THE BANKRUPTCY COURT PROPERLY DECLINED TO ENJOIN MATTERS WHICH WOULD NOT AFFECT THE DEBTORS' ESTATES.

### A. Bankruptcy Jurisdiction Is Limited, and This Circuit Is Careful About Its Outer Reaches.

The Bankruptcy Court is not a court of general jurisdiction. Although 11 U.S.C. § 105(a) authorizes bankruptcy courts "to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title," that is only the beginning of the inquiry.

The Bankruptcy Code ensures equity for unsecured creditors like the Respirator Claimants by limiting the bankruptcy courts' jurisdiction. Without the guardrails the Code provides, parties would be free to skew the bankruptcy process.

13

**B. The Bankruptcy Court Properly Applied Seventh Circuit Standards to the Issue.**

Here, the Bankruptcy Court considered the scope of its "related to" jurisdiction under Seventh Circuit law. It rightly noted that it cannot create new law, and under § 105(a), the movant has the burden to establish jurisdiction. To establish that jurisdiction, it must show how the dispute relates to the estate, not to a party to the estate.

The Bankruptcy Court's careful approach followed the law in the Circuit, which does not authorize a "broad" approach to "related to" jurisdiction, notwithstanding the Debtors' urging it to do so. SA.29–30.

The Debtors over-simplify the role of the bankruptcy court by claiming its sole purpose is debtor rehabilitation. That is one purpose, but only one of many. Equally important is the protection of creditors' rights and interests, lest unintended consequences arise for third parties such as the Respirator Claimants.

Courts must make two inquiries before issuing injunctive relief under §105(a):

- whether the court has jurisdiction over actions pending outside of the bankruptcy court;

- whether the injunction is appropriate.

SA.27–28 (citing *Dore v. Assoc.'s Contracting, Inc. v. American Druggist Ins. Co.*, 54 B.R. 353, 357 (Bankr. W.D. Wis. 1985)).

Bankruptcy Court jurisdiction is conferred by § 1334(b) of Title 28, which provides:

> the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

*See* 28 U.S.C. § 1334(b). "A case is 'related' to a bankruptcy when the dispute affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors." *In re Mem'l Estates, Inc.*, 950 F.2d at 1368 (internal quotation marks omitted) (citing *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987)).

The Seventh Circuit takes a focused approach to "related to" jurisdiction in the interest of preserving state court jurisdiction over questions of state law. *See In re FedPak Sys.*, 80 F.3d 207, 214 (7th Cir. 1996). Thus,

> [o]verlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of its assets among creditors.

*Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989). As discussed below, the Bankruptcy Court found that the MDL litigation

would not affect the bankruptcy estates because of the uncapped nature of the Funding Agreement.

## C. The Bankruptcy Court's Declining to Enjoin Under § 105(a) Properly Returns the MDL Issues to the MDL Court.

Nothing out-of-the-ordinary occurred in the bellwether process in the MDL, and by all objective measures, it performed its intended purpose to both resolve cases and provide claim valuation information for overall settlement standards. Manifestly, 3M did not like the bellwethers' outcome, and it therefore caused its Aearo subsidiaries to file chapter 11 and seek to take all the MDL liability upon themselves.[12]

While the Debtors argue that mediation in the Bankruptcy Cases would resolve the MDL claims more quickly, the Respirator Committee disagrees. Mediation hides financial transparency from the settling parties, can often stretch out many months, and offers no guaranty of a successful conclusion. Trials, on the other hand, provide a certain outcome in a condensed time. Many of the Respirator Claimants have

---

[12]     This attempted shift in responsibility from 3M to its subsidiaries seems to have turned into an exploding cigar for 3M, in that the MDL Court enacted rigorous sanctions on 3M as a result. CA.573–74.

cases currently pending and ready for trial; their declining health gives them no time to waste.

The Bankruptcy Court properly found that the MDL cannot affect property of the Debtors' estates or distributions to creditors because—despite indemnity or cost sharing agreements between the Debtors and 3M—3M has uncapped funding obligations to the Debtors under the Funding Agreement. SA.31–32. As a result, this Court does not have related to jurisdiction to enjoin the MDL against 3M. *See id.*

Notably, in the Injunction Denial Order, the Bankruptcy Court rejected the Debtors' argument that injunctive relief should issue under § 105(a) because pending actions in other courts would distract 3M from fully performing under the shared services agreement wherein 3M provides legal, insurance, and accounting services to the Debtors (the "SSA"). SA.34–35. As the Court observed, the Debtors and 3M have been actively involved in the MDL for years, and the parties there presented no evidence that pending actions prevented their compliance with the SSA. *See id.* The sheer size of the MDL alone is not enough to deem a stay of pending actions necessary to the Debtors' reorganization or creditor protection. *See id.* at 36.

Even if the Court finds that it does have "related to" jurisdiction under § 105(a), the second inquiry into the appropriateness of injunctive relief in this case proves such relief is neither "necessary or appropriate," nor do requisite "extraordinary circumstances" exist because the Funding Agreement shields the Debtors' bankruptcy estates from any economic effect of continuing the MDL. *See id.* at 35.

Finally, an injunction in this case does not serve the public interest. The facts presented in this case are humbling. The earplugs deafened a significant portion of the United States military; the respirators left thousands of miners with chronic, incurable. and often fatal lung disease. Enjoining these victims from seeking redress cannot be said to serve the public interest, especially when the defendants are not suffering financial distress.

## CONCLUSION

An injunction protecting 3M is a bridge too far. Settled law in this Circuit mandates denying the request; granting the request would upset the statutory balance of benefits and burdens which serve debtor and creditor alike. If 3M truly needs the protection it seeks, it can always file its own bankruptcy case.

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS</u>

1.     This *amicus curiae* brief complies with the type-volume limit of Fed. R. App. P. 32, as modified by 7th Cir. Rule 29 because, excluding the parts exempted by Fed. R. App. P. 32(f), the brief contains 4440 words.

2.     This *amici curiae* brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as modified by 7th Cir. Rule 32(b), and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief uses a proportionally spaced 14-point Century Schoolbook font, according to the Microsoft Word software application used to prepare it.

<u>/s/ *Michael R. Rochelle*</u>
Michael R. Rochelle

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Michael R. Rochelle*
Michael R. Rochelle