**No. 22-2606**

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

IN RE: AEARO TECHNOLOGIES, LLC, ET AL.

————————————

AEARO TECHNOLOGIES, LLC, ET AL.,

*Debtors-Appellants,*

v.

THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT AND
JOHN & JANE DOES, 1-1000,

*Appellees.*

————————————

On Direct Appeal from the United States Bankruptcy Court
for the Southern District of Indiana, Indianapolis Division
No. 22-2890, Adv. No. 22-50059

————————————

## REPLY BRIEF FOR DEBTORS-APPELLANTS

————————————

GEORGE W. HICKS, JR.
AARON L. NIELSON
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000

PAUL D. CLEMENT
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22134
(202) 742-8900
paul.clement@clementmurphy.com

CHAD J. HUSNICK
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

*Counsel for Debtors-Appellants*

February 17, 2023

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................. 1

ARGUMENT .................................................................................... 4

I.  Section 362(a)(1)'s Automatic Stay Applies To The CAEv2 Litigation Against 3M ................................................................ 4

    A.  This Court Has Recognized that §362(a)(1) Can Apply to Non-Debtors in Circumstances Like These ........................ 4

    B.  Section 362(a)(1) Applies to the CAEv2 Litigation Against 3M ......................................................................... 6

II.  Section 362(a)(3)'s Automatic Stay Applies To The CAEv2 Litigation Against 3M .............................................................. 17

    A.  The Bankruptcy Court's Ruling Was Erroneous ............... 18

    B.  Appellees' Alternative Bases for Affirmance Fail ............. 20

III.  The CAEv2 Litigation Against 3M Should Be Enjoined Under 11 U.S.C. §105(a) .................................................... 27

    A.  The Bankruptcy Court Had "Related To" Jurisdiction to Enjoin the CAEv2 Litigation ........................................ 27

    B.  The Bankruptcy Court Did Not Hold for Appellees on the Merits of a §105(a) Injunction ................................... 31

CONCLUSION ............................................................................. 37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Robins Co. v. Piccinin,*
  788 F.2d at 994 (4th Cir. 1986) ..................................................8, 11, 17

*ACandS, Inc. v. Travelers Cas. & Sur. Co.,*
  435 F.3d 252 (3rd Cir. 2006).........................................................22, 25

*Ali v. Fed. Bureau of Prisons,*
  552 U.S. 214 (2008)...............................................................................25

*Avelar-Cruz v. I.N.S.,*
  58 F.3d 338 (7th Cir. 1995)....................................................................4

*Bush v. United States,*
  939 F.3d 839 (7th Cir. 2019)................................................................28

*Celotex Corp. v. Edwards,*
  514 U.S. 300 (1995)...............................................................................28

*City of Chicago v. Fulton,*
  141 S.Ct. 585 (2021)..............................................................................26

*Disch v. Rasmussen,*
  417 F.3d 769 (7th Cir. 2005).................................................................34

*Fisher v. Apostolou,*
  155 F.3d 876 (7th Cir. 1998).................................................................34

*Fox Valley Construction Workers Fringe Benefit Funds
  v. Pride of the Fox Masonry & Expert Restorations,*
  140 F.3d 661 (7th Cir. 1998)..................................................................4

*In re Caesars Ent. Operating Co., Inc.,*
  808 F.3d 1186 (7th Cir. 2015).........................................................32, 33

*In re Colonial Realty Co.,*
  980 F.2d 125 (2d Cir. 1992) ...................................................................6

*In re Fernstrom Storage & Van Co.*,
    938 F.2d 731 (7th Cir. 1991)...........................................................4, 8, 16

*In re Kmart Corp.*,
    359 F.3d 866 (7th Cir. 2004).....................................................34

*In re Lyondell Chem. Co.*,
    402 B.R. 571 (Bankr. S.D.N.Y. 2009)....................................35

*In re Panther Mountain Land Dev't, LLC*,
    686 F.3d 916 (8th Cir. 2012)......................................................5

*In re South Beach Securities, Inc.*,
    606 F.3d 366 (7th Cir. 2010)....................................................36

*In re Stinnett*,
    465 F.3d 309 (7th Cir. 2006)....................................................21

*In re Thorpe Insulation Co.*,
    671 F.3d 1011 (9th Cir. 2012)..................................................34

*In re UAL Corp.*,
    412 F.3d 775 (7th Cir. 2005)...............................................26, 27

*In re Yonikus*,
    996 F.2d 866 (7th Cir. 1993)....................................................22

*Klein v. Perry*,
    216 F.3d 571 (7th Cir. 2000)....................................................32

*Lynch v. Johns-Manville Sales Corp.*,
    710 F.2d 1194 (6th Cir. 1983)....................................................9

*McCartney v. Integra Nat'l Bank N.*,
    106 F.3d 506 (3d Cir. 1997)......................................................16

*N. Carolina Farm Bureau Mut. Ins. Co. v. Hilliard*,
    369 S.E.2d 386 (N.C. Ct. App. 1988)......................................21

*Nat'l Tax Credit Partners, L.P. v. Havlik*,
    20 F.3d 705 (7th Cir. 1994).......................................................24

*New York Cent. Mut. Fire Ins. Co. v. Ward,*
  833 N.Y.S.2d 182 (App. Div. 2007).......................................................23

*Reliant Energy Servs., Inc. v. Enron Canada Corp.,*
  349 F.3d 816 (5th Cir. 2003)...................................................................8

*United States v. Crawley,*
  837 F.2d 291 (7th Cir. 1988)...................................................................4

*Walker v. O'Brien,*
  216 F.3d 626 (7th Cir. 2000)...................................................................7

**Statute**

11 U.S.C. §362 ................................................................................17, 25

## INTRODUCTION

The bankruptcy court "resounding[ly]" agreed that the Bankruptcy Code contains "certain tools" that may help facilitate "global settlement[s]" of mass-tort litigation. SA.36. Yet the bankruptcy court concluded that it is powerless to use those tools to help resolve claims arising out of the largest assemblage of tort claims in history. That conclusion was based on multiple legal errors, any one of which warrants reversal. Rather than defend those errors, Appellees run away from the bankruptcy court's reasoning at every turn, instead advancing novel and meritless arguments that the bankruptcy court never addressed.

The bankruptcy court refused to stay the CAEv2 litigation against 3M under 11 U.S.C. §362(a)(1) for one—and only one—reason: In its view, §362(a)(1) cannot reach non-debtors and this Court's prior cases saying otherwise were dicta. Appellees barely defend that misreading of circuit precedent and urge this Court to evade the issue and focus on the Funding Agreement between Aearo and 3M instead. But this Court has twice recognized §362(a)(1)'s applicability to non-debtors in certain circumstances, and those circumstances are present here notwithstanding the Funding Agreement.

Similarly, despite agreeing that insurance policies shared by Aearo and 3M are Aearo estate property and that continued CAEv2 litigation against 3M risks diminishing that property, the bankruptcy court concluded that 11 U.S.C. §362(a)(3) does not stay CAEv2 litigation against 3M because Aearo can access *other* assets, via the Funding Agreement, to offset any property diminution. But §362(a)(3) contains no such offset exception. Appellees do not defend the court's misguided reasoning, instead disputing Aearo's entitlement to insurance proceeds in the first place and that continued CAEv2 litigation against 3M would not directly limit Aearo's control over such proceeds. Both arguments, however, are contrary to precedent and common sense.

Appellees' evasion reaches its zenith with respect to the bankruptcy court's refusal to preliminarily enjoin the CAEv2 litigation against 3M under 11 U.S.C. §105(a). The court refrained because, in its view, it lacked "related to" jurisdiction to enter §105(a) relief. Appellees devote just three out of their 95 combined pages of briefing to defending that deeply flawed holding (most of which implicitly concedes the bankruptcy court applied the wrong standard). Instead, they assert that the bankruptcy court denied §105(a) relief on the merits. But that defies the

ruling below—which described its §105(a) ruling as a "determination of subject matter jurisdiction," SA.36—and the *raison d'être* of this certified appeal, which was designed to resolve the applicable legal standards, not factbound questions (on which Appellees' arguments are unavailing).

Rather than defend the bankruptcy court's faulty analysis, Appellees spill considerable ink characterizing Aearo as a bad-faith debtor, 3M as a forum-shopper, and this Chapter 11 case as a sham. Appellees support these accusations with sharply worded post-petition orders from the MDL court. The very fact that Appellees are wielding the latest orders from the CAEv2 litigation to impede Aearo's Chapter 11 efforts underscores the imperative need to pause that litigation through §362 or §105(a). Regardless, as the bankruptcy court noted, the MDL court's criticisms of Aearo, 3M, or Aearo's invocation of Chapter 11 are not "relevant" to the discrete questions raised in this appeal. SA.16-17. What is relevant is that the bankruptcy court misconstrued circuit precedent. The Court should simply apply that well-established precedent and reverse the court's misapplication of §362(a)(1), §362(a)(3), and §105(a).

## ARGUMENT

### I. Section 362(a)(1)'s Automatic Stay Applies To The CAEv2 Litigation Against 3M.

#### A. This Court Has Recognized that §362(a)(1) Can Apply to Non-Debtors in Circumstances Like These.

The bankruptcy court declined to apply §362(a)(1)'s automatic stay to CAEv2 litigation against 3M for only one reason: In its view, §362(a)(1) cannot apply to non-debtors and this Court's contrary decisions were dicta. SA.21-22. Appellees barely defend that reading of circuit precedent, merely suggesting in passing that the Court's discussions in *In re Fernstrom Storage & Van Co.*, 938 F.2d 731 (7th Cir. 1991), and *Fox Valley Construction Workers Fringe Benefit Funds v. Pride of the Fox Masonry & Expert Restorations*, 140 F.3d 661 (7th Cir. 1998), were "dicta" because "both cases" declined to apply §362(a)(1) "on the facts." CAE.Br.39; Bellwether.Br.27. But as Aearo explained, Br.31-33, such articulations of the governing legal test are not dicta, but a "fully measured judicial pronouncement" that should have bound the bankruptcy court. *United States v. Crawley*, 837 F.2d 291, 293 (7th Cir. 1988); *cf. Avelar-Cruz v. I.N.S.*, 58 F.3d 338, 341 (7th Cir. 1995). Appellees offer no response. Because this Court has recognized (twice) that §362(a)(1) can apply to non-debtors in specified circumstances and

proceeded to determine whether those circumstances were present, the bankruptcy court should have done the same.

Given that this Court has already twice recognized that §362(a)(1) can apply to non-debtors, the Court cannot simply "reject" that proposition, as Appellees urge.  CAE.Br.36-39.  But even if the issue were open, Appellees' invitation would be properly declined.  Appellees concede that the Second, Third, Fourth, Fifth, and Tenth Circuits have recognized §362(a)(1)'s applicability to non-debtors.   CAE.Br.25-27.   Appellees contend that a handful of courts of appeals have concluded otherwise, CAE.Br.39 & n.9, but at best, those courts have simply recognized that 11 U.S.C. §105(a) might be the "more appropriate" vehicle for enjoining litigation against non-debtors, *In re Panther Mountain Land Dev't, LLC*, 686 F.3d 916, 926 (8th Cir. 2012); none deems §362(a)(1) simply unavailable.[1]

Appellees provide no sound reason for this Court to create a circuit split by categorically rejecting §362(a)(1)'s applicability in circumstances

---

[1] If §105(a) really were the only basis for suspending litigation against a non-debtor, it would be all the more important for a bankruptcy court to undertake an appropriate §105(a) analysis, contrary to the bankruptcy court's misguided approach here.  *See* pp.27-37, *infra*.

recognized by numerous other courts of appeals. Appellees dismiss the line of cases under *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), as lacking a "'textual basis,'" CAE.Br.37-38, but §362(a)(1) applies to suits *both* "against the debtor" *and* seeking "to recover a claim against the debtor." Br.34. Appellees would limit the second category to fraudulent transfers, CAE.Br.23, but neither the text nor their lone authority restricts §362(a)(1) to fraudulent transfers. Rather, the latter treats fraudulent transfers as an exemplar of the kinds of cases the second category "must encompass." *In re Colonial Realty Co.*, 980 F.2d 125, 131-32 (2d Cir. 1992). Confirming the point, Appellees contend that a fraudulent transfer "falls within §362(a)(1)" because "it really seeks satisfaction of a claim against the debtor." CAE.Br.24. Exactly. That is the same reasoning underlying *Robins* and *Fernstrom*.

## B. Section 362(a)(1) Applies to the CAEv2 Litigation Against 3M.

Appellees further contend that, even if §362(a)(1) can apply to claims against a non-debtor in some circumstances, Aearo has not demonstrated the applicable circumstances here. The bankruptcy court did not address this question because it concluded that §362(a)(1) is categorically inapplicable. *See Walker v. O'Brien*, 216 F.3d 626, 640 (7th

Cir. 2000) (vacating and remanding for court to "apply the correct standard"). Appellees' arguments are meritless in all events.

Appellees principally assert that Aearo cannot satisfy §362(a)(1) "under any reading of the statute," CAE.Br.22, or "under any possible application of the law," Bellwether.Br.21, because of the bankruptcy court's "core finding" that the CAEv2 litigation "will not affect Aearo's estate" given the Funding Agreement between 3M and Aearo. CAE.Br.28. Appellees overstate the court's observations regarding the Funding Agreement generally, pp.12-16, *infra*, but the court did not say one word about the Funding Agreement vis-à-vis §362(a)(1). To the contrary, the bankruptcy court's certification of its order for direct appeal—and this Court's acceptance of that appeal—recognize that the decision below did not turn on a factbound reading of the Funding Agreement, but rather on questions of law concerning the power of the bankruptcy court to stay litigation against non-debtors.

Appellees' argument also deems "irrelevant" the multiple factors that courts routinely consider central to determining whether §362(a)(1) applies to litigation against a non-debtor. CAE.Br.30; *see* Br.35-44. Instead, Appellees manufacture a single "unusual circumstances" test

that turns on "economic consequences." CAE.Br.25-28. But no decision has ever imposed such a "limitation" on §362(a)(1)'s application to non-debtors. *Id.* at 28. Rather, the cases ask whether the circumstances as a whole show that "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Fernstrom*, 938 F.2d at 736 (quoting *Robins*, 788 F.2d at 999); *accord, e.g., Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003). Under that standard, the circumstances here overwhelmingly support applying §362(a)(1) to the CAEv2 litigation against 3M.

*First*, CAEv2 claims against 3M are inextricably intertwined with CAEv2 claims against Aearo. These claims concern the same products, alleged injuries, and evidence. Aearo, not 3M, designed the earplugs, manufactured them, drafted the allegedly defective warnings, and sold virtually all of them. Aearo, not 3M, drafted the Flange Report that every CAEv2 plaintiff relies on. The overlap of interests between Aearo and 3M in the CAEv2 litigation is undeniable. Br.36-39.

8

Nonetheless, Appellees contend that "3M has been independently liable for the earplug claims, no matter Aearo's role," and stress that "[o]ne of the first earplug lawsuits against 3M did not even name Aearo as a defendant." CAE.Br.30; *see also* Bellwether.Br.24. Yet, plaintiffs themselves subsequently sued Aearo *hundreds of thousands of times* and continue to pursue such claims. They cannot turn around and dismiss Aearo as some wholly distinct bit player.[2]

Downplaying all that, Appellees parrot the MDL court's view that Aearo is a defendant "in name only," and it would be "duplicitous" to suggest that 3M and Aearo are distinct. CAE.Br.30-31. But suggesting a near alter-ego relationship is an odd way to dispute the factual overlap between the claims against 3M and those against Aearo. Furthermore, the two MDL orders that Appellees cite (on this point and throughout their briefs) are strong arguments for a stay. If post-petition decisions of

---

[2] The Committee argues that courts "universally acknowledge[]" that a "legal or factual" nexus is not enough. CAE.Br.31. Yet they cite pre-*Robins* precedent. *Id.* (citing *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983)). Regardless, there is more than "mere overlapping conduct," *id.*, here. The conduct is *identical*, and Appellees seek not "independent[]" liability against just 3M, but joint-and-several liability against 3M and Aearo.

the MDL court against 3M are being used by creditors to undermine Aearo's effort to obtain helpful relief from the bankruptcy court, then the case for a stay is confirmed.  Simply put, Appellees' heavy reliance on the MDL court's post-petition decisions to bolster their argument is "exhibit A" in favor of staying all proceedings before the MDL court, not just half a loaf.

Appellees contend that "equating evidentiary overlap with 'unusual circumstances'" would open the floodgates in other cases.  CAE.Br.32.  Yet *Robins* and its progeny (including *Fernstrom*) have been on the books for decades, and no flood has materialized.  That is because *Robins* only applies in rare circumstances, such as those here, where there is not simply "evidentiary overlap," *id.*, but inextricably intertwined claims demonstrating "such identity" between debtor and non-debtor that §362(a)(1) is properly applied to the non-debtor claims.

*Second*, continued CAEv2 litigation against 3M risks preclusion or record taint for Aearo.  Br.39-41.  Indeed, given just how interrelated the claims against 3M and Aearo are, the real-world effect of allowing claims to continue against 3M will be to pull Aearo back into the MDL, at least if Aearo is to have any hope of preventing adverse decisions or findings

that may negatively affect it. Because that would defeat the automatic stay's "very purpose," §362(a)(1) must stay claims against 3M, the non-debtor, in these circumstances. *Robins*, 788 F.2d at 999.

The Committee argues that a stay under §362(a)(1) cannot be based "solely" on preclusion risk. CAE.Br.33. But that risk hardly stands alone. And the risk is not just hypothetical. Appellees themselves argue there is no legal difference between 3M and Aearo. CAE.Br.31; Bellwether.Br.8. And Appellees are freely using MDL orders from proceedings in which Aearo was *not* a participant against Aearo in *this* proceeding.

The risk of record taint is equally real. Appellees assert that any taint already occurred during the bellwether trials. CAE.Br.34. But hundreds of thousands of individual cases remain to be litigated, thus creating orders of magnitude more risk of additional taint relative to sixteen bellwether trials. Appellees assert that the Eleventh Circuit MDL appeals that Aearo is now pursuing "raise all the concerns Aearo cites here." CAE.Br.35. The difference, of course, is that Aearo *is a participant in* those appeals, and thus can mitigate the risk of preclusion

or taint, unlike the ongoing MDL proceedings where Aearo risks severe prejudice in absentia.

*Third*, litigation against 3M triggers Aearo's indemnification obligations. Br.41-44. Appellees do not dispute that Aearo agreed to "indemnify, defend and hold harmless" 3M for any liabilities in connection with the CAEv2 claims. A.285. Nor do they dispute that courts routinely conclude that indemnification duties trigger §362(a)(1) relief against non-debtor litigation. Instead, Appellees insist that Aearo's duty is "illusory" because of the "circular" Funding Agreement. Bellwether.Br.10. Specifically, Appellees argue, because "Aearo may fund its indemnity obligations 'by asking 3M for the money,'" CAE.Br.29, there "is no circumstance under which Aearo will fail to receive funding from 3M for all possible liabilities, including indemnity obligations," Bellwether.Br.24, 28.

The record simply does not support that claim. While the Funding Agreement allows Aearo to *request* that 3M satisfy payment of an indemnification obligation owed to 3M—the aspect of the Funding Agreement the bankruptcy court perceived to be "circular," SA.31— Aearo's *receipt* of that money is no certainty. Under the Funding

Agreement's terms, 3M *does not* have to pay Aearo if it determines that Aearo breached its own obligations under the agreement.  A.285, 287, 290-91; Br.67.  Moreover, even when 3M is willing to satisfy an Aearo funding request, it must have the ability to do so.  One of Aearo's two disinterested directors, Jeffrey Stein, testified to the obvious:  none of Aearo's funding sources, including the Funding Agreement, is "riskless."  A.265 (239:5-19).  Stein explained that although 3M is "viable at this time," it is "certainly susceptible to deterioration in performance," including from "a recession or other exogenous events."  A.266 (240:10-14).

Those "exogenous events" include the *unstayed CAEv2 litigation itself*.  Indeed, certain claimants' own expert witness, Dr. J.B. Heaton, testified that 3M's "likely minimum" liability for the CAEv2 litigation is "at least $100 billion"—which "far exceeds 3M's cash reserves."  SA.33; *see* Br.68 n.6.  The bankruptcy court disregarded Heaton's testimony while *conceding* that if 3M's liability for the CAEv2 litigation were sufficiently large, then given Aearo's indemnification obligation, "continuation of the [CAEv2 litigation] as to 3M would have a significant,

if not disastrous, effect on Aearo's bankruptcy notwithstanding 3M's commitment under the Funding Agreement." SA.33.[3]

Moreover, even if 3M's "ability to honor its commitment under the Funding Agreement," SA.33, were beyond all doubt, and there truly is "no circumstance under which Aearo will fail to receive funding from 3M," Bellwether.Br.24, Aearo's indemnification obligation would still warrant §362(a)'s application to the CAEv2 claims. Aearo can draw on the Funding Agreement "*solely to the extent that*" cash available from its business and assets, including insurance, is or is projected to be insufficient to satisfy its liabilities in the "four weeks" following the funding request while maintaining a $5 million minimum cash balance. A.281-82, 284 (emphasis added). Accordingly, the amount Aearo can draw on the Funding Agreement is *reduced* by the existing and projected cash proceeds of its assets and operations.

---

[3] The court disregarded Heaton's testimony because not all claimants called him (though no claimant objected) and because his testimony was introduced "for the limited purpose of seeking a condition on the stay." SA.34. But the court cited no authority (and Aearo is aware of none) for the proposition that *admittedly* relevant evidence can be disregarded because the party that introduced it would prefer the evidence be used for a different purpose.

If, for example, the CAEv2 litigation concluded with $1 billion in damages against 3M alone, 3M would undeniably have a $1 billion indemnity claim against Aearo under the Funding Agreement. Aearo could not simply and circularly ask 3M for $1 billion to cover that indemnity claim. Instead, the maximum Aearo could draw under the Funding Agreement to satisfy its indemnification liability is $1 billion, *minus* Aearo's projected cash proceeds of assets and operations, *plus* $5 million. Thus, if Aearo had $100 million in cash and projected cash, Aearo could only draw $905 million on the Funding Agreement despite its $1 billion indemnification obligation to 3M for the CAEv2 claims. That litigation against 3M would thus drain Aearo of $95 million of its own cash. Accordingly, the ongoing CAEv2 litigation against 3M demonstrably risks depletion of estate assets, wholly apart from whether Aearo can collect from 3M under the Funding Agreement.

Appellees mine the agreement's negotiation history and attribute to the bankruptcy court a finding that the agreement's "projected to be" language protects Aearo. CAE.Br.36; Bellwether.Br.10-11. But the court made no such finding, nor could it have. The "projected to be" language actually makes matters *worse* for Aearo by requiring it to make a

reasonable projection of not just cash on hand but future cash to be received. The projected future cash is a *deduction* from what Aearo can draw. To the extent Aearo does or expects to sell assets, recover on insurance, increase cash flows from operations, or otherwise make money, those estate assets all must go to cover CAEv2 liabilities (including the indemnity)—and they reduce the amount Aearo can draw under the Funding Agreement. Consequently, the "projected to be" language does not alter the fact, and in fact confirms, that Aearo's indemnification obligations do indeed have "economic consequences" on Aearo's estate and its creditors. Thus while there is no "economic consequences" test for applying §362(a)(1) to non-debtors, *contra* CAE.Br.25-28; pp.7-8, *supra*, Aearo would satisfy any such requirement.

Finally, for much the same reason, the evidence supports §362(a)(1)'s application under the second category recognized in *Fernstrom*—whether pending litigation against a non-debtor would cause the debtor, estate, or reorganization plan "irreparable harm." 938 F.2d at 736; *see also McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997) (§362(a)(1) applies to non-debtors if "essential to the debtor's efforts of reorganization"); Br.44-45. Appellees mention

"irreparable harm" but once, and only in the context of their §105(a) argument. *See* Bellwether.Br.23. A stay under §362(a)(1) is thus readily warranted.

## II. Section 362(a)(3)'s Automatic Stay Applies To The CAEv2 Litigation Against 3M.

The CAEv2 claims against 3M also fall within §362(a)(3)'s automatic stay because of the shared Aearo/3M insurance policies. Section 362(a)(3) applies to "any act" seeking "to exercise control over property of the estate." 11 U.S.C. §362(a)(3). All agree that insurance policies constitute estate property, and that "[a]ny action in which the judgment may diminish this 'important asset' is unquestionably subject to a stay." *Robins*, 788 F.2d at 1001-02. It is undisputed, moreover, that Aearo and 3M are named insureds on shared policies worth over $1 billion, and that if CAEv2 litigation is not stayed, 3M will seek payment under those policies. SA.12, 24; A.236 (249:12-14). Although these circumstances plainly warrant application of §362(a)(3), the bankruptcy court declined because, in its view, the Funding Agreement ensures that any diminishment of Aearo's insurance proceeds will be offset by funding from 3M. SA.25-26. That ruling was erroneous.

### A.     The Bankruptcy Court's Ruling Was Erroneous.

As with their §362(a)(1) argument, Appellees barely defend the bankruptcy court's §362(a)(3) reasoning.  Deep within their briefs, Appellees parrot the court's view that if 3M "drains the … shared insurance, 3M itself must replenish any shortfall."  CAE.Br.47; *see also* Bellwether.Br.30.  But that assertion depends on the premise that as long as one estate asset (here, 3M's funding) can eventually make up for depletion of another estate asset (here, the insurance coverage), §362(a)(3) is not triggered.  Nothing in §362(a)(3) supports that proposition.  Br.49-52.

Appellees offer no meaningful response.  The Bellwether Plaintiffs assert that "that is not what the bankruptcy court held," for the court "ruled only that the shared liability policies do not inure to the benefit of the estate."  Bellwether.Br.30.  That is not responsive.  Even if one asset compensates for the diminution of another asset—producing a "net effect" of "zero," SA.10—the original diminution remains "an[] act" that "exercise[s] control over property of the estate," implicating §362(a)(3).

Moreover, Appellees' argument once again relies on breezy assertions about the Funding Agreement, CAE.Br.47, that ignore how

18

the Agreement actually operates.  Indeed, on the very pages of the bankruptcy court decision that Appellees cite, the court concedes: "Granted, the Funding Agreement requires Aearo to seek recovery under the Aearo Legacy insurance policies—and possibly the 3M Tower as well—*prior to* seeking payment under the Funding Agreement."  SA.26 (emphasis added).  This admission underscores that the diminishment in estate property sufficient to trigger §362(a)(3) takes place *before* there is any prospect that a different asset (here, 3M funding) might replenish the estate.

Moreover, as explained above, there is no guarantee that Aearo will receive one-for-one 3M funding in response to a funding request made after Aearo's insurance has been diminished.  3M could decline to fund, for reasons including Aearo's own conduct.  Alternatively, 3M might be unable to fund, depending on "exogenous events" that include the unstayed CAEv2 litigation that presumably triggered the insurance claim.  The Committee points to the bankruptcy court's belief that, at present, "3M is more than able to honor the Funding Agreement."  CAE.Br.50 (quoting SA.34).  But that remark does not address 3M's declination rights, the possibility of its future inability to pay, or the

mechanics of the Funding Agreement that could leave Aearo less than whole. *See* pp.12-16, *supra*. More fundamentally, whatever the risk of 3M's unwillingness or inability to pay, it is impossible to deny that the estate is better off with the undiminished insurance policies and 3M's Funding Agreement than with just the latter.

### B.    Appellees' Alternative Bases for Affirmance Fail.

Rather than meaningfully defend the bankruptcy court's §362(a)(3) reasoning, Appellees offer an array of arguments that the court neither confronted nor adopted. Each is meritless.

1.    Appellees argue that although "a debtor's insurance policy is property of the estate," "[i]nsurance *proceeds* fall under a different rubric." Bellwether.Br.29. Specifically, they claim that proceeds are only an estate asset where "'the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim,'" but that there is no evidence here that "if insurance proceeds were paid, Aearo had any right to them." *Id.*; *see also* CAE.Br.20, 50-53.

This argument does not bear even a passing resemblance to the bankruptcy court's order, which never suggested that Aearo lacked rights to insurance proceeds. Appellees' argument is also plainly wrong.

Aearo—as a named insured—is entitled to submit claims and receive payment on its own insurance policies. Appellees argue that 3M alone is entitled to proceeds because "3M paid all expenses." Bellwether.Br.29. That is incorrect: According to unrefuted testimony, "3M didn't pay the premiums related to the insurance policies under the Aearo Legacy program." A.239 (266:2-4). It is also irrelevant: No principle of contract law says a named insured cannot collect because someone else paid the expenses. Instead, who "actually paid the premiums" is "irrelevant." *N. Carolina Farm Bureau Mut. Ins. Co. v. Hilliard*, 369 S.E.2d 386, 388 (N.C. Ct. App. 1988).

Appellees' authority is not to the contrary. Appellees, for example, rely on *In re Stinnett*, 465 F.3d 309 (7th Cir. 2006). CAE.Br.50-51; Bellwether.Br.29-30. Yet *Stinnett* did not involve §362(a)(3). Br.50-51. Furthermore, *Stinnett* actually confirms that these policies are property of Aearo's estate because the proceeds on a claim by Aearo would be "payable to" Aearo, which—as a named insured—has "the right to receive and keep the proceeds." 465 F.3d at 313. The Committee argues that proceeds are not yet estate property because "proceeds become property only once the insurer agrees to pay." CAE.Br.51. Yet if that were the

law, these proceeds—to which Aearo has a right—might never become estate property because nothing would prevent their depletion by Aearo's co-insured, 3M.    Unsurprisingly, §362(a)(3) has "consistently been interpreted to prevent acts that diminish *future recoveries* from a debtor's insurance policies." *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 261 (3rd Cir. 2006) (Alito, J.) (emphasis added); *see also In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (estate property includes contingent interests).    Furthermore, it is not remotely "speculative," CAE.Br.53, that Aearo's insurers will pay proceeds with regard to conduct that has already occurred and is the subject of the largest MDL in history.

Nor does it matter that neither Aearo nor 3M has yet "submitted a claim or otherwise sought money under the 3M Tower." CAE.Br.12; *see also* Bellwether.Br.14.  *But see* Adv.Pro.Dkt.128 (8/15/2022 Tr. at 235:19-236:4, 243:20-244:8) (noting that Aearo and 3M have made formal coverage demands on 3M Tower policies).  Aearo's insurers are well aware of the CAEv2 litigation, A.232-33, and the lack of claims reflects the absence of collectible judgments that are final and no longer subject to appeal.  A stay would preserve that status quo.

Appellees' remaining scattershot assertions all lack merit. Their contention that "Aearo gave its rights under the Aearo Legacy policy to 3M during the 2010 upstream," CAE.Br.51, is unsupported by their citations and mistaken. That 3M *also* can access the proceeds does not change the fact that Aearo is a named insured with a right to them. That is why the bankruptcy court could assume that "the Aearo Legacy and 3M Tower insurance policies are property of the estate." SA.24. Appellees' jabs about bank vaults also miss their mark, CAE.Br.51, as any side disputes with insurers are irrelevant. Equally wrong is their suggestion that Aearo "forfeited" its right to proceeds from the 3M Tower. *Id.* at 52. The bankruptcy court did not address this argument, which like many of Appellees' contentions was not raised below, and in any event, Aearo's insurers could not assert such an affirmative defense given that they unquestionably are aware of Aearo's rights. *See, e.g.*, *New York Cent. Mut. Fire Ins. Co. v. Ward*, 833 N.Y.S.2d 182, 183 (App. Div. 2007) (insurer must be prejudiced by lack of notice).

2. The Committee—but not the Bellwether Plaintiffs—ascribes yet another supposed rationale to the bankruptcy court: §362(a)(3) does not apply because "the earplug plaintiffs were not 'proceeding *directly*

23

against the insurance policies.'" CAE.Br.16 (quoting SA.24; emphasis added).  Specifically, the Committee contends that §362(a)(3) "bars only claims that seek directly to obtain insurance coverage belonging to the estate." CAE.Br.40-41.[4]

Not only does that argument not reflect the bankruptcy court's analysis, the court reached the *opposite* conclusion.  Although "direct efforts to exercise control over property of the estate" are *one* way to satisfy §362(a)(3), the court then explained that "indirect efforts may also fall under §362(a)(3)'s stay." SA.24-25.  Indeed, this Court's decision in *Havlik* "teaches that §362(a)(3) encompasses 'every effort to "exercise control over property of the estate"', not just direct efforts." *Id.* (quoting *Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708 (7th Cir. 1994)).

---

[4] The Bellwether Plaintiffs argue in passing that in *Fernstrom*, "a suit against a nondebtor to collect the proceeds of a debtor's insurance policy was not a suit to collect property of the estate because it would not cause any detriment to the estate's creditors." Bellwether.Br.29-30.  The bankruptcy court did not invoke *Fernstrom* as to §362(a)(3), and for good reason:  that decision did not involve §362(a)(3), let alone reject its applicability.

More generally, §362(a)(3) has "consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies." *ACandS*, 435 F.3d at 261. The Committee stresses that verbs like "control" "demand a direct interface between the enjoined claim and the estate property." CAE.Br.41. Yet it ignores the statute's most important word: §362(a)(3) applies to "*any* act … to exercise control over property of the estate," not just direct ones. 11 U.S.C. §362(a)(3) (emphasis added). "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008).

Undeterred, the Committee says its "interpretation promotes the Code's purpose." CAE.Br.43. But artificially narrowing the bankruptcy court's power to enjoin litigation depleting the estate's insurance-related assets accomplishes the opposite. Nor is the Committee correct that Aearo's "broader rule"—actually this Court's rule, from *Havlik*—"lacks any limiting principle" or raises notice concerns. CAE.Br.43-44. But shared insurance policies are hardly ubiquitous, and before §362(a)(3) applies, the debtors' *property* must be at risk. Insurance coverage is

property; a "supply chain" and the rest of Appellees' parade of horribles are not. *Id.*

The Committee argues that it is 3M's entitlement to insurance proceeds—not the claims against 3M—that threatens Aearo's property. CAE.Br.45. This is sophistry. Continued CAEv2 litigation against 3M risks the continued accrual of claims by 3M against the insurance policies it shares with Aearo. This is why shared insurance is an established basis for staying litigation against a non-debtor.

Nor does precedent support the Committee. It observes that *City of Chicago v. Fulton* holds "that §362(a)(3) halts any affirmative act that would alter the status quo as of the time of the filing of a bankruptcy petition." 141 S.Ct. 585, 590 (2021); CAE.Br.41. That is exactly the point: The status quo at the time of Aearo's petition was that Aearo and 3M both had a right to shared insurance policies. The continuation of an avalanche of lawsuits against 3M, which has the effect of increasing the claims against those shared policies, is an "affirmative act" that alters the status quo. The Committee invokes *In re UAL Corp.*, 412 F.3d 775 (7th Cir. 2005), which holds that even if future tax benefits are "property," a "simple sale of stock" by a stock ownership plan that could

affect those benefits for the debtor is too attenuated to trigger §362(a)(3). *Id.* at 778-79; CAE.Br.42. But the connection here is far more direct: Aearo and 3M indisputably share insurance, and 3M indisputably is pursuing coverage and payment under those policies as CAEv2 litigation continues, thus diminishing Aearo's estate property and triggering §362(a)(3)'s stay.

## III. The CAEv2 Litigation Against 3M Should Be Enjoined Under 11 U.S.C. §105(a).

The bankruptcy court declined to enjoin the CAEv2 litigation under 11 U.S.C. §105(a) based upon "a determination of subject matter jurisdiction" that was flawed in multiple respects. SA.36; Br.60-71. Continuing a familiar pattern, Appellees barely defend the court's actual jurisdictional ruling. Instead, they urge the Court to blow past jurisdiction and affirm on the merits, based on arguments that the bankruptcy court never adopted (and are unavailing).

### A. The Bankruptcy Court Had "Related To" Jurisdiction to Enjoin the CAEv2 Litigation.

Appellees devote barely three pages of their combined 95 pages of briefing to defending the bankruptcy court's holding that it lacked "related to" jurisdiction to enjoin the CAEv2 litigation against 3M. CAE.Br.58-60; Bellwether.Br.30-31. That is understandable, given that

counsel for the Committee conceded below—twice—that the bankruptcy court "absolutely" had "related to" jurisdiction.    Br.64.    Appellees' concession is well-taken, for "related to" jurisdiction is "comprehensive" and intended to encompass "all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).  It blinks reality to insist that 200,000-plus pending CAEv2 claims against Aearo's parent—based on a product that Aearo designed, tested, manufactured, and marketed—are so insufficiently "connected with" Aearo's estate that even the broadest form of bankruptcy jurisdiction is unsatisfied.

Appellees sidestep the bankruptcy court's repeated application of an erroneous "actual economic effect" test, rather than the "potential effect" test adopted in *Bush v. United States*, 939 F.3d 839 (7th Cir. 2019). Indeed, the Bellwether Plaintiffs ignore *Bush* entirely, instead citing the same decisions that the bankruptcy court invoked and that *Bush* distinguished.  *See* Bellwether.Br.30-31.  Thus, the Bellwether Plaintiffs replicate the bankruptcy court's error, contending that the test is "whether the dispute *will impair* the estate" and disputing that the CAEv2 claims "*will affect*" the estate.  *Id.* (quoting SA.32) (emphases added).  But *Bush* makes clear that "related-to jurisdiction … is satisfied"

28

when there is just "a potential effect" on the estate; it does not require "an actual effect" on the estate "at the case's end."  939 F.3d at 846.

The Committee at least acknowledges *Bush* and its "potential effect" test.  CAE.Br.58-59.  But it dismisses any distinction between a "potential" and "actual" effect as "semantic," because the bankruptcy court's "before-the-fact finding that litigation 'would have' no 'actual economic effect' on creditors necessarily rejects the possibility of any 'potential effect' on them either."  *Id.* at 59-60 (citation omitted).  That tortured effort to equate two different tests and rehabilitate the court's flawed reasoning does not remotely follow.  To the extent the Committee is suggesting that the court *actually* (if impliedly) applied a "potential effect" test, the Committee is wrong.  The court not only repeatedly applied an "actual effect" test, invoking decisions supporting that test (rather than *Bush*); it refused to follow other courts that had enjoined actions against non-debtors *precisely because of* its perceived need, based on pre-*Bush* decisions, to "focus its analysis on the *actual* economic effect continuation of the [CAEv2 claims] will have" on Aearo's estate.  SA.32. Appellees cannot defend that mistaken analysis.

29

Brushing aside the bankruptcy court's legal errors as a "sideshow," Bellwether.Br.31, Appellees return to the Funding Agreement, contending that because of "the terms of the Funding Agreement," there is "no conceivable effect"—much less a "potential effect"—on Aearo's estate from continuation of the CAEv2 claims against 3M, *id.*; CAE.Br.59.

As explained, however, neither the evidentiary record nor the details of the Funding Agreement support the categorical assertion that the Agreement eliminates any "potential effect" on Aearo's estate. Under the "terms of the Funding Agreement," 3M does not have to pay Aearo if it determines that Aearo breached its own obligations under the agreement. A.285, 287, 290-91. Furthermore, the Funding Agreement is not a guaranteed source of money—either now or in the future. Indeed, the bankruptcy court itself acknowledged that if 3M's liability for the CAEv2 litigation were sufficiently large, "continuation of the [CAEv2 litigation] as to 3M would have a significant, if not disastrous, effect on Aearo's bankruptcy, notwithstanding 3M's commitment under the Funding Agreement." SA.33. The bankruptcy court even admitted that its conclusion that there is no "actual economic effect" on Aearo's estate

would "prove improvident" if "Heaton's estimation of 3M's liability and financial wherewithal ultimately proves accurate." SA.35-36. Requiring only a potential effect would avoid the possibility that predictions about actual effects would "prove improvident" in hindsight. Finally, as demonstrated, pp.12-16, *supra*, the Funding Agreement does not provide for a one-for-one replenishment of Aearo's indemnification obligations. Thus, there is not just the potential, but the likelihood, of a negative effect on the estate if the CAEv2 litigation against 3M is not stayed.

### B. The Bankruptcy Court Did Not Hold for Appellees on the Merits of a §105(a) Injunction.

Rather than meaningfully defend the bankruptcy court's jurisdictional holding, Appellees contend that the court correctly "ruled in the alternative" that §105(a) relief was unwarranted "on the merits." Bellwether.Br.34; CAE.Br.16. Appellees are incorrect.

The bankruptcy court did briefly "note[]" that "even if" it had jurisdiction, it would not grant §105(a) relief. But the court's only rationale for that passing merits observation was its jurisdictional determination: the court believed that its "focus" had to "remain[] on the actual economic effect" that continued litigation would have on Aearo's estate, and because there purportedly was "no such effect," the court

declined to "invoke its §105(a) powers." SA.35; Br.71. Likewise, the court stated (in a footnote) that third-party litigation would not "defeat or impair" its jurisdiction "for the reasons already stated," *i.e.*, its jurisdictional analysis. SA.35 n.17.

The Bellwether Plaintiffs do not mention, much less defend, this cursory conflation of jurisdiction and merits. The Committee contends that the decision "contains many pages of findings," CAE.Br.55—but none is specific to the merits of §105(a) relief. The Committee disputes that the bankruptcy court "'glosse[d] over' relevant considerations." *Id.* (quoting *Klein v. Perry*, 216 F.3d 571, 575 (7th Cir. 2000)). Yet the court did not address any of the considerations that other courts have reviewed in determining whether third-party litigation would "defeat or impair" jurisdiction. Br.56-58. Nor did it address whether a §105(a) preliminary injunction "is likely to enhance the prospects for a successful resolution of" Aearo's bankruptcy. *In re Caesars Ent. Operating Co., Inc.*, 808 F.3d 1186, 1188 (7th Cir. 2015). And while the Committee insists that the court's merits observation "was independent of its jurisdictional analysis," all it points to is the court's "no actual economic effect" statement, which goes to jurisdiction. CAE.Br.55-56. In short, the court

rightly described its §105(a) analysis as "a determination of subject matter jurisdiction," SA.36—because that is all it determined.

As if to confirm the point, Appellees spill considerable ink contending that §105(a) relief is unwarranted based on groundless merits arguments that appear nowhere in the bankruptcy court's decision. CAE.Br.53-58; Bellwether.Br.30-36. Relying on *Caesars*, the Committee argues that actions defeat or impair the bankruptcy "only when they result in 'less money for [the debtor's] creditors to recover in the bankruptcy proceeding.'" CAE.Br.54. But *Caesars* does not remotely hold that §105(a) relief is warranted "only" in that limited circumstance. Quite the contrary: *Caesars* characterizes the "question" as whether §105(a) relief will "enhance the prospects for a successful resolution of" the bankruptcy—or, conversely, whether denial will "endanger the success of the bankruptcy proceedings." 808 F.3d at 1188-89. The Committee does not engage with that standard. Instead, it cites cases espousing the "limited" nature of §105(a) relief, CAE.Br.53-54, but in each, the debtor sought to "override" or "circumvent" the Code, which is

not the case here.  *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004);

*Disch v. Rasmussen*, 417 F.3d 769, 777 (7th Cir. 2005).[5]

The Committee contends there is "no evidence" of a "reasonable

likelihood of a successful reorganization."  CAE.Br.56.  But Aearo's Chief

Restructuring Officer testified that Aearo "has a viable path forward in

this bankruptcy," and Stein, an independent director, testified that Aearo

has a "clear and viable path through the restructuring."  A.198 (101:8-

10); CA.449 (228:19-21).   The Committee cites no contrary evidence.

Instead, citing *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1027 (9th Cir.

2012), it argues that "'a successful reorganization'" requires "negotiation

'with [mass-tort] claimants … to set a plan that they would support,'" and

Aearo has "presented no evidence of creditor support."  CAE.Br.56-57.

---

[5] The Bellwether Plaintiffs contend that the ongoing MDL against 3M is not a "distraction" to Aearo's reorganization efforts.  Bellwether.Br.31-34.  This assertion is not credible, not least because the Bellwether Plaintiffs themselves are wielding orders by the MDL court against Aearo in this Chapter 11 proceeding.  *E.g.*, *id.* at 36; Bankr.Dkt.1066 (motion to dismiss Chapter 11 cases, citing MDL orders).  Regardless, the Bellwether Plaintiffs have no answer for the bankruptcy court's faulty analysis as to distraction.  Br.58 n.5.  The Bellwether Plaintiffs also argue that Aearo "could not show the irreparable harm necessary" for §105(a) relief, Bellwether.Br.23, but "irreparable harm" is present here and not required for a §105(a) preliminary injunction, *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998).

But *Thorpe* did not address §105(a), and as courts have recognized, it is "silly" to require debtors seeking a §105(a) preliminary injunction to "address later issues … in the earliest weeks of a case." *In re Lyondell Chem. Co.*, 402 B.R. 571, 590 (Bankr. S.D.N.Y. 2009). What matters is that the debtors have "been successful in doing everything they've needed to do" at the time of seeking §105(a) relief, *id.*—as Aearo had.[6]

Appellees assert that a §105(a) preliminary injunction would not serve the public interest because 3M and/or Aearo (Appellees tellingly conflate them) have engaged in "manipulation," "forum-shopping," and "bad faith." CAE.Br.57-58; Bellwether.Br.34-36. As a threshold matter, Appellees' argument relies almost entirely on statements by the MDL court, again reinforcing the intertwined nature of the CAEv2 litigation and the Chapter 11 proceedings while highlighting the risk of preclusive effects and record taint from ongoing CAEv2 litigation against 3M. *See* Bellwether.Br.35 (stating that "this manipulation" was "found by one federal court to be in bad faith"). Regardless, Appellees' argument is

---

[6] Regardless, there is ample evidence of "negotiation 'with [mass-tort] claimants'"; Aearo and the claimants have been engaged in ongoing mediation throughout the Chapter 11 proceedings. Bankr.Dkt.923, 1008.

more properly the subject of a motion to dismiss Aearo's Chapter 11 case—which, notably, Appellees filed eight days after filing their response briefs. Bankr.Dkt.1066. The question here is simply whether a stay or §105(a) relief is warranted. And as the bankruptcy court observed, for that purpose, the Aearo entities—which have operated in Indiana for over 40 years and exceeded $100 million in 2021 revenue— "are appropriate debtors with cognizable liabilities under the Bankruptcy Code." SA.17. Aearo is nothing like the "shell" company with "no employees or business activities" and "no outside creditors" whose Chapter 11 case was dismissed in *In re South Beach Securities, Inc.*, 606 F.3d 366, 372, 376 (7th Cir. 2010).

Finally, while MDLs may "provide an efficient means to resolve mass tort litigation," CAE.Br.57, Appellees do not (and cannot) dispute that Chapter 11 reorganizations can also efficiently and fairly resolve mass-tort litigation—which is why similarly situated parties have sought bankruptcy protection and why courts regularly stay or enjoin litigation against non-debtor parents and affiliates in mass-tort restructurings. Br.54-55. Doing so does not "effectively abolish" an MDL, CAE.Br.57, but merely provides an alternative and frequently superior means for

resolving thousands of claims in a uniform manner and efficiently and equitably compensating claimants. Temporarily pausing the CAEv2 litigation against 3M increases the likelihood of producing these salutary benefits and thus readily promotes the public interest.

## CONCLUSION

The Court should reverse the bankruptcy court's order.

Respectfully submitted,

*/s/ Paul D. Clement*

GEORGE W. HICKS, JR.
AARON L. NIELSON
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000

PAUL D. CLEMENT
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22134
(202) 742-8900
paul.clement@clementmurphy.com

CHAD J. HUSNICK
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

*Counsel for Debtors-Appellants*

February 17, 2023

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME REQUIREMENT

This brief complies with the type-volume limits of Fed. R. App. P. 32, as modified by 7th Cir. Rule 32.  This brief uses 14-point, Century Schoolbook font and contains 6,978 words, according to the word-processing system used to prepare it.

*/s/ Paul D. Clement*
Paul D. Clement

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Paul D. Clement*
Paul D. Clement